**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MONIQUE RUSSELL, JASMINE RIGGINS, ELSA M. POWELL AND DESIRE EVANS, | CIVIL ACTION |
| Plaintiffs, | |
| v. | NO. 18-5629 |
| EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES, | |
| Defendant. | |

**STIPULATION AND (~~PROPOSED~~) ORDER REGARDING DISCOVERY OF**
**ELECTRONICALLY STORED INFORMATION ("STIPULATION" OR "ORDER")**

   The Parties to the above-captioned action HEREBY STIPULATE AND AGREE, by and

through their undersigned counsel, that the following specifications shall govern discovery of all

documents, electronically stored information ("ESI"), and any other materials and information

produced by the Parties during discovery in the above-captioned action.

**I.**  **General Provisions**

   A. Definitions:

    1. "Documents" includes writings, drawings, graphs, charts, photographs,

sound recordings, images, and other data, data records or data compilations — stored in any

medium from which information can be obtained.

    2. "Electronically stored information" or "ESI," as used herein, means

information that is stored electronically, regardless of the media or whether it is in the original

format in which it was created, as opposed to stored in hard copy (i.e., on paper).

    3. "Metadata" means the structural information of a file that contains data

about the file, as opposed to describing the content of a file.

B.    The Parties shall take reasonable steps to comply with the procedures set forth in this Stipulation.

C.    The Parties are expected to reach agreements cooperatively on how to conduct discovery and should endeavor not to request the Court's assistance in resolving any discovery disputes including disputes over electronic discovery. Consistent with their obligations under applicable Federal Rules of Civil Procedure, the Parties will attempt to resolve, in person, in writing (including e-mail) or by telephone, disputes regarding the issues set forth herein prior to filing a motion with the Court, or otherwise seeking relief. If the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

D.    This Stipulation is intended to streamline production to promote a "just, speedy and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

E.    To the extent reasonably possible, the production of documents shall be conducted to maximize efficient and quick access to documents and minimize related discovery costs. The terms of this Stipulation shall be construed so as to ensure the prompt, efficient, and cost-effective exchange of information consistent with the Federal Rules of Civil Procedure, the Local Rules, and any orders by this Court.

F.    Except as specifically limited herein, this Stipulation governs the production of discoverable documents by the Parties during this litigation. In the event of transfer to other courts, this Stipulation will remain in effect in all respects, until adopted by the transferee court or replaced by a successor agreement.

G.    This Stipulation shall not enlarge, reduce, or otherwise affect the scope of discovery in this litigation as imposed by the Federal Rules of Civil Procedure, the Local Rules,

and the Court's orders, nor imply that discovery produced under the terms of this Stipulation is properly discoverable, relevant, or admissible in this or in any other litigation.

H.      Subject to this Stipulation, the Parties' objections and responses to requests for production of documents and interrogatories, all documents that are responsive to discovery requests and not designated as "privileged" shall be produced in the manner provided herein. Nothing in this Stipulation shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other privilege that may be applicable. Additionally, nothing in this Stipulation shall be deemed to waive or limit any Party's right to object to the production of certain electronically stored information, or to move for an appropriate order pursuant to the Federal Rules of Civil Procedure on the ground that the sources are not reasonably accessible because of undue burden or cost or on the ground that there is not good cause for the documents' production.

I.      The Parties agree to promptly alert all other Parties concerning any technical problems associated with complying with this Stipulation. To the extent compliance with this Stipulation imposes an undue burden with respect to any protocol, source, or search term listed herein, the Parties shall promptly confer in an effort to resolve the issue.

J.      Discovery concerning the preservation and collection efforts of another Party can contribute to unnecessary expense and delay and may inappropriately implicate work product and attorney-client privileged matter. If there is a dispute concerning the scope of a Party's preservation or collection efforts, the burden is on the Receiving Parties to fully explain their reasons for believing that additional efforts are reasonable and proportionate. In particular, before initiating discovery about preservation and collection, a Party shall confer with the other

3

Party concerning the specific need for such discovery, including its relevance to claims and defenses, and the suitability of alternative means for obtaining the information. Discovery into such matters may be compelled only on a showing of good cause considering at least the aforementioned factors.

