**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MONIQUE RUSSELL, JASMINE RIGGINS, ELSA M. POWELL AND DESIRE EVANS, | CIVIL ACTION NO. 18-5629 |
| **Plaintiffs,** | |
| v. | |
| EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES, | |
| **Defendant.** | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**</u>

# **TABLE OF CONTENTS**

Table of Contents ...................................................................................................... ii

Table of Authorities .................................................................................................. iii

Factual Background .....................................................................................................1

Class Representatives .................................................................................................7

Experts .........................................................................................................................8

Argument ...................................................................................................................10

   I.  Certifying the common issues satisfies Rule 23(a)....................................11

      A.  The class members are sufficiently numerous.......................................12

      B.  There are common questions of fact and law.........................................13

      C.  The claims of the named Plaintiffs are typical of those of the class. ...................15

      D.  The adequacy requirement is satisfied here. ..........................................16

  II.  **Plaintiffs also satisfy the requirements of Rule 23(c)(4)**................................17

  A.  Certification of liability or the Common Issues satisfies the ascertainability requirement, if that requirement even applies.............................................18

  B.  Certification of the issue of liability or the Common Issues satisfies Rule 23(c)(4)...20

CONCLUSION ..........................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adkisson v. Jacobs Eng'g Grp., Inc.*,
  370 F. Supp. 3d 826 (E.D. Tenn. 2019) ................................................................. 15

*Amchem Prods. v. Windsor*,
  521 U.S. 617 (1997) ............................................................................................... 12

*Amgen, Inc. v. Conn. Retirement Plans and Trust Funds*,
  568 U.S. 455 (2013) ............................................................................................... 12

*Baby Neal v. Casey*,
  43 F.3d 48 (3d Cir. 1994) ................................................................................ 16, 18

*Byrd v. Aaron's Inc.*
  784 F.3d 154 (3d Cir. 2015) .................................................................................. 18

*Cannon v. Cherry Hill Toyota*,
  184 F.R.D. 540 (D.N J, 1999) ............................................................................... 13

*Carrera v. Bayer Corp.*,
  727 F.3d 300 (3d Cir. 2013) .................................................................................. 18

*Castano v. Am. Tobacco Co.*,
  84 F.3d 734 (5th Cir. 1996) ................................................................................... 19

*Chiang v. Veneman*,
  385 F.3d 256 (3d Cir. 2004) ....................................................................... 14, 19, 21

*Gates v. Rohm & Haas Co.*,
  655 F.3d 255 (3d Cir. 2011) ............................................................................ 19, 20

*Gonzalez v. Corning*,
  885 F.3d 186 (3d Cir. 2018) ............................................................................ 12, 20

*Griffith v. United Air Lines, Inc.*,
  203 A.2d 796 (Pa. 1964) ........................................................................................ 23

*Gulf Oil Co. v. Bernard*,
  452 U.S. 89 (1981) ................................................................................................. 12

*Gunnells v. Healthplan Serv., Inc.*,
  348 F.3d 417 (4th Cir. 2003) ................................................................................. 15

*Hohider v. United Parcel Serv., Inc.*,
  574 F.3d 169 (3d Cir. 2009) ............................................................................ 20, 21

*In re Deepwater Horizon*,
  739 F.3d 790 (5th Cir. 2014) ................................................................................. 20

*In re Hydrogen Peroxide Antitrust Litig.*,
  552 F.3d 305 (3d Cir. 2008) .................................................................................. 12

*In re Paoli R.R. Yard PCB Litig.*,
  113 F.3d 444 (3d Cir. 1997) ............................................................................ 24, 25

*In re Titanium Dioxide Antitrust Litig.*,
  284 F.R.D. 328 (D. Md. 2012) .............................................................................. 25

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) .................................................................................. 16

*Jane Doe 30 v. Bradley,*
   2012 WL 5949216 (Del. Super. Nov. 19, 2012) ....................................................... 17

*Johnston v. HBO Film Mgmt., Inc.,*
   265 F.3d 178 (3d Cir. 2001) ............................................................................... 13

*Lisa v. Saxon Mortgage Servs.*
   Nos. 11-4586, 12-5366, 2016 WL 5930846 (E.D. Pa. 2016) ................................. 19

*Marcus v. BMW of N. Am., LLC,*
   687 F.3d 583 (3d Cir. 2012) ........................................................................... 14, 18

*Martin v. Behr,*
   896 F.3d 405 (6th Cir. 2018) ........................................................................ passim

*Mielo v. Steak 'n Shake Operations, Inc.,*
   897 F.3d 467 (3d Cir. 2018) ............................................................................... 13

*Robinson v. Metro-North Commuter R.R. Co.,*
   267 F.3d 147 (2d Cir. 2001) ............................................................................... 24

*Steering Comm. v. Exxon Mobil Corp.,*
   461 F.3d 598 (5th Cir. 2006) ............................................................................. 20

*Sullivan v. DB Investments, Inc.,*
   667 F.3d 273 (3d Cir. 2011) ........................................................................... 11, 12

*Wallace v. Powell,*
   No. 3:09-CV-0291, 2013 WL 2042369 (M.D. Pa. May 14, 2013) ............................ 15

*Wal-Mart Stores Inc. v. Dukes,*
   131 S. Ct. 2541 (2011) ...................................................................................... 13

*Young v. Nationwide Mut. Ins. Co.,*
   693 F.3d 532 (6th Cir. 2012) ............................................................................. 14

## **RULES**

Federal Rule of Civil Procedure 23(a) ..................................................................... passim
Federal Rule of Civil Procedure 23(c)(4) ................................................................. passim

## **OTHER AUTHORITIES**

Newberg on Class Actions, § 4:89 (5th ed. 2012) ................................................ 19, 24
Principles of the Law of Aggregate Litigation §§ 2.02 ............................................... 20
Restatement (Second) of Torts § 313 ............................................................... 11, 14
Restatement (Second) of Torts § 324A ............................................................. 11, 14
Restatement (Second) of Torts § 876 ............................................................... 11, 14

Plaintiffs Monique Russell, Jasmine Riggins, Elsa Powell, and Desire Evans, on behalf of themselves and all others similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in Support of Motion for Class Certification.

