**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MONIQUE RUSSELL, JASMINE RIGGINS, ELSA M. POWELL, and DESIRE EVANS,<br><br>       Plaintiffs,<br><br>   v.<br><br>EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES,<br><br>       Defendant. | Civil Action No. 18-5629<br><br>Honorable Joshua D. Wolson |

**DEFENDANT EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL
GRADUATES' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
<u>CERTIFICATION</u>**

Dated: October 28, 2019

Brian W. Shaffer, PA Bar No. 78851
Elisa P. McEnroe, PA Bar No. 206143
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA  19103-2921
Telephone:     +1.215.963.5000
Facsimile:     +1.215.963.5001
brian.shaffer@morganlewis.com
elisa.mcenroe@morganlewis.com

*Attorneys for the Educational Commission for
Foreign Medical Graduates*

# TABLE OF CONTENTS

**Page**

I.     FACTS RELEVANT TO THE MOTION ................................................................. 2

       A.     ECFMG's Certification And Irregular Behavior Processes................................. 2

       B.     The Medical Field Uses ECFMG Certification For Limited Purposes.................. 3

       C.     John Nosa Akoda And His Aliases .................................................................... 4

              1.     *Oluwafemi Charles Igberase and Oluwafemi Igberase Charles* .............. 5

              2.     *John Nosa Akoda* ....................................................................................... 5

       D.     This Lawsuit..................................................................................................... 7

II.    LEGAL STANDARD........................................................................................... 9

III.   ARGUMENT ...................................................................................................... 11

       A.     Issue Certification Is Not Appropriate Because There Is No Meaningful
              Commonality And Individual Issues Of Fact And Law Predominate. ............... 11

              1.     *Duty and Breach* ................................................................................. 13

              2.     *Causation* ........................................................................................... 14

              3.     *Statute of Limitations Defense* ........................................................... 17

       B.     A Class Action Is Neither Superior Nor Manageable And Will Not Lead
              To Judicial Efficiency. .................................................................................... 18

       C.     Plaintiffs' Claims Are Not Typical Of Other Claims. ...................................... 20

       D.     Plaintiffs Are Not Adequate Class Representatives........................................... 21

       E.     Plaintiffs Cannot Satisfy Rule 23's Inherent Ascertainability Requirement. ...... 23

       F.     For All Of The Foregoing Reasons, The *Gates* Factors Weigh Against
              Issue Certification Under Rule 23(C)(4)......................................................... 24

IV.    CONCLUSION................................................................................................... 25

APPENDIX - CONTENTS OF EXHIBITS ...................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkisson v. Jacobs Eng'g Grp., Inc.*,
    370 F. Supp. 3d 826 (E.D. Tenn. 2019)................................................................16

*In re "Agent Orange" Prod. Liability Litig.*,
    818 F.2d 145 (2d Cir. 1987)..................................................................................17

*Alban v. Fiels*,
    61 A.3d 867 (Md. 2013) .......................................................................................20

*Althaus ex rel. Althaus v. Cohen*,
    756 A.2d 1166 (Pa. 2000) ....................................................................................13

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997)........................................................................................21, 22

*Arch v. Am. Tobacco Co., Inc.*,
    175 F.R.D. 469 (E.D. Pa. 1997)......................................................................16, 17

*Barnes v. Am. Tobacco Co.*,
    161 F.3d 127 (3d Cir. 1998)..................................................................................18

*Blain v. Smithkline Beecham Corp.*,
    240 F.R.D. 179 (E.D. Pa. 2007)................................................................16, 19, 20

*Carrera v. Bayer Corp.*,
    727 F.3d 300 (3d Cir. 2013)..................................................................................23

*City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*,
    867 F.3d 434 (3d Cir. 2017)..................................................................................23

*Com. of Puerto Rico v. M/V Emily S.*,
    158 F.R.D. 9 (D.P.R. 1994) ..................................................................................12

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)....................................................................................9, 10, 12

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993)..............................................................................................14

*Eckroth v. Pennsylvania Elec., Inc.*,
    12 A.3d 422 (Pa. Super. 2010)..............................................................................15

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Erisoty v. Rizik*,
No. 93-6215, 1995 WL 91406 (E.D. Pa. Feb. 23, 1995) .........................................17

*Exxon Mobil Corp. v. Albright*,
71 A.3d 30 (Md. 2013) .........................................15

*Gasoline Prods. Co. v. Champlin Refining Co.*,
283 U.S. 494 (1931).........................................18, 24

*Gates v. Rohm & Haas Co.*,
655 F.3d 255 (3d Cir. 2011).........................................11, 16, 24

*Georgine v. Amchem Prods., Inc.*,
83 F.3d 610 (3d Cir. 1996).........................................19, 20

*Gonzalez v. Corning*,
885 F.3d 186 (3d Cir. 2018).........................................11, 13

*Hammersmith v. TIG Ins. Co.*,
480 F.3d 220 (3d Cir. 2007).........................................20

*Hartford Ins. v. Manor Inn of Bethesda*,
642 A.2d 219 (Md. 1994) .........................................13, 15

*Hobbs v. Northeast Airlines, Inc.*,
50 F.R.D. 76 (E.D. Pa. 1970).........................................19

*Hyderi v. Washington Mut. Bank, FA*,
235 F.R.D. 390 (N.D. Ill. 2006).........................................12

*In re Hydrogen Peroxide Antitrust Litig.*,
552 F.3d 305 (3d Cir. 2008).........................................10, 13

*Jane Doe No. 1 v. Johns Hopkins Hosp'l*,
No. 24-C-13-001041 (Balt. City Cir. Ct.).........................................22

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487 (1941).........................................20

*Martin v. Behr*,
896 F.3d 405 (6th Cir. 2018) .........................................16

*Neale v. Volvo Cars of N. Am., LLC*,
794 F.3d 353 (3d Cir. 2015).........................................10

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re Processed Egg Prods. Antitrust Litig.*,
　　312 F.R.D. 124 (E.D. Pa. 2015) .............................................................................19

*Pryer v. C.O. 3 Slavic*,
　　251 F.3d 448 (3d Cir. 2001) ...........................................................................18, 24

*Rader v. Teva*,
　　276 F.R.D. 524 (D. Nev. 2011) .....................................................................12, 21

*Remsburg v. Montgomery*,
　　831 A.2d 18 (Md. 2003) .......................................................................................14

*Romero v. Allstate Ins. Co.*,
　　52 F. Supp. 3d 715 (E.D. Pa. 2014) ...............................................................10, 19

*Spence v. Bd. of Ed. of Christina Sch. Dist.*,
　　806 F.2d 1198 (3d Cir. 1986) ...................................................................... *passim*

*In re Suboxone Antitrust Litig.*,
　　MDL 2445, 2019 WL 4735520 (E.D. Pa. Sept. 27, 2019) ..................................10

*Sweet v. Pfizer*,
　　232 F.R.D. 360 (C.D. Cal. 2005) .........................................................................19

*In re Three Mile Island Litig.*,
　　87 F.R.D. 433 (M.D. Pa. 1980) ......................................................... 12, 15, 17, 18

*Toney v. Chester Cty. Hosp'l*,
　　961 A.2d 192 (Pa. Super. 2008) ...........................................................................15

*Tulp v. Educ'l Comm'n for Foreign Med. Graduates*,
　　Civ. A. No. 18-5540, 2019 WL 2601066 (E.D. Pa. June 25, 2019) .......................3

*Wal-Mart, Inc. v. Dukes*,
　　564 U.S. 338 (2011) .....................................................................................10, 12, 13

*Weiley v. Albert Einstein Med. Ctr.*,
　　51 A.3d 202 (Pa. Super. 2012) .............................................................................14

**Other Authorities**

45 C.F.R. § 164.316(b)(2) ...........................................................................................24

Fed. R. Civ. P. 23 ............................................................................................. *passim*

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

Fed. R. Evid. 702 ....................................................................................................14

Joseph M. McLaughlin, *McLaughlin on Class Actions* § 4:43 (2012) ........................................10

U.S. Const., amend. VII...............................................................................................25

Defendant Educational Commission for Foreign Medical Graduates ("ECFMG") opposes Plaintiffs' Motion for Class Certification, ECF 32 (the "Motion"). Implicitly acknowledging that their negligence-based claims seeking damages for emotional distress allegedly experienced by more than 1,000 different class members could not possibly satisfy the requirements of Federal Rule of Civil Procedure 23, Plaintiffs attempt an end-run around Rules 23(a) and (b) and propose to certify only a "limited issue" class under Rule 23(c)(4). The Court should reject this attempt.

