# **<u>EXHIBIT 35</u>**

RAMATULIE JALLOH and
KOMBOH S. KAMARA,
9963 Goodluck Road, Apt. T1
Seabrook, Maryland 20706

       Plaintiffs,

vs.

ABDUL G. CHAUDRY, M.D.
6005 Landover Road, Suite 5
Cheverly, Maryland 20785

CHARLES J. AKODA, M.D.
6005 Landover Road, Suite 5
Cheverly, Maryland 20785

       Defendants.

\*    IN THE CIRCUIT COURT OF

\*    MARYLAND FOR

\*    PRINCE GEORGE'S COUNTY

\*

\*

\*

\*

\*

\*

\*

\*    Case No.: CAL16-22162

\*                                                                                                                             

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT

Plaintiffs, Ramatulie Jalloh and Komboh S. Kamara, by their attorneys, Danielle S.

Dinsmore, Marissa B. Joelson, and the Law Offices of Peter G. Angelos, P.C., sue Defendants,

Abdul G. Chaudry, M.D., Charles J. Akoda, M.D., and any and all other agents, servants and/or

employees of Defendant, Abdul G. Chaudry, M.D., and for reasons say:

### FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS

    1.     This action originated in the Health Claims Alternative Dispute Resolution Office

pursuant to Courts & Judicial Proceedings Article 3-2A-01, et seq.

    2.     Pursuant to Article 3-2A-06A, the Plaintiffs filed a written Waiver of Arbitration,

and an Order of Transfer was issued by the Health Claims Alternative Dispute Resolution Office.

A copy of this Order of Transfer is annexed hereto as Exhibit 1.

3.      The venue in this action is Prince George's County, Maryland, based upon the Defendants' place of business.

4.      Plaintiffs are residents of Prince George's County, Maryland.

5.      At all times mentioned herein, Defendant, Abdul G. Chaudry, M.D. ("Dr. Chaudry") was licensed as a physician in the State of Maryland, specializing in the practice of Obstetrics and Gynecology, who represented to the public and to the Plaintiffs that he possessed the degree of skill, knowledge and ability ordinarily possessed by reasonably prudent and competent physicians practicing under the same or similar circumstances as those involving the Plaintiffs.

6.      At all times mentioned herein, Dr. Chaudry operated a medical practice as a sole proprietor doing business as "A.G. Chaudry, M.D.," specifically, the practice of Obstetrics and Gynecology.

7.      At all times mentioned herein, Defendant Charles J. Akoda, M.D. ("Dr. Akoda") was licensed as a physician in the State of Maryland, specializing in the practice of Obstetrics and Gynecology, who represented to the public and to the Plaintiffs that he possessed the degree of skill, knowledge and ability ordinarily possessed by reasonably prudent and competent physicians practicing under the same or similar circumstances as those involving the Plaintiffs.

8.      At all times herein mentioned, Dr. Akoda was acting individually and as the actual and/or apparent agent, servant and/or employee of A.G. Chaudry, M.D., and was acting in the course and scope of his employment and/or agency by/with A.G. Chaudry, M.D.  A.G. Chaudry, M.D. held Dr. Akoda out as its agent, servant and/or employee.

9.      On or about October 26, 2012, Plaintiff Ramatulie Jalloh ("Ms. Jalloh") became a patient of Dr. Chaudry's medical practice for a pregnancy.  Dr. Chaudry, Dr. Akoda, and other

2

actual and/or apparent agents, servants and/or employees of A.G. Chaudry, M.D. continued to provide obstetrical care to Ms. Jalloh at various times throughout her pregnancy.

10.     On or about October 31, 2012, Ms. Jalloh presented to Dr. Chaudry's medical practice with urinary complaints and was thought to have a urinary tract infection.

11.     On or about November 27, 2012, Ms. Jalloh returned to Dr. Chaudry's medical practice and a sonogram estimated gestational age to be 13 weeks, two days. Her estimated date of confinement (EDC) was adjusted from June 19, 2013 to June 2, 2013.

