# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MONIQUE RUSSELL, JASMINE RIGGINS, ELSA M. POWELL, and DESIRE EVANS,<br><br>Plaintiffs,<br><br>v.<br><br>EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES,<br><br>Defendant. | Civil Action No. 18-5629<br><br>Honorable Joshua D. Wolson |

### DEFENDANT EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES' SUR-REPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR <u>CLASS CERTIFICATION</u>

Dated: November 18, 2019

Brian W. Shaffer, PA Bar No. 78851
Elisa P. McEnroe, PA Bar No. 206143
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone:    +1.215.963.5000
Facsimile:    +1.215.963.5001
brian.shaffer@morganlewis.com
elisa.mcenroe@morganlewis.com

*Attorneys for the Educational Commission for Foreign Medical Graduates*

Pursuant to Section II.B.2 of the Court's Policies and Procedures, Defendant Educational Commission for Foreign Medical Graduates ("ECFMG") submits this Sur-Reply in Opposition Plaintiffs' Motion for Class Certification to address certain arguments raised by Plaintiffs in their Reply (ECF 47).

*First*, Plaintiffs concede that there are individualized damages issue that are incapable of resolution on a class-wide basis (*see* ECF 47 at 5), but Plaintiffs wrongly suggest that those are the **only** individualized issues that ECFMG identified in its Opposition (*see id.* at 1-4).  To the contrary, ECFMG's Opposition clearly identified numerous individualized issues going to questions of liability—including questions of duty (ECF 39 at 13-14), breach (*id.* at 13-14), and causation (*id.* at 14-17)—that are distinct from individualized damages issues and present insurmountable obstacles to class certification.  Plaintiffs' failure to acknowledge and confront these other individual issues is on full display in Plaintiffs' proposal (ECF 47 at 11) that questions of "foreseeability" be relegated to hundreds or thousands of separate mini-trials when, as ECFMG explained in its Opposition (ECF 39 at 13-17), foreseeability is a critical issue in determining questions of duty, breach, and causation, which are purportedly common questions that Plaintiffs have proposed for treatment on a class-wide basis.  In other words, Plaintiffs concede that foreseeability is an individualized issue, but they ignore that fact in seeking to certify classes on questions of duty and causation implicating that very same individualized issue.

*Second*, Plaintiffs argue that challenges based on causation "will not bar predominance satisfaction." ECF 47 at 13.  They ignore the host of cases cited in ECFMG's Opposition in which individualized causation problems precluded class certification.  ECF 39 at 14-17.  Moreover, Plaintiffs offer no workable trial proposal for when and how to resolve the question of causation. Aside from stating in a heading (without explanation) that "key questions of . . . causation can be determined on a classwide basis" (ECF 47 at 10), Plaintiffs do not explain whether causation will

be part of a class-wide trial or the individualized mini-hearings. They do not explain whether they are continuing to press for certification of "general causation," which ECFMG explained was unworkable. *See* ECF 39 at 14-17. To the extent they contend (ECF 47 at 13) that the actions of multiple healthcare institutions that allowed Dr. Akoda to treat patients after evaluating him separately (based on different sets of information and criteria) could not possibly be superseding causes, Plaintiffs are wrong. Whether it was foreseeable to ECFMG that those institutions would allow him to treat patients as he did after conducting an independent assessment of Dr. Akoda's abilities and performance is both a legitimate and individualized question that is a serious obstacle to class certification.

***Third***, Plaintiffs repeatedly mischaracterize ECFMG's Opposition as arguing that there is a "*per se* bar on class certification of emotional distress claims." ECF 47 at 2. Plaintiffs misconstrue ECFMG's argument. What ECFMG demonstrated is that individualized personal injury claims for emotional distress arising from alleged negligence are extremely ill-suited to class certification. *See* ECF 39 at 11-20, 24-25. Plaintiffs' assertion that "[c]ourts do not vary their interpretation and application of Rule 23 based on the nature of the action" (ECF 47 at 6), does not confront ECFMG's fundamental point that before certifying any class under Rule 23, courts must engage in a "rigorous analysis" that "involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013); *see* Fed. R. Civ. P. 23 advisory committee's note ("A 'mass accident' resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses of liability, would be present, affecting the individuals in different ways. In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried.").

