MONIQUE RUSSELL, JASMINE RIGGINS, ELSA M. POWELL, and DESIRE EVANS, on behalf of themselves and all others similarly situated,

       *Plaintiffs,*

   v.

EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES,

       *Defendant.*

Case No. 2:18-cv-05629-JDW

## MEMORANDUM

For years, a man using the name "John Charles Akoda" passed himself off as an OB/GYN. It turns out he was not a doctor at all. Now, four of his former patients ask the Court to certify a class of his former patients. But they aren't suing him. They are suing the Educational Commission For Foreign Medical Graduates ("ECFMG"), a non-profit organization that certified that the man posing as Akoda had graduated from medical school abroad. Plaintiffs claim that ECFMG was negligent when it certified him as a doctor and when it failed to investigate allegations of identity fraud against him. They want the Court to certify a class only on liability issues so that, if they prevail, they can

1

proceed to individual proceedings about the emotional damages that they claim. For the reasons that follow, the Court will certify a class to consider the duty and breach elements of Plaintiffs' claims, which are subject to common proof, but will decline to certify issues about causation and damages, which are not.

## I.  BACKGROUND

### A.  ECFMG's Role In Qualifying International Medical Graduates

ECFMG is a non-profit based in Philadelphia. It certifies international medical graduates ("IMGs")—*i.e.*, individuals who received a medical education outside of the United States and Canada—to practice medicine in the United States. It verifies that IMGs received a degree from an appropriate institution and administers tests of medical knowledge and English proficiency. For qualified IMGs, it issues a certification, which IMGs can then use to apply to residency and other graduate medical education programs and to apply for state medical licenses.

ECFMG has a process for investigating what it calls "irregular behavior," meaning actions that might subvert ECFMG's certification process. It conducts investigations that include interviews with accused IMGs, as well as other individuals involved, and review of relevant documents. If ECFMG concludes that an IMG has engaged in irregular

behavior, it can revoke its certification of that IMG, or it can take lesser actions.

## B. Igberase/Akoda

In April 1992, Oluwafemi Charles Igberase applied to ECFMG for certification. He failed ECFMG's medical licensing exam twice but passed on his third try. ECFMG then issued him a certificate as an IMG. However, he did not gain admission to a residency program. In March 1994, Igberase submitted a second application to ECFMG for certification. In this second application, he used a false date of birth and a different name: Igberase Oluwafemi Charles. ECFMG approved this second application in December 1994. In November 1995, ECFMG determined that Igberase fraudulently applied for two ECFMG certifications under two different names and revoked each certification.

Igberase applied for certification to ECFMG a third time in 1996, using a fake passport and yet another name: John Charles Akoda. ECFMG certified Akoda in August 1997. In 1998, Igberase applied for and was admitted to a residency program at Jersey Shore Medical Center ("JSMC"). In August 2000, JSMC asked ECFMG to investigate Akoda because JSMC learned that the individual known as "Akoda" had served as a resident in two other U.S. residency programs under the name Igberase. ECFMG began an investigation. Using the "Akoda" identity, Igberase disputed the JSMC

allegations. In December 2000, JSMC advised ECFMG that it had dismissed Akoda from its residency program for using a false social security number. Plaintiffs allege that ECFMG took no action to retract Akoda's certification.

In 2006, Igberase applied for a residency at Howard University Hospital, using the Akoda identity and another individual's social security number. After completing the program in 2011, he applied for and received a Maryland medical license using fake identification documents. That same year, he became a member of the medical staff at Prince George's Hospital Center and began seeing patients there.

On June 9, 2016, law enforcement executed search warrants concerning Igberase/Akoda and discovered fraudulent or altered documents, including medical diplomas, transcripts, and letters of recommendation. He signed a plea agreement admitting to misuse of a social security number. ECFMG revoked the certification it had issued to Akoda. In March 2017, Igberase was sentenced by the United States District Court for the District of Maryland. Shortly thereafter, Prince George's Hospital Center terminated his medical privileges, and the Maryland Board of Physicians revoked his license.

