**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MONIQUE RUSSELL, JASMINE RIGGINS, ELSA M. POWELL AND DESIRE EVANS, | CIVIL ACTION NO. 18-5629 |
| Plaintiffs, | |
| v. | |
| EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES, | |
| Defendant. | |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................................. 3

I.    The Court's findings on ascertainability and the Rule 23(a) elements should stand, because those findings were either not raised on appeal or were affirmed. .................................... 4

II.   The proposed class satisfies Rule 23(b)(3), because the proposed issues require no individualized considerations. ........................................................................................................ 5

    A.   The Third Circuit endorsed the broad view of the predominance and superiority requirements, which Plaintiffs' issue class satisfies. ..................................................................... 5

III.  The proposed issue class satisfies the seventh *Gates* factor, concerning the impact of certification on the effectiveness and fairness of the resolution of remaining issues, because it maintains fairness to all parties. ................................................................................................... 8

IV.   The proposed issue class also satisfies the third *Gates* factor, concerning the efficiencies to be gained by granting partial certification in light of realistic procedural alternatives, because no efficient alternative exists. ......................................................................................................... 11

V.    The Third Circuit's dicta regarding the ninth *Gates* factor should not alter the Court's class certification decision, as no Reexamination Clause issues inhere in the proposed issue class. ................. 12

    A.   The Reexamination Clause concerns the redetermination of issues, *not* the rehearing of evidence. ..................................................................................................................................... 13

    B.   The issue of duty does not implicate the Reexamination Clause, because it is an issue to be determined by the Court separately from other elements. ......................................................... 16

    C.   Trying the issue of breach separately from causation and damages will not run afoul of the Reexamination Clause. ............................................................................................................... 16

VI.   The choice of law question should not impair certification of the proposed issue class, as the Third Circuit did not indicate the Court should revisit its earlier findings on this issue. .............. 18

CONCLUSION ............................................................................................................................. 19

Plaintiffs Monique Russell, Jasmine Riggins, Elsa Powell, and Desire Evans, on behalf of themselves and all others similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel, respectfully submit this Supplemental Memorandum in Support of Class Certification, pursuant to the Court's Order of November 9, 2021 (ECF No. 77).

## INTRODUCTION

As the Third Circuit held, "[t]wo reasons, each independently sufficient, support the conclusion that the District Court misapplied *Gates* when it certified for class treatment the duty and breach elements of Plaintiffs' negligent infliction of emotional distress claim." *Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259, 271 (3d. Cir. 2021) (emphasis added). The two errors in certifying Plaintiffs' negligent infliction of emotional distress claim identified by the Third Circuit are:

1. "[T]he District Court did not determine whether the duty and breach elements of Plaintiffs' claim satisfied Rule 23(b)(3)." *Id.*

2. "[T]he Court also failed to rigorously consider several *Gates* factors," namely:

   a. "the effect certification of the issue class will have on the effectiveness and fairness of resolution of remaining issues" and

   b. "what efficiencies would be gained by resolution of the certified issues." *Id.* at 272.

The Court's analysis on remand should focus on this small number of errors the Third Circuit found were present in the Court's certification of the negligent infliction of emotional distress claim. The alleged errors do not extend to the substance of the Court's analysis, but rather reflect the Third Circuit's assessment of whether the Court adequately showed its work.

Strictly speaking, the Third Circuit vacated only this Court's certification of issues in Plaintiffs' negligent infliction of emotional distress claim—not its accompanying certification of issues in Plaintiffs' negligence claim. *See Russell*, 15 F.4th at 275 ("For these reasons, we vacate the District Court's Order certifying for aggregate treatment the duty and breach elements of Plaintiffs' negligent

infliction of emotional distress claim, and remand for further proceedings consistent with this opinion.") To be sure, the Court may wish as a matter of prudence to also analyze these factors in the context of Plaintiffs' negligence claim. But the Third Circuit's decision leaves undisturbed the vast majority of this Court's original, closely reasoned decision on Plaintiffs' class certification request.

As argued herein, the Third Circuit affirmed this Court's findings on the Rule 23(a) elements. It embraced the "broad," or majority, view of the relationship between Rules 23(b)(3) and (c)(4), and all but held that Plaintiffs' issue class satisfied Rule 23(b)(3) on both claims. And its analysis of the two *Gates* factors it found the Court's class certification decision had inadequately discussed leaves the Court ample room to exercise its discretion in reaffirming its original findings.

