# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MONIQUE RUSSELL, JASMINE RIGGINS,
ELSA M. POWELL, and DESIRE EVANS,

        Plaintiffs,

    v.

EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES,

        Defendant.

Civil Action No. 18-5629

Honorable Joshua D. Wolson

## DEFENDANT'S SUPPLEMENTAL BRIEF
## IN OPPOSITION TO CLASS CERTIFICATION

Dated: December 10, 2021

Brian W. Shaffer, PA Bar No. 78851
Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA  19103-2921
Telephone:     +1.215.963.5000
Facsimile:     +1.215.963.5001
brian.shaffer@morganlewis.com
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for the Educational Commission for
Foreign Medical Graduates*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

    I.    Plaintiffs Have Not Demonstrated That an Issue Class Satisfies Rule 23(c)(4). ............................................................................................ 2

        A.    Issue certification will not substantially facilitate the resolution of the dispute. ........................................................................... 3

        B.    Issue certification will neither preserve the parties' procedural and substantive rights and responsibilities, nor respect the constitutional and statutory rights of the parties. .................................... 7

        C.    This case is indistinguishable from *Gates* and merits the same result. .......................................................................................... 9

    II.    Plaintiffs Have Not Demonstrate That an Issue Class Satisfies Rule 23(b)(3). ............................................................................................ 9

        A.    The duty and breach elements of Plaintiffs' claims do not satisfy predominance. ..................................................................... 10

        B.    The duty and breach elements of Plaintiffs' claims do not satisfy superiority. ......................................................................... 13

CONCLUSION ................................................................................................................. 19

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)..................................................................................................10

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)..................................................................................................18

*Bowman v. Williams*,
   165 A. 182 (Md. 1933) ...............................................................................................8

*Gates v. Rohm & Haas Co.*,
   655 F.3d 255 (3d Cir. 2011)............................................................................. *passim*

*Healy v. Beer Inst., Inc.*,
   491 U.S. 324 (1989)....................................................................................................9

*In re Hydrogen Peroxide Antitrust Litig.*,
   552 F.3d 305 (3d Cir. 2008)...............................................................................10, 13

*In re Sch. Asbestos Litig.*,
   789 F.2d 996 (3d Cir. 1986)..................................................................................8, 16

*Johnston v. HBO Film Mgmt., Inc.*,
   265 F.3d 178 (3d Cir. 2001)....................................................................................13

*Matter of Rhone-Poulenc Rorer, Inc.*,
   51 F.3d 1293 (7th Cir. 1995) .....................................................................................5

*McKenna v. City of Philadelphia*,
   649 F.3d 171 (3d Cir. 2011).......................................................................................4

*Mejdrech v. Met-Coil Sys. Corp.*,
   319 F.3d 910 (7th Cir. 2003) ...................................................................................17

*Russell v. Educ. Comm'n for Foreign Med. Graduates*,
   15 F.4th 259 (3d Cir. 2021) ............................................................................. *passim*

*Sala v. Nat'l R.R. Passenger Corp.*,
   120 F.R.D. 494 (E.D. Pa. 1988)...............................................................................15

*Spence v. Bd. of Educ. of the Christina Sch. Dist.*,
   806 F.2d 1198 (3d Cir. 1986)...................................................................................17

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) (en banc)......................................................................16

*Toney v. Chester Cty. Hosp.*,
    36 A.3d 83 (Pa. 2011) .............................................................................................8

*Township of Bordentown, N.J. v. FERC*,
    903 F.3d 234 (3d Cir. 2018)......................................................................................4

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).........................................................................................12, 13

### OTHER AUTHORITIES

Fed. R. Civ. P. 23(a) ......................................................................................2,10, 15

Fed. R. Civ. P. 23(b) ......................................................................................... *passim*

Fed. R. Civ. P. 23(c) ......................................................................................... *passim*

Am. Med. Ass'n, *How IMGs have changed the face of American medicine* (Oct. 19, 2021),
    https://www.ama-assn.org/education/international-medical-education/how-imgs-have-
    changed-face-american-medicine ............................................................................17

## INTRODUCTION

Pursuant to this Court's November 9, 2021 Order (ECF 77), Defendant Educational Commission for Foreign Medical Graduates ("ECFMG") submits this supplemental brief to address class certification in light of the Third Circuit's decision in *Russell v. Educational Commission for Foreign Medical Graduates*, 15 F.4th 259 (3d Cir. 2021).

This Court previously and correctly determined that most of this case is not suitable for class treatment. It rejected Plaintiffs' request to certify liability for class-wide determination, ECF 57 at 22–25, and rejected class treatment of five of the nine issues that Plaintiffs proposed, *id.* at 25. Nothing in the Third Circuit's decision disturbs these aspects of this Court's earlier decision.

