# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MONIQUE RUSSELL, JASMINE RIGGINS, ELSA M. POWELL, and DESIRE EVANS,

        Plaintiffs,

    v.

EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES,

        Defendant.

Civil Action No. 2:18-cv-5629

Honorable Joshua D. Wolson

**DEFENDANT EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO EXCLUDE THE OPINIONS AND ANTICIPATED TESTIMONY OF PLAINTIFFS' EXPERTS DR. DAVID MARKENSON, DR. JOHN CHARLES HYDE, AND DR. JERRY WILLIAMSON**

Dated: December 10, 2021

Brian W. Shaffer, PA Bar No. 78851
Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone:      +1.215.963.5000
Facsimile:      +1.215.963.5001
brian.shaffer@morganlewis.com
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for the Educational Commission for Foreign Medical Graduates*

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................... 1

II.    BACKGROUND ................................................................................................... 2

       A.    Factual History Regarding the Limited Role of ECFMG Certification. ............... 2

       B.    Plaintiffs' Credentialing Experts. ......................................................................... 3

       C.    ECFMG's Rebuttal Experts. .................................................................................. 5

III.   LEGAL STANDARD ........................................................................................... 6

IV.    ARGUMENT ......................................................................................................... 8

       A.    Plaintiffs' Experts Are Not Qualified to Offer Opinions on ECFMG. ................. 8

       B.    Drs. Markenson, Hyde, and Williamson Offer Impermissible Legal
             Conclusions in the Form of Expert Opinions. .................................................... 11

       C.    Drs. Markenson's, Hyde's, and Williamson's Methodologies Are Flawed
             Because Each Relied on an Incomplete Record. ................................................. 13

       D.    Drs. Markenson's, Hyde's, and Williamson's Opinions Are Impermissibly
             Speculative. ......................................................................................................... 18

       E.    Rules 403 & 703 Also Support Excluding the Opinions of Drs.
             Markenson, Dr. Hyde, and Dr. Williamson. ....................................................... 20

V.     CONCLUSION ..................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berckeley Inv. Grp. Ltd. v. Colkitt¸*
    455 F.3d 195 (3d Cir. 2006)................................................................................8, 11

*Calhoun v. Yamaha Motor Corp. U.S.A.,*
    350 F.3d 316 (3d Cir. 2003)..............................................................................10, 11

*Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank,*
    383 F.3d 110 (3d Cir. 2004)......................................................................................20

*Commerce Bank/Penn. v. First Union Nat'l Bank,*
    911 A.2d 133 (Pa. Super. 2006).................................................................................12

*Daubert v. Merrell Dow Pharm., Inc.,*
    509 U.S. 579 (1993)......................................................................................1, 7, 18

*Dorshimer v. Zonar Sys.,*
    No. 3:13-0553, 2016 WL 4179480 (M.D. Pa. Aug. 8, 2016)...............................11

*Elswick v. Nichols,*
    144 F. Supp. 2d 758 (E.D. Ky. 2001) ....................................................................10

*Schneider ex rel. Est. of Schneider v. Fried,*
    320 F.3d 396 (3d Cir. 2003).......................................................................................7

*Flickinger v. Toys R Us-Delaware, Inc.,*
    492 F. App'x 217 (3d Cir. 2012) ..................................................................11, 13

*General Electric Co. v. Joiner,*
    522 U.S. 136 (1997)..................................................................................................18

*Goodman v. Burlington Coat Factory,*
    No. 11-4395, 2019 WL 4567366 (D.N.J. Sept. 20, 2019).....................................18

*Hartle v. FirstEnergy Generation Corp.,*
    2014 WL 1317702 (W.D. Pa. Mar. 31, 2014) .......................................................13

*Heller v. Shaw Indus., Inc.,*
    167 F.3d 146 (3d Cir. 1999).....................................................................................13

*Kumho Tire Co. v. Carmichael,*
    526 U.S. 137 (1999)....................................................................................................7

*Lux v. Gerald E. Ort Trucking, Inc.*,
　　887 A.2d 1281 (Pa. Super. 2005) ......................................................................14

*Oddi v. Ford Motor Co.*,
　　234 F.3d 136 (3d Cir. 2000) ..........................................................7, 8, 11, 18

*In re Paoli R.R. Yard PCB Litig.*,
　　35 F.3d 717 (3d Cir. 1994) ............................................................................7, 8

*Reilly v. Tiergarten Inc.*,
　　633 A.2d 208 (Pa. Super. 1993) .............................................................12, 13, 14

*Svindland v. A.I. Dupont Hosp. for Children*,
　　No. 05-0417, 2006 WL 3209953 (E.D. Pa. 2006) ............................................10

*Therasense, Inc. v. Becton Dickinson Co.*,
　　No. C 04-02123 WHA, 2008 WL 2323856 (N.D. Cal. May 22, 2008) ................20

**Other Authorities**

Fed. R. Evid. 403 ..............................................................................................8, 20

Fed. R. Evid. 702 .......................................................................................1, 6, 7, 8

Fed. R. Evid. 703 .......................................................................................... *passim*

## I.   INTRODUCTION

Plaintiffs Monique Russell, Jasmine Riggins, Elsa Powell, and Desire Evans ("Plaintiffs") have brought negligence-based claims against Defendant Educational Commission for Foreign Medical Graduates ("ECFMG") in this proposed class action, alleging that class members treated by Dr. Akoda experienced emotional distress when they found out that Dr. Akoda—to whom ECFMG had issued an ECFMG Certificate—used a different name and/or pleaded guilty to Social Security fraud. In an attempt to generate evidence to support their legally and factually deficient claims, Plaintiffs have offered three experts on medical credentialing: Drs. David Markenson, John Charles Hyde, and Jerry Williamson.

