# Exhibit 1

# Laurence H. Beck, MD, FACP

## 529 Broad Acres Road; Narberth PA 19072

October 14, 2019

Dear Elisa McEnroe:

In re: Russell et al v. ECFMG

I have been asked by Elisa McEnroe of Morgan, Lewis & Bockius LLP to review documents and other materials related to the above litigation, and to provide my expert opinion in such matters. In particular, I have been asked to provide expert opinion on the processes involved, after an International Medical Graduate (IMG) receives certification from the ECFMG, in applying for, and receiving, (1) acceptance into a residency training program; (2) hospital staff privileges; (3) state licensure to practice medicine independently; and (4) Board certification in a medical specialty.

I have separately submitted my curriculum vitae, including publications. I have had no publications in the previous 10 years.

I have not participated as an expert witness at trial or by deposition in the previous 4 years.

I have been contracted for this work at the rate of $500 per hour.

In preparing this report, I have reviewed the expert reports of Dr. John Charles Hyde, Dr. Jonathan Burroughs, Dr. David Markenson, and Dr. Jerry Williamson. In addition, I have reviewed current published material from the Virginia Board of Medicine and the Maryland Board of Physicians concerning the process and requirements for an IMG to apply for a state license to practice medicine. I have reviewed published criteria from the American Board of Obstetrics and Gynecology, as well as from the American Board of Medical Specialties. I have also reviewed correspondence and records concerning Dr. Akoda from Jersey Shore Medical Center (Jersey Shore Medical Center 000006-000010). I have also reviewed correspondence and records concerning Dr. Akoda from the American Board of Obstetrics and Gynecology (ABOG nonparty 000001-000082).

Most importantly, I have drawn on my expertise in the matters related to the above issues. This expertise includes 50 years of leadership and practice of medicine in Pennsylvania, the District of Columbia, and Florida. During that time, I have held numerous leadership positions requiring participation in, and knowledge of, credentialing of IMG's, including: (1) Chairman of the Residency Selection Committee at the University of Pennsylvania School of Medicine; (2)

Program Director of Internal Medicine Residency at the Hospital of the University of Pennsylvania; (3) Chairman of the Departments of Medicine [at the University of Pennsylvania, Philadelphia Veterans Administration Hospital, Geisinger Medical Center, Georgetown University Medical Center, and Cleveland Clinic Florida] and (4) Associate Chief of Staff of a Hospital [Georgetown University Hospital]. I am Board Certified by the American Board of Internal Medicine (ABIM).

For an IMG to practice medicine in any State in the United States, he/she must pass through numerous steps of application and acceptance.

1. He/she must apply to and be accepted into a residency accredited by the ACGME (Accreditation Council for Graduate Medical Education). In order to be considered as a candidate, the IMG must have, in addition to certification by the ECFMG, numerous other documents and undergo scrutiny in several areas, as iterated below.

2. To receive a license to practice medicine in the State of Maryland and/or the Commonwealth of Virginia, the IMG must (in addition to ECFMG certification) have graduated from an approved medical school, must be of "good moral character", must have completed at least 2 years of an

accredited residency, and satisfy numerous other criteria, as spelled out below.

3. To be accepted as Staff at a Hospital in either of those jurisdictions, the IMG must have an unrestricted state license to practice medicine, and must meet numerous other criteria, as iterated below.

4. To achieve Board certification in a medical specialty (which is a voluntary decision, and not required for state licensure), the candidate must pass a certifying examination and be evaluated in numerous other categories, as iterated below.

At each of these steps, the program or institution has a specific set of requirements, which include verification of credentials and usually a personal interview. For application to a residency program, it is the responsibility of the residency program administration to ensure verification of primary-source credentials.  Typical additional requirements include: an in-person interview, letters of reference (with contact information for each writer), a current photograph, an up-to-date CV [curriculum vitae], evidence of proficiency in spoken and written English, review of visa status (usually J-1 or green card), and review of any prior residency, with a letter of recommendation from its program director.  Following review of an application, the candidate and the residency

program must participate in the National Residency Matching Program (NRMP), wherein each party submits a rank order list of their preference (the list of residency programs for the applicant; the list of candidates for the residency program).

Although it is sufficient for the residency program to accept primary source credential verification via ECFMG certification (or their ERAS program) for the medical credentials, the residency program must pursue the other requirements via their own resources.  Based on my extensive knowledge and experience, the above requirements are typical of residency programs in the United States, and represent, in my opinion, a medical profession and industry standard.

