# Exhibit 7

# Jerry Williamson, M.D., F.A.A.P., M.J., CHC., LHRM

## 24 Falconwood Court Fort Myers, Florida 33919

**Expert Report:** Jerry Williamson M.D. FAAP. MJ.CHC.LHRM

**September 22, 2019**

**Re: Monique Russell, Jasmine Riggins, Elsa Powell, Desire Evans v. Educational Commission for Foreign Medical Graduates**

The following report is supported by over 40 years of both formal education and experience as a physician and administrator. My formal education accomplishments include my degree as a Doctor of Medicine, my master's in healthcare jurisprudence, and certifications in healthcare compliance and risk management. I have practiced clinical medicine in my specialty, pediatrics, in which I am Board Certified.

I have held administrative positions as a Chief Medical Officer, Medical Director, and Vice President for Medical Affairs in both the ambulatory and inpatient settings. In these positions I served on and chaired credentialing committees. Based on my experience in these roles, I became knowledgeable concerning the primary source credentialing process of the ECFMG, as it applies to the standard of care. In 2005, as CMO and Director of the Biomedical Informatics Program, I directed the implementation of an EMR for an FQHC, assisting in the development of policies and procedures. During this period, I was Co-Medical Director of the Community Health Center Alliance Electronic Medical Record Clinical Committee. This committee assisted other organizations in their development and implementation of EMR's. I also served as a Meaningful Use Clinician Champion to The Center for the Advancement of Health Information Technology, a Regional Extension Center in Florida.

I have been a national speaker for the past 25 years, with a focus on patient safety, communication inadequacies in health care, and the prevention of medical errors. My roles have included Clinical Instructor in the Department of Pediatrics, University of South Florida College of Medicine, Clinical Assistant Professor in the Department of Pediatrics at NOVA Southeastern University, College of Osteopathic Medicine, Clinical Associate Professor of Physician Assistant Sciences, College of Allied Health, NOVA Southeastern University, Clinical Assistant Professor of Pediatrics, and Clinical Clerkship Training Coordinator at The Florida State University College of Medicine, and Clinical Assistant Professor at the Florida State University College of Medicine, Department of Clinical Sciences, Family Medicine Residency Program. In 2012, I was the Recipient of the *"Heroes in Healthcare Award"* for Administrative Excellence in Healthcare, from the Naples Daily News.

I had the opportunity to review the following documents that were provided to me from the law firm Janet, Janet & Suggs:

- Kara Corrado, 09/10/2019 Deposition Transcript with Exhibits 1-9
- William C. Kelly 08/20/2019 Deposition Transcript with Exhibits 1-53
- Class Action Civil Complaint and Exhibits
- Stephen S. Seeling 09/06/2019 Deposition
- Timeline of Events
- 1996 Information Booklet ECGMG
- Answer to Class Action Civil Complaint and Affirmative Defenses
- Defendant's Objections and Responses to Plaintiffs' Requests for Admissions of Facts and Genuineness of Documents
- Defendant's Objections and Responses to Plaintiffs' Second Requests for Admissions of Genuineness of Documents
- USMLE Letter (02-05-18); ECFMG Credentials Committee Document (11-30-16); U.S. DOJ Plea Agreement with Attachment A-Stipulated Facts; ECFMG Irregularity Report (09-1992) and Sanctions Update (11-30-16); ECFMG Press Release re: Launching Electronic Verification of Medical Credentials
- ECFMG emails

**Summary of Facts:**

1. Credentialing of healthcare practitioners is a screening process verifying that a physician is who he/she claims to be, and qualified to practice his or her profession. The process ensures that physicians have the education, knowledge, and competence to provide quality patient care. This is accomplished by obtaining the physician's essential information using primary source verification, to determine the accuracy of a qualification or documents reported by a physician. If the process fails for whatever reason, patient safety and quality is compromised, and patient harm may result. Primary source can be accomplished via direct correspondence, telephone and computer verification, and reports from credentials verification organizations. Credentialing organizations must be aware of any red flags, and immediately investigate them to avoid serious consequences.

