# Exhibit 54

Patient Name: CLIFTON, DESIRE NICHOLE
Date of Birth:

MRN: 11087140
FIN: 307873133

\* Auth (Verified) \*

"MR#"%MEDRECMRN%"Enc#"%ENCNO%%DOCTYPENAME% 03-16-2016 09:11:05

## Consent to Treatment

**PHYSICIANS NOT AS EMPLOYEES:** I acknowledge that physicians furnishing services, including but not limited to attending physicians, radiologists, surgeons, emergency department physicians, obstetrician/gynecologists, pathologists, anesthesiologists, neonatologists, physicians interpreting diagnostic studies, consultants and assistants to the physicians ARE NOT employees or agents of the hospital. I understand that I will receive a separate bill from each of these private providers of service.   Patient/Patient Representative Initials: _____

I am seeking either inpatient or outpatient service from Dimensions Healthcare System (DHS). I understand services are available to me without discrimination as prohibited by federal and state law. I hereby consent to care and treatment, including but not limited to diagnostic medical therapeutic testing and treatment as may be deemed necessary or advisable by my physician, his/her associates, partners or designee, consulting physicians, DHS and its employees, based on his/her medical knowledge and my health condition. I understand I have a right to limit or refuse recommended treatments and/or procedures. I understand that no guarantees have been made to me about the outcome of this care. I understand that health related services may be provided by the employees, agents, and independent contractors utilized by DHS, including but not limited to anesthesiology and other interpretive and diagnostic services.

*Medical Education and Training:* I understand that DHS is approved to train medical students, residents, nurses and allied health students. I also understand students and residents may observe or participate in patient care. I agree to permit such involvement, unless I notify DHS to the contrary in writing with the understanding the students or resident's work will be under the supervision of a qualified instructor or physician on the medical staff of DHS.

*For Inpatient Only:* Room charges are incurred for the day of admission or any part thereof, but not the date of discharge. I acknowledge that check-out time is 11:00 a.m. Any balances known to be due for services not covered or partially covered by insurance will be payable at the time of discharge, including but not limited to applicable coinsurance or deductibles.

*Personal Property and Valuables:* I agree that DHS will not be responsible for patient valuables, clothes, personal items, money or other personal property. I also release DHS from any responsibility for loss or damage to any article not claimed from safekeeping by or for the patient at discharge or departure from DHS premises.

*Only Applicable for Medicare Beneficiaries:* Statement for Payment of Medicare Benefits to Hospital and/or Physicians — I certify that the information given by me for payment under title XVIII of the Social Security Act is correct. I authorize any holder of medical or other information about me to release to the Center for Medicare and Medicaid Services (CMS) or Medicare Intermediaries or Carriers any information needed for these services or a related claim. I request that payment of authorized benefits be made on my behalf.

*Insurance Billing and Assignment of Benefits:* I assign the benefits payable for hospital or physician services to DHS and or any physician which renders service to me and authorize them to submit the necessary claims to Medicare for payment. I certify the registration statements are true and I, as guarantor, agree to pay all amounts owed for care and treatment to the full extent permitted by law. DHS may submit claims to my third party payor or, if legally permissible, bill me directly for full or partial payment. I understand that DHS may, at its option, delay billing me directly and this does not alleviate my responsibility for payment. I agree to pay all amounts owned by me, or the Insured, Member or Subscriber, for treatment to the full extent permitted by law. I assign any benefits which I or the Insured, Member or Subscriber may have or be entitled to, to DHS towards payment of my hospital bills and physician bills. I understand that my insurance, HMO, or other healthcare benefits are subject to verification by DHS and that I will remain responsible for any unpaid amounts whether or not covered by this assignment to the full extent permitted by law. I understand and agree that I am responsible to pay for any charges for care/treatment/service when I access care/treatment/service outside of my insurance plan network.

*Notification of Credit Bureaus Reporting:* I understand that DHS may report any outstanding self-pay balances to Credit Bureaus.

**Release of Information**
I understand that my medical information is confidential and under certain circumstances is protected under federal and state laws and regulations and cannot be released without my written authorization unless otherwise provided for in said regulations. I also understand that I may revoke this consent at anytime except to the extent that action has been taken in reliance on it.

I understand that it may be necessary for DHS, its employees, agents, independent contractors and/or my physician to release and/or disclose all or part of my confidential medical information to third parties for the purposes of providing certain diagnostic treatment and/or testing which may not be available within DHS.

I understand that for the sake of convenience and speed of reference, and to further the timeliness and quality of diagnosis and treatment rendered to me, that any physician, nurse, or business office representative who has been involved with my treatment at a DHS facility may request that the hospital send by facsimile transmission to the physician of record, consulting physician or third party carrier any relevant data from my medical record necessary for continuity of care or reimbursement. It is further understood that with any facsimile transmission there is a possibility that medical records may inadvertently be misdirected. Not withstanding such risk, I hereby authorize release of any relevant data in my medical record by facsimile transmission to any physician who has participated in my diagnosis or treatment at the hospital or to any third party carrier for reimbursement and hereby release DHS from any liability associated with those risks.

I understand that DHS is the owner of any radiographic images and/or tissue/specimens obtained during the course of my care and treatment. The original radiographic films and/or all of the tissue/specimens will not be released. Copies of radiographic images will be provided, to me or my authorized agent upon written request for a reasonable fee. Tissue blocks will not be available for recut, but will be available for examination under supervision at our facility upon written request.

