# Exhibit 58

**CHRISTIANE TELLEFSEN MD**
301 Saint Paul Place
Suite 815 POB
Baltimore, MD  21202
CTellefsen@aol.com
Telephone: (410) 323-8767
Facsimile: (410) 560-7247

September 20, 2019

Danielle S. Dinsmore, Esquire
The Law Offices of Peter Angelos, P.C.
100 North Charles Street
Baltimore, Maryland  21201

                            Re:    "Charles Akoda" Cases

Dear Ms. Dinsmore:

      At your request, I have evaluated three plaintiffs in a lawsuit related to the activities of Charles Akoda. The plaintiffs are among multiple obstetric and gynecologic patients who were evaluated or treated by Akoda in Prince George's County. These plaintiffs learned at some point after their treatment that he had fraudulently obtained his medical license by using different Social Security numbers and assuming false identities. He has since been convicted and served time for fraud. Many of these plaintiffs also complained that Akoda behaved in a sexually inappropriate manner with them, making them feel uncomfortable or disturbed.

      Akoda reported going through medical school in Nigeria and was certified by the Educational Commission for Foreign Medical Graduates (ECFMG). He later completed a residency at Howard University Hospital using his fake identity. The plaintiffs have filed suit against the ECFMG for failure to properly vet and certify this man. What follows is a brief summary of these evaluations as well as a discussion about the nature of their alleged traumatic exposure and subsequent symptoms. For the individual summaries I have used code names for privacy, with a key attached in an addendum.

Qualifications of Examiner:

      You have a copy of my Curriculum Vitae and Case List which states my qualifications to perform this examination. This also lists my publications. I charge $500 per hour for any time spent on this case. Over more than 30 years of practice, I have evaluated hundreds of cases in which there have been allegations of sexual assault or inappropriate sexual behavior, with many of the victims being in fiduciary relationships with the perpetrators. I have evaluated victims and perpetrators in



EXHIBIT
Tellefsen-5
11-26-19

Dinsmore/Charles Akoda cases: September 20, 2019
Page 2 of 7

both forensic and clinical contexts. My experience has included evaluations of individuals who have been subjected to sexual assault, battery, inappropriate sexual touching, or surreptitious sexual surveillance as well as other professional boundary violations.

Summary:

The Akoda cases center on allegations of boundary violations, betrayal of trust by a treating physician and inappropriate sexual behavior. Boundaries are an important aspect of a therapeutic relationship between a patient and their physician. The boundary allows for a professional distance that fosters mutual respect between patient and physician. Sexual or inappropriate physical contact between a physician and patient is a profound boundary violation, as it exploits the dependency of the patient on the physician and the inherent power differential.

Patients trust that their individual physicians are working in their interest. This trust leads to a belief that they will not be taken advantage of, used for the physicians' own personal gain or have their confidences revealed. The physician patient relationship is founded upon this trust which allows patients to be vulnerable, to share intimacies and to be touched for medical purposes. When this trust is violated, the patient suffers a betrayal that may have myriad emotional consequences.

Individuals who have been sexually abused by physicians or other authority figures often develop characteristic symptoms, which may occur soon after the victimization or with a delayed onset. These symptoms and conditions may include depression, anxiety, paranoia, sleep disturbances and nightmares, reliving phenomena, self-harm, self-doubt and poor self-esteem. Many victims report feeling shame and guilt over these situations and often blame themselves for allowing the assault or situation to occur. Many of these victims berate themselves for getting involved with their victimizer and question their ongoing judgment. Many find it difficult to develop trusting relationships with subsequent caregivers, or may avoid future care. Some women develop symptoms of Posttraumatic Stress Disorder or Adjustment Disorders with characteristic reliving phenomena, heightened general anxiety, numbing and fears.

Likewise, patients place trust in institutions that employ physicians or otherwise certify their qualifications or competence. When that trust is broken, similar symptoms may arise, not the least of which may be an inability to trust in any doctor they see in the future or their sponsoring or associated facilities.

These cases are additionally complicated by being obstetric care. The breach of trust has an impact on the mother child relationship, with a high potential for guilt and self-recrimination over not protecting their babies. That these cases involve prenatal care and deliveries at which other family members participated or were present provides potential for further trauma. This may lead to an additional emotional burden of coping with shame and embarrassment in front of partners and family members.

