# Exhibit 64

```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE EASTERN DISTRICT OF PENNSYLVANIA

 3

 4    --------------------------------

 5    MONIQUE RUSSELL, JASMINE

      RIGGINS, ELSA M. POWELL, and

 6    DESIRE EVANS,

                  Plaintiffs,        Case No. 18-5629

 7         v.

      EDUCATIONAL COMMISSION FOR

 8    FOREIGN MEDICAL GRADUATES,

                  Defendants.

 9    --------------------------------

10                    Washington, D.C.

11              Friday, September 12, 2019

12           Deposition of JASMINE RIGGINS, a witness

13    herein, called for examination by counsel for the

14    Defendant in the above-entitled matter, pursuant

15    to notice, the witness being duly sworn by Barbara

16    DeVico, a Notary Public in and for the District of

17    Columbia, taken at the offices of MORGAN, LEWIS &

18    BOCKIUS, LLP, 1111 Pennsylvania Avenue,

19    Washington, D.C., at 11:33 a.m.,

20    Thursday,September 12, 2019, and the proceedings

21    being taken down by Stenotype by BARBARA De VICO,

22    CRR, RMR, and transcribed under her direction.

23

24

25
```

Jasmine Riggins

```
 1   APPEARANCES:

 2      On Behalf of the Plaintiffs

 3           CORY L. ZAJDEL, ESQUIRE

 4           Z LAW, LLC

 5           2345 York Road, #B-13

 6           Timonium, MD   21093

 7

 8      On behalf of the Defendant:

 9           BRIAN W. SHAFFER, ESQUIRE

10           MORGAN, LEWIS & BOCKIUS, LLP

11           1701 Market Street

12           Philadelphia, PA   19103-2921

13           brian.shaffer@morganlewis.com

14

15

16

17   Also Present:  Nam Ngo, Videographer

18

19

20

21

22

23

24

25
```

Jasmine Riggins

```
 1                    TABLE OF CONTENTS

 2                        WITNESSES

 3   WITNESS                                     PAGE

 4   BY MR. SHAFFER                                 5

 5

 6

 7

                        EXHIBITS
     _____        _____
 8

     EXHIBIT          DESCRIPTION                  PAGE
 9

     Exhibit 1    Medical records                   36
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              P R O C E E D I N G S

 2              THE VIDEOGRAPHER:  This is the

 3         start of the videotaped deposition of

 4         Jasmine Riggins in the matter of Monique

 5         Russell et al. versus Educational

 6         Commission for Foreign Medical Graduates

 7         in the United States District Court for

 8         the Eastern District of Pennsylvania.

 9              This deposition is being held at

10         Morgan Lewis, 1111 Pennsylvania Avenue, NW

11         about, Washington, D.C. on September 12,

12         2019, at approximately 11:34 a.m.

13              My name is Nam Ngo from Golkow

14         Litigation Services, and I'm the legal

15         video specialist.  The court reporter is

16         Barbara DeVico.  Would counsel please

17         introduce yourself.

18                   (Attorneys stated their

19              appearances for the record.)

20              THE VIDEOGRAPHER:  Would the court

21         reporter please swear in the witness.

22              ***********************

23

24

25
```

Jasmine Riggins

```
 1                    JASMINE RIGGINS,
 2  having been called as a witness on behalf of the
 3   Plaintiffs and having been first duly sworn, was
 4   examined and testified as follows:
 5  EXAMINATION BY
 6  MR. SHAFFER:
 7           Q.    Ms. Riggins, good morning.
 8           A.    Good morning.
 9           Q.    We met very briefly this morning.
10  My name is Brian Shaffer.  I'm an attorney that
11  represents the defendant in a lawsuit that you and
12  several other plaintiffs have brought.  My client
13  is the Educational Commission for Foreign Medical
14  Graduates, ECFMG.  Do you understand that if I call
15  it ECFMG what we're referring to?
16           A.    Yes.
17           Q.    Great.  We're here to take your
18  deposition in connection with the lawsuit that you
19  filed in Pennsylvania against ECFMG, correct?
20           A.    Correct.
21           Q.    And have you had your deposition
22  taken before?
23           A.    Yes.
24           Q.    How many times?
25           A.    Once.
```

Jasmine Riggins

1          Q.      And was that earlier this year?

2          A.      Yes.

3          Q.      Okay.  Was that in connection with

4    another lawsuit that you filed?

5          A.      Yes.

6          Q.      And was that a lawsuit that was

7    filed in Maryland against Dimensions Healthcare?

8          A.      Yes.

9          Q.      And that's the only deposition

10   you've ever given besides this one?

11         A.      Correct.

12         Q.      Okay.  A few ground rules just to

13   remind you about how a deposition works.

14         The oath that you gave this morning is the

15   same one that you would give in a courtroom before

16   a judge and a jury.

17         Do you understand that?

18         A.      Yes.

19         Q.      And we're here to ask you some

20   questions and get your best answer and

21   understanding as to those questions.

22         Do you understand that?

23         A.      Yes.

24         Q.      If I ask a question and you don't

25   understand what I'm asking, will you tell me that?

Jasmine Riggins

```
1              A.     Yes.

2              Q.     And I'll be happy to try to correct

3   it.  That's what I want you to tell me.

4              A.     Okay.

5              Q.     If you don't hear me, the court

6   reporter can read the question back or I'll repeat

7   the question for you.  Is that fair?

8              A.     Sure.

9              Q.     We're taking your testimony down

10  both by the court reporter here that will come in a

11  little booklet on a page as well as on a videotape.

12             Do you understand that?

13             A.     Yes.

14             Q.     It's important that you speak as

15  loudly and as clear as you can.  We all have little

16  microphones, but it will still be easier for

17  everyone if you try to speak up.  If somebody

18  doesn't hear you, I may ask you to repeat yourself

19  just so everyone can hear you.  Is that okay?

20             A.     Yes.

21             Q.     Same thing, even though on the

22  videotape we might see a nod of the head or a shake

23  of the head, the court reporter can't take that

24  down as clearly, so I may ask you for an audible

25  response.  Again I'm not trying to be difficult.
```

Jasmine Riggins

1    I'm just trying to make sure there's no confusion

2    as to what you meant when you shake your head.

3          Is that fair?

4          A.    Yes.

5          Q.    We'll take a break at any point that

6    you need to today as long as there's not a question

7    that's pending.  This isn't an endurance contest.

8    If you need to take a break for any reason, we'll

9    do that, okay?

10          A.    Okay.

11          Q.    There are some topics that we may

12    talk about today about your personal health that

13    may be sensitive or uncomfortable, and I apologize

14    for that.  I'm not trying to be intrusive.  But

15    there are certain questions that I may need to ask,

16    and I'm going to try to do that as best I can.  If

17    you feel uncomfortable about that, will you let me

18    know?

19          A.    Yes.

20          Q.    Thank you.

21          Do you have any questions before we begin

22    the deposition?

23          A.    No.

24          Q.    What did you do to prepare, if

25    anything, for coming in here today?

Jasmine Riggins

```
 1           A.      Just practiced, talked to my

 2    attorneys.

 3           Q.      Okay.  So you met with your

 4    attorney, Mr. Zajdel, who is here with us this

 5    morning?

 6           A.      Yes.

 7           Q.      How many times did you meet with him

 8    to prepare for the deposition?

 9           A.      Just once.

10           Q.      When was that?

11           A.      No.  Tuesday.  I spoke with Cory,

12    I'm sorry.  Not Cory, David, my apologies.

13           Q.      Okay.

14           A.      I spoke with David on Tuesday.

15           Q.      Okay.  And David is another one of

16    your lawyers?

17           A.      Yes.

18           Q.      So you spoke with David by the

19    telephone on Tuesday?

20           A.      Yes.

21           Q.      Okay.  For how long did you talk to

22    David?

23           A.      Not long.  A few minutes.

24           Q.      Less than 30 minutes?

25           A.      Yes.
```

Jasmine Riggins

```
 1          Q.     Did you look at any documents while
 2   you were talking to David?  Did David show you any
 3   documents?
 4                 MR. ZAJDEL:  Objection.  Don't
 5            answer that.
 6          Q.     I'll rephrase.
 7          Did you look at any documents in connection
 8   with preparing for the deposition?
 9          A.     Yes.
10          Q.     What documents did you look at?
11          A.     My deposition documents.
12          Q.     So your deposition transcript from
13   the Maryland Dimensions case?
14          A.     Yes.
15          Q.     The transcript, the little booklet
16   that had questions and answers, is that what you're
17   referring to?
18          A.     Yes.
19          Q.     When did you review that?
20          A.     A few days ago.
21          Q.     What other documents did you review
22   before coming in to testify today?
23          A.     Just that.
24          Q.     Okay.  Did you do any online
25   Internet research or review before coming in to
```

Jasmine Riggins

 1   testify today?

 2          A.     Not today.

 3          Q.     Have you done any Internet research

 4   in connection with this lawsuit ever?

 5          A.     Yes.

 6          Q.     When was that?

 7          A.     About a few weeks ago.  It's been

 8   ongoing, different times.

 9          Q.     What did you look at a few weeks ago

10   online in connection with this lawsuit?

11          A.     Just the Akoda case, just about the

12   case and what was going on with him.  Just

13   basically researching him pretty much.

14          Q.     Okay.  So you were, for lack of a

15   better word, Googling Dr. Akoda's name and looking

16   online for information about him?

17          A.     Something like that, yes.

18          Q.     You tell me what you did.  I wasn't

19   there.

20          A.     Well, basically I was just looking

21   at, just looking at the things that were posted

22   years ago.

23          Q.     Okay.

24          A.     About, you know, the fraud, him

25   being a fraud and everything like that.

Jasmine Riggins

 1          Q.      And what kind of things were they?

 2     Were they newspaper articles?

 3          A.      No.

 4          Q.      Were they court filings?

 5          A.      I don't recall.

 6          Q.      Were they -- what do you recall

 7     about what they were?

 8          A.      Just about him being fraudulent.  I

 9     don't really recall word for word.

10          Q.      And you said you looked at those few

11     weeks ago?

12          A.      Uh-huh.

13          Q.      Was that before or after you knew

14     you were going to give a deposition in this case?

15          A.      It was before.

16          Q.      And other than talking with your

17     counsel on Tuesday of this week, did you have any

18     additional conversations with anyone before coming

19     in to testify here today?

20          A.      I've spoken to Monique Russell, but

21     I haven't spoken to her in the past month or so.

22          Q.      When was the last time you spoke

23     with Ms. Russell?

24          A.      I don't recall.  It's been a little

25     while.

Jasmine Riggins

1          Q.      Would it be more than a month or

2   less than a month?

3          A.      A little more than a month.

4          Q.      Did you ever text with Ms. Russell?

5          A.      No.

6          Q.      Did you ever email with Ms. Russell?

7          A.      I have.

8          Q.      And when was the last time you

9   emailed Ms. Russell?

10         A.      The last time I spoke with her.

11         Q.      So the last communication you had

12   with her, more than a month ago, was by email?

13         A.      Yes.

14         Q.      And what was the -- did your

15   communications have anything to do with Dr. Akoda?

16         A.      Yes.

17         Q.      What was the nature of your

18   communications with Ms. Russell about Dr. Akoda?

19         A.      Just about how I felt and how she

20   felt.

21         Q.      Okay.  Was this a communication that

22   she initiated or that you initiated?

23         A.      I initiated it.

24         Q.      And this is something that you have

25   in your emails?

Jasmine Riggins

1          A.      I should.

2          Q.      Did you communicate with her through

3    like a Facebook direct message, or this was direct

4    message?

5          A.      Just like a Facebook message.

6          Q.      And this was a Facebook message in

7    the last month or so, a little more than a month

8    ago?

9          A.      Yes.

10          Q.      Okay.  And have you spoken with

11   Ms. Russell or communicated with Ms. Russell at any

12   time in the last month?

13          A.      No.

14          Q.      Have you spoken with Ms. Russell

15   about your lawsuit against ECFMG?

16          A.      I don't recall.

17          Q.      Did you speak with Ms. Russell about

18   your lawsuit against Dimensions Healthcare in

19   Maryland?

20          A.      Yes.

21          Q.      And what did you and Ms. Russell

22   discuss about the lawsuit against Dimensions

23   Healthcare in Maryland?

24          A.      We just talked about the lawsuit.

25   We didn't really -- I don't recall the full details

Jasmine Riggins

1    of our conversation.  She was asking me about how I

2    felt about it.  Just basically about our feelings.

3            Q.     And this was by email again, or was

4    this a phone call?

5            A.     I believe this was a phone call.  I

6    don't recall.  It could have been an email or phone

7    call.

8            Q.     As you sit here today, have you had

9    discussions with Ms. Russell at any point in time

10   about your lawsuit against ECFMG?

11           A.     I don't recall.

12           Q.     Do you still have a Facebook account

13   where you and Ms. Russell are connected as friends

14   through Facebook?

15           A.     Yes, but I don't have the password.

16   I can't recover the password.

17           Q.     Okay.  How did you communicate with

18   her by Facebook if you couldn't recover the

19   password?

20           A.     It's a messenger app that I had on

21   my old phone, but I have a new phone.

22           Q.     So some time between the last time

23   you communicated with Ms. Russell and today, you no

24   longer have access to the Facebook directory?

25           A.     I can get it, but I don't have

Jasmine Riggins

1    access at this moment, no.

2         Q.    But that's something you can get?

3         A.    Yes.  It's a process you have to go

4    through.

5         Q.    At any point in time were you asked

6    to provide lawyers for ECFMG with any documents you

7    have related to Dr. Akoda or the lawsuit or your

8    feelings about Dr. Akoda, anything like that?

9              MR. ZAJDEL:  Objection.  Form.

10              You can answer.

11        A.    So what is your question?

12        Q.    At any point in time after having

13   filed a lawsuit against ECFMG, did you ever become

14   aware of a request by lawyers for ECFMG for any

15   documents that you might have related to Dr. Akoda?

16              MR. ZAJDEL:  Objection.  That's

17              attorney-client privilege.

18              MR. SHAFFER:  I'm not asking for

19              the substance of the communication.  I'm

20              asking if she was aware.

21              MR. ZAJDEL:  I would suggest that

22              you ask it differently.

23   BY MR. SHAFFER:

24        Q.    Did you ever collect Facebook direct

25   messages, email communications, text messages that

Jasmine Riggins

1  you might have in your possession related to

2  Dr. Akoda and give them to anybody?

3        A.    No.  Did I ever collect it and give

4  it to anyone?

5        Q.    Yes.

6        A.    No.

7        Q.    Did you ever forward it to anybody

8  or pull it all together and provide it to anybody?

9        A.    No.

10       Q.    And I take it you were not asked to

11  do that?

12       A.    No.

13       Q.    And I think as you testified, at

14  least email communications or direct messaging

15  application messages you could still access, you

16  just can't do it while we're sitting here with your

17  new phone; correct?

18       A.    Correct.

19       Q.    Okay.

20            MR. SHAFFER:  Counsel, I'm going

21         to make a request for the documents that

22         are in the possession of Ms. Riggins that

23         are responsive to our requests for

24         production of documents which would

25         include these types of communications and

Jasmine Riggins

1              which have not been produced.

2                   MR. ZAJDEL:  I would suggest that

3              you do that in writing so that we can

4              respond in writing.

5    BY MR. SHAFFER:

6         Q.    Ms. Riggins, in preparing for the

7    deposition today, you said you reviewed your

8    deposition transcript from your deposition earlier

9    this year in the Dimensions Healthcare case;

10   correct?

11        A.    Right.

12        Q.    In reviewing that deposition

13   transcript, did you identify any answers that you

14   gave that you now believe are wrong?

15        A.    I'm not sure.  Can you ask me that

16   again.

17        Q.    In reviewing the transcript, you

18   were under oath like you are today; right?

19        A.    Uh-huh.

20        Q.    You've now had a chance to review

21   that transcript before coming in to testify today.

22   And my question is whether when you read through

23   the transcript this week you said Oh, boy, I made a

24   mistake.  What I testified to wasn't correct in my

25   deposition in the Dimension case.

Jasmine Riggins

```
 1          A.      No.
 2          Q.      And part of this is to try to save
 3   time today.  So I guess my question having read the
 4   deposition just a few days ago, as you sit here
 5   today do you still believe that everything you
 6   testified earlier this year in the Dimensions
 7   Healthcare deposition is true and accurate to the
 8   best of your ability?
 9          A.      Yes.
10          Q.      I'm going to jump around a little
11   bit then and try to hit on some questions just to
12   make sure I'm correct.  But if I jump around too
13   quickly and you don't follow where I'm going, just
14   let me know because I'm trying to, again, save some
15   time because we won't need to ask every question
16   that was asked in the Dimensions deposition again
17   today, okay?
18          A.      Okay.
19          Q.      Are you currently on any medication?
20          A.      No.
21          Q.      Is there any reason that you can
22   think of sitting here today that you couldn't
23   testify truthfully and to the best of your ability?
24          A.      No.
25          Q.      You mentioned your full name before
```

Jasmine Riggins

```
 1   as Jasmine Riggins, correct?

 2        A.    Yes.

 3        Q.    Is your birthday July 4, 1992?

 4        A.    Yes.

 5        Q.    And how old would that make you?

 6        A.    27.

 7        Q.    Are you currently married?

 8        A.    No.

 9        Q.    Do you have any children?

10        A.    Yes.

11        Q.    How many children?

12        A.    Three.

13        Q.    And can you give me their names and

14   their current ages?

15        A.    Santana is 10, Messiah is 10, Taniya

16   will be two next month.

17        Q.    Are Santana and Messiah both boys?

18        A.    Yes.

19        Q.    And Taniya is a girl?

20        A.    Yes.

21        Q.    And earlier this year in your

22   deposition in the Dimensions case you indicated

23   that you were engaged.  Is that status the same, or

24   has it changed?

25        A.    It's the same.
```

Jasmine Riggins

```
 1          Q.      What's your current address?

 2          A.      3699 J Street, Apartment 301, N.E.,

 3   Washington, D.C. 20019.

 4          Q.      How long have you lived there?

 5          A.      Almost a year.

 6          Q.      You have a high school GED, is that

 7   right?

 8          A.      Yes.

 9          Q.      Do you have any other subsequent

10   education beyond that?

11          A.      No.

12          Q.      Are you currently employed?

13          A.      Yes.

14          Q.      Where is that?

15          A.      Potbelly Sandwich Shop.

16          Q.      When did you start working there?

17          A.      April of this year.

18          Q.      And you've worked at Potbelly's

19   since April of this year?

20          A.      Yes.

21          Q.      And how many hours a week,

22   approximately, do you work?

23          A.      About 22.  Slower season.

24          Q.      So is this part-time work?

25          A.      Yes.
```

Jasmine Riggins

```
 1          Q.      Prior to working at Potbelly
 2   starting earlier this year, had you worked -- had
 3   you worked anywhere else in 2019, or was there a
 4   period of time when you weren't working?
 5          A.      I was working at the Home Depot.
 6          Q.      And how long -- did you leave
 7   directly from Home Depot and go to Potbelly, or was
 8   there a break?
 9          A.      There was about a month break, a
10   month or so.
11          Q.      And again for purposes of trying to
12   speed this up, in the Maryland Dimensions
13   Healthcare litigation you gave some written
14   response to questions.
15          Do you recall having done that?  We call
16   them interrogatories.
17          A.      Yes.
18          Q.      And one of the interrogatories you
19   were asked in that case was to list your prior
20   employment.  And you indicated in that case that
21   you had started working at Home Depot in March of
22   2017.  Does that sound correct?
23          A.      Yes.
24          Q.      And so you worked at Home Depot from
25   March of 2017 to about February or March of 2019?
```

Jasmine Riggins

```
 1              A.      Yes.

 2              Q.      And then you started at Potbelly in

 3   April of 2019 and are still working there through

 4   today?

 5              A.      Yes.

 6              Q.      Great.  Prior to working at Home

 7   Depot starting in March of 2017, was there a period

 8   of time before that that you were not working?

 9   Immediately before, I'm looking at the beginning

10   part of 2017.

11              A.      No.  No.

12              Q.      Where were you working when you

13   went, before you went to Home Depot?

14              A.      At Paul Bakery.

15              Q.      Got it.  And how long did you work

16   there, approximately?

17              A.      About almost two years.

18              Q.      And would it be correct then to say

19   that you worked at Paul Bakery from about March of

20   2015 to March of 2017?

21              A.      Yes.

22              Q.      Was there a period of time between

23   Paul Bakery and Home Depot when you weren't

24   working, or did you go right from one to the next?

25              A.      Yes, that's exactly what happened.
```

Jasmine Riggins

```
 1    I went from one to the next.
 2           Q.    Again, just to make sure that I'm
 3    not missing anything, before coming in to testify
 4    today, you didn't review the complaint that was
 5    filed against ECFMG in the federal court or the
 6    court in Pennsylvania; correct?
 7           A.    You said I didn't.
 8           Q.    You didn't review that?
 9           A.    Not that I can recall.  I'm sorry.
10    I can't recall.
11           Q.    Okay.  As you sit here today, you
12    don't have a recollection of looking at the
13    complaint that you filed against ECFMG?
14           A.    Oh, yes.  I'm sorry.  I'm sorry.
15    I'm sorry.  I didn't understand what you were
16    asking me.
17           Q.    That's all right.
18           A.    I did receive that -- did I get that
19    in the email?  I believe so.  I'm sorry.
20           Q.    That's okay.  When you say you think
21    you may have received it in an email, who was the
22    email from?
23           A.    I'm sure I've seen it.  I'm sure
24    I've seen it.  Yeah, I'm sure I've seen it.
25           Q.    Do you know when it was filed,
```

Jasmine Riggins

```
1   approximately?

2          A.     I don't recall.

3          Q.     Do you know whether it was filed in

4   2019?  Since January or earlier than that.

5          A.     I'm sorry, I don't recall.

6          Q.     Okay.  That's okay.  Again, I'm just

7   asking for your best understanding and recollection

8   as you sit here today without guessing.

9          But I take it that since you can't remember

10  when you might have seen it but you think you did

11  that you didn't review it specifically to come in

12  here today.  Is that correct?

13         A.     That's correct.

14         Q.     And I take it from your earlier

15  answers, but I just want to make sure, that when

16  you said a couple of weeks ago you went online

17  looking at Dr. Akoda information, you didn't go to

18  the ECFMG website, for example; correct?

19         A.     Correct.

20         Q.     Have you ever gone to the ECFMG

21  website?

22         A.     No.

23         Q.     And you've not ever reviewed any of

24  the information that is on the ECFMG website,

25  correct?
```

Jasmine Riggins

```
 1          A.      No.

 2          Q.      When was the first time you ever

 3   heard of ECFMG?

 4          A.      From my attorneys.

 5          Q.      Okay.  And approximately when was

 6   that?

 7          A.      I don't recall.

 8          Q.      Is it fair to say that at no point

 9   prior to having spoken with the attorneys that

10   currently represent you that you had ever heard of

11   ECFMG?

12          A.      Repeat that again.

13          Q.      Sure.  Prior to speaking with your

14   current attorneys who are bringing the lawsuit

15   against ECFMG, you had never even heard of ECFMG?

16          A.      That is correct.

17          Q.      Okay.  As you sit here today, what

18   do you know about ECFMG?

19          A.      I know that they're a business who

20   gives foreigners their certificates or give them

21   permission to practice medicine in the United

22   States.

23          Q.      Do you know whether or not ECFMG is

24   a nonprofit organization?

25          A.      I do not.
```

Jasmine Riggins

```
1            Q.     Do you know whether people who apply

2    to ECFMG could be U.S. citizens or not?

3            A.     I do not.

4            Q.     You don't know?

5            A.     You said -- no, because it's for

6    foreigners; correct?

7            Q.     I'm trying to get your

8    understanding.  So your understanding is that a

9    U.S. citizen could not apply to ECFMG for

10   certification or any services by ECFMG.  It's only

11   for foreigners?

12           A.     Correct.

13           Q.     And is it your understanding, I

14   think you said that -- and please correct me

15   because I'm just trying to remember back what you

16   said -- that ECFMG is responsible for certifying

17   you to practice medicine in the United States.  Is

18   that correct?

19           A.     I believe so.

20           Q.     Okay.  And what is it that you think

21   ECFMG does to certify people to practice medicine

22   in the United States?

23           A.     Give an exam.  I'm not -- give an

24   exam.

25           Q.     Okay.
```

