# Exhibit 66

**Consent to Treatment**
I am seeking either inpatient or outpatient service from Dimensions Healthcare System (DHS). I understand services are available to me without discrimination as prohibited by federal and state law. I hereby consent to care and treatment, including but not limited to diagnostic medical therapeutic testing and treatment as may be deemed necessary or advisable by my physician, his/her associates, partners or designee, consulting physicians, DHS and its employees, based on his/her medical knowledge and my health condition. I understand I have a right to limit or refuse recommended treatments and/or procedures. I understand that no guarantees have been made to me about the outcome of this care. I understand that health related services may be provided by the employees, agents, and independent contractors utilized by DHS, including but not limited to anesthesiology and other interpretive and diagnostic services.

*Medical Education and Training*: I understand that DHS is approved to train medical students, residents, nurses and allied health students. I also understand students and residents may observe or participate in patient care. I agree to permit such involvement, unless I notify DHS to the contrary in writing with the understanding the students or resident's work will be under the supervision of a qualified instructor or physician on the medical staff of DHS.

*Physicians Not As Employees:* I acknowledge that physicians furnishing services, including but not limited to attending physicians, radiologists, surgeons, emergency department physicians, obstetrician/gynecologists, pathologists, anesthesiologists, neonatologists, physicians interpreting diagnostic studies, consultants and assistants to the physician are not employees or agents of the hospital. I understand that I may receive a separate bill from each of these providers of service.

*For Inpatient Only*: Room charges are incurred for the day of admission or any part thereof, but not the date of discharge. I acknowledge that check-out time is 11:00 a.m. Any balances known to be due for services not covered or partially covered by insurance will be payable at the time of discharge, including but not limited to applicable coinsurance or deductibles.

*Personal Property and Valuables*: I agree that DHS will not be responsible for patient valuables, clothes, personal items, money or other personal property. I also release DHS from any responsibility for loss or damage to any article not claimed from safekeeping by or for the patient within thirty (30) days of discharge or departure from DHS premises.

*Only Applicable for Medicare Beneficiaries*: Statement for Payment of Medicare Benefits to Hospital and/or Physicians — I certify that the information given by me for payment under title XVIII of the Social Security Act is correct. I authorize any holder of medical or other information about me to release to the Center for Medicare and Medicaid Services (CMS) or Medicare Intermediaries or Carriers any information needed for these services or a related claim. I request that payment of authorized benefits be made on my behalf.

*Insurance Billing and Assignment of Benefits*: I assign the benefits payable for hospital or physician services to DHS and or any physician which renders service to me and authorize them to submit the necessary claims to Medicare for payment. I certify the registration statements are true and I, as guarantor, agree to pay all amounts owed for care and treatment to the full extent permitted by law. DHS may submit claims to my third party payor or, if legally permissible, bill me directly for full or partial payment. I understand that DHS may, at its option, delay billing me directly and this does not alleviate my responsibility for payment. I agree to pay all amounts owned by me, or the Insured, Member or Subscriber, for treatment to the full extent permitted by law. I assign any benefits which I or the Insured, Member or Subscriber may have or be entitled to, to DHS towards payment of my hospital bills and physician bills. I understand that my insurance, HMO, or other healthcare benefits are subject to verification by DHS and that I will remain responsible for any unpaid amounts whether or not covered by this assignment to the full extent permitted by law. I understand and agree that I am responsible to pay for any charges for care/treatment/service when I access care/treatment/service outside of my insurance plan network.

*Notification of Credit Bureaus Reporting*: I understand that DHS may report any outstanding self-pay balances to Credit Bureaus.

**Release of Information**
I understand that my medical information is confidential and under certain circumstances is protected under federal and state laws and regulations and cannot be released without my written authorization unless otherwise provided for in said regulations. I also understand that I may revoke this consent at anytime except to the extent that action has been taken in reliance on it.

I understand that it may be necessary for DHS, its employees, agents, independent contractors and/or my physician to release and/or disclose all or part of my confidential medical information to third parties for the purposes of providing certain diagnostic treatment and/or testing which may not be available within DHS.

