### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MONIQUE RUSSELL, JASMINE RIGGINS,     *
ELSA M. POWELL AND DESIRE EVANS,
                                      *     Case No. 2:18-cv-05629-JW
        Plaintiffs
                                      *     Hon. Joshua D. Wolson
        v.
                                      *
EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES,            *

        Defendant                     *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS
### AND PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS

Plaintiffs, by their undersigned counsel, submit the following Response to Defendant's

Statement of Material Facts (ECF No. 85).  Plaintiffs also submit a Statement of Additional

Material Facts.  Any admissions made herein are made solely for the purpose of Defendant's

Motion for Summary Judgment and Plaintiffs' Response thereto. In all circumstances where

there is an admission or reference to Akoda herein, Plaintiffs are referring to the fictitious

"Akoda" identity. Plaintiffs make no admission that Akoda or Dr. Akoda was a real person.

### RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS

1-3.          Admitted.

4.            Denied.  The phrase "once an applicant's record was verified and

incomplete" is inaccurate.  The only thing ECFMG verifies is an

applicant's diploma.  Ex. 3, Kelly depo. at 18, 34, 35; Ex. 2, Corrado depo. at 88.

5.            Admitted.  However, the transcript reference is incorrect.

6-19.         Admitted.

20.         Objection.  There is no evidence that this "process" was published in the period 1992 through 2006.

21-25.      Admitted.

26.         Denied.  ECFMG Exhibit 10 is Akoda's alleged diploma, not an application.

27.         Admitted.

28.         Plaintiffs cannot admit or deny this statement because they have no personal knowledge of the "verification," nor did Ibaden purport to verify any credentials other than the diploma.

29-40.      Admitted.

41.         Plaintiffs cannot admit or deny paragraph 41.  ECFMG Exhibit 17 does not state this.

42-46.      Admitted.

47.         Plaintiffs cannot admit or deny this statement because they have no personal knowledge of the "verification," nor did Ibaden purport to verify any credentials other than the diploma.

48-54.      Admitted.

55.         Objection.  This letter has not been authenticated and is hearsay and is inadmissible.

56-58.      Admitted.

59.         Plaintiffs admit that JSMC notified ECFMG of its investigation but there is no evidence in the record that ECFMG ever requested of JSMC the identity of the source of the allegation against Akoda.

60-64.          Admitted.

65.          Plaintiffs admit that Igberase provided ECFMG with a passport and an international driving permit but ECFMG made no effort to verify the authenticity of these documents.  Ex. 2, Corrado depo. at 161.

66.          Admitted.  Further, ECFMG made no effort to refer "Akoda" to the ECFMG MECC for his misuse of a social security number or for providing false information on his application.  Ex. 3, Kelly depo. at 201.

67.          Admitted.

68.          Objection.  There is no evidence in the record authenticating this letter. Furthermore, it is hearsay and is inadmissible.

69.          Admitted.

70.          W. Kelly believed Akoda and Igberase were one and the same.  ECFMG Ex. 33.

71-77.          Admitted.

78.          The application is a document which speaks for itself.

81.          Admitted.

82.          Objection.  There is no evidence authenticating this letter.  Furthermore, it is hearsay and is inadmissible.

83-87.          Admitted.

88.          Objection.  The quoted language is from a Complaint which was dismissed without prejudice.  It is irrelevant and inadmissible.

89.          Objection.  The quoted language is from a prior case which was dismissed without prejudice.  It is irrelevant and inadmissible.

90.          Objection.  This information is irrelevant and inadmissible.

91-94.       Admitted.

95-99.       Objection.  The exhibits referenced are not authenticated and are hearsay

and inadmissible.

100-104.     Admitted.

105.         Denied.  The consent was invalid due to Akoda's fraudulent conduct.

106-115.     Admitted.

116.         Redacted.

117-135.     Admitted.

136.         Denied.  The consent was invalid due to Akoda's fraudulent conduct.

137-151.     Admitted.

