**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MONIQUE RUSSELL, JASMINE RIGGINS,　　　　:
ELSA M. POWELL AND DESIRE EVANS,　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:　　Case No. 2:18-cv-05629-JDW
　　　　　　　Plaintiffs　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:　　Hon. Joshua D. Wolson
　　　　　v.　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
EDUCATIONAL COMMISSION FOR　　　　　　　　:
FOREIGN MEDICAL GRADUATES,　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　Defendant.　　　　　　　　　　　　　:
_____:

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE OPINIONS AND
ANTICIPATED TESTIMONY OF PLAINTIFFS' EXPERTS DR. DAVID MARKENSON,
<u>DR. JOHN CHARLES HYDE, AND DR. JERRY WILLIAMSON</u>**

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................ 1

II.  FACTUAL BACKGROUND ....................................................................................... 1

III.  STANDARD OF REVIEW ......................................................................................... 2

IV.  LEGAL ARGUMENT ................................................................................................. 4

   A.  Defendant's Motion to Exclude is Premature. ..................................................... 4

   B.  Plaintiffs' Experts Are Qualified. ........................................................................ 5

      i.  Qualifications of Plaintiffs' Individual Experts ............................................. 5

         a.  Dr. David Markenson ............................................................................ 5

         b.  Dr. John Charles Hyde .......................................................................... 7

         c.  Dr. Jerry Williamson ............................................................................ 9

      ii.  Plaintiffs' Experts Qualifications, in Combination with their Education, Training and Experience Are Sufficient to Qualify Them as Experts in this Case and Render their Opinions Useful to the Jury ................................................................................................ 11

   C.  Plaintiffs' Experts' Opinions and Methodology are Reliable and Non-Speculative. ....... 12

      i.  Opinions and Methodology of Plaintiffs' Experts ....................................... 12

         a.  Dr. David Markenson .......................................................................... 12

         b.  Dr. John Charles Hyde ........................................................................ 14

         c.  Dr. Jerry Williamson .......................................................................... 15

      ii.  Plaintiffs' Experts' Methodologies are Sufficiently Reliable and Satisfy the Standards for Admissibility under Rule 702 and *Daubert* ............................................................. 16

   D.  Plaintiffs' Experts Do Not Offer Legal Conclusions. ....................................... 19

   E.  Plaintiffs' Experts Rely Upon Data Reasonably Relied Upon by Experts in their Fields, and the Probative Value of their Testimony Outweighs Any Purported Risk of Prejudice to Defendant ............................................................................................. 24

V.  CONCLUSION ......................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Cases**

*Berckeley Inv. Grp. Ltd. v. Colkitt*, 455 F.3d 195 (3d Cir. 2006) ................................................ 20

*Burger v. Mays*, 176 F.R.D. 153 (E.D. Pa. 1997) ........................................................................ 22

*Bushman v. Halm*, 798 F.2d 651 (3d Cir. 1986) .......................................................................... 20

*Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316 (3d Cir. 2003) .............................. 21, 22

*Daddio v. Nemours Found.*, 399 F. App'x 711 (3d Cir. 2010) ...................................................... 16

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ................................. passim

*Elswick v. Nichols*, 144 F.Supp.2d 758 (E.D. Ky. 2001) ............................................................... 9

*Flickinger v. Toys R US-Delaware, Inc.*, 492 F. App'x 217 (3d Cir. 2012) ................................. 20

*Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, 410 F. Supp. 2d 417 (W.D. Pa. 2006) ...... 21, 22

*Gradel v. Inouye*, 421 A.2d 674 (Pa. 1980) ................................................................................. 20

*Hammond v. Int'l Harvester Co.*, 691 F.2d 646 (3d Cir. 1982) .................................................... 11

*Heichel v. Marriott Hotel Servs., Inc.*, No. CV 18-1981, 2019 WL 2202759
  (E.D. Pa. May 20, 2019) ........................................................................................................ 19

*Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777 (3d Cir. 1996) ..................................................... 12

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994) ................................................ passim

*Jones v. LA Fitness Int'l, LLC*, No. CIV.A. 11-0632, 2013 WL 3789807
  (E.D. Pa. July 22, 2013) ......................................................................................................... 22

*Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802 (3d Cir. 1997) ............................... 3, 16, 17, 19

*Knight v. Otis Elevator Co.*, 596 F.2d 84 (3d Cir. 1979) .............................................................. 11

*Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 F. App'x 781 (3d Cir. 2009) ...................... 19

*Mestre v. Garden Homes Mgmt. Corp.*, No. 1:16-cv-03231-JDW-AMD,
  2020 WL 3962267 (D.N.J. July 13, 2020) ......................................................................... 21, 24

*Microchip Tech. Inc. v. Aptiv Srvcs. US LLC*, No. 1:17-cv-01194-JDW,
  2020 WL 5203600 (D. Del. Sep. 1, 2020) ............................................................................. 19

*Miville v. Abington Mem'l Hosp.*, 377 F. Supp. 2d 488 (E.D. Pa. 2005) .................................... 20

*Pineda v. Ford Motor Co.*, 520 F.3d 237 (3d Cir. 2008) ....................................................... passim

*Quagliarello v. Dewees*, 802 F. Supp. 2d 620 (E.D. Pa. 2001) .................................................... 4

*Quinn Const., Inc. v. Skanska USA Bldg., Inc.*, No. CIV.A. 07-406, 2009 WL 1489954
  (E.D. Pa. May 26, 2009) ......................................................................................................... 22

*Redland Soccer Club, Inc. v. Dep't of Army of the United States*, 55 F.3d 827 (3d Cir. 1995) ... 20

*Schneider ex rel. Est of Schneider v. Fried*, 320 F.3d 396 (3d Cir. 2003) ............................. passim

*Svindland et al v Nemours Foundation et al* No. 07-2627, 2008 WL 2531198
  (3d Cir. June 26, 2008) ............................................................................................................ 8

*Svindland v. A.I. DuPont Hosp. for Children of the Nemours Foundation*,
  2006 WL 3209953 (E.D. Pa. 2006) ......................................................................................... 8

*Tschappat v. Groff*, Civ. A. No. 3:CV-01-2279, 2004 WL 5509087 (M.D. Pa. June 2, 2004) .... 22

*Ucciardi v. E.I. Du Pont Nemours & Co.*, No. CV 13-4952 (FLW), 2016 WL 7338533
  (D.N.J. Dec. 19, 2016) ............................................................................................................ 22

