# EXHIBIT 4

**John C. Hyde, Ph.D., FACHE**
**Health Care Consultant**
**4301 Highway 35 North**
**Forest, MS  39074**

September 23, 2019

Ms. Karen E. Evans
The Cochran Firm
Attorneys at Law
110 New York Ave., NW
Suite 340, West Tower
Washington, DC  20005

Dear Ms. Evans

　　This opinion has been prepared in regards to the matter of: ***Russell, et al v. Educational Commission for Foreign Medical Graduates, Case No. 2:18-cv-05629-JW.***  Currently, I am an adjunct Professor of Healthcare Administration at the George Washington University teaching healthcare management at the graduate level on a part-time basis; and, a full-time consultant in the field of healthcare administration. Recently, I retired as a full-time university Professor of health services administration and clinical outcomes research within an academic medical center campus; with former appointments in the School of Health Related Professions and the School of Medicine at the University of Mississippi Medical Center; and, in the School of Business at the University of Mississippi. My academic activities involved: teaching graduate-level students in areas of healthcare management; conducting health services research focusing on management and clinical outcomes analysis; and, providing expertise and consultations to the healthcare community at large. I have taught graduate level healthcare administration/outcome classes for the past 28+ years. My doctorate, master, and bachelor degrees are all in the area of healthcare administration. I have presented research findings at the regional, national and international levels and published articles, books and monographs related to various areas of healthcare delivery. I have provided lectures and addresses to international, national and regional audiences in areas of healthcare administration.

　　Additionally, I have approximately 10 years' experience as a practicing healthcare administrator and multi-system executive with specific knowledge and expertise in the areas of physician credentialing/privileging, credential verification organizations, primary source verification, regulators, and overall healthcare management procedures. I am board-certified as a Certified Healthcare Executive (***FACHE- Fellow***) by the **American College of Healthcare Executives** in the specialty of health care administration.

　　Attached is my Curriculum Vitae which includes a list of all publications I have authored, including those dealing with the credentialing process.

John C. Hyde, Ph.D.　　Page 1 of 8　　9/19/2019

In the preparation of this preliminary opinion, I have examined the documents and information listed below and based my opinions on my professional knowledge of prevailing and prudent standards of healthcare administration which ultimately require an exercise of reasonable application of the process of Credentials Verification and use of Primary Sources:

**DOCUMENTS/INFORMATION REVIEWED**:

Documents Received from Howard University
Documents Received from ECFMG
Documents Received from ABOG Production
ECFMG Information Booklet, ECFMG Certification and Application, 1996
Complaint
Virginia Department of Health Professions Order of Mandatory Suspension re Charles Akoda, MD (2017)
 Maryland State Board of Physicians Final Decision and Order re Charles Akoda, MD (2017)
Educational Commission for Foreign Medical Graduates Website (https://www.ecfmg.org/)
ECFMG Complaint
Educational Commission for Foreign Medical Graduates Website (https://www.ecfmg.org/)
Hallock JA & Kostis JB (2006). **Celebrating 50 Years of Experience: An ECFMG Perspective,** Academic Medicine, 81(12): S7-S16.
**Hospital Accreditation Standards**, The Joint Commission, 2008.
American Medical Association: **Joint Commission acceptance of AMA Physician Masterfile Data**, 2004.
**Credentialing by Medicare Advantage Organizations**, presented by E. Enriquez, Nurse Consultant, CMS Region II,

**Depositions Reviewed:**

Deposition of William C. Kelly, ECFMG with Exhibits (8/20/19)
Deposition of Stephen Seeling, JD, Vice President of Operations, ECFMG (9/16/19)
Deposition of Kara Corado, JD, Current VP of Operations ECFMG (9/10/19)


Based upon a review of these identified documents/information, coupled with my knowledge, training, education, experience and understanding of the practice of healthcare management, I have formulated the following opinions in this matter. These opinions have been based on regulations and industry standards that guide, and should guide the operations of a credentialing verification organization (CVO), such as Educational Commission for Foreign Medical Graduates (ECFMG).


