# EXHIBIT 11

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Southern Division*

Kelly O. Hayes
Assistant United States Attorney
Kelly.Hayes@usdoj.gov

Mailing Address:
6500 Cherrywood Lane, Suite 200
Greenbelt, MD 20770-1249

Office Location:
6406 Ivy Lane, 8th Floor
Greenbelt, MD 20770-1249

DIRECT: 301-344-0041
MAIN: 301-344-4433
FAX: 301-344-4516

October 31, 2016

Peter Goldman, Esq.
O'Reilly & Mark, P.C.
524 King Street
Alexandria, VA 22314

PWG 16-0277

Re:  United States v. Oluwafemi Charles Igberase,
     a/k/a "Charles John Nosa Akoda,"
     Criminal No. PWG-16-277

Dear Mr. Goldman,

This letter confirms the plea agreement, together with the sealed supplement, which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by November 4, 2016, it will be deemed withdrawn. The plea agreement is entered into and will be submitted to the Court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). The terms of the agreement are as follows:

### Offense of Conviction

1.  The Defendant agrees to plead guilty to Count One of the Superseding Indictment now pending against him, which charges him with misuse of a Social Security Account Number, in violation of 42 U.S.C. § 408(a)(7)(B). The Defendant admits that he is, in fact, guilty of this offense and will so advise the Court.

### Elements of the Offense

2.  The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: (1) the Defendant falsely represented a number to be the Social Security Account Number assigned to him by the Commissioner of Social Security; (2) the Defendant made that false statement with the intent to deceive or for any other purpose; and (3) the Defendant acted knowingly and willfully.

## Penalties

3. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: five years of imprisonment, a fine of $250,000, and a period of supervised release of three years. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

   a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

2

  d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

  e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

  f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

  g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

  h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Indeed, because the Defendant is pleading guilty to the identity fraud charges in this case, and because he is an illegal alien, removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences, even if the consequence is his automatic removal from the United States.

## Advisory Sentencing Guidelines Apply

  5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

3

ECFMG-000013

ECFMG_RUSS_0000013

### Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

    a. The base offense level is 6, pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2B1.1(a)(2).

    b. Pursuant to U.S.S.G. § 2B1.1(b)(10)(C), because the offense involved sophisticated means and the Defendant intentionally engaged in or caused the conduct constituting sophisticated means, and because the resulting offense level is less than level 12, the offense level is increased to 12.

    c. A 3-level enhancement applies, pursuant to U.S.S.G. § 3B1.3, because the Defendant abused a position of public or private trust in a manner that significantly facilitated the commission or concealment of the offense.

    d. This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. If the Defendant receives a 2-level reduction, the final offense level will be 13.

7. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a Career Offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

### Rule 11(c)(1)(C) Plea

9. The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of six months of imprisonment, followed by three years of supervised release, which includes as a condition of supervised release six months of home confinement, is the appropriate disposition of this case. This agreement does not affect the Court's

4

ECFMG-000014

ECFMG_RUSS_0000014

discretion to impose any lawful fine or to set any additional lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, either party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

### Obligations of the United States Attorney's Office and the Defendant

10.     At the time of sentencing, the parties will jointly request the Court to accept the stipulated sentence of **six months of imprisonment, followed by three years of supervised release, which includes as a condition of supervised release six months of home confinement.** At the time of sentencing, this Office will move to dismiss all open counts.

11.     The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

### Agreement Not to Prosecute Other Offenses the Defendant May Have Committed

12.     Other than the offense to which the Defendant has agreed to plead guilty, and with the exception of crimes of violence, crimes against children and tax violations, this Office will not prosecute the Defendant for any other violations of federal criminal law that arise from the facts stipulated by the Defendant and this Office, attached hereto and incorporated herein as Attachment A, that form the basis of this plea agreement.

### Waiver of Appeal

13.     In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

   a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction.

   b.     If the Court accepts this Plea Agreement and imposes the agreed-upon sentence, the Defendant and this Office knowingly waive all rights, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal the sentence imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

   c.     Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

ECFMG-000015

ECFMG_RUSS_0000015

d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

14. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw his guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Entire Agreement

15. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: *Kelly O. Hayes*
Kelly O. Hayes
Assistant United States Attorney

6

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

11/15/16
Date

Oluwafemi Charles Igberase
a/k/a "Charles John Nosa Akoda"

I am Oluwafemi Charles Igberase's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

11/15/16
Date

Peter Goldman, Esq.

7

ECFMG-000017

ECFMG_RUSS_0000017

## ATTACHMENT A - Stipulated Facts

*The United States and the Defendant stipulate and agree that if this case proceeded to trial, the United States would prove the facts set forth below beyond a reasonable doubt. The parties further stipulate and agree that these are not all of the facts that the United States would prove if this case proceeded to trial.*

In October 1991, the Defendant, **OLUWAFEMI CHARLES IGBERASE** ("**IBGERASE**"), entered the United States pursuant to a Nonimmigrant Visa.

In November 1991, **IGBERASE** applied for and obtained a Social Security number ("SSN"), XXX-XX-5054 (the "5054 SSN"), using the name "Igberase Oluwafemi Charles" and date of birth April 17, 1962. In January 1995, **IGBERASE** applied for and obtained a second SSN, XXX-XX-9065 (the "9065 SSN"), using the name "Charles Oluwafemi Igberase Jr." and a false date of birth. In September 1998, **IGBERASE**, this time using the name "Oluwafemi Igberase," and a false date of birth, applied for and obtained a third SSN, XXX-XX-7353 (the "7353 SSN"). In or about 2011, **IGBERASE** fraudulently used the 7353 SSN to apply for federal education loans for his children.

