**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MONIQUE RUSSELL, JASMINE RIGGINS, ELSA M. POWELL AND DESIRE EVANS, | CIVIL ACTION NO. 18-5629 |
| **Plaintiffs,** | |
| v. | |
| EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES, | |
| **Defendant.** | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF IN
OPPOSITION TO CLASS CERTIFICATION**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................................ii

INTRODUCTION .........................................................................................................................1

    I.    ECFMG mischaracterizes the Third Circuit's view of the suitability of issue-class certification ain this case and the advantages of individualized proceedings............................1

    II.   The Reexamination Clause—and, in particular, the Seventh Circuit's decision in *Rhone Poulenc*—cannot bar certification here, because it does not prohibit overlapping presentations of evidence in separate trials. ....................................................................4

    III.  None of the alleged procedural, substantive, constitutional, or statutory rights Defendant enumerates will be impaired by class certification .....................................7

    IV.  The issue-class certification in *Gates* does not resemble the one Plaintiffs propose here.......10

    V.   Defendant's argument regarding predominance and superiority breaks no new ground and is not responsive to the Third Circuit's opinion. ..................................................11

CONCLUSION.............................................................................................................................11

CERTIFICATE OF SERVICE ...................................................................................................13

CERTIFICATE OF COMPLIANCE .........................................................................................14

## INTRODUCTION

ECFMG's supplemental briefing goes well beyond the narrow areas of error the Third Circuit identified (i.e., an absent determination of whether the class satisfied Rule 23(b) and an analysis of *Gates* factors 3 and 9) and attempts to have the Court broadly reevaluate its earlier determination on class certification. It does so based on arguments this Court and the Third Circuit have rejected. And it presents a systematically inaccurate perspective of the Third Circuit's opinion—which actually counsels approving issue-class certification here.

The arguments ECFMG advances in its brief are fairly addressed in Plaintiff's supplemental brief (ECF No. 79). Plaintiffs address those arguments below that may warrant additional comment.

## ARGUMENT

I. **ECFMG mischaracterizes the Third Circuit's view of the suitability of issue-class certification in this case and the advantages of individualized proceedings.**

It is simply false that "[t]he Third Circuit explained that the overall complexity of the case (*Gates* factor 2) and the lack of efficiencies to be gained from an issue class proceeding in light of realistic procedural alternatives (*Gates* factor 3) weigh strongly against issue class certification." ECF No. 80 at 7. On the very page cited by ECFMG for this proposition, the opinion states the opposite:

> Of course, the District Court **may very well be correct** that "there are efficiencies to be gained by certifying a class on these issues . . . Duty is an issue of law. Therefore, it must be decided separately from breach, causation, and damages. <u>It is true that deciding if the Commission had a duty to investigate requires balancing several factors.</u> *Id.* **But none of that requires individual evidence, for each patient shared the same distanced relationship of trust with the Commission. Likewise, breach would require only common evidence:** How much investigating did the Commission do? Did it know or should it have known that Igberase was a fraud? Did it take enough steps to investigate him based on warnings received from various parties, including the New Jersey residency program? Should it have followed up in later years once Igberase was admitted to another residency program? No absent class member would have anything special to add in her

1

individual trial. <u>There will be plenty left for individual proceedings, but **these major issues could be resolved on a class-wide basis.**</u>

*Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259, 272–73 (3d Cir. 2021) (emphasis added) (citations omitted).

The mere fact that issues will remain for resolution in individual proceedings following an issues trial favorable to Plaintiffs is insufficient to defeat certification. The key question is, "Is it more efficient, in terms both of economy of judicial resources and of the expense of litigation to the parties, to decide some issues on a class basis or all issues in separate trials?"[1] As Plaintiffs have explained, repeated full-blown trials after denial of issue certification will needlessly require repeated, expensive presentations of expert evidence and an extensive factual record at trial.