## II.    General Production Format Protocols

A.    TIFFs: All production images will be provided as single page Group IV TIFFs of at least 300 dpi resolution. Page size shall be 8.5 x 11 inches unless in the reasonable judgment of the producing party, a particular item requires a different page size. Each image will use the Bates number of the first page of the document as its unique file name. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Hidden content, tracked changes or edits, comments, notes and other similar information viewable within the native file shall also be imaged so that this information captured on the produced image file. TIFF images should show any and all text and images which would be visible to the reader using the native software that created the document. For example, TIFF images of e-mail messages should include the BCC line. PowerPoint documents should be processed with hidden slides and all speaker notes unhidden, and should be processed to show both the slide and the speaker's notes on the TIFF/JPG image.

B.    Text Files: Each paper document or ESI item produced under this order shall be accompanied by a text file as set out below. All text files shall be provided as a single document level text file for each item, not one text file per page. Each text file shall be named to use the Bates number of the first page of the corresponding production item.

C.    OCR: Paper documents will be accompanied by an OCR file. The parties will endeavor to generate accurate OCR and will utilize quality OCR processes and technology. The parties acknowledge, however, that due to poor quality of the originals, not all documents lend

themselves to the generation of accurate OCR. OCR text files should indicate page breaks where possible.

D.    ESI: Emails and efiles will be accompanied by extracted text taken from the ESI item itself.

E.    Bates Numbering:

1.    All images must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant length (0- padded) across the entire production; (3) contain no special characters or embedded spaces; and (4) be sequential within a given document.

2.    If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production.

3.    The producing party will brand all TIFF images in the lower right hand corner with its corresponding bates number, using a consistent font type and size. The Bates number must not obscure any part of the underlying image. If the placement in the lower right-hand corner will result in obscuring the underlying image, the Bates number should be placed as near to that position as possible while preserving the underlying image.

F.    Parent-Child Relationships: Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved. For example, if a party is producing a hard copy printout of an e-mail with its attachments, the attachments should be processed in order behind the e-mail.

G.    Load Files: All production items will be provided with a delimited data file or "load file." Acceptable formats for the load file are .log, .opt, .dii .lfp, .txt, .dat, or .csv, as detailed in Appendix 1. Each party will designate its preferred load file format. The load file

5

must reference each TIFF in the corresponding production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load files in the production. Each deliverable volume should limit directory contents to approximately 1000 files per folder.

    H.    <u>Color:</u> Documents or ESI containing color need not be produced initially in color. Either party may subsequently request, by Bates number(s), a replacement set of images in color only to the extent that the Requesting Party demonstrates that the loss of the color detracts from the usability or reduces the ability to understand the information imparted in the original, however categorical or wholesale requests are deemed invalid. The production of documents and/or ESI in color shall be made in TIFF format or in an alternative format, such as single page JPEG format, that provides sufficient quality for the review of these documents and/or ESI. All requirements for productions stated in this Stipulation and Order regarding productions in TIFF format would apply to any productions of documents and/or ESI in color made in such an alternative format.

    I.    <u>Confidentiality Designations:</u> If a particular paper document or ESI item qualifies for confidential treatment pursuant to the terms of a Protective Order entered by the Court in this litigation, or has been redacted in accordance with applicable law or Court order, the designation shall be shown both on the face of all TIFFs pertaining to such item/document, and in the appropriate data field in the load file.

    J.    <u>De-duplication:</u> If a producing party elects to de-duplicate horizontally/globally, all custodians who were in possession of a de-duplicated document must be identified in the Custodian metadata field specified in Appendix 1. Additionally, all BCC recipients whose names would have been included in the BCC metadata field but are excluded because of

6

horizontal/global de-duplication, must be identified in the BCC metadata field specified in Appendix 1. In the event of rolling productions of documents or ESI items, the producing party will supplement the load files with updated Custodian and BCC information as needed.

Duplicates shall be identified by industry standard MD5 or SHA-1 hash value only. Any other methodology for identification of duplicates, including email field selection for hash value creation, must be discussed with the receiving party and approved in writing before implementation.

**III.    Production Format – Paper/Hardcopy**

A.    The Parties agree that responsive paper/hardcopy documents should be scanned as and produced electronically rather than in paper format, unless a Party establishes good cause for making such documents available via paper and reasonable access is provided to the opposing Party to review the documents.