## FACTUAL BACKGROUND

This action arises from allegations that Defendant Educational Commission for Foreign Medical Graduates ("ECFMG") was negligent in failing to properly investigate and provide certification to Oluwafemi Igberase a/k/a Charles Akoda, which enabled Akoda to enter a medical residency program in obstetrics and gynecology at Howard University in Washington, D.C. and go on to treat hundreds of women at Howard and in Prince George's County, Maryland—despite the fact that he obtained certification from ECFMG based on identity and document fraud. As Plaintiffs allege, and as internal memoranda document, ECFMG knew of Igberase's fraud, but failed to adequately investigate it or refer Igberase's conduct to ECFMG's Medical Education Credentials Committee. ECFMG failed to inform state medical boards, residency programs, and hospitals of Igberase's fraud, even as they submitted reports to these entities upon request that attested that Igberase was appropriately certified. As a result, hundreds of women were sexually assaulted by Igberase: they were examined in the most intimate fashion, without knowing that Igberase had been certified and allowed to practice medicine based on identity fraud—information that ECFMG clearly knew but chose not to disclose to the health care entities that relied on it for primary source verification. Many experienced touching and comments that in and of themselves constituted sexual assault, sexual harassment, a boundary

violation, or medical malpractice. Plaintiffs never would have consented to being examined or treated by Igberase had they known the true state of affairs.

ECFMG's stated mission is to promote quality health care for the public by certifying international medical graduates for entry into U.S. graduate medical education. *See* Ex. 1. To accomplish its mission, ECFMG, among other things, verifies credentials and provides other services to healthcare professionals worldwide. *Id.*

Persons who receive their medical education outside of the United States and Canada are referred to as International Medical Graduates ("IMG's"). *See* Ex. 2. In order for an IMG to practice medicine in the United States, the IMG must apply to ECFMG, which verifies that the IMG has obtained a diploma from a medical school recognized by the country in which the school is situated; that the school is listed in the International Medical Education Directory; that the curriculum requirement is a minimum of 4 academic years; that the IMG has passed steps 1 and 2 of the United States Medical Licensing Examination (USMLE), has passed the Clinical Skills Assessment Examination and has passed the Test of English as a Foreign Language. *See* Ex. 3 at 1–2. Additionally, the ECFMG uses primary source verification of the IMG's diploma. *Id.* When all of this is satisfactorily completed, the ECFMG issues a certificate to the IMG. *Id.*

To enter programs of graduate medical education in the United States accredited by the American College of Graduate Medical Education ("ACGME"), IMG's must hold a valid ECFMG certificate. *See* Ex. 3 at 1. When an IMG applies to a residency program using the Electronic Residency Application Service ("ERAS"), ECFMG automatically transmits an ECFMG certification status report to the residency program to which the IMG applies. Ex. 4. ECFMG provides each IMG applicant with a unique identification number, known as a token, which allows the IMG applicant to access the AAMC's ERAS web site to complete the ERAS

application. *Id.* The IMG applicant also sends supporting documents to the ECFMG for scanning and transmission. *Id.* The ECFMG also transmits the IMG applicants' USMLE transcript, as requested by the applicant. *Id.*

An IMG must have ECFMG certification to enter an accredited residency program and obtain a state medical license unless the state exercises its authority to make a special exception. Ex. 45 at 230–31.ECFMG has undertaken to provide hospitals with a service to verify a physician's credentials, which fulfills the hospital's obligation to perform primary-source verification. *Id.* at 48–50. As discussed, ECFMG has also undertaken to provide the same service to residency programs. *Id.* at 45.

On April 6, 1992 ECFMG received an application from Oluwafemi Charles Igberase ("Igberase") to take the foreign medical graduate examination in Medical Sciences and the ECFMG English Test. *See* Ex. 5 at 0000155. He provided ECFMG with a diploma from the University of Ibadan dated June 19, 1987. *See* Ex. 6. Igberase failed both the basic medical science and clinical science components of the FMGEMS and passed the ECFMG English test. Ex. 7 at 0000075. He failed the Day 1 test again but passed it on the third try. *Id.* On October 4, 1993, after he successfully completed steps 1 and 2 of the USMLE, ECFMG issued to him certificate number 0-482-700-2. *See* Ex. 8 at 0003572.

On March 30, 1994, ECFMG received an application from "Igberase Oluwafemi Charles" ("Charles") to take Steps 1 and 2 of the USMLE examinations. Ex. 9 at 0000407. He provided a date of birth that was different than the date of birth provided by Igberase. The diploma he submitted was the identical diploma that had been submitted by Igberase. On December 14, 1994, after Charles successfully completed the USMLE examinations, ECFMG issued to him certificate number 0-519-573-0.

3

ECFMG subsequently began to investigate whether Igberase and Charles were the same person. Ex. 8 at 0003572–73. Igberase/Charles explained his actions in a handwritten letter dated July 14, 1995 in which he admitted he had lied about not taking the examination previously and why he rearranged his names. *See* Ex. 10 at 0000433–37. As Igberase explained, he applied under a false identity because he had been rejected from residency programs for repeatedly failing the USMLE examinations. *Id.* at 0000433–34.

The ECFMG Committee on Medical Education Credentials found that Igberase/Charles had engaged in "irregular behavior," invalidated certificate number 0-519-573-0 issued to Charles and revoked certificate number 0-482-700-2 issued to Igberase. Ex. 11.[1] Charles appealed the decision which led to a hearing on July 10, 1996. Ex. 12. The ECFMG Review Committee for Appeals affirmed the decision of the ECFMG Committee on Medical Education Credentials to revoke certificate number 0-482-700-2 but limited the length of the revocation to a period of five years from July 10, 1996, i.e., to July 10, 2001. Ex. 14. Ultimately, ECFMG revoked permanently this certificate. Ex. 15.

On January 3, 1996 and again on August 30, 1996, ECFMG received an application from "John Nosa Akoda" to take Steps 1 and 2 of the USMLE examinations. Ex. 16 at 0000703, Ex. 17 at 0000643. He provided ECFMG with a diploma from the University of Benin dated February 6, 1998. Ex. 18. On August 18, 1998, after he successfully completed the required examinations, ECFMG issued to him certificate number 0-553-258-5. *See* Ex. 19. At some time in 1998 he provided ECFMG with social security number xxx-xx- 9065. *See* Ex. 20, 22.

---

[1] Irregular behavior is defined as "all actions … on the part of applicants … that would or could subvert the … certification … processes of ECFMG …." Ex. 12.