Plaintiffs purport to offer two "options" for certification, but each would bifurcate the case in the same unworkable way. In the first phase, a jury would address on a class-wide basis certain questions not capable of class-wide resolution relating to duty, breach, and whether ECFMG's conduct in issuing an ECFMG Certificate to a doctor using the name John Nosa Akoda in the mid-1990s was "capable of" causing class members to experience emotional distress when they later learned that Dr. Akoda went by different names and pleaded guilty to misuse of a Social Security number in 2016. *See* ECF 32-1 at 14-15 ("Option A," purporting to certify question of "liability"); *id.* at 11 ("Option B," purporting to certify nine (9) sub-issues relating to the question of "liability"). In the second phase—even if Option A or Option B were certified—Plaintiffs concede that more than a thousand mini-trials on individualized issues would still be required. Among the critical issues affecting Plaintiffs' claims that apparently would be left for "another day"—actually, many, many other days—are individualized questions relating to: the existence or absence of any cognizable emotional distress injury in a particular class member (evidence already exists that some have no cognizable injury); specific causation, *i.e.*, whether ECFMG's alleged conduct solely, directly, and proximately caused a particular class member's emotional distress (assuming there is a cognizable injury); the extent of any such emotional distress; any affirmative defenses of ECFMG related to a particular class member's claims (such as statute of limitations); and whether damages are to be awarded and, if so, in what amount. *See* ECF 32-1 at 15.

Neither class Plaintiffs propose can be certified consistent with Rule 23.  The issues Plaintiffs propose to certify are at once so broad that they sweep in too many individualized and variable issues of fact and law to warrant certification, and so narrow that they would not materially advance resolution of the case.   Moreover, certifying an issue class here would be an unprecedented extension of the Third Circuit's jurisprudence regarding class certification and emotional distress damages.  Courts in the Third Circuit have **<u>never</u>** tried a limited issue class like this centered on emotional distress liability because emotional distress liability and damages are "**<u>too interwoven to allow a fair determination of damages apart from liability.</u>**"  *Spence v. Bd. of Ed. of Christina Sch. Dist.*, 806 F.2d 1198, 1202 (3d Cir. 1986) (emphasis added). For those reasons and others set forth in detail below, the Court should deny class certification.

## I.     FACTS RELEVANT TO THE MOTION

### A.     ECFMG's Certification and Irregular Behavior Processes

ECFMG is a Philadelphia-based private non-profit organization that promotes quality health care for the public by, among other things, certifying eligible graduates of international medical schools ("IMGs") who have met certain minimum requirements as ready to enter U.S. graduate medical education (usually residency programs).  *See* ECF 32-3.  At the relevant time, those minimum requirements included passing grades on an English exam and two substantive exams (Step 1 and Step 2 of the United States Medical Licensing Examination ("USMLE")) and a primary-source verified medical school diploma.  *See* ECF 32-5; ECF 32-46 at 88:21-89:2.  To primary source verify an IMG's medical school diploma, ECFMG would send a copy of the diploma directly to the issuing medical school, which would inform ECFMG whether the IMG applying to ECFMG was issued that diploma.  ECF 32-46 at 88:7-14; *see, e.g.*, Exs. 1 & 2.

For various reasons, IMGs and others sometimes try to subvert ECFMG's processes.

ECFMG calls that "irregular behavior"[1] and has a process for evaluating suspected irregular behavior. The process is set forth in various ECFMG policies and procedures. ECF 32-46 at 55:23-56:7; *see, e.g.*, ECF 32-14. The process is intended to ensure the integrity of ECFMG's programs and services while affording process and procedure to the accused.[2]

When ECFMG suspects that an individual may have engaged in irregular behavior, ECFMG staff investigates by, *inter alia*, communicating with the source of the suspicion and with the accused. ECF 32-46 at 81:22-82:13, 146:11-14, 203:3-16. ECFMG is not a government enforcement or investigative agency and uses the tools at its disposal to determine whether a suspicion of irregular behavior is well founded. *Id.* at 76:12-77:5. If ECFMG staff determines that there is sufficient evidence that an individual has engaged in irregular behavior, the matter is referred to ECFMG's Medical Education Credentials Committee (a sub-committee of ECFMG's Board of Trustees) for a formal determination on the merits. *Id.* at 76:24-77:5. Mere suspicions of irregular behavior are not made public or reported to third parties to avoid damage to the suspect individual's career and reputation based on unsubstantiated allegations. *Id.* at 181:9-23.

If an IMG is found to have engaged in irregular behavior, ECFMG annotates the individual's record and can, *inter alia*, limit the IMG's participation in ECFMG programs and services or withhold or revoke existing ECFMG Certificates. ECF 32-14.

### B.    The Medical Field Uses ECFMG Certification For Limited Purposes.

ECFMG Certification status information is not made available to members of the general

---

[1] ECFMG defines "irregular behavior" as "all actions or attempted actions on the part of applicants . . . or any other person that would or could subvert the examination, certification or other processes, programs, or services of ECFMG." ECF 32-14.

[2] *See Tulp v. Educ'l Comm'n for Foreign Med. Graduates*, Civ. A. No. 18-5540, 2019 WL 2601066 (E.D. Pa. June 25, 2019) (granting summary judgment for ECFMG because ECFMG's irregular behavior procedures afford sufficient process to the accused) (Beetlestone, J.).

public.  ECF 32-46 at 243:18-20.  Rather, it is made available only to certain third parties in the medical field like residency programs, hospitals, licensing boards, and employers.  *Id.* at 244:1-8. At the relevant time, ECFMG Certification status reports contained the IMG's name, date of birth, medical school name and country, graduation year, certification status, and certain examination scores (depending on the recipient).  *Id.* at 44:10-23.  These reports did not (and were not expected to) verify an IMG's identity, Social Security number, immigration status, passport information, criminal background, readiness to treat patients, ethics, honesty, morality, or character.  *Id.* at 198:16-22, 200:13-15, 240:18-241:6, 242:6-243:3, 244:22-245:13.

Recipients of ECFMG Certification status reports use them for a limited purpose as part of their own processes. The information provided by ECFMG is by no means the only information used by hospitals, programs and employers when evaluating IMGs.  *See id.* at 198:11-199:13.  To the contrary, they consider significant things like (1) in-person interviews; (2) information provided directly by the IMG; (3) letters of recommendation; (4) skills assessments or additional examinations; (5) reports from prior educational or training programs; (6) medical school transcripts; (7) information obtained as part of a background check; (8) ongoing performance monitoring.  Ex. 3 at 3-6; Ex. 4 at 5-8.  ECFMG is not responsible for any of that information.

### C.      John Nosa Akoda And His Aliases

Plaintiffs are former patients of an obstetrician/gynecologist ("OB/GYN") whom ECFMG certified in 1996 based on his undisputed passing of Steps 1 and 2 of the USMLE and the primary source verification of a diploma by the University of Benin.  ECF 32-1 at 4; Ex 2.  After obtaining ECFMG Certification, but prior to treating Plaintiffs, the doctor successfully: (1) passed Step 3 of the USMLE (ECF 32-34 at 5); (2) was admitted to a residency program (Ex. 5); (3) completed that residency program (Ex. 6); (4) became licensed to practice medicine (ECF 32-34 at 4); (5) was awarded hospital privileges and hired by several medical offices (*id.*); and (6) achieved Board

4

certification in his specialty (Ex. 7).  As ECFMG and Plaintiffs came to later learn, that doctor committed Social Security fraud and went by several different names.  ECF 32-32.