12.     After a visit on December 12, 2012, in which she complained of a headache, Ms. Jalloh was next seen in the office on January 18, 2013. A fetal anatomical sonogram appears to have been performed and interpreted in Dr. Chaudry's office. Estimated gestational age based on the sonogram appeared to be 20 weeks, one day. An AFP Tetra was drawn and a gestational age of 21 weeks, one day was used which did not correspond to either the gestational age of the ultrasound performed that day or the ultrasound performed on November 27, 2012 (20 weeks, 5 days). The AFP Tetra was reported as Down syndrome screening risk of 1 in 2,517, with maternal age based risk of 1 in 193.

13.     Ms. Jalloh's next visit to Dr. Chaudry's office was on February 13, 2013, at assigned gestational age of 24 weeks, 5 days. Because the examiner on this day was unable to locate a fetal heart, an ultrasound was done on February 15, 2013, but no measurements were noted.

14.     After experiencing third trimester bleeding and found to have placenta previa, Ms. Jalloh eventually delivered on May 13, 2013 via cesarean section. The baby was thereafter found to have Down syndrome, cardiac abnormalities, and Hirshsprung disease.

3

15.    Dr. Chaudry and/or Dr. Akoda failed to offer to Ms. Jalloh appropriate first trimester testing on October 26, 2012, October 31, 2012, and on November 27, 2012, given her advanced maternal age, for the prenatal detection of Down syndrome.

16.    Given Ms. Jalloh's advanced maternal age, the obstetrical care provided at Dr. Chaudry's medical practice by Dr. Chaudry and/or Dr. Akoda also deviated from the applicable standards of care by failing to refer the patient to a suitably qualified health care provider for a detailed second trimester fetal anatomical exam of care. This breach would apply to any of the health care providers that rendered treatment to Ms. Jalloh at her visits at Dr. Chaudry's medical practice on November 27, 2012, December 12, 2012, or on January 18, 2013.

17.    It was also a breach in the standard of care for Dr. Chaudry, Dr. Akoda, and/or any other agents, servants and/or employees, to fail to retain the ultrasound images from the sonograms performed at Dr. Chaudry's medical practice. Although no images were retained of the January 18, 2013 study performed, at a minimum, a Ventricular Septal Defect (VSD) should have been detected on that sonogram. A normal four-chambered heart was documented as present on January 18, 2013, however, the fetus had a peri-membranous VSD which was moderate to large. As such, some cardiac abnormality should have been apparent to any competent care provider interpreting the January 18, 2013 study in accordance with the standard of care as a normal four-chambered heart could not have been seen accurately. As such, any other the health care providers, including, but not limited to, Dr. Chaudry, Dr. Akoda, and any other actual and/or apparent agents, servants and/or employees of A.G. Chaudry, M.D. were negligent in improperly interpreting the results of the January 18, 2013 ultrasound study.

18.    As a result of the breaches in the standards of care as set forth herein by Dr. Chaudry, Dr. Akoda, and/or any and all actual and/or apparent agents, servants and/or employees

of A.G. Chaudry, M.D., the Plaintiffs were deprived of adequate information necessary to make a fully informed decision as to whether or not to continue a pregnancy carrying a fetus with Down syndrome. Had the Plaintiffs been offered appropriate testing in a timely fashion for the prenatal detection of Down syndrome, they would have opted for same, and it is more likely than not that such testing would have led to and resulted in the prenatal diagnosis of Down syndrome and as such, the option of terminating Ms. Jalloh's pregnancy would have been exercised by the Plaintiffs.

19.     The Defendants, Dr. Chaudry, Dr. Akoda, and any other actual and/or apparent agents, servants and/or employees of A.G. Chaudry, M.D., owed to Plaintiffs a duty to exercise the degree of care, skill and judgment expected of competent health care providers acting in the same or similar circumstances, which duties included, among other things: to properly and timely offer first trimester screening and/or testing for Down syndrome to the Plaintiff at her prenatal visits during her first trimester on October 26, 2012, October 31, 2012, and on November 27, 2012; to properly and timely advise the Plaintiff of the availability of all prenatal testing for Down syndrome that was appropriate under the circumstances as well as the purpose of those tests; to properly take heed of the fact that the Plaintiff was a high risk patient based on her advanced maternal age; to properly and timely offer appropriate screening and/or testing based upon the Plaintiff's advanced maternal age; to properly and timely refer the patient to a suitably qualified health care provider for a detailed second trimester fetal anatomical exam of care on November 27, 2012, December 12, 2012 or on January 18, 2013; to offer to perform genetic counseling or refer the patient for genetic counseling due to Plaintiff's advanced maternal age; to properly and timely detect a VSD on the sonogram performed on January 18, 2013; to properly and timely interpret the results of the sonogram performed on January 18,