Plaintiffs still have not identified any case in which personal injury claims for emotional distress were tried on a class-wide basis. Plaintiffs' reliance (ECF 47 at 2-3) on *McRobie v. Credit Protection Association*, Civ. A. No. 18-0566, 2019 WL 1469097 (E.D. Pa. Apr. 3, 2019), is misplaced. *McRobie* involved claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, which is a single federal statute allowing for (among other things) strict liability and statutory damages. *See* 15 U.S.C. § 1692k(a)(2). The *McRobie* Court determined that the commonality requirement of Rule 23(a) was satisfied because that case involved "identical mailers" sent to identically situated class members in violation of a single federal statute. *Id.* at *4. That is a far cry from this case, which involves thousands of class members who allegedly encountered Dr. Akoda in a variety of materially different situations, had widely varying experiences with Dr. Akoda, and will pursue claims under a variety of state laws that require proof of actual damages.[1] Moreover, the *McRobie* Court only discussed emotional distress in connection with Rule 23(a)'s commonality requirement, not the predominance requirement of Rule 23(b)(3) or any other requirements bearing on the superiority or manageability of class certification.

Plaintiffs' reliance on *Gunnells v. Healthplan Serv., Inc.*, 348 F.3d 417 (4th Cir. 2003)—an out-of-circuit case predating *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)—is similarly inappropriate. In *Gunnells*, a split panel of the Fourth Circuit deepened a circuit split by affirming

---

[1] Plaintiffs are also right to recognize (ECF 47 at 5 n.1) that any request for punitive damages would be entirely inconsistent with their proposed issue classes because in order to prove that ECFMG's conduct warrants punitive damages, Plaintiffs "would have to present to the jury all the facts" about ECFMG's conduct, and such liability and damages issues are very much "intertwined." *Spence v. Bd. of Ed. of Christina Sch. Dist.*, 806 F.2d 1198, 1202 (3d Cir. 1986). But Plaintiffs' discussion of punitive damages is inapposite because they have represented repeatedly in discovery that despite the generic *ad damnum* clause in their Complaint, they are not seeking punitive damages in this case. Plaintiffs' discovery responses made no reference to punitive damages despite specific requests regarding the types of relief Plaintiffs are seeking. *See* ECF 46-1 to 46-8 at Rogs 2 & 9. Accordingly, punitive damages are not a part of this case.

3

class certification in a sprawling case involving dozens of subclasses and extensive individualized mini-trials. But in *Gates v. Rohm & Haas Co.*, the Third Circuit declined to follow *Gunnells* and instead affirmed a district court's denial of class certification on the grounds that "common issues [were] not divisible from individual issues" and "resolution of [common] questions [left] significant and complex questions unanswered." 655 F.3d 255, 273 (3d Cir. 2011).

*Fourth*, Plaintiffs mischaracterize the Third Circuit's jurisprudence about the relationship between Rule 23(b)(3) and Rule 23(c)(4). The fact is that "Plaintiffs cannot read the predominance requirement out of (b)(3) by using (c)(4) to sever issues until the common issues predominate over the individual issues." *Arch v. Am. Tobacco Co., Inc.*, 175 F.R.D. 469, 496 (E.D. Pa. 1997).