### C.  Procedural History

Plaintiffs Monique Russell, Jasmine Riggins, Elsa Powell, and Desire Evans are former patients of Igberase (who they knew as "Akoda"). He performed unplanned emergency cesarean section surgery on Ms. Russell and

Ms. Riggins. He also delivered Ms. Evans' child and Ms. Powell's child. None of the patients knew Igberase's true identity, and all assumed he was a doctor. They allege that he touched them without informed consent and that he performed inappropriate examinations of a sexual nature while utilizing inappropriate and explicit sexual language.

Plaintiffs assert claims of negligence and negligent infliction of emotional distress ("NIED") against ECFMG, arising out of its certification of Igberase. They ask the Court to certify a class of "all patients examined and/or treated in any manner by Oluwafemi Charles Igberase (a/k/a Charles J. Akoda, M.D.)." (ECF No. 1, Ex. A at ¶ 48.) Plaintiffs ask the Court to certify the class as to liability, which they describe as "Option A." Alternatively, they propose nine specific issues for which the Court should certify a class ("Option B"): (1) whether ECFMG undertook or otherwise owed a duty to class members who were patients of Igberase; (2) whether ECFMG breached its duty to class members; (3) whether ECFMG undertook or otherwise owed a duty to hospitals and state medical boards, such that ECFMG may be held liable for foreseeable injuries to third persons such as class members pursuant to Restatement (Second) of Torts § 324A; (4) whether ECFMG breached its duty to hospitals and state medical boards; (5) whether the emotional distress and other damages that Plaintiffs allege were a foreseeable result of ECFMG's conduct; (6) whether ECFMG's conduct

5

involved an unusual risk of causing emotional distress to others under Restatement (Second) of Torts § 313; (7) whether ECFMG is subject to liability under Restatement (Second) of Torts § 876 for assisting Igberase in committing fraud; (8) whether ECFMG knew or should have known that Akoda was, in fact, Igberase; and (9) whether it was foreseeable that ECFMG's conduct could result in emotional distress experienced by class members. (ECF No. 32-1 at 11.) Of these, issues 5, 6, and 9 focus on questions of causation and damages (the "Damages Issues"), while the others relate to questions of liability. The Court held oral argument on January 30, 2020.

## II. STANDARD OF REVIEW

A court must not certify a class "casually." *In re Processed Egg Prods. Antitrust Litig.*, 312 F.R.D. 124, 132 (E.D. Pa. 2015). Instead, class "certification is proper only if the trial court is satisfied, after a rigorous analysis" that all of the necessary requirements have been fulfilled. *Ferreras v. American Airlines, Inc.*, 946 F.3d 178, 183 (3d Cir. 2019) (*citing Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011)). A rigorous analysis requires that factual determinations be made by a preponderance of the evidence. *See id.* This inquiry will at times require a court to examine issues that overlap, to some extent, with issues left for the final merits determination. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305,

318 (3d Cir. 2008). However, the Court should only do so to the extent necessary to resolve the class certification motion, and no more. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).

A party seeking to certify a class must satisfy the requirements of Federal Rule of Civil Procedure 23, which ordinarily means the four requirements of Rule 23(a) and the requirements of one subparagraph of Rule 23(b). *See Gonzalez v. Corning*, 885 F.3d 186, 192 (3d Cir. 2018), *as amended* (Apr. 4, 2018). Here, however, Plaintiffs seek to proceed with an issues class under Rule 23(c)(4), which provides that, "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). ECFMG argues that Plaintiffs cannot certify an issues class until Plaintiffs show that "the common issues predominate over the individual issues," *i.e.*, that Plaintiffs satisfy Rule 23(b)(3). (ECF No. 48 at 4.)