I.     **The Court's findings on ascertainability and the Rule 23(a) elements should stand, because those findings were either not raised on appeal or were affirmed.**

In its class certification order, the Court found that the issue class proposed by Plaintiffs was ascertainable. (ECF No. 57 at 12–14.) ECFMG did not raise this determination as a ground for appeal, and the Third Circuit's opinion does not call this finding into question. It should stand.

The Court also found that Plaintiffs' proposed issue class satisfied the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a). (ECF No. 57 at 14–21.) ECFMG appealed only the Court's findings on typicality and adequacy. Appellant's Br., 2020 WL 5352387, at 18–27 (3d Cir. Sept. 20, 2020). The Third Circuit rejected ECFMG's argument on these two elements, *see Russell,* 15 F.4th at 271 & n.4, and did not otherwise suggest the Court should reevaluate its Rule 23(a) findings. There is no reason for the Court to do so.

II.     **The proposed class satisfies Rule 23(b)(3), because the proposed issues require no individualized considerations.**

      A.     The Third Circuit endorsed the broad view of the predominance and superiority requirements, which Plaintiffs' issue class satisfies.

As the Third Circuit found, a party must show that issues proposed for certification satisfy Rule 23(a) and are " 'maintainable under Rule 23(b)(1), (2), or (3).' " *Russell*, 15 F.4th at 267 (citation omitted). Rule 23(b)(3) permits a class action to be maintained where "questions of law or fact common to class members predominate over any questions affecting only individual members," and a class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy." Per the Third Circuit, "Rule 23(a) and Rule 23(b) decide if the proposed issues *can* be brought or maintained as class action, while the *Gates* factors determine whether they *should*." *Russell*, 15 F.4th at 270.

Rule 23 continues with four (non-exclusive) factors "pertinent to these findings," including "the class members' interests in individually controlling . . . separate actions" (*id.* at (b)(3)(A)), the "extent and nature of any litigation concerning the controversy already begun," (*id.* at (b)(3)(B)), the "desirability . . . of concentrating the litigation of the claims in the particular forum" (*id.* at (b)(3)(C)), and "the likely difficulties in managing a class action."  *Id.* at (b)(3)(D).

As the Third Circuit held, "[t]he Court correctly observed that *Gates* does not require Plaintiffs seeking issue-class certification to prove that their cause of action as a whole satisfies Rule 23(b)(3)." *Id.* at 271. It unequivocally adopted the majority, or "broad," view of the relationship between Rules 23(b)(3) and Rule 23(c)(4), according to which predominance and superiority must be satisfied as to the issues proposed for certification. *See id*; *see also id.* at 273–74.

Here, all of the factors favor certification of the issue class.

First, Plaintiffs have little interest in holding hundreds of separate trials to obtain hundreds of separate answers to the questions surrounding Defendant's legal duties and conduct in breach of those duties. *Id.* at (b)(3)(A). Even if Plaintiffs' interests diverged on the questions of damages and individualized defenses, the proposed issue class treatment allows Plaintiffs (and Defendant) to make individualized showings on these issues, if needed, *after* the class-wide issues are resolved. And there is no existing litigation by or against the class members relating to the subject matter of this suit; thus Rule 23(b)(3)(B) poses no obstacle to certification.

Further, Defendant, a Pennsylvania entity, should be judged for its Pennsylvania actions in Pennsylvania. It is particularly desirable to hear all questions concerning Defendant's conduct in the state where it took place. Rule 23(b)(3)(C) supports the proposed issue class treatment.

The "likely difficulties in managing a class action" pale in comparison to the likely difficulties, and drain on judicial resources, of handling these claims individually. Fed. R. Civ. P. 23(b)(3)(D). In short, none of the enumerated factors support denying class treatment.

The Third Circuit's opinion also supports the conclusion that predominance and superiority are satisfied:

> It is true that deciding if the Commission had a duty to investigate requires balancing several factors. *Id*. But none of that requires individual evidence, for each patient shared the same distanced relationship of trust with the Commission. Likewise, breach would require only common evidence: How much investigating did the Commission do? Did it know or should it have known that Igberase was a fraud? Did it take enough steps to investigate him based on warnings received from various parties, including the New Jersey residency program? Should it have followed up in later years once Igberase was admitted to another residency program? No absent class member would have anything special to add in her individual trial. There will be plenty left for individual proceedings, but these major issues could be resolved on a class-wide basis.