In vacating this Court's order certifying the duty and breach elements for class treatment, the Third Circuit held that to certify the requested issue class, this Court must, *inter alia*, (1) find that the issue class is "appropriate" under Rule 23(c)(4) based on a rigorous analysis of the *Gates* factors, as guided by the Third Circuit's opinion; and (2) find that the issue class satisfies Rule 23(b)(3)'s predominance and superiority requirements. Plaintiffs can make neither showing.

The Third Circuit identified a host of major obstacles to issue certification under Rule 23(c)(4) and *Gates*. Issue certification cannot substantially facilitate the resolution of the dispute because each class member would still have to prove a plethora of complex issues through individualized proceedings that require the same evidence as the issue class trial. It would also undermine the parties' procedural and substantive rights because it risks unduly pressuring ECFMG to settle (rather than having its strong arguments decided on the merits) and creates difficult constitutional issues (including under the Seventh Amendment and the Commerce Clause). Plaintiffs have proposed no viable solutions to any of these impediments.

With respect to Rule 23(b)(3), Plaintiffs have failed to demonstrate that any common issues presented by the duty and breach inquiries predominate over the individual issues that must be

resolved to determine whether ECFMG owed and/or breached a duty to a particular class member. Nor have Plaintiffs shown that issue class certification is a superior method for resolving the controversy. Plaintiffs have offered no plan for how the Court can effectively manage an issue class trial or apply the results of an issue class trial to each class member's claim, without almost complete duplication of evidence. Individual proceedings are also superior because they do not threaten undue settlement pressure or risk inflicting emotional distress on putative class members who are presently (and may forever remain) uninjured.

For the reasons set forth below and in ECFMG's prior briefing, class certification should be denied in its entirety.

## ARGUMENT

### I.     Plaintiffs Have Not Demonstrated That an Issue Class Satisfies Rule 23(c)(4).

Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." In contrast to Rule 23(a) and Rule 23(b), which determine "if the proposed issues **can** be brought or maintained as [a] class action," Rule 23(c)(4) "determine[s] whether they **should**." *Russell*, 15 F.4th at 270 (emphasis in original). The Court cannot certify an issue class without finding Rule 23(c)(4) satisfied. *Id.*

The Third Circuit clarified that its decision in *Gates v. Rohm & Haas Co.*, 655 F.3d 255 (3d Cir. 2011)—including the list of nine factors relevant to issue class certification—explained Rule 23(c)(4)'s "appropriate[ness]" inquiry. *Id.* at 267. "When assembled, the *Gates* factors construct a functional framework to aid the district courts tasked with resolving issue-class certification questions." *Id.* at 268. "[D]istrict courts may certify 'particular issues' for class treatment even if those issues, once resolved, do not resolve a defendant's liability" only if "such certification substantially facilitates the resolution of the civil dispute, preserves the parties' procedural and substantive rights and responsibilities, and respects the constitutional and statutory

2

rights of all class member and defendants." *Id.* at 270.

As explained in ECFMG's prior briefing and herein, Plaintiffs have not demonstrated that Rule 23(c)(4) and the *Gates* factors favor issue class certification.

**A.    Issue certification will not substantially facilitate the resolution of the dispute.**

The Third Circuit explained that the overall complexity of the case (*Gates* factor 2) and the lack of efficiencies to be gained from an issue class proceeding in light of realistic procedural alternatives (*Gates* factor 3) weigh strongly against issue class certification. "[E]ven if the District Court finds that [ECFMG] owed a relevant legal duty to the Plaintiffs that it subsequently breached, each Plaintiff, in individual proceedings, will have to prove that they were injured; that [ECFMG's] breach of the relevant duty actually and proximately caused those injuries; that those injuries are due a particular amount of damages; and that [ECFMG's] affirmative defenses (including, presumably, each Plaintiff's consent to medical treatment by Igberase) are not decisive." *Russell*, 15 F.4th at 272.

Virtually all of the "common" evidence and arguments that would presumably be presented in an issue class trial on questions of duty and breach would need to be reheard in every individual case. To determine causation, understand who Dr. Akoda was, and even have a basic understanding of the theory of liability against ECFMG, every jury in every individual proceeding would need to hear the evidence that Plaintiffs presumably propose to present in the issue class proceeding.