There are three fundamental reasons why the Court should employ its gatekeeping function under Federal Rules of Evidence 702 and 703 and the standard from *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and exclude the opinions and conclusions of Drs. Markenson, Hyde, and Williamson, from the individual cases of Plaintiffs and any class proceedings (which, as the Court is aware, ECFMG believes would be improper). First, all three witnesses lack adequate and particularized knowledge about ECFMG, its processes, and ECFMG Certification's limited role in the medical community. Second, through their opinions, each of these witnesses advances impermissible legal conclusions. Third, even if they had the qualifications to opine on these issues (which they do not), the methodologies they use to reach their conclusions are unreliable because they rely on (1) an incomplete record on the causal chain that fails to address relevant information about other entities who paved the way for Dr. Akoda to treat patients; and (2) improper speculations and assumptions that result in an unreliable analysis.

## II.   BACKGROUND

### A.   <u>Factual History Regarding the Limited Role of ECFMG Certification</u>.

ECFMG knows the Court is familiar with the background and status of this matter. While the factual and procedural history detailed in Section II.A of ECFMG's Motion to Exclude Dr. Annie Steinberg remains the same, some background on the function of ECFMG Certification in the medical field is necessary.

ECFMG Certification plays a specific and limited role in an IMG's path to practicing medicine in the United States. ECFMG issues ECFMG Certificates to IMGs who have met specific minimum requirements to be deemed ready to apply for graduate medical education (usually a residency program) in the United States. Statement of Undisputed Material Facts ("SUMF") ¶ 2. During the relevant time period, those minimum requirements were: (1) passing an English exam and two substantive exams; and (2) having their medical school diploma successfully primary-source verified as authentic by the issuing medical school. SUMF ¶ 3. That is it. At the relevant time, ECFMG Certification status reports contained the IMG's name, USMLE number, medical school name and country, graduation year, certification status, validity of ECFMG Certification, and date of issuance of ECFMG Certification. SUMF ¶ 7. These reports did not (and did not purport to) verify an IMG's identity, Social Security number, immigration status, passport information, criminal background, readiness to treat patients, ethics, honesty, morality, or character. SUMF ¶ 8.

ECFMG Certification status information is made available only to certain third parties in the medical field, like residency programs, hospitals, licensing boards, and employers. SUMF ¶ 5. Recipients of ECFMG Certification status reports use them for a limited purpose as part of their own processes; the information provided by ECFMG is by no means the only information used by

hospitals, programs, and employers when evaluating IMGs. Ex. 1, Beck Rebuttal Rep. at 3–7; Ex. 2, Smith Rebuttal Rep. at 2–5; SUMF ¶¶ 10–19. ECFMG Certification status information is not available to members of the general public (including patients of doctors who have received ECFMG certification). SUMF ¶ 6.

### B.   Plaintiffs' Credentialing Experts.

*Dr. Markenson.* Dr. Markenson is a pediatrician specializing in emergency and critical care. Ex. 3, Deposition of Dr. Markenson ("Markenson Tr.") 17:7–13, 18:8–13. Plaintiffs engaged Dr. Markenson to provide an opinion on "this matter," and Dr. Markenson believed he was engaged to opine on "ECFMG's certification of a physician as it related to its use, you know within hospitals of privileging, credentialing, residency application." Ex. 4, Dr. Markenson Report ("Markenson Rep.") 1, 3–4; Markenson Tr. 110:24-6. In his report, Dr. Markenson summarizes Plaintiffs' allegations and then purports to offer opinions on what duties ECFMG allegedly breached during its certification and investigation of Dr. Akoda, without explaining any basis for identifying these duties or breaches. Markenson Rep. 4–5. Dr. Markenson critiques ECFMG's: review of Dr. Akoda's application; investigation into unsubstantiated allegations about Dr. Akoda; and alleged delay in involving the Medical Education Credentials Committee. *Id.* Based on these critiques, Dr. Markenson concluded that ECFMG "failed to adopt appropriate policies for certification of IMG's, failed to exercise reasonable care in its certification of Akoda and failed to exercise reasonable care in its investigation of allegations made about Akoda and that these failures caused harm to the named plaintiffs and members of the class." Markenson Rep. 2.

*Dr. Hyde.* Dr. Hyde is a retired professor of health services administration and clinical outcomes research, although he maintains an adjunct position teaching healthcare management at George Washington University. Ex. 5, Dr. Hyde Report ("Hyde Rep.") 1. He has degrees in

healthcare administration and is a Certified Healthcare Executive through the American College of Healthcare Executives, but he is not a clinician and does not have any expertise in clinical medical care. *Id.;* Ex. 6, Deposition of Dr. Hyde ("Hyde Tr.") 55:3–13.