An IMG's application to the Virginia and/or Maryland Board of Physicians for a license to practice requires ECFMG certification, as well as numerous other requirements. For either state, there is a personal interview, with verification of identity, reporting of all post-graduation residency or fellowship training, with letter(s) of recommendation from the program director(s), medical school transcripts (usually directly from the medical school), scores of FLEX or Step 3 of the USMLE, employment record from the date of medical school graduation, report of any disciplinary action, and competency in written and spoken English.

Each state also has a separate written licensure exam. The Maryland Board of Physicians states also "The Board requires primary source verification from medical schools, postgraduate training programs, national licensing entities (USMLE, FSMB, NBME, etc) and other state boards". Again, based on my extensive knowledge and experience, the above requirements are typical of state medical licensure boards in the United States, and represent, in my opinion, a medical profession and industry standard.

Similarly, Hospital staff privileges require a separate application process which, for the IMG, requires ECFMG certification, but also (usually) an interview, as well as a number of other areas of review, including one or more personal references with contact information for each, a current photograph, certificates of completion from all residencies and fellowships, letter of recommendation from program director(s), Social Security number, valid passport and/or birth certificate, malpractice insurance history, all licenses, including DEA certificate, a 2-year case log, fingerprinting for federal background check, and a urine drug screen. Furthermore, after achieving hospital staff privileges, all physicians are evaluated on an ongoing basis, usually by the Medical Director's office, on their clinical performance, demeanor, and interactions with patients and staff. Based on my extensive knowledge and experience, the above requirements are typical

of hospitals in the United States, and represent, in my opinion, a medical profession and industry standard.

Certification by an American Board of a medical specialty requires a process involving examination, review of credentials, and evidence of satisfactory performance in that specialty.  Typically, for the American Board of Obstetrics and Gynecology, that requires passing a written and oral examination, undergoing a personal interview, review of academic credentials, review of case logs over the previous years, letters of recommendation from residency and fellowship directors, and consideration of any disciplinary action, criminal, or immoral behavior that comes to their attention. Following successful Board certification, a candidate must comply with annual requirements for ongoing educational modules as part of the MOC (maintenance of certification) process.

 Dr. Akoda passed both the written and oral examinations of the ABOG, and his credentials were initially approved, so that he was given a one-year Board certification.  He successfully complied with the MOC requirements for the first year after his certification, but then failed to continue that activity.  As a result, the ABOG did not renew his certification.  Subsequently, upon learning of his

criminal behavior, it revoked entirely his Board certification. All these activities were instigated by the ABOG and were not dependent upon input from ECFMG.

CONCLUSIONS

In reviewing the chronology of Dr. Akoda's progression through the above steps leading to medical residency acceptance at Jersey Shore Medical Center and at Howard University, licensure in Virginia and Maryland, staff privileges at Prince George's Hospital Center, and certification by the American Board of Obstetrics and Gynecology, there were numerous opportunities for the above institutions to suspect and investigate Dr. Akoda's fraudulent behavior, except that these opportunities appear to have been repeatedly hidden, or covered up, by Dr. Akoda, through his apparent lies, false documents, and evasiveness. As an example, the residency program director at Howard University certainly should, and I believe, would have pursued the question of why Dr. Akoda had left his third year of residency at Jersey Shore Medical Center. He/she should, and I believe, would have called the program director at Jersey Shore Medical Center and learned that Dr. Akoda was dismissed from that program. It is likely that the Howard University program did not pursue this discrepancy because they were

unaware of this history (because Dr. Akoda apparently either lied or failed to report it, on his application or in a personal interview).

Although residency programs, hospital staff boards, and state medical boards may rely on the ECFMG certification for verification of certain medical credentials, they must use their own resources to ascertain the validity of the numerous other requirements of acceptance (letters of recommendation, visas, social security information, etc.).  There is no expectation of these institutions to receive additional information from the ECFMG after they have documented that the certificate is valid.

The primary or root cause of Dr. Akoda's movement through the system, licensure and ability to practice medicine at Prince George's Hospital Center was Dr. Akoda himself and his fraudulent and criminal activities.  These activities effectively hid the inaccuracies and lies from all concerned, from the ECFMG, through to the residencies, hospital staff, and state Boards of Medicine.  Any alleged harm to patients resulting from his repeatedly dishonest behavior are directly due to his dishonest behavior.

Sincerely yours,

*Laurence H. Beck, MD*

Laurence H. Beck, MD