2. The Educational Commission for Foreign Medical Graduates (ECFMG) is an organization that credentials international medical graduates for residency opportunities in the United States providing they have met all the requirements. This includes verifying

successful completion of medical school, and passing standardized examinations administered by the United States Medical Licensing Examination (USMLE), a Clinical skills  Assessment Examination, and an English Test to determine competency in English.

3. Utilizing primary source verification, ECFMG documents the authenticity of the applicant's diploma, the medical school transcript, and any letters of recommendation. Once this process is successfully completed, ECFMG will provide the applicant a certificate of completion. Once the applicant begins applying to residency programs , ECFMG acts as "the deans office" (See Deposition William Kelly) and provides the residency program with a status report.

4. In 1991, Olufafemi Charles Igberase came to the U.S. from Nigeria, and submitted an application to ECFMG for certification. Over the next several years he used false identities, false social security numbers, false birthdates, false diplomas, and a false passport to obtain ECFMG certification.

5. In 1996, a third application was submitted by Igberase to ECFMG under the alias of John Charles Akoda. His application was accepted, so in 1998 after receiving ECFMG Certification, he applied for a residency position at Jersey Shore Medical Center (JSMC) and was accepted under the name John Charles Akoda and began his residency in July 1998.

6. During an on-site meeting in September 2000 at ECFMG's office, Akoda admitted to William Kelly, Manager of the Medical Education Credential Department at ECFMG,  that he used Igberase's social security number. Approximately three months later, JSMC advised ECFMG that Akoda was dismissed from their residency program for using a false social security number and false green card.

7. In 2006 Igberase applied and secured a residency at Howard University Hospital under the Akoda alias, using a false social security number. He completed his residency at Howard Hospital in 2011, and he applied for a Maryland license using the name Charles John Nosa Akoda. The information provided to the Maryland Licensing Board included a fake social security number, and fake passport.

8. In 2011 he became a staff member at Prince George's Hospital Center and began patient care in November 2011 under this fraudulent identity. The following year he was denied enrollment in The Center for Medicare and Medicaid Services (CMS) due to submitting an inaccurate social security number. While using the Akoda name, he practiced obstetrics and gynecology from 2008 through 2016. This included a private practice setting as well as employment with Dimensions Healthcare Associates.

3

9. In June 2016, law enforcement conducted a search at Igberase's residence, medical office, and vehicle. They found a variety of fraudulent and altered documents. In November 2016, he signed a plea agreement admitting to misuse of a social security number.

10. The following month ECFMG revoked Akoda's certification. In March 2017, he was sentenced by the U.S. District Court for the District of Maryland. This resulted in the termination of his staff privileges at Prince George's Hospital, and the revocation of his Maryland license based upon his felony conviction.

11. The current class action lawsuit is based on allegations that Igberase performed inappropriate physical examinations of a sexual nature on women, creating boundary violations.

12. The key question that must be resolved is whether ECFMG's actions or failure to act resulted in foreseeable injuries or damages to Class Members.

**Analysis of Facts and Opinion:**

1. ECFMG in its Subject Notice #101 dated March 1, 2017-Irregular Behavior Cases and Associated Actions & Sanctions states the following:
*The educational Commission for Foreign Medical Graduates (ECFMG) of the United States works on behalf of domestic and International medical regulatory authorities to protect the public through its programs and services, including primary source verification of physician credentials. ECFMG considers all actions or attempted actions taken to subvert its processes, programs, or services to be* **Irregular behavior.**

2. The 1996 ECFMG Certification and Application Information Booklet addresses the issue of Irregular Behavior. It states that: *Irregular behavior includes all actions on the part of applicants and/ or examinees, or by others when solicited by an applicant and/or examinee, that subvert or attempt to subvert the examination process.* It describes specific examples of irregular behavior and includes *falsifying information on application or registration forms;* This booklet is provided to all the applicants seeking ECFMG and USLME certification.