I understand that the Federal Safe Medical Devices act requires manufacturers of certain medical devices to track the distribution and use of said devices. I understand that DHS must facilitate the tracking of these devices by providing the information to the manufacturer with respect to the patient receiving such a device, which includes releasing my social security number to the manufacturer of the medical device I may receive, in accordance with the federal law and regulations. I understand that my social security number may be used by the manufacturer to help locate me if there is a need to contact me with regard to this medical device. I release DHS from any liability that might result from the release of this information.

| UNIVERSAL CONSENT (SIDE1) DIMENSIONS HEALTHCARE SYSTEMS |  MR:11087140 9<br>CLIFTON, DESIRE<br>307873133<br>03/17/16  MOORE, JAVAKA   36Y F   OBS |
|---|---|

PGHC CLIFTON, DESIRE NICHOLE Enc # 307873133 3/16/2016 Page 1 of 2

Patient Name: CLIFTON, DESIRE NICHOLE  
Date of Birth: ███████

MRN: 11087140  
FIN: 307873133

**\* Auth (Verified) \***

`"MR#"%MEDRECMRN%"Enc#"%ENCNO%%DOCTYPENAME% 03-16-2016 09:11:05`

### Authorization For The Release Of Medical Information To The Maryland Insurance Administration:

Under Maryland law, I have the right to contest a decision by an HMO or health insurer that a proposed or delivered health care service was not medically necessary. The law allows the Health Education and Advocacy Unit (HEAU) of the office of the Attorney General to assist me in filing an internal grievance with the HMO or health insurer and allows me to externally appeal the final decision to the Maryland Insurance Administration (MIA). I may appeal the initial decision directly to the MIA if I can demonstrate a compelling reason not to file an internal grievance with the HMO or health insurer. A health care provider may also file an internal grievance or external appeal on my behalf. By signing this form, I either wish to file an internal grievance or appeal, or I authorize a health care provider to file such a grievance or appeal.

I understand that, as part of the HEAU assisting me with my internal grievance, or MIA handling my external appeal, the HEAU or MIA will contact my HMO or health insurer for an explanation as to its actions in connection with my internal grievance or external appeal, or an internal grievance or external appeal filed on my behalf.

I further understand that MIA may receive advice from medical experts or an Independent Review Organization (IRO) while determining whether to uphold or overturn the HMO or health insurer's decision that a health care service was not medically necessary.

Throughout the grievance or appeal process, the confidentiality of my medical records will be maintained in accordance with Maryland and federal law. I understand that if I have questions about the contents of my medical records to be released, I should contact my health care provider.

I understand that my records may by used to develop general statistical information on grievances and appeals, and any statistical reports will not identify me or contain any identifying information. I do not authorize the release of any information that would identify me to anyone not mentioned above.

In the event I, or a provider on my behalf, file an internal grievance or an external appeal, I authorize the release of my medical records as follows:

1. I authorize the Attorney General and MIA to obtain medical records and insurance information for the purpose of investigating my grievance or appeal.
2. I authorize the Attorney General to release my medical records to MIA so that my appeal or grievance may be investigated, and authorize MIA to release my medical records to the Attorney General so that my appeal or grievance may be investigated.
3. I authorize MIA to release my medical records to the relevant HMO or health insurer, and/or the HMO's or health insurer's legal counsel for the purpose of investigating my grievance or appeal or handling any hearing which may result from such investigation.
4. I authorize MIA to transfer my medical records to the Department of Health and Mental Hygiene if my grievance or appeal involves potential issues of quality of care so that the Department may conduct an investigation into these particular issues.
5. I authorize MIA to release my medical records to medical experts who may assist MIA with my grievance or appeal.

To establish and maintain the safest possible environment in which to deliver care/service/treatment, Dimensions Healthcare System's campus buildings, property, parking lots and operated vehicles are smoke and tobacco-free. Dimensions Healthcare System is dedicated to maintaining a smoke and tobacco-free campus environment.

**Dimensions Healthcare Public Health Initiative:** If you smoke, please stop smoking.

*This form has been explained to me and I understand its contents. I acknowledge the following:*

- ☒ Receipt of a copy of DHS Notice of Privacy Practices
- ☒ My communication needs identified by completing the *Communication Assessment Form*
- ☐ Receipt of "An Important Message from Medicare" to Medicare beneficiaries
- ☒ Receipt of DHS brochure "What You Should Know As A Patient"

PLEASE NOTE: All patients 18 and over must sign this consent form themselves, unless they have a legal guardian, personal representative or are incapacitated. If so, the signer must submit written proof of guardianship or representation with this consent form.

| *[signature]* | 3/16/2016 9:08:34 AM | Signed by LEWIS, JANET on 16-Mar-2016 09:11:04 -0400 | 3/16/2016 9:08:34 AM |
|---|---|---|---|
| Signature of Patient | Date | Signature of Witness | Date |

*Complete the following section if consent is not obtained from the patient.*

Patient is unable to make an informed decision because patient is (Check appropriate box):
- ☐ Minor _____ years of age without decision-making capacity   ☐ Lacks decision-making capacity
- ☐ Other: _____

|  | 3/16/2016 9:08:34 AM |  |
|---|---|---|
| Patient Representative Signature | Date | Relationship to Patient |
|  | 3/16/2016 9:08:34 AM |  |
| Witness signature | Date | |

**UNIVERSAL CONSENT (SIDE 2)**  
DIMENSIONS HEALTHCARE SYSTEMS

MR:11087140  
CLIFTON, DESIRE  
███████  
03/17/16  MOORE, JAVAKA   36Y F   OBS

PGHC CLIFTON, DESIRE NICHOLE Enc # 307873133 3/16/2016 Page 2 of 2

* Auth (Verified) *

Patient: Desire Clifton     Date: 3.14.16     Time: 10.03

I hereby authorize Dr. or Midwife _____ to perform an induction of labor, and any other surgical or diagnostic procedures that may be required to complete delivery of the baby.

**Type of Induction** (Please Indicate):     ☐ Elective     ☐ Medically Indicated

**Please initial each paragraph. If you have questions, please ask the Doctor/midwife before initialing.**

**Possible Benefits and Risks of Labor Induction:** I have discussed the risks and benefits of this procedure and I accept the risks of the procedure as opposed to simply allowing labor to begin spontaneously at a later date.