Dinsmore/Charles Akoda cases: September 20, 2019
Page 3 of 7

Interview Summaries:

*Plaintiff Alpha*:

I saw her in my office in Baltimore on September 19, 2019 for a ninety-minute interview. In addition to the psychiatric interview, I also reviewed her medical records from Prince George's Hospital Center and Charles Akoda's outpatient treatment, as well as her deposition.

This 27-year-old woman underwent what she perceived as routine treatment with Charles Akoda in 2012. He provided her with prenatal care and performed her C-section. She did however believe her recovery was more painful than her recovery after her other two C-sections. She worried that a surgical mishap on his part might have led to this pain. She reported shock and dismay after learning of Charles Akoda's false identity. This was intense at first and subsequently has diminished but lingered. She has a recurrence of her shock, anger and dismay when she thinks about the situation, and these thoughts may arise unbidden. It has not otherwise interfered with her ability to function in her life and she has not had symptoms to such an extent that she sought any psychiatric treatment. She had an uneventful subsequent pregnancy and delivery with another physician.

Her description of these events suggest that while she has had ongoing emotional distress from the situation, it has not progressed to a diagnosable mental disorder. She reported having a heightened sense of apprehension about new physicians and other people in whom she needs to place trust in her life. She is far more cautious than she used to be and finds herself avoiding treatment if she has an inkling of discomfort, which she had not done previously.

*Plaintiff Bravo*:

I saw her in my office in Baltimore on September 13, 2019 for a ninety-minute interview. In addition to the psychiatric interview, I also reviewed her medical records from Kaiser Permanente and Prince George's Hospital Center, as well as her deposition.

This 32-year-old woman was a patient of Charles Akoda for prenatal care. He performed her delivery and then a D&C after a postpartum hemorrhage at Prince George's Hospital Center. She reported feeling uncomfortable around him during her prenatal care, enough so that she requested a chaperone during his examinations. She attributed the hemorrhage to his care, in that she had not had this problem with any of her other deliveries. She became dismayed, shocked and ultimately angry when she learned that he was not who he said he was and that his credentials were fake. She keeps a cellphone photograph of the blood clots from her hemorrhage, which serves as a frequent reminder of her traumatic experience and leads to painful reliving. She feels betrayed. She has become suspicious of any other professionals she allows in to her life. Her symptoms have not interfered with her day-to-day functioning but have caused ongoing distress. Her distrust of doctors led her to decline an appropriate examination because of her fearfulness and discomfort.

Dinsmore/Charles Akoda cases: September 20, 2019
Page 4 of 7

Her condition is most consistent with the psychiatric disorder, Adjustment Disorder with Anxiety. She would, more likely than not, benefit from a course of psychotherapy to assist her in processing what happened to her and promote less avoidant future behavior.

*Plaintiff Charlie:*

I saw her in my office in Baltimore on September 16, 2019 for a two-hour and thirty-minute interview. In addition to the psychiatric interview, I also reviewed her medical records from Prince George's Hospital Center, psychiatric records from Ijeoma Nnamani, MD as well as her deposition.

Charlie is a 40 year old woman who reported increasing problems with anxiety and depressed mood after her delivery which Akoda attended. She reported difficulty concentrating and an inability to be touched. She was evaluated by several psychiatrists who diagnosed her with Anxiety and Mood Disorders and treated her with antidepressants and anti-anxiety and sleep medications. She has also had an attempt at psychotherapy but has felt uncomfortable with this male therapist and does not feel like she has gotten much relief from that process. She continues to have depressed and anxious mood, poor concentration, excessive guilt and insomnia.

She attributed a lot of her anxiety symptoms to her reaction to having been Charles Akoda's patient, in terms of his identity theft. However, she also reported feeling like he was sexually inappropriate with her during her delivery. She said he began stimulating her clitoris in front of her husband and mother in the delivery room. She continues to ruminate about this situation and blames herself for not having said anything. At the time she felt confused, embarrassed, humiliated and disgusted by his actions which interfered with the joy of giving birth to her first child. Since the birth, she has been unable to reestablish her sex life with her husband, a loss she fears will lead to marital strife in the future.

Her condition is complicated by a number of other factors in her life, one of which is her difficult work schedule and the coordination of her and her husband's working hours. This lack of coordination exacerbates her problems with sleep. She has reported difficulty initiating sleep but she also has limited time available to her to sleep.