Jasmine Riggins

```
1          A.     Questions, interviews, background

2    checks.

3          Q.     Okay.  And your understanding is

4    that among the things that ECFMG does is do

5    background checks on foreigners who want to come

6    and practice medicine in the United States?

7          A.     Yes.

8          Q.     And what's the basis for that

9    understanding?

10               MR. ZAJDEL:  Objection.  You can

11          answer.

12               MR. SHAFFER:  I'll rephrase the

13          question.

14    BY MR. SHAFFER:

15          Q.     Other than from information told to

16    you by your lawyers, do you have any other source

17    of information of any kind about what ECFMG is,

18    what it does, what it doesn't do, who can apply,

19    who can't apply, what types of things ECFMG

20    requires?

21          Do you have any source of information about

22    any of that other than your lawyers?

23          A.     No.

24          Q.     I'm sorry?

25          A.     No.
```

Jasmine Riggins

```
 1            Q.      Okay.  We asked a couple of
 2   questions earlier that referenced, and I think your
 3   answer might have been the first to reference a
 4   Dr. Akoda.
 5            Do you recall mentioning Dr. Akoda?
 6            A.      Not a Dr. Akoda, no.
 7            Q.      You understand that there is an
 8   individual who you saw in connection with one of
 9   the children that you gave birth to, correct?
10            A.      I'm sorry?
11            Q.      Well, I'll rephrase that.
12            So you're not aware of a Dr. Akoda.  You
13   never heard that phrase before?
14            A.      Yes, I've heard that -- I heard that
15   phrase, yes.
16            Q.      Okay.
17            A.      Can I run to the bathroom, please?
18   I'm sorry.  You're in the middle of a question.  My
19   apologies.
20            Q.      You answered the question, which was
21   you've heard reference to a Dr. Akoda.  So we'll
22   take a break and then go ahead to the rest room and
23   then we'll come back.
24                    THE VIDEOGRAPHER:  We are going
25            off the record.  The time is 11:53 a.m.
```

Jasmine Riggins

```
 1                    (Recess)

 2              THE VIDEOGRAPHER:  We are back on

 3         the record.  The time is 11:57 a.m.

 4   BY MR. SHAFFER:

 5         Q.    Okay, Ms. Riggins, we're back on the

 6   record, and we were talking before a quick break

 7   there about an individual named Dr. Akoda, an

 8   individual, and I think you took some issue with

 9   calling him Dr. Akoda.  Why is that?

10         A.    He's not a doctor.

11         Q.    And why do you say that?

12         A.    Because he doesn't have credentials

13   and certifications to be a doctor.

14         Q.    Do you know -- and just so again I

15   want to make sure that we're talking about the same

16   things today so we don't have to go back later on,

17   when we refer to an individual known as Dr. Akoda

18   or the person that you believe is not a doctor

19   about, we're talking about the person that you saw

20   in connection with the birth of your second child;

21   correct?

22         A.    Correct.

23         Q.    And, at the time that you were being

24   seen by him and actually gave birth with him

25   through C-section, correct?
```

Jasmine Riggins

```
1              A.      Correct.

2              Q.      You understood and knew him to be

3    Dr. Akoda?  Correct?  I'm sorry.

4              A.      Correct.

5              Q.      And since that time you've come to

6    learn that Dr. Akoda pled guilty to using a

7    different Social Security number, correct?

8              A.      Correct.

9              Q.      Okay.  And so based on that

10   information, it's your belief that the person that

11   you knew as Dr. Akoda is not a doctor?

12             A.      Correct.

13             Q.      Okay.  Do you know whether that

14   individual went to medical school?

15             A.      No, no.

16             Q.      He did not go to medical school?

17             A.      No.

18             Q.      How do you know that?

19             A.      I'm saying no, I don't.

20             Q.      You don't know whether he went?

21             A.      Yeah.

22             Q.      As you sit here today, do you have

23   any information or facts that would allow you to

24   say he didn't go to medical school?

25             A.      The fact that he pled guilty and the
```

Jasmine Riggins

1   fact that he had fake credentials.

2        Q.    Okay.  And the fact that he pled

3   guilty, he didn't plead guilty to not going to

4   medical school; correct?

5        A.    Correct.

6        Q.    And do you know whether or not

7   Dr. Akoda's medical school in Nigeria ever verified

8   the authenticity of his diploma to Educational

9   Commission?

10            MR. ZAJDEL:  Objection.  Assumes

11         facts.  You can answer that question.

12        Q.    Do you know whether or not?

13        A.    No.

14        Q.    Would it surprise you to learn that

15   a medical school in Nigeria verified Dr. Akoda's

16   diploma to ECFMG?

17            MR. ZAJDEL:  Objection.  Assumes

18         facts.

19        Q.    You can go ahead and answer.

20        A.    Okay.  You said would it surprise

21   me?

22        Q.    Yes.

23        A.    Yes.

24        Q.    Why is that?

25        A.    Because it would be a surprise to me

Jasmine Riggins

1    that he had information provided that he's a real

2    doctor or went to medical school.

3            Q.     During the time that you were being

4    treated by Dr. Akoda, you never had any reason to

5    question whether or not he had gone to medical

6    school; correct?

7            A.     When I was being seen by him?  No.

8    I wouldn't -- had I have known I wouldn't have

9    chosen him.

10           Q.     And there was nothing about his care

11   and treatment of you in connection with your

12   pregnancy and the birth of Messiah that ever caused

13   you to doubt that he had gone to medical school and

14   was a real medical doctor, correct?

15           A.     You said during my treatment with

16   him, no.

17           Q.     When was it that you first received

18   any information that caused you to question whether

19   the person you had seen, Dr. Akoda, was not a real

20   doctor, as you say?

21           A.     You said when was --

22           Q.     When did you first, first come to

23   have any information where you said everything

24   seemed fine while I was being treated with him but

25   now there's a problem?  When was that?

Jasmine Riggins

```
 1            A.     Well, there were problems after my
 2   pregnancy, after the delivery, I had issues.
 3            Q.     What were those issues?
 4            A.     Pain, severe pain in my stomach and
 5   my abdominal at work, I would have pain throughout
 6   the day.  And I couldn't have my tubes tied due to
 7   the damaged tissues on my C-section, which caused a
 8   lot of pain.
 9            Q.     And so this is after the birth of
10   Messiah, and Messiah was born by C-section;
11   correct?
12            A.     Correct.
13            Q.     And you said at a later point in
14   time you wanted to have a tubal ligation and were
15   told you couldn't have one?
16            A.     Correct.
17            Q.     And you were told it was because of
18   scarring that was present from earlier C-sections?
19            A.     Correct.
20            Q.     And was that scarring that you say
21   precluded you from having the tubal ligation, that
22   was something you attribute to the C-section
23   Dr. Akoda did?
24            A.     Correct.
25            Q.     And why do -- why do you do that?
```

Jasmine Riggins

```
1            A.      Because it was able to be done

2    before, but I decided against it.

3            Q.      When was it able to be done before?

4            A.      With my first son.

5            Q.      Do you know whether or not -- and

6    your first son, Santana; correct?

7            A.      Correct.

8            Q.      Was born by C-section, correct?

9            A.      Correct.

10           Q.      And who was the doctor that you saw

11   for Santana?

12           A.      I don't recall her name.

13           Q.      Was it at Howard University?

14           A.      Correct.

15           Q.      And do you know whether or not there

16   was any scarring that was later identified from the

17   C-section that you received at Howard University?

18           A.      No, there was not.  There wasn't

19   any.

20           Q.      If there had been some, do you think

21   that's the kind of thing that would be shown in

22   medical records of you that would have come later?

23           A.      Could you repeat your question.

24           Q.      Sure.  You told me you don't think

25   there was any scarring from the first C-section,
```

Jasmine Riggins

 1    correct?

 2          A.    Correct.

 3          Q.    And I take it that that's because

 4    immediately following the C-section you were told

 5    you could have a tubal ligation?

 6          A.    No.  Correct, correct, I'm sorry.

 7          Q.    Okay.  But then after the second,

 8    the birth of your second child and the second

 9    C-section, you were told you couldn't have one?

10          A.    After the third.

11          Q.    After the third?

12          A.    Correct.

13          Q.    And after the third, you were told

14    that there was significant scarring from your other

15    C-section; correct?

16          A.    Correct.

17          Q.    If Dr. Akoda had seen significant

18    scarring at the time that he did the second

19    C-section, that would suggest that that scarring

20    came from the first C-section; right?

21          A.    Correct.

22          Q.    Because scarring doesn't happen

23    overnight.  It takes time to develop.  Correct?

24          A.    Correct.

25                          (Exhibit 1, medical records,

Jasmine Riggins

1                        was marked for identification.)

2          Q.      Ms. Riggins, we're handing you

3    what's been marked as Riggins-1, which I'll

4    represent to you is medical records that relate to

5    your treatment at Prince George Hospital Center in

6    2013.

7          Could you take a quick look at that, and

8    then I'll have some quick questions.

9          A.      (Witness complies with request.)

10          Q.      Just let me know when you're ready.

11                  MR. ZAJDEL:  Put it on the record

12              that we reserve the right to make

13              everything confidential after the

14              deposition.

15          Q.      I'm not going to ask you about every

16    word, but let me focus on a couple of things here.

17          So Riggins-1 is a document Bates labeled

18    Plaintiff's -2024 and -2025, which again I'll

19    represent to you was produced to us in this case,

20    and it appears to be an operative report for you,

21    Jasmine Riggins.  And it references a date of a

22    procedure on 3/18/2013.

23          Do you see on the top part of the page?

24          A.      Yes.

25          Q.      Did you have a procedure at Prince

Jasmine Riggins

 1   George's County on 3/18/2013?

 2         A.    Yes.

 3         Q.    What did you have?

 4         A.    A C-section.

 5         Q.    That's when Messiah was born?

 6         A.    Yes.

 7         Q.    And you can see that this is a

 8   two-page record signed by Charles Akoda, M.D. --

 9   not signed but his name appears at the end of the

10   document.  Correct?

11         A.    Yes.

12         Q.    And if you look -- well, the top of

13   the page there's a fax server date and time.  It

14   says, "3/19/2013 at 2:42:42 p.m."

15         Do you see that?

16         A.    Yes.

17         Q.    So does this appear to be a record

18   then that would have been created and sent

19   immediately after your C-section with Messiah in

20   March of 2013?

21               MR. ZAJDEL:  Objection.

22         A.    Yes.

23         Q.    That's the date you had the

24   C-section, right, 3/18/2013?

25         A.    Yes.

Jasmine Riggins

1          Q.     If you look at the description here

2     of what occurred, and it's a little bit technical

3     in medical terms, but if you look at the findings

4     at the bottom of page 1.  So flip back to the first

5     page of it.  Under Findings it says, "Male infant,

6     encephalic presentation."

7          Do you see that?

8          A.     Yes.

9          Q.     Do you understand that to be

10    Messiah, when he went in to do the C-section,

11    that's the male infant that he saw?

12         A.     Yes.

13         Q.     Okay.  And the next sentence,

14    section of that finding says, "Significant scarring

15    and adhesion formation."

16         Do you see that?

17         A.     Yes.

18         Q.     And so does that indicate that in

19    addition to finding Messiah when he went in to do

20    the C-section, he also saw significant scarring and

21    adhesion formation section?

22         A.     Okay.

23         Q.     Right?

24         A.     Okay, yes.

25         Q.     That's what it says, right?

Jasmine Riggins

1          A.      Uh-huh.

2          Q.      I'm sorry.

3          A.      Yes, yes, yes, yes.  My children,

4    I'm sorry.

5                    THE VIDEOGRAPHER:  We are going

6               off the record.  The time is 12:11 p.m.

7                        (Recess)

8                    THE VIDEOGRAPHER:  We are back on

9               the record.  The time is 12:24 p.m.

10                   MR. SHAFFER:  This is Brian

11              Shaffer for ECFMG.  We're back on the

12              record after a short break.

13                   We've had a couple of logistical

14              issues come up this morning with respect

15              to Ms. Riggins and her child care, and we

16              got started a little bit late this morning

17              due to some travel and traffic issues.

18              And so we've been talking offline here to

19              try to solve for those things and make

20              sure that we get the deposition completed.

21                   And what we've discussed here is

22              that we will adjourn the deposition today

23              now with the questions that we've gotten

24              asked and answered so far.  We will

25              reconvene on Monday morning, the 16th,

Jasmine Riggins

```
 1            here at the same place starting at 9:30,

 2            and we will pick up with Ms. Riggins'

 3            deposition at that point in time.

 4                 This is being done as an

 5            accommodation to schedules and not for any

 6            other reason, and so for that reason I've

 7            discussed with both counsel and

 8            Ms. Riggins the understanding that she'll

 9            have no substantive discussions with

10            anyone, including her counsel, any person,

11            witness, Ms. Russell, anybody else about

12            the case, about her testimony here today,

13            her testimony that she'll give on Monday.

14            It will be as if we were picking up right

15            now.  Instead we will be picking up Monday

16            at 9:30.

17                 That will include no text messages,

18            no, emails.  She also had agreed that

19            she'll not do any research or go online or

20            look at any documents or do anything other

21            than what she came here today prepared to

22            talk about.

23                 Is that a correct recitation of our

24            agreement?

25                 MR. ZAJDEL:  Yes.
```

Jasmine Riggins

```
 1                    THE WITNESS:  Yes.

 2                    MR. ZAJDEL:  With the exception

 3           that I'm certainly going to send an email

 4           with a date and the time to be here on

 5           Monday.  You said no communication.  I

 6           just want to make sure, no substantive

 7           communication about the contents of the

 8           deposition.  That's agreed.

 9                    MR. SHAFFER:  And then we will

10           continue with Ms. Riggins' deposition on

11           Monday at 9:30.  After we complete that

12           we'll move forward with the other

13           deposition that's been noticed for 10:30

14           but that we've agreed will start after

15           the completion of Ms. Riggins.  Correct?

16                    MR. ZAJDEL:  Yes, and I will take

17           care of adjusting Ms. Russell to let her

18           know.

19                    MR. SHAFFER:  I think that is it

20           for the record here today, and we will

21           pick back up on Monday.

22                    THE VIDEOGRAPHER:  We are going

23           off the record.  The time is 12:27 p.m.

24                         (Proceedings adjourned at

25                    12:26 p.m.)
```

Jasmine Riggins

```
 1   DISTRICT OF COLUMBIA:                  SS

 2       I, Barbara DeVico, a Registered Court Reporter

 3    of the District of Columbia, do hereby certify

 4    that these proceedings took place before me at the

 5    time and place herein set out, and the proceedings

 6    were recorded stenographically by me and this

 7    transcript is a true record of the proceedings.

 8

 9       I further certify that I am not of counsel to

10    any of the parties, nor an employee of counsel nor

11    related to any of the parties, nor in any way

12    interested in the outcome of this action.

13

14

15

16                      _____

17                      BARBARA DeVICO, CRR, RMR

18

19    _____

20    My Commission Expires:

21    July 31, 2023

22

23

24

25
```

Jasmine Riggins

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA


- - - - - - - - - - - - - - - - X

MONIQUE RUSSELL, JASMINE         :

RIGGINS, ELSA M. POWELL          :

and DESIRE EVANS,                : Civil Action No.

          Plaintiffs,            :  18-5629

v.                               :

EDUCATIONAL COMMISSION FOR       :

FOREIGN MEDICAL GRADUATES,       :

          Defendant.             :

- - - - - - - - - - - - - - - - X


Volume II

Continued Videotaped Deposition Of JASMINE RIGGINS

Washington, D.C.

Monday, September 16, 2019

9:56 a.m.



Job No. 88391

Pages:  44 - 145

Reported by:  Dana C. Ryan, RPR, CRR, CSR (GA)

Jasmine Riggins

Page 45

1

2

3

4

5                                September 16, 2019

6                                9:56 a.m.

7

8

9

10          Continued Videotaped Deposition of JASMINE

11     RIGGINS, held at the law offices of Morgan, Lewis

12     & Bockius, LLP, 1111 Pennsylvania Avenue,

13     Northwest, Washington, D.C., before Dana C. Ryan,

14     Registered Professional Reporter, Certified

15     Realtime Reporter, Certified Shorthand Reporter

16     (GA) and Notary Public in and for the District of

17     Columbia.

18

19

20

21

22

23

24

25

Jasmine Riggins

1              A P P E A R A N C E S

2

3    ON BEHALF OF THE PLAINTIFFS:

4         CORY L. ZAJDEL, Esquire

5         Z Law, LLC

6         2345 York Road, #B-13

7         Timonium, Maryland 21093

8         Telephone:  (443) 213-1977

9         Email: clz@zlawmaryland.com

10

11   ON BEHALF OF THE DEFENDANT:

12        BARRY W. SHAFFER, Esquire

13        MATTHEW D. KLAYMAN, Esquire

14        Morgan, Lewis & Bockius, LLP

15        1701 Market Street

16        Philadelphia, Pennsylvania 19103

17        Telephone: (215) 963-5100

18        Email: barry.shaffer@morganlewis.com

19        Email: matthew.klayman@morganlewis.com

20

21   Also present:

22        David Campbell, Videographer

23

24

25

Jasmine Riggins

1               C O N T E N T S

2   EXAMINATION OF JASMINE RIGGINS:          PAGE:

3   By Mr. Klayman                              51

4   By Mr. Shaffer                             111

5

6

7

8               E X H I B I T S

9        (Attached to the Transcript)

10  RIGGINS DEPOSITION                         PAGE:

11  Exhibit 2    September 23, 2016 J Unity      71

12               Health Care Progress Note

13               For Jasmine Riggins, Bates

14               Stamped Plaintiffs0000006408

15               Through 0000006411

16  Exhibit 3    February 19, 2017 J Unity      78

17               Health Care Progress Note

18               For Jasmine Riggins, Bates

19               Stamped Plaintiffs0000007576

20               Through 0000007579

21

22

23

24

25

Jasmine Riggins

```
 1        E X H I B I T S   C O N T I N U E D

 2            (Attached to the Transcript)

 3    RIGGINS DEPOSITION                          PAGE:

 4    Exhibit 4    Plaintiff Jasmine Riggins'       82

 5                 Supplemental Answers To First

 6                 Set Of Interrogatories And

 7                 Supplemental Responses To

 8                 First Set Of Requests For

 9                 Production Of Documents

10    Exhibit 5    September 7, 2017 J Unity        87

11                 Health Care Progress Note

12                 For Jasmine Riggins, Bates

13                 Stamped Plaintiffs0000006442

14                 Through 0000006444

15    Exhibit 6    October 13, 2017 J Unity         90

16                 Health Care Progress Note

17                 For Jasmine Riggins, Bates

18                 Stamped Plaintiffs0000006478

19                 Through 000000479

20    Exhibit 7    Class Action Complaint           95

21    Exhibit 8    November 9, 2017 J Unity         96

22                 Health Care Progress Note

23                 For Jasmine Riggins, Bates

24                 Stamped Plaintiffs0000006480

25                 Through 0000006482
```

Jasmine Riggins

```
 1        E X H I B I T S   C O N T I N U E D

 2              (Attached to the Transcript)

 3    RIGGINS DEPOSITION                          PAGE:

 4    Exhibit 9    Complaint Filed To Initiate     101

 5                 The Lawsuit On November 14,

 6                 2018

 7    Exhibit 10   April 18, 2019 J Unity          103

 8                 Health Care Progress Note

 9                 For Jasmine Riggins, Bates

10                 Stamped Plaintiffs0000006488

11                 Through 0000006490

12    Exhibit 11   Plaintiff Jasmine Riggins'      105

13                 Responses To Defendants'

14                 Requests For Admissions,

15                 Bates Stamped

16                 Plaintiffs0000006513 Through

17                 0000006537

18    Exhibit 12   Stipulation Of Dismissal        114

19                 Without Prejudice, Bates

20                 Stamped Plaintiffs0000118860

21                 Through 0000118863

22    Exhibit 13   First Amended Class Action       120

23                 Complaint

24    Exhibit 14   Claimants' Certificate Of        124

25                 Merit
```

Jasmine Riggins

1               P R O C E E D I N G S

2               THE VIDEOGRAPHER:  We are now on the

3    record.  My name is David Campbell.  I am the

4    videographer for Golkow Litigation Services.

5               Today's date is September 16th, 2019,

6    and the time is 9:56 a.m.

7               This video deposition is being held at

8    1111 Pennsylvania Avenue, Northwest, Washington,

9    D.C. 20004, in the matter of Monique Russell, et

10   al., versus Educational Commission for Foreign

11   Medical Graduates.  This is in the United States

12   District Court for the Eastern District of

13   Pennsylvania, Number 18-5629.

14               The deponent today is Jasmine Riggins.

15               The court reporter is Dana Ryan.

16               Counsel, will you please identify

17   yourselves for the record, and then the court

18   reporter will please swear in the witness and we

19   can proceed.

20               MR. ZAJDEL:  Cory Zajdel on behalf of

21   Ms. Riggins.

22               MR. SHAFFER:  Brian Shaffer on behalf

23   of defendant Educational Commission for Foreign

24   Medical Graduates.

25               MR. KLAYMAN:  Matthew Klayman, counsel

```
 1  for the Educational Commission for Foreign Medical

 2  Graduates, the defendant.

 3           (Mr. Shaffer exits the deposition

 4  proceedings.)

 5           - - - - - - - - - - - - - -

 6               JASMINE RIGGINS,

 7  having been duly sworn, testified as follows:

 8           - - - - - - - - - - - - - -

 9      EXAMINATION BY COUNSEL FOR THE DEFENDANT

10      BY MR. KLAYMAN:

11      Q      Good morning, Ms. Riggins.

12      A      Good morning.

13      Q      We met a moment ago, but I'm Matthew

14  Klayman.  I'm colleagues with Brian Shaffer.  I'm

15  going to ask you some questions this morning.

16      A      Okay.

17      Q      We're picking up from a deposition that

18  began on Thursday; correct?

19      A      Correct.

20      Q      Now, between Thursday and today, have

21  you had any substantive communications about your

22  testimony with anybody?

23      A      No.

24      Q      Have you done any independent research

25  about the substance of your testimony or the facts
```

Jasmine Riggins

Page 52

1   or circumstances of the case?

2        A     No.

3        Q     I understand that on Thursday you were

4   asked about certain communications that you had

5   with Monique Russell.

6              Do you -- do you remember that?

7        A     Yes.

8        Q     Certain written communications.

9              And I understand that you are -- that

10  there was some discussion about you going to look

11  for them or gather them.

12             Do you recall that?

13       A     Correct.

14       Q     Did you do anything like that?

15       A     I have not.

16       Q     Were you asked to do that?

17             MR. ZAJDEL:  Objection.  That would be

18  attorney-client privilege.

19             Well, to the extent you're not asking

20  attorney-client privilege, I could see how that

21  would be answerable.

22             So you can answer the question to the

23  extent he's not asking you about communications

24  between you or any of your attorneys.

25             THE WITNESS:  Okay.  So could you

Jasmine Riggins

```
 1   repeat your question?

 2         BY MR. KLAYMAN:

 3      Q     So were you asked to look for copies of

 4   communications you had with Monique Russell?

 5      A     Yes.

 6      Q     Did you find any communications with

 7   Monique Russell?

 8      A     I didn't look for them.

 9      Q     Oh, you didn't look for them?

10      A     No.

11      Q     Okay.  Is that something you would be

12   willing to do?

13      A     Yes.

14      Q     Okay.  Is that -- when do you think

15   you'd be able to complete a search for

16   communications you had with Monique Russell?

17      A     I will try to get that done by the end

18   of this week.

19      Q     Okay.

20      A     Yes.

21      Q     Great.

22            This was the subject of written

23   communications from Mr. Shaffer, my colleague, so

24   I want to just make sure that we have on the

25   record that you'll go take a look and that
```

Jasmine Riggins

1    **responsive communications would be produced.**

2              MR. ZAJDEL:  Well, she testified she

3    will look for them and she'll produce them to me,

4    and then we'll decide whether it's discoverable,

5    and if they are, we'll produce them.