I understand that for the sake of convenience and speed of reference, and to further the timeliness and quality of diagnosis and treatment rendered to me, that any physician, nurse, or business office representative who has been involved with my treatment at a DHS facility may request that the hospital send by facsimile transmission to the physician of record, consulting physician or third party carrier any relevant data from my medical record necessary for continuity of care or reimbursement. It is further understood that with any facsimile transmission there is a possibility that medical records may inadvertently be misdirected. Not withstanding such risk, I hereby authorize release of any relevant data in my medical record by facsimile transmission to any physician who has participated in my diagnosis or treatment at the hospital or to any third party carrier for reimbursement and hereby release DHS from any liability associated with those risks.

I understand that DHS is the owner of any radiographic films and/or tissue/specimens obtained during the course of my care and treatment. The original radiographic films and/or all of the tissue/specimens will not be released. Copies of radiographic films and/or samples of the tissue/specimens will be provided, if duplication is possible, to me or my authorized agent upon written request for a reasonable fee.

| UNIVERSAL CONSENT (Side 1) | PATIENT LABEL |
|---|---|
| DIMENSIONS HEALTHCARE SYSTEM | RIGGINS, JASMINE |
| UNIVCONS (6/10) | 305955064    11021375<br>3/18/2013   CHAUDRY, ABDUL |

### Release of Information (Cont'd)

I understand that the Federal Safe Medical Devices act requires manufacturers of certain medical devices to track the distribution and use of said devices. I understand that DHS must facilitate the tracking of these devices by providing the information to the manufacturer with respect to the patient receiving such a device, which includes releasing my social security number to the manufacturer of the medical device I may receive, in accordance with the federal law and regulations. I understand that my social security number may be used by the manufacturer to help locate me if there is a need to contact me with regard to this medical device. I release DHS from any liability that might result from the release of this information.

### Authorization For The Release Of Medical Information To The Maryland Insurance Administration:

Under Maryland law, I have the right to contest a decision by an HMO or health insurer that a proposed or delivered health care service was not medically necessary. The law allows the Health Education and Advocacy Unit (HEAU) of the office of the Attorney General to assist me in filing an internal grievance with the HMO or health insurer and allows me to externally appeal the final decision to the Maryland Insurance Administration (MIA). I may appeal the initial decision directly to the MIA if I can demonstrate a compelling reason not to file an internal grievance with the HMO or health insurer. A health care provider may also file an internal grievance or external appeal on my behalf. By signing this form, I either wish to file an internal grievance or appeal, or I authorize a health care provider to file such a grievance or appeal.

I understand that, as part of the HEAU assisting me with my internal grievance, or MIA handling my external appeal, the HEAU or MIA will contact my HMO or health insurer for an explanation as to its actions in connection with my internal grievance or external appeal, or an internal grievance or external appeal filed on my behalf.

I further understand that MIA may receive advice from medical experts or an Independent Review Organization (IRO) while determining whether to uphold or overturn the HMO or health insurer's decision that a health care service was not medically necessary.

Throughout the grievance or appeal process, the confidentiality of my medical records will be maintained in accordance with Maryland and federal law. I understand that if I have questions about the contents of my medical records to be released, I should contact my health care provider.

I understand that my records may by used to develop general statistical information on grievances and appeals, and any statistical reports will not identify me or contain any identifying information. I do not authorize the release of any information that would identify me to anyone not mentioned above.

In the event I, or a provider on my behalf, file an internal grievance or an external appeal, I authorize the release of my medical records as follows:

1. I authorize the Attorney General and MIA to obtain medical records and insurance information for the purpose of investigating my grievance or appeal.
2. I authorize the Attorney General to release my medical records to MIA so that my appeal or grievance may be investigated, and authorize MIA to release my medical records to the Attorney General so that my appeal or grievance may be investigated.
3. I authorize MIA to release my medical records to the relevant HMO or health insurer, and/or the HMO's or health insurer's legal counsel for the purpose of investigating my grievance or appeal or handling any hearing which may result from such investigation.
4. I authorize MIA to transfer my medical records to the Department of Health and Mental Hygiene if my grievance or appeal involves potential issues of quality of care so that the Department may conduct an investigation into these particular issues.
5. I authorize MIA to release my medical records to medical experts who may assist MIA with my grievance or appeal.

I acknowledge the following:

- ☒ This form has been explained to me and I understand its contents
- ☒ Receipt of a copy of DHS Notice of Privacy Practices
- ☒ My communication needs identified by completing the *Communication Assessment Form*
- ☐ Receipt of "An Important Message from Medicare" to Medicare beneficiaries
- ☒ Receipt of DHS brochure "What You Should Know As A Patient"

➢ **Dimensions Healthcare Public Health Initiative:** If you smoke, please stop smoking.