152.         Objection.  This statement is irrelevant and inadmissible.

153-165.     Admitted.

166.         Denied.  The consent was invalid due to Akoda's fraudulent conduct.

167-176.     Admitted.

177.         Objection. This statement is irrelevant and inadmissible.

178.         Objection.  This statement is irrelevant and inadmissible.

179-181.     Admitted.

182.         Objection.  This statement is irrelevant and inadmissible.

183-190.     Admitted.

191.         Denied.  The consent was invalid due to Akoda's fraudulent conduct.

192-193.     Admitted.

194.         Denied.  The consent was invalid due to Akoda's fraudulent conduct.

195-203.          Admitted.

204-205.          Objection.  This statement is irrelevant and inadmissible.

206-217.          Admitted.

## PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS

1.       William C. Kelly worked for ECFMG for almost 38 years.   He retired in May 2015.  Ex. 3, Kelly depo. at 7, 9.  He became manager of the credentials department and the vice-president for operations that included credentials.  Ex. 3, Kelly depo at 187-188.

2.       The ECFMG Certificate is required to obtain a medical license.  Ex. 3, Kelly depo. at 19.

3.       The first step needed to obtain a certificate from ECFMG is an application.  Ex. 3, Kelly depo. at 13.

4.       An identification number is assigned to the application.  If the applicant becomes certified, the certificate number would be the same as the identification number. Id. at 15.

5.       An IMG needs an ECFMG certificate to obtain a medical license.  Ex. 3, Kelly depo. at 19.

6.       ECFMG works on behalf of domestic regulatory authorities to protect the public through programs and services including primary source verification of physician credentials. Ex. 3, Kelly depo. at 22.

7.       ECFMG received an Application from Igberase on April 6,1992.  Ex 4.

8.       He included a date of birth of April 17, 1962, and a social security number ending in 5054.  Ex. 3, Kelly depo at 29.  Ex. 4.

9.       Igberase submitted a diploma from the University of Ibadan June 19, 1987. ECFMG Ex. 10; Ex. 3, Kelly depo. at 31.

10.     In order to have the diploma verified, ECFMG would send it to the medical school to verify it.  Ex. 3, Kelly depo. at 35.

11.     ECFMG received an Application from Igberase Oluwafemi Charles on March 30, 1994.  Ex. 5.  It did not include a social security number but included a birthdate of April 17, 1961.  Id.; Ex. 3, Kelly depo. at 35-36.

12.     A new I.D. number was assigned because they concluded he ("Charles") had never applied before.  Ex. 3, Kelly depo at 57-58.

13.     On June 22, 1995, Kelly wrote to Igberase to advise him that ECFMG was conducting an investigation about his multiple applications.   ECFMG Ex. 13.

14.     ECFMG received a 5-page handwritten response from Charles in which he admitted that he and Igberase were one and the same person.  He admitted to lying.  ECFMG Ex. 14; Ex. 3, Kelly depo. at 42-43.

15.     The credentials committee met on 11/27/1995 and decided to invalidate the "Charles" certificate and to revoke the Igberase certificate.  Ex. 6; Ex. 3, Kelly depo. at 45-46.

16..     On December 7, 1995, Kelly wrote a letter to the USMLE advising of events re "Charles" and Igberase.  Ex. 21.

17.     Where there was a discrepancy between the name on the diploma and the name on the Application, the applicant would have been required to submit some sort of documentation to connect the names.  But this policy was not in effect at the time.  Ex. 3, Kelly depo. at 51.

18.     "Charles" took an appeal from the decision to invalidate his certificate.  The review committee held a hearing and affirmed but limited Igberase's length of revocation to 5 years (i.e., 7/16/2001).  Ex. 7; Ex. 3, Kelly depo at 53-55.

19.     ECFMG received an Application from Femi Charles Igberaese on October 23, 2000.  Ex. 22.  It included a birthdate of April 17, 1962, the same date on the first Igberase application.  Ex. 3, Kelly depo. at 56-57.