*United States v. Downing¸* 753 F.2d 1244 (3d Cir. 1985) .......................................................... 17

*United States v. Roman*, 121 F.3d 136 (3d Cir. 1997) ..................................................................... 4

*Waldorf v. Shuta*, 142 F.3d 601 (3d Cir. 1998) ........................................................................... 11

*Warren v. Prime Care Med. Inc.*, 431 F. Supp. 3d 565 (E.D. Pa. 2019) ................................. 19, 20

**Other Authorities**

Hon. Joshua D. Wolson, Policies and Procedures .......................................................................... 4

**Rules**

Fed. R. Evid. 403 ........................................................................................................... 4, 24, 25

Fed. R. Evid. 701 ..................................................................................................................... 4

Fed. R. Evid. 702 ............................................................................................................. passim

Fed. R. Evid. 703 ........................................................................................................ 2, 3, 24, 25

Fed. R. Evid. 704 ............................................................................................................ 3, 4, 20

I.      **INTRODUCTION**

This action arises from allegations that Defendant, Educational Commission for Foreign Medical Graduates ("ECFMG"), negligently investigated and certified Oluwafemi Charles Igberase ("Igberase"), a/k/a John Nosa Akoda (among other aliases), as eligible to enter a residency program, and negligently failed to revoke that certification, notwithstanding compelling evidence that Igberase had committed extensive fraud as to his identity and credentials. ECFMG knew of Igberase's fraud but failed to appropriately investigate and respond to it. ECFMG failed to inform state medical boards, residency programs and hospitals of Igberase's fraud, even as it attested that Igberase held a valid ECFMG certification.

As a result of ECFMG's negligence, Igberase had the opportunity to perform gynecologic examinations of the Plaintiffs which constituted unconsented touching, purportedly for the purpose of medical treatment, and complex medical surgeries, including the delivery of Plaintiffs' children through vaginal or cesarean delivery under his "Akoda" alias. Absent ECFMG's negligence, Igberase would never have been able to practice medicine in the United States and would have never performed obstetric and gynecologic procedures on the Plaintiffs.

Simultaneously with filing a Motion for Summary Judgment (ECF No. 81), ECFMG filed a Motion to Exclude the Opinions and Anticipated Testimony of Plaintiffs' Experts Dr. David Markenson, Dr. John Charles Hyde, and Dr. Jerry Williamson ("the Motion" or "Motion to Exclude") (ECF No. 83). For the reasons described herein, the Motion should be denied.

II.     **FACTUAL BACKGROUND**

Plaintiffs have submitted the reports of three (3) experts who opine that ECFMG breached the standard of care: Dr. David Markenson, Dr. John Charles Hyde, and Dr. Jerry Williamson. Dr. Markenson's expert report and *curriculum vitae* are attached hereto as Exhibits

1 and 2, respectively. Relevant portions of Dr. Markenson's deposition testimony are attached hereto as Exhibit 3. Dr. Hyde's expert report and *curriculum vitae* are attached hereto as Exhibits 4 and 5, respectively. Relevant portions of Dr. Hyde's deposition testimony are attached hereto as Exhibit 6. Dr. Williamson's expert reports and *curriculum vitae* are attached hereto as Exhibits 7 and 8, respectively. Relevant portions of Dr. Williamson's deposition testimony are attached hereto as Exhibit 9.

These experts are appropriately qualified to testify as to the applicable standard of care, and ECFMG's breach of that standard. Further, the opinions set forth in their reports do not constitute impermissible legal conclusions, and the information and methodologies they relied upon in formulating their opinions are sufficiently reliable. Finally, their opinions and testimony will be helpful to the trier of fact. In summary, as set forth in detail below, these experts have satisfied the standards set forth in Federal Rules of Evidence 702 and 703 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). There is no basis for excluding these experts' opinions and testimony.

## III.   <u>STANDARD OF REVIEW</u>

Courts have wide discretion in determining whether to admit or exclude expert testimony. *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008).

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

**(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
**(b)** the testimony is based on sufficient facts or data;
**(c)** the testimony is the product of reliable principles and methods; and
**(d)** the expert has reliably applied the principles and methods to the facts of the case.

2

Fed. R. Evid. 702. The Advisory Committee Notes to Rule 702 state:

> For this kind of generalized testimony, Rule 702 simply requires that: (1) the expert be qualified; (2) the testimony address a subject matter on which the factfinder can be assisted by an expert; (3) the testimony be reliable; and (4) the testimony "fit" the facts of the case.

Fed. R. Evid. 702, Advisory Committee Notes, 2000 Amendments.

Courts have held that Rule 702 imposes three predicates to admitting expert testimony, as recognized by the Supreme Court in *Daubert*, 509 U.S. 579: qualifications, reliability (including helpfulness) and fit. *Schneider ex rel. Est of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741-43 (3d Cir. 1994)). These operate under the "strong and undeniable preference" for admitting any evidence which may potentially assist the trier of fact. *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997), *as amended* (Dec. 12, 1997). Rule 702 has a "liberal policy of admissibility." *Pineda*, 520 F.3d at 244.

Rule 703 of the Federal Rules of Evidence provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

Rule 704 of the Federal Rules of Evidence provides:

> **(a)** **In General--Not Automatically Objectionable.** An opinion is not objectionable just because it embraces an ultimate issue.

> **(b)** **Exception.** In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.

Fed R. Evid. 704. Pursuant to Rule 704, expert opinion testimony is not objectionable merely because it embraces an ultimate issue to be decided. *Quagliarello v. Dewees*, 802 F. Supp. 2d 620, 623-24 (E.D. Pa. 2001) (citing *United States v. Roman*, 121 F.3d 136, 141 (3d Cir. 1997)). However, the testimony can be excluded if it is not otherwise admissible. *Quagliarello*, 802 F. Supp. 2d at 624. (citing Fed. R. Evid. 704 (a)). "As the Rules Advisory Committee explained, '[t]he abolition of the ultimate issue rule does not lower the bars so as to admit all opinions,' because the expert testimony must be helpful to the trier of fact and not waste time pursuant to Rules 701, 702 and 403.'" *Id.* (citing Fed. R. Evid. 704 advisory committee note).

Finally, Federal Rule of Evidence 403 provides that"[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . .  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence".