**SUMMARY OF EVENTS**

1.   ECFMG received two applications from John Nosa Akoda to take Steps 1 and 2 of the USMLE examinations. The first on January 3, 1996, and again on August 30, 1996.

2. After he successfully completed the required examinations, ECFMG issued certificate number 0-553-258-5 to "Dr.".Akoda. At some time in 1998, he provided ECFMG with social security number xxx-xx- 9065.

3. Akoda entered the graduate residency program at Jersey Shore Medical Center on July 1, 1998. Shortly thereafter,, ECFMG received a Request for Permanent Revalidation of Standard ECFMG Certificate from Akoda due to his having entered this program.

4. On September 2, 1998, ECFMG sent a validated form.

5. About two years later, in 2000, ECFMG was notified that the Jersey Shore Medical Center graduate residency program where Akoda was enrolled was investigating allegations that Akoda had used a social security number issued to a person named Oluwafemi Charles Igberase. ECFMG advised Jersey Shore Medical Center that Akoda had provided ECFMG with social security no. xxx-xx-9065 which was the same number Akoda provided to Jersey Shore Medical Center.

6. On August 22, 2000, ECFMG acknowledged in a letter to Akoda that it had received information alleging that Akoda may have engaged in irregular behavior.

7. Thereafter ECFMG sent a letter to Akoda acknowledging receipt of information from Jersey Shore to which Akoda responded by representing to ECFMG that Igberase Oluwafemi Charles was his cousin and admitting that he had used his cousin's social security number. As proof of his identity, Akoda provided ECFMG with a Nigerian passport and a Nigerian "international driving permit."

8. Ultimately, Jersey Shore Medical Center dismissed Akoda from its graduate residency program because he used a false social security number and because the green card he provided to the hospital was inconsistent with the other green card he provided. The social security number "Dr."Akoda used belonged to Charles Igberase, "his cousin".

9. In December of 2000, an employee of ECFMG, William Kelly, wrote a memo which he said should NOT be made a part of the official file, to the VP of Operations at ECFMG, Stephen Seeling. In that memo, Mr. Kelly advised Mr. Seeling that both he and Jersey Shore believed Igberase and Akoda were the same person. Then, curiously, Mr. Kelly concluded that there was not enough information for the ECFMG Credentials Committee.

10. Thereafter in October 2006, Akoda used the ERAS of ECFMG to apply to Howard University Medical Center's residency program. He provided three letters of reference. ECFMG attempted to verify the authenticity of these three letters of reference but was unsuccessful. It is not the usual practice of ECFMG to seek to verify the authenticity of letters of reference from its applicants.

11. Akoda successfully completed a graduate residency program at Howard University Medical Center, was licensed to practice medicine in Maryland and Virginia, and was granted privileges at Prince Georges' Hospital Center.

12.   To obtain a license to practice medicine in Maryland, Akoda was required to submit, among other essential components, a valid ECFMG certificate.

13.   However, ECFMG should never have issued an ECFMG certificate to Charles Nosa Akoda.

14.   At the time of Akoda was issued an ECFMG certificate, ECFMG knew or should have known that Charles Nosa Akoda was the same person as Oluwafemi Charles Igberase (aka multiple alias). ECFMG knew or should have known that Charles Nosa Akoda was the same person as Oluwafemi Charles Igberase (aka multiple alias) and that he had: a) previously lied about not taking the required examinations, b) rearranging his name, c) that he had been dismissed from the Jersey Shore residency program he used a false social security number to apply to the hospital ( his 'cousin' Charles Igberase) and used two green cards documenting different numbers, names, expiration dates, and dates of birth for "Dr. Akoda and his certification had been previously revoked; d) that his ECFMG certification had been previously revoked; that there were irregularities regarding the authenticity of his medical school diplomas, and references.

15.   On June 1, 2016, U.S. Attorney's office indicted Mr. Akoda for fraud and aggravated identity theft, citing eleven aliases including Charles John Nosa Akoda.