In April 1992, **IGBERASE** submitted an application for certification by the Educational Commission for Foreign Medical Graduates ("ECFMG"). **IGBERASE** submitted the application using the name "Oluwafemi Charles Igberase," and indicated SSN ending in 5054 and date of birth April 17, 1962. ECFMG is an organization which, among other things, provides certification to international medical school graduates before such individuals may enter graduate medical education programs in the United States, where they provide supervised patient care. Foreign medical graduates must obtain ECFMG certification in order to take the three-step United States Medical Licensing Examination ("USMLE"). All medical graduates must pass all three steps of the USMLE in order to obtain an unrestricted license to practice medicine in the United States. In July 1992, **IGBERASE** failed both the basic medical science (Day 1) and clinical science (Day 2) components of the Foreign Medical Graduate Examination in Medical Sciences ("FMGEMS"), which is Step 2 of the USMLE. In January 1993, **IGBERASE** again failed the basic medical science (Day 1) component of the FMGEMS. In September 1993, **IGBERASE** failed Step 1 of the USMLE. Eventually, between July 1992 and September 1993, **IGBERASE** passed all three steps of the USMLE and, in October 1993, was issued ECMFG Certification under the name "Oluwafemi Charles Igberase."

In March 1994, **IGBERASE** submitted a second application for ECFMG certification, this time under the name "Igberase Oluwafemi Charles," using a false date of birth. Between August 1994 and September 1994, **IGBERASE** passed all three steps of the USMLE and was issued a second ECFMG certificate under the name "Igberase Oluwafemi Charles."

In 1995, the ECFMG Committee on Medical Education Credentials became aware that **IGBERASE** had fraudulently applied for and obtained two ECFMG certifications under different names and dates of birth. In December 1995, ECFMG revoked or suspended both ECFMG certifications assigned to **IGBERASE**.

8

ECFMG-000018

ECFMG_RUSS_0000018

Case 2:18-cv-05629-JDW  Document 39-23  Filed 10/07/22  Page 10 of 11
Case 2:18-cv-05629-JDW  Document 85-15  Filed 02/10/22  Page 10 of 11
Case 8:16-cr-00277-PWG  Document 49-1  Filed 11/15/16  Page 2 of 3

In August 1996, **IGBERASE** submitted a third application for ECFMG certification, this time using the name "John Nosa Akoda." Along with this third application, **IGBERASE** submitted to ECFMG a false Nigerian passport in the name of "John Nosakhane Charles Akoda." Between 1996 and 1998, **IGBERASE**, as "John Nosa Akoda," passed all three steps of the USMLE and received ECFMG certification under the "Akoda" name.

After receiving ECFMG certification under the "Akoda" name, **IGBERASE** applied for and was accepted into a residency program at Jersey Shore Medical Center ("JSMC"). In 2000, JSMC learned that the SSN that **IGBERASE** used belonged not to "Akoda" but rather to **IGBERASE**. **IGBERASE** was suspended from JSMC's residency program in August 2000 and ultimately dismissed in November 2000.

In 1999, Individual A applied for and obtained SSN XXX-XX-1623 (the "1623 SSN").

In 2006, **IGBERASE**, using the name "John-Charles Akoda," and the 1623 SSN assigned to Individual A, applied for residency at Howard University. In March 2007, Howard University accepted **IGBERASE** into its residency program, and asked **IGBERASE** to submit evidence of legal residence in the United States. In response, **IGBERASE** submitted a false permanent resident card in the name "N. Akoda, John Charles."

In 2011, after the completion of his residency at Howard University, **IGBERASE**, using the name "Charles John Nosa Akoda" and the 1623 SSN, applied for medical licensure with the Maryland Board of Physicians. In support of this application, **IGBERASE** submitted a false permanent residence card, as well as a false Nigerian passport. In September 2011, the Maryland Board of Physicians granted the requested medical license to **IGBERASE** under the name "Charles John Nosa Akoda," and **IGBERASE** began practicing medicine in the field of obstetrics and gynecology.

In 2012, **IGBERASE**, using the "Akoda" identity, sought and obtained medical privileges at Prince George's Hospital Center ("PGHC") in Maryland. To do so, **IGBERASE** submitted a false permanent residence card, as well as a false Maryland driver's license.

On March 1, 2012, **IGBERASE** submitted a Medicare Enrollment Application to the Center of Medicare and Medicaid Services ("CMS") using the "Akoda" identity and the 1623 SSN. CMS denied **IGBERASE**'s application based, in part, on CMS's determination that **IGBERASE** did not provide an accurate SSN.

On June 9, 2016, law enforcement executed search warrants at **IGBERASE**'s residence, medical practice, and vehicle. From **IGBERASE**'s vehicle, law enforcement seized a Maryland driver's license in the "Akoda" name. From **IGBERASE**'s residence, law enforcement seized (1) a false Social security card for the 1623 SSN in the name "John Charles N. Akoda," (2) a false Nigerian passport for "Akoda," and (3) a false United States visa in the "Akoda" name. Law enforcement also found fraudulent or altered documents related to immigration, medical diplomas, medical transcripts, letters of recommendation, and birth certificates.

9

ECFMG-000019

ECFMG_RUSS_0000019

Throughout the above-referenced scheme, **IGBERASE** also used the 1623 SSN and false documentation to open various bank accounts using the "Akoda" identity.

\* \* \*

I have read this statement of facts and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

11/15/16
Date

Oluwafemi Charles Igberase
a/k/a Charles John Nosa Akoda

I am Oluwafemi Charles Igberase's attorney. I have carefully reviewed the statement of facts with him.

11/15/16
Date

Peter Goldman, Esq.