Juries hearing individual claims will not need to hear "virtually all" of the evidence in a class trial "[t]o determine causation, understand who Dr. Akoda was, and even have a basic understanding of the theory of liability against ECFMG." (ECF No. 80 at 7. ECFMG insists on uniformly referring to Igberase as "Dr. Akoda" throughout its supplemental briefing. "Dr. Akoda" does not exist and has never existed.) None of these issues require presentation of expert testimony on standard of care, as will occur at the class trial. "Who Dr. Akoda was" and "the theory of liability against ECFMG" are academic at a mini-trial on causation and damages. What is relevant is whether ECFMG was a cause of a plaintiff's injuries. The jury will well understand Igberase from testimony about a plaintiff's interactions with him. The ins and outs of his fraud and ECFMG turning a blind eye to it will not be necessary to determining causation and damages. Essential background

---

[1] *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359, 361 (7th Cir. 2012), *cert. granted, judgment vacated*, 569 U.S. 1015 (2013), and *judgment reinstated*, 727 F.3d 796. (7th Cir. 2013).

information on ECFMG and its conduct can be provided through special interrogatories and stipulated instructions that the parties, under the Court's direction, can work to craft collaboratively.

ECFMG also falsely asserts that a class jury will have to "consider the entire chain of events relevant to the class member at issue—including any alleged wrongdoing by ECFMG, JSMC, Howard, the Maryland Board of Physicians, the Virginia Board of Medicine, Dr. Chaudry, Dr. Moore, ABOG, and/or law enforcement—that will already have been presented to the issue class jury." ECF No. 80 at 3. First, the "alleged wrongdoing" of another entity has no relevance to the issue class proceeding, and likely none to any individual damages proceeding either. There is no other "alleged wrongdoing" in this case other than ECFMG's. ECFMG has not proffered evidence of "alleged wrongdoing" by any specific individual or entity it identifies. Its Answer does not specifically identify any other entity as negligent. None of its retained experts' reports and discovery responses do, either. It has not deposed any person on its list of other potentially responsible parties. And Plaintiffs do not allege here that any of the individuals ECFMG identifies (e.g., law enforcement, the Maryland Board of Physicians) was negligent or proximately caused injury. The Court should not decline to certify a class based on purely hypothetical liability of another entity that has failed to materialize over the last three years of litigation.

Second, any potential liability on the part of other actors cannot eliminate ECFMG's liability. The relevant inquiry is whether ECFMG's negligence was *a* factual cause of Plaintiffs' injuries, not, as the opinion's dicta implied, whether ECFMG was *the* cause. Pa. SSJI (CIV), 13.20; *Gorman v. Costello*, 2007 PA Super 224, ¶ 13, 929 A.2d 1208, 1212 (2007). ECFMG was the first link, and the only indispensable link, in the causal chain that led to Igberase being able to see patients. ECFMG,

uniquely, certifies foreign medical graduates as eligible to enter residency programs in the United States.

Third, ECFMG can always file a contribution action to recover some of a judgment or settlement from the other entities it identifies if it believes it is shouldering an unfair share of financial responsibility for the outcome here. Under present circumstances—where ECFMG has not sought to implead any other defendant, has made no specific allegations concerning the liability of any other party, and advances no expert testimony to support liability on behalf of any other party— that is the appropriate course for ECFMG to take if it believes it is paying more than its fair share.

## II.    The Reexamination Clause—and, in particular, the Seventh Circuit's decision in *Rhone-Poulenc*—cannot bar certification here, because it does not prohibit overlapping presentations of evidence in separate trials.

Plaintiffs' previous discussion of the Reexamination Clause and its interplay with *Gates* rebuts all of the arguments ECFMG advances on this issue. ECF No. 79 at 12-18. Plaintiffs write here to discuss *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir. 1995), the principal case Defendant cites. The present case suffers from none of the infirmities that plagued *Rhone-Poulenc*. And the present case hardly threatens to bankrupt an industry manufacturing lifesaving pharmaceuticals, unlike *Rhone-Poulenc*.

*Rhone-Poulenc* concerned a nationwide class action lawsuit, brought on behalf of people suffering from hemophilia who were HIV-positive, against pharmaceutical companies who manufactured blood solids that contained clotting factors. *Id.* at 1294. The case involved approximately 12,000 potential claimants—twelve times the number in this case. *Id.* at 1296. It came before the Seventh Circuit on a petition for writ of mandamus following certification under Rule 23(c)(4). *Id.* at 1294. The district court certified particular issues of negligence concerning the major

4

theories of liability advanced by the plaintiffs. If the plaintiffs prevailed, class members would use the verdict in individual tort suits around the country and attempt to use collateral estoppel to block relitigation of the issue of negligence (which, the appellate court found, would not work in the absence of a final judgment). *Id.* at 1297.