B.    Coding Fields: The following information shall be produced in the load file accompanying production of paper documents to the extent captured at the time of collection: (a) BegBates, (b)EndBates, (c) BegAttach, (d) EndAttach, (e) PgCount, (f) Custodian, (g) Source Party, (h) TextPath, (i) Confidentiality, and (j) Redacted (Y/N). Additionally, all paper documents will be produced with a coding field named "Paper Document" marked with a "Y."

C.    Unitization of Paper Documents: The paper documents should be logically unitized for productions. Therefore, when scanning paper documents for production, distinct documents should not be merged into a single record, and a single document should not be split into multiple records and should be produced in the order in which they are kept in the usual course of business. The Parties will make their best efforts to unitize documents correctly.

7

D.    Custodian Identification: The parties will utilize best efforts to ensure that paper records for a particular custodian, which are included in a single production, are produced in consecutive Bates stamp order.

E.    OCR:  To the extent that the Producing Party OCR's the document for its own benefit, OCR should also be provided. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

**IV.    Production Format -- Electronically Stored Information**

A.    System Files: ESI productions may be de-nisted using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology. Other file types may be added to the list of excluded files by agreement of the parties.

B.    Electronically stored information ("ESI") should be produced in TIFF format according to the specifications herein, with the exception of source code, audio, video, and spreadsheet-type files, including, but not limited to, Microsoft Excel, CSV – which should be produced in native format. All ESI should be produced with a delimited, database load file that contains the metadata fields listed in Appendix 1, attached hereto, to the extent captured at the time of the collection.  To the extent that metadata does not exist, is not reasonably accessible or available for any documents produced, or would be unduly burdensome to provide, nothing in this Stipulation shall require any Party to extract, capture, collect or produce such data. An .opt image cross-reference file should also be provided for all TIFF images.  If a document is produced in native format, a single-page Bates-stamped TIFF image slip-sheet containing the confidential designation and text stating the document has been produced in native format

8

should also be provided. If documents requested in native format require redactions, the parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that either party believes that native files should be produced for a specific document or class of documents not required to be produced in native format pursuant to this paragraph or to the extent records do not easily conform to native or TIFF format (*i.e.*, structured data), the parties should meet and confer in good faith.

**V.    Previously Collected and Produced Data**

The Parties agree that there is no obligation to recollect or reproduce any prior collections or productions collected or produced prior to the entry of this ESI Stipulation, in this matter. This includes not requiring either party to reproduce productions in the production format outlined in this ESI Stipulation.

**VI.    Production – Handling Completely Non-Responsive Documents Attached to Production-Eligible Documents**

In an effort to avoid unnecessary expense and burden, the parties agree that completely non-responsive documents attached to an otherwise production-eligible document can be produced as a single-page Bates-stamped TIFF image slip-sheet containing the text stating the document has been withheld as non-responsive. For all attachments withheld as non-responsive, the producing party agrees to produce as part of the metadata load files the ESI metadata listed in Appendix 1 (with the exception of text). When producing responsive attachments, the parent email will be produced, regardless of responsiveness unless otherwise protected from disclosure.

9

### VII.   Production Format - Structured Data

To the extent a response to a non-objectionable discovery request requires production of discoverable electronic information contained in a database, the parties will meet and confer to discuss the most appropriate and cost-effective production format, which may include an export of data.

### VIII.   Production Format – Social Media

ESI from social media websites (e.g., LinkedIn, Facebook, Twitter) may be produced by capturing information through "screen shots" or "screen captures" and converting same into images along with corresponding extracted text or OCR unless the Parties agree to perform bulk exports of accounts, such as by exporting out a profile from LinkedIn or downloading a copy of an individual's Facebook data or archive

### IX.   Production Format - Media

Documents shall be exchanged on DVD-ROMs, CD-ROMs, USB drives, portable hard drives or through secure file transfer protocols (e.g., FTP) or similar secure electronic transmission. The production media shall be labeled with the Volume Number along with the Bates Number range(s) of the materials, and where not practicable to do so, may be provided in an accompanying letter. Any document production that may contain "non-public personal information" (as defined in the Gramm-Leach-Bliley Act) or "Confidential Health Information" (as defined in the Confidentiality Agreement that is protected under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") Privacy Rule, 45 C.F.R., pts. 160 and 164, and/or other applicable state or federal law or regulation concerning confidential health information) shall be produced in encrypted form and the production media shall be labeled "MAY CONTAIN NON-PUBLIC PERSONAL INFORMATION" or "MAY CONTAIN

10

CONFIDENTIAL HEALTH INFORMATION" as applicable. If a Producing Party encrypts or "locks" the production, the Producing Party shall send, under separate cover, an explanation of how to decrypt the files.