In July 1998, Akoda entered the graduate residency program at Jersey Shore Medical Center. *See* Ex. 20. On July 24, 1998, ECFMG received a Request for Permanent Revalidation of Standard ECFMG Certificate from Akoda due to his having entered this program. On September 2, 1998, ECFMG sent this validated form. *See* Ex. 20.

 By letter dated August 11, 2000 from Dr. James McCorkel, ECFMG was notified that the Jersey Shore Medical Center graduate residency program in which Akoda was enrolled was investigating allegations that Akoda had used a social security number issued to a person named Oluwafemi Charles Igberase. *See* Ex. 21. ECFMG advised Dr. McCorkel that Akoda had provided ECFMG with social security no. xxx-xx-9065. *See* Ex. 22 at 0000552. This is the same number Akoda provided to the Jersey Shore Medical Center. *See* Ex. 21.

ECFMG sent Akoda a "charge letter" dated August 22, 2000 advising that ECFMG had received information alleging that Akoda may have engaged in irregular behavior. *See* Ex. 23 at 0004194–95. Akoda responded by representing to ECFMG that Igberase Oluwafemi Charles was his cousin and admitting that he had used his cousin's social security number. *See* Ex. 24. Akoda presented a purported Nigerian passport and a Nigerian "international driving permit." Ex. 25.

In December 2000, ECFMG learned that Jersey Shore Medical Center dismissed Akoda from its graduate residency program because he used a false social security number – that of his cousin Charles Igberase - and because the green card he had provided the hospital was inconsistent with a subsequent green card he also provided. Ex. 26. In a December 22, 2000 memorandum, William Kelly, Manager of the Medical Education Credentials Department of ECFMG, advised in a memorandum intentionally not made part of the official file that he and Dr. McCorkel both believed Igberase and Akoda were the same person. Ex. 27. But he concluded that he did not think there was enough information to refer the matter to the ECFMG

Credentials Committee for investigation. *Id.* Per Kelly, if it had been, "the irregular behavior he would have been charged with would be providing false information to ECFMG on an application, among other things." Ex. 33 at 158:1–3.

The members of ECFMG's Board and Credentials Committee had no awareness of the matter until November 2016. Ex. 45 at 171. This contrasted with ECFMG's practice of referring an allegation to the Committee for investigation if a charge letter was sent. Ex. 45 at 82. ECFMG never notified anyone outside the organization that Akoda had been dismissed from the Jersey Shore residency program, such as the hospitals and medical boards to which it provided reports verifying Akoda's ECFMG certification status. Ex. 45 at 181–82.

In October 2006, Akoda used the ERAS of ECFMG to apply to Howard University Medical Center for a graduate residency program, which included three purported letters of reference. Ex. 28. Although he was not part of the ERAS process (Ex. 33 at 161:22–24), William Kelly of ECFMG attempted to verify the authenticity of these three letters of reference (Ex. 29) because he had concerns about Akoda's credibility (*id.* at 200:18–23). Kelly did not typically take this action with regard to residency applicants. *Id.* at 205:15–20. He never received responses from the persons passed off as references for Akoda. *Id.*

In or about October 2011 Akoda obtained privileges and became a member of the medical staff at Prince George's Hospital Center under the name "Charles John Nosa Akoda" which was different than the name on his ECFMG certification and also using a fake permanent resident card, a fake Maryland driver's license, fake Nigerian passport and fake letters of recommendation. Ex. 30 at 0000019. Akoda began seeing patients at Prince George's Hospital Center on or about November 5, 2011. ECF No. 1, Ex. A at ¶ 30.

On June 9, 2016, law enforcement executed search warrants at Akoda's residence, medical office and vehicle where they found fraudulent or altered immigration documents, medical diplomas, medical transcripts, letters of recommendation and birth certificates. ECF No. 1, Ex. A at ¶ 34. On November 15, 2016, Akoda signed a plea agreement admitting to misuse of a social security account number and admitting to being Igberase. Ex. 30 at 0000020. On December 19, 2016, ECFMG revoked certificate number 0-482-700-2 issued to Akoda, based upon his plea agreement with the U.S. Ex. 31. In 2017, Akoda was sentenced by the United States District Court for the District of Maryland to six (6) months incarceration, followed by probation. ECF No. 1, Ex. A at ¶ 37. Prince George's Hospital Center then terminated his privileges and the Maryland Board of Physicians revoked his medical license. *Id.* at ¶¶ 38–39. In 2017, ECFMG revoked Akoda's certification (Ex. 45 at 224–225) on the basis of his plea bargain (*id.* at 170-171).

As Plaintiffs allege, none of Igberase's patients (the Plaintiffs and others similarly situated) knew his true identity or of his fraudulent background and conduct. ECF No. 1, Ex. A at ¶¶ 44–45. Moreover, none of Igberase's patients were capable of giving informed consent to be touched by him. *Id.* at ¶ 46. On many occasions, Igberase touched and penetrated his patients without consent and on false pretenses, constituting battery, and committed ongoing boundary violations by performing inappropriate examinations of a sexual nature and utilizing inappropriate language. *Id.* at ¶ 47.

## CLASS REPRESENTATIVES

### A.    Monique Russell

Monique Russell is a 42 year old resident of Annapolis, Maryland. Ex. 33 at 12. Akoda delivered her son in 2016. *Id.* at 41. Ms. Russell became aware of Akoda's and ECFMG's

conduct through various sources. *Id.* at 47–50. She has suffered from emotional distress as a result of learning about Akoda's conduct. *Id.* at 75. Ms. Russell is pursuing the class action in part because she believes that every woman who has ever been a patient of Akoda should know that he is not a real doctor. *Id.*

**B.**    **Jasmine Riggins**

Ms. Riggins is a 27 year old mother of three children. Ex. 35 at 20. She lives in Washington, DC. *Id.* She was a patient of Akoda between August 2012 and March 2013. *Id.* at 121. Akoda delivered her second child by C-section. *Id.* As a result of what she learned about Akoda, she has suffered emotional distress. *Id.* at 56.

**C.**    **Elsa Powell**

Ms. Powell is a 32 year old mother of five children. Ex. 36 at 7, 19. Ms. Powell initially encountered Igberase upon presentation to the medical office of Abdul Chaudry, M.D. in 2014. *Id.* at 40, 94. Igberase, claiming to be Akoda, delivered her child at Prince George's Hospital Center. *Id.* at 42, 88. Ms. Powell has experienced emotional distress after learning that Igberase treated her on false pretenses, and is prepared to speak on behalf of others in connection with her role as a class representative. *Id.* at 96.