### 1.      *Oluwafemi Charles Igberase and Oluwafemi Igberase Charles*

In 1992, the doctor applied to ECFMG using the name Oluwafemi Charles Igberase.  ECF 32-7.  He presented ECFMG with a medical school diploma that was primary source verified by the University of Ibadan.  Ex. 1.  Though he failed the USMLE exams several times, he ultimately passed them and thereby earned his ECFMG Certificate (No. 482-700-2).  ECF 32-10.  Despite this, he was unable to gain admission to a residency program.  ECF 32-12 at 1-2.

In 1994, apparently believing that his exam history kept him from residency, *id.*, the doctor applied again for ECFMG Certification, this time using the name Igberase Oluwafemi Charles.  ECF 32-32 at 9.  To wipe clean his record of failed examinations, he misrepresented that he had never applied to ECFMG before and managed to obtain a new application number, pass the USMLE exams again, and obtain a new ECFMG Certificate (No. 0-519-573-0).  ECF 32-9 at 13.

Misrepresenting application history with ECFMG can constitute irregular behavior.  *Id.* at 14.  When confronted by ECFMG, the doctor admitted that he had previously applied to ECFMG, despite representing otherwise on his application.  *Id.* at 15-16.  In accordance with its irregular behavior policies and procedures, ECFMG determined that he had engaged in irregular behavior and promptly (1) invalidated the ECFMG Certificate issued to Oluwafemi Igberase Charles; and (2) revoked the ECFMG Certificate issued to Oluwafemi Charles Igberase.  *Id.* at 2-4.  The doctor later submitted additional fraudulent applications to ECFMG using other variations of the names Oluwafemi, Charles, and Igberase.  ECF 32-17; Ex. 8.  ECFMG identified the fraud, refused to even process those applications, and instead barred him from ever again applying to ECFMG.  *Id.*

### 2.      *John Nosa Akoda*

In 1996, the doctor applied yet again to ECFMG, this time using a wholly different name

("John Nosa Akoda"), a different diploma from a different Nigerian medical school (University of Benin), and other different personal information.  ECF 32-19; ECF 32-20; ECF 32-32 at 10.  On his application, the doctor misrepresented his ECFMG application history and made no reference to the Igberase or Charles applications.  ECF 32-19.  After he passed the required exams and the University of Benin primary source verified the diploma, he received an ECFMG Certificate (No. 0-553-258-5) as Dr. Akoda.  Ex 2; ECF 32-21.

Dr. Akoda then entered a residency program at the Jersey Shore Medical Center ("JSMC").  ECF 32-32 at 10.  An unnamed "source" apparently told JSMC that Dr. Akoda had participated in two other U.S. residency programs under the name Oluwafemi Charles Igberase.  ECF 32-23.  When JSMC tried to verify the Social Security number that Dr. Akoda provided directly in his residency paperwork, JSMC discovered that it belonged to Charles Igberase.  *Id.*  After JSMC shared limited information with ECFMG, ECFMG conducted its own investigation to determine if Dr. Akoda and Dr. Igberase were the same person.  ECF 32-24; ECF 32-25; ECF 32-46 at 150:24-151:6.  ECFMG staff spoke with a JSMC official and with Dr. Akoda himself.  ECF 32-24; ECF 32-25; ECF 32-27; ECF 32-28.  ECFMG determined that some of JSMC's information was inaccurate, *see* ECF 32-24 (ECFMG had no record of sending ECFMG Certification status reports to the residency programs about which JSMC had inquired), and Dr. Akoda provided explanations and supporting hard-copy documentation in person to demonstrate that he and Dr. Igberase were not the same person.  ECF 32-26; ECF 32-27.  Despite some suspicions at the time, ECFMG staff determined that there was insufficient evidence to bring Dr. Akoda before the ECFMG Medical Education Credentials Committee on an allegation that he was Dr. Igberase.  ECF 32-29; ECF 32-46 at 150:24-151:6.  JSMC ultimately discharged Dr. Akoda in 2000 because of perceived discrepancies involving his Social Security number and green card (which was not part of his ECFMG application).  ECF 32-28.  At the same time, JSMC notified the Maryland

Board of Physicians about those discrepancies.  Ex. 9.  ECFMG continued to investigate Dr. Akoda but took no adverse action against him because ECFMG had insufficient evidence of irregular behavior.  ECF 32-46 at 150:24-151:6; ECF 32-31.

Years later, in 2006, Dr. Akoda was accepted to a residency program at Howard University Hospital ("Howard").  Ex. 5.  He completed his residency in 2011 and obtained medical licenses from Maryland and Virginia.  ECF 32-32 at 10; Ex. 10.  Dr. Akoda then obtained privileges at Prince George's Hospital Center ("PGHC") and worked with medical practices run by Dr. Abdul Chaudry and Dr. Javaka Moore.  *See, e.g.*, Exs.  11-14 at Rog 1.  Each of these entities—although aware of Dr. Akoda's ECFMG Certification—would have used its own process to evaluate Dr. Akoda's training and credentials.  Ex. 3 at 6.  Notably, **none** of these entities evaluated Dr. Akoda using the name on his ECFMG Certificate ("John Nosa Akoda").  *See, e.g.*, Ex. 6 ("John-**Charles** Nosa Akoda"); Ex. 10 ("**Charles** John Akoda"); ECF 32-34 ("**Charles** J.N. Akoda").

In 2014, ECFMG received a subpoena from a U.S. Attorney's office regarding Dr. Akoda.  Ex. 15.  ECFMG cooperated with the investigation and followed instructions from federal authorities **not** to impede the investigation and **not** to take adverse action against Dr. Akoda while the investigation was ongoing.  *Id.*; Ex. 16.  Law enforcement did not stop Dr. Akoda from practicing medicine while their investigation spanned almost two years.

In November 2016, Dr. Akoda pleaded guilty to misuse of a Social Security number and stipulated that he and Oluwafemi Charles Igberase were the same person.  ECF 32-32.  With that admission, ECFMG promptly consolidated the Igberase and Akoda files and revoked the ECFMG Certificate issued to John Nosa Akoda.  ECF 32-33; Ex. 17.

### D.    This Lawsuit

Plaintiffs are former patients of Dr. Akoda for whom Dr. Akoda was either their regular doctor or the doctor who happened to be "on-call" at the hospital when they gave birth.  Plaintiffs

contend that ECFMG was negligent in its certification and investigation of Dr. Akoda, and that ECFMG's actions directly caused them to suffer emotional distress upon learning of Dr. Akoda's conduct. *See* ECF 32-1 at 1-2. Plaintiffs (and their counsel) now seek to pursue claims for negligence and negligent infliction of emotional distress on behalf of a proposed class of "all patients examined and/or treated in any manner by Oluwafemi Charles Igberase (a/k/a Charles J Akoda M.D.)." *Id.* at 10.[3] As defined, the putative class includes individuals who encountered Dr. Akoda (1) before and after he came to the United States, (2) while he was a resident at JSMC, (3) while he was a resident at Howard, (4) before and after he was licensed, (5) before and after he was Board certified, (6) before and after he obtained privileges at PGHC, (7) before and after he was hired by private practices, and (8) before and after ECFMG was instructed by federal authorities not to take adverse action against him.