2013; to properly and timely interpret the results of any and all sonograms performed; to appropriately retain any and all ultrasound imaging performed; to timely provide the Plaintiff with all information necessary to make informed and reasoned decisions concerning the condition and/or health of a fetus; to allow the Plaintiff to exercise the option as to whether or not to terminate a pregnancy carrying a fetus with Down syndrome; in properly communicating with the Plaintiffs; to properly perform, provide accurate information for and timely interpret any and all tests and studies, including but not limited to ultrasounds, related to the prenatal detection of Down syndrome; to properly employ due, reasonable, and appropriate skills and care in the examination, treatment and management of the patient; to perform a proper and timely examination of the patient; to take proper heed of the patient's present condition, signs, symptoms, and complaints; in keeping apprised of current medical literature and standards; in complying with the official recommendations of the American College of Obstetricians and Gynecologists that a screening strategy that incorporates first trimester screening and/or testing for Down syndrome be offered to all women who seek prenatal care in the first trimester; in properly performing an extensive and accurate physical examination of the Plaintiff; to properly supervise the agents, servants and/or employees of the Defendants, and to exercise the degree of care, skill and diligence to which this Plaintiff was entitled - all of which the Defendants failed to do.

20.     As a direct and proximate result of the negligence of the Defendants, Dr. Chaudry, Dr. Akoda, and any other actual and/or apparent agents, servants and/or employees of A.G. Chaudry, M.D., the Plaintiffs have suffered, and will continue to suffer, serious and permanent injuries, including, among other things, the wrongful birth of a baby with Down syndrome; the wrongful birth of a baby with Hirschsprung disease associated with Downs

syndrome; the burdens and responsibilities associated with parenting a child suffering from

Down syndrome and Hirshsprung disease; parenting a child with lifelong physical and mental

disabilities, including, but not limited to, severe and permanent gastrointestinal, cardiac and

respiratory issues, as well as the permanent placement of a gastrostomy tube; the significant cost

of providing their child with frequent medical care and attention, continued hospitalizations since

birth, numerous surgical procedures, need for rehabilitation and ongoing nursing care, special

education, various therapies, and other special needs for the rest of that child's life; were caused

to suffer significant mental anguish, emotional distress and anxiety and will so be caused in the

future; will be caused to spend countless hours at medical institutions for their child's care;

significant loss of earnings; were caused to be incapacitated from attending their usual duties and

will so be caused in the future; was caused to incur past and future medical and hospital

expenses, and the loss of enjoyment of life.

21.    The negligence as described herein was the sole and proximate cause of all

injuries and damages sustained by Plaintiffs without any negligence or want of care on the part

of Plaintiffs contributing thereto.

22.    If the Defendants had complied with the applicable standards of care, the losses

and damages described herein would have been avoided.  The timely use of indicated and proper

tests and studies, procedure and protocols, techniques, safety measures, and precautions would

have allowed Plaintiffs to have the information necessary in order to make a fully informed

decision as to whether or not to terminate a pregnancy carrying a fetus with Down syndrome.

This option would have been exercised had Plaintiffs not been improperly deprived of relevant

information.  Plaintiffs' severe and permanent injuries and damages would have been avoided

completely with appropriate and timely utilized testing, referrals, techniques, procedures, and diagnosis.