Tellingly, despite multiple opportunities, Plaintiffs still have not offered a trial plan that "describes the issues likely to be presented at trial and tests whether they are susceptible of class-wide proof." Fed. R. Civ. P. 23(c)(1)(A) advisory committee's note. That Plaintiffs have failed to offer "any proposal for managing a class action in this case" suggests "they have none." *Powers v. Lycoming Engines*, 272 F.R.D. 414, 430 (E.D. Pa. 2011). Given the fundamental problems identified by ECFMG, Plaintiffs' shortcomings weigh strongly against class certification. *See, e.g.*, *Mwantembe v. TD Bank, N.A.*, 268 F.R.D. 548, 563 (E.D. Pa. 2010) (noting the absence of a trial plan in denying class certification); *Arch*, 175 F.R.D. at 493 (noting the inadequacy of trial plan in denying class certification); *see also Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 186 & n.7 (3d Cir. 2006) ("We believe that the pre-certification presentation of the aforementioned trial plans represents an advisable practice within the class action arena"); *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 315 (3d Cir. 2011) (trial plans serve a "critical" role).

The conspicuous absence of a credible trial plan is a red flag signaling that Plaintiffs' proposals for managing a class action are entirely unworkable. This is further confirmed by the inadequate "solutions" Plaintiffs proffer in response to the legitimate problems discussed in

ECFMG's Opposition.  For example, Plaintiffs suggest on one page of their Reply that that the Court can divide the case into 5 subclasses based on the "relevant domiciles" of class members (ECF 47 at 14), and they suggest on another page that the Court can create 6 **other** subclasses based on the "health care institutions at which Igberase [allegedly] provided care,"[2] *id.* at 10, and that other issues should be resolved without the use of subclasses, *id.*  Nowhere have Plaintiffs described how this convoluted web of subclasses would work or the common proof Plaintiffs would present in separate subclass proceedings.  Even then, Plaintiffs concede that resolution of individualized issues must be relegated to hundreds (if not thousands) of mini-trials.  *Id.* at 15.

*Fifth*, Plaintiffs represent that "if it becomes necessary, the 600+ clients represented by Plaintiffs' counsel will file individual cases."  *Id.* at 7.  This unverified, unsubstantiated representation, even if true, undermines Plaintiffs' assertions that "the cost of litigating each individual case likely outweighs an individual award" and that a class action is the only way of adjudicating these claims.  *See* ECF 32-1 at 22.  Moreover, it confirms that each individual class member has a strong interest in controlling her own litigation, as ECFMG explained in its Opposition (ECF 39 at 19), which weighs heavily against class certification.  *See, e.g.*, *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 633 (3d Cir. 1996).

---

[2] Plaintiffs claim that Harlem Hospital Center is one such institution and that "ECFMG must have provided certification information to Harlem Hospital Center as a necessary precondition for Igberase to practice medicine as a resident there."  ECF 47 at 14.  But the documents they attach are the same incomplete records that led JSMC to ask ECFMG whether it had any record of Dr. Akoda working at Harlem Hospital Center; and Plaintiffs have no evidence that ECFMG actually communicated anything to Harlem Hospital Center about Dr. Akoda.  Indeed, Dr. Akoda was not even ECFMG certified until **after** the time period when he allegedly worked at Harlem Hospital Center.  *See* ECF 32-21.  That, in and of itself, helps to explain why ECFMG would not have had records of communicating Dr. Akoda's ECFMG certification status to Harlem Hospital Center, since he would have had no such status to communicate at that time.  If Dr. Akoda treated or examined patients at institutions that never received any communications from ECFMG about Dr. Akoda (as Plaintiffs apparently contend), then the individualized questions are compounded even further and class certification is even less appropriate.

***Sixth***, Plaintiffs mischaracterize ECFMG's arguments about the plaintiff-specific issues associated with its statute of limitations defense in three respects. First, there are cases in which individualized issues relating to the statute of limitations preclude class certification. *See, e.g.*, *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 149 (3d Cir. 1998). Second, class members' survey responses indicate that some class members suffered emotional distress **only** after being treated by Dr. Akoda and **not** as a result of learning about the charges against him. *See* ECF 39-25. Whether the surveys indicate when class members learned of the charges is therefore irrelevant because the only emotional distress for some class members happened **before** learning of the charges. Third, Plaintiffs purport to distinguish the medical negligence case brought against Dr. Akoda as irrelevant to the statute of limitations defense (ECF 47 at 15), but that litigation was pending when Dr. Akoda was arrested—but before his guilty plea was made public. It is entirely reasonable to suspect that the plaintiff in that case knew of the charges against Dr. Akoda before the guilty plea was made public, so her claims are almost certainly barred by the statute of limitations.