ECFMG's argument misunderstands the law in the Third Circuit. In *Gates v. Rohm and Haas Co.*, 655 F.3d 255 (3d Cir. 2011), the Circuit noted a disagreement among courts about how to apply Rule 23(b)(3)'s predominance requirement in cases arising under Rule 23(c)(4): some courts held that a plaintiff had to satisfy Rule 23(b)(3)'s predominance requirement for a case as a whole before certifying certain issues; while other courts allowed certification of an issue even if common issues did not predominate in the

case as a whole. *See id.* at 272-73. The Third Circuit declined to join "either camp in the circuit disagreement" and instead set forth a list of factors that courts should consider:  (a) the type of claim(s) and issue(s) in question; (b) the overall complexity of the case; (c) the efficiencies to be gained by granting partial certification in light of realistic procedural alternatives; (d) the substantive law underlying the claim(s), including any choice of law questions it might present and whether the substantive law separates the issue(s) from other issues concerning liability or remedy; (e) the impact partial certification will have on the constitutional and statutory rights of both the class members and the defendant(s); (f) the potential preclusive effect or lack thereof that resolution of the proposed issue class will have; (g) the repercussions certification of an issue(s) class will have on the effectiveness and fairness of resolution of remaining issues; (h) the impact individual proceedings may have upon one another, including whether remedies are undividable such that granting or not granting relief to any claimant as a practical matter determines the claims of others; and (i) the kind of evidence presented on the issue(s) certified and potentially presented on the remaining issues, including the risk subsequent triers of fact will need to reexamine evidence and findings from resolution of the common issue(s). *Id.* at 273.

ECFMG's argument that the Court should require Plaintiffs to satisfy Rule 23(b)(3)'s predominance requirement before turning to these factors parrots one of the camps that the Third Circuit acknowledged but refused to join in *Gates*. Because the Third Circuit rejected that view, this Court must do the same. Therefore, the Court will consider Rule 23(a) and then turn to the *Gates* factors in conducting its analysis. At each stage, the burden will remain on Plaintiffs to show by a preponderance of the evidence that the Court should certify a class.

## III.    ANALYSIS

### A.    Choice Of Law

Before tackling the question of class certification, the Court addresses the law that applies here. It does so because the parties spar about the applicable choice of law and ECFMG contends that multiple state laws might apply, thereby making class certification inappropriate. The Third Circuit has held that a "district court errs as a matter of law when it fails to resolve a genuine legal or factual dispute relevant to determining the requirements" for class certification. *Gates*, 655 F.3d at 270. Thus, the Court must resolve the parties' genuine legal dispute about the choice of law so that it can then answer the question of whether to certify a class.

A federal court sitting in diversity must apply the choice-of-law rules of the forum state, so Pennsylvania choice-of-law rules apply. *See Klaxon Co. v.*

*Stentor Mfg. Co.*, 313 U.S. 487, 496 (1941). Pennsylvania employs a flexible approach that considers both contacts establishing significant relationships with a state and a qualitative appraisal of the relevant states' policies with respect to the controversy. *See Garcia v. Plaza Oldsmobile Ltd.*, 421 F.3d 216, 219-20 (3d Cir. 2005); *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 805-06 (1964). First, the court must determine whether an actual conflict exists between the laws of two or more states. Then, if an actual conflict exists, the court must determine whether the conflict is "true," "false," or "unprovided-for." *Rose v. Dowd*, 265 F. Supp.3d 525, 530 (E.D. Pa. 2017). No actual conflict exists if the laws between the states are the same or "if the same result would ensue under the laws of the forum state and those of the foreign jurisdiction." *Id.*; *see also Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007). If no conflict exists, the law of the forum state governs, and the court may end its choice-of-law analysis. *Id.*

Several states aside from Pennsylvania are implicated in this case: New Jersey, Maryland, and the District of Columbia, at a minimum. Other states might have some connection, but the parties have not identified them with any certainty, so the Court has not analyzed them. In any event, the Court concludes that those states' interests in the case would be far weaker than Pennsylvania's interest and that Pennsylvania law would therefore

apply. Not surprisingly, there is little, if any, variation between each state's law governing negligence and NIED.