*Id.* at 273 (emphasis added).

Numerous other courts support that predominance and superiority are satisfied in this setting. For example, writing for the Seventh Circuit in *Butler v. Sears, Roebuck & Co.*, 727 F.3d 359 (7th Cir. 2012), Judge Posner asserted that "[i]f there are no common questions or only common questions, the issue of predominance is automatically resolved." *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359, 361 (7th Cir. 2012), *cert. granted, judgment vacated*, 569 U.S. 1015 (2013), and *judgment reinstated*, 727 F.3d 796 (7th Cir. 2013). As Judge Weinstein noted in an oft-cited 2001 opinion, "[t]he framers of Rule 23(c)(4)(A) considered class actions brought under Rule 23(b)(3) . . . particularly well suited for certification of fewer than all issues. Their conclusion follows from the fact that Rule 23(c)(4)(A) assists in satisfying Rule 23(b)(3)'s additional class certification requirements of predominance and superiority." *Simon v. Philip Morris, Inc.*, 200 F.R.D. 21, 28–30 (E.D.N.Y. 2001) (citations omitted); *see also Martin v. Behr*, 896 F.3d 405 (6th Cir. 2018); *Adkisson v. Jacobs Eng'g Grp., Inc.*, 370 F. Supp. 3d 826 (E.D. Tenn. 2019).

Prominent treatises are in accord. According to Professors Tidmarsh and Trangsrud, in this context "[b]y definition, these common issues would predominate, because only the common issues are litigated on a class-wide basis." Jay Tidmarsh and Roger H. Transgrud, Modern Complex Litig. 490 (2d ed. 2010) (emphasis added). And as Joseph McLaughlin writes, "when common issues predominate, the manageability factor usually favors certification. The more common issues predominate, the more manageable the litigation becomes, and a class action becomes the superior device for resolving the case through elimination of duplicative litigation." 1 McLaughlin on Class Actions § 5:68 (14th ed., Oct. 2017 update) (emphasis added) (footnotes omitted).

Here, because the issues to be certified involve only common issues, with no individualized inquiries necessary for the class determination, predominance and superiority are satisfied.

**III.** **The proposed issue class satisfies the seventh *Gates* factor, concerning the impact of certification on the effectiveness and fairness of the resolution of remaining issues, because it maintains fairness to all parties.**

The Third Circuit asked this Court to "explicitly discuss whether *[sic]* the effect certification of the issue class will have on the effectiveness and fairness of resolution of remaining issues." The sole concern the Third Circuit identified in this regard is whether ECFMG will face "undue pressure to settle even if their breach did not cause Plaintiffs' harm." *Russell*, 15 F.4th at 272.

Later, however, the opinion rejects the notion that issue classes will unfairly pressure ECFMG into settling with Plaintiff. The court rejected as "overblown" amicus Chamber of Commerce's contention that the district court's ruling would encourage "a flood of abusive class actions." *Id.* at 275. As it explained, "even if a lawyer could obtain a quasi-declaratory ruling on a subset of common issues, the transformation of the case from a proposed class action to a set of individualized proceedings would spoil any settlement leverage that the lawyer had." *Id.* Whatever the merits of the Third Circuit's analysis, it certainly did not hold that certifying the proposed issue class will extort a settlement from ECFMG.

Even if Defendant experiences settlement pressure after an adverse determination on the certified issues, this does not mean that such settlement pressure was "undue," i.e., "excessive or unwarranted." Black's Law Dictionary (11th ed. 2019). There are built-in safeguards against undue settlement pressure, including the requirement of rigorous analysis itself and the Rule 23(f) appeal. Settlement pressure resulting from a fair resolution of the certified issues is not grounds to reject certification. *Jackson v. Se. Pennsylvania Transp. Auth.*, 260 F.R.D. 168, 185 (E.D. Pa. 2009) ("[T]he Court cannot simply deny certification on this ground."); Fed. R. Civ. P. 23, 1998 advisory committee cmt. To hold otherwise would preclude most any issue certification, eviscerating the issue class device.