Evaluating but-for and proximate causation would require an individual jury to consider the entire chain of events relevant to the class member at issue—including any alleged wrongdoing by ECFMG, JSMC, Howard, the Maryland Board of Physicians, the Virginia Board of Medicine, Dr. Chaudry, Dr. Moore, ABOG, and/or law enforcement—that will already have been presented to the issue class jury. *See id.* ("Many other actors played a role in Igberase's fraud, including the

residency programs that admitted and trained him, the state medical boards, that licensed him, the hospitals that gave him privileges, the specialty board that certified him, and the law enforcement officers (state and federal) who investigated him."). *Cf. McKenna v. City of Philadelphia*, 649 F.3d 171, 178 (3d Cir. 2011) (explaining that "proximate cause" excludes "link[s] that are too remote, purely contingent, or indirect" (internal citation omitted)); *Township of Bordentown, N.J. v. FERC*, 903 F.3d 234, 247 n.6 (3d Cir. 2018) (noting that "intervening act[s]" can sever a causal chain).

Moreover, as the Third Circuit noted, "once beyond the class trial, to determine and measure emotional damages, each individual jury will have to assess the degree of [ECFMG's] negligence as to each Plaintiff." *Russell*, 15 F.4th at 272 (citing *Spence v. Bd. of Educ. of the Christina Sch. Dist.*, 806 F.2d 1198, 1202 (3d Cir. 1986)). The Third Circuit affirmatively rejected Plaintiffs' argument that emotional distress could be evaluated solely based on a class member's interactions with Dr. Akoda, *See* Appellees' Br., Dkt. 47, at 57–59. Rather, it agreed with ECFMG (and Third Circuit precedent) that any "emotional distress damages must be evaluated in light of all the circumstances surrounding [ECFMG's] alleged misconduct." *Id.* (quoting *Spence*, 806 F.2d at 1202). As a result, "each individual jury, like the issue-class jury, may need to consider evidence regarding [ECFMG's] overall conduct, which likely will include the nature of the legal duty it owed Plaintiffs (if any) and the extent to which it breached that duty." *Id.* at 272. As the Third Circuit noted, "*Gates* disfavors this." *Id.*; *see Gates*, 655 F.3d at 273 (holding that "the risk subsequent triers of fact will need to reexamine evidence and findings from resolution of the common issue(s)" counsels against certification of those issues).

Thus, the Third Circuit held, individual proceedings considering each class member's emotional distress damages will require reconsidering all of the circumstances surrounding ECFMG's duty and breach, essentially a complete reduplication of any evidence presented at a

class-wide issue trial. No efficiencies can be gained by an issue class proceeding when the same evidence will need to be represented to juries in individual proceedings.

The need to present the same evidence at both an issue class trial and individual proceedings creates serious Seventh Amendment concerns. Courts have disapproved of the kind of issue class Plaintiffs propose because attempting to separate questions of duty and breach from the question of proximate causation would violate the Seventh Amendment. "Proximate causation is found by determining whether the harm to the plaintiff followed in some sense naturally, uninterruptedly, and with reasonable probability from the negligent act of the defendant. It overlaps the issue of defendants' negligence," particularly when (as here) applicable state law "make[s] the foreseeability of the risk to which the defendant subjected the plaintiff an explicit ingredient of negligence." *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995); *see Russell*, 15 F.4th at 272 (noting that whether ECFMG owed Plaintiffs a "relevant legal duty" requires considering "the foreseeability of the harm incurred," among other factors). As a result, Plaintiffs' proposed issue class presents a "looming infringement of Seventh Amendment rights": "[u]nless the defendants settle, a second (and third, and fourth, and hundredth, and conceivably thousandth) jury will have to decide, in individual follow-on litigation by class members not named as plaintiffs" issues of proximate causation that overlap issues of duty and breach already tried to another jury. *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d at 1303. The impact issue certification will have on the constitutional rights of the parties (*Gates* factor 5) and the risk subsequent triers of fact will need to reexamine evidence and findings from resolution of the common issues (*Gates* factor 9) thus weigh strongly against issue certification.

The type of claims and issues in question (*Gates* factor 1) also weighs against certification. "[T]o determine whether [ECFMG] owed the Plaintiffs a relevant legal duty, the class jury will have to weigh several factors, including 'the foreseeability of the harm incurred.'" *Russell*, 15

F.4th at 272 (quoting *Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1169 (Pa. 2000)).[1] By definition, that requires the issue class jury to look beyond "[ECFMG]'s conduct," *id.* at 273, to the nature of the harm allegedly suffered by class members, which Plaintiffs have proposed to excise from the issue class trial. Plaintiffs have failed to detail how the duty and breach elements of each class member's claim can be resolved on a class-wide basis without consideration of other elements of their claim, which they propose to sever for subsequent individual trials. They have no explanation for how a proposed issue class trial would not broach the emotional distress that will be the focus of subsequent individual trials.