Dr. Hyde opined that ECFMG was required to follow administrative standards for credentialing IMGs in order to fulfill a duty to patients and "assure all foreign educated physicians are properly and thoroughly investigated and deemed eligible for ECFMG certification." Hyde Rep. 6. Dr. Hyde provided a list of ECFMG's alleged breaches, with no explanation on how these breaches relate to any duty or responsibility on the part of ECFMG. He concluded that such "breaches of duties, by ECFMG caused Akoda to . . . gain access to and directly cause harm [to] the plaintiffs and the members of the class," even though Dr. Hyde has never met with Dr. Akoda's patients or otherwise reviewed their medical records to make an assessment on their harm. *Id.* at 7; Hyde Tr. 57:1-57:21.

***Dr. Williamson.*** Dr. Williamson has a background as a physician and hospital administrator. Ex. 7, Dr. Williamson Report ("Williamson Rep.") 1. He is not currently credentialed or on staff at any medical facility, and he has not formally worked in hospital administration since 1993. Ex. 8, Deposition of Dr. Williamson ("Williamson Tr.") 22:13–23:1. Dr. Williamson has a master's degree in health jurisprudence from Loyola University Chicago School of Law, but he is not a lawyer. *Id.* at 19:14-25. All of his prior testimonial experience has centered on his clinical expertise, and he has never testified in a matter regarding the credentialing of a physician or a residency program's decision to hire or not hire a candidate. *Id.* at 7-8, 15:10–22. While he has been engaged in two matters involving negligent "credentialing", these were focused on the negligent decisions ***of a hospital*** in employing or providing a doctor with access to patients, not the decision of an entity like ECFMG. *Id.* at 10:10–12:1, 13:9–12. In his report, after

4

summarizing his understanding of ECFMG's role in the credentialing processes that led to Dr. Akoda treating patients, Dr. Williamson states that the key question he is resolving is "whether ECFMG's actions or failure to act resulted in foreseeable injuries to Class Members." Williamson Rep. 2–4. Dr. Williamson provides a list of ECFMG's alleged "breaches" tied to duties he claims belong to a "prudent credentialing organization" like ECFMG. *Id.* at 5–6. Citing "missed opportunities to address the many irregularities in the Igberase/Acoda [sic] applications," he concludes that "ECFMG had a duty to its aforementioned clients, including medical licensing authorities, residency programs, hospitals, and others. However, ECFMG's failure to act in a reasonable and prudent manner directly impacted patient safety." *Id.* at 6.

C.      **ECFMG's Rebuttal Experts.**

In light of the numerous flaws in Plaintiffs' credentialing expert's opinions, detailed below, ECFMG engaged two experts in the field.

***Dr. Mark Smith.*** Dr. Smith practiced medicine for 25 years as a general and vascular surgeon and has extensive healthcare consulting experience, including on issues such as credentialing and privileging. Ex. 2, Smith Rebuttal Rep. 1. He is now a clinical assistant professor working with residents and medical students. He has authored a book on credentials committees and served in a professional role dedicated to credentialing. *Id.* at 9, 12. In his report, Dr. Smith explained the processes an IMG must go through to treat patients, including but certainly not limited to ECFMG Certification. *Id.* at 2. He opines on the extensive evaluation and review processes an IMG faces as a resident, applicant to state medical board, and on staff at a hospital. *Id.* at 4. Based on his credentialing expertise, he concluded that "ECFMG is by no means the only or even the most significant information point regarding [a foreign medical graduate's] ability to

practice medicine in the US" and that residencies and hospitals gather a wide variety of information about an IMG from sources other than ECFMG. *Id.* at 5.

***Dr. Laurence Beck.*** Throughout Dr. Beck's 50-year medical career in internal medicine, he held numerous leadership positions that required his direct participation in the credentialing of IMGs, including Chairman of residency committees and programs and Chairman of multiple departments of medicines. Ex. 1, Beck Rebuttal Rep. 2. In his report, Dr. Beck explained the numerous steps IMGs must go through to practice medicine in the United States, including what criteria residency programs, state licensing boards, medical specialty boards, and hospitals consider (besides ECFMG Certification status) when evaluating IMGs. *Id.* at 1–7. He then analyzed the steps that Dr. Akoda took leading to his treatment of patients and concluded that while there were "numerous opportunities for [these entities] to suspect and investigate Dr. Akoda's behavior, . . . these opportunities appear to have been repeatedly hidden, or covered up, by Dr. Akoda, though his apparent lies, false documents, and evasiveness." *Id.* at 8. Finally, he explains that, at bottom, the way "Dr. Akoda was able to move "through the system, licensure and ability to practice medicine . . . was Dr. Akoda himself and his fraudulent and criminal activities." *Id.* at 9.

## III.   LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence allows for the testimony of expert witnesses only if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The Third Circuit has explained that Rule 702 imposes various requirements on proponents

of expert testimony centered around: "qualification, reliability and fit." *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The proponent of expert testimony has the burden of establishing that it meets these requirements by a preponderance of proof. *See Oddi v. Ford Motor Co.,* 234 F.3d 136, 144 (3d Cir. 2000).