3. Accrediting organizations such as the Joint Commission has stated the following:
*The Joint Commission, the organization that evaluates and accredits U.S. health care organizations and programs, has determined that direct verification with ECFMG of a physician's certification status satisfies The Joint Commission's requirement for primary-source verification of medical school completion for graduates of international medical schools. ECFMG's Certification Verification Service (CVS) provides this primary-source confirmation of an individual's ECFMG certification status to medical licensing*

4

*authorities, residency programs, hospitals, or other organizations that, in the judgment of ECFMG, have a legitimate interest in such information.*

4. There are several regulatory organizations including the Maryland Board of Physicians and numerous hospitals including Howard University Hospital and Prince George's Hospital Center that rely and trust the judgements of the ECFMG. Therefore, in this case, ECFMG owed a duty to the residency programs and the state licensing agencies to comprehensively review an application for certification. When ECFMG learned that Igberase was using a false social security number, and he admitted to doing so, it was imperative that they act as a prudent credentialing organization and comprehensively investigate this physician's background. .

5. ECFMG had a duty to determine whether the documents provided by Igberase and his aliases strongly suggested that Igberase and Akoda was one in the same individual. ECFMG breached that duty by failing to learn and appropriately act on that information.

6. There were several opportunities for ECFMG to intercede, still they breached the standard of care in the following ways:

    a. When Igberase had a face to face meeting at ECFMG in September 2000 and provided a false passport. ECFMG failed to authenticate the document.

    b. ECFMG failed to act when they learned that he misused his social security number.

    c. ECFMG neglected to compare the photographs in Igberase and Akoda's application. That would have confirmed they were the same person.

    d. ECFMG requested confirmation to authenticate three alleged letters of reference provided by Akoda, and the parties never returned a response. Nonetheless, ECFMG provided primary source verification to Howard University Hospital.

    e. ECFMG provided primary source verification to the Maryland Board of Physicians and Prince George's County Hospital without notifying them of their doubts surrounding Akoda's identity and credentials.

7. The December 22, 2000 Memorandum for the file From William Kelly to Stephen Seeling J.D. is difficult to comprehend . It was created as a memorandum for the file since William Kelly believed it should not be part of the official file. The memorandum was based on his discussion with James McCorkel M.D., Vice President for Academic Affairs, at the Jersey Shore Medical Center Residency Program. Dr. McCorkel believed Igberase and Akoda were one an the same person. Mr. Kelly confirmed he believed this as well

5

but stated in the Memorandum that he does not believe there is enough information for the Credentials Committee. He goes on to say *I sent Igberase an email and who should reply, but Akoda!*

8. As stated previously, ECFMG has many organizations that rely on their information and trust they are receiving accurate information when making decisions based on the information they receive from ECFMG. Not including critical information in the official file, places these organizations at a disadvantage. Another example of ECFMG's failure to act in a reasonable and prudent manner.

9. By not being more assertive in their investigation in this matter, and not escalating their concerns to their Credentialing Committee, ECFMG certified Acoda and assisted him in his acceptance to the Howard University residency program. Additionally, this permitted him to obtain a Maryland License to practice medicine and obtain privileges at Prince George's Hospital. Unfortunately, ECFMG's failure to act in a reasonable and prudent way permitted Acoda to practice medicine and increase the risk of harm to the plaintiffs in this class action lawsuit, and perhaps others.

10. It was not until December 2016 when ECFMG revoked Akoda's certificate (0-482-700-2) based upon his plea agreement with United States, citing the same conduct Igberase had admitted to in 2000. ECFMG's failure to properly investigate the matter, directly resulted in foreseeable injuries to Igberase/Akoda's patients.

11. ECFMG had a duty to its aforementioned clients, including medical licensing authorities, residency programs, hospitals, and others. However, ECFMG's failure to act in a reasonable and prudent manner directly impacted patient safety. Patients have a right to receive medical treatment from physician's who have obtained ECFMG certification legitimately, not through falsities and misrepresentations.

**Conclusion:**

There were several missed opportunities to address the many irregularities in the Igberase/Acoda applications. Unfortunately, these missed opportunities, permitted this unqualified individual with multiple fraudulent identities to practice medicine for years. ECFMG breached its duty to its aforementioned clients, including medical licensing authorities, residency programs, hospitals, and others. Additionally, ECFMG's failure to act in a reasonable and prudent manner directly impacted patient safety.

**Disclaimer:**

My conclusions are based on the information that I was able to review, that was provided to date, and I reserve the right to change my opinions based on any additional information that I receive.

Respectfully,

*[signature]*

Jerry Williamson M.D. FAAP, MJ, CHC, LHRM