**Patient Initials**

_DC_  I have reviewed the benefits of labor induction with my physician/midwife which may include:
- Choosing my delivery date
- Choosing provider who delivers my baby
- Preventing complications for me or my baby due to prolonging my pregnancy

_DC_  I have discussed the use of medication for cervical ripening with my provider and I understand the risks of:
- Excessive stimulation of the uterus to the point that may require an emergency delivery, either vaginally or abdominally.
- I also understand that rarely the uterus may rupture under these circumstances and cause death of my baby and severe bleeding and/or death to myself

_DC_  I understand that inducing labor increases my risk for complications when compared to mothers who begin labor "naturally." Significant risks for me and my baby include (although frequency not defined):

**Risks for Me**
❖ Nausea and vomiting
❖ Contractions may be increased in intensity and result in increased pain
❖ Contractions that occur too frequently, too hard and too long, can result in uterine rupture which will result in a C-section
❖ Ineffective contractions after lengthy use of Pitocin may result in a need for a C-section
❖ Excessive bleeding after delivery may require use of medication to contract the uterus and/or the need for blood transfusion
❖ Water intoxication may occur after 24 hours of Pitocin use
❖ Abnormal heart beats
❖ Severe allergic reaction

**Risks for my Baby**
❖ Treatment in the Neonatal Intensive Care Unit
❖ Lower Apgar score (rating of breathing, heart rate, muscle tone, reflexes and color)
❖ Seizures; brain damage and fetal death can result from decreased oxygen to the baby
❖ Cardiac arrhythmias including heart rate too high or too low
❖ Hemorrhage in the eyes; jaundice of the newborn

---

**INDUCTION OF LABOR (Page 1 of 3)**
DIMENSIONS HEALTHCARE SYSTEM

4-491 (09/13)         Induction of Labor

PATIENT LABEL
MR:11087140
CLIFTON ,DESIRE
307873133
DOB 03/16/1▮▮▮▮  79   36Y F    L/D
▮▮▮▮E, JAVAKA

* Auth (Verified) *

**Patient Initials**

_[initials]_ I have discussed that there is an increased risk that instruments may be used to accomplish a vaginal delivery if necessary

_[initials]_ I acknowledge that there may be an increased risk for the need of a blood transfusion which could expose me to hepatitis C HIV and other infectious diseases

_[initials]_ I have discussed the risks associated with various analgesic drugs and techniques that may be used to reduce the pain associated with labor and delivery, either vaginally or by cesarean section, and I understand and accept these risks

_[initials]_ I have discussed the possibility of failure of the induction attempt with my provider, and I am prepared to be released from the hospital to my home when failure to enter satisfactory labor has been established and it is safe for me and my baby to do so (not applicable for medically indicated induction).

_[initials]_ I also realize that if I have a cesarean birth it would increase the risks of cesarean sections for subsequent pregnancies based on the reason for the cesarean section and the type of incision or cut into the uterus. I will incur the usual risks associated with cesarean section that I might have avoided had I had this birth vaginally.

_[initials]_ I understand the nature and the purpose of these procedures and I affirm that the risks, benefits, possibility of complications, as well as expected results and medical alternatives, including the expected consequences of my refusing the recommended procedure(s), have been explained to me by my physician and that I have been given the opportunity to ask questions, and have my questions answered to my satisfaction.

_[initials]_ I can refuse this procedure without jeopardizing any current or future medical treatments.

I further acknowledge that no guarantees have been given to me regarding the results of this or other necessary procedures during my care.

My doctor/midwife has explained to me the risks, benefits, possibility for complications, as well as the expected results, medical alternatives, and the expected consequences of my refusing the recommended procedure(s) if induction is medically indicated. These have been explained to me by my provider and I have been given the opportunity to ask questions, and have my questions answered. I wish to go forward with the induction and accept the risks of the procedure as opposed to simply allowing labor to begin spontaneously at a later date.

I have read and fully understand this consent form. I understand I should not sign this form if all items, including my questions, have not been explained or answered to my satisfaction. I understand that I can withdraw this consent at any time before the beginning of the procedure. I understand that I can request that this form be read to me.

_[signature]_ Witness     Signed: _[signature]_ Patient

---

**REFUSAL OF INDUCTION**
The consequences of refusal of induction of labor have been explained by my physician/midwife and I have decided to refuse this procedure.

_____ Witness     Signed: _____ Patient

| **INDUCTION OF LABOR (Page 2 of 3)** | PATIENT LABEL |
| --- | --- |
| DIMENSIONS HEALTHCARE SYSTEM | MR: 11087140 CLIFTON, DESIRE |
| 4-491(09/13) | 307873133 DOB [redacted] 03/16/16  MOORE, JAVAKA   36Y F   L/D |

Patient Name: CLIFTON, DESIRE NICHOLE  
Date of Birth:  

MRN: 11087140  
FIN: 307873133  

* Auth (Verified) *

---

| Complete the following section if consent is not obtained from the patient. |
|---|

Patient is unable to make an informed decision because patient is *(Check appropriate box)*:

☐ Minor _____ years of age without decision-making capacity  
☐ Lacks decision-making capacity  
☐ Other: _____

_____          _____  
Patient Representative Signature                      Relationship to Patient

_____          _____  
Witness Signature (1)                                         Witness signature (2)

Consent obtained (Check one):  ☐ In person    ☐ By Telephone **[Requires two (2) witness signature]**  
**Two physician signatures are required in an emergency for consent:**

_____ M.D.       _____ M.D.

---

**PHYSICIAN/MIDWIFE DECLARATION:** Prior to the performance of the procedure described above, I have explained to the patient/surrogate decision-maker the nature, purpose, benefits, risks, alternative treatments, possible consequences and possible complications. I confirm the above surgery/procedure is correct as to procedure, side and site.

I checked and the patient is not currently under the influence of any narcotic or mind altering drugs that influences their decision.

Physician /Midwife Signature  _[signature]_     Date 3/14/16   Time: 10am

---

**INDUCTION OF LABOR (Page 3 of 3)**  
DIMENSIONS HEALTHCARE SYSTEM

4-491 (09/13))

MR:11087140  
CLIFTON, DESIRE  
307873133  
DOB 03/16/1_   JAVAKA   36Y F   L/D

Plaintiffs000000000018 a/k/a D. Evans PGHC 000011

* Auth (Verified) *

**DO NOT SIGN THIS FORM UNTIL A PHYSICIAN HAS EXPLAINED IT TO YOU, YOU HAVE READ IT AND FULLY UNDERSTAND ITS CONTENTS.**

Patient: _____  Date: _____  Time _____

The following has been explained to me in general terms and I hereby authorize the performance of a **VAGINAL DELIVERY WITH POSSIBLE CESAREAN SECTION (C-SECTION)** which is the delivery of the infant through the birth canal:

**PROCEDURE**  Vaginal Birth
**PURPOSE**  Delivery of your infant through the birth canal with the possible use of forceps or vacuum extraction. An episiotomy (an enlargement of the vagina by an incision in the space between the vagina and anus) may be performed as part of the delivery.
**BENEFIT:**  No abdominal incision scars, lower infection rate and decreased healing time

**RISKS** (*This is not an exhaustive list meaning that there can be other unlisted risks*):
- **Maternal:** Paralysis or partial paralysis, paraplegia or quadriplegia, brain damage, uterine inversion, uterine rupture, need for an emergency C-section, placenta previa, placenta abruption, anal sphincter injury, bowel injury, bladder injury or injury to other abdominal structures, possible fistula formation (opening between bowel, bladder, ureter, vagina and/or skin), perineal or genital tears and scars, possible formation of clots, possible emboli (clots or other material that may travel to other parts of the body), hysterectomy (removal of uterus) with possible removal of fallopian tubes and/or ovaries, persistent perineal pain, amniotic emboli, sexual dysfunction, anal incontinence, urinary urge incontinence, urinary stress incontinence, DIC (disseminated intravascular coagulation), pelvic floor prolapse, cardiac arrest, maternal death and fetal death.
- **Infant:** The infant can experience oxygen deficit from a prolapsed cord, brachial plexus injury, nuchal cord, scalp infection from fetal scalp monitoring, facial nerve injury, precipitous delivery, bleeding in the brain, cerebral palsy, meconium aspiration, newborn neurological symptoms and be stillborn.

**POTENTIAL PROCEDURES AND THEIR RISKS:** During labor, we may have to perform one or more of the following procedures or utilize one or more of the following in order to assist you with your delivery process:

- **Artificial Rupture of Membranes:** a rupture of the membranes by a third party to accelerate labor. **Risks:** Amniotic emboli, prolapsed cord, fetal decelerations/fetal distress
- **Amnioinfusion:** Instillation of fluid into the amniotic cavity through an intrauterine pressure catheter during labor after rupture of the fetal membranes. **Risks:** increased pressure in uterus, rupture of the uterus, and placenta abruption.
- **Episiotomy:** A surgical incision made to widen the vaginal opening during childbirth to facilitate delivery. **Risks:** extension into the anal sphincter and/or rectum, infection, increased pain, increased bleeding, prolonged healing time, and increased discomfort once sexual intercourse is resumed.
- **Forceps:** An instrument used to grasp and extract the fetal head to aid in the vaginal delivery of fetus. **Risk for mom:** vaginal trauma and tears. **Risk for baby:** Extra and intracranial hemorrhage, facial nerve palsy, and lower brain injury.
- **Leopold's maneuver:** A series of four steps used in palpating the abdomen to determine position and presentation of the fetus. **Risk:** Low risk for placenta abruption.
- **McRobert's maneuver:** typically done when the baby's shoulder is stuck in the birth canal. Mother is placed in a position that provides flexion of the maternal hips. This position is achieved by hyperflexion of the mother's legs toward her shoulders with or without suprapubic pressure. **Risk for mom:** discomfort **Risk for baby:** neonatal bone or nerve injury associated with shoulder dystocia
- **Woods screw maneuver:** this procedure involves the progressive rotation of the posterior shoulder in corkscrew fashion to release the opposite impacted *anterior* shoulder. **Risk for mom:** vaginal trauma and tears. **Risk for baby:** fracture of clavicle.
- **Zavanelli maneuver:** is an obstetric maneuver that involves pushing back the delivered fetal head into the birth canal in anticipation of an emergent caesarean section. **Risk for mom:** vaginal tearing, **Risk for baby:** neonatal bone or nerve injury and fetal death.
- **Manual Placenta Removal:** procedure where the placenta in separated from the uterine wall and removed from the vagina by the hand of the provider. **Risk:** postpartum hemorrhage, retain placental fragments, and pain

---

| VAGINAL DELIVERY WITH POSSIBLE CESAREAN SECTION (PAGE 1 OF 3) | PATIENT LABEL |
|---|---|
| DIMENSIONS HEALTHCARE SYSTEM | MR:11087140 CLIFTON, DESIRE |
| 4-495 (09/13) | 307873133 JAVAKA  L/D |

\* Auth (Verified) \*

**POTENTIAL PROCEDURES AND THEIR RISKS (Continued)**

- **Emergency C-Section:** a surgical procedure in which incisions are made through a woman's abdomen and uterus to deliver the fetus. **Risk for mom:** bleeding, pain, infection, death and extended hospital stay. **Risk for baby:** Incidental Surgical Injuries, respiratory distress, and death
- **Cardiotocography:** the monitoring of the fetal heart rate and uterine contractions during labor and delivery. **Risk for baby:** No risks are associated with external monitoring. Fetal scalp infection with internal monitoring.
- **Pelvimetry:** measurement of the capacity and diameter of the pelvis. **Risk:** discomfort and pain
- **Induction or augmentation of labor:** use of medication to initiate labor or increase the frequency of uterine contractions. **Risk for mom:** over stimulation of the uterus, uterine rupture, and placenta abruption. **Risk for baby:** inability to tolerate medication administration resulting in fetal bradycardia, fetal distress, and neurological damage.
- **Transfusion of blood/blood products:** is a procedure to replace blood loss. **Risk:** carries the risk of exposure to HIV, hepatitis and other infectious diseases and allergic reactions.

**ALTERNATIVE PROCEDURES, TREATMENTS AND THEIR RISKS:** The only alternative to a vaginal delivery is a cesarean section (C-Section). *(This is not an exhaustive list meaning that there can be other unlisted risks).*
- **Maternal:** Paralysis, urgent hysterectomy, thromboembolic events (blood clots), DIC (disseminated intravascular coagulation), anesthetic complications, major puerperal infection, amniotic fluid embolism, uterine artery pseudoaneurysm, wound infection, hematomas, wound disruption, bladder puncture, ureteral and bowel laceration, persistent pain at the incision site, cesarean scar endometriosis, cesarean scar ectopic pregnancy, placental accretia, dense intra-abdominal adhesions, increased hospital stays, lengthy physical recovery, increased risk of readmission, chronic pelvic pain, and future uterine ruptures, maternal death and cardiac arrest.
- **Infant:** Respiratory distress, pulmonary hypertension, excess risk of not breast feeding, surgical lacerations and fetal death.