The other complicating factor is the more recent development of what sounds like, from her description, a pseudotumor cerebri, which is still being evaluated. She has been having headaches and a worsening of her already poor concentration. She is currently attempting to make a decision about going through with a lumbar puncture which is typically a necessary procedure to evaluate for this potential diagnosis. She has resisted having this test because of her ongoing concerns about trust with physicians. This is a particularly difficult test for her in that it requires her to expose her lower back to a physician with whom she has no ongoing relationship, while facing away and not being able to see what is happening. She has cancelled the appointment for the test several weeks ago and has not yet responded to the doctor's office's calls to reschedule it.

Her collection of symptoms is most consistent with a psychiatric diagnosis of Mood Disorder. This diagnosis accounts for the multiple sources of her symptoms. Her condition arose in

the postpartum period suggesting some hormonal contribution, but it has continued now for several years. She also now has new onset of a probable pseudotumor the symptoms of which have intensified her existing symptoms of depression.

She also has elements of a stress disorder, most likely Adjustment Disorder with Mixed Disturbance of Behavior. She reported many of her symptoms began because of her perception of Akoda's inappropriate actions during her delivery. She attributes her subsequent sex aversion and fear of being touched to this event. Her condition was then complicated by the shocking news about Charles Akoda's identity theft. Her fears about doctors and being touched is now having a direct negative impact on her evaluation for the pseudotumor. If this condition is left untreated, it could lead to blindness, other severe health problems or death.

She is currently in psychiatric treatment for medication management with a psychiatric nurse practitioner. Her situation, however, is tremendously complicated. She would benefit from treatment with a psychiatrist. Because of her history with Charles Akoda, she would benefit from a psychiatrist who could see her for both medications and the psychotherapy. She also has a potentially life-threatening medical condition now that needs to be addressed as soon as possible. She would benefit from more emergent psychiatric support to get her through this diagnostic process for her neurologic condition.

Analysis:

The three examined cases represent a spectrum of conditions with varying severity related to their experience with Charles Akoda. All of the women reported shock, dismay, anger, recrimination and guilt. They were all immediately distressed when they learned of his arrest and have had waxing and waning degrees of distress and horror over the subsequent years. Their level of distress tends to re-emerge with events in their lives that remind them of the experience.

Alpha reported having no symptoms unless she was thinking about the case, at which point she would have moments of intense anger, anxiety and tearfulness. Apart from that, this plaintiff has no interference with her day-to-day function. She has ongoing but intermittent emotional distress from the experience with Charles Akoda.

Bravo reported similar symptoms but in a more lingering fashion. This plaintiff also reported inappropriate sexual behavior that made her uncomfortable during her prenatal visits. She remains concerned that the complication of postpartum hemorrhage that she had with her delivery was somehow related to Charles Akoda's care. She, too, continues with intermittent symptoms of anger, confusion and concern for the future, but with frequent intrusive or unbidden memories. Her condition is diagnosable as an Adjustment Disorder.

Adjustment Disorders are diagnosed when various psychiatric symptoms arise in the face of stress. By definition, the condition continues until the stress is removed. Adjustment Disorders are related to Posttraumatic Stress Disorder but differ in that the inciting stress is not life-threatening as it would be in Posttraumatic Stress Disorder. Other than that, symptoms may be very similar and

Dinsmore/Charles Akoda cases: September 20, 2019
Page 6 of 7

include emotional distress, heightened general anxiety, sleep disturbance, re-living phenomena, avoidance and myriad other symptoms, such as anger and behavioral disturbances.

Charlie represents a more extreme emotional response to the situation. Her condition is also complicated by a number of other factors and stressors in her life and the recent development of other serious health problems. This plaintiff is clearly suffering from a Mood Disorder that has been diagnosed by her practitioners as Major Depression. Clearly this Mood Disorder was exacerbated by her experience with Charles Akoda. Her condition is impairing and currently endangering her physical health. She would benefit from assessment and treatment with a psychiatrist skilled in both psychosomatics as well as trauma.

I trust this addresses your concerns. I hereby certify that this report is a complete and accurate statement of all of my opinions, and the basis and reasons for them, to which I will testify under oath. Please feel free to contact me if you have any questions.

Sincerely,

Christiane Tellefsen, M.D.

Dinsmore/Charles Akoda cases: September 20, 2019
Page 7 of 7

Appendix

| PLAINTIFF | PRIVACY DESIGNATION |
|---|---|
| JASMINE RIGGINS | Alpha |
| ELSA POWELL | Bravo |
| DESIREE EVANS | Charlie |