6              MR. KLAYMAN:  Sure.

7         BY MR. KLAYMAN:

8         **Q     Now, at the beginning of your**

9    **deposition on Thursday, I understand Mr. Shaffer**

10   **went through some -- some ground rules about**

11   **telling the truth, not speaking over one another,**

12   **that kind of thing.**

13             **Do you remember that?**

14        A     Yes.

15        **Q     Is that -- I just want to make sure**

16   **that we're still on the same page, so I don't --**

17   **so if you could, to make sure that the transcript**

18   **is clear, I won't speak over you and you won't**

19   **speak over me.**

20        A     We didn't --

21        **Q     Do you --**

22        A     -- have --

23        **Q     -- understand?**

24        A     -- that issue.

25        **Q     Great.**

Jasmine Riggins

```
 1       A       We didn't have that issue at all.
 2       Q       Just making sure.
 3       A       No, that was not an issue.
 4       Q       Okay.  Great.
 5               Okay.  Now, we're here today because
 6       you've brought a lawsuit against the Educational
 7       Commission for Foreign Medical Graduates; correct?
 8       A       Correct.
 9       Q       I'm going to refer to them as ECFMG, so
10       you'll understand what I mean when I say ECFMG?
11       A       Correct.
12       Q       And you allege that you've suffered
13       emotional distress; correct?
14       A       Correct.
15       Q       And that distress was the result of
16       learning about Dr. Akoda's guilty plea; is that
17       correct?
18       A       I'm sorry?
19       Q       So the -- the emotional distress that's
20       the subject of the lawsuit --
21       A       Uh-huh.
22       Q       -- when did that start?
23       A       Right when I found out about him being
24       a fake doctor.
25       Q       And when about was that, if you recall?
```

Jasmine Riggins

```
 1       A      A couple of years ago.
 2       Q      Was it, you know, talking 2015, 2016?
 3       A      Yeah, around that time, 2016.
 4       Q      Okay.  Now, is emotional distress the
 5   only injury that you're suing for in this lawsuit?
 6       A      Correct.
 7       Q      And you're suing ECFMG because you
 8   contend that ECFMG is responsible, in whole or in
 9   part, for your emotional distress?
10       A      Correct.
11       Q      Do you also contend that Prince
12   George's Hospital Center is responsible, in whole
13   or in part, for your emotional distress?
14       A      Correct.
15       Q      Do you also contend that the Maryland
16   Board of Physicians is responsible, in whole or in
17   part, for your emotional distress?
18       A      Correct.
19       Q      Do you also contend that Dr. Abdul
20   Chaudry is responsible, in whole or in part, for
21   your emotional distress?
22       A      Correct.
23       Q      Do you also contend that the American
24   Board of Obstetricians and Gynecologists are
25   responsible, in whole or in part, for your
```

Jasmine Riggins

1    emotional distress?

2          A      Correct.

3          Q      **So you would say that anyone that you**

4    **contend did anything to enable Dr. Akoda to**

5    **practice medicine is responsible, in whole or in**

6    **part, for your emotional distress?**

7          A      Correct.

8          Q      **Tell me about your emotional distress.**

9          A      I feel angry, sad, embarrassed,

10   ashamed.  My emotions are, like, all over the

11   place.  I can't even put them into as many words

12   that I can think of.  I just can't believe that

13   someone would do that.  It's beyond me.

14         Q      **And when you say "that," what are you**

15   **referring to?**

16         A      To pretend to be someone that they're

17   not, to practice something that they had no rights

18   to practice without the proper process of it all.

19         Q      **And by "proper process of it all," what**

20   **do you mean?**

21         A      Going about it the correct way.

22         Q      **And by "the correct way," you mean**

23   **what?**

24         A      Receiving proper documents, being

25   truthful, being honest, doing the things that a

Jasmine Riggins

1   real doctor would do.

2       Q       So you're saying that a real doctor

3   would be honest?

4       A       Correct.

5       Q       And someone who is not honest is not a

6   real doctor?

7       A       No, not necessarily.  But if you're

8   pretending to be something that you're not, that's

9   not being honest.

10      Q       And by "something that you're not,"

11  what do you mean?

12      A       Not a real doctor.  By practicing on

13  women, you have no rights to do that, period, if

14  you don't have the proper credentials.  Just going

15  through school, anything that you need to do

16  properly to become a doctor, you should do that

17  before you do anything that a doctor does.

18      Q       Do you know one way or the other if

19  Dr. Akoda went to medical school?

20              MR. ZAJDEL:  Objection: asked and

21  answered.

22              But you can answer.

23              THE WITNESS:  No, I do not.

24  BY MR. KLAYMAN:

25      Q       Now, getting back to when you first

Jasmine Riggins

```
1    learned about the basis for this lawsuit, you

2    learned about it from Facebook; is that correct?

3         A    Correct, from --

4         Q    And that was from a post by Monique

5    Russell?

6         A    Correct.

7         Q    And that's one of the communications

8    that we were talking about this morning; right?

9         A    Correct.

10        Q    So -- so you'll go take a look to see

11   if you can find that post that Monique Russell

12   made that you saw?

13        A    I can try to find that, yes.

14        Q    Now, with respect to your emotional

15   distress, do you have anxiety or worry?

16        A    When it comes to physicians.

17        Q    So not in general?

18        A    No, not necessarily.

19        Q    Do you have a depressed mood?

20        A    No.

21        Q    Do you have suicidal thoughts?

22        A    No.

23        Q    Are you able to laugh and see the funny

24   side of things?

25        A    Yes.
```

Jasmine Riggins

```
 1        Q      Do you look forward with enjoyment to
 2   things?
 3        A      Yes.
 4        Q      Do you blame yourself unnecessarily
 5   when things go wrong?
 6        A      No.
 7        Q      Are you anxious or worried for no good
 8   reason?
 9        A      No.
10        Q      Do you feel scared or panicky for no
11   good reason?
12        A      No.
13        Q      Do you feel that things are getting on
14   top of you?
15               MR. ZAJDEL:  Objection.  It --
16               You can answer the question.
17               THE WITNESS:  What -- what do you mean?
18        BY MR. KLAYMAN:
19        Q      Do you feel that things overwhelm you
20   sometimes?
21        A      Yes.
22        Q      Do you have difficulty sleeping?
23        A      Sometimes.
24        Q      How long has that been going on?
25        A      For some time -- quite some time.
```

Jasmine Riggins

```
 1         Q        If you had to give your best estimate,
 2    are we talking a few -- a few weeks, many years?
 3         A        Yeah, probably like a couple of years.
 4         Q        Couple of years?
 5         A        (Witness nods head.)
 6         Q        If you had to give your best estimate
 7    about when that began --
 8         A        I can't.
 9         Q        You can't.
10                  Do you feel sad or miserable?
11         A        Not miserable, no.  I -- I mean, in
12    general, no, not sad.
13         Q        Are you so unhappy that you cry?
14         A        Are we, like, in general?  At times --
15    I feel like these questions can be -- at times I
16    can feel sad to the point where I want to cry, so
17    are you speaking in general, at times?
18         Q        Sure.
19                  Let's say over the last six months,
20    have you -- have you at any time been so unhappy
21    that you've cried?
22         A        Yes.
23         Q        And do you recall what made you
24    unhappy?
25         A        Yes.
```

Jasmine Riggins

1        **Q       And what was that?**

2        A       I don't want to talk about it.

3        **Q       I -- I understand that you might not**

4    **want to talk about it, but you're under oath so**

5    **I -- I need an answer to the question.**

6                MR. ZAJDEL:  Objection.  If it's

7    unrelated -- if the question is related to the

8    case, then I would agree she would have to talk

9    about it.  But if it's -- I'm sorry, if she's

10   saying it's unrelated to the case, I don't know

11   why it would be relevant.

12               MR. KLAYMAN:  Well, it's -- she's

13   bringing a claim for emotional distress, so other

14   things going on in her life that might be factors

15   in emotional distress that she's suffering is

16   directly relevant to the claim.

17               MR. ZAJDEL:  Well, I wouldn't agree

18   with that.  I'll have --

19               MR. KLAYMAN:  Let me -- maybe I'll --

20   let me try a question.

21        BY MR. KLAYMAN:

22        **Q       Is the cause of that unhappiness that**

23   **you referred to completely unrelated to the facts**

24   **of this case?**

25        A       Sometimes.  So the things that make me

Jasmine Riggins

1   unhappy for -- so far as this case, just knowing

2   what I know about it, the way it makes me feel,

3   the fact that I had to -- I got a second -- second

4   C-section, and I didn't have to get that.  That

5   makes me very unhappy sometimes, yes.

6          **Q       But to your testimony just now, there**

7   **are other things going on in your life that also**

8   **make you very unhappy or, as I asked, so unhappy**

9   **that you cry?**

10         A       Okay.  So there's one thing.  My

11  grandmother had back surgery and it made me sad.

12  That was about it.

13         **Q       I'm sorry to hear that.  That just --**

14         A       Yeah, so . . .

15         **Q       And that's what you were referring to**

16  **when you --**

17         A       Correct.

18         **Q       -- said you'd rather not talk about it?**

19         **Now, does the thought of harming**

20  **yourself occur to you?**

21         A       No.

22         **Q       Do you have post-traumatic stress**

23  **disorder because of the events giving rise to this**

24  **lawsuit, sometimes known as PTSD?**

25         A       No.

Jasmine Riggins

1      Q     Have you suffered any physical distress

2  after learning about Dr. Akoda in -- from Monique

3  Russell's Facebook post?

4      A     Physically -- no, not necessarily.

5      Q     When you say "not necessarily," is that

6  a no?

7      A     No.

8      Q     Have you ever been diagnosed with

9  depression?

10     A     No.

11     Q     Have you ever seen a medical

12  professional to discuss depression?

13     A     No.

14     Q     Have you ever discussed your emotional

15  distress with a medical professional?

16     A     No.

17     Q     If you were asked by a medical

18  professional about your emotional distress, would

19  you tell the truth?

20     A     Yes.

21     Q     And if you had been asked by a medical

22  professional in the past about your emotional

23  distress, you would have told the truth?

24     A     Yes.

25     Q     Do you typically tell the truth to

Jasmine Riggins

1    medical professionals when they ask you questions

2    in the course of treatment?

3         A    Yes.

4         Q    Have you always told the truth to

5    medical professionals when they're treating you?

6         A    Yes.

7         Q    When was the last time you saw a

8    medical professional for treatment, any -- any

9    medical professional?

10        A    Okay.  I went to the doctor last month,

11   not -- yeah, last month I had a doctor's

12   appointment.

13        Q    So that would be -- I forget what

14   month -- August?

15        A    Yes, in August.

16        Q    August of 2019?

17        A    Yes.

18        Q    Okay.  And where was that?

19        A    That was Unity Health Care.

20        Q    What is Unity Health Care?

21        A    It's a doctor's office.  It's a clinic.

22        Q    If you recall -- do you recall which

23   doctor you were seeing?

24        A    Dr. King.

25        Q    Dr. King.

Jasmine Riggins

| 1  |   | Do you know Dr. King's first name? |
|----|---|---|
| 2  | A | I don't recall. |
| 3  | Q | Is Dr. King a man or a woman? |
| 4  | A | A woman. |
| 5  | Q | What kind of doctor is Dr. King? |
| 6  | A | She's a physician. |
| 7  | Q | Is she a specialist or a general |
| 8  |   | practitioner, if you know? |
| 9  | A | I don't recall. |
| 10 | Q | Were you going for a routine physical? |
| 11 | A | Correct. |
| 12 | Q | How did you choose Dr. King as your |
| 13 |   | doctor? |
| 14 | A | Well, I was referred to her. |
| 15 | Q | Okay.  And referred by whom? |
| 16 | A | My cousin. |
| 17 | Q | Okay.  Your cousin. |
| 18 |   | And who is your cousin? |
| 19 | A | You need her name? |
| 20 | Q | Just for the record, yeah. |
| 21 | A | Oh, okay.  Her name is Davida Limes. |
| 22 | Q | How do you spell the last name? |
| 23 | A | L-I-M-E-S. |
| 24 | Q | L-I-M-E-S. |
| 25 |   | So -- so your cousin referred you to |

Jasmine Riggins

1    Dr. King.

2            Did you do anything to research

3    Dr. King before you went to see her for treatment?

4        A    Yes.

5        Q    What did you do?

6        A    I asked my cousin about her.  I went to

7    the doctor's office to meet her prior to my visit.

8        Q    So you met Dr. King once before you

9    became a patient?

10       A    Yes.

11       Q    Did you look at Dr. King's resume?

12       A    No.

13       Q    Did you ask for references beyond that

14   of your cousin?

15       A    No.

16       Q    Did you check to see if Dr. King had

17   any specific credentials or certificates?

18       A    No.

19       Q    Did you ask to see Dr. King's test

20   scores or medical school transcript or anything

21   like that?

22       A    No.

23       Q    Have you ever switched doctors?

24       A    Yes.

25       Q    So if you don't like a doctor you're

Jasmine Riggins

1    seeing, you -- you find a new doctor?

2         A    Yes.

3         Q    Now, other than to deliver a child,

4    have you ever been hospitalized?

5         A    Yes.

6         Q    And when was that?

7         A    I think it was 2015, I believe.

8         Q    And what was the reason for the

9    hospitalization?

10        A    My birth control was giving me some bad

11   side effects.

12        Q    Do you remember how long you were in

13   the hospital?

14        A    I'm just a -- overnight, maybe a few

15   hours.

16        Q    What was that?  I'm sorry.

17        A    It was late morning, and I didn't leave

18   until, like, the next morning, so I don't know if

19   that's considered overnight or a few hours or --

20        Q    Sure.

21             But you came in on one date and you

22   left on the next date?

23        A    It was the same day I got there, maybe

24   midnight; and I left maybe 9:00 in the next

25   morning.

Jasmine Riggins

1      Q      Oh, I see.

2      A      So that's why -- yeah, I didn't know if

3  that was -- just to be technical.

4      Q      I appreciate that.

5             So you got in really late at night or

6  really early in the morning?

7      A      Yeah.

8      Q      Depending on how you're looking at it,

9  I guess?

10     A      Yes.

11     Q      And then you left on the same date; it

12 was just several hours later?

13     A      Correct.

14     Q      Any other times that you were

15 hospitalized that you recall other than child

16 birth, again?

17     A      No, not that I can recall.

18     Q      Have you ever been to an emergency

19 room?

20     A      Yes.

21     Q      About how many times?

22     A      A few.  I don't recall.

23     Q      Do you recall what -- what was the

24 reason for going to the emergency room?

25     A      Being sick, you know.

Jasmine Riggins

1        Q        A variety of reasons?

2        A        Yes.   Correct.

3        Q        Anything traumatic like a -- for a car

4    accident, for example, or --

5        A        No.

6        Q        All right.   Do you have health

7    insurance?

8        A        Yes.

9        Q        Does insurance play a role in which

10   medical professionals you use?

11       A        Yes.

12       Q        Tell me about what role it plays.

13       A        Because of the insurance, I have these

14   certain doctors I can go -- certain offices that

15   accepts my insurances, and some doesn't.

16       Q        What insurance is that, if -- if you

17   know?

18       A        Amerigroup.

19       Q        Does your insurance company assign you

20   doctors?

21       A        Yes, but you don't have to stick with

22   that doctor.

23       Q        Okay.   So -- so the -- so am I right to

24   say that the insurance company will assign you a

25   doctor, but then you have the choice to then go to

Jasmine Riggins

```
 1    some -- another doctor if you prefer?

 2        A    Correct.

 3        Q    Did you have insurance when you were

 4    treated by Dr. Akoda?

 5        A    Yes.

 6        Q    Do you remember if he was in network or

 7    if he -- if he -- if his treatment was covered by

 8    insurance?

 9        A    Yes.

10        Q    Okay.

11             (Riggins Deposition Exhibit 2 was

12    marked for identification and attached to the

13    transcript.)

14        BY MR. KLAYMAN:

15        Q    So --

16             THE COURT REPORTER:  Wait a minute.

17        BY MR. KLAYMAN:

18        Q    The court reporter --

19             THE COURT REPORTER:  Let me give it to

20    her.

21             There you go.  Thank you.

22        BY MR. KLAYMAN:

23        Q    So you've just been handed a document

24    that we've marked Riggins 2.  It's a record

25    produced by the plaintiffs that they received from
```

Jasmine Riggins

Page 72

1    Unity Health Care which is the company we were

2    just discussing; right?

3         A    Yes.

4         Q    Okay.  And you see that it's dated

5    September 23rd, 2016?

6         A    Yes.

7         Q    And just for the record, it's Bates

8    number Plaintiffs, and then a bunch of zeros, and

9    then 6408.  So if I ask you to turn to a

10   particular page as we go through, I'm just going

11   to refer to the number at the end of --

12        A    Okay.

13        Q    -- that stamp.  We call it a Bates

14   stamp.  I don't know who Mr. Bates was.

15             So I want to ask you a couple of

16   questions about this.  Do you recall -- how long

17   have you been a patient at Unity Health Care?

18        A    It's been years.  I don't recall the

19   exact year, but I've always been in that area with

20   that doctor, this office.

21        Q    This office?

22        A    Yeah.

23        Q    So -- so this would have been your

24   doctor's office in September 2016?

25        A    Correct.

Jasmine Riggins

1       Q       Do you know who Alison Lesht is?   Her

2   name is on the top right next to progress note.

3       A       I don't recall.

4       Q       From the "NP," I would gather that

5   she's a nurse practitioner.

6               Does that refresh your recollection

7   or --

8       A       No.

9       Q       Now, you see the first bolded language

10  at the top of page 6408, it says, Reason for

11  Appointment.

12              Do you see that?

13      A       Yes.

14      Q       And it says, Medical - Adult EST

15  Patient.   That was next to 1.

16              And then 2, Accepted HIV Test - Serum

17  Test Needed.

18              3, Physical Exam.

19              Do you see that?

20      A       Yes.

21      Q       Does that sound like the kinds of

22  treatment you've gotten from Unity Health Care in

23  the past?

24      A       Yes.

25      Q       Okay.   So next it says, History of

Jasmine Riggins

1    Present Illness.  And then it starts, PHQ-2.

2              Do you know what PHQ-2 means?

3       A     No.

4       Q     So in the text underneath it, it says,

5    PHQ-2 Little interest or pleasure in doing things.

6    And then it again repeats, Little interest or

7    pleasure in doing things: No.  Feeling down,

8    depressed or hopeless: No.

9              Do you see that?

10      A     Yes.

11      Q     Were those questions that you were

12   asked?

13      A     I don't recall.

14      Q     You don't recall.

15              But in September 2016, were those true

16   statements?

17      A     Yes.

18      Q     And it wouldn't surprise you if you had

19   told that to your treating physician --

20      A     No.

21      Q     -- if asked these questions?

22      A     Right.

23              No.

24      Q     If you could turn to the next page, so

25   it's Bates 6409.  Under Family History, which is

Jasmine Riggins

1    the first item at the top, in the third line down
2    all the way on the right, it says, Two sons -
3    Healthy.
4              Is that -- do you see what I'm -- what
5    I'm referring to?
6    A    Yes.
7    Q    Was that true at the time -- that was
8    true at the time that this was written; right?
9    A    Yes.
10   Q    All right.  Now, under -- moving on to
11   the next section, which is Social History, we're
12   going to go through -- the first one is tobacco
13   use.  And it says, Tobacco Use Questions Current
14   or past tobacco use:  Current some day smoker.
15             Do you see that?
16   A    Yes.
17   Q    Was that -- and that was true and
18   correct in September 2016?
19   A    Correct.
20   Q    Skipping ahead to Drug/Alcohol Use, do
21   you see where I'm --
22   A    Yes.
23   Q    Do you see where I am?
24   A    Yes.
25   Q    So it says, Drug Use Questions.  Date

1   **updated 09/23/2016.  Past or current drug use?**

2   **Yes - current use.  Which drugs used:  Marijuana.**

3   **Current Use/Frequency - Marijuana: occasionally.**

4           **Alcohol Use Questions.  Dated updated:**

5   **09/23/2016.  Past or current alcohol use:  Yes.**

6   What type of alcohol?  Wine.  (One drink equals

7   one glass equals five ounces.)  How often?  Once

8   or a few times a week.  How many drinks in one

9   sitting?  Four drinks (guideline for max per

10  sitting, for men).

11          Did I read that right?

12      A    Uh-huh.

13      **Q    Was that true and acc- -- and that was**

14  **true and accurate in September 2016?**

15          MR. ZAJDEL:  Objection.  And I'm going

16  to instruct the witness not to answer the question

17  with respect to marijuana use.

18          You can answer the rest of that

19  question.

20      BY MR. KLAYMAN:

21      **Q    So you can -- yeah, you can go ahead.**

22      A    Okay.  So to the drinking, yes.

23          MR. KLAYMAN:  Are you -- are you

24  instructing her to assert her Fifth Amendment

25  privilege?

Jasmine Riggins

1          MR. ZAJDEL:  Yes.  You're -- you're

2   asking a question about -- I've instructed her not

3   to answer, and --

4          MR. KLAYMAN:  I'm just trying to

5   understand the basis.  Is it the Fifth Amendment?

6          MR. ZAJDEL:  Yes.

7       BY MR. KLAYMAN:

**8       Q     And you're accepting counsel's**

**9   instruction not to answer?**

10      A     Yes.

11         MR. ZAJDEL:  Also, just -- and I'm not

12   trying to make a speaking objection.  I just want

13   to put on the record -- and we did this in the

14   previous deposition -- that there's a -- with all

15   these medical records and some testimony will be

16   some information that we think deserves a

17   confidentiality stamp.  We just want to reserve

18   the right to mark anything confidential before a

19   final transcript is released, including any

20   exhibits.

21         MR. KLAYMAN:  Okay.  That's -- that's

22   a -- your comment is noted, and we can -- we can

23   discuss that.

24      BY MR. KLAYMAN:

**25      Q     Now, going down to the section on OB**

Jasmine Riggins

1    History.  If you'll see, it's right in the middle
2    of that page?
3         A    Yes.
4         Q    It says, Total pregnancies, four;
5    abortions, two; C-sections, two.
6              Do you see that?
7         A    Yes.
8         Q    Was that a true -- that was a true and
9    accurate statement in September 2016; correct?
10        A    Correct.
11        Q    When, if you recall, were the
12   abortions?  Ballpark time period.
13        A    I don't recall.
14        Q    Were they -- do you recall if they were
15   before the C-sections?
16        A    Yes.
17        Q    And they -- and they were before the
18   C-sections?
19        A    Yes.
20        Q    Okay.  I'm sorry.  I just -- I asked a
21   bad question, so . . .
22             (Riggins Deposition Exhibit 3 was
23   marked for identification and attached to the
24   transcript.)
25             BY MR. KLAYMAN:

Jasmine Riggins

1        Q        So the court reporter just handed you

2    the document beginning with Bates number 7576

3    that's been marked Riggins Exhibit 3.

4                And this, again, is a Unity Health Care

5    record; right?

6        A        Yes.

7        Q        And the date for this one is

8    February 19th, 2017.  Do you see that --

9        A        Yes.

10       Q        -- on the top left?

11               And you were still a patient at Unity

12   Health Care at this time?

13       A        Yes.

14       Q        Have you been a patient at Unity Health

15   Care continuously from, I guess, the last record,

16   September 2016, at least until today?

17       A        Correct.

18       Q        And, again, next to the progress note,

19   it says Martine H. Tchinda, NP.

20               Do you know who Martine H. Tchinda, NP

21   is?

22       A        No.

23       Q        But, again, the "NP" seems to signify

24   nurse practitioner, so it could be someone that

25   treated you; correct?

Jasmine Riggins

1           MR. ZAJDEL:  Objection.

2           THE WITNESS:  Right.

3       BY MR. KLAYMAN:

4       Q       So moving down to the reason for

5  appointment.  Do you see where I'm at?

6       A       Yes.

7       Q       It says, 1, Medical - Walk-in pregnancy

8  test.