**PLEASE NOTE:** All patients 18 and over must sign this consent form themselves, unless they have a legal guardian, personal representative or are incapacitated. If so, the signer must submit written proof of guardianship or representation with this consent form.

| Signature of Patient | 3/18/2013 Date | Signed by ANDERSON, CYNTHIA on 18-Mar-2013 18:08:15 -0400 Signature of Witness | 3/18/2013 Date |
|---|---|---|---|

*Complete the following section if consent is not obtained from the patient.*

Patient is unable to make an informed decision because patient is (Check appropriate box):
- ☐ Minor _years of age without decision-making capacity
- ☐ Lacks decision-making capacity
- ☐ Other:

| Patient Representative Signature | 3/18/2013 Date | Relationship to Patient |
|---|---|---|
| Witness signature | 3/18/2013 Date | |

| UNIVERSAL CONSENT (Side 2) DIMENSIONS HEALTHCARE SYSTEM | PATIENT LABEL RIGGINS, JASMINE |
|---|---|
| UNIVCONS (6/10) | 305955064   11021375 3/18/2013   CHAUDRY, ABDUL |

NOTE: BOTH sides of this form MUST be completed to be VALID.

Patient: Riggins Jasmine        Date: 3/18/13        Time: 2100

1. I hereby authorize the performance of the following operation(s)/procedure(s): Repeat low transverse Cesarean Section & probable blood transfusion
under the direction of Dr.(s): _____
2. I have been informed that qualified individuals such as physicians' assistants, surgical assistants and licensed physicians may perform significant surgical tasks to include but not limited to opening and closing, harvesting grafts, dissecting tissue, removing tissue, implanting devices, altering tissues under the direction and supervision of the primary physician listed above.
3. I have been informed that a vendor representative may be present during the procedure to observe my procedure and/or assist with product selection and placement.
4. I have been advised of the nature of my condition, the nature and purpose of the proposed operative procedure, and the alternative to this procedure, the risks benefits, and side effects attendant to both the proposed procedure and the alternatives, the probability of success of both the proposed procedure and the alternatives, and the prognosis of the proposed procedure if the alternatives are not performed.
5. I am also aware that the practice of medicine and surgery is not an exact science and that there are risks and complications associated with the operative procedure. The risks associated with the performance of the proposed and any surgical procedure include but are not limited to severe blood loss, infection and in rare instances cardiac arrest.
6. I have also been informed of potential problems that might occur during recuperation.
7. I have been informed that circumstances may arise during the course of treatment that would necessitate the performance of operations and procedures which are different from or in addition to those now contemplated.
8. This procedure may necessitate the use of blood/blood products which when anticipated will require separate specific informed consent and related documentation. However, in the event of an emergency when specific consent is not possible, I agree to the administration of such products as ordered by my physician.
9. I impose no specific limitations or prohibitions regarding treatment other than those that follow (if none, so state): _____
10. I authorize the examination by an authorized individual of any tissue, organ(s) or body part(s) removed during the procedure and the disposal of such tissue, organ(s) or body part(s) in accordance with hospital policies.
11. I consent to the admittance of appropriate observers and to the taking and publication of any photographs in the course of this procedure for the purpose of advancing medical education. I understand that my identity will remain confidential.
12. All of my questions have been answered to my satisfaction. I believe that I have adequate knowledge upon which to base an informed consent to the proposed operative treatment(s).

I CERTIFY THAT I HAVE READ AND FULLY UNDERSTAND THE ABOVE CONSENT, THAT THE EXPLANATIONS THEREIN REFERRED TO WERE MADE, AND THAT ALL BLANKS OR STATEMENT REQUIRING INSERTION OR COMPLETION WERE FILLED IN AND INAPPLICABLE PARAGRAPHS, IF ANY, WERE STRICKEN BEFORE I SIGNED.

_____        _____
       Witness                            Signed:          Patient

**Complete the following section if consent is not obtained from the patient.**

Patient is unable to make an informed decision because patient is (Check appropriate box):
☐ Minor _____ years of age without decision-making capacity        ☐ Lacks decision-making capacity
☐ Other: _____

_____        _____
Patient Representative Signature          Relationship to Patient

_____        _____
Witness Signature (1)                  Witness signature (2)

Consent obtained (Check one):  ☐ In person        ☐ By Telephone [Requires two (2) witness signatures]
Two physician signatures are required in an emergency for consent:

_____ M.D.        _____ M.D.

PHYSICIAN DECLARATION: Prior to the performance of the procedure described above, I have explained to the patient/surrogate decision-maker the nature, purpose, benefits, risks, alternative treatments, possible consequences and possible complications. I confirm the above surgery/procedure is correct as to procedure, side and site.