20.     In less than a month, ECFMG concluded he was the same Igberase who had been told his certification was revoked.  Ex. 3, Kelly depo at 57-58.

21.     On November 16, 2000 Kelly wrote to Igberase for an explanation and advising him the matter would go the credentials committee.  Ex. 23.

22.     On May 3, 2001 Kelly wrote to "Charles" notifying him that the credentials committee extended the revocation of his certificate for an unspecified period.  Ex. 8.

23.     ECFMG received a letter from Igberase on July 2, 2001.  Ex. 9.  Igberase explained that his childhood friend had made a mistake on the application.  Igberase referred to his cousin "Akoda."

24.     On May 22, 2002 Kelly wrote to Igberase advising him his certificate was permanently revoked.  It's one year later because they waited for review by USMLE.  Ex. 10; Ex. 3, Kelly depo. at 64.

25.     On March 19, 2002 ECFMG received an Application by "Charles" Ugberaese Oluwafemi" with a birth date of March 1, 1963 and no social security information   Ex. 24.

26.     Charles Ugberaese Oluwafemi submitted a diploma from the University of Ibadan dated June 18, 1996.  Ex. 11.  Kelly doesn't know if it was ever verified by the University of Ibadan.  Ex. 3, Kelly depo. at 67-68.

27.     On November 12, 2002 Kelly wrote to Igberase Oluwafemi Charles advising him that the Credentials Committee found him to have engaged in irregular behavior.  Ex. 25.

28.     He believes the names are just re-arranged.  Ex. 3, Kelly depo. at 73.

29.     He is not aware that the diploma submitted by Charles and verified by the University is the same diploma submitted by Igberase.  Ex. 3, Kelly depo. at 73.

30.     ECFMG thought "Charles" and Igberase were two different persons.  Ex. 3, Kelly depo. at 75, 77.

31.      ECFMG realized within a short period of time that the person using the name Oluwafem was really the person certified as Igberase.  Ex. 3, Kelly depo. at 79.

32.     ECFMG received an Application from John Nosa Akoda on January 3, 2003. ECFMG Ex. 19.

33.     There was no social security number included.  Ex. 3, Kelly depo. at 88.  A photograph is required with the application.  Id. at 89.

34.     ECFMG received a second Application from Akoda on August 30, 1996.  Ex. 26. He said he had previously applied.  Kelly doesn't know why there is a second application.  Ex. 3, Kelly depo. at 93.

35.     Akoda submitted a diploma from the University of Benin for Johnbull Enosakhare Akoda dated February 6, 1988.  Ex. 27.  The name is different than on the application.

36.     He does not know if the diploma was verified by the University of Benin.  Ex. 3, Kelly depo. at 95.

37.  In a letter dated August 22, 2000,  Kelly says that Akoda provided a social security number ending in 9065.  Ex.28.

38.     ECFMG received a completed Permanent Revalidation Form on September 22, 1998.  ECFMG Ex. 27.  It shows that he had started a residency program at JSMC.  Ex. 3, Kelly depo. at 107.

39.     ECFMG serves as the dean station for ERAS for IMGs.  Ex. 3, Kelly depo. at 108.

40.     On August 11, 2000, ECFMG received a letter from James McCorkel (Jersey Shore Medical Center) saying Akoda, a resident, may have served at two other residency programs and has used Igberase's social security number.  ECFMG Ex. 28; Ex. 3, Kelly depo. at 111.

41.     The social security number Igberase gave JSMC is the same one he gave to ECFMG.  Ex. 3, Kelly depo. at 112.

42.     Stephen S. Seeling replied to McCorkel's letter on August 22, 2000.  Ex. 28.  Kelly ghost wrote it for Seeling.  Ex. 3, Kelly depo. at 112.