As discussed in further detail below, none of these standards justify excluding the opinions and testimony of Drs. Markenson, Hyde and Williamson.

## IV.   **LEGAL ARGUMENT**

### A.   **Defendant's Motion to Exclude is Premature.**

Defendant does not mention Drs. Markenson, Hyde or Williamson in its Motion for Summary Judgment (ECF No. 81), nor does the Motion for Summary Judgment reference ECFMG's Motion to Exclude (ECF No. 83). This Court's Policies and Procedures provide that "[i]f a party's motion for summary judgment . . . is based in whole or in part on an argument that expert testimony is not admissible, the party must raise such argument in a contemporaneous *Daubert* motion." Hon. Joshua D. Wolson, Policies and Procedures, § B.4, p. 7. Since Defendant's Motion for Summary Judgment in no way states or references that it is based on an

argument that expert testimony is not admissible, the Motion to Exclude is premature and should therefore be denied. Notwithstanding that the Motion is not ripe for determination, should the Court consider the Motion on its merits, it should be denied on numerous grounds.

**B.  Plaintiffs' Experts Are Qualified.**

As set forth in further detail below, Plaintiff's experts are qualified to offer opinions regarding ECFMG's conduct because they possess specialized knowledge, skills, training and experience beyond that of the average layperson, which will assist the trier of fact in understanding the evidence and determining facts at issue.

**i.  Qualifications of Plaintiffs' Individual Experts**

**a.  Dr. David Markenson**

As his CV reflects, David Markenson, M.D. is board-certified by the American Board of Pediatrics, the American Board of Preventive Medicine and the American Board of Emergency Medicine. He is a Fellow of the American College of Healthcare Executives, a certified Professional in Healthcare Quality and a Certified Physician Executive of the Certifying Commission on Medical Management. He is also a Fellow or member of numerous professional groups including, *inter alia*, the American Academy of Physicians, the American College of Critical Care Medicine, the American College of Emergency Physicians, the American College of Health Care Executives, and the American College of Physician Executives and the American Medical Informatics Association. *See* Ex. 2.

Dr. Markenson obtained his medical degree in 1994 from the Albert Einstein College of Medicine. He did his internship and residency in Pediatrics at the New York University School of Medicine. He completed two fellowships in Pediatric Emergency Medicine and Pediatric Critical Care Medicine. Dr. Markenson also obtained a Master of Business Administration from

the University of Massachusetts Isenberg School of Management, Amhurst in 2011. He has more than 15 years health care experience as a physician executive with a publicly traded national hospital corporation, large regional health system, academic medical center, medical school, municipal hospitals and community hospitals. He has served on the CLER Evaluation Committee of the Accreditation Counsel for Graduate Medical Education since 2018. *Id.*

Dr. Markenson served as the designated institutional official for multiple hospitals while Vice President of Graduate Medical Education (GME) for Hospital Corporation of America, in which capacity he oversaw the processes, procedures and program directors and played a role in hiring medical school graduates into residency programs. *See* Ex. 3 at 38-40. He continues to serve on a national committee of ACGME that oversees their clear clinical learning environment review program. *Id.* at 47. As Chief Medical Officer with Sky Ridge and his prior role with Westchester Medical Center as Chief of Services, he is directly involved with hiring staff physicians for his department. *Id.* at 65.

Dr. Markenson is an expert in verifying and using medical school credentials. *Id.* at 111. He also considers himself to be an expert on ECFMG's or USMLE processes. *Id.* He considers himself to be knowledgeable about what the standard would be for primary source verification which is the function ECFMG holds itself out as performing for IMGs, and what a certification body should do to memorialize their policies and procedures to assure it meets the necessary standards. *Id.* at 211. Dr. Markenson's experience includes working with hospitals for certification of physicians' credentials and privileges, with AGCME about residency certification and with professional organizations for fellowship certification. *Id.* at 212.

### b.  **Dr. John Charles Hyde**

John C. Hyde, Ph.D., FACHE possesses significant professional knowledge and
experience relating to policies and procedures and prevailing and prudent standards of healthcare
administration and physician credentialing. As his CV reflects, Dr. Hyde is an adjunct Professor
of Healthcare Administration at the George Washington University, teaching healthcare
management at the graduate level on a part-time basis. He is also a full-time consultant in the
field of healthcare administration. Recently, he retired as a full-time university professor of
health services administration and clinical outcomes research within an academic medical center
campus, with former appointments in the School of Health-Related Professions and the School of
Medicine at the University of Mississippi Medical Center, as well as in the School of Business at
the University of Mississippi. His academic activities include teaching graduate-level students in
areas of healthcare management, conducting health services research focusing on management
and clinical outcomes analysis, and providing expertise and consultations to the healthcare
community at large. He has taught graduate level healthcare administration/outcome classes for
over 28 years. *See* Ex. 5.

Dr. Hyde's doctorate, master's, and bachelor's degrees are all in the field of healthcare
administration. He has presented research findings at the regional, national and international
levels, and published articles, books and monographs related to various areas of healthcare
delivery. He has provided lectures and addresses to international, national and regional audiences
in healthcare administration. His *curriculum vitae* includes a list of all publications he authored,
including those dealing with the credentialing process. Dr. Hyde is qualified to offer expert
opinions regarding ECFMG's conduct. At his deposition, he testified as an expert regarding the
methods and principles for evaluation of the credentials of a physician. *See* Ex. 6 at 48-49.

While not a clinician, Dr. Hyde is Board-certified as a Certified Healthcare Executive (FACHE Fellow) by American College of Healthcare Executives in the specialty of health care administration. He also has approximately 10 years' experience as a practicing healthcare administrator and multi-system executive with specific knowledge and expertise in the areas of physician credentialing/privileging, credential verification organizations, primary source verification, regulators, and overall healthcare management procedures. *See* Ex. 5.