16.   Using search warrants, law enforcement officers searched the home of Mr. Akoda on June 9, 2016, and discovered false: passports, social security numbers (ending 1623 under John Charles N. Akoda), Nigerian passport, and US visa in Akoda's name. They also found other fraudulent or altered documents relating to immigration, medical diplomas, medical transcripts, letters of recommendation and birth certificates.

17.   On October 19, 2016, Mr. Akoda was indicted again on a charge of social security fraud, false statements regarding a healthcare matter, an additional count of identity theft and fraud as well as misuse of an immigration document.

18.    Mr. Akoda ultimately entered into a plea bargain agreement and pled guilty to social security fraud on November 15, 2016.

19. In the spring of 2017, Mr. Akoda's license to practice medicine in Virginia and Maryland was revoked.


**AREAS OF EXAMINATION/RESPONSES**

 1.  **ECFMG Mission/Requirements**
        Since 1974, the Educational Commission for Foreign Medical Graduates (ECFMG) has promoted to the American public their preeminent, and exclusive, role in assuring: ***"quality health care for the public by <u>certifying</u> international [foreign] medical graduates for entry into U.S. graduate medical education, and by participating in the evaluation and certification of other physicians and health care professionals"***. As such, this organization serves as the de facto credentials verification organization for

international [formerly foreign] medical graduates through primary source certification of the applicant's international medical education, international training, and successful completion of the United States Medical Licensure Examination (USMLE)- steps 1 and 2 and English proficiency; through administration of the testing process and subsequent applicant certification to graduate medical education sites for potential placement in postgraduate medical training programs--all of which is required for medical practice within the U.S.

In 1986, the ECFMG Board required that the medical diplomas of all graduates applying for ECFMG Certification be primary source verified with the medical school that issued the diploma. This required the ECFMG to physically send a letter to the medical school that issued the diploma and for the issuing medical school *"to attest to the veracity of the individual and the document being proffered"*. This was required by ECFMG to ensure that all diplomas would undergo this scrutiny--obviously to validate the authenticity of the individual and their successful completion of medical school training, along with the issuing medical school.

Fraudulent and misleading information submitted to the ECFMG is currently covered under its Policies and Procedures Regarding Irregular Behavior. This prescriptive set of policies and procedures defines and addresses what constitutes irregular behaviors. As stated, *"Irregular behavior includes **all** actions or attempted actions of the part of applicants, potential applicants, others when solicited by an applicant and/or examinee, or any other person that would or could subvert the examination, certification or other processes, programs, or services of ECFMG . . .".* When confronted with irregular behavior, it is incumbent on ECFMG to properly and thoroughly investigated, analyze and address such behaviors. Without proper resolution of the issues, ECFMG cannot fulfill its mission to the public mandating an international/foreign medical school graduate that possess all the requisite qualifications to pursue U.S. medical practice.

2. **Duties of Credentials Verification Organizations**

A healthcare CVO (credentials verification organization) as the name implies provides assurances to those entities that utilize their findings in making decisions on granting medical training program enrollment, licensure and ultimately medical practice privileges. In the late 1980's, JCAHO (former name of current, The Joint Commission) published conditions under which a CVO could be used by a hospital. According to the Joint Commission, a CVO is *"Any organization that provides information on an individual's professional credentials. An organization that bases a decision in part on information obtained from a CVO should have confidence in the completeness, accuracy and timeliness of information"*. Additionally, other CVOs within the healthcare industry such as the American Medical Association Physician Masterfile and Federation of State Medical Boards, among others, provide information that maintains these same criteria and likewise is based on primary source verification concerning vital information such as the issues of this matter. The National Committee for Quality Assurance (NCQA) has formalized and certifies CVOs. At the present time, there are

over 90 CVOs that have gained NCQA CVO Certification. Under prevailing CVO requirements, a CVO must assure the accuracy and completeness of the information that is provided. From a primary source perspective, foreign medical school education must be from the primary source.

The Centers for Medicare and Medicaid Services (CMS), has specified that primary source verification is required for: licensure, education and board certification (if applicable) in granting Medicare Advantage participation. They defined primary source as: ***"an organization or entity with legal responsibility for originating a document and ensuring the accuracy of the information it conveys"***.