In writing for the court, Judge Richard Posner elicited three primary concerns, "none of them necessarily sufficient in itself but cumulatively compelling" (*id.* at 1299; *see also id.* at 1304), which persuaded the court that the district court had abused its discretion:

(1)      "a concern with forcing these defendants to stake their companies on the outcome of a single jury trial, or be forced by fear of the risk of bankruptcy to settle even if they have no legal liability," where defendants had prevailed in 12 of the first 13 trials involving similar claims;[2]

(2)      the jury would decide a novel "serendipity theory" under a "legal standard that does not exist anywhere in the world" akin to the sort of "general" federal common law rejected by *Erie*; and

(3)      Seventh Amendment concerns. The district court ordered the first jury would "determine whether one or more of the defendants was negligent under one of the two theories" (i.e., ordinary negligence and the "serendipity theory"). *Id.* at 1303. A subsequent jury would then

---

[2] The court estimated that the defendants, following class certification, would "suddenly be facing thousands of plaintiffs" and "might, therefore, easily be facing $25 billion in potential liability (conceivably more), and with it bankruptcy." *Id.* at 1298. They thus would be "under intense pressure to settle," making the final judgment unreviewable. *Id.* Thus, the court concluded, "it is not a waste of judicial resources to conduct more than one trial, before more than six jurors, to determine whether a major segment of the international pharmaceutical industry is to follow the asbestos manufacturers into Chapter 11." *Id.* at 1300.

consider whether the plaintiffs were comparatively negligent and decide proximate causation. *Id.* The opinion contains a lone assertion that proximate causation "overlaps the issue of the defendants' negligence even when the state's law does not (as many states do) make the foreseeability of the risk to which the defendant subjected the plaintiff an explicit ingredient of negligence." *Id.* It then goes on to say that the class jury might find the defendants negligent, but a subsequent jury might find the defendant's action was not a proximate cause of the injury. *Id.* That is the extent of the court's analysis of the matter.

Here, none of these concerns—which the court repeatedly declined to say were sufficient in themselves to warrant mandamus—preclude certification. As to concerns (1) and (2), ECFMG does not argue—and there is no credible argument—that the lawsuit will force ECFMG into bankruptcy or that ECFMG is likely to succeed on the merits. And there is no prospect the Court will adopt a legal standard unmoored from state tort law.

As to concern (3), this case does not present Reexamination Clause concerns, as Plaintiffs extensively argued in their principal supplemental brief. ECF No. 79 at 12-18. The Reexamination Clause does not apply to the issue of duty, since the Court will determine the existence of a duty. The foreseeability prong of the duty analysis thus cannot be "reexamined" by a subsequent jury. Furthermore, ECFMG's argument again improperly conflates the foreseeability inquiry appropriate to resolving duty with the separate and distinct inquiry appropriate to resolving proximate causation, which this Court noted and rejected in its initial class certification decision. ECF No. 57 at 16-17. Reexamination Clause problems also do not attend the issue of breach. The class jury will not decide "negligence," but rather the issue of whether ECFMG breached its duty to class members. Subsequent juries will not decide these issues.

6

Even if it were on point, "[b]y and large, other courts have not picked up and run with Judge Posner's Seventh Amendment concerns." *Anderson Living Tr. v. WPX Energy Prod.*, LLC, 306 F.R.D. 312, 416 (D.N.M.), *adhered to on reconsideration*, 312 F.R.D. 620 (D.N.M. 2015). "Most other commentators and several courts have also rejected Posner's Seventh Amendment arguments." Daniel Klerman, *Posner and Class Actions*, 86 U. Chi. L. Rev. 1097, 1107-08 (2018). And Judge Posner embraced the utility and constitutionality of common issue classes that, like this one, did not threaten to bankrupt a critical industry. *See, e.g.*, *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 492 (7th Cir. 2012); *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013); *Mejdrech v. Met-Coil Systems Corp.*, 319 F.3d 910, 912 (7th Cir. 2003).

## III.  None of the alleged procedural, substantive, constitutional, or statutory rights Defendant enumerates will be impaired by class certification.

Plaintiffs address the alleged undue settlement pressure of class certification in section III of their principal supplemental brief. (ECF No. 79 at 8.) Plaintiffs add that counsel's assertion that it has strong defenses (an opinion the Third Circuit did not advance) hardly makes class certification improper or unfair. The argument improperly injects merits questions into class certification. *See Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013).