**X.      Processing and Other Specifications**

A.      On-Site Inspections: On-site inspections of ESI under Rule 34(b) shall not be permitted absent a good-faith showing by the Requesting Party of good cause and specific need or upon agreement of the parties. As appropriate, the Court may condition on-site inspections of ESI, as authorized in the preceding sentence, to be performed by independent third-party experts, and the Court may set other conditions deemed appropriate by the Court.

B.      Bates Numbering and Confidentiality Designations: Each page of a produced image shall have a legible, unique Bates number that includes an alpha prefix along with a fixed number, i.e., ABC00000001, electronically "burned" onto the image at a location that does not unreasonably obliterate or obscure any information from the source document. Each image page or native file assigned a Bates number shall be assigned a Bates number that is unique and maintains a constant length across the entire document production. No other legend or stamp will be placed on the document image other than confidentiality legends (where applicable) or redactions.

C.      ESI Date and Time Processing:

1.      Each Party's ESI should be processed using a consistent Time Zone for all data. The Party shall share the Time Zone selected for processing of its data with the other Party.

2.      ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

D.    Email Thread Suppression: Each Party may also deduplicate e-mails in such a
way as to eliminate earlier or incomplete chains of e-mails, and produce only the most complete
iteration of an e-mail chain.

E.    Embedded Objects: Some Microsoft Office and .RTF files may contain
embedded objects. Such objects typically are the following file types: Microsoft Excel, Word,
PowerPoint, Project, Outlook, Access and PDF. Subject to claims of privilege and immunity, as
applicable, objects with those identified file types shall be extracted as separate files and shall be
produced as attachments to the file in which they were embedded unless otherwise subject to an
exception provided within this Stipulation.

F.    Compressed Files: Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, ZIP) shall
be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into
the lowest possible compression resulting in individual files.

G.    Redactions: The producing party can redact documents for privilege or otherwise
protected information, personally identifiable information and non-responsive content within a
responsive document. If, during the course of discovery, the parties identify other kinds of
information that any party has a reasonable basis for redacting, the parties will meet and confer
regarding it before such redactions are made. If the issue cannot be resolved, the parties will
seek resolution from the Court.

H.    No Designation of Discovery Requests: Production of hard copy documents and
ESI in the reasonably usable form set out in this Stipulation need not include any reference to the
requests to which a document or ESI may be responsive.

I.    Foreign Language Documents: To the extent that documents or ESI are produced
that contain languages other than English, in whole or in part, the Producing Party shall produce

12

all foreign language document and ESI in the original language. The Producing Party has no obligation to provide a translation of the documents or ESI or any portion thereof.

## XI.    Identification and Collection of Documents

    A.    Except at otherwise agreed upon in this Stipulation, the Parties will meet and confer in an effort to agree upon the following:

        1.    List of records custodians;

        2.    Search methodology to be applied, including, but not limited to, search terms and date restrictions; and

        3.    Location of relevant data sources including custodial and non-custodial.

    B.    Search Methodology:

        1.    Email and Non-Email: the Parties agree to search for and produce unique, responsive records from sources of hard copy and ESI to the extent a custodian reveals that such locations may contain responsive information and such data is within the possession, custody or control of the Producing Party.

        2.    The mere fact that a document is hit or captured by the application of any agreed upon search terms does not mean that such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation. Determinations of discoverability, responsiveness and privilege shall be made by the Producing Party.

If the Parties cannot resolve any dispute regarding this section, consistent with The Sedona Conference Principles, Principle 6, the responding party is best suited to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information.

**XII.    Preservation**

    A.    The Parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody or control.

    B.    The Parties agree that the circumstances of this case do not warrant the preservation, collection, review, or production of ESI that is not reasonably accessible because they anticipate that enough relevant information can be yielded from reasonably accessible sources and, as necessary and appropriate, supplemented with deposition discovery  Moreover, the remote possibility of additional relevant information existing in not reasonably accessible sources is substantially outweighed by the burden and cost of preservation, collection, review and production of ESI from sources that are not reasonably accessible. The Parties agree that the following ESI is not reasonably accessible:

    1.    Deleted, shadowed, damaged, residual, slack, fragmented, or other data only accessible by forensics and "unallocated" space on hard drives.