**D.**    **Desire Evans**

Desire Evans is a 40 year old mother of one child. Ex. 37 at 8, 13. Ms. Evans first encountered Igberase, whom she knew as Charles Akoda, at Prince George's Hospital Center for the delivery of her child in March of 2018. *Id.* at 83. Ms. Evans has suffered emotional distress upon learning that physician whom she trusted for medical care misrepresented his identity. *Id.* at 165, 172. Ms. Evans understands her role as a class representative and is willing to speak as a representative on behalf of others who were treated by Igeberase. *Id.* at 153, 183.

## EXPERTS

Plaintiffs have retained six experts to opine on the issues of liability and damages.

**David Samuel Markenson, M.D., MBA, FAAP, FACEP, FCCM, FACHE** is a health care physician executive with experience in leadership roles, including Division Vice President, Chief Medical Officer, Vice President, Medical Director, Section Chief, Academic Chairman, Center Director and Designated Institutional Official with a publicly traded national hospital corporation, large regional health system, academic medical center, medical school, municipal hospitals and community hospital. Dr. Markenson has issued a report which identifies various breaches in the standards of care by ECFMG. Dr. Markenson states in his report that these breaches in the standards of care permitted Igberase to practice medicine under the fictitious Akoda identity and has caused harm to the Plaintiffs and the members of the class. Ex. 38 at 3.

**John Charles Hyde, II, Ph.D., FACHE**, is a health care consultant and retired Professor in the field of healthcare management. Dr. Hyde provides expertise and advice to hospitals, healthcare organizations, healthcare trade/professional associations, on topics including administration, provider credentialing, employee management, and other various healthcare related needs. Dr. Hyde has issued a report identifying breaches in the standards of care which have caused harm to the Plaintiffs and the class. *See* Ex. 39 at 7.

**Jonathan Burroughs, M.D., MBA, FACHE, FAAPL** is a physician and healthcare consultant with experience in various hospital administrative roles. Dr. Burroughs has issued a report in which he offers his opinion that ECFMG breached its duty to the public, as set forth in their own mission statement and other publications. *See* Ex. 40 at 30.

**Jerry Williamson, M.D., FAAP, MJ, CHC, LHRM** is a physician and hospital administrator, having held administrative positions as a Chief Medical Officer, Medical Director,

and Vice President for Medical Affairs in both the ambulatory and inpatient settings. In these positions, Dr. Williamson served on and chaired credentialing committees. Dr. Williamson has offered a report which concludes that ECFMG failed to act in a reasonable and prudent manner which has directly impacted patient safety. Ex. 41 at 6.

**Christine Tellefsen, M.D.** is a psychiatrist affiliated with the Mercy Medical Center in Baltimore, Maryland and the University of Maryland Medical Center. Dr. Tellefsen's report summarizes the result of several independent medical examinations performed on the representative Plaintiffs, and describes the breach of trust suffered by patients associated with fraudulent conduct on the part of physicians—particularly in the context of obstetric care. Dr. Tellefsen concludes that each of the representative plaintiffs reported shock, dismay, anger, recrimination and guilt, and were all distress upon learning of Igberase's conduct. *See generally* Ex. 42.

**Annie Steinberg, M.D.** is a psychiatrist with a Clinical Professor faculty appointment in the Department of Psychiatry at The Perelman School of Medicine at the University of Pennsylvania. Dr. Steinberg has conducted a survey completed by 306 presumed patients of Igberase. Dr. Steinberg found consistency in terms of damages across the women surveyed, and concluded that the misconduct of Oluwafemi Charles Igberase has resulted in degrees of confusion, anxiety, depression, avoidance and fear of medical caregivers, and the loss of trust in medical providers and health care institutions among those she surveyed. Ex. 43 at 21.

## ARGUMENT

Plaintiffs seek an order providing for class certification as to "all patients examined and/or treated in any manner by Oluwafemi Charles Igberase (a/k/a Charles J. Akoda, M.D.)" (ECF No. 1, Ex. A at ¶ 48), on two alternate grounds, both pursuant to Federal Rule of Civil

Procedure 23(c)(4). The first option ("Option A") is certification on liability only for the causes

of action of the class members: negligence (ECF No. 1 at 27–30) and negligent infliction of

emotional distress (ECF No. 1 at 31–32). In the alternative, Plaintiffs seek certification of the

following issues classes) ("Option B"):

1. Whether ECFMG undertook or otherwise owed a duty to class members who were patients of Igberase;
2. Whether ECFMG breached its duty to class members;
3. Whether ECFMG undertook or otherwise owed a duty to hospitals and state medical boards, such that ECFMG may be held liable for foreseeable injuries to third persons such as class members pursuant to Restatement (Second) of Torts § 324A;
4. Whether ECFMG breached its duty to hospitals and state medical boards;
5. Whether the emotional distress and other damages alleged by Plaintiffs and class members were a foreseeable result of ECFMG's conduct;
6. Whether ECFMG's conduct involved an unusual risk of causing emotional distress to others under Restatement (Second) of Torts § 313;
7. Whether ECFMG is subject to liability under Restatement (Second) of Torts § 876 for assisting Igberase in committing fraud;
8. Whether ECFMG knew or should have known that Akoda was, in fact, Igberase;
9. Whether it was foreseeable that ECFMG's actions and/or alleged failures to act, including their alleged negligent failure to certify Igberase and properly investigate and deny or revoke Igberase certification, could result in emotional distress experienced by Class Members.

For the following reasons, Plaintiffs contend that certification under either Option A or Option B

is permitted under Rule 23 and would materially advance the termination of the litigation.

**I.**   **Certifying the common issues satisfies Rule 23(a).**

Rule 23 is "'designed to assure that courts will identify the common interests of Class

members and evaluate the named plaintiffs' and counsel's ability to fairly and adequately protect

class interests.'" *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (citation

omitted). The class action vehicle allows large numbers of potentially low-value claims

involving the same core issues to proceed in the aggregate. This provides a path to relief where

otherwise there is none, as the cost to litigate an individual case often exceeds the expected

return for an individual plaintiff. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

Moreover, class certification can benefit a defendant in that resolution of common issues can

dispose of thousands of claims in one stroke. Thus, "[c]lass actions serve an important function

in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981).