Dr. Akoda performed a variety of procedures on class members, ranging from mere examinations to vaginal deliveries to major surgeries. Ex. 25. Class members experienced a range of reactions both to the treatment rendered by Dr. Akoda and to the discovery of the charges against Dr. Akoda: some class members claimed emotional distress both **before** and **after** learning of the charges against Dr. Akoda; some claimed emotional distress only **after** learning of the charges; and others claimed no emotional distress whatsoever. *Id.* Individualized assessments of each class member will be necessary to determine whether any particular class member suffers from

---

[3] This litigation follows a proposed class action against Dimensions Health Corporation and others who operated PGHC, where Dr. Akoda practiced. *See Russell et al v. Dimensions Corp., et al.*, CAL 17-22761 (Prince George's Cty. Cir. Ct., Md.); *see Dews et al v. Dimensions Healthcare Sys., et al.*, CAL 17-37091 (Prince George's Cty. Cir. Ct., Md.). Plaintiffs in this case were also plaintiffs or class members in those cases. Exs. 18-21 at Rog 10. Those cases alleged that Dimensions was the "sole and proximate cause" of Plaintiffs' injuries. *E.g.*, Ex. 38 ¶ 81; *see* Ex. 22. Soon after moving for class certification and receiving the defendants' summary judgment motion—and without receiving any compensation—Plaintiffs abandoned their claims against Dimensions and stipulated to the dismissal of that case without prejudice. Ex. 23; Ex. 24.

emotional distress caused by ECFMG.  Exs 26-31.  This is evident from the Plaintiffs themselves:



***Monique Russell.***  ▮▮▮▮▮▮▮▮▮▮▮▮  Ex. 32 at 9.  Ms. Russell acknowledges that the consequences of Dr. Akoda's treatment were "minor," Ex. 27 at 7, and that Dr. Akoda rendered treatment that "really was best/necessary."  Ex. 33 at 4.  ▮▮▮▮▮▮▮▮▮▮▮▮  Ex. 27 at 7.  Nonetheless, she feels a responsibility to "stand up for women who were subjected to trauma."  *Id.*

***Jasmine Riggins.***  ▮▮  Ex. 32 at 8.  ▮▮  *Id.*; Ex. 28 at 2.  ▮▮  *Id.* at 2.  ▮▮  *Id.* at 4; Ex. 31 at 1-2.

***Elsa Powell.***  ▮▮  Ex. 29 at  2.  ▮▮  Ex. 32 at 6.  ▮▮  Ex. 29 at 3.  ▮▮  *Id.* at 4, 6; Ex. 31 at 2.

***Desire Evans.***  ▮▮  Ex 32 at 4.  ▮▮  Ex. 30 at 2-3.  ▮▮  *Id.* at 5, 7.  ▮▮  *Id.* at 7.  ▮▮  *Id.* at 8.

## II.   <u>LEGAL STANDARD</u>

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). "To come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23."  *Id.* (quoting *Wal-Mart, Inc. v. Dukes*, 564 U.S. 338,

350 (2011)); *see In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 316 n.14, 320-21 (3d Cir. 2008).  The Court must conduct a "rigorous analysis" to determine whether a party seeking to certify a class has carried its burden under Rule 23.  *Dukes*, 564 U.S. at 351.

"Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate."  *Id.* at 349.  To satisfy Rule 23(a), Plaintiffs must show that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  Those four requirements—known as numerosity, commonality, typicality, and adequacy—"effectively limit the class claims to those fairly encompassed by the named plaintiff's claims."  *Dukes*, 564 U.S. at 349.

Plaintiffs must also satisfy at least one subsection of Rule 23(b).  *See Comcast*, 569 U.S. at 33; *Dukes*, 564 U.S. at 345; *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 370 (3d Cir. 2015).  Rule 23(b)(3) covers "individualized monetary claims," *Dukes*, 564 U.S. at 362, like those asserted by Plaintiffs here, and requires Plaintiffs to show that common questions "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Implicitly recognizing that they cannot satisfy Rule 23(b)(3), Plaintiffs suggest that they can avoid its requirements altogether by seeking to certify an issue class under Rule 23(c)(4).  But Plaintiffs' reliance on Rule 23(c)(4) does not obviate their need to satisfy Rule 23(b)(3).  *See In re Suboxone Antitrust Litig.*, MDL 2445, 2019 WL 4735520, at *18 (E.D. Pa. Sept. 27, 2019) ("Certification of particular issues under Rule 23(c)(4) is only proper if the other requirements of Rule 23(a) and (b) are first met."); *Romero v. Allstate Ins. Co.*, 52 F. Supp. 3d 715, 724 (E.D. Pa. 2014) (same); *see also* Joseph M. McLaughlin, *McLaughlin on Class Actions* § 4:43 (2012) (Rule

10

23(c)(4) "should never be. . .used to 'fix' manifest Rule 23(b)(3) predominance problems presented where key issues going to liability require individualized proof.").[4]

"[A] court's decision to exercise its discretion under Rule 23(c)(4), like any other certification determination under Rule 23, must be supported by rigorous analysis." *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 272 (3d Cir. 2011) (quoting *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 200-01 (3d Cir. 2009)).  The Third Circuit has provided the following "non-exclusive list of factors" that "should guide courts" as they apply Rule 23(c)(4):

> (1) the type of claim(s) and issue(s) in question; (2) the overall complexity of the case; (3) the efficiencies to be gained by granting partial certification in light of realistic procedural alternatives; (4) the substantive law underlying the claim(s), including any choice-of-law questions it may present and whether the substantive law separates the issue(s) from other issues concerning liability or remedy; (5) the impact partial certification will have on the constitutional and statutory rights of both the class members and the defendant(s); (6) the potential preclusive effect or lack thereof that resolution of the proposed issue class will have; (7) the repercussions certification of an issue(s) class will have on the effectiveness and fairness of resolution of remaining issues; (8) the impact individual proceedings may have upon one another, including whether remedies are indivisible such that granting or not granting relief to any claimant as a practical matter determines the claims of others; and (9) the kind of evidence presented on the issue(s) certified and potentially presented on the remaining issues, including the risk subsequent triers of fact will need to reexamine evidence and findings from resolution of the common issue(s).

*Id.* at 273.

## III.   ARGUMENT

### A.   Issue Certification Is Not Appropriate Because There Is No Meaningful Commonality And Individual Issues Of Fact And Law Predominate.

The issues that Plaintiffs propose to certify for class treatment encompass so many individualized questions of fact and law that they do not warrant certification under Rules 23(a) or

---

[4] There is a Circuit split about the relationship between Rules 23(b) and 23(c)(4), and the Third Circuit purports not to have "join[ed] either camp."  *Gates*, 655 F.3d at 272-73.  But the Third Circuit has embraced a view of Rule 23(c)(4) that effectively limits issue class certification to cases where a party satisfies the predominance, superiority, and manageability elements of Rule 23(b)(3).  *Id.*; *see Gonzalez v. Corning*, 885 F.3d 186, 202-03 (3d Cir. 2018) (citing "the same reasons" for affirming denials of certification under Rules 23(b)(3) and 23(c)(4)).

11

23(b)(3).  No court in the Third Circuit has **ever** certified and tried a limited issue class centered on emotional distress liability because with respect to the claims of even a single plaintiff, emotional distress liability and damages are "**too interwoven to allow a fair determination of damages apart from liability.**"  *Spence*, 806 F.2d at 1202 (emphasis added).  It is obvious, then, that "the idiosyncratic nature of emotional distress claims" make them "diverse and personal" and "unsuitable for class certification."  *In re Three Mile Island Litig.*, 87 F.R.D. 433, 441-42 n.16 (M.D. Pa. 1980) ("*In re TMI*").  The overwhelming weight of authority from courts across the country agrees.[5]

Plaintiffs have identified a set of abstract questions that they contend are "common," but "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Dukes*, 564 U.S. at 350 (emphasis in original).  Identifying common questions is not enough to satisfy Rule 23(a) because "[a]ny competently crafted class action complaint literally raises common 'questions.'"  *Id.* at 349.  Rather, common questions will satisfy Rule 23(a) only if they are "capable of class[-]wide resolution" and "resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.* at 350.

Rule 23(b)(3)'s predominance requirement is "even more demanding" than Rule 23(a)'s exacting commonality requirement.  *Comcast*, 569 U.S. at 34.  The Court "must formulate some prediction as to how specific issues will play out in order to determine whether common or

_____

[5] *See, e.g.*, *Rader v. Teva*, 276 F.R.D. 524, 530–31 (D. Nev. 2011) ("The emotional distress claims of thousands of proposed class members defeat class certification in this case because emotional distress is necessarily an individualized inquiry, and the amount of damages in such cases 'is not susceptible to a mathematical or formulaic calculation.'"); *Hyderi v. Washington Mut. Bank, FA*, 235 F.R.D. 390, 397 (N.D. Ill. 2006) (emotional distress claims are a "highly plaintiff-specific issue"); *Com. of Puerto Rico v. M/V Emily S.*, 158 F.R.D. 9, 14 (D.P.R. 1994) (emotional distress claims are "intractably individual in character").

individual issues predominate in a given case." *In re Hydrogen Peroxide*, 552 F.3d at 311.