## COUNT I

### (Negligence - Plaintiffs v. Abdul G. Chaudry, M.D.)

23.    Paragraphs 1 through 22 are adopted by reference in this Count I.

24.    Defendant Abdul G. Chaudry, M.D. negligently deviated from the appropriate standard of medical care by:

a) failing to properly and timely offer first trimester screening and/or testing for Down syndrome to the Plaintiff at her prenatal visits during her first trimester on October 26, 2012, October 31, 2012, and on November 27, 2012;

b) failing to properly and timely advise the Plaintiff of the availability of all prenatal testing for Down syndrome that was appropriate under the circumstances as well as the purpose of those tests;

c) failing to properly take heed of the fact that the Plaintiff was a high risk patient based on her advanced maternal age;

d) failing to properly and timely offer appropriate screening and/or testing based upon the Plaintiff's advanced maternal age;

e) failing to properly and timely refer the patient to a suitably qualified health care provider for a detailed second trimester fetal anatomical exam of care on November 27, 2012, December 12, 2012 or on January 18, 2013;

f) failing to offer to perform genetic counseling or refer the patient for genetic counseling due to Plaintiff's advanced maternal age;

8

g) failing to properly and timely detect a VSD on the sonogram performed on January 18, 2013;

h) failing to properly and timely interpret the results of the sonogram performed on January 18, 2013;

i) failing to properly and timely interpret the results of any and all sonograms performed;

j) failing to appropriately retain any and all ultrasound imaging performed;

k) failing to timely provide the Plaintiff with all information necessary to make informed and reasoned decisions concerning the condition and/or health of a fetus;

l) failing to allow the Plaintiff to exercise the option as to whether or not to terminate a pregnancy carrying a fetus with Down syndrome;

m) failing to properly communicate with the Plaintiffs;

n) failing to properly perform, provide accurate information for and timely interpret any and all tests and studies, including but not limited to ultrasounds, related to the prenatal detection of Down syndrome;

o) failing to properly employ due, reasonable, and appropriate skills and care in the examination, treatment and management of the patient;

p) failing to perform a proper and timely examination of the patient;

q) failing to take proper heed of the patient's present condition, signs, symptoms, and complaints;

r) failing to keep apprised of current medical literature and standards;

s) failing to comply with the official recommendations of the American College of Obstetricians and Gynecologists that a screening strategy that incorporates first trimester

9

screening and/or testing for Down syndrome be offered to all women who seek prenatal care in the first trimester;

t) failing to properly perform an extensive and accurate physical examination of the Plaintiff;

u) failing to properly supervise the agents, servants and/or employees of the Defendants, and

v) failing to exercise the degree of care, skill and diligence to which this Plaintiff was entitled - all of which the Defendants failed to do.

25.    As a direct and proximate result of the aforesaid negligence of Defendant Abdul G. Chaudry, M.D., the Plaintiffs have suffered, and will continue to suffer, serious and permanent injuries, including, among other things, the wrongful birth of a baby with Down syndrome; the wrongful birth of a baby with Hirschsprung disease associated with Downs syndrome; the burdens and responsibilities associated with parenting a child suffering from Down syndrome; parenting a child with lifelong physical and mental disabilities, including, but not limited to, severe and permanent gastrointestinal, cardiac and respiratory issues, as well as the permanent placement of a gastrostomy tube; the significant cost of providing their child with frequent medical care and attention, continued hospitalizations since birth, numerous surgical procedures, need for rehabilitation and ongoing nursing care, special education, various therapies, and other special needs for the rest of that child's life; were caused to suffer significant mental anguish, emotional distress and anxiety and will so be caused in the future; will be caused to spend countless hours at medical institutions for their child's care; significant loss of earnings; were caused to be incapacitated from attending their usual duties and will so be caused in the

future; was caused to incur past and future medical and hospital expenses, and the loss of enjoyment of life.

WHEREFORE, Plaintiffs, Ramatulie Jalloh and Komboh S. Kamara, claim more than Seventy-Five Thousand ($75,000.00) Dollars in compensatory damages plus interest and costs against Defendant Abdul G. Chaudry, M.D.