***Seventh***, Plaintiffs' choice-of-law analysis ignores the overwhelming interest that Maryland has in regulating claims brought by a Maryland resident based on treatment rendered in Maryland by a physician licensed to practice medicine in Maryland and, in many instances, at hospitals authorized to do business in Maryland.[3] Plaintiffs have not identified any case in which Pennsylvania's choice-of-law principles resulted in the application of Pennsylvania law under similar circumstances. Plaintiffs contend that there is not a "true conflict," but in doing so they ignore a litany of cases applying non-Pennsylvania law to injuries occurring outside Pennsylvania, even when the defendant had contacts with Pennsylvania. *See Slear v. Federal Mogul*, 1996 WL

---

[3] A separate analysis is necessary for class members who are not resident in Maryland or who were treated outside of Maryland.

6

221769, at *1 (E.D. Pa. Apr. 26, 1996) (applying Maryland law in tort case where injury occurred in Maryland, but defendant also operated in Pennsylvania). The single case Plaintiffs cite—*Lacey v. Cessna Aircraft Co.*—is distinguishable because it involved Pennsylvania's **strict liability** standard and Pennsylvania's interest in "deterring the manufacture of defective products and in shifting the costs of injuries onto producers." 932 F.2d 170, 188 (3d Cir. 1991). Here, by contrast, Maryland has an interest in encouraging physicians—including international medical graduates—to practice medicine in Maryland without fear that claims for negligent infliction of emotional distress will arise from such practice. Moreover, Maryland has strong reasons for limiting the ability to recover for such claims. *See Hamilton v. Ford Motor Credit Co.*, 502 A.2d 1057, 1066 (MD Ct. Special App. 1986) ("We cannot imagine any act opprobrious enough to justify an award of damages solely for the infliction of emotional distress that would not satisfy the definition of reckless conduct encompassed by the concept of intentional infliction of emotional distress."). Accordingly, there is a true conflict and Maryland law should apply to Plaintiffs who are residents there and who were treated there.

*Eighth, and finally,* Plaintiffs contend that the class definition "cannot be clearer" because it includes any patient who was "examined or treated" by Dr. Akoda. ECF 47 at 8. Plaintiffs did not respond to the legitimate problems with those vague terms identified in ECFMG's Opposition. *See* ECF 39 at 23-24. Plaintiffs also contend (ECF 47 at 8) that additional class members can be identified via subpoena, but they ignore the fact that some of the medical institutions whom they would subpoena are under no legal obligation to continue to retain records from the timeframe when Dr. Akoda practiced medicine. *See* ECF 39 at 23-24. That is yet another obstacle (among many) Plaintiffs did not address.

Accordingly, the Court should not certify either proposed class.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: November 18, 2019 | */s/ Brian W. Shaffer* |
|  | Brian W. Shaffer, PA Bar No. 78851 |
|  | Elisa P. McEnroe, PA Bar No. 206143 |
|  | MORGAN, LEWIS & BOCKIUS, LLP |
|  | 1701 Market Street |
|  | Philadelphia, PA  19103-2921 |
|  | Telephone:     +1.215.963.5000 |
|  | Facsimile:      +1.215.963.5001 |
|  | brian.shaffer@morganlewis.com |
|  | elisa.mcenroe@morganlewis.com |

*Attorneys for the Educational Commission for Foreign Medical Graduates*

8

## **CERTIFICATE OF SERVICE**

I do hereby certify that on this date, I caused true and correct copies of the foregoing document to be served via electronic filing upon all counsel of record via the ECF system and/or e-mail.


DATED:  November 18, 2019          */s/ Brian W. Shaffer*
                                   Brian W. Shaffer