The elements of negligence and negligent infliction of emotional distress are the same under Pennsylvania, New Jersey, and DC law. Even looking past the elements themselves, the Court discerns no real difference between them, and the parties have not identified any. Nor is there a conflict with Maryland law. While Maryland does not recognize NIED as a separate claim, "[r]ecovery may be had in a tort action for emotional distress arising out of negligent conduct." *Hamilton v. Ford Motor Credit Co.*, 502 A.2d 1057, 1066 (Md. Ct. Spec. App. 1986). So the same result would ensue under Maryland or Pennsylvania law. As such, there is no "actual" conflict between Maryland and Pennsylvania law, and Pennsylvania law applies.

Even if there were a true conflict between Pennsylvania law and any other state's law, the Court would apply Pennsylvania law to all of the claims in the case. The Court must apply the law of the state with the "most significant contacts or relationships with the particular issue." *Hammersmith*, 480 F.3d at 229-30. ECFMG suggests that Maryland has a greater interest because it involves treatment of Maryland residents by a fake doctor in Maryland. (ECF No. 40 at 19-20.) But this case is not about Igberase's conduct; it is about ECFMG's conduct. Under the circumstances of this case, Pennsylvania has a greater interest than Maryland, DC, New

Jersey, or any other state in determining what duties apply to its corporate citizen and whether that citizen has fulfilled those duties.

## B. Class Certification

### 1. Class definition/ascertainability

A plaintiff seeking certification of a class must provide a proper class definition. *See* Fed. R. Civ. P. 23(c)(1)(B); *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 591-92 (3d Cir. 2012). In addition, a plaintiff seeking certification of a class generally must prove that the certified class is ascertainable. *See Byrd v. Aaron's, Inc.*, 784 F.3d 154, 163 (3d Cir. 2015). The ascertainability inquiry is twofold, requiring a plaintiff to show that "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Id.* (quotes omitted). A plaintiff need not identify all of the class members at the time of the class certification. Instead, she only has to show that class members can be identified. *See id.* However, courts should shy away from methods that rely on potential class members' say-so. *See Carrera v. Bayer Corp.*, 725 F.3d 300, 306 (3d Cir. 2013).

Here, Plaintiffs ask the Court to certify a class that includes "all patients examined and/or treated in any manner by Oluwafemi Charles Igberase (a/k/a Charles J. Akoda, M.D.)." (ECF No. 32-1 at 10.) ECFMG

complains that the class is not ascertainable because it captures patients that Igerbase encountered in Nigeria, before ECFMG certified him. At oral argument, Plaintiffs clarified that they intend the class to capture only patients that Igberase encountered after ECFMG certified his application. (Tr. at 9:5-10:5.)

ECFMG also contends that the class is not ascertainable because the phrase "examined and/or treated in any manner" is vague and would lead to confusion. The Court disagrees. The class definition is intended to capture any patient who received medical care or treatment from Igberase after ECFMG certified him. That phrase does not raise the type of questions that would require individual fact-finding or a subjective determination in order to identify class members.

Finally, ECFMG argues that there is no way to identify class members. Plaintiffs, however, point to medical records from the treating facilities and note that they have already used those records to identify more than 700 class members. (Tr. at 14:13-14:11.) Those records, which Plaintiffs can obtain by subpoena after certification, provide the type of objective, administratively feasible mechanism required to identify class members. By obtaining the relevant records from Prince George's Hospital Center, Plaintiffs have satisfied their burden of demonstrating that the class is ascertainable; the Court is not just taking their word for it. ECFMG

13

speculates that Howard might not have records from the relevant time frames because records retention requirements would not require it. The possibility that some records might have been lost, however, does not render the class not ascertainable. *See Byrd,* 784 F.3d at 164 ("[A]scertainability only requires the plaintiff to show that class members *can be identified.* Accordingly, there is no records requirement.") (emphasis in original) (internal quotation omitted).