Merely because other persons, absent from this litigation and not alleged to be negligent, were involved in the causal chain does not make it "unfair" to impose liability on ECFMG. The relevant inquiry is whether ECFMG's negligence was a factual cause of Plaintiffs' injuries, not, as the opinion's dicta implied, whether ECFMG was *the* cause. The standard instruction on causation (referred to as "proximate cause" rather than "factual cause") reads as follows:

> In order for *[name of plaintiff]* to recover in this case, *[name of defendant]*'s [negligent] [grossly negligent] [reckless] <u>conduct must have been a factual cause in bringing about harm. Conduct is a factual cause of harm when the harm would not have occurred absent the conduct.</u> To be a factual cause, the conduct must have been an actual, real factor in causing the harm, even if the result is unusual or unexpected. A factual cause cannot be an imaginary or fanciful factor having no connection or only an insignificant connection with the harm.
>
> To be a factual cause, *[name of defendant]*'s conduct need not be the only factual cause. <u>The fact that some other causes concur with *[name of defendant]*'s negligence in producing an injury does not relieve *[name of defendant]* from liability as long as [his] [her] own negligence is a factual cause of the injury.</u>

Pa. SSJI (CIV), 13.20 (emphasis added).[1]

Pennsylvania does retain the concept of concurring causes, but that only comes into play "when the joint negligence of more than one person is involved." Pa. SSJI (CIV), 13.150. That is not the case here: ECFMG has not asserted that another person's *negligence* was a factual cause of the injuries. Even if it did, a defendant cannot avoid liability on the basis that "another concurring cause is also responsible for producing injury." *Id.* "The basic question is whether the first tortfeasor's action was in fact a legal cause of the resultant injury. If in fact it was . . . the fact that a second actor may also have contributed to the injury does not relieve the initial tortfeasor of responsibility." *Grainy v. Campbell*,

---

[1] This instruction accurately reflects Pennsylvania law. *Gorman v. Costello*, 2007 PA Super 224, ¶ 13, 929 A.2d 1208, 1212 (2007).

493 Pa. 88, 95, 425 A.2d 379, 383 (1981) (Nix, J., concurring).[2] Juries in individual proceedings may fairly consider this question if ECFMG receives unfavorable determinations on duty and breach.

The result is the same if one frames this inquiry as "superseding cause." The mere fact that other institutions relied on ECFMG's certification of Igberase, and thus played a role in his ability to practice medicine, does not transform them into superseding causes that warrant inclusion on a verdict form. A superseding cause "is an intervening force that is 'so extraordinary as not to have been reasonably foreseeable.'" *Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 773 n.4 (3d Cir. 2009). An event is a superseding cause if it "operat[es] independently of any situation created by the first actor's negligence" and "is not . . . a normal result of that situation." *Id.* Here, neither of these conditions is met: ECFMG certification was a prerequisite to him attending a residency program and becoming able to practice obstetrics and gynecology. ECFMG initiated the causal chain that enabled Igberase to practice medicine in the United States. For a health care institution to grant him privileges is hardly so extraordinary as to not have been reasonably foreseeable.

---

[2] *See also* the damages instruction on "Other Contributing Causes":

> *[Name of plaintiff]* is entitled to recover damages for all [injuries] [harm] factually caused by the defendant['s] [s'] negligence.

> The defendant['s] [s'] negligence need not be the sole cause of the [injuries] [[harm]; other causes may have contributed to producing the final result.

> The fact that some other factor may have contributed to [an injury] [a harm] does not relieve [a defendant] [defendants] of liability, unless you find that such other causes would have produced the [injury] [harm] complained of independently of their negligence.

> [Even though prior conditions or concurrent causes may have contributed to [an injury] [a harm], if the defendant['s] [s'] negligence factually caused the [injury] [harm], the defendant[s] [is] [are] liable for the full amount of damages sustained, without any apportionment or diminution for the other conditions or causes.]

Pa. SSJI (Civ), §7.90 (2020).

Moreover, issues of causation should not bar class certification here. As the Third Circuit has observed, "[c]hallenges based on the statute of limitations, fraudulent concealment, releases, causation, or reliance have usually been rejected and will not bar predominance satisfaction because those issues go to the right of a class member to recover, in contrast to underlying common issues of the defendant's liability." *See In re Linerboard Antitrust Litig.*, 305 F.3d 145, 163 (3d Cir. 2002) (quoting Newberg on Class Actions § 4.26 (3d ed.)).