The Third Circuit discussed the possibility that there may be efficiencies to be gained from "a single trial with a single, preclusive determination about [ECFMG]'s conduct." *Id.* at 272–73. But an issue class on the abstract questions of duty and breach that Plaintiffs propose to certify (and whose certification the Third Circuit vacated) would not actually generate a determination that would have preclusive effect in each class member's individual proceeding. As explained below, because of the relevant legal standard, the complexity of the facts, and the wide-ranging time period that Plaintiffs seek to put at issue, determining whether ECFMG breached a duty that it owed to Plaintiffs would not necessarily answer whether ECFMG breached a duty that it owed to other class members who were treated at different times or under different circumstances. *See infra* Part II.A. And there is no manageable way to further limit or divide the proposed issue class so that it might generate a preclusive determination as to the entire class. *See infra* Part II.B.2. The inability of an issue class trial to have preclusive effect (*Gates* factor 6) in each class member's subsequent individual proceeding weighs heavily against issue certification.

---

[1] The Third Circuit assumed without deciding that Pennsylvania law governed Plaintiffs' claims for purposes of class certification. *Russell*, 15 F.4th at 273 n.5. As explained below, choice-of-law issues are individualized questions weighing against issue certification.

**B.   Issue certification will neither preserve the parties' procedural and substantive rights and responsibilities, nor respect the constitutional and statutory rights of the parties.**

The risk of undue settlement pressure arising from the prospect of an issue class undermines the effectiveness and fairness of resolution of remaining issues (*Gates* factor 7) and weighs heavily against issue certification. As the Third Circuit recognized, ECFMG has strong defenses, including the absence of any duty, the limitations on claims of negligent infliction of emotional distress, class members' consent to treatment by Dr. Akoda, and a very strong causation defense in light of the fact that "[m]any other actors played a role in Igberase's fraud, including the residency programs that admitted and trained him, the state medical boards that licensed him, the hospitals that gave him privileges, the specialty board that certified him, and the law enforcement officers (state and federal) who investigated him." *Russell*, 15 F.4th at 272.

Issue class certification risks unfairly pressuring ECFMG to settle rather than having its arguments heard on the merits in court: "If an issue-class jury finds that [ECFMG] owed Plaintiffs a legal duty that it subsequently breached, [ECFMG] may face undue pressure to settle, even if [its] breach did not cause Plaintiffs' harm." *Id.* That risk of undue settlement pressure could be avoided if class members' claims were to proceed as individual cases. Individual proceedings would allow the parties to be heard in court and on appeal, without ECFMG facing the coercive threat that a certified class presents.

The impact individual proceedings may have on one another (*Gates* factor 8) similarly weighs against issue certification. Even if Plaintiffs prevail in an issue class proceeding, there would be some resort to multiple trials on the individual questions remaining for resolution. From those trials, Plaintiffs contend that a consensus would emerge that would allow the parties to evaluate the merits *vel non* of each class member's claims. *See* ECF 47 at 11 ("Trying a limited number of these claims would help the parties to more accurately value the case."). There is no

7

reason why the elements of duty and breach could not similarly be included in a limited number of bellwether cases "to help the parties more accurately value the case." In light of the complexities and uncertainties of attempting to try abstract elements of Plaintiffs' claims on a class-wide basis separate from other elements, the most effective and fair way to resolve the case would be through individual proceedings resolving all the elements of each class member's claims.

There are also methods short of issue class certification that would allow individual proceedings to facilitate the efficient resolution of these controversies. The parties could, for example, coordinate discovery across individual proceedings to minimize the burden on parties.

Finally, a careful choice-of-law analysis (*Gates* factor 4) should be conducted for each class member, and that weighs against issue class certification. The Third Circuit recognized choice of law as a "close question" in this case that should be reassessed "if the question of which state's law applies becomes relevant in future proceedings." *Russell*, 15 F.4th at 273 n.5. Plaintiffs seek to certify a class comprising patients examined or treated in at least Maryland, Virginia, and the District of Columbia, but they still have not carried their burden to conduct an "extensive analysis" of variations in those state's laws. *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986). Even seemingly minor variations in each state's law have the potential to create a true conflict because each jurisdiction has adopted carefully crafted standards to guard against fictitious or fraudulent claims for emotional distress. *See Toney v. Chester Cty. Hosp.*, 36 A.3d 83, 91 (Pa. 2011) (stating the need for "standards to determine the veracity of the emotional distress and to limit the potential number of plaintiffs"); *Bowman v. Williams*, 165 A. 182, 184 (Md. 1933) (noting that because fright is "easily simulated and feigned" and "difficult to ascertain," it "tend[s] to multiply fictitious or speculative claims, and to open to unscrupulous litigants a wide field for exploitation").