In *Daubert v. Merrell Dow Pharmaceuticals*, the U.S. Supreme Court held that Rule 702 requires a court to examine any proffered expert testimony for reliability, methodology, and connection between the data and the expert's conclusion. 509 U.S. 579 (1993). More specifically, *Daubert* provided five factors to guide a district court in its assessment of these requirements: (1) whether the methodology can and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the known or potential rate of error of the methodology; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has been generally accepted in the proper scientific community. *See id.* at 593–94; *see also In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 n.8 (3d Cir. 1994) (recognizing the importance of these factors in determining the admissibility of an expert's opinions, along with other reliability considerations). Rule 703 of the Federal Rules of Evidence governs the admissibility of the facts or data that an expert bases its opinion on and applies the same reliability standard as *Daubert. See id.* at 748–49 n. 18. Rule 703 excludes "facts or data [that] would otherwise be inadmissible" unless the probative value to the jury substantially outweighs their prejudicial effect. Fed. R. Civ. P. 703.

District Courts must act as "gatekeepers" for all expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). This includes, determining whether an expert impermissibly opines on legal conclusions: "[A]n expert witness is prohibited from rendering a legal opinion. . . . Such testimony is prohibited because it would usurp the District Court's pivotal

role in explaining the law to the jury." *Berckeley Inv. Grp. Ltd. v. Colkitt¸* 455 F.3d 195, 217 (3d Cir. 2006).

## IV.    ARGUMENT

Drs. Markenson's, Hyde's, and Williamson's opinions should be excluded because: (1) the witnesses' lack of adequate and specialized knowledge about ECFMG make them unqualified to reach their conclusions; (2) the witnesses offer legal opinions, including on ultimate issues that are for the Court or factfinder, far beyond the scope of admissible expert testimony; and (3) their opinions are based on unreliable methodologies. *See Oddi*, 234 F.3d at 145 ("we concluded that Rule 702 has two major requirements; qualifications and reliability"). Federal Rules of Evidence 403 & 703 also support excluding their opinions because the probative value of presenting their opinions is substantially outweighed by the prejudicial effect their inappropriate legal conclusions will have on a jury.

### A.    <u>Plaintiffs' Experts Are Not Qualified to Offer Opinions on ECFMG.</u>

Rule 702 demands that an expert possess "scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Drs. Markenson, Hyde, and Williamson do not possess specialized knowledge that will help a factfinder evaluate whether ECFMG breached a duty to Plaintiffs and thereby caused them harm. Their lack of expertise in ECFMG's role in the credentialing of physicians detracts from the reliability of their opinions and makes them unqualified to reach conclusions about ECFMG's responsibilities and conduct. *See Paoli*, 35 F.3d at 741 ("the level of expertise may affect the reliability of the expert's opinion").

None has ever been an ECFMG applicant, employee, board member, or a Medical Education Credentials Committee member. None has known anyone on the Committee or been

involved with an investigation of irregular behavior. Markenson Tr. 77:8–14; 78:1–17, 112:3–5, 143:11–24 (conceding he is not an expert on how ECFMG verifies credentials, and is only "aware of the information they provide to those who use it and how they hold themselves out to people who use it"); Hyde Tr. 60:20–61:20, 131, 138 (confirming he has never been an ECFMG applicant, served on the Board of Trustees, or been a member of the Medical Education Credentials Committee, and his interactions with ECFMG have been "very few and far between"); Williamson Tr. 64:19–65:23. Unsurprisingly then, none has testified about ECFMG before. Markenson Tr. 16:4–22 18:21–24; Hyde Tr. 69:20–70:4 (confirming has never provided an expert opinion on ECFMG's policies or procedures); Williamson Tr. 7-8, 13:9-12, 15:10–22.

Drs. Markenson and Williamson both demonstrate a fundamental misunderstanding of ECFMG's role in the credentialing of physicians. Dr. Markenson did not understand ECFMG's document verification services and its relation to other institutions. Markenson Tr. 59:5–62:13 (erroneously guessing that ECFMG verifies all aspects of an applicant's identify, including social security number and photographic identification). Despite claiming in his report that his hospital administrative work made him knowledgeable about the ECFMG credentialing process, during his deposition, Dr. Williamson was unable to recite what information ECFMG communicated to hospitals about IMGs through an ECFMG certification status report. Williamson Rep. 1; Williamson Tr. 32:13–18. In addition, he could not testify as to whether the USMLE Step 3 Exam had any role in ECFMG's certification processes. Williamson Tr. 126:22–127:10. It does not.

While all three of the experts had some interaction with ECFMG over the course of their careers, that is not enough to offer the type of "Monday-morning quarterbacking" these experts seek to provide regarding ECFMG's internal policies and procedures. An expert needs more than passing familiarity with the subject matter to qualify as an expert: "While the background,

education, and training may provide an expert with general knowledge to testify about general matters, more specific knowledge is required to support more specific opinions." *Calhoun v. Yamaha Motor Corp. U.S.A.*, 350 F.3d 316, 322 (3d Cir. 2003). Even so, Drs. Hyde and Williamson claim to have last interacted with ECFMG more than a decade ago, and both struggled to recall the specifics of that interaction and what they actually learned about ECFMG's processes and certification during that time. *See, e.g.*, Hyde Tr. 61–62 (trying to recall an interaction with ECFMG back in the 1970s or 1980s). The experts' perusal of ECFMG's public website is not enough to gain the specialized knowledge that could form the basis for an expert opinion about ECFMG. Markenson Tr. 78:1–17, 143:11–24; Hyde Tr. 117–118.  Nor they suggest that they have some "specialized knowledge" that allowed them to draw conclusions from reviewing ECFMG's website that a lay juror would not.