THE INFORMATION GIVEN ABOVE IS NOT AN EXHAUSTIVE LIST MEANING THAT THERE CAN BE OTHER UNLISTED RISKS. WE CANNOT PREDICT WHETHER OR NOT ANY OF THE ABOVE MAY BE NEEDED OR MAY OCCUR.

I understand that the physician, medical personnel and other assistants will rely on statements about the patient, the patient's medical history, and other information in determining whether to perform the procedure or the course of treatment for the patient's condition and in recommending the above procedure.

I understand the practice of medicine is not an exact science and that NO GUARANTEES OR ASSURANCES HAVE BEEN MADE TO ME concerning the results of this procedure.

I understand that during the course of the procedure described above it may be necessary or appropriate to perform additional procedures which are unforeseen or not know to be needed at the time this consent is given. I consent to and authorize the persons described herein to make the decisions concerning such procedures. I also consent to and authorize the performance of such additional procedures as they deem necessary or appropriate.

I also consent to diagnostic studies, tests, anesthesia, x-ray examinations and other treatment or courses of treatment relating to the diagnosis or procedures described herein.

BY SIGNING THIS FORM, I ACKNOWLEDGE THAT I HAVE READ OR HAD THIS FORM READ AND/OR EXPLAINED TO ME, THAT I FULLY UNDERSTAND ITS CONTENTS, AND THAT I HAVE BEEN GIVEN AMPLE OPPORTUNITY TO ASK QUESTIONS AND THAT ANY QUESTIONS HAVE BEEN ANSWERED SATISFACTORILY. ALL BLANKS OR STATEMENTS REQUIRING COMPLETION WERE FILLED IN AND ALL STATEMENTS I DO NOT APPROVE OF WERE STRICKEN BEFORE I SIGNED THIS FORM.

| VAGINAL DELIVERY WITH POSSIBLE CESAREAN SECTION (PAGE 2 OF 3) | PATIENT LABEL |
|---|---|
| DIMENSIONS HEALTHCARE SYSTEM <br><br> 4-495 (09/13) | MR:11087140 <br> CLIFTON, DESIRE <br> 307873133 <br> DOB            36Y F <br> 03/16/16   MOORE, JAVAKA    L/D |

**\* Auth (Verified) \***

I voluntarily consent to allow Dr. _____ or any physician designated or selected by him or her and all medical personnel under the direct supervision and control of such physician and all other personnel who may otherwise be involved in performing such procedures to perform the procedures described or otherwise referred to herein. **Unless rescinded, this consent will remain in effect until delivery.**

_____  Signed: _____
Witness                                          Patient

---

*Complete the following section if consent is not obtained from the patient.*

Patient is unable to make an informed decision because patient is *(Check appropriate box)*:

☐ Minor _____ years of age without decision-making capacity
☐ Lacks decision-making capacity
☐ Other: _____

_____  _____
Patient Representative Signature   Relationship to Patient

_____  _____
Witness Signature (1)            Witness signature (2)

Consent obtained (Check one):   ☐ In person   ☐ By Telephone **[Requires two (2) witness signature]**
**Two physician signatures are required in an emergency for consent:**

_____ M.D.   _____ M.D.

---

**PHYSICIAN DECLARATION:** Prior to the performance of the procedure described above, I have explained to the patient/surrogate decision-maker the nature, purpose, benefits, risks, alternative treatments, possible consequences and possible complications. I confirm the above surgery/procedure is correct as to procedure, side and site.

I checked and the patient is not currently under the influence of any narcotic or mind altering drugs that influences their decision.

Physician Signature _____ Date 3/16/16  Time: 2:30 p

Additional materials used, if any, during the informed consent process for this procedure: _____

---

| VAGINAL DELIVERY WITH POSSIBLE CESAREAN SECTION (PAGE 3 OF 3) | PATIENT LABEL |
|---|---|
| DIMENSIONS HEALTHCARE SYSTEM | MR: 11087140 CLIFTON, DESIRE |
| 4-495 (09/13) | 30▓▓▓▓  36Y F  03/16/16  MOORE, JAVAKA  L/D |

**\* Auth (Verified) \***

## Consent to Treatment

**PHYSICIANS NOT AS EMPLOYEES:** I acknowledge that physicians furnishing services, including but not limited to attending physicians, radiologists, surgeons, emergency department physicians, obstetrician/gynecologists, pathologists, anesthesiologists, neonatologists, physicians interpreting diagnostic studies, consultants and assistants to the physicians ARE NOT employees or agents of the hospital. I understand that I will receive a separate bill from each of these private providers of service.   Patient/Patient Representative Initials: _____

I am seeking either inpatient or outpatient service from Dimensions Healthcare System (DHS). I understand services are available to me without discrimination as prohibited by federal and state law. I hereby consent to care and treatment, including but not limited to diagnostic medical therapeutic testing and treatment as may be deemed necessary or advisable by my physician, his/her associates, partners or designee, consulting physicians, DHS and its employees, based on his/her medical knowledge and my health condition. I understand I have a right to limit or refuse recommended treatments and/or procedures. I understand that no guarantees have been made to me about the outcome of this care. I understand that health related services may be provided by the employees, agents, and independent contractors utilized by DHS, including but not limited to anesthesiology and other interpretive and diagnosticservices.

*Medical Education and Training:* I understand that DHS is approved to train medical students, residents, nurses and allied health students. I also understand students and residents may observe or participate in patient care. I agree to permit such involvement, unless I notify DHS to the contrary in writing with the understanding the students or resident's work will be under the supervision of a qualified instructor or physician on the medical staff of DHS.

*For Inpatient Only:* Room charges are incurred for the day of admission or any part thereof, but not the date of discharge. I acknowledge that check-out time is 11:00 a.m. Any balances known to be due for services not covered or partially covered by insurance will be payable at the time of discharge, including but not limited to applicable coinsurance or deductibles.

*Personal Property and Valuables:* I agree that DHS will not be responsible for patient valuables, clothes, personal items, money or other personal property. I also release DHS from any responsibility for loss or damage to any article not claimed from safekeeping by or for the patient at discharge or departure from DHS premises.