9               Does that sound like a reason you

10  would -- does that refresh your recollection --

11  let me strike that.

12              Do you recall why you were going to

13  Unity Health Care in February 2017?

14      A       Yes.

15      Q       And why was that?

16      A       For a pregnancy test.

17      Q       If you skip down to the section on

18  surgical history -- that's still on page 7576.

19  It's the third bolded section from the bottom.

20              Do you see where it is?

21      A       Yes.

22      Q       So it says, C-sections times two;

23  surgical abortion 2/2016.

24              Do you see that?

25      A       Yes.

Jasmine Riggins

Page 81

```
 1        Q      Does that refresh your recollection at
 2   all about when the abortions happened?
 3        A      Yes.
 4        Q      And when did those happen?
 5        A      2016.
 6        Q      2016.
 7        A      About that time somewhat.
 8        Q      Now, if you move out -- move on to the
 9   next page, so 7577.  I'm looking at smack in the
10   middle where it says, Review of Systems.
11              Do you see that in the bolded language?
12        A      Yes.
13        Q      So if you go down to the last
14   underlined item in that section where it says,
15   Psych, do you see that?
16        A      Yes.
17        Q      And it says, Negative for
18   anxiety/worry, depressed mood, suicidal thoughts.
19              Did I read that right?
20        A      Yes.
21        Q      And that was a true and accurate --
22   accurate statement of your well-being in
23   February 2017?
24        A      Yes.
25              MR. KLAYMAN:  That will be 4.
```

Jasmine Riggins

1           (Riggins Deposition Exhibit 4 was

2    marked for identification and attached to the

3    transcript.)

4         BY MR. KLAYMAN:

5         **Q      So the court reporter has just handed**

6    **you the document that's been marked Riggins**

7    **Exhibit 4.**

8              **Do you recognize the document?**

9         A     I can't say yes or no.

10        **Q      Are you familiar with -- with**

11   **interrogatories?**

12        A     Yes.

13        **Q      So -- so as you can see from the title**

14   **there, this document is entitled, Plaintiff**

15   **Jasmine Riggins' Supplemental Answers to First Set**

16   **of Interrogatories and Supplemental Responses to**

17   **First Set of Requests for Production of Documents.**

18        A     Uh-huh.

19        **Q      Right?**

20        A     Yes.

21        **Q      So these are discovery requests that**

22   **were served by your counsel on ECFMG in response**

23   **to certain interrogatories and document requests.**

24             **Does it -- and if you turn to the back,**

25   **let's see, there's a long list of names, but right**

Jasmine Riggins

1    before that, there's a certificate of service, and
2    then the page before that, there's a page called
3    Verification.
4         A     Oh, yeah.
5         Q     It has a 14 at the bottom.
6               Do you see that?
7         A     Yes.
8         Q     Okay.  And it says, I, Jasmine Riggins,
9    hereby aver that the factual statements in the
10   foregoing answers to interrogatories are true and
11   correct to the best of my knowledge, information
12   and belief, and that these answers are made
13   subject to the penalties relating to unsworn
14   falsification to authorities.
15              Right?
16        A     Yes.
17        Q     And then it's dated June 13, 2019; is
18   that right?
19        A     Yes.
20        Q     And then there's a line for -- and a
21   signature that -- are those your signature for
22   Jasmine Riggins?
23        A     Yes.
24        Q     Does that refresh your recollection
25   about if whether you've seen this document before?

Jasmine Riggins

Page 84

```
 1      A      Yes.
 2      Q      Earlier today, you testified that you
 3   weren't sure of when you saw the Facebook post
 4   from Monique Russell.
 5             Do you recall that?
 6      A      You said that I wasn't sure that --
 7      Q      Yeah, that you said you weren't sure.
 8      A      Okay.
 9      Q      Of the date; is that right?
10      A      The date, yes.
11      Q      Yes.
12      A      Correct.
13      Q      So if you could turn to page 3 of the
14   interrogatories.
15      A      Okay.
16      Q      I'll just direct you to the very
17   bottom, the first full line where it says,
18   Plaintiff began experiencing these injuries when
19   she learned in July 2017 that Akoda was not really
20   a doctor.
21             Do you see that?
22      A      Yes.
23      Q      Does that refresh your recollection
24   about when you saw Monique Russell's Facebook post
25   about Dr. Akoda?
```

Jasmine Riggins

```
 1        A      Correct.
 2        Q      And -- and when was that?
 3        A      In 2017.
 4        Q      In July 2017; right?
 5        A      Yes.
 6        Q      Okay.  So all of the medical records
 7   that we've looked at so far -- so that would be
 8   Riggins Exhibit 2 and Exhibit 3 -- were from
 9   before July of 2017; right?
10               You can pull them up again if you want
11   to --
12        A      Yeah, they say -- this is 2016.
13               Yes.
14        Q      How soon after learning, as you say in
15   your interrogatory response, that Akoda was not
16   really a doctor, did you begin experiencing
17   emotional distress?
18        A      Immediately once I --
19        Q      Immediately?
20        A      Yeah, once I found out, I just felt
21   really bad, yeah.
22        Q      Did you experience the emotional
23   distress continuously after that time, or was it
24   intermittent?
25        A      Yeah, intermittent.
```

Jasmine Riggins

1       Q       Intermittent?

2       A       Yeah.

3       Q       So it would come and it would go, in

4  other words?

5       A       Yes.

6       Q       How frequently would you experience the

7  emotional distress?

8       A       More often than not, yeah.  The more I

9  thought about it, it weighed on me, yeah.

10      Q       And how often would you think about it?

11      A       Almost every day, every other day.  I

12 tried not to think about it, but it would always

13 come up in my mind.

14      Q       So on page 3 of the -- of Exhibit 4,

15 the second line from the bottom says, Plaintiff

16 has not seen any health care providers for

17 treatment of these injuries.

18              Do you see that?

19      A       Yes.

20      Q       And that was a true and accurate

21 statement when these were -- when you signed the

22 verification in June of 2019; correct?

23      A       Correct.

24      Q       And that's still a true and accurate

25 statement --

Jasmine Riggins

1        A       Correct.

2        Q       -- correct?

3                Have you thought about going to see a

4    health care provider for treatment of your

5    injuries?

6        A       Yeah, I thought about it.

7        Q       And you decided against it?

8        A       It just so -- it was just a thought,

9    like -- yeah, you could say I decided against it.

10   Just wasn't something I really wanted to keep

11   talking about.

12               (Riggins Deposition Exhibit 5 was

13   marked for identification and attached to the

14   transcript.)

15       BY MR. KLAYMAN:

16       Q       So the court reporter has handed you

17   the document that's been marked Riggins Exhibit 5

18   which begins on Bates number 6442.  And this again

19   looks like a Unity Health Care record; right?

20       A       Yes.

21       Q       And in the top left, the date here is

22   September 7th, 2017 --

23       A       Yes.

24       Q       -- is that right?

25               So that's after the July 2017 date that

Jasmine Riggins

1   was referred to in the interrogatories?

2        A    Correct.

3        Q    And up in the top right where it says

4   progress note, this time it says, Yolanda E.

5   Klemmer, CNM.

6             Do you know who Dr. Klemmer is?

7        A    Yes.

8        Q    And who is Dr. Klemmer?

9             MR. ZAJDEL:  Objection: misstates

10  facts.  It says certified nurse --

11            MR. KLAYMAN:  Oh, sure.  I forgot.

12  Forgive me.

13       BY MR. KLAYMAN:

14       Q    So do you know who Yolanda Klemmer is?

15       A    Yes.

16       Q    And who is Yolanda Klemmer?

17       A    She was my OB when I was at Unity.

18       Q    Was it your understanding that she was

19  a medical doctor or that she is a medical doctor?

20            Do you still -- strike that.  Let me

21  start again.

22            Do you still see Yolanda Klemmer?

23       A    No.

24       Q    When was the last time you saw Yolanda

25  Klemmer for treatment?

Jasmine Riggins

```
 1       A      Back in 27 -- 2018 after I had my baby.
 2       Q      But you're not a current patient of
 3  Yolanda Klemmer?
 4       A      No.
 5       Q      And it was your understanding when you
 6  were a patient that she was a medical doctor?
 7       A      Yes.
 8       Q      Would you refer to her as Dr. Klemmer
 9  when you saw her?
10       A      Yes.
11       Q      Now, if you look at, again, the Reason
12  for Appointment --
13              That will be the first bolded language.
14  Do you say where I'm at?
15       A      Yeah.
16       Q      Okay.  So it says, 1, medical - OB
17  visit.  2, prenatal care.
18              And that's a true and accurate
19  statement of the treatment you were receiving from
20  Klemmer in September 2017?
21       A      Yes.
22       Q      Moving on to the next bolded language
23  where it says History of Present Illness, do you
24  see that?
25       A      Yes.
```

Jasmine Riggins

```
 1        Q       So here is again that reference to

 2   PHQ-2.   And it says PHQ-2, little interest or

 3   pleasure in doing things.   Little interest or

 4   pleasure in doing things, no.   Feeling down,

 5   depressed or hopeless, no.

 6                Did I read that right?

 7        A       Yes.

 8        Q       And that's -- and that's a true and

 9   accurate statement of your well-being in

10   September 2017; correct?

11        A       Yes.

12                (Riggins Deposition Exhibit 6 was

13   marked for identification and attached to the

14   transcript.)

15        BY MR. KLAYMAN:

16        Q       So the court reporter just handed you

17   another document.   This one is Riggins Exhibit 6.

18   And it begins on Bates number 6478.   And this also

19   appears to be a Unity Health Care medical record;

20   right?

21        A       Yes.

22        Q       And the date up in the top left is

23   October 13, 2017.

24        A       Yes.

25        Q       And again, next to Progress Note it has
```

Jasmine Riggins

1    Yolanda E. Klemmer; right?

2         A    Yes.

3         Q    And here it says -- go through again

4    what we did in the last record.

5              So Reason for Appointment, 1, medical,

6    dash, OB visit.

7              Do you see that?

8         A    Yes.

9         Q    And that's a true and accurate

10   statement for why you were seeing Yolanda Klemmer

11   in October 2017?

12        A    Yes.

13        Q    Klemmer was treating you in connection

14   with your -- with the birth of your third child;

15   is that right?

16        A    Yes.

17        Q    So again moving down to the PHQ-2,

18   PHQ-2, little interest or pleasure in doing

19   things.  Little interest or pleasure in doing

20   things, no.  Feeling down depressed or hopeless,

21   no.

22              Do you see that?

23        A    Yes.

24        Q    And that's a true and accurate

25   statement of your well-being in October 2017?

```
 1        A      Yes.
 2        Q      Now, moving down to the next underlined
 3   section which is postpartum visit.
 4               So I gather from postpartum that this
 5   is after you gave birth?
 6        A      Yes.
 7        Q      When -- when -- when did you give birth
 8   for -- in 2017?
 9        A      It was on October 2nd.
10        Q      Okay.  So this is within two weeks of
11   the -- of the birth?
12        A      Yes.
13        Q      Okay.  We're going to read through it
14   and I'll ask you a couple of questions.
15               So, Delivery (if not captured in
16   flowsheet), Maternal date of discharge October 4,
17   2017.  Newborn date of discharge, October 4, 2017.
18   Date of delivery, October 2nd, 2017.
19               So that's the same date you just said;
20   right?
21        A      Yes.
22        Q      Right.
23               Intrapartum complications, none.  Type
24   of delivery, C/S.  That's probably a reference to
25   a C-section; is that right?
```

Jasmine Riggins

1        A      I believe so.

2        Q      **You delivered your child in 2017**

3    **through a C-section?**

4        A      Yes.

5        Q      **Place of delivery, Washington Hospital**

6    **Center; is that right?**

7        A      Yes.

8        Q      **Anesthesia, epidural/spinal.  And**

9    **that's the correct method of anesthesia that you**

10   **had during delivery?**

11       A      Correct.

12       Q      **Gender, female.  I take it that**

13   **that's -- I take it that's --**

14       A      Correct.

15       Q      **-- for your daughter?**

16       A      Yes.

17       Q      **Birth weight pounds, 7; birth weight**

18   **ounces, 13.**

19              **So next is postpartum depression**

20   **screening.  I have been able to laugh and see the**

21   **funny side of things: 0 - As much as I always**

22   **could.  I have looked forward with enjoyment to**

23   **things: 0 - As much as I ever did.  I have blamed**

24   **myself unnecessarily when things went wrong: 0 -**

25   **No, never.  I have been anxious or worried for no**

Jasmine Riggins

1  good reason: 0 - No, not at all.  I felt scared or

2  panicky for no good reason: 0 - No, not at all.

3  Things have been getting on top of me:  0 - No, I

4  have been coping as well as ever.  I have been so

5  unhappy that I have had difficulty sleeping: 0 -

6  No, not at all.  I have felt sad or miserable:

7  0 - No, not at all.  I've been so unhappy that I

8  have been crying: 0 - No, never.  The thought of

9  harming myself has occurred to me: 0 - Never.

10  Total score: 0.  Score is 12 or higher:  No.

11  Negative screening result: Yes.

12          Did I read that all correctly?

13      A    Yes.

14      Q    Now, I know that was a lot of

15  questions, but was that a true and correct

16  statement of your well-being in October 2017?

17      A    Correct.

18      Q    And then name of child, Taniya?

19      A    Taniya.

20      Q    Taniya?

21      A    Yes.

22      Q    Oh.  Even better.  Taniya Richardson.

23  Great.

24          Just give me one second while I figure

25  something out.

 1                  So you're the named plaintiff in --
 2      strike that.
 3                  You were a named plaintiff in
 4      litigation relating to Dr. Akoda in Maryland; is
 5      that right?
 6      A      Yes.
 7      Q      Do you recall when that lawsuit was
 8      filed?
 9      A      No, I don't recall.
10             MR. KLAYMAN:   This is 7.
11             (Riggins Deposition Exhibit 7 was
12      marked for identification and attached to the
13      transcript.)
14             BY MR. KLAYMAN:
15      Q      So the court reporter has just handed
16      you a document that's been marked Riggins
17      Exhibit 7.
18                  Do you recognize the document?
19      A      Yes.
20      Q      And what is it?
21      A      It's a class action complaint.
22      Q      And it's in the Circuit Court for
23      Prince George's County, Maryland?
24      A      Correct.
25      Q      And your name is in the top left of the

Jasmine Riggins

Page 96

1    caption, so it says -- right underneath Monique

2    Russell, it says Jasmine Riggins, 312 37th Street,

3    Apartment Number 304, Washington, D.C., 20019?

4         A    Yes.

5         Q    And that's you?

6         A    Yes.

7         Q    And then if you look at the stamp

8    that's kind of sideways on the front page, you see

9    the -- the year is a little fuzzy, I guess, but it

10   looks like 2000 -- to my eye it looks like 2017,

11   September 11.

12             Do you see that?

13        A    Yes.

14        Q    So does that refresh your recollection

15   about when the lawsuit was filed in Maryland?

16        A    Yes.

17        Q    And when was that?

18        A    In September of 2017.

19        Q    Okay.

20             (Riggins Deposition Exhibit 8 was

21   marked for identification and attached to the

22   transcript.)

23        BY MR. KLAYMAN:

24        Q    So the court reporter has handed you a

25   document that's been marked Riggins Exhibit 8, and

Jasmine Riggins

Page 97

1    the Bates number on the bottom is 6480.  And it

2    looks like another united -- Unity Health Care

3    medical record; right?

4         A    Yes.

5         Q    And in the top left of this first page,

6    the date on it is November 9th, 2017.

7              Do you see that?

8         A    Yes.

9         Q    And again, the progress note has

10   Yolanda E. Klemmer; right?

11        A    Yes.

12        Q    And this time the Reason for

13   Appointment is -- you see where I'm at --

14        A    Yes.

15        Q    -- looking at the top?

16             So 1, Medical - OB visit; 2, Pregnancy

17   test; 3, Postpartum exam.

18             Is that a true and correct statement of

19   the reasons you went to Unity Health Care in

20   November 2017?

21        A    Correct.

22        Q    Again, under History of Present

23   Illness, it says at the first couple of lines,

24   PHQ-2, little interest or pleasure of doing

25   things.  Little pleasure or interest in doing

Jasmine Riggins

1    things, no.  Feeling down, depressed or hopeless,

2    no.

3            Do you see that?

4    A    Yes.

5    Q    And that's a true and accurate

6    statement of your well-being in November of 2017?

7    A    Yes.

8    Q    And again if you go down to postpartum

9    visit, so it's underlined, I'm going to skip the

10   first couple of lines, but in the fifth line down

11   right in the middle, do you see the words

12   "postpartum depression screening"?

13   A    Yes.

14   Q    Okay.  I'm just going to read it into

15   the record.  I have been able to laugh and see the

16   funny side of things: 0 - As much as I always

17   could.  I have looked forward with enjoyment to

18   things:  0 - As much as I ever did.  I have blamed

19   myself unnecessarily when things went wrong:  2 -

20   Yes, some of the time.  I have been anxious or

21   worried for no good reason:  0 - No, not at all.

22   I have felt scared or panicky for no good reason:

23   0 - No, not at all.  Things have been getting on

24   top of me:  0 - No, I have been coping as well as

25   ever.  I have been so unhappy that I have had

Jasmine Riggins

1  difficulty sleeping:  0 - No, not at all.  I have

2  felt sad or miserable:  0 - No, not at all.  I

3  have been so unhappy that I have been crying:  0 -

4  No, never.  The thought of harming myself has

5  occurred to me:  0 - Never.  Total score: 2.

6  Score is 12 or higher:  No.  Negative screening

7  result:  Yes.

8          Did I read that all correctly?

9      A   Yes.

10     Q   And is that a true and accurate

11 statement of your well-being in November of 2017?

12     A   Yeah.

13         MR. ZAJDEL:  Objection.

14         THE WITNESS:  Sorry.  Sorry.

15         MR. ZAJDEL:  Objection: compound

16 question.

17         She can answer it.

18         MR. KLAYMAN:  Sure.  So -- so --

19         MR. ZAJDEL:  I think she already did,

20 but --

21    BY MR. KLAYMAN:

22     Q   Yeah.  So each of those -- so each of

23 those is a true statement of your well-being in

24 November 2017?

25     A   Yes.

Jasmine Riggins

1      Q      If you recall earlier, I asked you
2   about your difficulty sleeping.
3             Do you remember I asked you that -- a
4   question about that?
5      A      Yes.
6      Q      So does the statement here from
7   November 2017, I've been so unhappy that I've had
8   difficulty sleeping, 0, no, not at all.  Does that
9   refresh your recollection about when any sleep
10  difficulties you've testified to earlier began?
11     A      Yes, but this is -- I haven't been so
12  unhappy that it caused difficulty sleeping.
13     Q      Oh, okay.  So the difficulty sleeping
14  is unrelated to your emotional distress?
15            MR. ZAJDEL:  Objection.  The question
16  was asked and answered.
17            You can answer -- you can answer the
18  question.
19            THE WITNESS:  What was the question?
20  BY MR. KLAYMAN:
21     Q      The question was so is the difficulty
22  sleeping that you testified to earlier unrelated
23  to your emotional distress?
24     A      Correct.  I'd say that.
25            MR. KLAYMAN:  I'm sorry.  Just give me

Jasmine Riggins

1   one second.

2        BY MR. KLAYMAN:

3        **Q      Do you recall when this lawsuit was**

4   **filed?**

5        A      In 2017?  This one?

6        **Q      So, I'm not talking about the Maryland**

7   **litigation.  I'm talking about the litigation**

8   **that's here against ECFMG that we're here for**

9   **today?**

10       A      I believe it was -- I don't recall.  I

11  don't want to give the wrong day.

12              (Riggins Deposition Exhibit 9 was

13  marked for identification and attached to the

14  transcript.)

15       BY MR. KLAYMAN:

16       **Q      So the court reporter has just handed**

17  **you a document that is marked Riggins Exhibit 9.**

18              **Have you seen this document before?**

19              **You can flip through it to see if**

20  **it . . .**

21       A      (Witness reviews document.)

22              I honestly . . .

23              (Witness continues reviewing document.)

24              Okay.  I'm not honestly sure.

25              Sorry.  I don't recall seeing this.

Jasmine Riggins

Page 102

1    Some of it looks familiar, but I can't --

2         Q     Okay.  Well, on the third page of the

3    document, which has a -- a case caption, you'll

4    see -- or, yeah, right there.

5               Underneath Monique Russell, it says

6    Jasmine Riggins, 312 37th Street, Apartment Number

7    304 --

8         A     Yes.

9         Q     -- Washington, D.C. 20019.

10              Right?

11        A     Yes.

12        Q     And that's you?

13        A     Yes.

14        Q     So this is the complaint that was filed

15   to initiate this lawsuit?

16        A     (Witness nods head.)

17        Q     And on the front page, do you see --

18   there's a stamp -- there are two stamps, actually.

19              One says -- one in the middle says,

20   Filed Pro Prothy, November 14, 2018.

21              Do you see that?

22        A     Yes.

23        Q     Does that refresh your recollection at

24   all as to when the lawsuit was filed?

25        A     Yes.

Jasmine Riggins

1          **Q       And -- and when was it filed?**

2          A       November of 2018.

3          **Q       Okay.   You can set that aside for a**

4     **moment.**

5                (Riggins Deposition Exhibit 10 was

6     marked for identification and attached to the

7     transcript.)

8          BY MR. KLAYMAN:

9          **Q       So the court reporter has handed you a**

10    **document that's marked Riggins Exhibit 10, and the**

11    **Bates number is 6488 is where it begins.**

12               **And again this looks like a Unity**

13    **Health Care medical record; right?**

14         A       Yes.

15         **Q       And this time the date is April 18th,**

16    **2019, in the top left; is that right?**

17         A       Yes.

18         **Q       And next to the progress note, it says,**

19    **Taisei Suzuki, DO.**

20               **Do you know who that is?**

21         A       Yes.

22         **Q       And who is that?**

23         A       He's a doctor at Unity Health Care, but

24    he's a -- he's a doctor at Unity Health Care.

25         **Q       He's a doctor at Unity Health Care you**

Jasmine Riggins

Page 104

1    said?

2        A    Yeah.

3        Q    I'm sorry.  I just couldn't hear you.

4        A    Yeah.  Sorry about that.

5        Q    Do you know what kind of doctor, like,

6    an OB or a general practitioner or you're not

7    sure?

8        A    I'm not sure.

9        Q    Okay.  And moving to the first, it

10   says, Reason for Appointment, 1, Medical - adult

11   EST patient, patient request birth control

12   referral; 2, FP - birth control.

13            Do you see -- did I read that right?

14       A    Yes.

15       Q    And that's a true and accurate

16   statement of the reasons why you went to Unity

17   Health Care in April of 2019?

18       A    Yes.

19       Q    And moving down, excuse me, to -- under

20   History of Present Illness, so the second

21   underline is PHQ-2 where it says, PHQ-2, little

22   interest or pleasure in doing things.  Little

23   interest or pleasure in doing things, no.  Feeling

24   down, depressed or hopeless, no.

25            Do you see that?

Jasmine Riggins

```
 1        A      Yes.
 2        Q      Is that a true and accurate statement
 3   of your well-being in April 2019?
 4        A      Yes.
 5        Q      Have you ever testified to feeling
 6   depressed?
 7        A      I'm sorry?
 8        Q      Have you ever testified to feeling
 9   depressed?
10        A      I don't recall.
11               MR. KLAYMAN:  Is this 11?
12               THE COURT REPORTER:  Uh-huh.
13               (Riggins Deposition Exhibit 11 was
14   marked for identification and attached to the
15   transcript.)
16               BY MR. KLAYMAN:
17        Q      So the court reporter has just handed
18   you what's been marked Russell -- uh, Riggins -- I
19   get them confused here -- Riggins Exhibit 11.
20               Do you recognize this document?
21        A      (Witness reviews document.)  Yes.
22               Yes.
23        Q      Yes?
24               And what is it?
25        A      Response to defendants' request for
```

Jasmine Riggins

1  admissions.

2      Q    And you can see from the top of the

3  first page it's in the Circuit Court for Prince

4  George's County, Maryland?

5      A    Yes.

6      Q    And in the case caption, it's Monique

7  Russell, et al. -- there are multiple names,

8  but -- versus Dimensions Health Corp.