Physician Signature _____    Date 3/18/13    Time: 2100

**CONSENT FOR OPERATIONS AND OTHER PROCEDURES**
DIMENSIONS HEALTHCARE SYSTEM

2-567 (7/11)

PATIENT LABEL
11021375        20Y F
RIGGINS, JASMINE        L200H1
305955064
03/18/13  AKODA, CHARLES, MD  OBS

Plaintiffs0000001165

**NOTE: BOTH sides of this form MUST be completed to be VALID**

Patient: Riggins, Jasmine     Date: 18 Mar 13     Time: 2107

1. I hereby authorize the Anesthesia Care Team or _____ to administer the following type(s) of anesthetics: **General/Regional/Local + IV Sedation/Conscious Sedation** and procedures performed in the provision of anesthesia including placing an intravenous (IV) catheter and maintaining an airway.

2. The risks associated with anesthesia include but are not limited to worsening of a pre-existing medical problem, airway difficulties and drug reactions. Drug reactions can include a rash, nausea, vomiting, muscle aches, headache, wheezing and very rarely, shock. Maintaining an airway may include placement of an oral or nasal airway, laryngeal mask airway or an endotracheal tube. Reactions to artificial airways include laryngospasm which requires immediate corrective treatment. Manipulation of the airway may result in damage to caps, bridges or damaged teeth and very rarely to sound teeth. Some individuals experience a sore lip, throat or hoarseness. Regional anesthesia blocks may cause headache, numbness or tingling, bleeding or swelling and rarely, weakness or paralysis. Occasionally nerve injuries from positioning may occur. IV catheters can cause inflammation, swelling or bleeding.

3. I am also aware that the practice of medicine and anesthesia is not an exact science and that there are risks and complications associated with the anesthesia and anesthetic technique. I have been informed that the aspiration of stomach contents into the lungs, drug reactions including malignant hyperthermia and anaphylactic shock, heart failure, airway closure, paralysis and rarely death may be associated with any anesthetic or anesthetic technique.

4. I have been informed that circumstances may arise during the course of treatment that would necessitate the performance of anesthetic techniques and administration of anesthesia which are different from or in addition to those now contemplated.

5. I impose no specific limitations or prohibitions regarding anesthesia other than those that follow (if none, so state): _____

6. All of my questions have been answered to my satisfaction. I believe that I have adequate knowledge upon which to base an informed consent to the proposed administration of anesthetic(s) and anesthetic techniques.

**I CERTIFY THAT I HAVE READ AND FULLY UNDERSTAND THE ABOVE CONSENT, THAT THE EXPLANATIONS THEREIN REFERRED TO WERE MADE, AND THAT ALL BLANKS OR STATEMENT REQUIRING INSERTION OR COMPLETION WERE FILLED IN AND INAPPLICABLE PARAGRAPHS, IF ANY, WERE STRICKEN BEFORE I SIGNED.**

_____ Witness     Signed: _____ Patient

*Complete the following section if consent is not obtained from the patient.*

Patient is unable to make an informed decision because patient is (Check appropriate box):
☐ Minor _____ years of age without decision-making capacity     ☐ Lacks decision-making capacity
☐ Other: _____

_____ Patient Representative Signature     _____ Relationship to Patient

_____ Witness Signature (1)     _____ Witness signature (2)

Consent obtained (Check one): ☐ In person     ☐ By Telephone **[Requires two (2) witness signatures]**
Two physician signatures are required in an emergency for consent:

_____ M.D.     _____ M.D.

**RESUSCITATION STATUS DURING ANY PROCEDURE REQUIRING INFORMED CONSENT:** This section is to be completed for patients undergoing any procedure requiring informed consent, who also have orders withholding resuscitation.

☐ Patient/surrogate decision-maker requests that DNR order be <u>suspended</u> during any procedure.
☐ Patient/surrogate decision-maker requests that DNR order be <u>honored</u> during any procedure.
Describe the key features of the discussion(s) pertaining to the DNR issues: _____

**PHYSICIAN DECLARATION:** Prior to the time of the planned anesthesia above, I have explained to the patient/surrogate decision-maker the nature, purpose, benefits, risks, and possible complications.