43.     There is no diploma with the legal name "Charles."  Ex. 3, Kelly depo. at 113-114.

44.     Kelly wrote to Akoda on August 22, 2000 telling him they have recent information that he may have previously applied and that the matter will be referred to the Credentials Committee. He asked Akoda to provide an explanation.  Ex. 29.

45.     Kelly received a call from McCorkel on August 20, 2000, telling him Akoda took a leave of absence and he was waiting to hear from Harlem Hospital.  Ex. 30.

46.     Igberase under the Akoda identity wrote a letter in response to the Kelly's letter dated August 29, 2000.  ECFMG Ex. 32.   He denied taking exams under other names.  He stated that "Charles" is his cousin.  He admitted using Charles' social security number.

47.     On September 13, 2000, McCorkel called Kelly saying Akoda has been suspended.  McCorkel's discussions with Harlem Hospital were "not definitive."  Ex. 12.

48.     Kelly made handwritten notes of his conversation with McCorkel.  Ex. 31.

49.     On September 27, 2000 Akoda came to Kelly's office.  ECFMG Ex. 30.   He again admitted using his cousin's social security number.  He gave Kelly his passport and his international driving permit.  Ex. 13.

50.     Kelly doesn't remember if he made any attempt to verify the authenticity of the passport or license.  Ex. 3, Kelly depo. at 125, 129.

51.     The date of birth on Akoda's passport (Ex. 13) and on the Request for Permanent Revalidation Form (ECFMG Ex. 27) are different.  Ex 3, Kelly depo. at 126-127.

52.     He does not remember searching ECFMG's data base to try to determine whether Akoda and Igberase were one and the same person.  Ex. 3, Kelly depo. at 129.

53.     He doesn't know if he compared photographs but he had the ability to do so. Ex. 3, Kelly depo. at 129-130.

54.     He was present at Igberase's appeal hearing in 1996.  Ex. 3, Kelly depo. at 131, 133.

55.     Kelly made notes of a call with McCorkel on October 5, 2000.  Ex. 32.  It comments on two different green cards presented by Akoda.  It states that Harlem Hospital thinks he may be the same and that Akoda used two social security numbers.

56.     Kelly emailed Igberase December 21, 2000 and Akoda replied December 2, 2000. Ex. 33.  Kelly was surprised.

57.     On the same day he sent the email to Igberase, Kelly spoke with McCorkel. ECFMG Ex. 31.  McCorkel told Kelly that Akoda was dismissed from JSMC residency for using a false social security number and green cards inconsistent with a later one.

58.     He does not recall ever asking McCorkle who the informant was.  Ex. 3, Kelly depo. at 147.

59.     McCorkel says he believed Igberase and Akoda were one and the same person.  "I also believe it" Kelly said.  "We need to brainstorm on this one."  ECFMG Ex. 33.

60.     It seemed strange that Akoda would reply to the email to Igberase.  Ex. 3, Kelly depo. at 149-150.

61.     He doesn't recall if they brainstormed this matter further.  Ex. 3, Kelly depo. at 150.

62.     He knew there was some connection, a relationship between Igberase and Akoda. Ex. 3, Kelly depo. 153.

63.     He doesn't recall if he ever learned that Igberase was licensed as a nurse in NY. Ex. 3, Kelly depo. at 158.

64.     ECFMG used the ERAS to submit for Akoda the three letters of reference...  He wrote to the three doctors who provided letters of recommendation.    Ex. 14.  None of the three doctors responded to Kelly's letters.  ECFMG Ex. 35; Ex. 3, Kelly depo. at 167-168.

65.     As part of the ERAS program, ECFMG acts as the dean's office.  Ex. 3, Kelly depo. at 162.

66.     One of the goals of ECFMG is to ensure IMGs are competent physicians.   Ex. 3, Kelly depo. at 184-185.

67.     A goal of ECFMG is to protect the American public. Ex. 3, Kelly depo. at 185.

68.     ECFMG acts as the Dean's office for IMGs by facilitating the components of an application for a residency program and submits them on behalf of the graduate through the ERAS.  Ex. 3, Kelly depo. at 194.