Defendant cites *Svindland v. A.I. DuPont Hosp. for Children of the Nemours Foundation*, 2006 WL 3209953 (E.D. Pa. 2006), an unreported decision, for the argument that Dr. Hyde should not be allowed to testify as an expert witness in the case at bar. Defendant's reliance on *Svidland* is misplaced. In *Svindland*, the plaintiffs' claim of negligent credentialing was "precluded both by Delaware's peer review privilege and lack of sufficient evidence of causation." *Id.* at *2. Essentially, Dr. Hyde declined to overreach, as he did not give opinions outside his professional expertise. The *Svindland* court explained that under **Delaware** law, "to establish proximate cause for a negligent credentialing claim such as this, expert testimony must show that the physician was medically *unqualified* to perform the procedure in question and therefore should not have been credentialed." *Id.* at *5. Dr. Hyde, who is not a physician, made it clear that he could not and would not give medical causation opinions. According to the *Svindland* court, "[p]laintiffs fail to state that but for the hospital's insufficient oversight, Dr. Norwood would not have been credentialed and would not have negligently performed Ian's surgery." *Id.* at *6. Subsequently, on appeal of the *Svindland* matter, the original judge who disallowed expert testimony was found to have committed prejudicial errors. *Svindland et al v. Nemours Foundation, et al.*, No. 07-2627, 2008 WL 2531198 (3d Cir. June 26, 2008).

*Elswick v. Nichols*, 144 F.Supp.2d 758 (E.D. Ky. 2001) is also inapposite. *Elswick* had nothing to do with credentialing issues, credential verification organizations, or primary source verification. Rather, *Elswick* arose from an infection that the plaintiff alleged was introduced into his wound due to the defendants' negligence. However, the plaintiff lacked the ability to provide evidence of medical causation as required by Kentucky law.

Plaintiffs submit to this Court that the *Elswick* case from two decades ago has no bearing on the reliability of Dr. Hyde's testimony. Defendant's effort to brandish an unsuccessful result in a completely unrelated lawsuit in the past amounts to an improper effort to portray Dr. Hyde as having a disposition, propensity or habit of "overreaching" simply because the plaintiff's case in *Elswick* lacked sufficient data to establish the alleged failure of a hospital's infection control policy. In the interests of justice, Plaintiffs in the case at bar are entitled to have their case proceed on its own merits, with its expert witnesses, without the infusion of an unrelated case in Kentucky from over twenty years ago.

The Motion further suggests that this Court impose a condition on Dr. Hyde – *i.e.*, being a medical doctor – that is not required under the law or the Rules of Evidence. Dr. Hyde has not given medical causation opinions, nor did he give opinions outside of his area of professional expertise. Defendant's arguments as to Dr. Hyde based on qualification go only to the weight, not the admissibility, of Dr. Hyde's opinions and testimony.

### c.  Dr. Jerry Williamson

Dr. Jerry Williamson possesses numerous qualifications that will assist the jury in this matter. *See* Ex. 8. Dr. Williamson is a board-certified physician, *See* Ex. 9, 22:15 and 76:25, and he received a master's in health jurisprudence in 2010 from Loyola University Chicago School of Law. Ex. 9, at 19:14-21. Dr. Williamson has also worked in and consulted for hospital

administration, where his role included physician credentialing and privileging. *Id.* at 23:8-24:16.

He is on faculty at Florida State University and teaches residents. *Id.* at 24:24-25:10. He has

experience hiring foreign medical graduates. *Id.* at 29:21-25. He has taught courses at Loyola on

risk management. *Id.* at 21:22-24.

Dr. Williamson is not a professional expert but has been sought out for his expertise. At

the time of his deposition, he had not testified as an expert during the past four years. *Id.* at 7:9-

10. He had, however, been retained as an expert in several fair hearing or negligent credentialing

cases within the last four years, as well as clinical matters. *Id.* at 7:17-12:1.

ECFMG attempts to minimize Dr. Williamson's experience and highlights that he was

not able to immediately recall some details of ECFMG's credentialing processes and his prior

interactions with ECFMG. (ECF No. 83-1 at 9-10). But Dr. Williamson has actually dealt with

ECFMG in his administrative capacities and relied on ECFMG's certificates in physician

credentialing. Ex. 9, 32:3-33:18. He is familiar with ECFMG's policies and procedures. *Id.* at 59.

He has reviewed extensive materials associated with his work in this case. (A substantial portion

of the deposition transcript, which catalogued the materials he reviewed, was omitted from the

partial transcript attached to the Motion, but is attached here. *See id.* at 36:1-58:9; 136-137.)

Dr. Williamson is familiar with the standard of care applicable to ECFMG. *See id.* at 133-

136. He provided details about ECFMG's processes, the use of ECFMG certificates in

credentialing, and the process of a foreign medical graduate becoming an appropriately licensed

practicing physician. *Id.* at 32-33, 59, 68:7-70:2, 79:24-80:2. ECFMG clearly disagrees with Dr.

Williamson's perspective on ECFMG, but that disagreement is for a jury to resolve. Whether he

could exhaustively recall all of the information communicated in an ECFMG certificate has little

import here, where "Akoda's" actual certificate has been disclosed in discovery, was discussed

10

and marked as an exhibit at the deposition, *Id.* at 101, and will be available to the jury at trial. Dr. Williamson cannot be disqualified based on a game of Memory.

### ii. Plaintiffs' Experts Qualifications, in Combination with their Education, Training and Experience Are Sufficient to Qualify Them as Experts in this Case and Render their Opinions Useful to the Jury.

Qualification requires that the witness possess specialized expertise. *Schneider*, 320 F.3d at 404. The Third Circuit has interpreted this requirement liberally. *Id.* at 404; *Paoli*, 35 F.3d at 741. Rule 702's liberal policy of admissibility extends to both the substantive and formal qualifications of experts. *Pineda*, 520 F.3d at 244; *Paoli*, 35 F.3d at 741. The Third Circuit has "eschewed imposing overly rigorous requirements of expertise and ha[s] been satisfied with more generalized qualifications." *Paoli*, 35 F.3d at 741 (citing *Hammond v. Int'l Harvester Co.*, 691 F.2d 646, 652-53 (3d Cir. 1982) and *Knight v. Otis Elevator Co.*, 596 F.2d 84, 87-88 (3d Cir. 1979)). A broad range of knowledge, skills and training can qualify an expert. *Pineda*, 520 F.3d at 244 (citing *Paoli*, 35 F.3d at 741). An expert witness must possess skill or knowledge beyond that of the average layman. *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998).

ECFMG's broad attack on Plaintiffs' experts' qualifications to testify is based, in part, on the fact that they have never worked for ECFMG. (ECF No. 83-1 at 8-9). This argument is a non-starter. ECFMG adduces no authority to indicate than an expert must have worked for or with the defendant to be qualified. An expert in credentialing policies and procedures is not required to have been an ECFMG applicant, employee, board member or Medical Educational Credentials Committee member. The standard proposed by ECFMG would turn the flexible *Daubert* standard into a tool for tort immunity. A defendant should not be empowered to, in effect, set its own standard of care.