As such, this concept of primary source verification entails that the CVO, in this case ECFMG, must be assured that the applicant does in fact possess a valid and authentic medical degree and other identification and credentials must undertake all efforts to make this assurance before certifying the applicant to further U.S. training, or medical licensure.

3. **Professional/Organizational Negligence**

As developed above, the administrative standards for credentialing IMGs allowing for participation in the ECFMG program requires ECFMG to follow their mission and fulfill its duty to patients in that their actions will serve to assure all foreign educated physicians are properly and thoroughly investigated and deemed eligible for ECFMG Certification to pursue U.S. postgraduate medical education. Without this certification, there should never be an individual allowed to participate in such a program; and, therefore, there would never be fraudulent IMG physicians that progressed through ECFMG to practice U.S. medicine.

**ECFMG failed to act in a reasonable and prudent manner in the following ways**:

A.  As a fundamental matter, ECFMG was required to develop or adopt written policies and procedures and checklist for the certification of IMGs. Written policies and procedures for the investigation of allegations of irregular behavior would ensure reasonable and consistent application of defined criteria.
B.  ECFMG failed to investigate obvious discrepancies that raised the question of fraud and the identity of the applicant. For example, ECFMG failed to investigate the differences in the name on Akoda's medical school diploma and the name on his applications submitted to ECFMG; the relationship between Igberase and Akoda, to name a few.
C.  ECFMG failed to follow through on its suspicions about the authenticity of the letters of recommendations.

D.  Curiously, ECFMG failed to adequately and with reasonable diligence investigate the allegations made by Dr. McCorkel and refer Akoda to the Medical Education Credentials Committee.

  E. ECFMG did not even follow its own procedures as noted in the 8/22/2000 charge letter sent to Akoda.

  F. ECFMG failed to investigate the social security number provided to ECFMG by Akoda.

  G. ECFMG obtained photographs of all applicants yet failed to compare photographs of Igberase and Akoda in its files when they had suspicions that they might be the same person.

  H. ECFMG missed a golden opportunity to discover if Akoda and Igberase( aka multiple alias) were the same person.

  I. ECFMG also failed to determine the authenticity of the passport and green card provided to Mr. Kelly by Akoda on 9/27/2000.

  J. ECFMG failed to follow up on its conclusion that Igberase and Akoda were the same person even though a memo with this conclusion was created by ECFMG employee Mr. Kelly.

  K. Instead, ECFMG negligently chose to bury this information in a memo that was not to be placed in the file.

  It is my opinion, with a reasonable degree of professional certainty, ECFMG should have written policies and procedures for the certification of IMG should have included requirements that ECFMG investigate fully the differences in the name on Akoda's medical school diploma and the name on his applications and the other obvious discrepancies in the applications.

  In my opinion, with a reasonable degree of professional certainty, an appropriate investigation would have resulted in referral of this matter to the ECFMG medical education credentials committee. An appropriate and reasonable investigation of the allegations and obvious discrepancies in the applications should have been conducted by ECFMG, and this matter should have been referred to the Medical Education Credentials Committee. This committee should have then found that Akoda engaged in irregular behavior, which should have then resulted in his certification being revoked.

  With a high degree of professional certainty, it is my opinion that the above breaches of duties, by ECFMG caused Akoda to be certified by ECFMG, which allowed him to be accepted into a residency, secure a medical license in MD and gain access to and directly cause harm the plaintiffs and the members of the class. These actions and omissions were violations of the Standards of Care. Without the negligent ECFMG certification, Akoda would not have been accepted into a residency at Howard University Hospital; he would not have obtained a Maryland license; and he would not have been granted privileges at PG Hospital to care for Plaintiff and members of the class.

  I reserve the right to alter, supplement or reverse these opinions should additional information be forthcoming.

Attached is my Rule 26 case list.

I am billing my time for review and preparation of my report at $ 375 per hour and my time for deposition at $ 1,425 for a three (3) hour deposition and $ 3,750 for one day of trial, plus travel, meals, and lodging expenses.

Respectfully,

*John C. Hyde*

John C. Hyde, Ph.D., FACHE