Moreover, "pressure" does not mean "undue pressure." As Judge Posner observed in *Rhone-Poulenc*, "We do not want to be misunderstood as saying that class actions are bad because they place pressure on defendants to settle. That pressure is a reality, but it must be balanced against the undoubted benefits of the class action that have made it an authorized procedure for employment by federal courts." *Rhone-Poulenc*, 51 F.3d at 1299. Similarly, in later affirming a district court's

certification under Rule 23(c)(4) of an issue class on whether there was unlawful contamination and the extent of the contamination, Judge Posner explained:

> When enormous consequences turn on the correct resolution of a complex factual question, the risk of error in having it decided once and for all by one trier of fact rather than letting a consensus emerge from several trials may be undue.
>
> This is not such a case. First, the two questions that the judge has set for class treatment—whether there was unlawful contamination and what the geographical scope of the contamination was—are not especially complex. Second, even if these questions are answered against Met-Coil, the consequences for it will not be catastrophic. The individual class members will still have to prove the fact and extent of their individual injuries. The need for such proof will act as a backstop to the class-wide determinations.

*Mejdrech v. Met-Coil Systems Corp.*, 319 F.3d 910, 912 (7th Cir. 2003) (citations omitted). Plainly this case is also not one where enormous consequences turn on resolution of a complex factual question. This is a damages lawsuit by 1,000 or fewer plaintiffs against an insured defendant with over $168 million in assets and over $90 million in revenue for FY2019.[3]

For the first time, ECFMG proposes that the Court conduct numerous full-blown bellwether trials. (ECF No. 80 at 12. The only other "realistic procedural alternative" proposed is coordinating discovery between different proceedings, *id.*, which is of little moment given the advanced stage of discovery.) Repetitive individual trials, requiring repetitive, costly expert testimony and trial costs that may well exceed the recovery of an individual plaintiff, offer no advantage over the proposed issue-class action. Again, the central question before the Court is one formulated by Judge Posner: "Is it more efficient, in terms both of economy of judicial resources and of the

---

[3] *See* Educational Commission for Foreign Medical Graduates, Form 990 for the period ending December 31, 2019, at 1, *available at* https://tinyurl.com/2p8z64rt.

expense of litigation to the parties, to decide some issues on a class basis or all issues in separate trials?"[4] As Plaintiffs have argued extensively, trying duty and breach on a class basis will afford numerous advantages and efficiencies over trying the same issues "again, and again, and again." ECF No. 57 at 26.

Finally, choice of law cannot bar class certification here. First, ECFMG confuses the burden of showing certification is warranted with the burden of addressing conflicts of law. Plaintiffs bear the latter burden only when the defendant first demonstrates that multiple bodies of law apply. *See, e.g.*, Principles of the Law of Aggregate Litigation § 2.05 cmt. f (2020); Patrick Woolley, *Choice of Law and the Protection of Class Members in Class Suits Certified Under Federal Rule of Civil Procedure 23(b)(3)*, 2004 Mich. St. L. Rev. 799, 811 (2004). Under Pennsylvania law, a class-action defendant has the burden of showing that the law of another state applies or, if it does, that a true conflict exists. *See, e.g.*, *Parsky v. First Union Corp.*, 51 Pa. D. & C.4th 468, at 12 & n.28 (Com. Pl. 2001). Defendant has not shown that multiple states' laws apply and has certainly not shown that a true conflict exists.

This Court has already determined that Pennsylvania law applies to the Plaintiffs' claims. ECFMG gives the Court no reason to change its mind. Its sole new argument on this score on remand is that "difficult constitutional questions would arise under the Commerce Clause" if Pennsylvania law is applied to the claims of out-of-state plaintiffs. (ECF No. 80 at 9.) The sole case it cites concerns whether a Connecticut beer-pricing statute unconstitutionally discriminated against interstate commerce. *Healy v. Beer Inst., Inc.*, 491 U.S. 324 (1989). *Healy* nowhere discusses choice of law. ECFMG never shows how applying Pennsylvania law to a Pennsylvania corporation's conduct

---

[4] *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359, 361 (7th Cir. 2012), *cert. granted, judgment vacated*, 569 U.S. 1015 (2013), and *judgment reinstated*, 727 F.3d 796. (7th Cir. 2013).

in Pennsylvania would discriminate against interstate commerce. Even if the Court determined another state's law applied and a true conflict existed, it could create a subclass using Rule 23(c)(5) and instruct the jury on any meaningful differences in the applicable law (differences the Court and the parties have not found).