    2.    Data stored in random access memory ("RAM"), temporary files, or other ephemeral data that is difficult to preserve without disabling operating systems.

    3.    On-line access data such as temporary internet files, history, cache files, cookies, and the like, wherever located.

    4.    Data stored on photocopiers, scanners and fax machines.

    5.    Data in metadata fields that are frequently updated automatically, such as last-opened dates.

**XIII.    Privilege and Privilege Logs**

    A.    <u>Production of Privilege Logs:</u> For any document withheld in its entirety

14

or produced but redacted, the producing party will produce privilege/redaction logs in Excel format or any other format that permits electronic sorting and searching, except that the Parties shall have no obligation to log information described in Section XIII.B.

B.  The Parties agree that certain privileged communications or documents need not be included in a privilege log: (a) communications to inside counsel related to this litigation, (b) work product of counsel and parties, (c) any internal communications within a law firm, (d) any communications regarding litigation holds or preservation, collection, or review in this or any Litigation and (e) any communication or document that post-date the filing of the complaint.

C.  In an effort to avoid unnecessary expense and burden, the Parties agree that, for documents redacted or withheld from production on the basis of attorney-client privilege, work product doctrine and/or any other applicable privilege, the Producing Party will prepare a summary log containing, for each document (except those exempted above) claimed as privileged, an export of all or a subset of the metadata fields listed below (as agreed upon by the Parties) to the extent such information exists and has not been suppressed or redacted for privilege. The export should include, at a minimum, the following information from the top line email:

- BEGNO (if not produced) or BEGBATES (if produced)
- ENDNO (if not produced) or ENDBATES (if produced)
- BEGATTACH (if not produced) or BEGBATESATTACH (if produced)
- ENDATTACH (if not produced) or ENDBATESATTACH (if produced)
- CUSTODIAN
- FROM
- TO
- CC
- BCC
- SUBJECT
- SENTDATE
- RECEIVEDDATE
- FILENAME
- FILEEXT

15

- AUTHOR
- CREATEDDATE
- MD5 HASH
- REDACTED (yes or no)
- PRIV_TYPE (e.g., Attorney-Client; Attorney Work Product)

D.    The Parties further agree that this summary log satisfies the producing party's

obligations under Federal Rule of Civil Procedure 26(b)(5), so long as the party asserting the

privilege provides sufficient information such that other parties can ascertain whether the

privilege applies. If the requesting party requires further information, it shall explain in writing

the need for such information and identify, by Bates number or other unique identifier, each

document for which it seeks this information. Within twenty-one (21) days of such a request, the

Producing Party must either (i) provide the requested information or (ii) challenge the request. If

a Party challenges a request for further information, the Parties shall meet and confer to try to

reach a mutually agreeable solution. If they cannot meet within 10 days or agree, the Parties must

request a conference with the Court before any motions may be filed.

**XIV.  Production of Privileged or Otherwise Protected Material**

A.    No Waiver by Disclosure. This order is entered pursuant to Rule 502(d) of the

Federal Rules of Evidence. Subject to the provisions of this Order, if a party or subpoenaed

nonparty (the "Disclosing Party") discloses information in connection with the pending litigation

that the Disclosing Party thereafter claims to be privileged or protected by the attorney-client

privilege or work product protection ("Protected Information"), the disclosure of that Protected

Information will not constitute or be deemed a waiver or forfeiture – in this or any other federal

or state action – of any claim of privilege or work product protection that the Disclosing Party

would otherwise be entitled to assert with respect to the Protected Information and its subject

matter.

16

B.    Notification Requirements; Best Efforts of Receiving Party. A Disclosing Party must promptly notify the party receiving the Protected Information ("the Receiving Party"), in writing, that it has disclosed that Protected Information without intending a waiver by the disclosure. Upon such notification, the Receiving Party must · unless it contests the claim of attorney-client privilege or work product protection in accordance with paragraph (c) – promptly (i) notify the Disclosing Party that it will make best efforts to identify and return, sequester, or destroy (or in the case of electronically stored information, delete) the Protected Information and any reasonably accessible copies it has and (ii) provide a certification that it will cease further review, dissemination, and use of the Protected Information. Within five business days of receipt of the notification from the Receiving Party, the Disclosing Party must explain as specifically as possible why the Protected Information is privileged.