Both the Supreme Court and Third Circuit have held that the requirements

for class certification are "readily met" in consumer protection cases where common factual

questions necessarily center upon the defendant's course of conduct. *See Amchem Prods.*, 521

U.S. at 625; *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 298 (3d Cir. 2011) (*en banc)*. For

example, where "liability depends on the conduct of [defendant], and whether it conducted a

nationwide campaign of misrepresentation and deception, [and] does not depend on the conduct

of individual class members," class certification is appropriate. *Sullivan* 667 F.3d at 298.

Courts should not "'put[ ] the cart before the horse' by allowing their views of the merits

to affect their analysis of the independent question whether a putative class satisfies the

requirements of Rule 23," which "'grants courts no license to engage in free-ranging merits

inquiries at the certification stage.'" *Gonzalez v. Corning*, 885 F.3d 186, 200 (3d Cir. 2018), *as

amended* (Apr. 4, 2018) (quoting *Amgen, Inc. v. Conn. Retirement Plans and Trust Funds*, 568

U.S. 455, 460, 466 (2013).

Rule 23(a) sets forth four "threshold requirements" for all class actions. *Sullivan v. DB

Investments, Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). At class certification, Plaintiffs must

"demonstrate that [those elements are] capable of proof at trial through evidence that is common

to the class rather than individual to its members," *In re Hydrogen Peroxide Antitrust Litig.*, 552

12

F.3d 305 (3d Cir. 2008). The four prerequisites—numerosity, commonality, typicality and adequacy—are satisfied here.

### A.    The class members are sufficiently numerous.

Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs are not required to state the size of the class with precision. *Cannon v. Cherry Hill Toyota,* 184 F.R.D. 540, 543 (D.N J, 1999). There is "[n]o minimum number of plaintiffs is required to maintain a suit as a class action," and a plaintiff "can generally satisfy Rule 23(a)(1)'s numerosity requirement by establishing 'that the potential number of plaintiffs exceeds 40.'" *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 486 (3d Cir. 2018) (citation omitted).

Here, Plaintiffs have alleged that there are over 1,000 members of the class. (ECF No. 41 at ¶ 50.) In a related lawsuit involving Igberase's conduct, Dimensions Healthcare, which operated Prince George's Hospital Center in Cheverly, MD, responded that Igberase had treated 712 patients at its facility. (*See* Ex. 44 at 12.) Numerosity is satisfied here.

### B.    There are common questions of fact and law.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Commonality is satisfied where common questions are capable of generating common answers apt to drive the resolution of the litigation. *Wal-Mart Stores Inc. v. Dukes*, 131 S. Ct, 2541, 2551 (2011). "Commonality does not require an identity of claims or facts among Class Members; instead, [t]he commonality requirement will be satisfied if the named Plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Johnston v. HBO Film Mgmt., Inc*., 265 F.3d 178, 184 (3d Cir. 2001) (internal quotation marks omitted). The commonality requirement "is not a high bar" and is satisfied "if the named plaintiffs share at

13

least one question of law or fact with the grievances of the prospective class," *Chiang v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2004) (*abrog. on other grounds recognized by Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 597 (3d Cir. 2012)). Importantly, "[c]ases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012).

Here, the representative Plaintiffs all allege injury stemming from a single course of wrongful conduct by ECFMG, in negligently providing certification to Igberase (as Akoda), failing to investigate his conduct and identity despite ample knowledge he obtained ECFMG certification on false pretenses, and failing to warn residency programs, state medical boards, and the public of their concerns regarding his conduct. The common questions of law and fact include the following:

1. Whether ECFMG undertook or otherwise owed a duty to class members who were patients of Igberase;
2. Whether ECFMG breached its duty to class members;
3. Whether ECFMG undertook or otherwise owed a duty to hospitals and state medical boards, such that ECFMG may be held liable for foreseeable injuries to third persons such as class members pursuant to Restatement (Second) of Torts § 324A;
4. Whether ECFMG breached its duty to hospitals and state medical boards;
5. Whether the emotional distress and other damages alleged by Plaintiffs and class members were a foreseeable result of ECFMG's conduct;
6. Whether ECFMG's conduct involved an unusual risk of causing emotional distress to others under Restatement (Second) of Torts § 313;
7. Whether ECFMG is subject to liability under Restatement (Second) of Torts § 876 for assisting Igberase in committing fraud;
8. Whether ECFMG knew or should have known that Akoda was, in fact, Igberase;
9. Whether it was foreseeable that ECFMG's actions and/or alleged failures to act, including their alleged negligent failure to certify Igberase and properly investigate and deny or revoke Igberase certification, could result in emotional distress experienced by Class Members.

14

All of these issues are apt to drive the resolution of the litigation. Resolution of any one of these common issues will resolve a key issue central to the individuals' claims in one stroke. If resolved in Defendants' favor, Plaintiffs' claims may be dismissed; if resolved in Plaintiffs' favor, key issues central to the determination of liability and damages will have been determined. There are more than enough common issues to support a finding of commonality here.

Importantly, courts regularly certify common issues that pertain to liability without certifying the entire issue of liability for class-wide resolution. For example, in *Martin v. Behr*, 896 F.3d 405 (6th Cir. 2018), a toxic tort class action for property damages caused by groundwater contamination, the Sixth Circuit affirmed a district court's certification of seven issues pertaining to general causation and the defendants' liability. Likewise, in *Adkisson v. Jacobs Eng'g Grp., Inc.*, 370 F. Supp. 3d 826 (E.D. Tenn. 2019), a negligence action brought by workers exposed to fly ash at a coal-ash cleanup project, a federal district court ordered that a consolidated action first be tried first on issues pertaining to the defendants' general liability ("(1) whether defendant owed plaintiffs a legal duty; (2) whether defendant breached that duty; and (3) whether defendant's breach was capable of causing plaintiffs' alleged injuries.") *Id.* at 836–37. If the plaintiffs prevailed, the court ordered that a second trial address issues of specific liability with respect to individual plaintiffs. ("(1) specific causation with respect to individual plaintiffs; (2) each plaintiff's alleged injuries; and (3) the extent to which individual plaintiffs are entitled to damages.") *Id.*

The fact that individualized issues of damages may remain to be resolved following resolution of the common issues cannot defeat class certification under Rule 23(c)(4). *See, e.g.*, *Wallace v. Powell*, No. 3:09-CV-0291, 2013 WL 2042369, at *20–21 (M.D. Pa. May 14, 2013); *Gunnells v. Healthplan Serv., Inc.*, 348 F.3d 417, 427-28 (4th Cir. 2003).