Whether analyzed under the framework Rule 23(a) or Rule 23(b)(3), Plaintiffs' proposed issue classes do not warrant certification because they lack commonality and individualized questions of law and fact predominate. *See Gonzalez v. Corning*, 885 F.3d 186, 195 (3d Cir. 2018) ("If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable."). Notwithstanding Plaintiffs' attempts to circumscribe the scope of their proposed issue class, even those limited issues articulated by Plaintiffs present an array of individualized issues that would overwhelm any class-wide analysis and prevent the attainment of common answers to the supposedly common questions.

### 1. Duty and Breach

Whether ECFMG owed or breached a duty to any particular class member (of the more than 1,000 class members claimed by Plaintiffs) is "not capable of class[-]wide resolution," *Dukes*, 564 U.S. at 350, and certainly does not predominate over individualized inquiries. Regardless of whether the question is stated generally as in Option A (*i.e.*, whether ECFMG owed or breached a duty) or narrowly as in Option B (*i.e.*, whether ECFMG owed or breached a duty under various particular theories), *see* ECF 32-1 at 10-11, the answer will vary depending on which state's law applies (which itself presents an obstacle to class certification, *see infra* Part III.B) and whether the class member's alleged injury was a reasonably foreseeable result of ECFMG's conduct. *See, e.g.*, *Hartford Ins. v. Manor Inn of Bethesda*, 642 A.2d 219, 226 (Md. 1994).[6]  Here, determining whether it was foreseeable that ECFMG's conduct would cause a particular class member to be treated by Dr. Akoda and then to suffer emotional distress upon learning of the charges against Dr.

---

[6] To the extent Pennsylvania law might apply, *see infra* Part III.B, it similarly requires a foreseeability analysis to determine whether a duty exists. *See, e.g.*, *Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1169 (Pa. 2000).

Akoda is rife with individualized issues incapable of class treatment, including:

**When and where each class member encountered Dr. Akoda.** Class members encountered Dr. Akoda while he was (1) in Nigeria before he applied for ECFMG certification; (2) a resident at JSMC; (3) a resident at Howard; (4) a physician with privileges at PGHC; (5) an employee at Dr. Moore's office; (6) an employee at Dr. Chaudry's office; (7) a licensed physician; and/or (8) Board certified. Class members also encountered Dr. Akoda before and after ECFMG was instructed by federal authorities not to take adverse action against him. With each additional third party that independently assessed Dr. Akoda's credentials and permitted him to treat patients, it becomes less foreseeable that ECFMG's conduct might cause Dr. Akoda to treat patients or cause emotional distress. To the extent Plaintiffs contend that the duty might arise from ECFMG's relationships with third parties, ECF 32-1 at 11, each would require individualized consideration. Thus, a class member who was treated by Dr. Akoda in Nigeria or as a resident at JSMC would have to present markedly different evidence on the question of ECFMG's duty than a class member who was treated by Dr. Akoda at PGHC when he worked for Dr. Moore or Dr. Chaudry as a fully licensed and Board-certified OB/GYN.

**How each class member was treated and/or examined by Dr. Akoda.** Plaintiffs (and their experts[7]) cannot dispute that class members had a wide variety of experiences with Dr. Akoda under a wide variety of circumstances. ECF 32-44 at 21. Class members' interactions with Dr. Akoda ranged from allegedly "positive" medical examinations to allegedly inappropriate comments or contact. *See* Ex. 25. Whether it was foreseeable that ECFMG's conduct would result in Dr. Akoda treating and/or mistreating a particular class member in the particular way that factored into that class member's alleged emotional distress is an individualized issue not capable of class-wide resolution through common evidence.

**Each class member's relationship to ECFMG.** Plaintiffs had no knowledge of ECFMG until after their alleged injuries. Exs. 11-14 at Rog 7. No court has ever held that ECFMG owes a duty to members of the general public (like Plaintiffs) to ensure that IMGs who receive an ECFMG Certificates will in fact, or are qualified to, provide appropriate medical treatment. Whether ECFMG owed such a duty may turn on the specific relationship (if any) between each class member and ECFMG. *See, e.g.*, *Remsburg v. Montgomery*, 831 A.2d 18, 27 (Md. 2003).[8]

       *2.*     *Causation*

Determining liability on a class-wide basis would require a finding of both actual and

---

[7] Many of the opinions articulated by Plaintiffs' experts should be excluded under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny. *See, e.g.*, Ex. 34 at 3. But because Plaintiffs have not argued that the substance of their experts' opinions support class certification, ECFMG has not moved to exclude them at this time. ECFMG reserves the right to do so in connection with its motion for summary judgment.

[8] *See also, e.g.*, *Weiley v. Albert Einstein Med. Ctr.*, 51 A.3d 202, 217-19 (Pa. Super. 2012).

proximate causation on a class-wide basis. *See Hartford Ins. Co.*, 642 A.2d at 229-30.[9]  "When
more than one act of negligence arguably could be responsible for the injury, the question is
whether the second in point of time superseded the first, *i.e.*, did that act intervene and supersede
the original act of negligence, thus terminating its role in the causation chain?"  *Id.*  Here, there
are innumerable individualized questions implicated in the issue of causation, including:

*When and where each class member encountered Dr. Akoda.*  Each decision by an above-
listed third party to supervise, credential, privilege, or hire Dr. Akoda—based on its own
investigations, assessments, and criteria—was a potential break in the causal chain that would
eliminate ECFMG's liability.  A class member who was treated by Dr. Akoda in Nigeria or as
a resident at JSMC would have to present markedly different evidence on causation than a
class member who was treated by Dr. Akoda at PGHC when he worked for Dr. Moore or Dr.
Chaudry as a fully licensed and Board-certified OB/GYN.

*How each class member was treated and/or examined by Dr. Akoda.*  Whether a class
member's emotional distress was actually and proximately caused by ECFMG's conduct
would likely turn on whether the class member had minimal or extensive exposure to Dr.
Akoda and whether the jury believes that Dr. Akoda's decision to treat or examine the class
member in a particular way broke the causal chain between ECFMG and the alleged emotional
distress.  It is not capable of class-wide resolution through common proof.

*How each class member's background affected the alleged emotional distress.*  The
existence, onset, and interplay of an individual's alleged emotional distress is an
overwhelmingly individualized inquiry.  Whether alleged emotional distress (if proven to
exist) was attributable to treatment by Dr. Akoda or the result of a preexisting mental health
issue is impossible to determine through common evidence.  This is evident from just the
claims of the named Plaintiffs:

*See* Exs. 26-31.

*Whether class members experienced physical injury.*  To recover for emotional distress,
Plaintiffs must show that ECFMG's conduct caused not only emotional distress, but also an
"objective and demonstrable physical injury."  *Exxon Mobil Corp. v. Albright*, 71 A.3d 30 (Md.
2013).[10]  The nature of any alleged physical injury that might support the recovery of emotional
distress damages (and whether such injury is causally related to both the alleged negligence
and emotional distress) can vary widely and is not suited to class-wide resolution.  *See In re
TMI*, 87 F.R.D. at 441-42 ("[A] class action is not the superior method for adjudication of the
claims for physical injury related to emotional distress.").

---

[9] *See also, e.g.*, *Eckroth v. Pennsylvania Elec., Inc.*, 12 A.3d 422, 427 (Pa. Super. 2010).

[10] *See also, e.g.*, *Toney v. Chester Cty. Hosp'l*, 961 A.2d 192, 200 (Pa. Super. 2008).