## COUNT II

### (Negligence - Plaintiffs v. Charles J. Akoda, M.D.)

26.    Paragraphs 1 through 25 are adopted by reference in this Count II.

27.    Defendant Charles J. Akoda, M.D. negligently deviated from the appropriate standard of medical care by:

a) failing to properly and timely offer first trimester screening and/or testing for Down syndrome to the Plaintiff at her prenatal visits during her first trimester on October 26, 2012, October 31, 2012, and on November 27, 2012;

b) failing to properly and timely advise the Plaintiff of the availability of all prenatal testing for Down syndrome that was appropriate under the circumstances as well as the purpose of those tests;

c) failing to properly take heed of the fact that the Plaintiff was a high risk patient based on her advanced maternal age;

d) failing to properly and timely offer appropriate screening and/or testing based upon the Plaintiff's advanced maternal age;

e) failing to properly and timely refer the patient to a suitably qualified health care provider for a detailed second trimester fetal anatomical exam of care on November 27, 2012, December 12, 2012 or on January 18, 2013;

11

f) failing to offer to perform genetic counseling or refer the patient for genetic counseling due to Plaintiff's advanced maternal age;

g) failing to properly and timely detect a VSD on the sonogram performed on January 18, 2013;

h) failing to properly and timely interpret the results of the sonogram performed on January 18, 2013;

i) failing to properly and timely interpret the results of any and all sonograms performed;

j) failing to appropriately retain any and all ultrasound imaging performed;

k) failing to timely provide the Plaintiff with all information necessary to make informed and reasoned decisions concerning the condition and/or health of a fetus;

l) failing to allow the Plaintiff to exercise the option as to whether or not to terminate a pregnancy carrying a fetus with Down syndrome;

m) failing to properly communicate with the Plaintiffs;

n) failing to properly perform, provide accurate information for and timely interpret any and all tests and studies, including but not limited to ultrasounds, related to the prenatal detection of Down syndrome;

o) failing to properly employ due, reasonable, and appropriate skills and care in the examination, treatment and management of the patient;

p) failing to perform a proper and timely examination of the patient;

q) failing to take proper heed of the patient's present condition, signs, symptoms, and complaints;

r) failing to keep apprised of current medical literature and standards;

12

s) failing to comply with the official recommendations of the American College of Obstetricians and Gynecologists that a screening strategy that incorporates first trimester screening and/or testing for Down syndrome be offered to all women who seek prenatal care in the first trimester;

t) failing to properly perform an extensive and accurate physical examination of the Plaintiff;

u) failing to properly supervise the agents, servants and/or employees of the Defendants, and

v) failing to exercise the degree of care, skill and diligence to which this Plaintiff was entitled - all of which the Defendants failed to do.

28.     As a direct and proximate result of the aforesaid negligence of Defendant Charles J. Akoda, M.D., the Plaintiffs have suffered, and will continue to suffer, serious and permanent injuries, including, among other things, the wrongful birth of a baby with Down syndrome; the wrongful birth of a baby with Hirschsprung disease associated with Downs syndrome; the burdens and responsibilities associated with parenting a child suffering from Down syndrome; parenting a child with lifelong physical and mental disabilities, including, but not limited to, severe and permanent gastrointestinal, cardiac and respiratory issues, as well as the permanent placement of a gastrostomy tube; the significant cost of providing their child with frequent medical care and attention, continued hospitalizations since birth, numerous surgical procedures, need for rehabilitation and ongoing nursing care, special education, various therapies, and other special needs for the rest of that child's life; were caused to suffer significant mental anguish, emotional distress and anxiety and will so be caused in the future; will be caused to spend countless hours at medical institutions for their child's care; significant loss of earnings; were

13

caused to be incapacitated from attending their usual duties and will so be caused in the future; was caused to incur past and future medical and hospital expenses, and the loss of enjoyment of life.

WHEREFORE, Plaintiffs, Ramatulie Jalloh and Komboh S. Kamara, claim more than Seventy-Five Thousand ($75,000.00) Dollars in compensatory damages plus interest and costs against Defendant Charles J. Akoda, M.D.