### 2.    Rule 23(a) factors

Rule 23(a) sets forth four threshold requirements for all class actions: numerosity; commonality; typicality; and adequacy of representation. *See* Fed. R. Civ. P. 23(a). The Court addresses each requirement in turn.

### a.    Numerosity

A plaintiff seeking certification must demonstrate that the class is so numerous that joinder of all members is impracticable. "[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *In re Modafanil Antitrust Litig.*, 837 F.3d 238, 249-50 (3d Cir. 2016) (citation omitted). Here, Plaintiffs have shown that the potential class includes at least the 712 people that Igberase treated at Prince George's Hospital Center. That number alone would render joinder all but impossible, and the class is more expansive than

that. Plaintiffs have therefore satisfied the numerosity requirement. Notably, ECFMG does not argue otherwise.

### b. Commonality

Rule 23(a)(2) requires Plaintiffs to demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality does not require perfect identity of questions of law or fact among all class members. Rather, 'even a single common question will do.'" *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015) (quoting *Dukes*, 564 U.S. at 359). However, the common issue must be "central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. There can be legal and factual differences among members of the class, as long as the defendant subjected them all to the same harmful conduct. Ultimately, the commonality bar is not a high one. *See Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013).

Here, Plaintiffs have identified several common legal and factual questions that are central to the validity of their claims. In particular, questions about whether ECFMG owed a legal duty either to class members or hospitals and state medical boards, and questions about whether ECFMG breached those duties, are common to all members of the class. Plaintiffs

have therefore satisfied the commonality requirement.

ECFMG contends that questions about duty and breach are not common throughout the class because choice-of-law questions might result in different outcomes. Because the Court has already resolved the choice-of-law question, that argument has no impact. ECFMG also argues that determining whether a duty exists requires the Court to assess "the foreseeability of harm to a plaintiff in a particular situation." (Tr. of Hearing dated 1/30/20 at 47:19-48:2.) ECFMG's argument conflates "foreseeability" as it relates to a duty and "foreseeability" as it relates to causation. Although the concept is embedded in both inquiries, it is not the same.

"The type of foreseeability that determines a duty of care, as opposed to proximate cause, is not dependent on the foreseeability of a specific event. Instead, in the context of duty, the concept of foreseeability means the likelihood of the occurrence of a general type of risk rather than the likelihood of the occurrence of the precise chain of events leading to the injury." *Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360, 1369 (3d Cir. 1993) (internal quotations and citations omitted). Duty is predicated on the relationship existing between the parties at the relevant time, *i.e.*, the time that ECFMG certified Igberase to apply to a U.S. residency program and/or the time that it investigated (or failed to investigate) his identity fraud. *See, e.g.*, *Zanine v. Gallagher*, 497 A.2d 1332, 1334 (Pa. Super. Ct. 1985).

ECFMG's argument would leave open the possibility that a duty would not be fixed until after the fact because the circumstances that define the existence of a duty would not be known at the time that the defendant has to decide how to conduct itself. The law should not sanction such uncertainty. Parties are entitled to know the duties incumbent upon them when they decide how to conduct themselves, not later.

### c.    Typicality

The third requirement, typicality, is normally met where "claims of representative Plaintiffs arise from the same alleged wrongful conduct." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004); FRCP 23(a)(3). "Typicality" aids a court in determining whether "maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interest of the class members will be fairly and adequately protected in their absence." *Marcus*, 687 F.3d at 594 (citation omitted).

To determine whether a named plaintiff is so different as to prevent a finding of typicality, a court must address three distinct concerns: "(1) the claims of the class representative must be the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to

become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class." *Id.* at 598. The Third Circuit has set a "low threshold" for typicality, such that even "relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016) (quotes omitted).