Finally, the language of this *Gates* factor resembles the element of superiority, which asks courts to determine "whether a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Because the superiority element is met, as described above, this *Gates* factor is satisfied as well.

**IV.     The proposed issue class also satisfies the third _Gates_ factor, concerning the efficiencies to be gained by granting partial certification in light of realistic procedural alternatives, because no efficient alternative exists.**

According to the Third Circuit, this Court "did not rigorously consider what efficiencies would be gained by resolution of the certified issues" with respect to Plaintiffs' negligent infliction of emotional distress claim—although, as the Third Circuit acknowledged, the Court "briefly discussed the efficiencies of a single trial and broached other options with the parties." *Russell*, 15 F.4th at 272. The appellate court stressed that following a class phase trial, if Plaintiffs were successful, individual proceedings would be necessary to determine fact of injury, proximate (factual) cause, and affirmative defenses.

The Third Circuit's decision should not alter this Court's conclusion. The key question, as Judge Posner put it, is: "Is it more efficient, in terms both of economy of judicial resources and of the expense of litigation to the parties, to decide some issues on a class basis or all issues in separate trials?" *Butler*, 702 F.3d at 362. The mere fact that individualized determinations are needed to resolve damages

11

claims cannot defeat certification. As this Court found, "there are efficiencies to be gained by certifying a class on these issues because it will allow for a single trial with a single, preclusive determination about ECFMG's conduct, rather than the presentation of the same evidence about ECFMG again, and again, and again to separate juries." (ECF No. 57 at 26). And the Third Circuit supported this conclusion: it not only indicated that "the District Court may very well be correct" in this assessment, *Russell*, 15 F.4th at 272, but also noted that "[t]here will be plenty left for individual proceedings, but these major issues [of duty and breach] could be resolved on a class-wide basis." *Russell*, 15 F.4th at 273.

In fulfilling the Third Circuit's mandate to analyze fulsomely this *Gates* factor, this Court should not alter its central conclusion. The only alternative to issue class certification followed by individualized determinations on causation and damages is full-blown trials for each of at least 550 plaintiffs whom counsel presently represent. This is necessarily far less efficient, because it would require repetitive presentations of evidence on duty and breach. Collateral estoppel, as the Court observed, is not an alternative because it cannot be used offensively here to resolve multiple claims. ECF No. 57 at 26–27. The Third Circuit did not disturb the merits of these findings, and this Court has no reason to revisit them.

**V.     The Third Circuit's dicta regarding the ninth *Gates* factor should not alter the Court's class certification decision, as no Reexamination Clause issues inhere in the proposed issue class.**

In dicta, the appellate opinion suggested "[t]he District Court may also wish to consider whether the duty and breach elements of Plaintiffs' negligent infliction of emotional distress claim are suitable for issue-class treatment." *Russell*, 15 F.4th at 272. It observed that "under Pennsylvania law, for example, to determine whether the Commission owed the Plaintiffs a relevant legal duty, the class jury will have to weigh several factors, including the 'foreseeability of the harm incurred.' " *Id.* The

Third Circuit anticipated that "once beyond the class trial, to determine and measure emotional damages, each individual jury will have to assess the degree of the Commission's negligence as to each Plaintiff." *Id.* According to the Third Circuit, then, "each individual jury, like the issue-class jury, may need to consider evidence regarding the Commission's overall conduct, which likely will include the nature of the legal duty it owed Plaintiffs (if any) and the extent to which it breached that duty." *Id.* Based on "the risk subsequent triers of fact will need to reexamine evidence and findings from resolution of the common issue(s)," the appellate court concluded that "*Gates* disfavors this," referencing the ninth factor of the *Gates* test.[3] As described below, these hypothetical concerns the Third Circuit chose to express in dicta should not disturb the merits of this Court's conclusions.