If Pennsylvania substantive law applied to an out-of-state plaintiff's claims arising from out-of-state medical treatment, difficult constitutional questions would arise under the Commerce Clause because Pennsylvania has no authority to impose liability that has "the practical effect" of "control[ling] conduct beyond the boundaries of the State." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989). Whether Pennsylvania law ultimately applies to Plaintiffs' claims or not, the need for individualized determinations on choice-of-law issues with important constitutional implications weighs against issue class certification.

###### C.     This case is indistinguishable from *Gates* and merits the same result.

This case is indistinguishable from *Gates*. The *Gates* plaintiffs sought certification of generalized, abstract questions, while leaving the bulk of the claims for later, individual proceedings. *See Gates*, 655 F.3d at 272 (explaining that "causation and extent of contamination," "the fact of damages," and "the amount of damages" would need to be determined in follow-up proceedings). In light of the "numerous individual issues that would remain," resolution of the common issues was "unlikely to substantially aid resolution of the substantial issues on liability and causation," so certification under Rule 23(c)(4) was improper. *Id.* at 272, 274.

Here, as in *Gates*, resolution of the proposed class-wide issues would still leave causation, the fact of damages, and the amount of damages (and numerous other issues) to be determined in follow-up proceedings. Accordingly, the same result is warranted.

## II.     Plaintiffs Have Not Demonstrate That an Issue Class Satisfies Rule 23(b)(3).

"A party seeking to certify 'particular issues' for class treatment" must show "that those issues are 'maintainable under Rule 23(b)(1), (2), or (3).'" *Russell*, 15 F.4th at 266–67. Rule 23(b)(3) provides that class certification is appropriate only if "the court finds [(1)] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and [(2)] that a class action is superior to other available methods for fairly

and efficiently adjudicating the controversy." The application of Rule 23(b)(3) in the context of a request to certify an issue class is "informed by general class-action doctrine." *Russell*, 15 F.4th at 270.

As explained below and in ECFMG's prior briefing, Plaintiffs have not carried their burden on Rule 23(b)(3) as to the duty or breach elements of their claims.

### A.   The duty and breach elements of Plaintiffs' claims do not satisfy predominance.

Rule 23(b)(3)'s "predominance criterion is far more demanding" than Rule 23(a)'s commonality requirement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). "Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008) (internal quotation marks and citations omitted).

As detailed in its accompanying motion for summary judgment, the correct understanding of the law is that no duty was owed by ECFMG to any patient of Dr. Akoda's, and the claims for negligent infliction of emotional distress are infirm as a matter of law. But to the extent that the claim is even theoretically viable, in light of the Third Circuit's guidance, it is possible that a duty could be owed or breached as to some class members but not as to others, depending on each class members' individual circumstances and harm suffered. As a result, the issues of duty and breach do not satisfy predominance and class certification should be denied.

Whether ECFMG owed any putative class member a relevant legal duty requires "weigh[ing] several factors, including 'the foreseeability of the harm incurred.'" *Russell*, 15 F.4th

at 272 (quoting *Althaus*, 756 A.2d at 1169). That is not a uniform inquiry that would necessarily produce the same outcome for every patient treated by Dr. Akoda over the proposed class period.

Over the course of Dr. Akoda's career, a host of independent third parties—including JSMC, Howard, the Maryland Board of Physicians, the Virginia Board of Medicine, PGHC, Dr. Chaudry, and Dr. Moore—facilitated his practice of medicine. They did so after evaluating Dr. Akoda under a wide variety of criteria and considering an array of information far broader than ECFMG Certification. As Dr. Akoda's career progressed, more and more third parties evaluated him and concluded that it was appropriate for him to continue treating patients. Unlike ECFMG, many of those third parties were positioned (if not obligated) to monitor Dr. Akoda's medical decisions and day-to-day interactions with patients. With each additional third party's evaluation of Dr. Akoda, it became less and less foreseeable that a patient would come to believe that he should not have been permitted to practice medicine or that treatment by Dr. Akoda would result in emotional distress. The relevant duty inquiry thus varies among class members depending on when they were treated. Answering the general question "whether ECFMG undertook or otherwise owed a duty" to Plaintiffs—an inquiry necessarily rooted in the circumstances that existed at the time Plaintiffs were treated—will not necessarily answer the question as to class members treated under other circumstances or at other times.

Similarly, the issue of breach does not satisfy predominance. The Third Circuit identified various questions relevant to the breach inquiry, including "How much investigating did [ECFMG] do? Did it know or should it have known that Igberase was a fraud? Did it take enough steps to investigate him based on warnings received from various parties, including [JSMC]? Should it have followed up in later years once Igberase was admitted to another residency program?" *Russell*, 15 F.4th at 273. The answer to the breach question is not common across the class period.

11

It may vary from class member to class member depending on when the class member was treated and the nature of the alleged breach.