Dr. Hyde, in particular, has a history of overreaching in expert opinions. He has been excluded as unqualified to opine on the "probability" of causation in a personal injury case, in which the court criticized Dr. Hyde's "broad conclusions" that were unsupported by data. *See Elswick v. Nichols*, 144 F. Supp. 2d 758, 764, 768 (E.D. Ky. 2001). He has also been excluded from a case in which he purported to opine that a doctor was unqualified, with the court criticizing his testimony for including "a conclusory statement without factual support." *Svindland v. A.I. Dupont Hosp. for Children*, No. 05-0417, 2006 WL 3209953, at *6 (E.D. Pa. 2006). His conclusions here are similarly unsupported. Although he cites ten years of experience as a healthcare administrator as his basis for an expertise in physician credentialing and privileging, he conceded he has not had direct experience with the field in 30 years: "[a]nd again, this has happened 30-something years ago. So I'm talking a little bit of what I remember with not that much specificity but just generalities." Hyde Rep. 1; Hyde Tr. 47:14–17. He also is not a clinician

and has not had any experience in clinical medical care, so he is unfamiliar with the subject and cannot assess plaintiffs' harms. Hyde Tr. 55:3–13. By his own admissions, Dr. Hyde lacks the specific expertise required to qualify as an expert, and his testimony should be excluded. *See Calhoun*, 350 F.3d at 322.

Drs. Markenson's, Hyde's, and Williamson's overall lack of knowledge of ECFMG, its certification processes, and its irregular behavior investigations mean they lack the qualifications to offer their opinions about ECFMG, and their reports and testimony should be excluded. *See Oddi*, 234 F.3d at 145.

**B.      Drs. Markenson, Hyde, and Williamson Offer Impermissible Legal Conclusions in the Form of Expert Opinions.**

As is evident from the summary presented in section II *supra*, Plaintiffs' credentialing experts' opinions that are legal opinions are improper and should be excluded. "[A]n expert witness is prohibited from rendering a legal opinion. . . . Such testimony is prohibited because it would usurp the District Court's pivotal role in explaining the law to the jury." *Berckeley Inv. Grp. Ltd.*¸ 455 F.3d at 217; *see also Flickinger v. Toys R Us-Delaware, Inc.*, 492 F. App'x 217, 224 (3d Cir. 2012) (affirming exclusion of portions of experts' report offering opinions on "substantial cause" and "negligence," as such terms are legal terms of art that cannot be the subject of expert testimony); *Dorshimer v. Zonar Systems*, No. 3:13-0553, 2016 WL 4179480 (M.D. Pa. Aug. 8, 2016) ("Additionally, experts can provide an opinion about the ultimate issue in a case, but may not give an opinion tied to any legal conclusion, such as whether a defendant was negligent") (internal citations omitted).

All three experts opined on ECFMG's breach of alleged duties and whether an alleged breach caused harm to Plaintiffs and putative class members. *See* Markenson Rep. 3 ("The standard of care applicable to ECFMG's certification process requires ECFMG to adopt reasonable

policies and procedures and to follow those procedures to ensure that IMG's [sic] comply with all requirements for certification . . . Its failure to exercise reasonable care in providing these services increases the risk of harm to the general public, including plaintiffs."); Hyde Rep. 6–7 ("With a high degree of professional certainty, it is my opinion that the above breaches of duties, by ECFMG caused Akoda to be certified by ECFMG, which allowed him to be accepted into a residency, secure a medical license in MD and gain access to and directly cause harm the plaintiffs and the members of the class."); Williamson Rep. 5–6 ("There were several opportunities for ECFMG to intercede, still they breached the standard of care in the following ways"). The deposition testimony of Drs. Markenson and Williamson confirmed that they will continue to offer legal conclusions that are not within the scope of their expertise. *See, e.g.*, Markenson Tr. 218:5–9 ("I don't hold them accountable to law enforcement; but anything that an individual was allowed to do based on their certification, they do have culpability in that case."), 220:17-221:4 (purporting to assign liability to ECFMG); Williamson Tr. 116-117 (admitting he is putting forth a legal opinion on duty), 118:10–11 ("I guess perhaps I can present a legal opinion without being a lawyer"), 119:17–120:12 (opining on the question of foreseeability).

Whether or not ECFMG owed a duty to Plaintiffs under particular circumstances is a legal determination ultimately left to the Court. That is especially important here because "[c]ourts have been reluctant to impose a duty to protect a member of the general public from the harmful acts of third parties, in the absence of special circumstances." *Commerce Bank/Penn. v. First Union Nat'l Bank*, 911 A.2d 133, 139 (Pa. Super. 2006); *see also* Motion for Summary Judgment at Argument, Part II.A. Similarly, to establish causation, plaintiffs must "demonstrate that the breach was both the proximate cause and the actual cause of his injury." *Reilly v. Tiergarten Inc.*, 633 A.2d 208, 210 (Pa. Super. 1993). Allowing paid experts to opine on the legal question of whether a duty is

owed (and to whom) at a particular time, in the context of a particular Plaintiff, is problematic whether presented in the context of the individual Plaintiffs' cases or, for the reasons stated in ECFMG's Supplemental Brief in Opposition to Class Certification, as part of any issue class proceedings. Proximate cause is a question of law to be determined by the court before the issue of actual cause is put to the jury. *Reilly*, 633 A.2d at 210 (citing *Novak v. Jeannette Dist. Mem. Hosp.*, 600 A.2d 616, 618 (Pa. 1991)); *see* Motion for Summary Judgment at Argument, Part IV.