*Only Applicable for Medicare Beneficiaries:* Statement for Payment of Medicare Benefits to Hospital and/or Physicians — I certify that the information given by me for payment under title XVIII of the Social Security Act is correct. I authorize any holder of medical or other information about me to release to the Center for Medicare and Medicaid Services (CMS) or Medicare Intermediaries or Carriers any information needed for these services or a related claim. I request that payment of authorized benefits be made on my behalf.

*Insurance Billing and Assignment of Benefits:* I assign the benefits payable for hospital or physician services to DHS and or any physician which renders service to me and authorize them to submit the necessary claims to Medicare for payment. I certify the registration statements are true and I, as guarantor, agree to pay all amounts owed for care and treatment to the full extent permitted by law. DHS may submit claims to my third party payor or, if legally permissible, bill me directly for full or partial payment. I understand that DHS may, at its option, delay billing me directly and this does not alleviate my responsibility for payment. I agree to pay all amounts owned by me, or the Insured, Member or Subscriber, for treatment to the full extent permitted by law. I assign any benefits which I or the Insured, Member or Subscriber may have or be entitled to, to DHS towards payment of my hospital bills and physician bills. I understand that my insurance, HMO, or other healthcare benefits are subject to verification by DHS and that I will remain responsible for any unpaid amounts whether or not covered by this assignment to the full extent permitted by law. I understand and agree that I am responsible to pay for any charges for care/treatment/service when I access care/treatment/service outside of my insurance plan network.

*Notification of Credit Bureaus Reporting:* I understand that DHS may report any outstanding self-pay balances to Credit Bureaus.

### Release of Information

I understand that my medical information is confidential and under certain circumstances is protected under federal and state laws and regulations and cannot be released without my written authorization unless otherwise provided for in said regulations. I also understand that I may revoke this consent at anytime except to the extent that action has been taken in reliance on it.

I understand that it may be necessary for DHS, its employees, agents, independent contractors and/or my physician to release and/or disclose all or part of my confidential medical information to third parties for the purposes of providing certain diagnostic treatment and/or testing which may not be available within DHS.

I understand that for the sake of convenience and speed of reference, and to further the timeliness and quality of diagnosis and treatment rendered to me, that any physician, nurse, or business office representative who has been involved with my treatment at a DHS facility may request that the hospital send by facsimile transmission to the physician of record, consulting physician or third party carrier any relevant data from my medical record necessary for continuity of care or reimbursement. It is further understood that with any facsimile transmission there is a possibility that medical records may inadvertently be misdirected. Not withstanding such risk, I hereby authorize release of any relevant data in my medical record by facsimile transmission to any physician who has participated in my diagnosis or treatment at the hospital or to any third party carrier for reimbursement and hereby release DHS from any liability associated with those risks.

I understand that DHS is the owner of any radiographic images and/or tissue/specimens obtained during the course of my care and treatment. The original radiographic films and/or all of the tissue/specimens will not be released. Copies of radiographic images will be provided, to me or my authorized agent upon written request for a reasonable fee. Tissue blocks will not be available for recut; but will be available for examination under supervision at our facility upon written request.

I understand that the Federal Safe Medical Devices act requires manufacturers of certain medical devices to track the distribution and use of said devices. I understand that DHS must facilitate the tracking of these devices by providing the information to the manufacturer with respect to the patient receiving such a device, which includes releasing my social security number to the manufacturer of the medical device I may receive, in accordance with the federal law and regulations. I understand that my social security number may be used by the manufacturer to help locate me if there is a need to contact me with regard to this medical device. I release DHS from any liability that might result from the release of this information.

| UNIVERSAL CONSENT (SIDE1) DIMENSIONS HEALTHCARE SYSTEMS | PATIENT LABEL |
|---|---|
| 0088 (11/14) | 11087140 ▮▮▮▮▮ OLE<br>307702910<br>12/14/15  DEVEREAUX, DANIELL  L/D |

Patient Name: CLIFTON, DESIRE NICHOLE  
Date of Birth: [redacted]  
MRN: 11087140  
FIN: 307702910

**\* Auth (Verified) \***

### Authorization For The Release Of Medical Information To The Maryland Insurance Administration:

Under Maryland law, I have the right to contest a decision by an HMO or health insurer that a proposed or delivered health care service was not medically necessary. The law allows the Health Education and Advocacy Unit (HEAU) of the office of the Attorney General to assist me in filing an internal grievance with the HMO or health insurer and allows me to externally appeal the final decision to the Maryland Insurance Administration (MIA). I may appeal the initial decision directly to the MIA if I can demonstrate a compelling reason not to file an internal grievance with the HMO or health insurer. A health care provider may also file an internal grievance or external appeal on my behalf. By signing this form, I either wish to file an internal grievance or appeal, or I authorize a health care provider to file such a grievance or appeal.

I understand that, as part of the HEAU assisting me with my internal grievance, or MIA handling my external appeal, the HEAU or MIA will contact my HMO or health insurer for an explanation as to its actions in connection with my internal grievance or external appeal, or an internal grievance or external appeal filed on my behalf.

I further understand that MIA may receive advice from medical experts or an Independent Review Organization (IRO) while determining whether to uphold or overturn the HMO or health insurer's decision that a health care service was not medically necessary.

Throughout the grievance or appeal process, the confidentiality of my medical records will be maintained in accordance with Maryland and federal law. I understand that if I have questions about the contents of my medical records to be released, I should contact my health care provider.

I understand that my records may be used to develop general statistical information on grievances and appeals, and any statistical reports will not identify me or contain any identifying information. I do not authorize the release of any information that would identify me to anyone not mentioned above.