9           Do you see that?

10     A    Yes.

11     Q    Okay.  And this is the other lawsuit

12  that you were a plaintiff in?

13     A    Correct.

14     Q    So if you turn to request number 21, it

15  says, You claim that you suffer from depression as

16  a result of your allegations against the

17  defendants.

18          And then the response is an objection.

19  And then it says, As plaintiff testified at her

20  deposition, she has been depressed.

21     A    Okay.

22     Q    Do you see that?

23     A    Yes.

24     Q    So does that refresh your recollection

25  about whether you testified --

Jasmine Riggins

```
 1          A      Yes.
 2          Q      -- about feeling depressed?
 3          A      Uh-huh.  I don't recall the dates.
 4          Q      You don't recall the dates, you said?
 5          A      Yeah.
 6          Q      Oh, okay.
 7          A      Yeah.
 8          Q      Of -- the dates of what?
 9          A      Of the question.
10          Q      Oh, of when the -- when you answered
11    this question?
12          A      Yes.
13          Q      Okay.  But you -- but you do recall
14    having testified at your deposition --
15          A      Correct.
16          Q      -- that you were feeling depressed?
17          A      Correct.
18                 It's cold in here.
19          Q      So in April 2019, in Riggins
20    Exhibit 10, you told your medical professional
21    that you were not feeling depressed; right?
22          A      Yes.
23          Q      But then at your deposition in the
24    Maryland litigation, you testified that you were
25    feeling depressed?
```

1     A     Correct.  I was not feeling depressed
2  at that time of my visit.
3          **Q     At the time of your visit?**
4     A     Yeah, I was not feeling depressed at
5  that time.
6          **Q     Okay.  So you're -- and you're talking**
7  **about your visit to Unity Health Care?**
8     A     Correct.
9          **Q     Okay.  Do you recall being asked about**
10 **feeling depressed when you visited Unity Health**
11 **Care?**
12    A     Yes.  They always ask those questions.
13         **Q     Okay.  Did you ever think to say to**
14 **them that you had been feeling depressed in**
15 **between visits?**
16    A     No.
17         **Q     Did they ever ask if you were feeling**
18 **depressed in between visits?**
19    A     No.
20         **Q     Did they ask these orally or did they**
21 **ask them in writing, if you recall?**
22    A     They asked them orally.
23         **Q     Orally.**
24         **And you gave the same answer from**
25 **Riggins Exhibit 10 in several of the other Unity**

Jasmine Riggins

1  **Health Care medical records that we went through;**

2  **right?**

3      A     Correct.  They asked about that day.

4      **Q     Okay.  So each time you -- you went,**

5  **you were answering about that day?**

6      A     Correct.

7      **Q     And you never thought to tell them that**

8  **you were feeling depressed in between your visits?**

9      A     No.

10     **Q     During any of these time periods?**

11     A     No.

12     **Q     Why do you think your -- that Unity**

13  **Health Care was asking you these questions?**

14     A     Because it's just something that they

15  want to know how you feel during that day at the

16  time of visit.

17     **Q     Do you think they would be interested**

18  **to -- in -- in terms of treating you, do you think**

19  **they would have wanted to know if you had been**

20  **depressed in between visits?**

21     A     I'm not honestly sure.  I don't think

22  there's something -- I didn't think that that was

23  something that they would consider, something that

24  they would deal with.  I would think that I would

25  go to another place for that.

Jasmine Riggins

1      Q      Another place?

2      A      Yeah.

3      Q      What do you mean?

4      A      Like to see someone else versus this

5   Unity Health Care.

6      Q      Where else would you have gone to seek

7   treatment?

8      A      Other places that help, like a

9   therapist or anybody else that has to do with

10   emotional depression, things like that, how you

11   feel.

12      Q      Do you know whether Unity Health Care

13   has therapists on staff?

14      A      I do -- no, not really.

15      Q      Did you ever ask?

16      A      No.

17      Q      Why not?

18      A      It just didn't seem like that type of

19   place.

20      Q      Did you ever ask them for a referral to

21   a -- to a -- a place that would be more equipped

22   in your estimation to treat your feeling -- your

23   intermittent depression, I guess?

24      A      You said would I ask them?

25      Q      Would you have asked -- or did you ask

Jasmine Riggins

1    **them for a referral to somewhere that could treat**

2    **your depression?**

3        A      No.

4        **Q      Do you think they would be able to**

5    **refer you to someone who could treat your -- your**

6    **feeling depressed?**

7        A      I'm not honestly sure.

8            MR. KLAYMAN:  We've been going for a

9    little while, so why don't we take a quick break

10   if that's all right.

11           THE WITNESS:  Okay.

12           THE VIDEOGRAPHER:  Off the record at

13   11:23.

14           (Recess -- 11:23 a.m.)

15           (After recess -- 11:35 a.m.)

16           THE VIDEOGRAPHER:  We are back on the

17   record at 11:35.

18     EXAMINATION BY COUNSEL FOR THE DEFENDANT

19     BY MR. SHAFFER:

20       **Q      Ms. Riggins, I want to ask you some**

21   **questions about the litigation that you initiated**

22   **in Maryland state court against Dimensions Health**

23   **Care, okay?**

24       A      Okay.

25       **Q      When did you file that lawsuit?**

Jasmine Riggins

```
 1               MR. ZAJDEL:  Objection: asked and
 2    answered.
 3               You can answer.
 4               MR. SHAFFER:  When?  This morning?
 5               MR. ZAJDEL:  (Indicating
 6    affirmatively.)
 7          BY MR. SHAFFER:
 8          Q      Okay.  So you told my colleague that it
 9    was in September of 2017; is that correct?
10          A      Correct.
11          Q      Okay.  And why did you file that
12    lawsuit?
13          A      I'm sorry.
14          Q      That's okay.
15                 My question was why you filed the
16    lawsuit.  Was -- was the reason you filed the
17    lawsuit because you believed that Dimensions
18    Health Care was responsible for your emotional
19    injuries related to your interactions with
20    Dr. Akoda?
21          A      Correct.
22          Q      Okay.  And you're one of the named
23    plaintiffs in that lawsuit; correct?
24          A      Correct.
25          Q      Okay.  Is that lawst- -- lawsuit still
```

Jasmine Riggins

Page 113

1   active today?

2      A     Correct.

3      Q     It is?

4      A     I believe -- I'm sorry.

5      Q     If you don't know, just --

6      A     Yeah.  I don't recall.  I'm sorry.

7      Q     Okay.  Have you gotten any money from

8   Dimensions Health Care in connection with your

9   lawsuit?

10     A     No.

11     Q     Has anybody told you that you will be

12  getting money from Dimensions Health Care?

13     A     No.

14     Q     Okay.  Did anybody tell you whether

15  they were going to dismiss your lawsuit against

16  Dimensions Health Care?

17           MR. ZAJDEL:  Objection.  That would be

18  attorney-client privilege.

19           BY MR. SHAFFER:

20     Q     Well, do you know whether your lawsuit

21  against Dimensions Health Care has been dismissed

22  or not?

23     A     I don't recall.

24     Q     Okay.  So it might have been, but it

25  might not have been?

Jasmine Riggins

1          A       Correct.  It might have --

2          **Q       Isn't that kind of a big deal, like if**

3   **you filed a lawsuit and then it got dismissed, you**

4   **would know?**

5          A       Correct.

6          **Q       But you -- as you sit here today, you**

7   **don't know?**

8          A       I don't recall, correct.

9          **Q       Okay.**

10              (Riggins Deposition Exhibit 12 was

11   marked for identification and attached to the

12   transcript.)

13              BY MR. SHAFFER:

14         **Q       Ms. Riggins, I've handed you what's**

15   **been marked as Exhibit 12 in your deposition.**

16   **It's a pleading in the Circuit Court for Prince**

17   **George's County, Maryland, entitled Stipulation of**

18   **Dismissal Without Prejudice.**

19              **Take a look at that and let me know**

20   **when you're finished.**

21         A       (Witness reviews document.)  Okay.

22         **Q       Okay.  Have you had a chance to look at**

23   **that?**

24         A       Yes.

25         **Q       And if you flip over to the very last**

1    page, which has the Bates number ending in 8683,

2    you'll see that it's a certificate of service

3    dated September 3rd, 2019, which was 13 days ago.

4              Have you ever seen this document

5    before?

6        A    No.

7        Q    Do you know what this document is?

8        A    A stipulation of dismissal without

9    prejudice in the Circuit Court of Prince George's

10   County, Maryland.

11       Q    What's your understanding of what

12   this -- what this document does?

13       A    Dismisses a case.

14       Q    Okay.  Do you know whether this is the

15   lawsuit that you held -- you are a plaintiff in

16   against Dimensions Health Care?

17       A    Yes.

18       Q    It is?

19       A    Yes, I see my name.

20       Q    Okay.  I think you have some exhibits

21   in front of you.  Do you want to look back at

22   Exhibit 7 that Mr. Klayman showed you this

23   morning?

24              And if you take a look at the first

25   page of Riggins 7, there's a case number on the

Jasmine Riggins

1    right-hand side in the middle, handwritten,

2    CAL17-22761 --

3          A     Uh-huh.

4          Q     Do you see that?

5          A     Yes.

6          Q     And then if you look at Riggins 12 and

7    look at the top caption on the first page, it

8    says, Monique Russell, et al., versus Dimensions

9    Health Corp., et al., and the number is the same,

10   CAL17-22761?

11         A     Correct.

12         Q     Okay.  Looking at Riggins 7 and

13   Riggins 12, as you sit here today, do you have an

14   understanding of whether your case against

15   Dimensions Health Care in Maryland has been

16   dismissed?

17         A     Yes.

18         Q     It has; correct?

19         A     Correct.

20         Q     And how do you know that?

21         A     From the information.

22         Q     What information?

23               MR. ZAJDEL:  Objection to the extent

24   you're asking questions about communications

25   between attorney-client.

Jasmine Riggins

```
 1          BY MR. SHAFFER:
 2          Q     Well, here's what I'm trying to get at.
 3     I asked you a few moments ago if you knew whether
 4     the case was dismissed or not, and you said you
 5     didn't remember.
 6                We had that discussion --
 7          A     Okay.
 8          Q     -- do you recall that?
 9          A     Yes.
10          Q     Okay.  And now I've showed you these
11     two documents including a stipulation of dismissal
12     from 13 days ago.
13                My question is:  Do you now recall that
14     your case has been dismissed against Dimensions
15     Health Care?
16          A     Yes.
17          Q     And how long ago did you learn that
18     your case against Dimensions Health Care had been
19     dismissed?
20          A     My memory was refreshed today.
21          Q     Okay.  Did you know that your case
22     against Dimensions Health Care had been dismissed
23     before September 3rd?
24          A     Yes.  I don't recall.  I'm sorry.  I
25     don't recall.
```

Jasmine Riggins

1     Q     Okay.

2     A     I don't recall the dates.

3     Q     But you are aware, as you sit here

4   today, that sometime before today you were aware

5   that your case had been dismissed?

6     A     Correct.

7     Q     Okay.  And what are the terms on which

8   you understand that dismissal occurred?

9     A     I'm sorry?

10     Q     Are you getting any money for

11   dismissing the case?

12     A     No.

13     Q     Did you have to agree to pay any money

14   to Dimensions Health Care as part of dismissing

15   that case?

16     A     No.

17     Q     Did you have to agree whether the

18   statute of limitations would or would not be

19   impacted by your dismissal of the case?

20     A     No.

21     Q     Did you have any discussions with

22   anyone besides your lawyers about dismissing that

23   case?

24     A     No.

25     Q     Okay.  You believed Dimensions Health

Jasmine Riggins

1   **Care was responsible for what you say are your**

2   **emotional injuries from Dr. Akoda, but yet you**

3   **dismissed the case against them without getting**

4   **any money; correct?**

5        A     Correct.

6        **Q     Why did you do that?**

7               MR. ZAJDEL:  Objection.

8               To the extent he's asking for

9    communications between your attorneys and

10   yourself.

11              THE WITNESS:  So what's the question?

12        BY MR. SHAFFER:

13        **Q     I don't want to know about your**

14   **communication with your lawyers.  I'm just asking**

15   **you the question why did you agree to dismiss this**

16   **case.**

17              **Well, let me -- let me back up.  Did**

18   **you agree to dismiss the case?**

19        A     Correct.

20        **Q     Why did you agree?**

21        A     Something I talked to my attorneys

22   about.

23        **Q     Did you agree to dismiss the case**

24   **because statements you made in that litigation**

25   **against Dimensions Health were not true?**

Jasmine Riggins

1          A      No.

2          **Q      Okay.  You still believe everything you**

3   **said in that case is true and correct to the best**

4   **of your ability; right?**

5          A      Correct.

6          **Q      Let's take a look at -- at Riggins 7**

7   **which is the class action complaint that was**

8   **filed.**

9          A      Okay.

10         **Q      Actually, I'm going to give you an**

11  **amended complaint that you filed in that case,**

12  **just because that's the one I have marked up so it**

13  **will be easier if we go through that one.  I'm**

14  **going to mark it as exhibit Riggins 13 and give**

15  **you a copy.**

16                (Riggins Deposition Exhibit 13 was

17  marked for identification and attached to the

18  transcript.)

19         BY MR. SHAFFER:

20         **Q      And, Ms. Riggins, looking at what has**

21  **been marked as Exhibit 13, do you recognize that**

22  **as the first amended class action complaint that**

23  **you filed in Prince George's County, Maryland,**

24  **against Dimensions Health Corporation --**

25         A      Yes.

Jasmine Riggins

1       Q       -- in December of 2017?

2       A       Yes.

3       Q       If we turn to page 3 of that document,

4    paragraph 14, just at the bottom.

5       A       Okay.

6       Q       You state, Jasmine Riggins was a

7    patient of Oluwafemi Charles Igberase between

8    August 2012 and March 2013 at Dimensions, period.

9    Jasmine Riggins knew Oluwafemi Charles Igberase as

10   Akoda.

11              Is that true to the best of your

12   knowledge?

13      A       Yes.

14      Q       Turn to page 11, and look at

15   paragraph 66 where you state, Between 2008 and

16   2016, Akoda was an actual and/or apparent, duly

17   authorized agent, servant and/or employee of

18   Dimensions, holding a medical staff position

19   and/or enjoying hospital privileges.

20              Is that true and correct to the best of

21   your knowledge?

22      A       Yes.

23      Q       I'm sorry?

24      A       Yes.

25      Q       Okay.  Okay.  Turn to the next page.

Jasmine Riggins

1    Actually, let's -- let's go back to paragraph 67

2    where you state, Between 2008 and 2016, Dimensions

3    was responsible to assure and maintain patient

4    safety and privacy for members of the public who

5    received treatment from its agents, servants

6    and/or employees, such as physicians who were

7    medical staff members and/or enjoyed hospital

8    privileges, including specifically but not limited

9    to Akoda.

10           Again, true and correct to the best of

11   your knowledge?

12        A     Yes.

13        Q     Okay.  Paragraph 71 on the next page,

14   you wrote, Dimensions knew or should have known,

15   that Oluwafemi Charles Igberase had assumed a fake

16   identity using the name Charles J. Akoda, M.D.;

17   correct?

18        A     Correct.

19        Q     And that was true and correct to the

20   best of your knowledge --

21        A     Correct.

22        Q     -- correct?

23           Okay.  If you look at paragraphs 72,

24   73, 74, 75, 76, 77, 78, 79, 80, all of those

25   statements relate to things that you believed

Jasmine Riggins

1    Dimensions knew or should have done to protect you

2    from Dr. Akoda; correct?

3        A    Correct.

4        Q    And those are true and correct to the

5    best of your knowledge?

6        A    Correct.

7        Q    Okay.  And in paragraph 81, you state

8    that Dimensions' negligence was the sole and

9    proximate cause of the injuries, damages, and

10   permanent disability of named plaintiffs and class

11   members with named plaintiffs and class members

12   being in no way contributorily negligent.

13            Again, that's your statement and true

14   and correct to the best of your knowledge?

15       A    Correct.

16       Q    Turning to page 16 of this document,

17   you stated, Dimensions is liable and vicariously

18   liable for Akoda's conduct.

19            And you believe that to be true and

20   correct to the best of your knowledge?

21       A    Correct.

22       Q    In paragraph 88 you say that

23   Dimensions' negligence was the sole and proximate

24   cause of the injuries, damages and permanent

25   disability of named plaintiffs in the class, with

1   named plaintiffs in the class being in no way

2   contributorily negligent.

3          Correct?

4          MR. ZAJDEL:  Okay.  Before you answer,

5   what paragraph was --

6          MR. SHAFFER:  88.

7          MR. ZAJDEL:  Okay.  You can answer.

8   BY MR. SHAFFER:

9   Q     I'm going to rephrase the question.

10         In paragraph 88 you wrote that

11   Dimensions' negligence was the sole and proximate

12   cause of the injuries, damages and permanent

13   disability of named plaintiffs in the class, with

14   named plaintiffs in the class being in no way

15   contributorily negligent.

16         And you understand and believe that to

17   be true and correct; right?

18   A     Correct.

19         (Riggins Deposition Exhibit 14 was

20   marked for identification and attached to the

21   transcript.)

22   BY MR. SHAFFER:

23   Q     I'm going to hand you what's been

24   marked as Exhibit 14.

25         Riggins 14 is a document again from the

Jasmine Riggins

```
 1   matter of Monique Russell versus Dimensions Health
 2   Corporation entitled Claimants' Certificate of
 3   Merit.
 4              Take a quick look at this if you would.
 5        A    (Witness reviews document.)
 6        Q    Ms. Riggins, this document is entitled
 7   Claimants' Certificate of Merit, and the first
 8   page is a certificate by a gentleman named Thomas
 9   Bojko.
10              Do you see that?
11        A    Yes.
12        Q    I'm sorry.  Just try to keep your voice
13   up.
14        A    Yeah, it's a little cold in here.  I'm
15   sorry.  I'm just trying --
16        Q    That's okay.  We'll try to get it
17   warmer.
18              Okay.  Do you know who Mr. Bojko is?
19        A    I do not.
20        Q    Okay.  Do you see in the second
21   paragraph that he says he has reviewed the
22   captioned Class Action Amended Statement of Claim,
23   a final decision and order of the Board of
24   Maryland Board of Physicians, Department of
25   Justice materials, proceedings of the criminal
```

Jasmine Riggins

1    case against Dr. Charles Akoda/Igberase and other

2    related materials regarding the above captioned

3    case?

4         A    Yes.

5         Q    Okay.  Do you know whether or not

6    Mr. Bojko was hired by your lawyers to offer

7    opinions about Dimensions Health Corporation's

8    conduct?

9         A    No.

10        Q    Okay.  Do you see in paragraph 3 of

11   Riggins 14 where Mr. Bojko certifies that there

12   have been violations of the applicable standards

13   of administrative care by Dimensions Health

14   Corporation and Dimensions Health Corporation

15   d/b/a Prince George's Hospital Center,

16   individually and through their duly authorized

17   agents, apparent agents, servants and/or

18   employees, including but not limited to Charles J.

19   Akoda/Oluwafemi Charles Igberase which have

20   directly and proximately resulted in damages,

21   injuries and permanent disability to the claimants

22   and others situated.

23             Do you understand what Mr. Bojko is

24   saying there?

25        A    Not really.

Jasmine Riggins

1    Q    Okay.  Were you aware of these

2   certifications and statements by Mr. Bojko before

3   you dismissed your case against Dimensions Health

4   Corporation?

5    A    No.

6    Q    Okay.  Turn to the third page of

7   Exhibit 14, which is a letter dated February 26th,

8   2018, to a Paul Vettori.

9         Do you know Mr. Vettori?

10   A    Yes.

11   Q    Who is he?

12   A    He's an attorney.

13   Q    Okay.  Is he one of your attorneys in

14  the lawsuit in Maryland and in Philadelphia?

15   A    Yes.

16   Q    Okay.  This is a letter to him from

17  Thomas Bojko, M.D., M.S., J.D., president and

18  managing partner of Aviva Healthcare Solutions.

19  And he writes to Mr. Vettori in the first

20  paragraph, This is to acknowledge that after a

21  review of materials involved in the

22  above-referenced case, I have concluded that there

23  have been violations of the applicable standards

24  of administrative care by Dimensions Health

25  Corporation d/b/a Prince George's Hospital Center,

Jasmine Riggins

1    individually and through their duly authorized

2    agents, apparent agents, servants and/or

3    employees, including but not limited to Charles J.

4    Akoda/Oluwafemi Charles Igberase ("Akoda"), which

5    have directly and proximately resulted in

6    injuries, damages and permanent disability to the

7    claimants and others similarly situated.

8              Do you see that?

9    A    Yes.

10   Q    Were you aware of Mr. Bojko's opinions

11   related to the activities of Dimensions Health

12   Corporation?

13   A    No.

14             MR. ZAJDEL:  Objection: asked and

15   answered.

16             BY MR. SHAFFER:

17   Q    Okay.  Look at the second paragraph of

18   this letter.  Mr. Bojko states, It is my opinion

19   the defendants, Dimensions Health Corporation,

20   breached the applicable standards of

21   administrative care by negligently failing to use

22   required and reasonable care to investigate,

23   credential, grant privileges, monitor and

24   supervise their medical personnel, including but

25   not limited to, Akoda and to discover, stop and

1    report any professional misconduct of which they

2    should have known.

3              Do you agree with Mr. Bojko?

4      A    Yes.

5      Q    Okay.  Next sentence he writes, As a

6    direct and proximate result of the defendants'

7    continuing negligence, the claimants, and others

8    similarly situated, suffered physical pain,

9    emotional anguish, and damages as well as personal

10   disability.

11             Do you agree with that?

12     A    Yes.

13     Q    Is that a yes?

14     A    Yes.

15     Q    Thank you.

16             And then he writes, Had the defendants

17   complied with the applicable standards of

18   administrative care the claimants, and others

19   similarly situated, would not have suffered their

20   injuries, damages and permanent disability.

21             Do you agree with that?

22             MR. ZAJDEL:  Objection: calls for a

23   legal conclusion.

24             You can answer.

25             THE WITNESS:  Yes.

Jasmine Riggins

1          BY MR. SHAFFER:

2          Q    Okay.  Do you know who hired Dr. Akoda

3     to work at Prince George's?

4          A    No.

5          Q    I just want to ask a question to make

6     sure that we're on the same page.  When we talked

7     on Thursday, I think you told me that you did not

8     have any information about ECFMG except what you

9     may have been told by your lawyers; correct?

10         A    Correct.

11         Q    Okay.  And is it fair for me to then

12    assume that if this matter were to go to a trial,

13    that you would not come to trial and expect to

14    testify about ECFMG; is that fair?

15         A    Could you repeat your question?  I'm

16    sorry.

17         Q    Sure.

18              You don't know anything about ECFMG

19    today other than what your lawyers told you;

20    right?

21         A    Correct.

22         Q    You don't have any firsthand knowledge,

23    firsthand interactions, never spoke to anybody at

24    ECFMG, never went to their Web site, never looked

25    at any of their materials; correct?

Jasmine Riggins

```
 1        A      Correct.
 2        Q      Okay.  And my question is, if you come
 3   to trial in this matter, will you agree that
 4   because you don't have that information and
 5   anything your lawyers told you isn't something you
 6   know personally, that you're not going to come to
 7   trial and testify about things regarding ECFMG?
 8               MR. ZAJDEL:  Objection.  That's a
 9   decision that's going to be made by her attorneys,
10   so I -- don't answer that question.  I instruct
11   the witness not to answer that question.
12               MR. SHAFFER:  On what grounds?
13               MR. ZAJDEL:  You're asking her about a
14   decision that's to be made between her and her
15   counsel.  You're going to -- you -- you've
16   propounded discovery.  I'm sure we've listed who
17   our witnesses are, or whatever the deadline date
18   is for discovery closing we'll list who the
19   witnesses are, and if her name is not there, she
20   won't be testifying at trial.  If her name is
21   there, she'll be testifying at trial.
22               MR. SHAFFER:  And my question was a
23   little -- it was a little more specific.
24          BY MR. SHAFFER:
25        Q      I understand you may come testify at
```

Jasmine Riggins

1    trial.  What I don't want to have happen is

2    there's a situation where you come and you've

3    looked at a whole bunch of documents and materials

4    that you didn't look at before you came in here

5    today.