Physician Signature _____ Date 18 Mar 13     Time: 2103

**CONSENT FOR ADMINISTRATION OF ANESTHESIA**
**DIMENSIONS HEALTHCARE SYSTEM**

2-567 (7/11)

```
11021375                             20Y F
RIGGINS, JASMINE                     L200H1
           305955064
03/18/13   AKODA, CHARLES, MD   OBS
```

NOTE: **BOTH** sides of this form **MUST** be completed to be **VALID**.

Patient: Riggins, Jasmine  Date: 3/18/13  Time: 1700

1. I hereby authorize the performance of the following operation(s)/procedure(s): Repeat Cesarean Section
   under the direction of Dr.(s): Alooda Chaudry
2. I have been informed that qualified individuals such as physicians' assistants, surgical assistants and licensed physicians may perform significant surgical tasks to include but not limited to opening and closing, harvesting grafts, dissecting tissue, removing tissue, implanting devices, altering tissues under the direction and supervision of the primary physician listed above.
3. I have been informed that a vendor representative may be present during the procedure to observe my procedure and/or assist with product selection and placement.
4. I have been advised of the nature of my condition, the nature and purpose of the proposed operative procedure, and the alternative to this procedure, the risks benefits, and side effects attendant to both the proposed procedure and the alternatives, the probability of success of both the proposed procedure and the alternatives, and the prognosis of the proposed procedure if the alternatives are not performed.
5. I am also aware that the practice of medicine and surgery is not an exact science and that there are risks and complications associated with the operative procedure. The risks associated with the performance of the proposed and any surgical procedure include but are not limited to severe blood loss, infection and in rare instances cardiac arrest.
6. I have also been informed of potential problems that might occur during recuperation.
7. I have been informed that circumstances may arise during the course of treatment that would necessitate the performance of operations and procedures which are different from or in addition to those now contemplated.
8. This procedure may necessitate the use of blood/blood products which when anticipated will require separate specific informed consent and related documentation. However, in the event of an emergency when specific consent is not possible, I agree to the administration of such products as ordered by my physician.
9. I impose no specific limitations or prohibitions regarding treatment other than those that follow (if none, so state): _____
10. I authorize the examination by an authorized individual of any tissue, organ(s) or body part(s) removed during the procedure and the disposal of such tissue, organ(s) or body part(s) in accordance with hospital policies.
11. I consent to the admittance of appropriate observers and to the taking and publication of any photographs in the course of this procedure for the purpose of advancing medical education. I understand that my identity will remain confidential.
12. All of my questions have been answered to my satisfaction. I believe that I have adequate knowledge upon which to base an informed consent to the proposed operative treatment(s).

**I CERTIFY THAT I HAVE READ AND FULLY UNDERSTAND THE ABOVE CONSENT, THAT THE EXPLANATIONS THEREIN REFERRED TO WERE MADE, AND THAT ALL BLANKS OR STATEMENT REQUIRING INSERTION OR COMPLETION WERE FILLED IN AND INAPPLICABLE PARAGRAPHS, IF ANY, WERE STRICKEN BEFORE I SIGNED.**

Witness: _____  Signed: [signature]  Patient

---

*Complete the following section if consent is not obtained from the patient.*

Patient is unable to make an informed decision because patient is (Check appropriate box):
☐ Minor ____ years of age without decision-making capacity    ☐ Lacks decision-making capacity
☐ Other: _____

Patient Representative Signature: _____    Relationship to Patient: _____

Witness Signature (1): _____    Witness signature (2): _____

Consent obtained (Check one): ☐ In person    ☐ By Telephone [Requires two (2) witness signatures]
Two physician signatures are required in an emergency for consent:
_____ M.D.    _____ M.D.

---

**PHYSICIAN DECLARATION:** Prior to the performance of the procedure described above, I have explained to the patient/surrogate decision-maker the nature, purpose, benefits, risks, alternative treatments, possible consequences and possible complications. I confirm the above surgery/procedure is correct as to procedure, side and site.

Physician Signature: [signature]  Date: 3/18/13  Time: 1700

**CONSENT FOR OPERATIONS AND OTHER PROCEDURES**
**DIMENSIONS HEALTHCARE SYSTEM**

PATIENT LABEL
Riggins, Jasmine

2-567 (7/11)

Plaintiffs0000001241