69.     It was not a routine procedure to verify letters of recommendation.  Kelly did it because Akoda was "otherwise being investigated."  He had some concerns about Akoda's credibility.  Ex. 3, Kelly depo. at 195.

70.     None of the three doctors responded to his letters.  Ex. 3, Kelly depo. at 196.

71.     Kelly did not attempt to find out if any of the three doctors were real.  Ex. 3, Kelly depo. at 202.

72.     Kelly was concerned that Akoda and Igberase were the same person.  Ex. 3, Kelly depo. at 203.

73.     Kelly didn't think there was enough evidence to go to the credentials committee.  Ex. 3, Kelly depo. at 211.

74.     Kara Corrado is the ECFMG Vice President for Operations.  Ex. 2, Corrado depo. at 6.

75.     ECFMG has a certification program that is required for entrance into a ACGME accredited residency program.  Id. at 41. It is ECFMG's expectation that state medical boards, residency programs, and hospitals rely on ECFMG as they make decisions about physician applications. Id. at 247-248.

76.     Part of ECFMG's mission is to promote public health and to protect the public.  Id. at 47.  ECFMG serves the public in a number of ways, for example, making sure we have qualified physicians.  Id. at 40.

77.     There is a written "Draft" procedures written in 2015 which the staff had been using since at least 2008.  Id. at 60.

78.     As a general matter if a charge letter is sent to an applicant the matter should be referred to the credentials committee for review.  Id. at 80.

12

79.     The credentialing requirements for certification at that time included source verification of the diploma only.  Id. at 88.

80.     It is a requirement to submit photo identification currently but it was not in the past.  Id. at 89.

81.     It was not part of ECFMG's process to verify that the applicant's name or date of birth was the same on the request for permanent revalidation and the name that was on file for the applicant.  Id. at 130.

82.     ECFMG didn't do anything to determine whether the passport and international driving license Igberase provided under the Akoda identity were genuine or authentic.  Id. at 161.

83.     The passport and applications for Akoda listed different places of birth.  Id. at 162.

84.     ECFMG could have consulted with the Nigerian consulate to determine if the passport was authentic but it's not part of their process.  Id. at 200.

85.     Corrado doesn't believe ECFMG ever reached out to Akoda's alleged cousin.  Id. at 204.

86.     Corrado agrees with Kelly that part of ECFMG's role is to protect the American public.  Id. at 222.  She agrees that patients have the right to not be treated by physicians who have obtained ECFMG certification based on false pretenses.  Id. at 53.

87.     Akoda needed a valid ECFMG certificate to get into a training program.  Id. at 230.

88.     If ECFMG believed the letters of recommendation were fraudulent, they would have reported it to Howard University.  Id. at 233-234.

13

89.     As Vice President of Operations, Stephen S. Seeling oversaw the certificate process.  Ex. 19, Seeling depo. at 13.

90.     William Kelly reported to S. Seeling.  Id.

91.     As a general rule, an IMG must have an ECFMG certification to enter into a residency program.  Id. at 23.

92.     One of the potential consequences, a potential sanction, for irregular behavior is revocation or invalidation of the individual's certification.  Id. at 55.

93.     Seeling agrees that it probably would warrant referral to the credentials committee if he believed that Akoda and Igberase were one and the same person.  Id. at 79.

94.     The decision that the Akoda matter should not go to the credentials committee was made without anyone speaking to Igberase about whether he and Akoda were the same person.  Id.

95.     Monique Russell is a 46 year old mother of one child, Luka, born May 25, 2016. Ex. 15, Russell depo. at 12.

96.     Igberase delivered Ms. Russell's baby by emergency C-section.  Ex. 15, Russell depo. at 41.

97.     Ms. Russell learned of Igberase's guilty plea from a Department of Justice press release.  Ex. 15, Russell depo. at 31-32.