ECFMG acknowledges that all three experts have interacted with ECFMG over the course of their careers. (ECF No. 83-1 at 9). Further, Plaintiffs' experts' qualifications, in combination with their education, training, experience and expertise, and their familiarity with ECFMG and the physician credentialing process, are more than sufficient to qualify them to render expert opinions in this case which would provide substantial assistance to the trier of fact.

"[I]t is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Pineda*, 520 F.3d at 244 (citing *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996)); *see also Schneider*, 320 F.3d at 407 (holding that the plaintiff's expert, an invasive cardiologist, was qualified to testify about the standard of care for interventional cardiologists performing angioplasties given his knowledge and experience, and that the district court had abused its discretion in excluding his testimony). Plaintiffs' experts are appropriately qualified to render the opinions they have set forth in this case. Accordingly, the Motion to Exclude should be denied.

**C. Plaintiffs' Experts' Opinions and Methodology are Reliable and Non-Speculative.**

    **i. Opinions and Methodology of Plaintiffs' Experts**

        **a. Dr. David Markenson**

Dr. Markenson opines that the standard of care applicable to ECFMG's certification process requires ECFMG to adopt reasonable policies and procedures and to follow them to ensure that IMGs comply with all the requirements for certification. *See* Ex. 1. Prior to 2015, there were no written policies or procedures governing how the Medical Education Credentials department of ECFMG conducted its investigations of allegations of irregular behavior. *See* relevant portions of testimony of Kara Corrado, J.D., attached hereto as Exhibit 10, at 59-61. In

his report, Dr. Markenson recites the facts he considered in forming his opinions, which traces

Igberase's history from 1992 through his conviction and loss of his medical license in 2016. For

the most part, the facts underlying his opinions can be found in Igberase's plea agreement. *See*

Exhibit 11.

Dr. Markenson made it clear that he evaluates the standard of care applicable to

ECFMG's certification process based on his experience with other entities that are required to

verify medical school completion for U.S. medical school graduates, such as licensing boards,

hospitals and Joint Commission, and the Centers for Medicaid Services. *See* Ex. 3, at 189-191.

He is using the standard of care that is used to verify medical school completion for U.S.

graduates. *Id.* at 191. There are multiple processes that use primary source verification. In the

setting of foreign graduates, ECFMG does it for foreign medical school graduation. He is using

the standard within healthcare for primary source verification. This includes credentialing. *Id.* at

192, 214. This is part of Dr. Markenson's professional experience.

Based on the facts of this case and his education, training and experience, Dr. Markenson

has expressed the opinion (among others) that:

> ECFMG is the only organization that certifies that IMG's have successfully
> completed medical education at an approved foreign medical school and that they
> have successfully completed the required medical examinations. Without an
> ECFMG certification, an IMG cannot sit for required licensing exams, obtain a
> medical license, will not be accepted into a graduate medical education program
> and cannot obtain hospital privileges. The standard of care applicable to ECFMG's
> certification process requires ECFMG to adopt reasonable policies and procedures
> and to follow those procedures to ensure that IMG's comply with all requirements
> for certification. ECFMG has undertaken to provide certification services which are
> necessary for the protection of the general public. Its failure to exercise reasonable
> care in providing these services increases the risk of harm to the general public,
> including plaintiffs. Licensing agencies, medical schools and hospitals, among
> others, rely upon ECFMG to act reasonably in performing these services.

*See* Ex. 1. The opinions expressed in his report are not speculative nor based on incomplete facts, and the conduct of other organizations is not determinative with respect to whether ECFMG breached the standard of care applicable to its own conduct.

### b.  Dr. John Charles Hyde

In his report, Dr. Hyde summarizes the events he considered in forming his opinions, together with the documents, information and deposition testimony he reviewed in the preparation of his testimony. He reviewed the deposition testimony of William C. Kelly, ECFMG; Stephen Seeling, J.D., Vice President of Operations, ECFMG; and Kara Corado, J.D., Current VP of Operations, ECFMG. Dr. Hyde's opinions are based on his knowledge, training, education, experience and understanding of the practice of healthcare management, coupled with his professional knowledge of prevailing and prudent standards of healthcare administration which ultimately require an exercise of reasonable application of the process of Credentials Verification and use of Primary Sources. *See.* Ex. 4 at 2-3.

It is Dr. Hyde's opinion, with a reasonable degree of professional certainty, that ECFMG should have written policies and procedures for the certification of IMGs and should have included requirements that ECFMG investigate fully the differences in the name on "Akoda's" medical school diploma and the name on his applications, and the other obvious discrepancies in the applications. In Dr. Hyde's opinion, an appropriate investigation would have resulted in referral of this matter to the ECFMG medical education credentials committee. This committee should have then found that "Akoda" engaged in irregular behavior, which should have then resulted in his certification being revoked. Ex. 4.

Dr. Hyde opined with a high degree of professional certainty that the breaches of duties by ECFMG caused "Akoda" to be certified by ECFMG, which allowed him to be accepted into a

residency, secure a medical license in Maryland, and gain access to and directly cause harm to Plaintiffs and the members of the putative class. These actions and omissions were violations of the applicable standards of care. Without ECFMG's negligence, Dr. Hyde opined, "Akoda" would not have been accepted into a residency at Howard University Hospital; he would not have obtained a Maryland license; and he would not have been granted privileges at Prince George's Hospital Center. *Id.* These opinions are clearly supported by a reasonable application of the facts of this case to Dr. Hyde's experience and expertise.

### c. **Dr. Jerry Williamson**

Based upon his review of the facts of this case, including various deposition transcripts and various documents exchanged in discovery and his forty (40) years of both formal education and experience as a physician and administrator, Dr. Williamson concludes that ECFMG breached its duty to its clients, including medical licensing authorities, residency programs, hospitals and others through the various missed opportunities to address the many irregularities in the Igberase/ "Akoda" applications, which failures permitted an unqualified individual to practice medicine for many years and directly impacted patient safety. *See* Ex. 7, pp. 1-2, 6, and Addendum of 11/21/2019.