**IV.   The issue-class certification in *Gates* does not resemble the one Plaintiffs propose here.**

ECFMG incorrectly analogizes the issue certification on duty and breach in this case to that proposed in *Gates*. In *Gates*, the class sought certification only on medical monitoring and property damage claims, solely regarding only one among several contaminants (vinyl chloride) and exposure through only one of several alleged pathways (via a shallow aquifer into the air). *Gates v. Rohm and Haas Co.*, 655 F.3d 255, 259 (3d. Cir. 2011). The class trial would only have determined whether defendants discharged vinyl chloride into the lagoon that seeped into the shallow aquifer and whether vinyl chloride evaporated into the air from the shallow aquifer. *Gates*, 655 F.3d at 274. The Third Circuit concluded resolving that issue would not substantially aid resolution of liability and causation.

The issue class certification proposed here, by contrast, will resolve the issues of duty and breach of duty as to all class members on all theories. Unlike the narrow issues proposed for class treatment in *Gates*, which would have left whole claims untouched for resolution, the class proceedings in this matter will resolve two major elements of each cause of action for all plaintiffs.

**V.    Defendant's argument regarding predominance and superiority breaks no new ground and is not responsive to the Third Circuit's opinion.**

Defendant erroneously claims that the issue of duty and breach cannot be resolved on a classwide basis, because class members encountered Akoda at different times. Defendant ignores the Third Circuit's explicit statement to the contrary: "It is true that deciding if the Commission had a duty to investigate requires balancing several factors. But none of that requires individual evidence, for each patient shared the same distanced relationship of trust with the Commission. Likewise, breach would require only common evidence." *Russell*, 15 F.4th at 272. Here, ECFMG's relevant course of conduct relative to the claims of each plaintiff is the same: ECFMG negligently certified Igberase and then failed to act on an ongoing basis from 2000 until 2016, despite multiple opportunities to do so. Whether ECFMG acted reasonably in failing to act upon an alleged request from law enforcement in 2013 is immaterial: it should never have certified Igberase in the first place. Having certified him, it should have acted long before 2013 to revoke his certification and warn hospitals, medical boards, and patients.

Finally, ECFMG's argument again conflates foreseeability as a question of proximate cause with foreseeability as a question of duty, which the district court observed in rejecting this same argument in opposition to Plaintiffs' initial motion for class certification. ECF No. 57 at 16-17.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court adhere to its initial class certification decision.

11

Dated: <u>January 14, 2022</u>

JANET, JANET & SUGGS, LLC

<u>/s/ Patrick Thronson</u>
  Patrick A. Thronson
  Brenda A. Harkavy
  4 Reservoir Circle, Suite 200
  Baltimore, MD 21208
  (410) 653-3200

LAW OFFICES OF PETER G. ANGELOS,
P.C.
  Paul M. Vettori
  One Charles Center
  100 N. Charles Street, 20th Floor Baltimore,
  Maryland 21201
  (410) 649-2000

SCHOCHOR, FEDERICO AND STATON
  Brent Ceryes
  The Paulton
  1211 St. Paul Street
  Baltimore, Maryland 21202
  (410) 234-1000

Respectfully submitted,

CONRAD O'BRIEN PC
  Nicholas M. Centrella
  Robin S. Weiss
  1500 Market Street, Suite 3900
  Philadelphia, PA 19102-2100
  (215) 864-9600

THE COCHRAN FIRM
Karen E. Evans, R.N., J.D.
David Haynes
1100 New York Ave, N.W.
Washington, D.C. 20005
(202) 682-5800

Z LAW, LLC
  Cory L. Zajdel
  2345 York Rd. Suite B-13 Timonium, MD
  21093
  (443) 213-1977

*Attorneys for Plaintiffs, on behalf of themselves and
all others similarly situated*

12

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on January 14, 2022, I caused the foregoing document to be served upon all

counsel of record through the Court's CM/ECF filing system.

Dated: <u>January 14, 2022</u>                       <u>/s/ *Patrick Thronson*</u>
                                                       Patrick A. Thronson

## **CERTIFICATE OF COMPLIANCE**

I certify that the foregoing document contains 3,424 words, excepting the caption, table of contents, signature block, and certificates, in compliance with the Court's Scheduling Order of November 9, 2021 (ECF No. 77).


Dated: <u>January 14, 2022</u>                                 <u>/s/ *Patrick Thronson*</u>
                                                                              Patrick A. Thronson

14