C.    Contesting Claim of Privilege or Work Product Protection. If the Receiving Party contests the claim of attorney-client privilege or work product protection, the Receiving Party must – within five business days of receipt of the notice of disclosure – move the Court for an Order compelling disclosure of the information claimed as unprotected (a "Disclosure Motion"). The Disclosure Motion must be filed under seal and must not assert as a ground for compelling disclosure the fact or circumstances of the disclosure. Pending resolution of the Disclosure Motion, the Receiving Party must not use the challenged information in any way or disclose it to any person other than those required by law to be served with a copy of the sealed Disclosure Motion.

D.    Stipulated Time Periods. The parties may stipulate to extend the time periods set forth in paragraphs (b) and (c).

17

E.    Attorney's Ethical Responsibilities. Nothing in this order overrides any attorney's ethical responsibilities to refrain from examining or disclosing materials that the attorney knows or reasonably should know to be privileged and to inform the Disclosing Party that such materials have been produced.

F.    Burden of Proving Privilege or Work-Product Protection. The Disclosing Party retains the burden – upon challenge pursuant to paragraph (c) – of establishing the privileged or protected nature of the Protected Information.

G.    *In camera* Review. Nothing in this Order limits the right of any party to petition the Court for an *in camera* review of the Protected Information.

H.    Voluntary and Subject Matter Waiver. This Order does not preclude a party from voluntarily waiving the attorney-client privilege or work product protection. The provisions of Federal Rule 502(a) apply when the Disclosing Party uses or indicates that it may use information produced under this Order to support a claim or defense.

I.    Review. Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production. Further nothing contained herein is intended to reduce the time frame provided to the Disclosing Party to complete their review should they choose to do so.

J.    Proportionality. Nothing contained herein is intended to limit a party's proportionality and burden arguments specifically related to the costs to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

18

K.    Rule 502(b)(2).  The provisions of Federal Rule of Evidence 502(b)(2) are
inapplicable to the production of Protected Information under this Order.

## XV.    Third Party Documents

A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this
Stipulation with the subpoena and state that the Parties to the litigation have requested that third
Parties produce documents in accordance with the specifications set forth herein.  The Issuing
Party shall produce any documents obtained pursuant to a non-Party subpoena to the opposing
Party.  Nothing in this Stipulation is intended or may be interpreted to narrow, expand, or
otherwise affect the rights of the Parties or third Parties to object to a subpoena.

## XVI.    Good Faith

The Parties shall make their best efforts to comply with and resolve any differences
concerning compliance with this Stipulation.  If a Producing Party cannot comply with any
material aspect of this Stipulation, such Party shall inform the Requesting Party as to why
compliance with the Stipulation was unreasonable or not possible within fifteen (15) days after
so learning.  No Party may seek relief from the Court concerning compliance with the Stipulation
unless it has conferred with other affected Parties to the action.

## XVII. No Effect on Discovery or Admissibility

This Stipulation does not address, limit, or determine the relevance, discoverability,
agreement to produce, or admissibility of ESI.  The Parties are not waiving the right to seek any
discovery, and the Parties are not waiving any objections to specific discovery requests.  Nothing
in this Stipulation shall be interpreted to require disclosure of materials that a Party contends are
not discoverable or are protected from disclosure by the attorney-client privilege, the work
product doctrine, or any other privilege that may be applicable.  Nothing in this Stipulation shall

19

be construed to affect the admissiblity of any document or data. All objections to the

admissibility of any document or data, except as to the authenticity of the documents produced

by a Party as to which that Party stipulates, are preserved and may be asserted at any time

**XVIII. Costs and Burden**

Generally, the costs of discovery shall be borne by each party. However, the court may

apportion the costs of electronic discovery upon a showing of good cause.

**XIX.    Modification**

This Stipulation may be modified by a Stipulated Order of the Parties or by the Court for

good cause shown.

Dated:    May 28, 2019

Nicholas M. Centrella, PA Bar No. 67666
Howard M. Klein, PA Bar No. 33632
Benjamin O. Present, PA Bar No. 322682
ncentrella@conradobrien.com
CONRAD O'BRIEN PC
1500 Market Street
Centre Square, West Tower, Suite 3900
Philadelphia, PA 19102
Telephone:    +1.215.864.9600
Facsimile:    +1.215.864.9620

*Attorneys for Plaintiffs*

Dated: June 3, 2019

Brian W. Shaffer, PA Bar No. 78851
Elisa P. McEnroe, PA Bar No. 206143
brian.shaffer@morganlewis.com
elisa.mcenroe@morganlewis.com
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA  19103-2921
Telephone:    +1.215.963.5000
Facsimile:    +1.215.963.5001

*Attorneys for the Educational Commission for
Foreign Medical Graduates*

SO ORDERED:

BEETLESTONE, J.