15

**C.    The claims of the named Plaintiffs are typical of those of the class.**

Federal Rule of Civil Procedure 23(a)(3) requires that the class representatives' claims be "typical of the claims . . . of the class." As the Third Circuit explained, "[t]he typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named Plaintiffs have incentives that align with those of absent Class Members so as to assure that the absentees' interests will be fairly represented." *Baby Neal v. Casey*, 43 F.3d 48, 57-58 (3d Cir. 1994). The typicality prong is normally met where "claims of representative Plaintiffs arise from the same alleged wrongful conduct." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004).

Here, the named Plaintiffs and putative class members all suffered emotional distress by being treated by a physician who had obtained medical credentials through fraud. Although the individual plaintiffs suffered injury under different circumstances, the named Plaintiffs' and class's claims "arise from the same alleged wrongful conduct" of ECFMG and are "based on the same legal theory." Class members' interests align with those of the named Plaintiffs. Typicality is satisfied here.

**D.    The adequacy requirement is satisfied here.**

Both class members and their counsel will adequately and fairly represent the interests of the class for the same reasons as stated above. The plaintiffs have suffered a common injury. The interests of the class representatives and the members of the putative class are identical in resolving the common issues under Option A or Option B.

Plaintiffs' counsel have the experience and necessary resources to prosecute this action. Plaintiffs' counsel have already engaged in significant document discovery in this action, taken and defended numerous depositions, and retained six experts. Schochor, Federico and Staton,

P.A. have successfully led a similar class action previously. In *Jane Doe No. 1 v. Johns Hopkins Hospital,* No. 24-C-13-001041 (Balt. City Cir. Ct.), which involved allegations of sexual misconduct by a physician, Plaintiffs' counsel Jonathan Schochor chaired the steering committee for the litigation. That litigation involved over eight thousand (8,000) plaintiffs against Johns Hopkins Hospital and was resolved successfully for $190 million. Additionally, the Schochor firm held a leadership role in *Jane Doe 30 v. Bradley,* 2012 WL 5949216 (Del. Super. Nov. 19, 2012), which involved sexual abuse by a pediatrician, and resulted in a $123 million settlement. The Schochor firm has been involved in complex litigation for more than thirty years.

The Law Offices of Peter G. Angelos, P.C. has significant experience in significant complex litigation. Representative cases include the 1998 tobacco litigation that resulted in $4,2 billion settlement on behalf of the State of Maryland; the Tower Securities litigation that resulted in a $117,500,000 recovery for the Steamship Trade Association pension fund; a $1 billion verdict against ExxonMobil on behalf of 466 Baltimore County residents whose water aquifer was polluted with 26,000 gallons of gasoline; and a class action suit against Dr. Mark Midei and Catholic Health Initiatives based upon allegations of unnecessary, fraudulent treatment, in which counsel Paul Vettori appeared on behalf of the firm.

Karen Evans and The Cochran Firm, a national law firm, also have significant prior class and mass action experience, including the ongoing Round-Up litigation (No. 3:16-md-02741-VC, N.D. Cal.) and the aforementioned *Johns Hopkins Hospital v. Levy* matter.

The law firm of Janet, Janet and Suggs, LLC have served as lead counsel or on the steering committee of several major class actions that have resolved successfully, including a $2.2 billion settlement of claims by one class of residential and commercial electricity ratepayers against one of the defendants in an ongoing civil RICO lawsuit, *Glibowski v. SCANA*, No. 9:18-

cv-00273 (D.S.C.); a $190 million settlement on behalf of patients of Dr. Charles Levy in *Jane Doe No. 1, et al. v. Johns Hopkins Hospital, et al,* No. 24-C-13-001041 (Balt. City Cir. Ct.), a $10 million settlement on behalf of Jersey City, New Jersey property owners in *Halley v. Honeywell, Inc.*, No. 2:10-cv-3345 (D.N.J.); an ongoing class action on behalf of Dayton, Ohio property owners in *Martin v. Behr Dayton Thermal Products*, No. 3:08-cv-00326-WHR (S.D. Ohio), *aff'd,* 896 F.3d 405 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 1319 (2019), in addition to numerous other complex litigations. Counsel Patrick Thronson has had and maintains significant responsibilities as counsel in the *Glibowski*, *Halley*, and *Martin* matters.

## II.   Plaintiffs Also Satisfy the Requirements of Rule 23(c)(4)

### A.   Certification of liability or the Common Issues satisfies the ascertainability requirement, if that requirement even applies.

Establishing the implied requirement of ascertainability involves showing (1) the class is "defined with reference to objective criteria;" and (2) there is "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Id.* at 355 (citing *Marcus v. BMW of North Amer., LLC*, 687 F.3d 583, 593–94 (3d Cir. 2012)). Plaintiffs need simply show that "class members *can* be identified." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (citing *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013)).

The Third Circuit has not addressed the question of whether the ascertainability requirement applies to class actions brought pursuant to Rule 23(c)(4). Regardless of its applicability, Plaintiffs meet this requirement. The class consists of "all patients examined and/or treated in any manner by Oluwafemi Charles Igberase (a/k/a Charles J. Akoda, M.D.)." ECF No. 1, Ex. A at ¶ 48. One of the health care facilities at which Igberase worked, Prince George's Hospital Center, has already identified 712 individuals who were treated by Igberase. Ex. 44 at

12. Members of the class can be identified through records of medical treatment, which will show when and how patients were treated by Igberase. Indeed, Plaintiffs have already produced records corresponding to hundreds of class members to defendants as part of discovery in this action. Clearly, class members can be identified, which satisfies the ascertainability requirement.

### B.     Certification of the issue of liability or the Common Issues satisfies Rule 23(c)(4).

Rule 23(c)(4) provides, "When appropriate, an action may be brought or maintained as a class action with respect to particular issues." Under this rule, a court may grant class certification for litigation of certain issues, while allowing the remaining ones to proceed on an individual basis. *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 272 (3d Cir. 2011). "The ability to certify issue classes accords the courts discretion to realize the advantages and efficiencies of class-wide adjudication of common issues when there also exist individual issues that must be tried separately." *Lisa v. Saxon Mortgage Servs.*, Nos. 11-4586, 12-5366, 2016 WL 5930846, at *3 (quoting Newberg on Class Actions, § 4:89 (5th ed. 2012)); see also *In re Chiang*, 385 F.3d 256, 267 (3d Cir. 2004) ("[C]ourts commonly use Rule 23(c)(4) to certify some elements of liability for class determination, while leaving other elements to individual adjudication—or, perhaps more realistically, settlement.").