Plaintiffs try to side step these fundamental causation problems by limiting their proposed issue classes to questions of general causation (*i.e.*, whether ECFMG's conduct was **<u>capable</u>** of causing emotional distress) and leaving questions of specific causation (*i.e.*, whether ECFMG's conduct **<u>actually</u>** caused emotional distress) for thousands of separate mini-trials.  But in tort cases like this, courts "have routinely refused to certify common questions of general causation." *Blain v. Smithkline Beecham Corp.*, 240 F.R.D. 179, 185 n.19 (E.D. Pa. 2007); *see, e.g.*, *Gates*, 655 F.3d at 273 (affirming refusal to certify a "liability-only issue class when it found liability inseverable from other issues that would be left for follow-up proceedings"); *Arch v. Am. Tobacco Co., Inc.*, 175 F.R.D. 469, 488-89 (E.D. Pa. 1997) (finding that "general causation" question of whether cigarettes are capable of being addictive is not common under Rule 23(a)(2)).  "Any hope of efficiency would be subverted by the individual and unique circumstances of each member's case which are inextricably intertwined with the general causation issue." *Blain*, 240 F.R.D. at 192.

Separating concepts of general and specific causation is especially inappropriate for a putative class centered on allegations of emotional distress where there is no meaningful distinction between the evidence bearing on both inquiries.  Emotional distress liability and damages issues are "too interwoven to allow a fair determination of damages apart from liability" because "emotional distress damages must be evaluated in light of all the circumstances surrounding the alleged misconduct." *Spence*, 806 F.2d at 1202.  This case is completely unlike the out-of-Circuit chemical exposure cases cited by Plaintiffs (ECF 32-1 at 15) in which common evidence arguably could be presented to answer the question of whether, as a matter of scientific literature and study, sufficient evidence existed to establish whether exposure to a particular chemical **<u>can</u>** cause a particular diagnosable condition, and leaving for later whether the chemical **<u>did</u>** cause such a condition in a particular person.  *See Martin v. Behr*, 896 F.3d 405 (6th Cir. 2018); *Adkisson v. Jacobs Eng'g Grp., Inc.*, 370 F. Supp. 3d 826 (E.D. Tenn. 2019).  Moreover,

16

those cases are outliers.  *See, e.g.*, *In re "Agent Orange" Prod. Liability Litig.*, 818 F.2d 145, 164 (2d Cir. 1987) (rejecting "general causation" issue certification because the relevant and "highly individualistic" question was whether exposure to Agent Orange "*did* cause harm and to whom"); *Arch*, 175 F.R.D. at 488-89 ("Unless it is proven that cigarettes always cause or never cause addiction, 'the resolution of the general causation question accomplishes nothing for any individual plaintiff.'").  Plaintiffs here have not (and cannot) come forward with evidence speaking specifically to the question of general causation as opposed to specific causation.  Rather, the "causes of the injuries alleged" must "be assessed on a plaintiff-by-plaintiff basis."  *In re TMI*, 87 F.R.D. at 441-42; *see Spence*, 806 F.2d at 1202; Exs. 26-31.

### 3.    *Statute of Limitations Defense*

For many class members, the two-year statute of limitations began to run no later than November 2016, when Dr. Akoda's guilty plea became public and class members knew or should have known of Dr. Akoda's conduct and any emotional distress they might have experienced from that knowledge.  *See Erisoty v. Rizik*, No. 93-6215, 1995 WL 91406, at *10 n.4 (E.D. Pa. Feb. 23, 1995) (applying Pennsylvania's two-year limitations period for torts over Maryland's three-year limitations period for torts).  But there are class members whose claims may be time-barred because they allegedly suffered emotional distress caused by Dr. Akoda **before** November 2016. Ex. 25.  Indeed, one class member actually filed a lawsuit seeking emotional distress damages resulting from her treatment by Dr. Akoda in early 2016—months **before** Dr. Akoda was even arrested.  Ex. 35.  Whether and to what extent she (or other class members claiming emotional distress **before** November 2016) learned of the charges against Dr. Akoda **outside** the two-year limitations period applicable in this case presents an important individualized issue not capable of class-wide resolution through common proof.  "[D]etermining whether each class member's claim is barred by the statute of limitations raises individual issues that prevent class certification."

*Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 149 (3d Cir. 1998). Thus, individualized questions of law and fact bearing on ECFMG's statute of limitations defense preclude certification under Rule 23(a) or 23(b)(3).

   **B.     A Class Action Is Neither Superior Nor Manageable And Will Not Lead To Judicial Efficiency.**

   A class action is not the superior method for adjudicating emotional distress claims because of the "likelihood that significant questions, not only of damages but of liability and defenses of liability, would be present, affecting the individuals in different ways" such that "an action conducted nominally as a class action would degenerate into practice into multiple lawsuits separately tried." Fed. R. Civ. P. 23, advisory committee's note; *see In re TMI*, 87 F.R.D. at 441-42. On this record, the Court cannot find "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," Fed. R. Civ. P. 23(b)(3), for three reasons.

   ***First***, emotional distress liability and damages issues are "too interwoven to allow a fair determination of damages apart from liability" because "emotional distress damages must be evaluated in light of all the circumstances surrounding the alleged misconduct." *Spence*, 806 F.2d at 1202. The Third Circuit has "steadfastly" disapproved of separate **individual** trials for liability and damages "where a tangled or complex fact situation would make it unfair to one party to determine damages apart from liability." *Pryer v. C.O. 3 Slavic*, 251 F.3d 448, 455 (3d Cir. 2001); *see Gasoline Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931) (separate trials on liability and damages "would amount to a denial of a fair trial" where issues are "interwoven" and "cannot be submitted to the jury independently"). This concern would only be exacerbated by attempting to have a separate liability trial on a **class-wide** basis for the reasons that commonality under Rule 23(a) and predominance under Rule 23(b)(3) are lacking. *See supra* Part III.A. Plaintiffs have offered no efficient way to isolate meaningful issues for class treatment. Plaintiffs

have offered no trial plan or other explanation about how they expect to try either proposed issue class in a manageable way, and they concede (as they must) that there will still be thousands of mini-trials even if an issue class is certified. *See* ECF 32-1 at 25. Any attempt by Plaintiffs to narrow further the scope of any issue class would eliminate any efficiency gains that even arguably arise from class treatment. *See Romero*, 52 F. Supp. 3d at 738 (issue certification not appropriate where it would not materially advance the litigation).

**Second**, issue certification would ignore each class member's significant interest in controlling her own litigation. This interest is particularly strong in personal injury and emotional distress cases and where discovery will involve intrusive IMEs and highly sensitive mental health and gynecological issues. *See, e.g.*, *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 633 (3d Cir. 1996) (strong interest class members have in controlling own personal injury lawsuits disfavors certification); *Blain*, 240 F.R.D. at 191-92 (same); *Sweet v. Pfizer*, 232 F.R.D. 360, 373 (C.D. Cal. 2005) ("[T]he class members appear to have large stakes in the litigation, as the alleged harm has affected such aspects of their lives as their marriages and finances."). Each class member's interest is also strengthened in this case because "there is a wide range of choice of the strategy and tactics of the litigation," including choices about which defendants to pursue and when. *See Hobbs v. Northeast Airlines, Inc.*, 50 F.R.D. 76, 79 (E.D. Pa. 1970). Each class member should be able to decide whether to focus litigation efforts on Dr. Akoda and/or the institutions that employed him.

**Third**, choice-of-law issues in this case render it unmanageable. *See, e.g.*, *In re Processed Egg Prods. Antitrust Litig.*, 312 F.R.D. 124, 164-65 (E.D. Pa. 2015) (finding application of 21 state laws unmanageable). Plaintiffs contend that Pennsylvania law should apply to all class members because Pennsylvania has rejected the *lex loci delicti* rule and Plaintiffs' counsel are "unaware" of any relevant conflicts between the laws of Pennsylvania and other states. ECF 32-1 at 22-23. Neither of these arguments hold water. There are material differences between the laws

19

of Pennsylvania (where ECFMG is located) and the laws of jurisdictions where Plaintiffs and class members interacted with Dr. Akoda and ultimately suffered their alleged injuries (such as Nigeria, Maryland, New Jersey, and Washington, DC). For example, unlike Pennsylvania, Maryland—the jurisdiction where each of the named Plaintiffs was treated by Dr. Akoda, where Dr. Akoda was licensed to practice medicine, and where 3 of the 4 named Plaintiffs reside—"does not recognize the tort of negligent infliction of emotional distress." *Alban v. Fiels*, 61 A.3d 867, 876 (Md. 2013); *see Blain*, 240 F.R.D. at 195 ("Negligent infliction of emotional distress claims vary greatly among the states."). In such situations, Pennsylvania[11] generally applies a "flexible" choice-of-law analysis that "permits analysis of the policies and interests underlying the particular issue before the court" and applies the law of the state with the "most interest in the problem." *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 227 (3d Cir. 2007) (quoting *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 805-06 (Pa. 1964)). Here, Maryland has a greater interest than Pennsylvania in whether a Maryland resident treated in Maryland by a doctor licensed in Maryland can recover for emotional distress arising from that treatment, so Maryland law applies to (and bars) Plaintiffs' emotional distress claims. Similar analyses would be required based on each class member's particular circumstances, precluding a finding of superiority or manageability under Rule 23(b)(3).