## COUNT III

**(Negligence – Respondeat Superior – Plaintiffs v. Abdul G. Chaudry, M.D.)**

29.    Paragraphs 1 through 28 are adopted by reference in this Count III.

30.    Defendant Abdul G. Chaudry, M.D., his agents, servants and/or employees, including, but not limited to Charles J. Akoda, M.D., negligently deviated from the appropriate standard of medical care by:

a) failing to properly and timely offer first trimester screening and/or testing for Down syndrome to the Plaintiff at her prenatal visits during her first trimester on October 26, 2012, October 31, 2012, and on November 27, 2012;

b) failing to properly and timely advise the Plaintiff of the availability of all prenatal testing for Down syndrome that was appropriate under the circumstances as well as the purpose of those tests;

c) failing to properly take heed of the fact that the Plaintiff was a high risk patient based on her advanced maternal age;

d) failing to properly and timely offer appropriate screening and/or testing based upon the Plaintiff's advanced maternal age;

14

e) failing to properly and timely refer the patient to a suitably qualified health care provider for a detailed second trimester fetal anatomical exam of care on November 27, 2012, December 12, 2012 or on January 18, 2013;

f) failing to offer to perform genetic counseling or refer the patient for genetic counseling due to Plaintiff's advanced maternal age;

g) failing to properly and timely detect a VSD on the sonogram performed on January 18, 2013;

h) failing to properly and timely interpret the results of the sonogram performed on January 18, 2013;

i) failing to properly and timely interpret the results of any and all sonograms performed;

j) failing to appropriately retain any and all ultrasound imaging performed;

k) failing to timely provide the Plaintiff with all information necessary to make informed and reasoned decisions concerning the condition and/or health of a fetus;

l) failing to allow the Plaintiff to exercise the option as to whether or not to terminate a pregnancy carrying a fetus with Down syndrome;

m) failing to properly communicate with the Plaintiffs;

n) failing to properly perform, provide accurate information for  and timely interpret any and all tests and studies, including but not limited to ultrasounds, related to the prenatal detection of Down syndrome;

o) failing to properly employ due, reasonable, and appropriate skills and care in the examination, treatment and management of the patient;

p) failing to perform a proper and timely examination of the patient;

15

q) failing to take proper heed of the patient's present condition, signs, symptoms, and complaints;

r) failing to keep apprised of current medical literature and standards;

s) failing to comply with the official recommendations of the American College of Obstetricians and Gynecologists that a screening strategy that incorporates first trimester screening and/or testing for Down syndrome be offered to all women who seek prenatal care in the first trimester;

t) failing to properly perform an extensive and accurate physical examination of the Plaintiff;

u) failing to properly supervise the agents, servants and/or employees of the Defendants, and

v) failing to exercise the degree of care, skill and diligence to which this Plaintiff was entitled - all of which the Defendants failed to do.

31.     As a direct and proximate result of the aforesaid negligence of Defendant Abdul G. Chaudry, M.D., his agents, servants and/or employees, the Plaintiffs have suffered, and will continue to suffer, serious and permanent injuries, including, among other things, the wrongful birth of a baby with Down syndrome; the wrongful birth of a baby with Hirschsprung disease associated with Downs syndrome; the burdens and responsibilities associated with parenting a child suffering from Down syndrome; parenting a child with lifelong physical and mental disabilities, including, but not limited to, severe and permanent gastrointestinal, cardiac and respiratory issues, as well as the permanent placement of a gastrostomy tube; the significant cost of providing their child with frequent medical care and attention, continued hospitalizations since birth, numerous surgical procedures, need for rehabilitation and ongoing nursing care, special

education, various therapies, and other special needs for the rest of that child's life; were caused to suffer significant mental anguish, emotional distress and anxiety and will so be caused in the future; will be caused to spend countless hours at medical institutions for their child's care; significant loss of earnings; were caused to be incapacitated from attending their usual duties and will so be caused in the future; was caused to incur past and future medical and hospital expenses, and the loss of enjoyment of life.

32.     Defendant Abdul G. Chaudry, M.D. is liable for the negligence of his agents, servants, and/or employees, including, but not limited to Dr. Akoda.

WHEREFORE, Plaintiffs, Ramatulie Jalloh and Komboh S. Kamara, claim more than Seventy-Five Thousand ($75,000.00) Dollars in compensatory damages plus interest and costs against Defendant Abdul G. Chaudry, M.D., his agents, servants and/or employees.