Here, Plaintiffs' claims are typical of class members to the extent that the class members consist of Igberase's patients during and after his residency. All of the claims arise from the same legal theory: negligence. The claims also arise from a single course of conduct by ECFMG: the certification and subsequent (allegedly inadequate) investigation of his identity. ECFMG has not suggested any Plaintiff is subject to a unique defense. And nothing before the Court demonstrates that the Plaintiffs have incentives that are at odds with the class they seek to represent.

ECFMG notes that Igberase treated all of the Plaintiffs after entering private practice and obtaining his license and therefore suggests that Plaintiffs are not typical of patients that Igberase treated at Howard. That difference does not render Plaintiffs atypical, however. Patients treated

during and after residency all have claims based on the same course of ECFMG's conduct.

However, Plaintiffs' claims are not typical of class members to the extent that the class members consist of Igberase's patients at JSMC. Those patients can assert negligence claims based on ECFMG's initial certification of Akoda, but they cannot assert claims based on ECFMG's subsequent investigation because ECFMG did not conduct the investigation until after Igberase had treated those patients. Because the named Plaintiffs' claims are different from patients at JSMC in a meaningful way, the Court will exclude patients from JSMC from the class.

ECFMG also claims that Plaintiffs are not typical because they claim only to have suffered emotional damages, and some class members might have suffered physical harm at Igberase's hands as well. Again, these distinctions exist, but they do not overcome the fact that the Plaintiffs' claims arise from the same facts and legal theories as members of the class. To the extent any member of the class wants to assert additional claims against ECFMG based on other injuries that Igberase caused, she will have the opportunity to opt out of the class and assert those claims individually. And, nothing about the certification of a class in this case has any impact on a class member's ability to assert tort claims, including claims for other injuries, against Igberase himself.

### d.  Adequacy

The final 23(a) factor considers adequacy of both the Plaintiffs and counsel to represent the class. The "principal purpose of the adequacy requirement is to determine whether the named plaintiffs have the ability and the incentive to vigorously represent the claims of the class." *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 393 (3d Cir. 2015). ECFMG does not challenge counsel's adequacy, and the Court finds that they have the requisite experience and skill necessary to represent the class.

As to the named Plaintiffs, the Court's inquiry focuses on whether the class representatives have conflicts of interest with the putative class members. *See New Directions Treatment Svcs. v. City of Reading*, 390 F.3d 313 (3d Cir. 2007). Only a "fundamental" conflict of interest will impact the adequacy analysis, meaning a conflict that arises because some class members benefitted from conduct that harmed other class members. *See Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012). No such conflict exists here. No member of the class benefitted from Igberase's deception or from ECFMG's conduct. The most that can be said is that some members of the class might not have suffered any emotional damage. But no one benefitted.

ECFMG contends that Plaintiffs are not adequate because they sought to represent a class in a different case about Igberase and ultimately dismissed that case without prejudice. The Court does not know why they made that decision. Nor, apparently, does ECFMG because its argument just speculates about whether they might do the same in this case. Without far more context, the Court has no basis to make any determination about Plaintiffs' commitment to this case based on a decision that they made in another case.

ECFMG also contends that, during their depositions, Plaintiffs did not understand what ECFMG does. Yet none of the Plaintiffs demonstrated a complete lack of knowledge of the case. They just showed confusion about some details. A class representative's lack of knowledge about her case does not make her inadequate, as long as she has "minimal knowledge about the case and [can] make the requisite decisions required of a plaintiff." *In re Suboxone Antitrust Litig.*, MDL No. 2445, 2019 WL 4735520, at * 22 (E.D. Pa. Sept. 27, 2019). Finally, ECFMG claims that some members of the class might not have suffered emotional distress. However, that does not render the Plaintiffs inadequate or suggest a conflict between any Plaintiff and the class she seeks to represent.