A.    The Reexamination Clause concerns the redetermination of issues, *not* the rehearing of evidence.

At the outset, a persistent Reexamination Clause myth must be dispelled. The Reexamination Clause of the Seventh Amendment—the focus of the concern the appellate court raised concerning Gates factor 9—does not preclude the repeated presentation of evidence at different phases of the same trial.[4] Rather, "the Seventh Amendment prohibition is not against having two juries review the

---

[3] This factor requires a district court to consider "the impact individual proceedings may have upon one another, including whether remedies are indivisible such that granting or not granting relief to any claimant as a practical matter determines the claims of others; and the kind of evidence presented on the issue(s) certified and potentially presented on the remaining issues, including the risk subsequent triers of fact will need to reexamine evidence and findings from resolution of the common issue(s)." *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 273 (3d Cir. 2011) (citing Principles of the Law of Aggregate Litigation §§ 2.02–05 (2010), *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 201 (3d Cir. 2009)). The Court concluded that there were no indivisible remedies in its class certification decision (ECF No. 57 at 27), and neither ECFMG nor the appellate court has opined otherwise.

[4] The Seventh Amendment, ratified in 1791, provides that "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII

same evidence, but rather against having two juries decide the same essential issues." *In re Paoli R.R. Yard PCB Litig.*, 113 F.3d 444, 452 n.5 (3d Cir. 1997) (citation and quotes omitted).  Separate juries are permissible even where "certain evidentiary items might have been relevant to both phases of trial," even if evidence is reheard.  *Id.*  As a defense-side journal has observed,

> First, the Clause refers to a "fact tried by a jury," which appears to be considerably narrower than an Article III "case or controversy." There are several possible interpretations of "fact tried by a jury." One is construing the phrase as synonymous with "fact examined by a jury" which would prevent subsequent juries from hearing the same evidence as the initial jury. This position could be implied in the Fifth Circuit's criticism of a bifurcation plan because "a second jury will rehear evidence of the defendant's conduct." [quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 751 (5th Cir. 1996).] However, <u>such an interpretation has been soundly rejected</u>, even by the Fifth Circuit, <u>and, for good reason, because, for decades before and after the ratification of the Seventh Amendment, subsequent juries were essentially *required* to rehear evidence pertaining to a plaintiff's claims where the common law's rigid joinder rules prohibited the joinder of all the plaintiff's claims.</u> Moreover, <u>such a broad reading of "fact tried by a jury" would cripple the ability of trial courts not only to bifurcate in many instances but also to employ other management devices</u> such as directing a retrial on only the issue of damages where the first trial was otherwise error-free.

W. Russell Taber, *The Reexamination Clause: Exploring Bifurcation in Mass Tort Litigation Analyzing the Constitutional Hurdle to Bifurcated Trials*, 73 Def. Couns. J. 63, 71 (2006).

The concerns that motivated the Framers in drafting the Seventh Amendment are also not at play in the proposed issue certification. As Judge Weinstein concluded after an extensive, oft-cited analysis:

> The historical record demonstrates that the Framers' main objective in drafting the Seventh Amendment was to limit the ability of an appellate court, specifically the Supreme Court, to review de novo and overturn a civil jury's findings of fact. Nowhere is there an indication that the Framers intended to constrain the trial judge's substantial discretion to employ appropriate mechanisms of jury control.

*Simon v. Philip Morris Inc.*, 200 F.R.D. 21, 33 (E.D.N.Y. 2001).

14

The remedy for any potential Reexamination Clause concerns is prudent case management combined with the use of well-drawn special interrogatories: "[u]se of special verdict forms can provide the specificity necessary for instructing a second jury as to the aspects of the litigation previously resolved."  Ann. Manual Complex Lit. § 22.755 (4th ed.); *see also* 2 Newberg on Class Actions § 4:92 (5th ed.) ("In sum, the Seventh Amendment does not seem to pose a significant obstacle to the use of issue classes, even in the mass tort context, so long as courts are careful to certify only those issues for class treatment that are sufficiently separable from individual issues."). As the same defense-side journal cited above also observed,

> [t]he fundamental means to avoid a prohibited reexamination in most bifurcation plans is the use of carefully crafted special verdicts. In bifurcated trials, as discussed earlier, a special verdict captures the very "fact[s] tried by a jury" by catechizing a jury's factual considerations that led to its affixation of a particular legal label. <u>Prohibited reexaminations can, therefore, be avoided altogether by documenting the "fact[s] tried by a jury" in a special verdict, providing the special verdict to subsequent juries, and instructing subsequent juries that they are bound to the conclusions recorded in the special verdict.</u> In this sense, the Reexamination Clause "requires only that later juries respect the formal findings of the first jury."

Taber, 73 Def. Couns. J. at 75.