A jury may find, for example, that ECFMG did not breach a duty to patients like Ms. Russell and Ms. Evans who were treated after 2014 because it was reasonable for ECFMG to heed requests from law enforcement officials in 2014 not to take action that might jeopardize their investigation of Dr. Akoda. But that finding would not answer the question whether ECFMG took "enough steps to investigate" Dr. Akoda before he treated Ms. Riggins in 2012 or an absent class member in 2007. An issue-class proceeding on the question of duty would not "generate common **answers** apt to drive the resolution of the litigation," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original), so common questions do not predominate, and class certification should be denied.

This Court has already recognized that factual variations that would lead class members to make different arguments on the merits may preclude class certification. It denied certification as to patients treated by Dr. Akoda **before** he enrolled in the Howard residency program for lack of typicality because "[t]hose patients can assert negligence claims based on ECFMG's initial certification of Akoda, but they cannot assert claims based on ECFMG's subsequent investigation **because ECFMG did not conduct the investigation until after Igberase had treated those patients.**" ECF 57 at 19 (emphasis added). Even with a narrowed issue class, the same problem persists. Factual variations require class members to make different arguments on the issues of duty and breach. That means uncommon issues outnumber common issues and predominance is lacking.

Plaintiffs' sole argument in favor of predominance is that ECFMG engaged in a single course of conduct that is capable of proof through common evidence. ECF 32-1 at 21. But this framing ignores that the issues of duty and breach are only "common" if they are "capable of

classwide resolution" and can be resolved "in one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. That is not the case here because there are a litany of factual variations among class members that may bear materially on whether ECFMG owed a duty to any given class member. Because the issues proposed for certification "require[] individual treatment," predominance is not satisfied and "class certification is unsuitable." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 311 (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir. 2001)).

**B.      The duty and breach elements of Plaintiffs' claims do not satisfy superiority.**

"Superiority" requires the Court to address "the difficulties likely to be encountered in the management of a class action." *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 185 (3d Cir. 2001); *see* Fed. R. Civ. P. 23(b)(3)(D) ("The matters pertinent to these findings include … the likely difficulties in managing a class action."). It is not enough that a class action be one of many available methods for resolving the case. It "must represent the best 'available method[] for the fair and efficient adjudication of the controversy.'" *Id.* As explained below and in ECFMG's prior briefing, issue class certification in this case would not be efficient, manageable, or fair.

**1.      Certifying the duty and breach elements of Plaintiffs' claims is not the best available method for efficient adjudication of the controversy.**

An issue class is not an efficient method for adjudicating the controversy. As discussed, the Third Circuit recognized that an issue class proceeding would not eliminate the need for hundreds of individualized proceedings that would deal with a variety of complicated issues, including "whether each Plaintiff was injured; whether [ECFMG]'s breach of the relevant duty (if it had a duty that was breached) actually and proximately caused those injuries; whether those injuries are due a particular amount of damages; and whether [ECFMG] could raise any affirmative defense, including, presumably, whether each Plaintiff's consent to medical treatment by Igberase breaks the causal chain." *Russell*, 15 F.4th at 265.

13

Moreover, the same evidence would be presented in both an issue class proceeding and individual proceedings. "[T]he issue-class jury, like each individual jury, may need to consider evidence regarding the harm [ECFMG] allegedly caused. And each individual jury, like the issue-class jury, may need to consider evidence regarding [ECFMG]'s overall conduct, which likely will include the nature of the legal duty it owed Plaintiffs (if any) and the extent to which it breached that duty." *Id.* at 272. The overlap in issues to be decided by an issue class jury and an individual jury gives rise to Seventh Amendment problems, *see supra*, that could be avoided entirely through the use of individual proceedings. Individual proceedings offer a far more efficient approach.

### 2.   Certifying the duty and breach elements of Plaintiffs' claims would present insurmountable manageability problems.

Plaintiffs contend that Rule 23(b)(3)'s superiority requirement is satisfied because an issue class trial would result in "a quasi-declaratory ruling on a subset of common issues," 15 F.4th at 275, and that any such ruling can be applied to the claims of each class member during subsequent individualized proceedings, thereby obviating the need to retry those issues to subsequent juries. *See* ECF 32-1 at 21–22. But Plaintiffs have not shown how a general determination that ECFMG breached some duty to Plaintiffs at some point over the lengthy proposed class period, without more, would actually resolve the questions of duty and breach for each absent class member. *See supra*. Answering "whether [ECFMG] owed a relevant legal duty **to the Plaintiffs** that it subsequently breached" would not actually answer whether ECFMG owed a relevant legal duty **to each class member** that it subsequently breached. *Russell*, 15 F.4th at 273. In reality, what matters is whether ECFMG breached a duty owed to a specific class member such that the breach may be the legal and proximate cause of that class member's alleged emotional distress. It is clearly superior to have individual juries decide individually whether ECFMG's conduct breached a duty to each class member such that ECFMG may be liable to that class member.