Because experts are prohibited from providing legal opinions, especially on whether a defendant owed a legal duty, was negligent, or was the cause of an alleged harm, the opinions and testimony of Drs. Markenson, Hyde and Williamson should be excluded. *See*, *e.g.*, *Flickinger*, 492 F. App'x at 224.

### C.   <u>Drs. Markenson's, Hyde's, and Williamson's Methodologies Are Flawed Because Each Relied on an Incomplete Record.</u>

Each of Plaintiffs' three credentialing experts relied on a flawed methodology to reach his conclusions. "[E]xperts are not permitted to engage in a 'haphazard, intuitive inquiry,' but must explain the research and methodology they employed." *Hartle v. FirstEnergy Generation Corp*., 2014 WL 1317702, at *2 (W.D. Pa. Mar. 31, 2014). District courts may exclude expert testimony when the expert's conclusions "did not reliably flow from [the] data and methodology." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 159 (3d Cir. 1999).

Even if Drs. Markenson, Hyde, and Williamson were qualified to offer their opinions (they are not) and even if their opinions were not impermissible legal conclusions (they are), their opinions should still be excluded because the witnesses did not have an adequate basis on which to reach and support their opinions, and each of witnesses ignored avenues of analysis and information that are not only relevant, but necessary, for a sound consideration of the chain of events that they seek to offer expert testimony about.

As covered in greater detail in ECFMG's Motion for Summary Judgment, determining that Plaintiffs' injuries were proximately caused by ECFMG's conduct requires consideration of Plaintiffs' alleged injuries and how remote they were from the alleged negligence. *Reilly*, 633 A.2d 210 (internal citations omitted); *see* Motion for Summary Judgment at Argument Part III. None of these experts ever met Dr. Akoda's patients, performed examinations, reviewed medical records, or evaluated any harm that has allegedly come to them. Markenson Tr. 25:11–26:4, 31:9–16 (Dr. Markenson admits to having no knowledge of Dr. Akoda's medical procedures, examinations, or quality of care), 33:12–13 ("I did not read—as I've said, I have not reviewed their medical records."); Hyde Tr. 57:1–57:21; Williamson Tr. 115. As a result, they do not have sufficient information and factual ground on which to then offer expert opinions about plaintiffs' alleged emotion distress.

Similarly, despite offering opinions about proximate causation and whether they believe ECFMG's conduct caused Plaintiffs' alleged harm, each of Plaintiffs' credentialing experts chose to ignore and not evaluate highly relevant aspects of the chain of circumstances that led to Dr. Akoda's employment and his treatment of patients. In terms of evaluating the level of remoteness, courts review the causal chain between the conduct and the injury by looking at considerations including the number of factors that contributed to the harm, the effect of those factors on the harm, and the lapse of time. *See Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d 1281, 1287 (Pa. Super. 2005) (internal quotation and citation omitted); *see also* Motion for Summary Judgment Argument Part  III. Drs. Markenson, Hyde, and Williamson did not perform any type of review of the causal chain.

In fact, their conclusions on the question of whether ECFMG was the direct cause of Plaintiffs' injuries did not consider—and are directly contradicted by—an expert Plaintiffs

previously offered in a prior lawsuit against Dimensions Healthcare, the entity that provided Dr. Akoda with his privileges. That expert opined that "[Dimensions] breached the applicable standards of administrative care . . . [and] [a]s a direct and proximate result of [Dimensions'] continuing negligence, the Claimants, and others similarly situated, suffered physical pain, emotional anguish, and damages as well as permanent disability." SUMF ¶ 89.

In analyzing ECFMG's conduct, each of the experts drew conclusions from an incomplete record (as detailed expert-by-expert below).

***Dr. Markenson.*** Dr. Markenson's report is solely based on his review of a limited set of documents curated by Plaintiffs' counsel, which he did not completely list in his report or maintain a master list of. Markenson Rep. 1; Markenson Tr. 110:21–23, 114–18, 140, 141–43. In fact, there were many relevant and necessary documents that Dr. Markenson did not review, such as: ECFMG's policies and procedures, records from Dr. Akoda's residency programs, the American Board of Obstetrics and Gynecology certification records for Dr. Akoda, and information on Virginia's and Maryland's licensing and credentialing processes. Markenson Tr. 84:22–85:24, 124, 128, 129, 139, 165. Dr. Markenson also never met Dr. Akoda's patients, performed examinations on them, or reviewed their medical records, so he has never evaluated the extent to which these patients were harmed. *Id*. at 25:11–26:4.