In the event I, or a provider on my behalf, file an internal grievance or an external appeal, I authorize the release of my medical records as follows:

1. I authorize the Attorney General and MIA to obtain medical records and insurance information for the purpose of investigating my grievance or appeal.
2. I authorize the Attorney General to release my medical records to MIA so that my appeal or grievance may be investigated, and authorize MIA to release my medical records to the Attorney General so that my appeal or grievance may be investigated.
3. I authorize MIA to release my medical records to the relevant HMO or health insurer, and/or the HMO's or health insurer's legal counsel for the purpose of investigating my grievance or appeal or handling any hearing which may result from such investigation.
4. I authorize MIA to transfer my medical records to the Department of Health and Mental Hygiene if my grievance or appeal involves potential issues of quality of care so that the Department may conduct an investigation into these particular issues.
5. I authorize MIA to release my medical records to medical experts who may assist MIA with my grievance or appeal.

To establish and maintain the safest possible environment in which to deliver care/service/treatment, Dimensions Healthcare System's campus buildings, property, parking lots and operated vehicles are smoke and tobacco-free; Dimensions Healthcare System is dedicated to maintaining a smoke and tobacco-free campus environment.

**Dimensions Healthcare Public Health Initiative:** If you smoke, please stop smoking.

*This form has been explained to me and I understand its contents. I acknowledge the following:*

- ☐ Receipt of a copy of DHS Notice of Privacy Practices
- ☐ My communication needs identified by completing the *Communication Assessment Form*
- ☐ Receipt of "An Important Message from Medicare" to Medicare beneficiaries
- ☐ Receipt of DHS brochure "What You Should Know As A Patient"

**PLEASE NOTE:** All patients 18 and over must sign this consent form themselves, unless they have a legal guardian, personal representative or are incapacitated. If so, the signer must submit written proof of guardianship or representation with this consent form.

_____  12-14-15    _____  12-14-15  
Signature of Patient          Date          Signature of Witness          Date

*Complete the following section if consent is not obtained from the patient.*

Patient is unable to make an informed decision because patient is *(Check appropriate box)*:
- ☐ Minor: _____ years of age
- ☐ Incubated
- ☐ Unconscious
- ☐ Emergency Psych Services
- ☐ Other: _____

_____          _____          _____  
Patient Representative Signature       Date           Relationship to Patient

_____          _____  
Witness signature              Date

**UNIVERSAL CONSENT  (SIDE 2)**  
DIMENSIONS HEALTHCARE SYSTEMS

0088 (11/14)

11087140  
12/14/15  307702910  36Y F  
DEVEREAUX, DANIELL  NICHOLE  L/D

\* Auth (Verified) \*

## Consent to Treatment

**PHYSICIANS NOT AS EMPLOYEES:** I acknowledge that physicians furnishing services, including but not limited to attending physicians, radiologists, surgeons, emergency department physicians, obstetrician/gynecologists, pathologists, anesthesiologists, neonatologists, physicians interpreting diagnostic studies, consultants and assistants to the physicians **ARE NOT** employees or agents of the hospital. I understand that I will receive a separate bill from each of these private providers of service.     Patient/Patient Representative Initials: _____

I am seeking either inpatient or outpatient service from Dimensions Healthcare System (DHS). I understand services are available to me without discrimination as prohibited by federal and state law. I hereby consent to care and treatment, including but not limited to diagnostic medical therapeutic testing and treatment as may be deemed necessary or advisable by my physician, his/her associates, partners or designee, consulting physicians, DHS and its employees, based on his/her medical knowledge and my health condition. I understand I have a right to limit or refuse recommended treatments and/or procedures. I understand that no guarantees have been made to me about the outcome of this care. I understand that health related services may be provided by the employees, agents, and independent contractors utilized by DHS, including but not limited to anesthesiology and other interpretive and diagnostic services.

*Medical Education and Training:* I understand that DHS is approved to train medical students, residents, nurses and allied health students. I also understand students and residents may observe or participate in patient care. I agree to permit such involvement, unless I notify DHS to the contrary in writing with the understanding the students or resident's work will be under the supervision of a qualified instructor or physician on the medical staff of DHS.

*For Inpatient Only:* Room charges are incurred for the day of admission or any part thereof, but not the date of discharge. I acknowledge that check-out time is 11:00 a.m. Any balances known to be due for services not covered or partially covered by insurance will be payable at the time of discharge, including but not limited to applicable coinsurance or deductibles.

*Personal Property and Valuables:* I agree that DHS will not be responsible for patient valuables, clothes, personal items, money or other personal property. I also release DHS from any responsibility for loss or damage to any article not claimed from safekeeping by or for the patient at discharge or departure from DHS premises.

*Only Applicable for Medicare Beneficiaries:* Statement for Payment of Medicare Benefits to Hospital and/or Physicians — I certify that the information given by me for payment under title XVIII of the Social Security Act is correct. I authorize any holder of medical or other information about me to release to the Center for Medicare and Medicaid Services (CMS) or Medicare Intermediaries or Carriers any information needed for these services or a related claim. I request that payment of authorized benefits be made on my behalf.

*Insurance Billing and Assignment of Benefits:* I assign the benefits payable for hospital or physician services to DHS and or any physician which renders service to me and authorize them to submit the necessary claims to Medicare for payment. I certify the registration statements are true and I, as guarantor, agree to pay all amounts owed for care and treatment to the full extent permitted by law. DHS may submit claims to my third party payor or, if legally permissible, bill me directly for full or partial payment. I understand that DHS may, at its option, delay billing me directly and this does not alleviate my responsibility for payment. I agree to pay all amounts owned by me, or the Insured, Member or Subscriber, for treatment to the full extent permitted by law. I assign any benefits which I or the Insured, Member or Subscriber may have or be entitled to, to DHS towards payment of my hospital bills and physician bills. I understand that my insurance, HMO, or other healthcare benefits are subject to verification by DHS and that I will remain responsible for any unpaid amounts whether or not covered by this assignment to the full extent permitted by law. I understand and agree that I am responsible to pay for any charges for care/treatment/service when I access care/treatment/service outside of my insurance plan network.

*Notification of Credit Bureaus Reporting:* I understand that DHS may report any outstanding self-pay balances to Credit Bureaus.

**Release of Information**

I understand that my medical information is confidential and under certain circumstances is protected under federal and state laws and regulations and cannot be released without my written authorization unless otherwise provided for in said regulations. I also understand that I may revoke this consent at anytime except to the extent that action has been taken in reliance on it.

I understand that it may be necessary for DHS, its employees, agents, independent contractors and/or my physician to release and/or disclose all or part of my confidential medical information to third parties for the purposes of providing certain diagnostic treatment and/or testing which may not be available within DHS.