6         MR. SHAFFER:  So that's my question.

7    If the answer is the same, we'll take it up at the

8    appropriate time.

9         MR. ZAJDEL:  Well, I'm still going to

10   object to that question because I can't confirm or

11   deny what Ms. Riggins will see or not see before

12   the trial in preparing for a trial.

13        But if what you're trying to find out

14   is is she going to testify to her personal

15   knowledge about ECFMG differently than what she

16   testified to today, then I -- I believe that

17   answer is not going to change.  Her knowledge as

18   of today was her knowledge as of today.

19        MR. SHAFFER:  Right.

20   BY MR. SHAFFER:

21   Q    Again, in the interest of trying to

22   move this along, take a look at Riggins 11 which

23   has already been marked this morning.

24        And these are Plaintiff Jasmine Riggins

25   Responses to Defendants' Requests for Admissions

Page 133

1    that you served on the defendants in the

2    Dimensions Health Care Corporation case in

3    Maryland, and I think Mr. Klayman asked you a

4    question or two about this?

5         A    Yes.

6         Q    And my question is in responding to

7    these requests for admissions, were you trying to

8    be as truthful and as accurate as you could be in

9    answering the questions that were asked?

10        A    Yes.

11        Q    And as you sit here today, do you

12   believe that the answers that you gave in response

13   to these requests for admissions back in the

14   Dimensions Health Care case are still true and

15   accurate to the best of your ability?

16        A    Yes.

17        Q    You don't want to change any of these

18   answers today based on the dismissal of the

19   Dimensions Health Care case; right?

20        A    No.

21        Q    Okay.

22             MR. SHAFFER:  Let's go off the record

23   for a minute.

24             THE VIDEOGRAPHER:  Off the record at

25   12:06.

Jasmine Riggins

1              (Recess -- 12:06 p.m.)

2              (After recess -- 12:14 p.m.)

3              THE VIDEOGRAPHER:  We are back on the

4    record at 12:14.

5         BY MR. SHAFFER:

6         Q    Ms. Riggins, we're almost done here.  I

7    have a few more questions for you.  I want to make

8    sure I cover a couple of things that we started to

9    talk about on Thursday and didn't get to finish.

10             I think we talked a little bit about

11   the different doctors that you have seen in

12   connection with your three children.  There were

13   three different doctors that you saw, one for each

14   birth; correct?

15        A    Correct.

16        Q    And you had a C-section in connection

17   with each of them; correct?

18        A    Correct.

19        Q    And I think we saw in the medical

20   record that was prepared after your C-section

21   involving Messiah reporting the existence of

22   significant scarring at that time.

23             Do you recall that?

24        A    Correct.

25        Q    And I think we talked about how that

Jasmine Riggins

1   was something you were not aware of prior to

2   Thursday; correct?

3       A    Correct.

4       Q    Prior to Thursday, what you had been

5   told or assumed was that that scarring had

6   occurred during the second C-section because it

7   was noted in your discussions with your third

8   doctor; correct?

9       A    Correct.

10      Q    Okay.  I think you also mentioned

11  briefly on Thursday that following the birth of

12  Messiah -- and it was a good birth; right?  He was

13  born healthy; correct?

14      A    Correct.

15      Q    -- that you have had some pain

16  resulting after the birth; is that correct?

17      A    Correct.

18      Q    What -- what exactly were you

19  describing there?  What was the condition that you

20  were describing?

21      A    The abdominal pains in my stomach.

22      Q    And do you think that that was the

23  result of having had the C-section?

24      A    Yes.

25      Q    Okay.  And have you had pain following

Jasmine Riggins

1    each of the C-sections that you've had in your

2    abdominal area?

3        A    No, not as bad, no.

4        Q    Okay.  It might not have been as bad,

5    but is it fair to say that C-section is a major

6    surgery in your abdominal area?

7        A    Correct, but I was --

8        Q    Okay.  Did you have abdominal pain

9    after the first C-section?

10       A    Slight.

11       Q    And if you were experiencing pain as a

12   result of the C-section, that's something that you

13   would have reported to your doctors; correct?

14       A    I'm sorry?

15       Q    If you were experiencing pain --

16   abdominal pain following the C-sections, that's

17   something you would have reported to your doctors?

18       A    Correct.

19       Q    Okay.  I saw somewhere in -- in the

20   documents we've received reference to Charter

21   Health Clinic.

22            Do you know who that is?

23       A    Yes.

24       Q    Who is that?

25       A    It's the office -- doctor's office I

Jasmine Riggins

1    used to go to.

2         Q    Okay.  When did you go there?

3         A    Years ago.

4         Q    Okay.  What kind of doctor's office?

5         A    The same as Unity.  It was actually

6    Charter before it was Unity.

7         Q    Okay.  So it was your general

8    practitioner physician?

9         A    Correct.

10        Q    Okay.  For what reasons would you go to

11   Charter Health Clinic?

12        A    Regular checkups, if I was feeling ill.

13        Q    When was the last time you were there?

14        A    I don't recall.

15        Q    Do you know whether they still have any

16   medical records from you?

17        A    I do not know that.

18        Q    Okay.  And I apologize.  I know you

19   went over this, I think, with Mr. Klayman.  But

20   when we talked on Thursday, you had mentioned some

21   communications with Monique Russell a month or so

22   ago, and we talked about and made a request at the

23   deposition that you bring those with you today.

24             And you have not done that; correct?

25        A    Correct.

Jasmine Riggins

Page 138

1     Q      And you have not looked for those;
2  correct?

3     A      Correct.

4     Q      Why not?

5     A      I've had other things going on,
6  unfortunately.

7     Q      Is that something that you are still
8  willing to collect and provide to your attorneys
9  to provide to us?

10    A      Yes.

11    Q      Okay.  And just so I'm clear, the
12 things that you think Dr. Akoda did that were
13 wrong are what?

14    A      Performing on women, doing C-sections,
15 looking at women's private parts, violating them,
16 touching them, not being honest with them.

17    Q      And what is it that you think ECFMG
18 should have done?

19    A      Paid attention to his credentials and
20 actually paid attention to him being interviewed
21 under two different names.  Just be more careful
22 about their job, pretty much.  Be more careful
23 about who they certify.

24    Q      And do you know whether or not they
25 identified instances where Dr. Akoda had used

Jasmine Riggins

```
 1   multiple names?

 2        A     I'm sorry?

 3        Q     Are you aware of whether or not ECFMG

 4   actually identified situations where Dr. Akoda had

 5   used different names?

 6        A     Could you rephrase your question?  I'm

 7   sorry.

 8              MR. SHAFFER:  Can you read it back?

 9              (The Record was read as requested.)

10              THE WITNESS:  I'm not aware.

11              MR. ZAJDEL:  I'm sorry.  I didn't hear

12   that.

13              MR. SHAFFER:  She said, I think, I'm

14   not aware.

15              THE WITNESS:  I -- no.  Sorry.

16              MR. ZAJDEL:  Can -- are you answering

17   the question no, you're not aware?  I want to make

18   sure --

19              MR. SHAFFER:  Yeah.

20              MR. ZAJDEL:  -- I understand.  I'm not

21   trying to be in the way.

22              THE WITNESS:  Right.

23              So you're asking if I'm aware -- I'm

24   sorry.

25              MR. SHAFFER:  That's all right.
```

Jasmine Riggins

```
 1    Let's --
 2              THE WITNESS:  I'm --
 3              MR. SHAFFER:  -- try --
 4              THE WITNESS:  -- having --
 5              MR. SHAFFER:  -- again.
 6              THE WITNESS:  -- a hard time
 7    comprehending this question.
 8              MR. ZAJDEL:  So you haven't answered
 9    the question yet?
10              THE WITNESS:  No.
11              MR. ZAJDEL:  Okay.  I didn't know if
12    she was answering your question or.
13              MR. SHAFFER:  I'm not sure either.  So
14    we're going to have --
15              THE WITNESS:  Sorry.
16              MR. SHAFFER:  -- the court reporter --
17    that's okay.  We're going to have the court
18    reporter read it back and see if -- see if we can
19    get there.
20              (The Record was read as requested.)
21              THE WITNESS:  No.  I'm sorry.  I'm
22    having a hard time comprehending that question.
23         BY MR. SHAFFER:
24         Q    Well, let me -- let me ask it again
25    because I don't want there to be any confusion
```

Jasmine Riggins

Page 141

1   about it.

2          You said ECFMG should be more careful;

3   right?

4      A    Uh-huh.

5      Q    Those were your words?

6      A    Yes.

7      Q    All right.  And my question, you said

8   sort of -- strike that.

9          And I guess my question was, do you

10  know or would it make a difference in your mind if

11  you were to learn that ECFMG actually did find

12  situations where Dr. Akoda had tried to use

13  different names?

14     A    Would it make a difference in my mind?

15         I'm sorry.

16     Q    You don't know?

17     A    No.

18     Q    Would it make a difference in your mind

19  if you were to learn that ECFMG had cooperated

20  with the U.S. Attorney's Office and helped them

21  build a case against Dr. Akoda?

22     A    Possibly, you know.

23     Q    Okay.  And tell me again what you think

24  Dimensions Health Care should have done to prevent

25  Dr. Akoda from seeing you?

Jasmine Riggins

1          MR. ZAJDEL:  Objection: asked and

2      answered.

3          You can answer.

4          THE WITNESS:  Okay.  Just be more

5      careful about who they allow to practice in their

6      offices, hospitals; pay more attention; be more --

7      take more pride in what they do, you know what I

8      mean, like -- just being on top -- being more

9      careful.

10          MR. SHAFFER:  Okay.  I don't -- I don't

11      have any more questions at this time.  We reserve

12      the right to -- to requestion Ms. Riggins in light

13      of additional documents that might be produced or

14      a change in her position regarding the information

15      that she has not been able to speak to from

16      personal knowledge here today, whether regarding

17      ECFMG or something else.

18          But subject to those comments, we'll

19      adjourn the deposition.

20          MR. ZAJDEL:  Okay.  I don't have any

21      questions.

22          THE VIDEOGRAPHER:  If that is

23      everything, we are off the record on

24      September 16th, 2019, at 12:26.

25

Jasmine Riggins

1              (Signature having not been waived, the

2    Videotaped Deposition of JASMINE RIGGINS ended at

3    12:26 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Jasmine Riggins

Page 144

1    CERTIFICATE OF SHORTHAND REPORTER - NOTARY PUBLIC

2            I, Dana C. Ryan, Registered Professional

3    Reporter, Certified Realtime Reporter, the officer

4    before whom the foregoing proceedings were taken

5    do hereby certify that the foregoing transcript is

6    a true and correct record to the best of my

7    ability of the proceedings; that said proceedings

8    were taken by me stenographically and thereafter

9    reduced to typewriting under my supervision; and

10   that I am neither counsel for, related to, nor

11   employed by any of the parties to this case and

12   have no interest, financial or otherwise, in its

13   outcome.

14           IN WITNESS WHEREOF, I have hereunto set

15   my hand and affixed my notarial seal this 26th day

16   of September 2019.

17   My Commission expires:

18   July 15, 2020

19

20

21

22   _____

23   NOTARY PUBLIC IN AND FOR THE

24   DISTRICT OF COLUMBIA

25

Jasmine Riggins

```
 1              ACKNOWLEDGMENT OF DEPONENT

 2              I, Jasmine Riggins, do hereby

 3    acknowledge that I have read and examined the

 4    foregoing testimony, and the same is a true,

 5    correct and complete transcription of the

 6    testimony given by me and any corrections appear

 7    on the attached Errata sheet signed by me.

 8

 9

10

11   _____        _____

12   (DATE)                      (SIGNATURE)

13

14

15              CERTIFICATE OF NOTARY PUBLIC

16   Sworn and subscribed to before me this

17   _____ day of _____, _____

18

19

20   _____        _____

21   NOTARY PUBLIC               MY COMMISSION EXPIRES

22

23

24

25
```

Jasmine Riggins

**Exhibits**

**Riggins 02**
47:11 71:11
85:8

**Riggins 03**
47:16 78:22
79:3 85:8

**Riggins 04**
48:4 82:1,7
86:14

**Riggins 05**
48:10 87:12,17

**Riggins 06**
48:15 90:12,17

**Riggins 07**
48:20 95:11,17
115:22

**Riggins 08**
48:21 96:20,25

**Riggins 09**
49:4 101:12,17

**Riggins 10**
49:7 103:5,10
107:20 108:25

**Riggins 11**
49:12 105:13,
19 132:22

**Riggins 12**
49:18 114:10,
15 116:6,13

**Riggins 13**
49:22 120:14,
16,21

**Riggins 14**
49:24 124:19,
24,25 126:11
127:7

**"**

**"akoda** 128:4

**0**

**0** 93:21,23,24
94:1,2,3,5,7,8,
9,10 98:16,18,
21,23,24 99:1,
2,3,5 100:8

**09/23/2016**
76:1,5

**1**

**1** 73:15 80:7
89:16 91:5
97:16 104:10

**10** 103:5,10
107:20 108:25

**11** 96:11
105:11,13,19
121:14 132:22

**1111** 50:8

**11:23** 111:13,
14

**11:35** 111:15,
17

**12** 94:10 99:6
114:10,15
116:6,13

**12:06** 133:25
134:1

**12:14** 134:2,4

**12:26** 142:24

**13** 83:17 90:23

93:18 115:3
117:12 120:14,
16,21

**14** 83:5 102:20
121:4 124:19,
24,25 126:11
127:7

**16** 123:16

**16th** 50:5
142:24

**18-5629** 50:13

**18th** 103:15

**19th** 79:8

**2**

**2** 71:11,24
73:16 85:8
89:17 97:16
98:19 99:5
104:12

**2/2016** 80:23

**2000** 96:10

**20004** 50:9

**20019** 96:3
102:9

**2008** 121:15
122:2

**2012** 121:8

**2013** 121:8

**2015** 56:2 68:7

**2016** 56:2,3
72:5,24 74:15
75:18 76:14
78:9 79:16
81:5,6 85:12
121:16 122:2

**2017** 79:8 80:13
81:23 84:19
85:3,4,9 87:22,
25 89:20
90:10,23
91:11,25 92:8,
17,18 93:2
94:16 96:10,18
97:6,20 98:6
99:11,24 100:7
101:5 112:9
121:1

**2018** 89:1
102:20 103:2
127:8

**2019** 50:5 65:16
83:17 86:22
103:16 104:17
105:3 107:19
115:3 142:24

**21** 106:14

**23rd** 72:5

**26th** 127:7

**27** 89:1

**2nd** 92:9,18

**3**

**3** 73:18 78:22
79:3 84:13
85:8 86:14
97:17 121:3
126:10

**304** 96:3 102:7

**312** 96:2 102:6

**37th** 96:2 102:6

**3rd** 115:3
117:23

**4**

**4** 81:25 82:1,7
86:14 92:16,17

**5**

**5** 87:12,17

**6**

**6** 90:12,17

**6408** 72:9 73:10

**6409** 74:25

**6442** 87:18

**6478** 90:18

**6480** 97:1

**6488** 103:11

**66** 121:15

**67** 122:1

**7**

**7** 93:17 95:10,
11,17 115:22,
25 116:12
120:6

**71** 122:13

**72** 122:23

**73** 122:24

**74** 122:24

**75** 122:24

**7576** 79:2 80:18

**7577** 81:9

Jasmine Riggins

**76** 122:24

**77** 122:24

**78** 122:24

**79** 122:24

**7th** 87:22

---

**8**

**8** 96:20,25

**80** 122:24

**81** 123:7

**8683** 115:1

**88** 123:22
124:6,10

---

**9**

**9** 101:12,17

**9:00** 68:24

**9:56** 50:6

**9th** 97:6

---

**A**

**a.m.** 50:6
111:14,15

**abdominal**
135:21 136:2,
6,8,16

**Abdul** 56:19

**ability** 120:4
133:15

**able** 53:15
59:23 93:20
98:15 111:4
142:15

**abortion** 80:23

**abortions** 78:5,
12 81:2

**above** 126:2

**above-
referenced**
127:22

**acc-** 76:13

**Accepted**
73:16

**accepting** 77:8

**accepts** 70:15

**accident** 70:4

**accurate** 76:14
78:9 81:21,22
86:20,24 89:18
90:9 91:9,24
98:5 99:10
104:15 105:2
133:8,15

**acknowledge**
127:20

**action** 95:21
120:7,22
125:22

**active** 113:1

**activities**
128:11

**actual** 121:16

**actually** 102:18
120:10 122:1
137:5 138:20
139:4 141:11

**additional**
142:13

**adjourn** 142:19

**administrative**

126:13 127:24
128:21 129:18

**admissions**
106:1 132:25
133:7,13

**adult** 73:14
104:10

**affirmatively**
112:6

**after** 64:2
85:14,23 87:25
89:1 92:5
111:15 127:20
134:2,20
135:16 136:9

**again** 69:16
74:6 79:4,18,
23 85:10 87:18
88:21 89:11
90:1,25 91:3,
17 97:9,22
98:8 103:12
122:10 123:13
124:25 132:21
140:5,24
141:23

**against** 55:6
87:7,9 101:8
106:16 111:22
113:15,21
115:16 116:14
117:14,18,22
119:3,25
120:24 126:1
127:3 141:21

**agent** 121:17

**agents** 122:5
126:17 128:2

**ago** 51:13 56:1
115:3 117:3,
12,17 137:3,22

**agree** 62:8,17
118:13,17
119:15,18,20,
23 129:3,11,21
131:3

**ahead** 75:20
76:21

**Akoda** 57:4
58:19 64:2
71:4 84:19,25
85:15 95:4
112:20 119:2
121:10,16
122:9,16 123:2
128:25 130:2
138:12,25
139:4 141:12,
21,25

**Akoda's** 55:16
123:18

**Akoda/igberase**
126:1

**Akoda/
oluwafemi**
126:19 128:4

**alcohol** 76:4,5,
6

**Alison** 73:1

**all** 55:1 57:10,
18,19 70:6
75:2,10 77:14
81:2 85:6 94:1,
2,6,7,12 98:21,
23 99:1,2,8
100:8 102:24
111:10 122:24
139:25 141:7

**allegations**
106:16

**allege** 55:12

**allow** 142:5

**almost** 86:11
134:6

**along** 132:22

**already** 99:19
132:23

**also** 56:11,15,
19,23 63:7
77:11 90:18
135:10

**always** 65:4
72:19 86:12
93:21 98:16
108:12

**amended**
120:11,22
125:22

**Amendment**
76:24 77:5

**American**
56:23

**Amerigroup**
70:18

**and/or** 121:16,
17,19 122:6,7
126:17 128:2

**anesthesia**
93:8,9

**angry** 57:9

**anguish** 129:9

**another** 54:11
71:1 90:17
97:2 109:25
110:1

**answerable**
52:21

**answering**
109:5 133:9

Jasmine Riggins

139:16 140:12

**answers** 82:15 83:10,12 133:12,18

**anxiety** 59:15

**anxiety/worry** 81:18

**anxious** 60:7 93:25 98:20

**anybody** 51:22 110:9 113:11, 14 130:23

**anyone** 57:3 118:22

**anything** 52:14 57:4 58:15,17 67:2,20 70:3 77:18 130:18 131:5

**Apartment** 96:3 102:6

**apologize** 137:18

**apparent** 121:16 126:17 128:2

**appears** 90:19

**applicable** 126:12 127:23 128:20 129:17

**appointment** 65:12 73:11 80:5 89:12 91:5 97:13 104:10

**appreciate** 69:4

**appropriate** 132:8

**April** 103:15 104:17 105:3 107:19

**area** 72:19 136:2,6

**around** 56:3

**ashamed** 57:10

**aside** 103:3

**assert** 76:24

**assign** 70:19, 24

**assume** 130:12

**assumed** 122:15 135:5

**assure** 122:3

**attached** 71:12 78:23 82:2 87:13 90:13 95:12 96:21 101:13 103:6 105:14 114:11 120:17 124:20

**attention** 138:19,20 142:6

**attorney** 127:12

**Attorney's** 141:20

**attorney-client** 52:18,20 113:18 116:25

**attorneys** 52:24 119:9,21 127:13 131:9 138:8

**August** 65:14, 15,16 121:8

**authorities** 83:14

**authorized** 121:17 126:16 128:1

**Avenue** 50:8

**aver** 83:9

**Aviva** 127:18

**aware** 118:3,4 127:1 128:10 135:1 139:3, 10,14,17,23

———————

**B**

———————

**baby** 89:1

**back** 58:25 63:11 82:24 89:1 111:16 115:21 119:17 122:1 133:13 134:3 139:8 140:18

**bad** 68:10 78:21 85:21 136:3,4

**Ballpark** 78:12

**based** 133:18

**basis** 59:1 77:5

**Bates** 72:7,13, 14 74:25 79:2 87:18 90:18 97:1 103:11 115:1

**became** 67:9

**become** 58:16

**before** 58:17 67:3,8 77:18

78:15,17 83:1, 2,25 85:9 101:18 115:5 117:23 118:4 124:4 127:2 132:4,11 137:6

**began** 51:18 61:7 84:18 100:10

**begin** 85:16

**beginning** 54:8 79:2

**begins** 87:18 90:18 103:11

**behalf** 50:20,22

**being** 50:7 55:23 57:24,25 58:9 69:25 108:9 123:12 124:1,14 138:16,20 142:8

**belief** 83:12

**believe** 57:12 68:7 93:1 101:10 113:4 120:2 123:19 124:16 132:16 133:12

**believed** 112:17 118:25 122:25

**besides** 118:22

**best** 61:1,6 83:11 120:3 121:11,20 122:10,20 123:5,14,20 133:15

**better** 94:22

**between** 51:20 52:24 108:15, 18 109:8,20 116:25 119:9 121:7,15 122:2 131:14

**beyond** 57:13 67:13

**big** 114:2

**birth** 68:10 69:16 91:14 92:5,7,11 93:17 104:11, 12 134:14 135:11,12,16

**bit** 134:10

**blame** 60:4

**blamed** 93:23 98:18

**Board** 56:16,24 125:23,24

**Bojko** 125:9,18 126:6,11,23 127:2,17 128:18 129:3

**Bojko's** 128:10

**bolded** 73:9 80:19 81:11 89:13,22

**born** 135:13

**bottom** 80:19 83:5 84:17 86:15 97:1 121:4

**breached** 128:20

**break** 111:9

**Brian** 50:22 51:14

Jasmine Riggins

**briefly** 135:11

**bring** 137:23

**bringing** 62:13

**brought** 55:6

**build** 141:21

**bunch** 72:8
132:3

---

**C**

---

**C-SECTION**
63:4 92:25
93:3 134:16,20
135:6,23
136:5,9,12

**C-SECTIONS**
78:5,15,18
80:22 136:1,16
138:14

**C/s** 92:24

**CAL17-22761**
116:2,10

**call** 72:13

**called** 83:2

**calls** 129:22

**came** 68:21
132:4

**Campbell** 50:3

**can't** 57:11,12
61:8,9 82:9
102:1 132:10

**caption** 96:1
102:3 106:6
116:7

**captioned**
125:22 126:2

**captured** 92:15

**car** 70:3

**care** 65:19,20
72:1,17 73:22
79:4,12,15
80:13 86:16
87:4,19 89:17
90:19 97:2,19
103:13,23,24,
25 104:17
108:7,11
109:1,13
110:5,12
111:23 112:18
113:8,12,16,21
115:16 116:15
117:15,18,22
118:14 119:1
126:13 127:24
128:21,22
129:18 133:2,
14,19 141:24

**careful** 138:21,
22 141:2
142:5,9

**case** 52:1 62:8,
10,24 63:1
102:3 106:6
115:13,25
116:14 117:4,
14,18,21
118:5,11,15,
19,23 119:3,
16,18,23
120:3,11
126:1,3 127:3,
22 133:2,14,19
141:21