98.     Ms. Russell red the federal sentencing transcript.  Ex. 15, Russell depo. at 82.

99.     She suffers from emotional distress as a result of learning about Akoda.  Ex. 15, Russell depo. at 75-76.  Ms. Russell feels Igberase violated her.  Ex. 15, Russell depo. at 76.

100.    She has difficulty going to the gynecologist, distrusts the medical community and distrusts institutions that credential doctors.  Ex. 15, Russell depo. at 75.

101.    She also suffers from intimacy issues and feels like a victim of sexual assault because Igberase examined her vagina under false pretenses.  Ex. 15, Russell depo. at 90, 130.

102.  Ms. Riggins is a 27 year old mother of three children, ages 10, 6 and 2.  Ex. 16, Riggins depo. at 20.

103.  She lives in northeast Washington, DC.  Riggins depo. at. 21. She has a high school GED.  Ex. 16, Riggins depo. at 21.

104.  Ms. Riggins was a patient of Akoda between August 2012 and March 2013.  Ex. 16, Riggins depo. at 121. Akoda delivered her second child by C-section.  Ex. 16, Riggins depo. at. 30. Messiah, her son, was born on March 18, 2013.  Ex. 16, Riggins depo. at 38.

105.  After the C-section, Ms. Riggins suffered severe abdominal pain and could not undergo a tubal ligation because of scarring.  Ex. 16, Riggins depo. at 34.

106.  As a result of what she learned about who she believed to be Akoda, she has suffered emotional distress.  Ex. 16, Riggins depo. at 56.  After learning the truth about Igberase from a Facebook group, "Embracing Mommies," Ms. Riggins felt angry, sad, embarrassed, and ashamed about receiving treatment from Igberase.  Ex. 16, Riggins depo. at 57.  Ms. Riggins was deeply affected by what Igberase did and felt outraged because his dishonesty enabled him to perform C-sections, examine women's genitals, touch and violate them.  Ex. 16, Riggins depo. at 138.  See also Def's SUMF (ECF No. 85), Ex. 58, Dr. Tellefson Report.

107.  Ms. Powell is a 32 year old mother of five children.  Ex. 17, Powell depo. at 7, 11.

108.  Ms. Powell initially encountered Igberase, whom she knew as Charles Akoda, upon presentation to the medical office of Abdul Chaudry, M.D., in 2014.  Ex. 17, Powell depo. at 40, 94. Ms. Powell had been referred to Dr. Chaudry for obstetric care but was assigned to Igberase due to Dr. Chaudry's unavailability.  Ex. 17, Powell depo. at. 39-40.  During her pregnancy,

Igberse acted in a flirtatious manner that made her feel uncomfortable, but she nevertheless trusted that he was a competent and appropriately credentialed physician providing appropriate medical care.  Ex. 34, Declaration of Elsa Powell.

109.  Igberase also delivered her child at Prince George's Hospital Center and saw Ms. Powell post-delivery as well.  Ex. 17, Powell depo. at 42, 88. The delivery was complicated by significant bleeding requiring surgery.  Ex. 34, Declaration of Elsa Powell.

110.   Ms. Powell trusted that Igberase was a duly licensed and credentialed physician and suffered emotional harm upon learning that the man she trusted to touch the most intimate parts of her body and deliver her baby, had lied about his identity and background. Ex. 17, Powell depo. at 79; Ex. 34, Declaration of Elsa Powell.  Ms. Powell was shocked and disturbed and felt violated by someone she did not know.  Ex. 17, Powell depo. at 79.  See also Def's SUMF (ECF No. 85) Ex. 58, Dr. Tellefson Report.  As a result of learning about Igberase's conduct, Ms. Powell experienced recurrent nausea, stomach discomfort, fear, confusion, sleeplessness, crying, anger, nervous sweating and panic attacks.  Ex. 34, Declaration of Elsa Powell.  Ms. Powell  would not have consented to treatment had she known Igberase's identity and conduct.  Ex. 34, Declaration of Elsa Powell.