ECFMG criticizes Dr. Williamson for not reviewing the Plaintiffs' medical records because he has no basis to "offer expert opinions about plaintiffs' alleged emotion [sic] distress." (ECF 83-1 at 14). Dr. Williamson reviewed the deposition transcripts of all four Plaintiffs. *See* Ex. 7, Addendum of 11/21/2019.  He is a standard of care expert in this case. He has not and will not be offering testimony on the nature and extent of Plaintiffs' emotional harm. Review of Plaintiffs' medical records was unnecessary.

Dr. Williamson did not simply review "a limited set of materials curated by Plaintiffs' counsel," an assertion for which ECFMG offered no support. The extensive depositions and documentary material he reviewed is summarized in his reports and at pages 36-58 and 136-137 of his deposition. *See* Exs. 7 and 9. ECFMG points to no specific documents that Dr. Williamson allegedly failed to review. It merely argues that he did not exhaustively research non-party health care entities to the case whose interactions with Igberase do not vitiate ECFMG's liability. This is insufficient to deprive the jury of the benefit of his perspective.

ECFMG's only other attack on Dr. Williamson's methodology is an assertion that his report and deposition conflicted on the question of whether hospital credentialing procedures are extensive. There is no contradiction between the two. Even if there were, it would have no bearing upon his opinions. ECFMG's argument here is wholly obscure.

### ii. Plaintiffs' Experts' Methodologies are Sufficiently Reliable and Satisfy the Standards for Admissibility under Rule 702 and *Daubert*.

Courts admit an expert's testimony if the process or technique the expert utilized is reliable. *Kannankeril,* 128 F.3d at 806. The expert's testimony must be based on scientific methods and procedures, not subjective belief or unsupported speculation. *Id.* (citing *Paoli*, 35 F.3d at 744); *Schneider*, 320 F.3d at 404. The question is not which opinion has the best foundation, but simply whether any particular opinion is based on valid reasoning and reliable methodology. *Kannankeril,* 128 F.3d at 806. The party seeking the admission of the expert's testimony need only demonstrate, by a preponderance of the evidence, that the opinion is based on "good grounds." *Id.* at 807; *Schneider*, 320 F.3d at 404. The Court's focus in this inquiry must be on the expert's principles and methodology, rather than their conclusions. *Daubert,* 590 U.S. at 590, 595, *Daddio v. Nemours Found.*, 399 F. App'x 711, 713 (3d Cir. 2010).

The inquiry under Rule 702 is intended to be a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability of the principles underlying the proposed expert submission. *Daubert*, 509 U.S. at 594-95. Trial courts may consider several factors in evaluating whether a particular methodology is reliable, including, *inter alia*: (1) whether the method has a testable hypothesis; (2) whether the technique has been subject to peer review and publication; (3) known or potential rate of error; (4) the existence of applicable standards controlling the technique's operation; (5) whether the methodology has gained general acceptance in the scientific community; (6) the relationship of the technique to methods established to be reliable; (7) the qualification of the expert testifying based on the methodology; and (8) the non-judicial uses for which the technique has been utilized. *Pineda*, 520 F.3d at 247-48 (citing *Daubert* and *United States v. Downing*¸753 F.2d 1244 (3d Cir. 1985)). The factors courts use to evaluate whether a scientific methodology is reliable are not exhaustive nor applicable to every case, but instead provide a convenient starting point for analyzing an expert's opinion. *Kannankeril*, 128 F.3d at 806-07.

As the Court of Appeals for the Third Circuit has explained:

> The grounds for the expert's opinion merely have to be good, they do not have to be perfect. The judge might think that there are good grounds for an expert's conclusion even if the judge thinks that there are better grounds for some alternative conclusion, and even if the judge thinks that a scientist's methodology has some flaws such that if they had been corrected, the scientist would have reached a different result.

*Paoli*, 35 F.3d at 744. The reliability requirement must not be used by the court as a tool to exclude all questionably reliable evidence. *Id.* Rather:

> [T]he primary limitation on the judge's admissibility determinations is that the judge should not exclude evidence simply because he or she thinks that there is a flaw in the expert's investigative process which renders the expert's conclusions incorrect. The judge should only exclude the evidence if the flaw is large enough that the expert lacks "good grounds" for his or her conclusions.

17

*Paoli*, 35 F.3d at 746.

Plaintiffs' experts' methodologies are sufficiently reliable to satisfy the standards for admissibility. Their opinions are supported by the facts and evidence that has developed in this case, as well as their respective education, training, experience and expertise, and are therefore based on "good grounds". Defendant's attempts to tarnish Plaintiffs' experts with a bald assertion of "rank speculation" does not undermine their methodologies in any respect. Plaintiffs respectfully submit that a judge may not substitute his or her judgment for an expert's, as to what data are sufficiently reliable to form the basis for the expert's opinion, provided that such reliance falls within broad bounds of reasonableness.

Plaintiffs' experts' reports also satisfy the requirements of "helpfulness" and "fit" under Rule 702. As the Court of Appeals for the Third Circuit has recognized, "[t]he 'ultimate touchstone is helpfulness to the trier of fact, and with regard to reliability, helpfulness turns on whether the expert's technique or principle [is] sufficiently reliable so that it will aid the jury in reaching accurate results.' . . . A judge frequently should find an expert's methodology helpful even when the judge thinks that the expert's technique has flaws sufficient to render the conclusions inaccurate.'' *Paoli*, 35 F.3d at 744-45.

> Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier. "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." Ladd, Expert Testimony, 5 V. and. L. Rev. 414, 418 (1952). When opinions are excluded, it is because they are unhelpful and therefore superfluous and a waste of time. 7 Wigmore § 1918.

*Warren v. Prime Care Med. Inc.*, 431 F. Supp. 3d 565, 589 (E.D. Pa. 2019) (citing Fed. R. Evid. 702, Advisory Committee Notes, 1972 Proposed Rules). Since Plaintiffs' experts' opinions and testimony are reliable and involve specialized knowledge beyond that of the ordinary layman, they would be helpful to the trier of fact and should not excluded.

The element of "fit" requires that the expert's testimony be relevant to the case and assist the trier of fact to understand the evidence or determine a fact at issue. *Schneider*, 320 F.3d at 404; *Microchip Tech. Inc. v. Aptiv Srvcs. US LLC*, No. 1:17-cv-01194-JDW, 2020 WL 5203600 at *3 (D. Del. Sep. 1, 2020) (Wolson, J.). The standard for fit is "not high; it is met when there is a clear 'fit' connecting the issue in the case with the expert's opinion that will aid the jury in determining an issue in the case." *Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 F. App'x 781, 790 (3d Cir. 2009). There is no question that the requirement of "fit" is satisfied here.