20

**APPENDIX 1: ESI METADATA**
**AND CODING FIELDS**

| Field | Example / Format | Description |
|---|---|---|
| BEGBATES | ABC00000001 (Unique | The Document ID Number associated with the first page of the document. |
| ENDBATES | ABC00000003 (Unique ID) | The Document ID Number associated with the last page of the document. |
| BEGATTACH | ABC00000001 (Unique ID Parent- Child | The Document ID Number associated with the first page of the parent document. |
| ENDATTACH | ABC00000008 (Unique ID Parent- Child | The Document ID Number associated with the last page of the last attachment. |
| PAGES | 3 (Numeric) | The number of pages for a document. |
| VOLUME | VOL001 | The name of CD, DVD or Hard Drive (vendor assigns). |
| RECORDTYPE | Options: e-mail, attachment, hard copy, | The record type of a document. |
| DESIGNATION | Confidential, Highly Confidential, etc. | Please populate this field for all documents that carry a confidentiality designation, separate and apart from the stamping of produced TIFFs. If the document is only provided in native, this field would be populated with the designation the native file should have if printed. |
| REDACTED | Yes | Please populate this field for all documents that have a redaction. |
| SENTDATE | MM/DD/YYYY | The date the email was sent. |

| SENTTIME | HH:MM | The time the email was sent. |
|---|---|---|
| CREATEDDATE | MM/DD/YYYY | The date the document was created.<br><br>*Parties acknowledge that the CREATEDATE field may not actually reflect the date the file was created, due to the ease of change to that field and the technical definition of the field (e.g., the created date and time reflects the date when the file was created in that particular location on the computer or on the other storage device location) |
| CREATETIME | HH:MM | The time the document was created.<br><br>*Parties acknowledge that the CREATETIME field may not actually reflect the time the file was created, due to the ease of change to that field and the technical definition of the field (e.g., the created date and time reflects the time when the file was created in that particular location on the computer or on the other storage device location). |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| TIMEZONE PROCESSED | PST, CST, EST, etc. | The time zone the document was processed in. |
| FILEPATH | i.e. John Smith/E-mail/Inbox | Location of the original document. The source should be the start of the |
| AUTHOR | jsmith | The author of a document from extracted metadata.<br><br>*Parties acknowledge that the Author field may not actually reflect the author of the document. |
| LASTEDITEDBY | jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name or e-mail of the sender of an e-mail. |

2019-05-29 20 56 39 (GMT)

Morgan Lewis From Garden, Angela P

| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the recipient(s) of an e-mail. |
|---|---|---|
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the copyee(s) of an e-mail. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the blind copyee(s) of an e-mail. |
| SUBJECT | | The subject line of the e-mail. |
| DOCTITLE | | The extracted document title of a document. |
| IMPORTANCE | 0 or 1 or 2 | E-mail Importance Flag (0 = Normal, 1 = Low Importance, 2 = High Importance) |
| CUSTODIAN | John Smith; Tim Jones; Finance Department | The custodian/source of a document. NOTE: If the documents are de-duped on a global level, this field should contain the name of each custodian from which the document originated. |
| ATTACH COUNT | Numeric | The number of attachments to a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including imbedded attachments). |
| MD5HASH (or | | The MD5 Hash value or "de-duplication key" assigned to a document. |
| EMAIL CONVERSATION INDEX | | ID used to tie together e-mail threads. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The relative path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text or OCR of the document.  There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers. If the attachment or e-file does not extract any text, then OCR for the document should be provided (only to the extent the Producing Party OCR's the document for their own benefit). |

** As it relates to the CUSTODIAN metadata field above, the Producing Party reserves the right to produce in multiple fields (e.g., CUSTODIAN + DUPLICATE CUSTODIAN) since the metadata may already be exported and logged as such.

** Same is true with all DATE and TIME Fields.  These fields can be provided in separate fields or be combined into a single field as long as the required information is produced in the load file.