A question arises as to whether class actions seeking money damages that are certified as to Rule 23(c)(4) must satisfy the predominance requirement of Rule 23(b)(3). The prevailing view among federal circuit courts of appeals is that common questions must predominate over individualized inquiries *within* the issues proposed for certification, as opposed to the claim as a whole. *See, e.g.*, *Martin*, 896 F.3d at 413 (6th Cir. 2018) (collecting cases). Although a panel of the Fifth Circuit once expressed an opposing view (the "narrow view") in a footnote (*see Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n.21 (5th Cir. 1996)), which implied that

19

predominance must be satisfied as to the action as a whole, it has since aligned with the other circuits that have considered the issue.[2]

The Third Circuit has taken a different path, and has held that the decision to certify an issues class under Rule 23(c)(4) is "analytically independent" from Rule 23(b)(3)'s predominance and superiority inquiry, and a district court must consider a different set of factors in deciding certification. *Gonzalez v. Corning*, 885 F.3d 186, 202 (3d Cir. 2018). The Third Circuit has enumerated those factors as follows:

> [W]hen deciding whether or not to certify an issue class, the trial court should consider: [1] the type of claim(s) and issue(s) in question; [2] the overall complexity of the case; [3] the efficiencies to be gained by granting partial certification in light of realistic procedural alternatives; [4] the substantive law underlying the claim(s), including any choice-of-law questions it may present and whether the substantive law separates the issue(s) from other issues concerning liability or remedy; [5] the impact partial certification will have on the constitutional and statutory rights of both the class members and the defendant(s); [6] the potential preclusive effect or lack thereof that resolution of the proposed issue class will have; [7] the repercussions certification of an issue(s) class will have on the effectiveness and fairness of resolution of remaining issues; [8] the impact individual proceedings may have upon one another, including whether remedies are indivisible such that granting or not granting relief to any claimant as a practical matter determines the claims of others; and [8] the kind of evidence presented on the issue(s) certified and potentially presented on the remaining issues, including the risk subsequent triers of fact will need to reexamine evidence and findings from resolution of the common issue(s).

*See Gates v. Rohm & Haas Co.*, 655 F.3d 255, 274 (3d Cir. 2011) (quoting Principles of the Law of Aggregate Litigation §§ 2.02–05 (2010)); *Hohider v. United Parcel Serv., Inc.,* 574 F.3d 169, 201 (3d Cir. 2009). These factors are non-exclusive and "should guide courts as they apply Fed. R. Civ. P. 23(c)(4) 'to treat common things in common and to distinguish the distinguishable.'"

---

[2] *See Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 603 (5th Cir. 2006); *In re Deepwater Horizon*, 739 F.3d 790, 806, 814, 817 & n.66 (5th Cir. 2014).

*Id.* (quoting *Chiang,* 385 F.3d at 256). The *Gates* factors have been characterized as a

"functional, superiority like analysis." *Martin*, 896 F.3d at 413. Plaintiffs more likely than not

satisfy all of the foregoing *Gates* factors, both under a liability only issues class (Option A

above) and an issues class certified for resolution of the Common Issues (Option B above).

1. <u>**The type of claims and issues in question in this action are susceptible to efficient class-wide resolution.**</u>

The issues to be certified for class-wide resolution under either Option A or Option B are

focused on ECFMG's conduct and are common to the entire class. Resolution of liability of the

Common Issues will apply to the claims of all Plaintiffs: issues such as whether ECFMG has a

duty to patients of Igberase and whether Plaintiffs have a legally cognizable claim for damages

are central to the resolution of Plaintiffs' claims. ECFMG's conduct, not individual

characteristics of the Plaintiffs or their particular interactions with Igberase, is the subject of the

issue of liability and the Common Issues. Liability and the Common Issues also admit of

common proof. They involve the same underlying conduct of the Defendant in granting Igberase

certification, failing to investigate when they knew or should have known that he had obtained

that certification by fraud, and failing to notify state medical boards, hospitals, and residency

programs to which they provided ECFMG certification reports of the facts that supported the

conclusion that Igberase had achieved certification on false pretenses.

2. <u>**The complexity of the case warrants certification of common issues.**</u>

Proof of defendants' conduct centers on common evidence tied to ECFMG's conduct and

requires extensive document review, deposition testimony, and expert analyses of complex

issues involving ECFMG's role in the United States medical system, the fraud committed by

Igberase, and the pattern of conduct of ECFMG. For the sake of time and cost, it is in all parties'

and the Court's interest that presentation of this evidence be done once. The issues in this case

are complex but are susceptible of being tried with common proof.

> **3.** **Issue certification of liability or the Common Issues is the most efficient way of resolving common issues given realistic procedural alternatives.**

The alternative to certifying liability or the Common Issues for class treatment is to

conduct trials of the issues hundreds of times for each individual plaintiff, necessitating

presentation of each expert witness, fact witness, and documentary evidence in each case. This is

far less efficient than the resolution of common issues by a single class jury and will save scarce

judicial resources. Moreover, the cost of litigating each individual case likely outweighs an

individual award. On the other hand, the resolution of common issues under Options A or B in a

classwide proceeding will either resolve the claims of the class in favor of ECFMG or, if

resolved in Plaintiffs' favor, permit them to pursue their claims by avoiding the necessity of

expensive presentation of expert evidence. The certification of an issues class here allows for the

final adjudication of common liability issues, in contrast to the attempted application of collateral

estoppel after resolution of an individual case, which would be repeatedly contested by the

parties in each follow-on proceeding.

> **4.** **The substantive law underlying the claims supports resolution of liability or the Common Issues on a class-wide basis.**

There are no impediments in the underlying substantive law to certifying an issues class.

Pennsylvania law will likely apply to all issues in this action—and, at any rate, Plaintiffs are

unaware of meaningful conflicts between the tort law of Pennsylvania applicable to resolution of

liability or the common issues and the tort law of the states in which Igberase interacted with

class members. Even if a conflict existed, it would likely be resolved in favor of Pennsylvania

law. Pennsylvania has long abandoned the *lex loci delicti* rule for choice of law questions "in

favor of a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 805 (Pa. 1964). Under that framework, "the state in which injury occurred, as such, has relatively little interest in the measure of damages to be recovered unless it can be said with reasonable certainty that defendant acted in reliance on that state's rule." *Id.* at 806. There is no evidence that ECFMG relied on the laws of any other state in granting certification to Igberase. And, at any rate, "where the tort is unintentional," as is true here, "the reliance argument is almost totally untenable." *Id.*

5.      **There are no constitutional or statutory obstacles to issue class certification.**

There are no unique constitutional or statutory issues here and the constitutionality of class actions is well-established. Certification of liability or the Common Issues will not present any Seventh Amendment problems, for the reasons discussed under subpoint 8, *infra*.