### C.   Plaintiffs' Claims Are Not Typical Of Other Claims.

Rule 23(a)'s typicality requirement "is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees." *Georgine*, 83 F.3d at 631. Here, Plaintiffs' claims are not typical of other claims in two respects.

*First*, Plaintiffs were all treated after Dr. Akoda had completed the Howard residency program, was licensed to practice medicine in Maryland and Virginia, became Board certified in

---

[11] Because the Court is sitting in diversity, the choice of law rules of the forum state apply. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

his specialty, obtained privileges at PGHC, and was hired by a private medical office.  Plaintiffs'

claims are clearly **not** typical of class members who were treated by Dr. Akoda at any point along

that chain of events or, alternatively, in Nigeria before he ever applied to ECFMG.

*Second*, each Plaintiff is seeking only emotional distress damages; Dr. Akoda's treatment

resulted in a healthy child, a healthy mother, and no physical injury.  *See* Ex. 32 at 10.  Having

disavowed all other claims, Plaintiffs are not in a position to pursue the interests of class members

who allegedly suffered in other ways at the hands of Dr. Akoda.  *See* Ex. 25.  Indeed, if a class is

certified here, class members would be precluded from later pursuing claims that could have been

asserted in this class action.  *See Rader*, 276 F.R.D. at 529 ("insurmountable conflict" resulting

from named plaintiff's choice to pursue limited relief "jeopardiz[es] the class members' ability to

subsequently pursue other claims" and renders named plaintiff inadequate representative).

### D.      Plaintiffs Are Not Adequate Class Representatives.

Rule 23(a)'s adequacy requirement is designed "to uncover conflicts of interest between

named parties and the class they seek to represent."  *Amchem Prods. v. Windsor*, 521 U.S. 591,

625 (1997).  Here, Plaintiffs are not adequate class representatives for three reasons.

*First*, Plaintiffs (and their counsel) previously sought to represent a similar class of

individuals in lawsuits against Dimensions Health Corp. ("Dimensions") and others who operated

PGHC, the hospital where Dr. Akoda actually treated and examined patients.  *See supra* at 8 n. 3.

But just before a class certification hearing in those cases—and without securing any relief for

themselves or the putative class—Plaintiffs dismissed their claims without prejudice.  Exs. 23 &

24.  If Plaintiffs were not willing to represent the putative class in pursuing claims against the

hospital whose negligence was the "sole and proximate cause" of putative class members' alleged

injuries, Ex. 38 ¶ 81, and, according to Plaintiffs' own expert in that case, "directly and

proximately resulted in injuries, damages, and permanent disability" to putative class members,

Ex. 22, it is unclear why they would faithfully pursue more attenuated claims against ECFMG.[12]

**Second**, Plaintiffs are not adequate class representatives because, despite claiming that ECFMG was a direct and proximate cause of every class member's alleged injuries, Plaintiffs fundamentally misunderstand what ECFMG actually does. During their depositions, Plaintiffs testified that they believed ECFMG was a government agency (ECF 32-36 at 51:15-52:1), issued medical licenses (Ex. 37 at 90:22-91:11), was responsible for verifying passports and immigration information (Ex. 36 at 80:8-82:4), and was responsible for conducting criminal background checks (ECF 32-37 at 28:3-7 ). None of that is true. If Plaintiffs are to represent the putative class and make informed decisions about settlement and trial, they must understand ECFMG's role in the medical field and not operate under the misimpression that ECFMG is something that it is not.

**Third**, Plaintiffs claim to suffer emotional distress, but they seek to represent class members who may not yet (or ever) suffer emotional distress. Such class members may not feel aggrieved by having been treated by Dr. Akoda, may have no recollection of having ever been treated by Dr. Akoda, or may not know of the charges against Dr. Akoda. In fact, some class members might suffer emotional distress only upon receiving notice of this class action, if it is certified. Because of these conflicts, Plaintiffs are not adequate class representatives for the proposed class. *See Amchem*, 521 U.S. at 625-26 (finding inadequate representation where currently injured plaintiffs sought to represent plaintiffs who had not yet suffered an injury).

---

[12] ECFMG is not challenging that Plaintiffs' counsel satisfies the adequacy requirement of Rule 23(a), but ECFMG adamantly rejects the suggestion that the case against it is "a similar class action" to *Jane Doe No. 1 v. Johns Hopkins Hosp'l*, No. 24-C-13-001041 (Balt. City Cir. Ct.), ECF 32-1 at 18, which was a case against Johns Hopkins Hospital for failing to discover, stop, and report a physician who secretly recorded women during pelvic exams **while the physician worked at Johns Hopkins Hospital**. If anything, *Jane Doe No. 1* would have been more akin to Plaintiffs' lawsuit against **Dimensions** (which operated PGHC where Dr. Akoda treated and/or examined each of the Plaintiffs and many putative class members), had Plaintiffs not dismissed their own putative class action against Dimensions and others in exchange for nothing.

### E.   Plaintiffs Cannot Satisfy Rule 23's Inherent Ascertainability Requirement.

Rule 23's inherent "ascertainability" requirement mandates a rigorous analysis of whether the proposed classes are "currently and readily ascertainable based on objective criteria." *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013). "To satisfy this standard, plaintiff must show that (1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 439 (3d Cir. 2017). The ascertainability requirement is important because it: (1) "eliminates serious administrative burdens that are incongruous with the efficiencies expected in a class action by insisting on the easy identification of class members," (2) "protects absent class members by facilitating the best notice practicable . . ." and (3) "protects defendants by ensuring that those persons who will be bound by the final judgment are clearly identifiable." *Carrera*, 727 F.3d at 305-06. Plaintiffs fail to satisfy Rule 23's inherent ascertainability requirement in two respects.

*First*, Plaintiffs have defined a class that includes "all patients examined and/or treated in any manner by Oluwafemi Charles Igberase (a/k/a Charles J. Akoda, M.D.)," ECF 32-1 at 10, but the term "examined and/or treated in any manner" is hopelessly vague and lacking objective criteria. If Dr. Akoda, while a resident, participated in a supervised examination, was that patient "examined" by Dr. Akoda? If Dr. Akoda was asked to consult on a diagnosis for another doctor's patient, was that patient "treated" by Dr. Akoda?

*Second*, Plaintiffs have not identified a reliable method for identifying putative class members. Plaintiffs contend that "[m]embers of the class can be identified through records of medical treatment, which will show when and how patients were treated by Igberase," ECF 32-1 at 19, but Plaintiffs do not represent to have medical records relating to Dr. Akoda's patients in Nigeria (before Dr. Akoda came to the United States) or at Howard (where Dr. Akoda started his

23

residency in 2007) or from the medical offices of Dr. Moore or Dr. Chaudry (where Dr. Akoda started working in 2011).  Plaintiffs cannot represent that such records even exist because the legal obligation to retain such records has expired.  *See* 45 C.F.R. 164.316(b)(2) (HIPAA requires covered entities to retain records for only 6 years).

    **F.**    **For All Of The Foregoing Reasons, The *Gates* Factors Weigh Against Issue Certification Under Rule 23(C)(4).**

Rule 23(c)(4) "both imposes a duty on the court to insure that only those questions which are appropriate for class adjudication be certified" and—much like Rule 23(a) and Rule 23(b)(3)—authorizes courts "to treat common things in common and to distinguish the distinguishable." *Gates*, 655 F.3d at 272.  Many of the factors guiding the application of Rule 23(c)(4) overlap with issues already discussed, and all factors weigh against certifying an issue class in this case.