**COUNT IV**

**(Negligence – Apparent Agency – Plaintiffs v. Abdul G. Chaudry, M.D.)**

33.     Paragraphs 1 through 32 are adopted by reference in this Count IV.

34.     At all times herein relevant, Defendant Charles J. Akoda, and other various health care providers in Dr. Chaudry's practice, including those individuals who interpreted the ultrasounds performed in Dr. Chaudry's office, were acting as the apparent agents of Defendant Abdul G, Chaudry, M.D., with regard to the care and treatment of the Plaintiffs. At those times, the Plaintiffs were under the reasonable belief that Dr. Akoda and other agents, servants and/or employees were acting under the control, supervision and/or authority of Defendant Abdul G. Chaudry, M.D. and that Dr. Chaudry and his practice held themselves out to the public, and in particular, to the Plaintiffs as a full service physician's practice capable of providing competent medical care to patients seeking treatment from said facility. Additionally, Defendant Abdul G.

Chaudry, M.D. did not take any affirmative measures to advise the Plaintiff that Dr. Akoda or any other agents, servants and/or employees who treated the Plaintiffs at his facility were not acting as his employees, agents and/or representatives in connection with the care and treatment rendered to the Plaintiffs. Defendant Abdul G. Chaudry, M.D. is vicariously liable for the negligence of its apparent agents, servants and/or employees.

WHEREFORE, Plaintiffs, Ramatulie Jalloh and Komboh S. Kamara, claim more than Seventy-Five Thousand ($75,000.00) Dollars in compensatory damages plus interest and costs against Defendant Abdul G. Chaudry, M.D., his agents, servants and/or employees.

LAW OFFICES OF PETER G. ANGELOS, P.C.

By: _____
Danielle S. Dinsmore, Esquire
Marissa B. Joelson, Esquire
One Charles Center
100 N. Charles Street, 20th Floor
Baltimore, Maryland 21201
(410) 649-2000
*Attorneys for Plaintiffs*
*Ramatulie Jalloh and Komboh S. Kamara*

# EXHIBIT 1

RAMATULIE JALLOH and
KOMBOH S. KAMARA

       Claimants

v.

ABDUL G. CHAUDRY, M.D., et al.

       Health Care Providers

\* BEFORE THE

\* HEALTH CARE

\* ALTERNATIVE DISPUTE

\* RESOLUTION OFFICE

\* HCA No.:  2016-181

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### ORDER OF TRANSFER

The Claimants, by and through counsel, having elected a Waiver of Arbitration under the provisions of Annotated Code of Maryland, Courts and Judicial Proceedings, Article, § 3-2A-06B, it is this ____20th____ day of  April, 2016, by the Health Care Alternative Dispute Resolution Office,

ORDERED, that this case shall be and is hereby, transferred to the United States District Court, or to the Circuit Court of the appropriate venue.

_____
HARRY L. CHASE, DIRECTOR
Health Care Alternative Dispute Resolution Office

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that copies of the above ORDER OF TRANSFER have been mailed, postage prepaid, to all counsel.

_____
HARRY L. CHASE, DIRECTOR

RAMATULIE JALLOH and
KOMBOH S. KAMARA,
9963 Goodluck Road, Apt. T1
Seabrook, Maryland 20706

    Plaintiffs,

vs.

ABDUL G. CHAUDRY, M.D.
6005 Landover Road, Suite 5
Cheverly, Maryland 20785

CHARLES J. AKODA, M.D.
6005 Landover Road, Suite 5
Cheverly, Maryland 20785

    Defendants.

IN THE CIRCUIT COURT OF

MARYLAND FOR

PRINCE GEORGE'S COUNTY

Case No.:_____

\* \* \* \* \* \* \* \* \* \* \* \*

**ELECTION OF JURY TRIAL**

Plaintiffs hereby request that the above-captioned case be tried before a jury.

LAW OFFICES OF PETER G. ANGELOS, P.C.

By:

Danielle S. Dinsmore, Esquire
Marissa B. Joelson, Esquire
One Charles Center
100 N. Charles Street, 20th Floor
Baltimore, Maryland 21201
(410) 649-2000
*Attorneys for Plaintiffs*
*Ramatulie Jalloh and Komboh S. Kamara*