### 3.     Rule 23(c)(4)/*Gates* factors

Having determined that Plaintiffs can satisfy the Rule 23(a) factors, the Court turns to the question of whether to certify an issues class under Rule 23(c)(4). "Rule 23(c)(4) both imposes a duty on the court to insure that only those questions which are appropriate for class adjudication be certified, and gives it ample power to treat common things in common and to distinguish the distinguishable." *Gates*, 655 F.3d at 272. "Courts frequently use Rule 23(c)(4) to certify some elements of liability for class determination, while leaving other elements to individual adjudication." *Suboxone*, 2019 WL 4735520, at *40 (quote omitted). An issue class need not "seek to prove all of [the] required liability elements through common evidence." *Id.* at *44. Instead, the question is whether one can sever the issues to be certified from the issues not to be certified. *Id.* at * 45.

Here, any duty that applied to ECFMG and ECFMG's potential breach of that duty focus on ECFMG's conduct, not on any individual member of the class. On the other hand, questions about causation and any damages focus on each individual class member.

### a.     Option A (liability class)

Plaintiffs' claims for negligence and NIED require them to prove the four elements of negligence:  duty; breach; causation; and damages. *See Brewington for Brewington v. City of Phila.*, 199 A.3d 348, 355 (Pa. 2018);

*Phillips v. Cricket Lighters*, 841 A.2d 1000, 1010 (Pa. 2003). The Court cannot certify a class that encompasses elements of causation and damages because those issues are too individualized.

"[C]ausation . . . often require[s] individual proof." *Gates*, 655 F.3d at 264. Certainly, that is the case here. Indeed, it is all but impossible to separate questions of causation and harm from the individual damages that any plaintiff suffered. After all, prevailing on causation implies that a harm was indeed caused. *See, e.g.*, *Rowe v. E.I. Dupont De Nemours & Co.*, 262 F.R.D. 451, 465 (D.N.J. 2009) ("without a common injury, there can be no common causation, as there is nothing to cause.").

In Pennsylvania, courts use the "substantial factor" test to determine causation. *Ford v. Jeffries*, 379 A.2d 111, 114 (Pa. 1977) (citing to Restatement (Second) of Torts § 431). When evaluating whether negligent conduct is a substantial factor in causing the injury, courts consider the other factors that might contribute to the harm, the extent of the effect of those other factors, whether the actor's conduct created a force or series of forces which are continuous and active up to the time of the harm, or whether instead the actor created a situation harmless unless acted upon by other forces for which the actor is not responsible, and lapse of time between an actor's conduct and the harm. *See Hall v. Millersville Univ.*, 400 F. Supp. 3d 252, 273 (E.D. Pa. 2019) (citing Restatement (Second) of Torts § 433). These considerations render

causation a highly individualized inquiry, rather than common to all class members, and therefore disfavor certification of causation. *See, e.g., Barnes v. American Tobacco Co.*, 161 F.3d 127, 145 (3d Cir. 1998) (issues of causation had to be resolved individually); *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 626 (3d Cir. 1996), *aff'd sub nom. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).

Given the individual nature of the causation and damages inquiry, the Court will not certify a class to tackle liability as a whole. There would be little efficiency to be gained from such a certification because the evidence in the class action portion of the case would overlap with the evidence in the individual portion of the case. Presenting the evidence twice would eliminate any efficiency. Also, a jury hearing the class action part of the case would have to hear and consider the same evidence as the jury (or juries) hearing the individual part of the case: whether Igberase's ability to pose as a doctor caused emotional harm and the extent of that harm. Because two juries would be hearing the same evidence, there would be a substantial risk (if not a certainty) of violating the Seventh Amendment's Reexamination Clause. *See In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144 (3d Cir. 1182) ("Seventh Amendment problems are inherent when separate juries determine fact of damage and the amount of damages.").

At the hearing, Plaintiffs argue that the Court can draw a distinction between harm, meaning "an invasion of a legally protected interest," and damages when considering the elements of negligence and then certify the liability elements. (Tr. at 32:21-34:5.) Plaintiffs' argument, however, suggests that an improper touching would be negligent, even if it did not cause any damages. That is wrong. A plaintiff cannot prove a negligence claim without proving damage, even if there was some invasion of a legally protected interest. *See Troutman v. Tabb*, 427 A.2d 673, 677 (Pa. Super. Ct. 1981).