Moreover, the potential constitutional infirmity is not ripe for resolution at this stage. Special interrogatories have not been crafted. " 'We do not normally require that a party be protected against an amorphous risk that a state actor—in this case the jury—will violate its legal obligations.' "  *Simon v. Philip Morris Inc.*, 200 F.R.D. 21, 47 (E.D.N.Y. 2001) (quoting Patrick Woolley, *Mass Tort Litigation and the Seventh Amendment Reexamination Clause*, 83 Iowa L. Rev. 499, 525 (1998)). If Defendant believes there is a concrete danger of reexamination issues, Defendant should identify them and propose special verdict interrogatories to protect its interests.

The courts and the treatises agree. Appropriate case management undertaken by the parties and the Court can address any concerns that might arise under the Reexamination Clause.  This Court and

the parties should embrace the efficiencies of the proposed issues classes and deal with any potential Reexamination Clause issues if and when they arise.

B.    The issue of duty does not implicate the Reexamination Clause, because it is an issue to be determined by the Court separately from other elements.

The Court need not be concerned a jury in an individual proceeding might reexamine a class jury's finding on the issue of duty, as the aforementioned dicta in the Third Circuit's decision might be read to imply. The Court, not the class jury, will determine whether ECFMG owed a duty to Plaintiffs and members of the class, as the Third Circuit itself acknowledges on the following page of its opinion. *Id.* at 273 ("Duty is an issue of law. Therefore, it must be decided separately from breach, causation, and damages."). Juries in individual proceedings will not be asked to determine whether ECFMG owed a duty to the class. Issues of duty here proposed for classwide treatment do not run afoul of the ninth *Gates* factor.

C.    Trying the issue of breach separately from causation and damages will not run afoul of the Reexamination Clause.

Courts in this and other circuits routinely try or re-try liability and emotional harm damages separately. *See Rosa v. City of Chester*, 278 F.2d 876, 882 (3d Cir. 1960) ("Federal appellate and district courts have time and again ordered new trials as to damages only.");  *Gunnells v. Healthplan Serv., Inc.*, 348 F.3d 417, 426–30 (4th Cir. 2003); *Walters v. Mintec/Int'l*, 783 F.2d 73, 82 (3d Cir. 1985) (ordering new trial on emotional and pecuniary damages only in wrongful death claim); *Martell v. Boardwalk Enters., Inc.*, 748 F.2d 740, 755 (2d Cir. 1984) (permitting retrial on damages including psychological injury where first jury answered special interrogatories on liability). In *Gunnells*, the Fourth Circuit affirmed an order granting issue-class certification, where mini-trials on proximate cause and damages, including emotional distress damages, would have followed the class trial on the certified issues. *Gunnells,* 348 F.3d at 426–30.

16

It is well within this Court's discretion to permit " 'a single trial with a single, preclusive determination about [the Commission]'s conduct, rather than the presentation of the same evidence about [the Commission] again, and again, and again to separate juries.' " *Russell*, 15 F.4th at 273.   Here, the circumstances a jury will need to consider when evaluating damages in the claims for emotional distress are primarily *Igberase's* conduct, as Igberase, unlike ECFMG, was in direct contact with the class members.  As the Court of Appeals noted, "each patient shared the same distanced relationship of trust with the Commission." *Russell*, 15 F.4th at 273.  ECFMG's negligence allowed Igberase to be in a position to treat patients, but there is no evidence that plaintiffs had any direct contact with ECFMG. Thus, ECFMG's actions are not necessary to evaluate the plaintiffs' emotional distress, caused by Igberase's examinations. Rather, individual juries will already be instructed that ECFMG is responsible for putting Igberase in a position to damage Plaintiffs in the first place. Even if there will be limited reintroduction of evidence, the efficiencies to be gained far exceed scores of separate trials.

*Spence v. Board of Education of Christina School District*, 806 F.2d 1198 (3d Cir. 1986), referenced by the Third Circuit, is of no moment here. The issue on appeal concerned the application of *Gasoline Products Co. v. Champlin Refining Co.,* 283 U.S. 494 (1931), in an individual claim for retaliatory transfer, to determine whether damages could be *re-tried* on a limited factual presentation. *Id.* at 1202.  Unlike here, the case involved "a tangled and complex fact situation." *Id.*

*Spence* certainly did not hold that emotional distress liability and damages are *always* too interwoven to allow a fair determination of damages apart from liability. *Spence* held only that the district court had not abused its discretion in not allowing a damages-only retrial on that record, 806 F.2d at 1202—not that a district court cannot try issues of liability and emotional distress damages separately in a class action. And it did not hold that issues of duty and breach within liability could not be tried separately from causation and damages where, as here, the facts bearing on the defendant's breach of duty have little bearing on whether particular individuals suffered compensable harm.