14

This is not a case where a single course of conduct gives rise to a single inquiry regarding duty and breach as to all class members. In cases like that, all class members may be similarly situated with respect to not only to breach and duty but also to causation. *See, e.g.*, *Sala v. Nat'l R.R. Passenger Corp.*, 120 F.R.D. 494, 500 (E.D. Pa. 1988) (certifying a class of injured victims of a particular train crash). The legal theories at issue would assert violations of law occurring at materially indistinguishable times. Here, by contrast, Plaintiffs have not shown that each Plaintiff and class member asserts claims under legal theories for which duty and breach could be determined on a class-wide basis. *See* Fed. R. Civ. P. 23(b)(3), advisory committee's notes ("A 'mass accident' resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses of liability, would be present, affecting the individuals in different ways."). As a result, common issues do not predominate, *see supra*, and issue certification is not a superior method for resolving the controversy.

Plaintiffs have suggested that the Court can solve for superiority (and predominance) by dividing the issue class into subclasses based on when or where each class member was treated or the possible relationships from which a duty might arise. That would be unworkable. It would leave certain subclasses, like the subclass of individuals treated at Howard, without a class representative, because none of the Plaintiffs were treated at Howard. The Court could not certify a subclass without a subclass representative. *See* Fed. R. Civ. P. 23(c)(5) (requiring that Rule 23(a)'s requirements—including the requirement of an adequate class representative—be satisfied as to any subclass). Moreover, each class member is differently situated based on the time and context in which she was treated by Dr. Akoda. That makes it impossible to carve out meaningful or principled subclasses, leading to myriad tiny subclasses or unworkable overbroad ones.

Plaintiffs may propose to present the issue class jury with a series of special interrogatories so it can address each and every act or omission about which there is evidence to identify the precise moment when (if ever) ECFMG breached a duty. But with Plaintiffs arguing multiple sources of duties and multiple ways in which ECFMG supposedly breached those duties, individual questions would overwhelm even the most well-intentioned jury trying to apply the law to decades of conduct involving numerous parties. And even if a special verdict sheet might theoretically be possible, it is Plaintiffs' burden to articulate how that can be accomplished. This Court cannot find that an issue class trial involving facts this complicated and legal theories this hazy would be manageable unless Plaintiffs come forward with a workable and detailed trial plan. Despite numerous opportunities, they have not.

Further, choice-of-law issues render class treatment unmanageable. "[I]n a multi-state class action, variations in state law may swamp any common issues and defeat predominance." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 304 n.28 (3d Cir. 2011) (en banc) (internal quotation marks and citations omitted). Plaintiffs bear the burden of conducting an "extensive analysis" of state law variations. *In re Sch. Asbestos Litig.*, 789 F.2d at 1010. For the reasons described in ECFMG's motion for summary judgment, the choice-of-law analysis may result in the application of varying states' laws to various elements of Plaintiffs' claims, and Plaintiffs have not carried their burden on the manageability of determining which state's law applies or applying the law of multiple jurisdictions.

The manageability problems are underscored by the Third Circuit's confusion regarding which issues would be resolved by the Court and which by a jury. At some points in its opinion, the Third Circuit explained that an issue class jury may "find[] that [ECFMG] owed Plaintiffs a legal duty that it subsequently breached[.]" *Russell*, 15 F.4th at 272; *see also id.* ("[T]o determine whether [ECFMG] owed the Plaintiffs a relevant legal duty, **the class jury** will have to weigh

16

several factors[.]" (emphasis added)). At other points, the Third Circuit described duty as "an issue of law" and that this Court may "find[] that [ECFMG] owed a relevant legal duty to the Plaintiffs that it subsequently breached[.]" *Id.* The absence of a trial plan regarding which issues would be decided how—and by whom—means that Plaintiffs have not carried their burden to prove that the issue class they propose is manageable.

### 3. Certifying the duty and breach elements of Plaintiffs' claims would present insurmountable fairness problems.

An issue class on the elements of duty and breach is not superior because it would be unfair to ECFMG and to class members.

Emotional distress liability and damages issues are "too interwoven to allow a fair determination of damages apart from liability" because "emotional distress damages must be evaluated in light of all the circumstances surrounding the alleged misconduct." *See Spence*, 806 F.2d at 1202; *see* ECF 39 at 18–20. The Third Circuit reaffirmed this principle on appeal. *Russell*, 15 F.4th at 272 ("[T]o determine and measure emotional damages, each individual jury will have to assess the degree of [ECFMG's] negligence as to each Plaintiff." (citing *Spence*, 806 F.2d at 1202)). Individual proceedings would not implicate this fairness problem.