While Dr. Markenson has professional experience in the residency application process, he chose not to draw from that experience when evaluating the causal chain and failed to consider the multiple steps involved in a prospective resident's application. *Id.* at 40:8–41:3 (detailing the multiple steps involved in a residency application process, despite failure to include such details in his report), *Id.* at 42:14–18. Dr. Markenson did not analyze or research the processes for verifying documents, reviewing credentialing files, and admitting applicants that a residency

program would normally undertake. *Id.* at 37:21–38:2 (admitting he did not analyze, nor did he have access to, the materials Dr. Akoda submitted to Howard); 160:16–161:2 ("I do not know their processes").

Similarly, Dr. Markenson acknowledged that medical licensing boards independently licensed Dr. Akoda, thus permitting him to treat patients. *Id.* at 35:4–19. Despite this significant step, he also did not review medical licensing authorities' procedures and could not determine whether the medical licensing authorities who issued Dr. Akoda his medical license had acted properly. *Id.* at 35:24–36:9; 106:6–8 (admitting he is not familiar with Dr. Akoda's application to the Maryland licensing authority); 168:1–8 (admitting he does not know what steps Maryland took to verify Dr. Akoda's permanent residence card and Nigeran passport).

Further, Dr. Markenson failed to consider what role the hospital system Dr. Akoda worked for played in enabling him to treat patients. *Id.* at 106:12–16 (admitting he "was not privy to [the hospital system's] credentialing files or processes"). Dr. Markenson's conclusion that "failures on the part of ECFMG to comply with the standard of care . . . ***are the direct cause*** of the harms caused to the plaintiffs and the members of the class" shows just how flawed and unreliable his causation analysis is. Markenson Rep. 5 (emphasis added).

***Dr. Hyde.*** Dr. Hyde's report is based on his review of a limited set of documents curated by Plaintiffs' counsel, in addition to a review of a portion of ECFMG's website. *See* Hyde Rep. 2; Hyde Tr. 117–18. He also reviewed a couple of documents related to other health organizations, whose significance is of little relevance or never explained. Hyde Rep. 2, 5; Hyde Tr. 108–09; 116–17.

Despite conceding that credentialing physicians involved more than ECFMG's verification, (Hyde Tr. 72:24–76:12), Dr. Hyde did not analyze or research what the credentialing

or licensing process may be for: (1) the residency programs Dr. Akoda was admitted into and evaluated by, (*id.* at 77:6–16); (2) the state of Maryland, which licensed Dr. Akoda, (*id.* at 162:3–165:25 (basing his knowledge of what Maryland does to credential applicants purely on the application, rather than investigating the state's verification process)); or (3) Prince George's Hospital Center, the hospital where Dr. Akoda had privileges, and had no insight into what those further requirements might be at Prince George's Hospital Center. *Id.* at 59:18–25.

**Dr. Williamson.** Dr. Williamson's report is based on his past administrative experience, as well as his review of a limited set of materials curated by Plaintiffs' counsel. Williamson Rep. 1–2. Notably, this included a timeline of events drafted by Plaintiffs' counsel, which he relied on in part for his statement of facts. Williamson Rep. 2; Williamson Tr. 60–61, 103. Dr. Williamson did not include in his analysis a review or investigation of the policies and procedures of Dr. Akoda's residency programs or Prince George's Hospital Center. Williamson Tr. 84–85. Furthermore, he did not analyze or research the Maryland Board of Physicians' credentialing and licensing process. *Id.* at 94:4-11.

Dr. Williamson ignored crucial steps in the chain of causation when evaluating ECFMG's responsibility. In his deposition, he contradicted his own expert report and admitted that there were many steps involved in hospital credentialing. *Compare* Williamson Rep. 6 ("ECFMG's failure to act in a reasonable and prudent manner directly impacted patient safety.") *with* Williamson Tr. 27:4–6 ("I would say [the credentialing processes at hospitals, health centers, or health maintenance organizations] is a very cumbersome and very thorough process that requires significant attention to detail."). At deposition, Dr. Williamson conceded that hospitals verify a physician before making a hiring decision, including independent verification of education, residency program, national practitioner data bank issues, background check, driver's license

verification, and drug testing. Williamson Tr. 27:17–28:11. Yet none of that appeared in his report, wherein he concluded that ECFMG was responsible for Dr. Akoda obtaining a medical license and being accepted into his residency program. *See* Williamson Rep. 6.

### D.   Drs. Markenson's, Hyde's, and Williamson's Opinions Are Impermissibly Speculative.

For many of the same reasons as the previous section, Plaintiffs' credentialing experts' opinions are littered with impermissible speculation. *Daubert* requires that an expert has a methodology that can and has been tested (first *Daubert* factor) and has standards controlling its operation (fourth *Daubert* factor). Speculation by an expert is grounds for exclusion of the expert's opinion. *See Goodman v. Burlington Coat Factory*, No. 11-4395, 2019 WL 4567366, at *9 (D.N.J. Sept. 20, 2019) (excluding conclusions of expert when "predicated upon impermissible speculation and assumption in part"); *see also General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."); *Oddi*, 234 F.3d at 146.