I understand that for the sake of convenience and speed of reference, and to further the timeliness and quality of diagnosis and treatment rendered to me, that any physician, nurse, or business office representative who has been involved with my treatment at a DHS facility may request that the hospital send by facsimile transmission to the physician of record, consulting physician or third party carrier any relevant data from my medical record necessary for continuity of care or reimbursement. It is further understood that with any facsimile transmission there is a possibility that medical records may inadvertently be misdirected. Not withstanding such risk, I hereby authorize release of any relevant data in my medical record by facsimile transmission to any physician who has participated in my diagnosis or treatment at the hospital or to any third party carrier for reimbursement and hereby release DHS from any liability associated with those risks.

I understand that DHS is the owner of any radiographic images and/or tissue/specimens obtained during the course of my care and treatment. The original radiographic films and/or all of the tissue/specimens will not be released. Copies of radiographic images will be provided, to me or my authorized agent upon written request for a reasonable fee. Tissue blocks will not be available for recut; but will be available for examination under supervision at our facility upon written request.

I understand that the Federal Safe Medical Devices act requires manufacturers of certain medical devices to track the distribution and use of said devices. I understand that DHS must facilitate the tracking of these devices by providing the information to the manufacturer with respect to the patient receiving such a device, which includes releasing my social security number to the manufacturer of the medical device I may receive, in accordance with the federal law and regulations. I understand that my social security number may be used by the manufacturer to help locate me if there is a need to contact me with regard to this medical device. I release DHS from any liability that might result from the release of this information.

UNIVERSAL CONSENT (SIDE 1)
DIMENSIONS HEALTHCARE SYSTEMS

0088 (11/14)

11087140   0            36Y F
CLIFTON , DESIRE NICHOLE
307705442
12/15/15   SPANGLER, RYAN      L/D

* Auth (Verified) *

## Authorization For The Release Of Medical Information To The Maryland Insurance Administration:

Under Maryland law, I have the right to contest a decision by an HMO or health insurer that a proposed or delivered health care service was not medically necessary. The law allows the Health Education and Advocacy Unit (HEAU) of the Office of the Attorney General to assist me in filing an internal grievance with the HMO or health insurer and allows me to externally appeal the final decision to the Maryland Insurance Administration (MIA). I may appeal the initial decision directly to the MIA if I can demonstrate a compelling reason not to file an internal grievance with the HMO or health insurer. A health care provider may also file an internal grievance or external appeal on my behalf. By signing this form, I either wish to file an internal grievance or appeal, or I authorize a health care provider to file such a grievance or appeal.

I understand that, as part of the HEAU assisting me with my internal grievance, or MIA handling my external appeal, the HEAU or MIA will contact my HMO or health insurer for an explanation as to its actions in connection with my internal grievance or external appeal, or an internal grievance or external appeal filed on my behalf.

I further understand that MIA may receive advice from medical experts or an Independent Review Organization (IRO) while determining whether to uphold or overturn the HMO or health insurer's decision that a health care service was not medically necessary.

Throughout the grievance or appeal process, the confidentiality of my medical records will be maintained in accordance with Maryland and federal law. I understand that if I have questions about the contents of my medical records to be released, I should contact my health care provider.

I understand that my records may be used to develop general statistical information on grievances and appeals, and any statistical reports will not identify me or contain any identifying information. I do not authorize the release of any information that would identify me to anyone not mentioned above.

In the event I, or a provider on my behalf, file an internal grievance or an external appeal, I authorize the release of my medical records as follows:

1. I authorize the Attorney General and MIA to obtain medical records and insurance information for the purpose of investigating my grievance or appeal.
2. I authorize the Attorney General to release my medical records to MIA so that my appeal or grievance may be investigated, and authorize MIA to release my medical records to the Attorney General so that my appeal or grievance may be investigated.
3. I authorize MIA to release my medical records to the relevant HMO or health insurer, and/or the HMO's or health insurer's legal counsel for the purpose of investigating my grievance or appeal or handling any hearing which may result from such investigation.
4. I authorize MIA to transfer my medical records to the Department of Health and Mental Hygiene if my grievance or appeal involves potential issues of quality of care so that the Department may conduct an investigation into these particular issues.
5. I authorize MIA to release my medical records to medical experts who may assist MIA with my grievance or appeal.

To establish and maintain the safest possible environment in which to deliver care/service/treatment, Dimensions Healthcare System's campus buildings, property, parking lots and operated vehicles are smoke and tobacco-free. Dimensions Healthcare System is dedicated to maintaining a smoke and tobacco-free campus environment.

**Dimensions Healthcare Public Health Initiative:** If you smoke, please stop smoking.

*This form has been explained to me and I understand its contents. I acknowledge the following:*

- ☑ Receipt of a copy of DHS Notice of Privacy Practices
- ☑ My communication needs identified by completing the *Communication Assessment Form*
- ☐ Receipt of "An Important Message from Medicare" to Medicare beneficiaries
- ☐ Receipt of DHS brochure "What You Should Know As A Patient"

**PLEASE NOTE:** All patients 18 and over must sign this consent form themselves, unless they have a legal guardian, personal representative or are incapacitated. If so, the signer must submit written proof of guardianship or representation with this consent form.

X _Desire C_____  _12-15-15_         _Cynthia V. Vaughn RN_  _12/15/15_
    Signature of Patient        Date                   Signature of Witness       Date

*Complete the following section if consent is not obtained from the patient.*

Patient is unable to make an informed decision because patient is (Check appropriate box):
- ☐ Minor: ——— years of age    ☐ Incubated    ☐ Unconscious    ☐ Emergency Psych Services
- ☐ Other: ———

_____        _____        _____
Patient Representative Signature      Date        Relationship to Patient

_____        _____
Witness signature                 Date

| UNIVERSAL CONSENT (SIDE 2) | PATIENT LABEL |
|---|---|
| DIMENSIONS HEALTHCARE SYSTEMS | 11087140<br>CLIFTON, D■■■■ NICHOLE   36Y F<br>307705442<br>12/15/15  SPANGLER, RYAN   L/D |
| 0088 (11/14) | |