**cause** 62:22
123:9,24
124:12

**caused** 100:12

**Center** 56:12

93:6 126:15
127:25

**certain** 52:4,8
70:14 82:23

**certificate** 83:1
115:2 125:2,7,
8

**certificates**
67:17

**certifications**
127:2

**certified** 88:10

**certifies** 126:11

**certify** 138:23

**chance** 114:22

**change** 132:17
133:17 142:14

**Charles** 121:7,
9 122:15,16
126:1,18,19
128:3,4

**Charter** 136:20
137:6,11

**Chaudry** 56:20

**check** 67:16

**checkups**
137:12

**child** 68:3
69:15 91:14
93:2 94:18

**children** 134:12

**choice** 70:25

**choose** 66:12

**Circuit** 95:22
106:3 114:16
115:9

**circumstances**
52:1

**claim** 62:13,16
106:15 125:22

**claimants**
126:21 128:7
129:7,18

**Claimants'**
125:2,7

**class** 95:21
120:7,22
123:10,11,25
124:1,13,14
125:22

**clear** 54:18
138:11

**clinic** 65:21
136:21 137:11

**closing** 131:18

**CNM** 88:5

**cold** 107:18
125:14

**colleague**
53:23 112:8

**colleagues**
51:14

**collect** 138:8

**come** 86:3,13
130:13 131:2,
6,25 132:2

**comes** 59:16

**comment** 77:22

**comments**
142:18

**Commission**
50:10,23 51:1
55:7

**communication**
119:14

**communication
s** 51:21 52:4,8,
23 53:4,6,16,
23 54:1 59:7
116:24 119:9
137:21

**company**
70:19,24 72:1

**complaint**
95:21 102:14
120:7,11,22

**complete** 53:15

**completely**
62:23

**complications**
92:23

**complied**
129:17

**compound**
99:15

**comprehending**
140:7,22

**concluded**
127:22

**conclusion**
129:23

**condition**
135:19

**conduct** 123:18
126:8

**confidential**
77:18

**confidentiality**
77:17

**confirm** 132:10

Jasmine Riggins

confused 105:19

confusion 140:25

connection 91:13 113:8 134:12,16

consider 109:23

considered 68:19

contend 56:8, 11,15,19,23 57:4

continues 101:23

continuing 129:7

continuously 79:15 85:23

contributorily 123:12 124:2, 15

control 68:10 104:11,12

cooperated 141:19

copies 53:3

coping 94:4 98:24

copy 120:15

Corp 106:8 116:9

Corporation 120:24 125:2 126:14 127:4, 25 128:12,19 133:2

Corporation's 126:7

correct 51:18, 19 52:13 55:7, 8,11,13,14,17 56:6,10,14,18, 22 57:2,7,21, 22 58:4 59:2,3, 6,9 63:17 66:11 69:13 70:2 71:2 72:25 75:18,19 78:9,10 79:17, 25 83:11 84:12 85:1 86:22,23 87:1,2 88:2 90:10 93:9,11, 14 94:15,17 95:24 97:18,21 100:24 106:13 107:15,17 108:1,8 109:3, 6 112:9,10,21, 23,24 113:2 114:1,5,8 116:11,18,19 118:6 119:4,5, 19 120:3,5 121:20 122:10, 17,18,19,21,22 123:2,3,4,6,14, 15,20,21 124:3,17,18 130:9,10,21,25 131:1 134:14, 15,17,18,24 135:2,3,8,9,13, 14,16,17 136:7,13,18 137:9,24,25 138:2,3

correctly 94:12 99:8

Cory 50:20

counsel 50:16, 25 51:9 82:22 111:18 131:15

counsel's 77:8

County 95:23 106:4 114:17 115:10 120:23

couple 56:1 61:3,4 72:15 92:14 97:23 98:10 134:8

course 65:2

court 50:12,15, 17 71:16,18,19 79:1 82:5 87:16 90:16 95:15,22 96:24 101:16 103:9 105:12,17 106:3 111:22 114:16 115:9 140:16,17

cousin 66:16, 17,18,25 67:6, 14

cover 134:8

covered 71:7

credential 128:23

credentials 58:14 67:17 138:19

cried 61:21

criminal 125:25

cry 61:13,16 63:9

crying 94:8 99:3

current 75:13, 14 76:1,2,3,5 89:2

___

**D**

D.C. 50:9 96:3 102:9

d/b/a 126:15 127:25

damages 123:9,24 124:12 126:20 128:6 129:9,20

Dana 50:15

dash 91:6

date 50:5 68:21,22 69:11 75:25 79:7 84:9,10 87:21, 25 90:22 92:16,17,18,19 97:6 103:15 131:17

dated 72:4 76:4 83:17 115:3 127:7

dates 107:3,4,8 118:2

daughter 93:15

David 50:3

Davida 66:21

day 68:23 75:14 86:11 101:11 109:3, 5,15

days 115:3 117:12

deadline 131:17

deal 109:24 114:2

December 121:1

decide 54:4

decided 87:7,9

decision 125:23 131:9, 14

defendant 50:23 51:2,9 111:18

defendants 106:17 128:19 129:16 133:1

defendants' 105:25 129:6 132:25

deliver 68:3

delivered 93:2

delivery 92:15, 18,24 93:5,10

deny 132:11

Department 125:24

Depending 69:8

deponent 50:14

deposition 50:7 51:3,17 54:9 71:11 77:14 78:22 82:1 87:12 90:12 95:11 96:20 101:12

Jasmine Riggins

103:5 105:13
106:20 107:14,
23 114:10,15
120:16 124:19
137:23 142:19

**depressed**
59:19 74:8
81:18 90:5
91:20 98:1
104:24 105:6,9
106:20 107:2,
16,21,25
108:1,4,10,14,
18 109:8,20
111:6

**depression**
64:9,12 93:19
98:12 106:15
110:10,23
111:2

**describing**
135:19,20

**deserves** 77:16

**diagnosed** 64:8

**difference**
141:10,14,18

**different**
134:11,13
138:21 139:5
141:13

**differently**
132:15

**difficulties**
100:10

**difficulty** 60:22
94:5 99:1
100:2,8,12,13,
21

**Dimensions**
106:8 111:22
112:17 113:8,

12,16,21
115:16 116:8,
15 117:14,18,
22 118:14,25
119:25 120:24
121:8,18
122:2,14
123:1,17 125:1
126:7,13,14
127:3,24
128:11,19
133:2,14,19
141:24

**Dimensions'**
123:8,23
124:11

**direct** 84:16
129:6

**directly** 62:16
126:20 128:5

**disability**
123:10,25
124:13 126:21
128:6 129:10,
20

**discharge**
92:16,17

**discover**
128:25

**discoverable**
54:4

**discovery**
82:21 131:16,
18

**discuss** 64:12
77:23

**discussed**
64:14

**discussing**
72:2

**discussion**
52:10 117:6

**discussions**
118:21 135:7

**dismiss** 113:15
119:15,18,23

**dismissal**
114:18 115:8
117:11 118:8,
19 133:18

**dismissed**
113:21 114:3
116:16 117:4,
14,19,22 118:5
119:3 127:3

**Dismisses**
115:13

**dismissing**
118:11,14,22

**disorder** 63:23

**distress** 55:13,
15,19 56:4,9,
13,17,21 57:1,
6,8 59:15
62:13,15 64:1,
15,18,23
85:17,23 86:7
100:14,23

**District** 50:12

**doctor** 55:24
58:1,2,6,12,16,
17 65:10,23
66:5,13 67:25
68:1 70:22,25
71:1 72:20
84:20 85:16
88:19 89:6
103:23,24,25
104:5 135:8

**doctor's** 65:11,
21 67:7 72:24

136:25 137:4

**doctors** 67:23
70:14,20
134:11,13
136:13,17

**document**
71:23 79:2
82:6,8,14,23
83:25 87:17
90:17 95:16,18
96:25 101:17,
18,21,23 102:3
103:10 105:20,
21 114:21
115:4,7,12
121:3 123:16
124:25 125:5,6

**documents**
57:24 82:17
117:11 132:3
136:20 142:13

**done** 51:24
53:17 123:1
134:6 137:24
138:18 141:24

**down** 74:7 75:1
77:25 80:4,17
81:13 90:4
91:17,20 92:2
98:1,8,10
104:19,24

**drink** 76:6

**drinking** 76:22

**drinks** 76:8,9

**drug** 75:25 76:1

**Drug/alcohol**
75:20

**drugs** 76:2

**duly** 51:7
121:16 126:16

128:1

**during** 93:10
109:10,15
135:6

---

**E**

---

**each** 99:22
109:4 134:13,
17 136:1

**earlier** 84:2
100:1,10,22

**early** 69:6

**easier** 120:13

**Eastern** 50:12

**ECFMG** 55:9,10
56:7,8 82:22
101:8 130:8,
14,18,24 131:8
132:15 138:17
139:3 141:2,
11,19 142:17

**Educational**
50:10,23 51:1
55:6

**effects** 68:11

**either** 140:13

**embarrassed**
57:9

**emergency**
69:18,24

**emotional**
55:13,19 56:4,
9,13,17,21
57:1,6,8 59:14
62:13,15
64:14,18,22
85:17,22 86:7
100:14,23

Jasmine Riggins

110:10 112:18
119:2 129:9

**emotions** 57:10

**employee**
121:17

**employees**
122:6 126:18
128:3

**enable** 57:4

**end** 53:17
72:11

**ending** 115:1

**enjoyed** 122:7

**enjoying**
121:19

**enjoyment** 60:1
93:22 98:17

**entitled** 82:14
114:17 125:2,6

**epidural/spinal**
93:8

**equals** 76:6,7

**equipped**
110:21

**EST** 73:14
104:11

**estimate** 61:1,6

**estimation**
110:22

**et al** 106:7
116:8,9

**even** 57:11
94:22

**events** 63:23

**every** 86:11

**everything**
120:2 142:23

**exact** 72:19

**exactly** 135:18

**exam** 73:18
97:17

**EXAMINATION**
51:9 111:18

**example** 70:4

**except** 130:8

**excuse** 104:19

**exhibit** 71:11
78:22 79:3
82:1,7 85:8
86:14 87:12,17
90:12,17
95:11,17
96:20,25
101:12,17
103:5,10
105:13,19
107:20 108:25
114:10,15
115:22 120:14,
16,21 124:19,
24 127:7

**exhibits** 77:20
115:20

**existence**
134:21

**exits** 51:3

**expect** 130:13

**experience**
85:22 86:6

**experiencing**
84:18 85:16
136:11,15

**extent** 52:19,23
116:23 119:8

**eye** 96:10

___

**F**

___

**Facebook** 59:2
64:3 84:3,24

**fact** 63:3

**factors** 62:14

**facts** 51:25
62:23 88:10

**factual** 83:9

**failing** 128:21

**fair** 130:11,14
136:5

**fake** 55:24
122:15

**falsification**
83:14

**familiar** 82:10
102:1

**Family** 74:25

**far** 63:1 85:7

**February** 79:8
80:13 81:23
127:7

**feel** 57:9 60:10,
13,19 61:10,
15,16 63:2
109:15 110:11

**feeling** 74:7
90:4 91:20
98:1 104:23
105:5,8 107:2,
16,21,25
108:1,4,10,14,
17 109:8
110:22 111:6
137:12

**felt** 85:20 94:1,
6 98:22 99:2

**female** 93:12

**few** 61:2 68:14,
19 69:22 76:8
117:3 134:7

**fifth** 76:24 77:5
98:10

**figure** 94:24

**file** 111:25
112:11

**filed** 95:8 96:15
101:4 102:14,
20,24 103:1
112:15,16
114:3 120:8,
11,23

**final** 77:19
125:23

**find** 53:6 59:11,
13 68:1 132:13
141:11

**finish** 134:9

**finished** 114:20

**first** 58:25 66:1
73:9 75:1,12
82:15,17 84:17
89:13 97:5,23
98:10 104:9
106:3 115:24
116:7 120:22
125:7 127:19
136:9

**firsthand**
130:22,23

**five** 76:7

**flip** 101:19
114:25

**flowsheet**
92:16

**following**
135:11,25
136:16

**follows** 51:7

**foregoing**
83:10

**Foreign** 50:10,
23 51:1 55:7

**forget** 65:13

**Forgive** 88:12

**forgot** 88:11

**forward** 60:1
93:22 98:17

**found** 55:23
85:20

**four** 76:9 78:4

**FP** 104:12

**frequently** 86:6

**front** 96:8
102:17 115:21

**full** 84:17

**funny** 59:23
93:21 98:16

**fuzzy** 96:9

___

**G**

___

**gather** 52:11
73:4 92:4

**gave** 92:5
108:24 133:12

**Gender** 93:12

**general** 59:17

61:12,14,17
66:7 104:6
137:7

**gentleman**
125:8

**George's** 56:12
95:23 106:4
114:17 115:9
120:23 126:15
127:25 130:3

**getting** 58:25
60:13 94:3
98:23 113:12
118:10 119:3

**give** 61:1,6
71:19 92:7
94:24 100:25
101:11 120:10,
14

**giving** 63:23
68:10

**glass** 76:7

**Golkow** 50:4

**gone** 110:6

**good** 51:11,12
60:7,11 94:1,2
98:21,22
135:12

**gotten** 73:22
113:7

**Graduates**
50:11,24 51:2
55:7

**grandmother**
63:11

**grant** 128:23

**Great** 53:21
54:25 55:4
94:23

**ground** 54:10

**grounds**
131:12

**guess** 69:9
79:15 96:9
110:23 141:9

**guideline** 76:9

**guilty** 55:16

**Gynecologists**
56:24

---

**H**

---

**hand** 124:23

**handed** 71:23
79:1 82:5
87:16 90:16
95:15 96:24
101:16 103:9
105:17 114:14

**handwritten**
116:1

**happen** 81:4
132:1

**happened** 81:2

**hard** 140:6,22

**harming** 63:19
94:9 99:4

**having** 51:7
107:14 135:23
140:4,22

**head** 61:5
102:16

**health** 65:19,20
70:6 72:1,17
73:22 79:4,12,
14 80:13 86:16
87:4,19 90:19

97:2,19
103:13,23,24,
25 104:17
106:8 108:7,10
109:1,13
110:5,12
111:22 112:18
113:8,12,16,21
115:16 116:9,
15 117:15,18,
22 118:14,25
119:25 120:24
125:1 126:7,
13,14 127:3,24
128:11,19
133:2,14,19
136:21 137:11
141:24

**Healthcare**
127:18

**healthy** 75:3
135:13

**hear** 63:13
104:3 139:11

**held** 50:7
115:15

**help** 110:8

**helped** 141:20

**here** 55:5 87:21
90:1 91:3
100:6 101:8
105:19 107:18
114:6 116:13
118:3 125:14
132:4 133:11
134:6 142:16

**here's** 117:2

**higher** 94:10
99:6

**hired** 126:6
130:2

**history** 73:25
74:25 75:11
78:1 80:18
89:23 97:22
104:20

**HIV** 73:16

**holding** 121:18

**honest** 57:25
58:3,5,9
138:16

**honestly**
101:22,24
109:21 111:7

**hopeless** 74:8
90:5 91:20
98:1 104:24

**hospital** 56:12
68:13 93:5
121:19 122:7
126:15 127:25

**hospitalization**
68:9

**hospitalized**
68:4 69:15

**hospitals** 142:6

**hours** 68:15,19
69:12

---

**I**

---

**identification**
71:12 78:23
82:2 87:13
90:13 95:12
96:21 101:13
103:6 105:14
114:11 120:17
124:20

**identified**
138:25 139:4

**identify** 50:16

**identity** 122:16

**lgberase** 121:7,
9 122:15
126:19 128:4

**ill** 137:12

**Illness** 74:1
89:23 97:23
104:20

**Immediately**
85:18,19

**impacted**
118:19

**including** 77:19
117:11 122:8
126:18 128:3,
24

**independent**
51:24

**indicating**
112:5

**individually**
126:16 128:1

**information**
77:16 83:11
116:21,22
130:8 131:4
142:14

**initiate** 102:15

**initiated** 111:21

**injuries** 84:18
86:17 87:5
112:19 119:2
123:9,24
124:12 126:21
128:6 129:20

**injury** 56:5

**instances**

138:25

**instruct** 76:16
131:10

**instructed** 77:2

**instructing**
76:24

**instruction**
77:9

**insurance** 70:7,
9,13,16,19,24
71:3,8

**insurances**
70:15

**interactions**
112:19 130:23

**interest** 74:5,6
90:2,3 91:18,
19 97:24,25
104:22,23
132:21

**interested**
109:17

**intermittent**
85:24,25 86:1
110:23

**interrogatories**
82:11,16,23
83:10 84:14
88:1

**interrogatory**
85:15

**interviewed**
138:20

**into** 57:11
98:14

**Intrapartum**
92:23

**investigate**

128:22

**involved**
127:21

**involving**
134:21

**issue** 54:24
55:1,3

**item** 75:1 81:14

———————

**J**

**J.D.** 127:17

**Jasmine** 50:14
51:6 82:15
83:8,22 96:2
102:6 121:6,9
132:24

**job** 138:22

**July** 84:19
85:4,9 87:25

**June** 83:17
86:22

**Justice** 125:25

———————

**K**

**keep** 87:10
125:12

**kind** 54:12 66:5
96:8 104:5
114:2 137:4

**kinds** 73:21

**King** 65:24,25
66:3,5,12 67:1,
3,8,16

**King's** 66:1
67:11,19

**Klayman** 50:25
51:10,14 53:2
54:6,7 58:24
60:18 62:12,
19,21 71:14,
17,22 76:20,23
77:4,7,21,24
78:25 80:3
81:25 82:4
87:15 88:11,13
90:15 95:10,14
96:23 99:18,21
100:20,25
101:2,15 103:8
105:11,16
111:8 115:22
133:3 137:19

**Klemmer** 88:5,
6,8,14,16,22,
25 89:3,8,20
91:1,10,13
97:10

**knew** 117:3
121:9 122:14
123:1

**knowing** 63:1

**knowledge**
83:11 121:12,
21 122:11,20
123:5,14,20
130:22 132:15,
17,18 142:16

**known** 63:24
122:14 129:2

———————

**L**

**L-I-M-E-S**
66:23,24

**language** 73:9
81:11 89:13,22

**last** 61:19 65:7,

10,11 66:22
79:15 81:13
88:24 91:4
114:25 137:13

**late** 68:17 69:5

**later** 69:12

**laugh** 59:23
93:20 98:15

**lawst-** 112:25

**lawsuit** 55:6,20
56:5 59:1
63:24 95:7
96:15 101:3
102:15,24
106:11 111:25
112:12,16,17,
23,25 113:9,
15,20 114:3
115:15 127:14

**lawyers** 118:22
119:14 126:6
130:9,19 131:5

**learn** 117:17
141:11,19

**learned** 59:1,2
84:19

**learning** 55:16
64:2 85:14

**least** 79:16

**leave** 68:17

**left** 68:22,24
69:11 79:10
87:21 90:22
95:25 97:5
103:16

**legal** 129:23

**Lesht** 73:1

**let** 62:19,20
71:19 80:11

88:20 114:19
119:17 140:24

**letter** 127:7,16
128:18

**liable** 123:17,
18

**life** 62:14 63:7

**light** 142:12

**like** 52:14 57:10
61:3,14,15
67:21,25 68:18
70:3 73:21
80:9 87:9,19
96:10 97:2
103:12 104:5
110:4,8,10,18
114:2 142:8

**Limes** 66:21

**limitations**
118:18

**limited** 122:8
126:18 128:3,
25

**line** 75:1 83:20
84:17 86:15
98:10

**lines** 97:23
98:10

**list** 82:25
131:18

**listed** 131:16

**litigation** 50:4
95:4 101:7
107:24 111:21
119:24

**little** 74:5,6
90:2,3 91:18,
19 96:9 97:24,
25 104:21,22

Jasmine Riggins

111:9 125:14
131:23 134:10

**long** 60:24
68:12 72:16
82:25 117:17

**looked** 85:7
93:22 98:17
130:24 132:3
138:1

**looking** 69:8
81:9 97:15
116:12 120:20
138:15

**looks** 87:19
96:10 97:2
102:1 103:12

**lot** 94:14

_____

**M**

_____

**M.D.** 122:16
127:17

**M.S.** 127:17

**made** 59:12
61:23 63:11
83:12 119:24
131:9,14
137:22

**maintain** 122:3

**major** 136:5

**make** 53:24
54:15,17 62:25
63:8 77:12
130:5 134:7
139:17 141:10,
14,18

**makes** 63:2,5

**making** 55:2

**man** 66:3

**managing**
127:18

**many** 57:11
61:2 69:21
76:8

**March** 121:8

**marijuana** 76:2,
3,17

**mark** 77:18
120:14

**marked** 71:12,
24 78:23 79:3
82:2,6 87:13,
17 90:13
95:12,16
96:21,25
101:13,17
103:6,10
105:14,18
114:11,15
120:12,17,21
124:20,24
132:23

**Martine** 79:19,
20

**Maryland** 56:15
95:4,23 96:15
101:6 106:4
107:24 111:22
114:17 115:10
116:15 120:23
125:24 127:14
133:3

**materials**
125:25 126:2
127:21 130:25
132:3

**Maternal** 92:16

**matter** 50:9
125:1 130:12

131:3

**Matthew** 50:25
51:13

**max** 76:9

**may** 130:9
131:25

**maybe** 62:19
68:14,23,24

**mean** 55:10
57:20,22 58:11
60:17 61:11
110:3 142:8

**means** 74:2

**medical** 50:11,
24 51:1 55:7
58:19 64:11,
15,17,21 65:1,
5,8,9 67:20
70:10 73:14
77:15 80:7
85:6 88:19
89:6,16 90:19
91:5 97:3,16
103:13 104:10
107:20 109:1
121:18 122:7
128:24 134:19
137:16

**medicine** 57:5

**meet** 67:7

**members**
122:4,7 123:11

**memory** 117:20

**men** 76:10

**mentioned**
135:10 137:20

**Merit** 125:3,7

**Messiah**
134:21 135:12

**met** 51:13 67:8

**method** 93:9

**middle** 78:1
81:10 98:11
102:19 116:1

**midnight** 68:24

**might** 62:3,14
113:24,25
114:1 136:4
142:13

**mind** 86:13
141:10,14,18

**minute** 71:16
133:23

**misconduct**
129:1

**miserable**
61:10,11 94:6
99:2

**misstates** 88:9

**moment** 51:13
103:4

**moments** 117:3

**money** 113:7,
12 118:10,13
119:4

**Monique** 50:9
52:5 53:4,7,16
59:4,11 64:2
84:4,24 96:1
102:5 106:6
116:8 125:1
137:21

**monitor** 128:23

**month** 65:10,
11,14 137:21

**months** 61:19

**mood** 59:19
81:18

**more** 86:8
110:21 131:23
134:7 138:21,
22 141:2
142:4,6,7,8,11

**morning** 51:11,
12,15 59:8
68:17,18,25
69:6 112:4
115:23 132:23

**move** 81:8
132:22

**moving** 75:10
80:4 89:22
91:17 92:2
104:9,19

**much** 93:21,23
98:16,18
138:22

**multiple** 106:7
139:1

_____

**N**

_____

**name** 50:3
66:1,19,21,22
73:2 94:18
95:25 115:19
122:16 131:19,
20

**named** 95:1,3
112:22 123:10,
11,25 124:1,
13,14 125:8

**names** 82:25
106:7 138:21
139:1,5 141:13

**necessarily**
58:7 59:18

Jasmine Riggins

64:4,5

**need** 58:15
62:5 66:19

**Needed** 73:17

**Negative** 81:17
94:11 99:6

**negligence**
123:8,23
124:11 129:7

**negligent**
123:12 124:2,
15

**negligently**
128:21

**network** 71:6

**never** 93:25
94:8,9 99:4,5
109:7 130:23,
24

**new** 68:1

**Newborn** 92:17

**next** 68:18,22,
24 73:2,15,25
74:24 75:11
79:18 81:9
89:22 90:25
92:2 93:19
103:18 121:25
122:13 129:5

**night** 69:5

**nods** 61:5
102:16

**none** 92:23

**Northwest** 50:8

**note** 73:2 79:18
88:4 90:25
97:9 103:18

**noted** 77:22
135:7

**November**
97:6,20 98:6
99:11,24 100:7
102:20 103:2

**NP** 73:4 79:19,
20,23

**number** 50:13
72:8,11 79:2
87:18 90:18
96:3 97:1
102:6 103:11
106:14 115:1,
25 116:9

**nurse** 73:5
79:24 88:10

---

**O**

**oath** 62:4

**OB** 77:25 88:17
89:16 91:6
97:16 104:6

**object** 132:10

**objection** 52:17
58:20 60:15
62:6 76:15
77:12 80:1
88:9 99:13,15
100:15 106:18
112:1 113:17
116:23 119:7
128:14 129:22
131:8 142:1