111.   Desiree Evans is a 40 year old mother of one child.  Ex. 18, Evans depo. at 8, 13.

112.   Ms. Evans first encountered Igberase, whom she knew as Charles Akoda, at Prince George's Hospital Center for the delivery of her child by C-section in March of 2016.  Ex. 18, Evans depo. at 83; Ex. 35, Declaration of Desire Evans.  During Ms. Evans's labor, Igberase manipulated her clitoris, telling her he needed to do so to stimulate her to push the baby.  Ex. 18, Evans depo. at 132. Ex. 35, Declaration of Desire Evans.  As this was her first experience

16

having a baby, she trusted that his explanation for his conduct was medically valid.  Ex. 35, Declaration of Desire Evans.

113.   Ms. Evans has suffered emotional distress upon learning that physician whom she trusted for medical care misrepresented his identity. Ex. 18, Evans depo. at 165,172; Ex. 35, Declaration of Desire Evans.  Ms. Evans is afraid to seek medical care for her and her child and has lost trust in the medical system.  Ex. 18, Evans depo at 165, 172; Ex. 35, Declaration of Desire Evans.  See also Def.'s SUMF (ECF No. 85) Ex. 58, Dr. Tellefson Report.  As a result of learning about Igberase's conduct, her intimate relationship with her spouse has been damaged. Ex. 35, Declaration of Desire Evans.  As a result of learning about Igberase's conduct, Ms. Evans experienced feelings of nausea, disgust, depression, sadness, sleepless nights reflecting on Igberase's conduct, stress and anxiety, crying, impacts on her intimate relationship with her spouse, and nervousness.  Many of these symptoms continue today.  Ex. 35, Declaration of Desire Evans.  Ms. Evans would not have consented to treatment had she known Igberase's identity and conduct.  Ex. 35, Declaration of Desire Evans.

114.   Plaintiffs have identified David Markenson, M.D., John C. Hyde Ph.D., FACHE, and Jerry Williamson, M.D., F.A.A.P., M.J, CHC., LHRM as experts to testify with respect to standard of care and elements of causation.  These experts have issued reports containing opinions and have given deposition testimony.  *See* Exs. 20, 36 and 37, respectively, Reports of Dr. Markenson, Dr. Hyde and Dr. Williamson.  *See also* Ex. 1, Depo of. Dr. Markenson.

Dated: January 14, 2022                              Respectfully submitted,

JANET, JANET & SUGGS, LLC                    CONRAD O'BRIEN PC

*/s/ Patrick Thronson*                              */s/ Robin S. Weiss*
   Patrick A. Thronson                                 Nicholas M. Centrella (Pa. ID 67666)
   Brenda A. Harkavy                                   Robin S. Weiss (Pa. ID 312071)

4 Reservoir Circle, Suite 200
Baltimore, MD 21208
(410) 653-3200

1500 Market Street, Suite 3900
Philadelphia, PA 19102-2100
(215) 864-9600

LAW OFFICES OF PETER G. ANGELOS,
P.C.

SCHOCHOR, FEDERICO AND STATON

Paul M. Vettori
One Charles Center
100 N. Charles Street, 20th Floor
Baltimore, Maryland 21201
(410) 649-2000

Brent Ceryes
The Paulton
1211 St. Paul Street
Baltimore, Maryland 21202
(410) 234-1000

Z LAW, LLC

THE COCHRAN FIRM

Cory L. Zajdel
2345 York Rd. Suite B-13
Timonium, MD 21093
(443) 213-1977

Karen E. Evans
David E. Haynes
1100 New York Avenue, N.W.
Suite 340, West Tower
Washington, DC 20005
(202) 682-5800

*Attorneys for Plaintiffs, on behalf of*
*themselves and all others similarly situated*