Drs. Markenson, Hyde and Williamson clearly satisfy the admissibility requirements of Rule 702 and *Daubert*. Given Rule 702's "liberal policy of admissibility," *Pineda*, 520 F.3d at 244, and the "strong and undeniable preference" for admitting any evidence which may potentially assist the trier of fact", *Kannankeril*, 128 F.3d at 806 (3d Cir. 1997), Defendant's Motion to Exclude should be denied.

### D. **Plaintiffs' Experts Do Not Offer Legal Conclusions.**

Plaintiffs agree that the question of whether a duty exists is a question of law for the Court, and whether a party is liable in damages for negligence is a question of fact for the jury. Expert testimony is admissible and often **required**, however, to assist the jury in understanding the nature and content of a duty, should the Court find that one is owed. *See Heichel v. Marriott Hotel Servs., Inc.*, No. CV 18-1981, 2019 WL 2202759, at *4 (E.D. Pa. May 20, 2019) ("When an expert witness is required, the expert must clearly articulate and reference a standard of care

by which the defendant's actions can be measured."). A court's legal finding *that* a duty exists

does not provide facts a jury can use to determine *whether* it was breached.

  Federal Rule of Evidence 704 permits experts to give testimony that "embraces an

ultimate issue to be decided by the trier of fact." *Flickinger v. Toys R US-Delaware, Inc.*, 492 F.

App'x 217, 224 (3d Cir. 2012) (citing *Berckeley Inv. Grp. Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d

Cir. 2006)). Further, "the line between admissible and inadmissible expert testimony as to the

customs and practices of a particular industry often becomes blurred when the testimony

concerns a party's compliance with customs and practices that implicate legal duties." *Colkitt*,

455 F.3d at 218. Here, Plaintiffs' experts' opinions regarding duty and breach are not

impermissible legal conclusions. *See* Exs. 1, 4 and 7.

  Courts have often recognized that expert testimony is required to establish the elements

of a negligence claim. For example, expert testimony regarding the standard of care (duty),

breach and causation are required in all but the most obvious medical malpractice cases, because

a jury of laypersons generally lacks the knowledge to determine whether the conduct in question

breached the applicable standard of care. *Warren v. Prime Care Med. Inc.*, 431 F. Supp. 3d 565,

589 (E.D. Pa. 2019); *Miville v. Abington Mem'l Hosp.*, 377 F. Supp. 2d 488, 491 (E.D. Pa. 2005).

Expert testimony is also often required with respect to the issues of causation and damages. *See,*

*e.g.*, *Redland Soccer Club, Inc. v. Dep't of Army of the United States*, 55 F.3d 827, 852 (3d Cir.

1995) (citing *Gradel v. Inouye*, 421 A.2d 674, 679 (Pa. 1980)) (noting that it is well settled that

when "the complexities of the human body place questions as to the cause of pain or injury

beyond the knowledge of the average layperson . . . the law requires that expert medical

testimony be employed"); *Bushman v. Halm*, 798 F.2d 651, 659 (3d Cir. 1986) ("If the question

of causal relation is so esoteric that lay minds cannot form any intelligent judgment about it

without expert aid in an opinion from an expert may be required."). Such expert opinions, of course, concern the elements of the claims at issue. Nonetheless, they are permitted and often required.

Courts routinely allow experts to testify to opinions that embrace an ultimate issue in a case, including the standard of care and breach, so long as that testimony would be helpful to the trier of fact and otherwise satisfies the admissibility requirements of the Federal Rules of Evidence. *See, e.g.*, *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 322 (3d Cir. 2003) (recognizing that the district court allowed a psychologist with a specialty in human factors engineering to testify about how to design an effective warning, and to opine that the warning on a jet ski deviated from the proper criteria, thereby "making the vehicle unreasonably dangerous and defective, especially for youthful operators"); *Mestre v. Garden Homes Mgmt. Corp.*, No. 1:16-cv-03231-JDW-AMD, 2020 WL 3962267 at *3 (D.N.J. July 13, 2020) (Wolson, J.) (holding, where the plaintiff filed a lawsuit against a mobile home community for failing to evict a tenant with a criminal history who caused him personal injuries, that plaintiff's expert— a former security guard, state trooper and certified protection professional—could offer opinion testimony about the standard of care that the residential community should have employed and whether it fell short of that standard of care, because he combined his personal knowledge with principles and methodologies from a variety of sources relating to residential security and the management of rental communities, and thus his opinions were based on more than speculation or subjective belief); *Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, 410 F. Supp. 2d 417, 422-23 (W.D. Pa. 2006) (recognizing that an expert may be helpful to the trier of fact in a bad faith case, and that testimony regarding insurance claims adjusting procedure, the defendant's compliance with industry customs and standards, and whether the defendant lacked a reasonable

21

basis for denying the claim may be relevant and admissible); *Burger v. Mays*, 176 F.R.D. 153 (E.D. Pa. 1997) (allowing a criminologist to testify that an officer did not follow proper police procedure in apprehending the plaintiff); *Tschappat v. Groff*, Civ. A. No. 3:CV-01-2279, 2004 WL 5509087 (M.D. Pa. June 2, 2004) (Blewitt, M.J.) (allowing a police expert to testify regarding proper procedures for apprehending a subject and whether the defendant failed to follow those procedures); *Quinn Const., Inc. v. Skanska USA Bldg., Inc.*, No. CIV.A. 07-406, 2009 WL 1489954, at *3 (E.D. Pa. May 26, 2009) (McLaughlin, J.) (noting that, although the plaintiff's claims did not *require* expert testimony, this does not mean that expert testimony regarding an architect's standard of care or causation would not be permitted; rather, such testimony may be admissible if helpful to the jury and if compliant with the Rules of Evidence); *Jones v. LA Fitness Int'l, LLC*, No. CIV.A. 11-0632, 2013 WL 3789807, at *6 (E.D. Pa. July 22, 2013) (Pratter, J.) (holding that the expert's testimony was admissible with regard to the industry standards and rules for basketball courts, and whether the design and condition of the basketball court in question met those standards even though ordinary principals of negligence and the conditions of the premises were well within the jury's comprehension); *Ucciardi v. E.I. Du Pont Nemours & Co.*, No. CV 13-4952 (FLW), 2016 WL 7338533, at *3 (D.N.J. Dec. 19, 2016) ("An expert's opinion may be used to prove elements of negligence, particularly if the subject matter of the alleged negligent act is technical or beyond the kin of the factfinder."). Further, even where courts have found an expert's report to include impermissible legal conclusions—often involving the use of legal terms— they have stricken only those portions of the expert's testimony while allowing the testimony otherwise proceed. *See, e.g.*, *Calhoun*, 350 F.3d at 322, *Gallatin Fuels, Inc.*, 410 F. Supp. 2d at 422-23; *Burger*, 16 F.R.D. 153.