6.      **The preclusive effect of resolving common issues on a class-wide basis is expedient and provides valuable efficiency to resolving the class claims.**

Resolution of common issues will dispose of the most complex and time-consuming aspects of the case, allowing individual plaintiffs to proceed with individual damage claims at a much lower cost. The "remaining issues"—fact of injury and damages—could be proven by individual plaintiffs in follow-up litigation with evidence of, *inter alia,* medical records showing the extent and frequency of treatment by Igberase and testimony by individual plaintiffs on the impact Igberase's conduct—made possible by ECFMG's conduct—has had on their lives. Mini-trials on damages will also function as bellwether proceedings, facilitating settlement.

**7.** **The resolution of common issues on a class-wide basis and issues of damages in individualized proceedings will not result in prejudice or unfairness to a plaintiff.**

Individual proceedings to resolve whether an individual plaintiff has been injured and the damages to which she is entitled will not prejudice any individual. Resolution of one plaintiffs' injury and damages claim will have no effect on the claims of others or the ability of others to fairly vindicate their right to a remedy.

**8.** **The evidence presented on common issues is common to the class. Subsequent juries will not need to reexamine earlier findings of the class jury in a manner that violates the Reexamination Clause.**

The Seventh Amendment to the United States Constitution provides, "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." The Reexamination Clause "is not against having two juries review the same evidence, but rather against having two juries decide the same essential issues." *See In re Paoli R.R. Yard PCB Litig.*, 113 F.3d 444, 452 (3d Cir. 1997) "Partial certification" or "[t]rying a bifurcated claim before separate juries does not run afoul of the Seventh Amendment" so long as: [1] the same factual issue is not "'tried by different, successive juries'"; [2] "the verdict form for the first jury" is carefully crafted "so that the second jury knows what has been decided already"; and [3] "the first jury makes sufficiently detailed findings, [which] are then akin to instructions for the second jury to follow." *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 167 (2d Cir. 2001) (citations omitted) (*abrog. on other grounds*. "[I]f done properly, bifurcation will not raise any constitutional issues,'" *Martin*, 896 F.3d at 417 (citation omitted)—a proposition with which "leading class action treatises agree," *id.* (citing 2 Newberg on Class Actions § 4:92 (5th ed. 2010)).

24

In this case, trying the issue of liability or the Common Issues would result in rulings of law by the Court and fact-finding pertaining solely to ECFMG's conduct, pertaining to liability in negligence or to the Common Issues. The second-round jury or juries will decide issues pertaining to the existence and extent of an individual plaintiff's damages. They will not decide issues pertaining to ECFMG's conduct. Thus, no Reexamination Clause problem arises under the framework Plaintiffs propose.

Issue class certification will aid the Court and the administration of justice in this case. As the Third Circuit has observed, "[s]everance of the question of liability from other issues can 'reduce the length of trial, particularly if the severed issue[s] [are] dispositive of the case, and can also improve comprehension of the issues and evidence.'" *In re Paoli R.R. Yard PCB Litig.*, 113 F.3d at 452 (3d Cir. 1997) (citation omitted). Issue class certification also provides advantages to Defendant. For example, if it is determined ECFMG has no liability to the class, or has no duty to class members, hospitals, or medical boards, then all class members will be bound by that decision, and Defendant can be assured that the litigation is over.

Here, "[t]he Court has several viable options at its disposal for resolution of damages inquiries following the class-wide proceeding of common issues of liability." *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328, 349 (D. Md. 2012). The flexibility of the issue class certification mechanism will ensure the litigation is resolved efficiently (especially in comparison with the alternatives) while ensuring fairness to all parties.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Class Certification, appoint them as representative plaintiffs, and appoint their counsel as class counsel. Plaintiffs respectfully request oral argument on this motion.

Dated: <u>October 7, 2019</u>                         Respectfully submitted,

CONRAD O'BRIEN PC                                      THE COCHRAN FIRM

<u>/s/ Nicholas M. Centrella</u>                        <u>/s/ Karen Evans</u>
Nicholas M. Centrella, Esquire (Pa. I.D. No.           Karen E. Evans, R.N., J.D. (*pro hac vice*)
67666)                                                 kevans@cochranfirm.com
Howard M. Klein, Esquire (Pa. I.D. No. 33632)          1100 New York Ave, N.W.
Benjamin O. Present, Esquire (Pa. I.D. No.             Washington, D.C. 20005
322682)                                                Telephone: (202) 682-5800
1500 Market Street, Suite 3900
Philadelphia, PA 19102-2100
Telephone: (215) 864-9600                              JANET, JANET & SUGGS, LLC

SCHOCHOR, FEDERICO AND STATON                          <u>/s/ Patrick Thronson</u>
                                                       Patrick A. Thronson (*pro hac vice*)
<u>/s/ Brent Ceryes</u>                                 pthronson@JJSjustice.com
Jonathan Schochor jschoehor@sfspa.com (*pro             Executive Centre at Hooks Lane
hac vice*                                              4 Reservoir Circle, Suite 200
Lauren Schochor (Identification No. 87618)             Baltimore, MD 21208
lsehochor@sfspa.corn                                   Telephone: (410) 653-3200
Brent Ceryes (*pro hac vice*)                          Fax: (410) 653-9030
 bceryes@sfspa.com
Phil Federico (*pro hac vice*)
The Paulton                                            *Attorneys for Plaintiffs*
1211 St. Paul Street
Baltimore, Maryland 21202
Phone: (410) 234-1000
Fax: (410) 234-1010

LAW OFFICES OF PETER G. ANGELOS,
P.C.

<u>/s/ Paul M. Vettori</u>
Danielle S. Dinsmore (*pro hac vice*)
ddinsmore@lawpga.com
Paul M. Vettori (*pro hac vice*)
pvettori@lawpga.com
One Charles Center
100 N. Charles Street, 20th Floor
Baltimore, Maryland 21201
Telephone: (410) 649-2000
Fax: (410) 649-2150