Emotional distress liability and damages issues are "too interwoven to allow a fair determination of damages apart from liability" because "emotional distress damages must be evaluated in light of all the circumstances surrounding the alleged misconduct." *Spence*, 806 F.2d at 1202.  The Third Circuit has "steadfastly" refused to separate liability from damages even in **<u>individual</u>** emotional distress cases because to do so in a case involving "a tangled or complex fact situation would make it unfair to one party to determine damages apart from liability." *Pryer*, 251 F.3d at 455; *see Gasoline Prods. Co.*, 283 U.S. at 500.  It would be exponentially more problematic to try to separate liability from damages to address **<u>thousands</u>** of such cases at once.  Indeed, Plaintiffs' proposed issue classes implicate highly individualized questions—including both threshold choice-of-law questions and merits questions—that are not capable of class-wide resolution through common proof. *See supra* Part III.A-B.  Accordingly, "common issues . . . are not divisible from the individual issues," *Gates*, 655 F.3d at 273, and issue certification is not appropriate based on the type of claims and issues presented (Factor 1), the overall complexity of

the case (Factor 2), the substantive law (Factor 4), the unfairness that would result from trying to split emotional distress liability and damages issues (Factor 7), and the kinds of evidence to be presented on the certified issues (Factor 9).

Nor would issue certification result in any efficiency gains.  Setting aside that the supposedly "common" issues identified by Plaintiffs in reality present innumerable variations of law and fact that are incapable of class-wide resolution, *see supra* Part III.A, the proposed issue classes are still too narrow to advance the litigation in any material way because it is undisputed that thousands of mini-trials about important issues—including issues overlapping with those to be tried on a class-wide basis, such as foreseeability and causation—will be necessary if an issue class is certified.  *See supra* Part III-B.  Any bifurcation of general causation from specific causation or of liability from damages would also present a Seventh Amendment problem because the issues are "too interwoven," *Spence*, 806 F.2d at 1202, and would likely result in a later jury reexamining the findings of a prior jury.  The remedies sought by each class member do not favor issue certification because they are not indivisible and granting or not granting relief to any claimant will not as a practical matter determine the claims of others.  But to the extent any decisions are made in individual trials, it is possible they will have precedential and/or preclusive effect as appropriate with respect to similarly situated individuals who choose to bring claims against ECFMG, which diminishes the need for issue certification.  Due to the fact that issue certification would not promote efficiency (Factor 3), the risk that issue certification would violate the Seventh Amendment (Factor 5), the potential efficiencies resulting from individual adjudications (Factor 6), the minimal impact of individual proceedings on the claims of others (Factor 8), and the kind of evidence to be presented (Factor 9), issue certification is inappropriate.

## IV.   <u>CONCLUSION</u>

The Court should deny Plaintiffs' Motion and not certify either proposed issue class.

Dated: October 28, 2019

*/s/ Brian W. Shaffer*
Brian W. Shaffer, PA Bar No. 78851
Elisa P. McEnroe, PA Bar No. 206143
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA  19103-2921
Telephone:    +1.215.963.5000
Facsimile:    +1.215.963.5001
brian.shaffer@morganlewis.com
elisa.mcenroe@morganlewis.com

*Attorneys for the Educational Commission for*
*Foreign Medical Graduates*

## APPENDIX –  CONTENTS OF EXHIBITS

| Ex. | Document |
|---|---|
| 1. | Verification Papers – University of Ibadan |
| 2. | Verification Papers – University of Benin |
| 3. | October 14, 2019 Expert Report from Dr. Mark A. Smith |
| 4. | October 14, 2019 Expert Report from Dr. Laurence H. Beck |
| 5. | March 16, 2007 Letter to John-Charles Akoda from Howard University Hospital |
| 6. | Howard University Hospital Certificate of Completion of Residency for John-Charles Nosa Akoda MD |
| 7. | January 31, 2014 Letter to John-Charles Akoda from American Board of Obstetrics and Gynecology |
| 8. | May 22, 2002 Letter to Dr. Oluwafemi Charles Igberase from William C. Kelly |
| 9. | November 7, 2000 Letter to State of Maryland Board of Physician Assurance from Meridian Health System |
| 10. | May 5, 2017 Virginia Department of Health Professions Report |
| 11. | Plaintiff Desire Evans's Supplemental Answers to First Set of Interrogatories and Supplemental Responses to First Set of Requests for Production of Documents |
| 12. | Plaintiff Elsa Powell's Supplemental Answers to First Set of Interrogatories and Supplemental Responses to First Set of Requests for Production of Documents |
| 13. | Plaintiff Jasmine Riggins' Supplemental Answers to First Set of Interrogatories and Supplemental Responses to First Set of Requests for Production of Documents |
| 14. | Plaintiff Monique Russells' Supplemental Answers to First Set of Interrogatories and Supplemental Responses to First Set of Requests for Production of Documents |
| 15. | Email from Kara Corrado to Lisa Cover, Suzann Paolini, and Roman Mizak (March 18, 2016) |
| 16. | Email from Kara Corrado to Lisa Cover (Nov. 29, 2016) |
| 17. | Notice #101 from Lisa Cover (March 1, 2017) |

**Appendix – Contents of Exhibits (cont.)**

| Ex. | Document |
|---|---|
| 18. | Plaintiff Desire Evans's Answers to First Set of Interrogatories and Responses to First Set of Requests for Production of Documents |
| 19. | Plaintiff Elsa Powell's Answers to First Set of Interrogatories and Responses to First Set of Requests for Production of Documents |
| 20. | Plaintiff Jasmine Riggins' Answers to First Set of Interrogatories and Responses to First Set of Requests for Production of Documents |
| 21. | Plaintiff Monique Russells' Answers to First Set of Interrogatories and Responses to First Set of Requests for Production of Documents |
| 22. | February 26, 2018 Expert Report from Dr. Thomas Bojko |
| 23. | Docket from *Russell et al v. Dimensions Health Corporation*, CAL 17-22761 (Cir. Ct. Prince George's Cty, MD) |
| 24. | Stipulation of Dismissal, CAL 17-22761 |
| 25. | Questionnaire Responses |
| 26. | September 25, 2019 Expert Report from Dr. Gladys Fenichel |
| 27. | September 23, 2019 Independent Medical Examination Report on Plaintiff Monique Russell, conducted by Dr. Gladys Fenichel |
| 28. | September 25, 2019 Independent Medical Examination Report on Plaintiff Jasmine Riggins, conducted by Dr. Gladys Fenichel |
| 29. | September 23, 2019 Independent Medical Examination Report on Plaintiff Elsa Powell, conducted by Dr. Gladys Fenichel |
| 30. | September 23, 2019 Independent Medical Examination Report on Plaintiff Desire Evans, conducted by Dr. Gladys Fenichel |
| 31. | October 14, 2019 Rebuttal Expert Report from Dr. Gladys Fenichel |
| 32. | September 23, 2019 Expert Report from Dr, Jay Goldberg |
| 33. | Facebook Comments Produced by Plaintiff Monique Russell |
| 34. | October 14, 2019 Rebuttal Expert Report from Dr. Susan McDonald |
| 35. | *Jalloh et al v. Chaudry et al*, CAL 16-22162 (Cir. Ct. Prince George's Cty, MD) – Complaint |

**Appendix – Contents of Exhibits (cont.)**

| Ex. | Document |
|-----|----------|
| 36. | September 5, 2019 Transcript of Deposition of Desire Evans |
| 37. | September 6, 2019 Transcript of Deposition of Elsa Powell |
| 38. | *Russell et al v. Dimensions Health Corporation*, CAL 17-22761 (Cir. Ct. Prince George's Cty, MD) – First Amended Class Action Complaint |

## **CERTIFICATE OF SERVICE**

I do hereby certify that on this date, I caused true and correct copies of the foregoing document to be served via electronic filing upon all counsel of record via the ECF system and/or e-mail.


DATED:  October 28, 2019                    */s/ Brian W. Shaffer*
                                            Brian W. Shaffer