### b. Option B (specific issues)

Having rejected Option A, the Court turns to Plaintiffs' Option B, the certification of nine specific issues. Of the issues that Plaintiffs propose, the Court will not certify the Damages Issues for the reasons discussed above. In addition, Plaintiffs ask the Court to certify a class to answer the question of whether ECFMG faces liability for assisting Igberase in committing fraud, but that is not one of the claims in the case, a fact that Plaintiffs confirmed at oral argument. (Tr. at 7:12-8:24.) Because that question is not at issue in this case, the Court will not certify it.

The remaining issues, however, all relate to whether ECFMG had a relevant legal duty and whether it breached that duty. An analysis of the *Gates* factors reinforces that these issues are appropriate for certification. *First*, the questions of duty and breach favor issue certification because they

are questions of law and/or fact common to all class members and subject to common proof. All of the proposed class members are identical in terms of their legal relationship to ECFMG. In other words, barring any exceptional circumstances, which neither party has raised, whatever duty (if any) ECFMG owes to one proposed class member, ECFMG owes the same duty (if any) to the next proposed class member. Moreover, whether ECFMG has breached this duty is a common question of fact for each prospective class member, as the question looks to ECFMG's own conduct and not the conduct of individual class members. As such, these types of issue are amenable to certification.

*Second*, there are efficiencies to be gained by certifying a class on these issues because it will allow for a single trial with a single, preclusive determination about ECFMG's conduct, rather than the presentation of the same evidence about ECFMG again, and again, and again to separate juries. Moreover, there do not appear to be any realistic procedural alternatives to gain similar efficiencies. For example, the Court has considered whether non-mutual collateral estoppel might have all, or at least some, of the same impact and permit trial of these issues to a single jury. It would not because there is no guarantee it would apply. Indeed, if a court or jury ruled in ECFMG's favor, ECFMG could not use that decision in a subsequent case against a different plaintiff. *See Jean Alexander Cosmetics, Inc. v L'Oreal*

*USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (application of collateral estoppel requires, among other things, the party being precluded to have been represented in prior case). The Court explored other alternatives with the parties but found none.

*Third*, and finally, certification of a class on issues related to duty and breach will not trigger any of the problems about which courts must be mindful under *Gates*. Partial certification will not damage any class member's statutory or constitutional rights. There are no indivisible remedies that partial certification could impact. The individual proceedings that will remain, which will focus on causation and damages, need not impact each other. And, partial certification does not raise problems under the Seventh Amendment because the jury in any individual proceeding will not have to reexamine any of the evidence about ECFMG's conduct. It will instead take that conduct, and the first jury's determination about its legal significance, as a given and decide whether and to what extent it impacted a particular plaintiff.

In its Opposition, ECFMG points to the possibility of a statute-of-limitations defense as a reason for the Court not to certify an issues class. However, at oral argument, ECFMG conceded that it has no basis to claim that any member of the class is subject to such a defense. ECFMG just speculates that someone **<u>might</u>** be subject to the defense. (Tr. at 61:23-62:22.)

Such speculation is not enough. In any event, any statute of limitations defense would focus on when a class member was aware of the harm she suffered. So, if any class member's personal situation triggers the statute of limitations, then ECFMG can raise that issue in a proceeding that focuses on that person.

## IV.    CONCLUSION

The Court's goal is to move this case efficiently, treating like things alike and different things differently. Here, that means certifying a class of Igberase's patients, beginning with his enrollment at Howard, on the issues of whether ECFMG owed class members or relevant third parties a duty and whether ECFMG breached those duties. The Court will therefore issue an appropriate Order, consistent with Rule 23(c)(1), certifying such a class.

**BY THE COURT:**


*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

March 23, 2020