No reported decision has applied *Spence* to bar certification and trial of liability (much less issues within liability) separately from damages. Although "[t]he universal requirement of a causal link between liability and damages means that the issues can never be completely unlinked . . . it is clear that in many cases damages may justly be tried apart from liability." *Pryer v. C.O. 3 Slavic*, 251 F.3d 448, 461 (3d Cir. 2001). The Federal Rules of Civil Procedure "expressly authorize such separate trials." *Id.* at 461 n.9 (citing Fed R. Civ. P. 42(b)).

Finally, Defendant's interests are not in jeopardy here.  Even if there were an overlap in the issues to be tried at the two proposed stages, the defendant could only benefit from the proposed staging of the trials.  First, Plaintiffs must prevail on the issues of duty and breach.  If Plaintiffs do not succeed at this stage, their class claims are extinguished, and there need be no second stage.

## VI.   The choice of law question should not impair certification of the proposed issue class, as the Third Circuit did not indicate the Court should revisit its earlier findings on this issue.

The only other note of error correction in the Third Circuit's opinion lies in its footnote 5. There, the appellate court noted that what it termed a lack of rigorous analysis of the two *Gates* factors contended with above was sufficient to vacate the class certification decision, but also hypothesized that "there may yet be other problems with the issue class." *Russell*, 15 F.4th at 275 n.5. The only hypothetical "problem" the Third Circuit identified was "the possibility that Plaintiffs' legal claim implicates multiple states' laws." *Id.* The opinion mused that it is a "close question," because "[i]t may well be true that Pennsylvania has the greatest interest in this case," as this Court concluded, but "various other states have a substantial interest in the resolution of the claims, too." *Russell*, 15 F.4th at 273 n.5. Yet, because the issue was briefed in the context of class certification, the Third Circuit empowered this Court "to determine which state's law applies to each Plaintiff's claim, if the question of which state's law applies becomes relevant in future proceedings." *Id.* The appellate court did not

discuss whether application of another state's law would give rise to a true conflict (it would not, as this Court concluded). In short, the Court did not disturb this Court's findings on choice of law and did not encourage it to revisit them at this stage. As Plaintiffs have argued, the Court can address any potential choice of law issues through the use of subclasses under Rule 23(c)(5), particularly given the small number of states at issue.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request the Court re-certify the proposed Issue Classes.

Dated: <u>December 10, 2021</u>                        Respectfully submitted,

JANET, JANET & SUGGS, LLC                    SCHOCHOR, FEDERICO AND STATON

*/s/ Patrick Thronson*                                      Brent Ceryes
  Patrick A. Thronson                              Jon Schochor
  4 Reservoir Circle, Suite 200                 Phil Federico
  Baltimore, MD 21208                            Lauren Schochor
  (410) 653-3200                                    1211 St. Paul Street
                                                 Baltimore, Maryland 21202
CONRAD O'BRIEN PC                              (410) 234-1000
*/s/ Robin Weiss*
  Nicholas M. Centrella (PA ID No. 312071)   Z LAW, LLC
  Robin S. Weiss (PA ID No. 67666)             Cory L. Zajdel
  1500 Market Street, Suite 3900                2345 York Rd. Suite B-13
  Philadelphia, PA 19102-2100                  Timonium, MD 21093
  (215) 864-9600                                    (443) 213-1977

LAW OFFICES OF PETER G. ANGELOS,           THE COCHRAN FIRM
P.C.                                                      Karen E. Evans, R.N., J.D.
  Paul M. Vettori                                    David Haynes
  100 N. Charles Street, 20th Floor              1100 New York Ave, N.W.
  Baltimore, Maryland 21201                     Washington, D.C. 20005
  (410) 649-2000                                    (202) 682-5800

                                                *Attorneys for Plaintiffs, on behalf of themselves and*
                                                *all others similarly situated*