Issue certification is unfair to ECFMG also because it creates substantial undue settlement pressure. "When enormous consequences turn on the correct resolution of a complex factual question, the risk of error in having it decided once and for all by one trier of fact rather than letting a consensus emerge from several trials may be undue." *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 912 (7th Cir. 2003). This case presents complex factual questions. *See Russell*, 15 F.4th at 272 ("Many other actors played a role in Igberase's fraud[.]"). And the risk of error in having the questions of duty and breach decided by a single trier of fact presents incredibly high stakes. IMGs represent 25% of all licensed doctors in the United States. American Medical Association, *How*

*IMGs have changed the face of American medicine* (Oct. 19, 2021), https://www.ama-assn.org/education/international-medical-education/how-imgs-have-changed-face-american-medicine. ECFMG is confident that it owes no duty to members of the general public who may one day be treated by an IMG, but when "[f]aced with even the small threat of a devastating loss," any defendant may be pressured to settle questionable claims rather than litigate them. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011). A better approach would be to have the issues resolved individually—reflecting each permutation of possible factual scenarios—so that a consensus might emerge, without ECFMG facing "undue pressure to settle, even if [its] breach did not cause Plaintiffs' harm." *Russell*, 15 F.4th at 272.

An issue class trial as to whether ECFMG breached a duty to Plaintiffs would also risk prejudicing ECFMG by allowing irrelevant evidence to be submitted to the jury. Under Plaintiffs' theory, what matters is what ECFMG did before a class member was treated by Dr. Akoda. In an individual proceeding, a class member who was treated by Dr. Akoda in 2007 would not present evidence about what ECFMG did or did not do in 2008 or later. But in the proposed issue class trial, Plaintiffs would presumably present evidence irrelevant to that class member about what ECFMG did or did not do at least through 2016. That problem would not arise in an individual proceeding.

Issue class certification would be unfair also to class members because it would undermine each class member's significant interest in controlling her own litigation. *See* Fed. R. Civ. P. 23(b)(3)(A). Personal injury claims—especially ones seeking relief for alleged emotional distress—give each class member a sufficient stake in pursuing their claims, and it would be unfair to have them tried on a class-wide basis. *See* ECF 39 at 18–20.

Finally, individual proceedings are superior to issue class proceedings because they would avoid the possibility of class notice inflicting injuries on class members. If Plaintiffs were correct

that emotional distress is a class member's typical reaction to learning of Dr. Akoda's guilty plea, then certification of the class could cause class members who are presently unaware of Dr. Akoda's guilty plea to suffer emotional distress that they have not yet suffered. By sending notice of the class action (and guilty plea) to class members, under Plaintiffs' own theory, Plaintiffs could cause them to suffer emotional distress that they would not suffer but for Plaintiffs' use of the class action device. Even the mere possibility that the class action vehicle could injure class members weighs against a finding of superiority. The concern would be avoided if the case proceeded as individual proceedings brought by any class members who believe they have suffered emotional distress attributable to an alleged breach of duty by ECFMG.

## CONCLUSION

The Third Circuit's decision articulates an array of reasons why an issue class should not be certified. Even if an issue class is certified and Plaintiffs prevail on a class-wide basis, there remains the need for hundreds of individualized hearings on complicated issues. Those individualized hearings would also require the same evidence that would be presented to the issue class jury, further undermining any purported claims of efficiency and actually giving rise to serious Seventh Amendment concerns. Even if Plaintiffs prevail in an issue class proceeding, Plaintiffs do not intend to try hundreds of individualized proceedings; they envision bellwether trials on the non-certified issues. They offer no explanation for why similar bellwether trials could not be held on the questions of duty and breach for purposes of resolving this case without resort to a complicated—and unprecedented—use of the class action device.

These considerations preclude class certification under Rule 23(c)(4) and Rule 23(b)(3). For the reasons set forth above and in ECFMG's prior briefing, the Court should deny class certification.

Dated: December 10, 2021

*/s/ Brian W. Shaffer*
Brian W. Shaffer, PA Bar No. 78851
Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA  19103-2921
Telephone:      +1.215.963.5000
Facsimile:      +1.215.963.5001
brian.shaffer@morganlewis.com
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for the Educational Commission for Foreign Medical Graduates*

## **CERTIFICATE OF SERVICE**

I do hereby certify that on this date, I caused true and correct copies of the foregoing document to be served via electronic filing upon all counsel of record via the ECF system and/or e-mail.


DATED:  December 10, 2021                    */s/ Brian W. Shaffer*
                                             Brian W. Shaffer