***Dr. Markenson***. Dr. Markenson opined in his report on what he guesses the Medical Education Credentials Committee would have done if ECFMG had referred the matter to it (Markenson Rep. 5), despite having no prior experience with the Committee. Markenson Tr. 74:10–19 (acknowledging lack of familiarity with ECFMG, credentials committee, and allegations of irregular behavior.), 77:8–14 (no familiarity with the work of the Medical Education Credentials Committee outside this matter), 82:19-83:17 (same). Further, he proffered an opinion on what written ECFMG policies **might** say without having consulted what they actually **do** say. *Id.* at 84:22–85:24 ("I, as a physician, rely upon ECFMG[,] would have presume[d] that they would have had adequate policies and procedures to follow, to process, verify, and adjudicate issues; but I

don't know these specific policies."), 124:10–13 (indicating he did not read policies and procedures from the applicable time period); 125:19–127.

Several errors in his testimony demonstrate the extent of his impermissible speculation. *Id.* at 225:7–226:9 (acknowledging that he confused the diplomas and referenced the wrong medical school), 227:21–235:22 (acknowledging that he does not know whether Dr. Akoda's application was considered complete by ECFMG's standards, even though he listed acceptance of an incomplete application as an alleged breach), 238:6–239:16 (erroneously claiming Dr. Akoda provided a green card to ECFMG when he did not).

**Dr. Hyde.** Dr. Hyde offered an opinion of how he believed ECFMG should have acted in light of allegations against Dr. Akoda, though that opinion was not based on any actual expertise or experience. Hyde Tr. 137:9–138:16 ("So I think there's a lot of contemporaneous information that I would have not allowed him to go any further, to be honest. He would have been permanently revoked, and I wouldn't give him a five-year revocation, then let this start over again because that in and of itself sets us where we are today."). None of this pontification by Dr. Hyde was anything beyond pure speculation since he had never been in a position to evaluate irregular behavior on behalf of ECFMG. *Id.* at 138:17–25. *See also* Hyde Rep. 7.

**Dr. Williamson.** Without developing any basis for opinions in this area or referencing a supporting methodology, Dr. Williamson nonetheless opined about how ECFMG's credentialing works and what duties ECFMG has. Williamson Tr. 64:19–65:23. Despite admitting that credentialing processes are not "one size fits all" at different health organizations, *id.* at 26:22, and because he lacks specific knowledge of ECFMG, Dr. Williamson wrongly assumes that ECFMG had verification responsibilities that it did not have, such as verifying the authenticity of letters of recommendation or Social Security numbers. *Id.* at 82:11–83:9; 112–113. Dr. Williamson

effectively conflates the responsibility of ECFMG with that of the Maryland Board of Physicians, because he does not have any familiarity with ECFMG or the Maryland Board of Physicians' evaluation and licensing processes. *See id.* at 96:23–99:11. He also expresses an opinion about whether the absence of a memo in Dr. Akoda's file was a breach of ECFMG's irregular behavior policies before admitting he does not have knowledge about ECFMG's file management system or even the term "irregular behavior." *Id.* at 108–109.

These experts' rank speculation should be excluded.

**E.**    **Rules 403 & 703 Also Support Excluding the Opinions of Drs. Markenson, Dr. Hyde, and Dr. Williamson.**

Drs. Markenson, Hyde, and Williamson rely on methodologies so unreliable that Federal Rules of Evidence 403 and 703 counsel excluding their expert opinions. Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . misleading the jury." Similarly, Rule 703 covers what bases an expert may rely on and excludes "facts or data [that] would otherwise be inadmissible" unless the probative value to the jury substantially outweighs their prejudicial effect. Lawyers may not use expert opinions to supply client statements normally blocked by the rule of hearsay. *Therasense, Inc. v. Becton Dickinson Co.*, No. C 04-02123 WHA, 2008 WL 2323856, at *1 (N.D. Cal. May 22, 2008). When experts "pass off client-prepared litigation-driven tests as fact . . . the jury can be easily misled into believing that the tests in question were tested and subjected to cross-examination" and "the probative value of such testimony is far outweighed by risk of misleading the jury." *Id.* at *2 (internal quotation marks omitted). "If an expert, a person with special knowledge and expertise, testifies as to the skewed results, a jury is likely to give special weight to the skewed conclusion." *Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank*, 383 F.3d 110, 120 (3d Cir. 2004).

Here, Drs. Markenson, Dr. Hyde, and Dr. Williamson all provided legal opinions on elements of negligence that were not only outside their expertise, but also the scope of permissible expert testimony. Their reports demonstrate that rather than providing the jury with facts to consider, they will be spouting the same flawed legal theories that Plaintiffs' counsel have put forward. Such testimony will mislead the jury and must be excluded.

## V.   CONCLUSION

The opinions of Drs. Markenson, Hyde, and Williamson do not meet the requirements of proper expert testimony and should be excluded in their entirety.

Dated: December 10, 2021

Respectfully submitted,

*/s/ Brian W. Shaffer*
Brian W. Shaffer, PA Bar No. 78851
Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone:          +1.215.963.5000
Facsimile:          +1.215.963.5001
brian.shaffer@morganlewis.com
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for the Educational Commission
for Foreign Medical Graduates*

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that on this date, I caused true and correct copies of the foregoing document to be served via electronic filing upon all counsel of record via the ECF system and/or e-mail.


DATED:  December 10, 2021                     */s/ Brian W. Shaffer*_____
                                                                      Brian W. Shaffer