**Obstetricians**
56:24

**occasionally**
76:3

**occur** 63:20

**occurred** 94:9
99:5 118:8
135:6

**October** 90:23
91:11,25 92:9,
16,17,18 94:16

**off** 111:12
133:22,24
142:23

**offer** 126:6

**office** 65:21
67:7 72:20,21,
24 136:25
137:4 141:20

**offices** 70:14
142:6

**often** 76:7 86:8,
10

**Oluwafemi**
121:7,9 122:15

**once** 67:8 76:7
85:18,20

**one** 54:11
58:18 59:7
63:10 68:21
75:12 76:6,7,8
79:7 90:17
94:24 101:1,5
102:19 112:22
120:12,13
127:13 134:13

**only** 56:5

**opinion** 128:18

**opinions** 126:7
128:10

**orally** 108:20,
22,23

**order** 125:23

**others** 126:22
128:7 129:7,18

**ounces** 76:7
93:18

**over** 54:11,18,
19 57:10 61:19
114:25 137:19

**overnight**
68:14,19

**overwhelm**
60:19

---

**P**

**p.m.** 134:1,2

**paid** 138:19,20

**pain** 129:8
135:15,25
136:8,11,15,16

**pains** 135:21

**panicky** 60:10
94:2 98:22

**paragraph**
121:4,15
122:1,13
123:7,22
124:5,10
125:21 126:10
127:20 128:17

**paragraphs**
122:23

**part** 56:9,13,17,
20,25 57:6
118:14

**particular**
72:10

**partner** 127:18

**parts** 138:15

**past** 64:22
73:23 75:14
76:1,5

**patient** 67:9
72:17 73:15
79:11,14 89:2,
6 104:11 121:7
122:3

**Paul** 127:8

**pay** 118:13
142:6

**penalties** 83:13

**Pennsylvania**
50:8,13

**Performing**
138:14

**period** 58:13
78:12 121:8

**periods** 109:10

**permanent**
123:10,24
124:12 126:21
128:6 129:20

**personal** 129:9
132:14 142:16

**personally**
131:6

**personnel**
128:24

**Philadelphia**
127:14

**PHQ-2** 74:1,2,5
90:2 91:17,18
97:24 104:21

**physical** 64:1
66:10 73:18
129:8

**Physically** 64:4

Jasmine Riggins

**physician** 66:6
74:19 137:8

**physicians**
56:16 59:16
122:6 125:24

**picking** 51:17

**place** 57:11
93:5 109:25
110:1,19,21

**places** 110:8

**plaintiff** 82:14
84:18 86:15
95:1,3 106:12,
19 115:15
132:24

**plaintiffs** 71:25
72:8 112:23
123:10,11,25
124:1,13,14

**play** 70:9

**plays** 70:12

**plea** 55:16

**pleading**
114:16

**pleasure** 74:5,7
90:3,4 91:18,
19 97:24,25
104:22,23

**point** 61:16

**position** 121:18
142:14

**Possibly**
141:22

**post** 59:4,11
64:3 84:3,24

**post-traumatic**
63:22

**postpartum**
92:3,4 93:19
97:17 98:8,12

**pounds** 93:17

**practice** 57:5,
17,18 142:5

**practicing**
58:12

**practitioner**
66:8 73:5
79:24 104:6
137:8

**prefer** 71:1

**pregnancies**
78:4

**pregnancy**
80:7,16 97:16

**prejudice**
114:18 115:9

**prenatal** 89:17

**prepared**
134:20

**preparing**
132:12

**Present** 74:1
89:23 97:22
104:20

**president**
127:17

**pretend** 57:16

**pretending**
58:8

**pretty** 138:22

**prevent** 141:24

**previous** 77:14

**pride** 142:7

**Prince** 56:11
95:23 106:3
114:16 115:9
120:23 126:15
127:25 130:3

**prior** 67:7
135:1,4

**privacy** 122:4

**private** 138:15

**privilege** 52:18,
20 76:25
113:18

**privileges**
121:19 122:8
128:23

**Pro** 102:20

**probably** 61:3
92:24

**proceed** 50:19

**proceedings**
51:4 125:25

**process** 57:18,
19

**produce** 54:3,5

**produced** 54:1
71:25 142:13

**Production**
82:17

**professional**
64:12,15,18,22
65:8,9 107:20
129:1

**professionals**
65:1,5 70:10

**progress** 73:2
79:18 88:4
90:25 97:9
103:18

**proper** 57:18,
19,24 58:14

**properly** 58:16

**propounded**
131:16

**protect** 123:1

**Prothy** 102:20

**provide** 138:8,9

**provider** 87:4

**providers**
86:16

**proximate**
123:9,23
124:11 129:6

**proximately**
126:20 128:5

**Psych** 81:15

**PTSD** 63:24

**public** 122:4

**pull** 85:10

**put** 57:11 77:13

**Q**

**question** 52:22
53:1 60:16
62:5,7,20
76:16,19 77:2
78:21 99:16
100:4,15,18,
19,21 107:9,11
112:15 117:13
119:11,15
124:9 130:5,15
131:2,10,11,22
132:6,10
133:4,6 139:6,
17 140:7,9,12,

22 141:7,9

**questions**
51:15 61:15
65:1 72:16
74:11,21
75:13,25 76:4
92:14 94:15
108:12 109:13
111:21 116:24
133:9 134:7
142:11,21

**quick** 111:9
125:4

**quite** 60:25

**R**

**rather** 63:18

**read** 76:11
81:19 90:6
92:13 94:12
98:14 99:8
104:13 139:8,9
140:18,20

**real** 58:1,2,6,12

**really** 69:5,6
84:19 85:16,21
87:10 110:14
126:25

**reason** 60:8,11
68:8 69:24
73:10 80:4,9
89:11 91:5
94:1,2 97:12
98:21,22
104:10 112:16

**reasonable**
128:22

**reasons** 70:1
97:19 104:16
137:10

Jasmine Riggins

**recall** 52:12 55:25 61:23 65:22 66:2,9 69:15,17,22,23 72:16,18 73:3 74:13,14 78:11,13,14 80:12 84:5 95:7,9 100:1 101:3,10,25 105:10 107:3, 4,13 108:9,21 113:6,23 114:8 117:8,13,24,25 118:2 134:23 137:14

**received** 71:25 122:5 136:20

**receiving** 57:24 89:19

**recess** 111:14, 15 134:1,2

**recognize** 82:8 95:18 105:20 120:21

**recollection** 73:6 80:10 81:1 83:24 84:23 96:14 100:9 102:23 106:24

**record** 50:3,17 53:25 66:20 71:24 72:7 77:13 79:5,15 87:19 90:19 91:4 97:3 98:15 103:13 111:12,17 133:22,24 134:4,20 139:9 140:20 142:23

**records** 77:15

85:6 109:1 137:16

**refer** 55:9 72:11 89:8 111:5

**reference** 90:1 92:24 136:20

**references** 67:13

**referral** 104:12 110:20 111:1

**referred** 62:23 66:14,15,25 88:1

**referring** 57:15 63:15 75:5

**refresh** 73:6 80:10 81:1 83:24 84:23 96:14 100:9 102:23 106:24

**refreshed** 117:20

**regarding** 126:2 131:7 142:14,16

**Regular** 137:12

**relate** 122:25

**related** 62:7 112:19 126:2 128:11

**relating** 83:13 95:4

**released** 77:19

**relevant** 62:11, 16

**remember** 52:6 54:13 68:12 71:6 100:3

117:5

**repeat** 53:1 130:15

**repeats** 74:6

**rephrase** 124:9 139:6

**report** 129:1

**reported** 136:13,17

**reporter** 50:15, 18 71:16,18,19 79:1 82:5 87:16 90:16 95:15 96:24 101:16 103:9 105:12,17 140:16,18

**reporting** 134:21

**request** 104:11 105:25 106:14 137:22

**requested** 139:9 140:20

**requestion** 142:12

**requests** 82:17, 21,23 132:25 133:7,13

**required** 128:22

**research** 51:24 67:2

**reserve** 77:17 142:11

**respect** 59:14 76:17

**responding**

133:6

**response** 82:22 85:15 105:25 106:18 133:12

**Responses** 82:16 132:25

**responsible** 56:8,12,16,20, 25 57:5 112:18 119:1 122:3

**responsive** 54:1

**rest** 76:18

**result** 55:15 94:11 99:7 106:16 129:6 135:23 136:12

**resulted** 126:20 128:5

**resulting** 135:16

**resume** 67:11

**review** 81:10 127:21

**reviewed** 125:21

**reviewing** 101:23

**reviews** 101:21 105:21 114:21 125:5

**Richardson** 94:22

**riggins** 50:14, 21 51:6,11 71:11,24 78:22 79:3 82:1,6 83:8,22 85:8 87:12,17

90:12,17 95:11,16 96:2, 20,25 101:12, 17 102:6 103:5,10 105:13,18,19 107:19 108:25 111:20 114:10, 14 115:25 116:6,12,13 120:6,14,16,20 121:6,9 124:19,25 125:6 126:11 132:11,22,24 134:6 142:12

**Riggins'** 82:15

**right-hand** 116:1

**rights** 57:17 58:13

**rise** 63:23

**role** 70:9,12

**room** 69:19,24

**routine** 66:10

**rules** 54:10

**Russell** 50:9 52:5 53:4,7,16 59:5,11 84:4 96:2 102:5 105:18 106:7 116:8 125:1 137:21

**Russell's** 64:3 84:24

**Ryan** 50:15

---

**S**

---

**sad** 57:9 61:10,

Jasmine Riggins

12,16 63:11
94:6 99:2

**safety** 122:4

**said** 63:18
84:6,7 92:19
104:1 107:4
110:24 117:4
120:3 139:13
141:2,7

**same** 54:16
68:23 69:11
92:19 108:24
116:9 130:6
132:7 137:5

**saw** 59:12 65:7
84:3,24 88:24
89:9 134:13,19
136:19

**say** 55:10 57:3,
14 61:19 64:5
70:24 82:9
85:12,14 87:9
89:14 100:24
108:13 119:1
123:22 136:5

**saying** 58:2
62:10 126:24

**says** 73:10,14,
25 74:4 75:2,
13,25 78:4
79:19 80:7,22
81:10,14,17
83:8 84:17
86:15 88:3,4,
10 89:16,23
90:2 91:3 96:1,
2 97:23 102:5,
19 103:18
104:10,21
106:15,19
116:8 125:21

**scared** 60:10

94:1 98:22

**scarring**
134:22 135:5

**school** 58:15,
19 67:20

**score** 94:10
99:5,6

**scores** 67:20

**screening**
93:20 94:11
98:12 99:6

**search** 53:15

**second** 63:3
86:15 94:24
101:1 104:20
125:20 128:17
135:6

**section** 75:11
77:25 80:17,19
81:14 92:3

**seek** 110:6

**seem** 110:18

**seems** 79:23

**seen** 64:11
83:25 86:16
101:18 115:4
134:11

**sentence** 129:5

**September**
50:5 72:5,24
74:15 75:18
76:14 78:9
79:16 87:22
89:20 90:10
96:11,18 112:9
115:3 117:23
142:24

**Serum** 73:16

**servant** 121:17

**servants** 122:5
126:17 128:2

**served** 82:22
133:1

**service** 83:1
115:2

**Services** 50:4

**set** 82:15,17
103:3

**several** 69:12
108:25

**Shaffer** 50:22
51:3,14 53:23
54:9 111:19
112:4,7 113:19
114:13 117:1
119:12 120:19
124:6,8,22
128:16 130:1
131:12,22,24
132:6,19,20
133:22 134:5
139:8,13,19,25
140:3,5,13,16,
23 142:10

**she'll** 54:3
131:21

**should** 58:16
122:14 123:1
129:2 138:18
141:2,24

**showed** 115:22
117:10

**sick** 69:25

**side** 59:24
68:11 93:21
98:16 116:1

**sideways** 96:8

**signature**
83:21

**signed** 86:21

**significant**
134:22

**signify** 79:23

**similarly** 128:7
129:8,19

**sit** 114:6
116:13 118:3
133:11

**site** 130:24

**sitting** 76:9,10

**situated** 126:22
128:7 129:8,19

**situation** 132:2

**situations**
139:4 141:12

**six** 61:19

**skip** 80:17 98:9

**Skipping** 75:20

**sleep** 100:9

**sleeping** 60:22
94:5 99:1
100:2,8,12,13,
22

**Slight** 136:10

**smack** 81:9

**smoker** 75:14

**Social** 75:11

**sole** 123:8,23
124:11

**Solutions**
127:18

**someone**

57:13,16 58:5
79:24 110:4
111:5

**something**
53:11 57:17
58:8,10 87:10
94:25 109:14,
22,23 119:21
131:5 135:1
136:12,17
138:7 142:17

**sometime**
118:4

**sometimes**
60:20,23 62:25
63:5,24

**somewhat** 81:7

**somewhere**
111:1 136:19

**sons** 75:2

**soon** 85:14

**sorry** 55:18
62:9 63:13
68:16 78:20
99:14 100:25
101:25 104:3,4
105:7 112:13
113:4,6 117:24
118:9 121:23
125:12,15
130:16 136:14
139:2,7,11,15,
24 140:15,21
141:15

**sort** 141:8

**sound** 73:21
80:9

**speak** 54:18,19
142:15

**speaking** 54:11

Jasmine Riggins

61:17 77:12

**specialist** 66:7

**specific** 67:17
131:23

**specifically**
122:8

**spell** 66:22

**spoke** 130:23

**staff** 110:13
121:18 122:7

**stamp** 72:13,14
77:17 96:7
102:18

**stamps** 102:18

**standards**
126:12 127:23
128:20 129:17

**start** 55:22
88:21

**started** 134:8

**starts** 74:1

**state** 111:22
121:6,15 122:2
123:7

**stated** 123:17

**statement** 78:9
81:22 86:21,25
89:19 90:9
91:10,25 94:16
97:18 98:6
99:11,23 100:6
104:16 105:2
123:13 125:22

**statements**
74:16 83:9
119:24 122:25
127:2

**states** 50:11
128:18

**statute** 118:18

**stick** 70:21

**still** 54:16
79:11 80:18
86:24 88:20,22
112:25 120:2
132:9 133:14
137:15 138:7

**stipulation**
114:17 115:8
117:11

**stomach**
135:21

**stop** 128:25

**Street** 96:2
102:6

**stress** 63:22

**strike** 80:11
88:20 95:2
141:8

**subject** 53:22
55:20 83:13
142:18

**substance**
51:25

**substantive**
51:21

**such** 122:6

**suffer** 106:15

**suffered** 55:12
64:1 129:8,19

**suffering** 62:15

**suicidal** 59:21
81:18

**suing** 56:5,7

**supervise**
128:24

**Supplemental**
82:15,16

**surgery** 63:11
136:6

**surgical** 80:18,
23

**surprise** 74:18

**Suzuki** 103:19

**swear** 50:18

**switched** 67:23

**sworn** 51:7

**Systems** 81:10

_____

**T**

**Taisei** 103:19

**take** 53:25
59:10 93:12,13
111:9 114:19
115:24 120:6
125:4 132:7,22
142:7

**talk** 62:2,4,8
63:18 134:9

**talked** 119:21
130:6 134:10,
25 137:20,22

**talking** 56:2
59:8 61:2
87:11 101:6,7
108:6

**Taniya** 94:18,
19,20,22

**Tchinda** 79:19,
20

**technical** 69:3

**telling** 54:11

**terms** 109:18
118:7

**test** 67:19
73:16,17 80:8,
16 97:17

**testified** 51:7
54:2 84:2
100:10,22
105:5,8
106:19,25
107:14,24
132:16

**testify** 130:14
131:7,25
132:14

**testifying**
131:20,21

**testimony**
51:22,25 63:6
77:15

**text** 74:4

**than** 68:3 69:15
86:8 130:19
132:15

**their** 126:16
128:1,24
129:19 130:24,
25 138:22
142:5

**therapist** 110:9

**therapists**
110:13

**thing** 54:12
63:10

**things** 57:25
59:24 60:2,5,
13,19 62:14,25

63:7 74:5,7
90:3,4 91:19,
20 93:21,23,24
94:3 97:25
98:1,16,18,19,
23 104:22,23
110:10 122:25
131:7 134:8
138:5,12

**third** 75:1 80:19
91:14 102:2
127:6 135:7

**Thomas** 125:8
127:17

**thought** 63:19
86:9 87:3,6,8
94:8 99:4
109:7

**thoughts** 59:21
81:18

**three** 134:12,13

**through** 54:10
58:15 72:10
75:12 91:3
92:13 93:3
101:19 109:1
120:13 126:16
128:1

**Thursday**
51:18,20 52:3
54:9 130:7
134:9 135:2,4,
11 137:20

**time** 50:6 56:3
60:25 61:20
65:7 75:7,8
78:12 79:12
81:7 85:23
88:4,24 97:12
98:20 103:15
108:2,3,5
109:4,10,16

Jasmine Riggins

132:8 134:22
137:13 140:6,
22 142:11

**times** 61:14,15,
17 69:14,21
76:8 80:22

**title** 82:13

**tobacco** 75:12,
13,14

**today** 50:14
51:20 55:5
79:16 84:2
101:9 113:1
114:6 116:13
117:20 118:4
130:19 132:5,
16,18 133:11,
18 137:23
142:16

**Today's** 50:5

**told** 64:23 65:4
74:19 107:20
112:8 113:11
130:7,9,19
131:5 135:5

**top** 60:14 73:2,
10 75:1 79:10
87:21 88:3
90:22 94:3
95:25 97:5,15
98:24 103:16
106:2 116:7
142:8

**Total** 78:4
94:10 99:5

**touching**
138:16

**transcript**
54:17 67:20
71:13 77:19
78:24 82:3

87:14 90:14
95:13 96:22
101:14 103:7
105:15 114:12
120:18 124:21

**traumatic** 70:3

**treat** 110:22
111:1,5

**treated** 71:4
79:25

**treating** 65:5
74:19 91:13
109:18

**treatment** 65:2,
8 67:3 71:7
73:22 86:17
87:4 88:25
89:19 110:7
122:5

**trial** 130:12,13
131:3,7,20,21
132:1,12

**tried** 86:12
141:12

**true** 74:15 75:7,
8,17 76:13,14
78:8 81:21
83:10 86:20,24
89:18 90:8
91:9,24 94:15
97:18 98:5
99:10,23
104:15 105:2
119:25 120:3
121:11,20
122:10,19
123:4,13,19
124:17 133:14

**truth** 54:11
64:19,23,25
65:4

**truthful** 57:25
133:8

**try** 53:17 59:13
62:20 125:12,
16 140:3

**trying** 77:4,12
117:2 125:15
132:13,21
133:7 139:21

**turn** 72:9 74:24
82:24 84:13
106:14 121:3,
14,25 127:6

**Turning** 123:16

**two** 75:2 78:5
80:22 92:10
102:18 117:11
133:4 138:21

**type** 76:6 92:23
110:18

**typically** 64:25

_____

**U**

_____

**U.S.** 141:20

**Uh-huh** 55:21
76:12 82:18
105:12 107:3
116:3 141:4

**under** 62:4
74:25 75:10
97:22 104:19
138:21

**underline**
104:21

**underlined**
81:14 92:2
98:9

**underneath**

74:4 96:1
102:5

**understand**
52:3,9 54:9,23
55:10 62:3
77:5 118:8
124:16 126:23
131:25 139:20

**understanding**
88:18 89:5
115:11 116:14

**unfortunately**
138:6

**unhappiness**
62:22

**unhappy** 61:13,
20,24 63:1,5,8
94:5,7 98:25
99:3 100:7,12

**united** 50:11
97:2

**Unity** 65:19,20
72:1,17 73:22
79:4,11,14
80:13 87:19
88:17 90:19
97:2,19
103:12,23,24,
25 104:16
108:7,10,25
109:12 110:5,
12 137:5,6

**unnecessarily**
60:4 93:24
98:19

**unrelated** 62:7,
10,23 100:14,
22

**unsworn** 83:13

**until** 68:18
79:16

**updated** 76:1,4

**use** 70:10
75:13,14,20,25
76:1,2,4,5,17
128:21 141:12

**Use/frequency**
76:3

**used** 76:2
137:1 138:25
139:5

**using** 122:16

_____

**V**

_____

**variety** 70:1

**verification**
83:3 86:22

**versus** 50:10
106:8 110:4
116:8 125:1

**Vettori** 127:8,9,
19

**vicariously**
123:17

**video** 50:7

**violating**
138:15

**violations**
126:12 127:23

**visit** 67:7 89:17
91:6 92:3
97:16 98:9
108:2,3,7
109:16

**visited** 108:10

**visits** 108:15,
18 109:8,20

Jasmine Riggins

**voice** 125:12

---

**W**

---

**Wait** 71:16

**Walk-in** 80:7

**want** 53:24
54:15 61:16
62:2,4 72:15
77:12,17 85:10
101:11 109:15
111:20 115:21
119:13 130:5
132:1 133:17
134:7 139:17
140:25

**wanted** 87:10
109:19

**warmer** 125:17

**Washington**
50:8 93:5 96:3
102:9

**way** 57:21,22
58:18 63:2
75:2 123:12
124:1,14
139:21

**Web** 130:24

**week** 53:18
76:8

**weeks** 61:2
92:10

**weighed** 86:9

**weight** 93:17

**well-being**
81:22 90:9
91:25 94:16
98:6 99:11,23
105:3

**went** 54:10
58:19 65:10
67:3,6 93:24
97:19 98:19
104:16 109:1,4
130:24 137:19

**whatever**
131:17

**whether** 54:4
83:25 106:25
110:12 113:14,
20 115:14
116:14 117:3
118:17 126:5
137:15 138:24
139:3 142:16

**while** 94:24
111:9

**whole** 56:8,12,
16,20,25 57:5
132:3

**whom** 66:15

**will** 50:16,18
53:17 54:3
70:24 77:15
81:25 89:13
113:11 120:13
131:3 132:11

**willing** 53:12
138:8

**Wine** 76:6

**within** 92:10

**without** 57:18
114:18 115:8
119:3

**witness** 50:18
52:25 58:23
60:17 61:5
76:16 80:2
99:14 100:19
101:21,23

102:16 105:21
111:11 114:21
119:11 125:5
129:25 131:11
139:10,15,22
140:2,4,6,10,
15,21 142:4

**witnesses**
131:17,19

**woman** 66:3,4

**women** 58:13
138:14

**women's**
138:15

**words** 57:11
86:4 98:11
141:5

**work** 130:3

**worried** 60:7
93:25 98:21

**worry** 59:15

**writes** 127:19
129:5,16

**writing** 108:21

**written** 52:8
53:22 75:8

**wrong** 60:5
93:24 98:19
101:11 138:13

**wrote** 122:14
124:10

---

**Y**

---

**year** 72:19 96:9

**years** 56:1
61:2,3,4 72:18
137:3

**yet** 119:2 140:9

**Yolanda** 88:4,
14,16,22,24
89:3 91:1,10
97:10

**yourself** 60:4
63:20 119:10

**yourselves**
50:17

---

**Z**

---

**Zajdel** 50:20
52:17 54:2
58:20 60:15
62:6,17 76:15
77:1,6,11 80:1
88:9 99:13,15,
19 100:15
112:1,5 113:17
116:23 119:7
124:4,7 128:14
129:22 131:8,
13 132:9
139:11,16,20
140:8,11
142:1,20

**zeros** 72:8