ECFMG falsely asserts that Drs. Markenson and Williamson "confirmed" at their deposition that they will "continue to offer legal conclusions" outside their scope of expertise. (ECF No. 83-1 at 12). This argument is based on selective citation to the record, which creates an inaccurate impression. With respect to Dr. Markenson, the cited testimony arose from a line of hypothetical questions relating to other crimes such as tax fraud, and whether he believes ECFMG has a duty or obligation to make sure individuals it certifies never break the law— hypotheticals which Dr. Markenson attempted to distinguish. *See* Ex. 3, at 217:11-221-4.

Dr. Williamson made clear that he is not holding himself out to be a legal expert in the case. *See* Ex. 9, p. 116:16-19. By "duty," he was careful to note, he meant "responsib[ility] for making certain that everything we've talked about is done properly." *Id.* at 116:17-117:2; 119:10-14. ECFMG's failure to act appropriately "is a matter of ethics" and has "legal implications"—and it was only "in that sense" that Dr. Williamson stated at deposition he was offering a legal opinion. *Id.* at 116-117. This does not amount to an impermissible legal conclusion.

Dr. Williamson resisted repeated attempts to be boxed in at his deposition as to whether he purported to set forth a legal opinion in the case. ECFMG's brief mistakenly casts statements made in conditional form as affirmative representations to the effect that Dr. Williamson would be testifying on the existence of a duty. *Id.* at 118:1-12. Instead, Dr. Williamson outlined in his report and at his deposition what ECFMG was required to do under the prevailing industry standard of care. *See generally* Ex. 7; Ex. 9 at 104:17-112:22. There is also no indication his testimony on whether the damages to plaintiffs were foreseeable will in any way usurp the jury's role as factfinder. Ex. 9 at 120-121. He merely testified that ECFMG should have acted because

it should have understood that an individual who provided false information on an application could later commit misconduct against patients. Ex. 9 120-121, 137-138.

For the reasons set forth above, the opinions of Drs. Markenson, Hyde and Williamson, with respect to issues of standard of care, breach and causation do not constitute impermissible legal conclusions; rather these are appropriate matters for expert testimony given that the subject matter in question is technical and beyond the knowledge of the ordinary layperson. *See* Exs. 1, 4, and 7. Plaintiffs' experts are in no way attempting to usurp the Court's role to make legal conclusions or the jury's role to make factual ones.  Should the Court have concerns about the terminology to be used by experts in their testimony at trial (e.g., "duty," "breach," "foreseeable") they can be addressed through an appropriate ruling *in limine* when ripe, rather than through the drastic remedy of a wholesale exclusion of experts.

### E. Plaintiffs' Experts Rely Upon Data Reasonably Relied Upon by Experts in their Fields, and the Probative Value of their Testimony Outweighs Any Purported Risk of Prejudice to Defendant.

ECFMG's effort to exclude Plaintiffs' experts' opinions based on Rules 403 and 703 offers no additional arguments beyond those discussed above, and should be denied for the same reasons.[1] Under Rule 703, experts may rely on hearsay statements in formulating their opinions, and may even disclose those statements to the jury if their probative value substantially outweighs their prejudicial effect. *See, e.g.*, *Mestre*, 2020 WL 3962267 at *3. Here, Plaintiffs' experts' opinions are sufficiently reliable, are based upon good grounds, and rely upon data

---

[1] Of note, one of the cases relied upon by Defendant in support of this argument, *Therasense, Inc. v. Becton Dickinson Co.*, No. C 04-02123 WHA, 2008 WL 2323856 (N.D. Cal. May 22, 2008) involved "[o]ne of the worst abuses in civil litigation [through] the attempted spoon-feeding of client-prepared and lawyer-orchestrated 'facts' [relating to the material composition of a coating] to a hired expert who then 'relie[d]' on ["a rigged and biased source of information" relating to a "materially important fact"] . . . to express an opinion"; circumstances which clearly and plainly are not present here. *Therasense, Inc.*, 2008 WL 2323856 at *1-*2.

reasonably relied upon by experts in the field. *Paoli*, 35 F.3d at 749. As such, their testimony is admissible and should not be precluded pursuant to Rules 703 and 403.

## V.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that Defendant's Motion to Exclude Expert Testimony be denied.

Dated: January 14, 2022                                    Respectfully submitted,

JANET, JANET & SUGGS, LLC                    CONRAD O'BRIEN PC

*/s/ Patrick Thronson*                                     */s/ Robin S. Weiss*
  Patrick A. Thronson                              Nicholas M. Centrella (Pa. ID 67666)
  Brenda A. Harkavy                                Robin S. Weiss (Pa. ID 312071)
  4 Reservoir Circle, Suite 200                    1500 Market Street, Suite 3900
  Baltimore, MD 21208                              Philadelphia, PA 19102-2100
  (410) 653-3200                                   (215) 864-9600

LAW OFFICES OF PETER G. ANGELOS,        SCHOCHOR, FEDERICO AND STATON
P.C.

  Paul M. Vettori                                 Brent Ceryes
  One Charles Center                              The Paulton
  100 N. Charles Street, 20th Floor               1211 St. Paul Street
  Baltimore, Maryland 21201                       Baltimore, Maryland 21202
  (410) 649-2000                                  (410) 234-1000

Z LAW, LLC                                    THE COCHRAN FIRM
  Cory L. Zajdel                                  Karen E. Evans
  2345 York Rd. Suite B-13                        David E. Haynes
  Timonium, MD 21093                              1100 New York Avenue, N.W.
  (443) 213-1977                                  Suite 340, West Tower
                                                  Washington, DC 20005
                                                  (202) 682-5800

                                                *Attorneys for Plaintiffs, on behalf of*
                                                *themselves and all others similarly situated*