**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MONIQUE RUSSELL, JASMINE RIGGINS, ELSA M. POWELL, and DESIRE EVANS,

        Plaintiffs,

  v.

EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES,

        Defendant.

Civil Action No. 18-5629

Honorable Joshua D. Wolson

## <u>DEFENDANT'S REPLY IN SUPPORT OF<br>MOTION FOR SUMMARY JUDGMENT</u>

Dated: January 28, 2022

William R. Peterson (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street
Suite 4000
Houston, TX 77002
Telephone:   +1.713.890.5000
Facsimile:   +1.713.890.5001
william.peterson@morganlewis.com

Brian W. Shaffer, Bar No. 78851
Elisa P. McEnroe, Bar No. 206143
Matthew D. Klayman, Bar No. 319105
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: +1.215.963.5000
Facsimile: +1.215.963.5001
brian.shaffer@morganlewis.com
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for Educational Commission for Foreign Medical Graduates*

# <u>TABLE OF CONTENTS</u>

**Page**

I.     Plaintiffs Cannot Recover for Emotional Distress from Learning Information. ............... 2

    A.     The "zone of danger" allows recovery only with fear of physical impact............. 3

    B.     The "physical impact" exception allows recovery only when emotional distress accompanies contemporaneous physical impact. .................................... 3

II.    Plaintiffs Cannot Demonstrate that Pennsylvania Imposes a Duty on ECFMG................ 4

    A.     Plaintiffs misread Restatement (Second) of Torts Section 324A. ........................ 5

    B.     This Court cannot create a new duty under Pennsylvania law. ........................... 6

        1.     Relationship between the parties. .............................................................. 7

        2.     Social Utility of the Actor's Conduct. ....................................................... 7

        3.     Nature of the Risk and Foreseeability of the Harm. .................................. 7

        4.     Consequences of imposing a duty upon the actor...................................... 8

        5.     The overall public interest in the proposed solution................................. 9

III.   Plaintiffs Have Failed to Identify Legally Sufficient Evidence of Proximate Causation................................................................................................................... 10

IV.    Plaintiffs Have Failed to Identify Legally Sufficient Evidence of But-For Causation................................................................................................................... 10

V.     Plaintiffs' Consent Bars Their Claims. ................................................................... 12

VI.    Plaintiffs Fail to Identify Evidence of Compensable Emotional Distress. ..................... 12

VII.   Evans' and Powell's Claims Are Barred by the Statute of Limitations......................... 14

CONCLUSION................................................................................................................ 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...................................................................................................12

*Doe 56 v. Mayo Clinic Health Sys.--Eau Claire Clinic, Inc.*,
  880 N.W.2d 681 (Wis. 2016) ......................................................................................15

*Doe v. Philadelphia Cmty. Health Alternatives AIDS Task Force*,
  745 A.2d 25 (Pa. Super. 2000), *aff'd*, 767 A.2d 548 (Pa. 2001) ..................................4

*Evans v. Liberty Mut. Ins. Co.*,
  398 F.2d 665 (3d Cir. 1968) ..........................................................................................5

*Feleccia v. Lackawanna Coll.*,
  215 A. 3d 3 (Pa. 2019) ..................................................................................................7

*Kazatsky v. King David Mem'l Park, Inc.*,
  527 A.2d 988 (Pa. 1987) ...............................................................................................3

*Love v. Cramer*,
  606 A.2d 1175 (Pa. Super. Ct. 1992) ..........................................................................14

*Mazzagatti v. Everingham by Everingham*,
  516 A.2d 672 (Pa. 1986) .............................................................................................10

*Nicolaou v. Martin*,
  195 A.3d 880 (Pa. 2018) .............................................................................................15

*Niederman v. Brodsky*,
  261 A.2d 84 (Pa. 1970) .............................................................................................3, 4

*Patentas v. United States*,
  687 F.2d 707 (3d Cir. 1982) ..........................................................................................5

*Potere v. City of Philadelphia*,
  112 A.2d 100 (Pa. 1955) ...............................................................................................4

*Rice v. Diocese of Altoona-Johnstown*,
  255 A.3d 237 (2021) ..............................................................................................2, 14

*Schmidt v. Boardman Co.*,
  11 A.3d 924 (Pa. 2011) .................................................................................................3

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Seebold v. Prison Health Servs, Inc.*,
    618 Pa. 632 (2012)............................................................................................7

*Sheridan v. NGK Metals Corp.*,
    609 F.3d 239 (3d Cir. 2010)............................................................................6

*Shumosky v. Lutheran Welfare Servs. of Ne. PA, Inc.*,
    784 A.2d 196 (Pa. Super. Ct. 2001)..............................................................11

*SodexoMAGIC, LLC v. Drexel Univ.*,
    19-1028, 2022 WL 176427 (3d Cir. Jan. 20, 2022)......................................13

*Stoddard v. Davidson*,
    513 A.2d 419 (Pa. Super. 1986).......................................................................3

*Travelers Indem. Co. v. Dammann & Co.*,
    594 F.3d 238 (3d Cir. 2010)............................................................................6

*Tulp v. Educ. Comm'n for Foreign Med. Graduates*,
    824 F. App'x 134 (3d Cir. 2020)....................................................................7

*Walters v. UPMC Presbyterian Shadyside*,
    187 A.3d 214 (Pa. 2018).......................................................................7, 8, 9, 10

*Williams v. Guzzardi*,
    875 F.2d 46 (3d Cir. 1989)..............................................................................3

**Other Authorities**

Restatement (Second) of Torts Section 324A.......................................................1, 5, 6

Plaintiffs' arguments in response to ECFMG's Motion for Summary Judgment are a moving target. For example, despite repeatedly disclaiming—both to this Court and the Third Circuit—any recovery based on the medical treatment provided by Dr. Akoda, Plaintiffs invoke their individual treatments when they believe it helps them. *See, e.g.*, Resp. at 13 ("In some instances, Igberase engaged in patently offensive physical contact."); *see also* Resp. at 19-20 & 38 (alleging Dr. Akoda committed "bodily harm"). But to avoid the statute of limitations (and in seeking class certification), they simultaneously deny their claims have anything to with their treatment. *See*, *e.g.*, Resp. at 40 (claims arise from "learning that 'Dr. Akoda' was a fictious persona"). Similarly, Plaintiffs truthfully concede that "Akoda and Igberase are the same person," Resp. at 4, but later disingenuously assert that the individual who treated them "had no medical license, was not board certified, and was not employed by any hospital." Resp. at 35.

Plaintiffs must perform these contortions because the undisputed facts confirm that as a matter of law, their claims against ECFMG are meritless. Most obviously, there is no evidence that Plaintiffs suffered either (1) fear from being in the "zone of danger" of a physical harm; or (2) emotional distress accompanying contemporaneous physical impact. Their theory—emotional distress arising from information they learned years after their contact with Dr. Akoda—is precisely what Pennsylvania's limits on recovery of emotional distress preclude.

Plaintiffs' responses to ECFMG's other arguments fare no better. Plaintiffs' misread Section 324A as expanding a parties' obligations, and their request for this Court to impose a new common-law duty fails to satisfy the strict test for creating a duty under Pennsylvania law and is inconsistent with this Court's role under *Erie*. Plaintiff's proximate causation argument cannot overcome the lengthy chain between any of ECFMG's actions and their treatment by Dr. Akoda and the undisputed evidence concerning the roles of the hospitals, employers and licensing boards that allowed Dr. Akoda to treat Plaintiffs. And with respect to but-for causation, Plaintiffs cannot

deny—and have no response to the fact—that any emotional distress was caused by their misunderstanding of the facts and not by the true state of affairs. Nor does the admissible evidence submitted by Plaintiffs rise to the level of compensable emotional distress.

Finally, with respect to the statute of limitations, Plaintiffs simply ignore the governing Pennsylvania Supreme Court authority that ECFMG cited: *Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237 (2021). It is irrelevant that Plaintiffs Evans and Powell did not know (or had not suffered) the full extent of their injuries. Evans and Powell both testified that they had knowledge of "at least some form of significant harm," *id*. at 247, which started the accrual of their claims, well outside the limitations period. Plaintiffs do not offer any response to the fact that under Rice v. Diocese, the claims of Evans and Powell are barred by limitations.

I. **Plaintiffs Cannot Recover for Emotional Distress from Learning Information**.

Pennsylvania permits recovery of damages for negligently inflicted emotional distress in very limited circumstances. Mot. at 15–17. Plaintiffs' claims for "emotional distress that has resulted from their discovery that the individual they knew as 'Dr. Akoda' was in fact, Oluwafemi Igberase," Resp. at 39, years after their treatment by Dr. Akoda, falls far outside these limits.

To their credit, Plaintiffs do not invoke the "special relationship" theory, which ECFMG explained is inapplicable here. *See* Mot. at 16–17. Instead, Plaintiffs rely on the "zone of danger" (at 13–14) exception and "physical impact" exception (at 11–13). But neither exception applies because of significant time—years—separating Plaintiffs' treatment by Dr. Akoda from their alleged emotional distress. Plaintiffs' request (at 13–15) that this Court ignore the limits that Pennsylvania law places on emotional recovery is revealing: Plaintiffs know that under Pennsylvania law as it stands, they cannot recover, and this Court, as a federal court sitting in diversity, must take state law as it finds it. This Court cannot create novel theories of recovery

under state law, as Plaintiffs request.  *See infra* pp. 6–10.

      **A.**    **The "zone of danger" allows recovery only with fear of physical impact**.

The "zone of danger" exception is inapplicable here.  It allows recovery only for a plaintiff who was (1) "in personal danger of physical impact;" and (2) "where plaintiff actually did fear the physical impact."  *Niederman v. Brodsky*, 261 A.2d 84, 90 (Pa. 1970).  Plaintiffs speak only to the first requirement.  *See* Resp. at 13 (arguing that the conduct "presented substantial risk of physical harm to the Plaintiffs").  But they do not—and cannot—argue that their emotional distress arose from the fear of harm.  To the contrary, they admit that at the time of treatment, they were unaware of any risk related to the information about Dr. Akoda that they learned years later.  *See* Resp. 8–10; Pls.' Ex. 34 at ¶¶ 3–4; Pls.' Ex. 35 at ¶ 3.  By their own theory, Plaintiffs did not know they were in a "zone of danger" and thus cannot recover for emotional distress under the exception.

      **B.**    **The "physical impact" exception allows recovery only when emotional distress accompanies contemporaneous physical impact**.

Plaintiffs rely primarily on the theory that their treatment by Dr. Akoda constituted a "physical impact" that allows them to recover for emotional distress.  Resp. at 11–13.  Plaintiffs cannot prevail under this theory because the "physical impact" occurred years before their alleged emotional distress.  The impact need not occur "simultaneously with the negligent act," Resp. at 12 (quoting *Stoddard v. Davidson*, 513 A.2d 419, 422 (Pa. Super. 1986)), but the impact and **emotional distress** must be "contemporaneous."  *Schmidt v. Boardman Co.*, 11 A.3d 924, 948 (Pa. 2011) (noting recovery for "trauma derived from a contemporaneous physical impact").

The emotional distress must "accompany" the physical impact.  *See, e.g., Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 992 (Pa. 1987) (allowing recovery for "emotional distress only if it was accompanied by a physical injury or impact"); *Williams v. Guzzardi*, 875 F.2d 46, 51 (3d Cir. 1989) (same); *Niederman v. Brodsky*, 261 A.2d 84, 86 (Pa. 1970) (noting that the rule allowed recovery, when there was an impact, for "accompanying fright"); *Potere v. City of*

*Philadelphia*, 112 A.2d 100, 104 (Pa. 1955) (allowing recovery for "bodily injuries, even though trivial or minor in character, which are accompanied by fright or mental suffering").

Plaintiffs' alleged emotional distress did not accompany the alleged "physical impact." The two were not "contemporaneous" but, according to Plaintiffs, occurred years apart. Pennsylvania does not allow recovery for emotional distress unaccompanied by a contemporaneous physical impact. *See also Doe v. Philadelphia Cmty. Health Alternatives AIDS Task Force*, 745 A.2d 25, 29 (Pa. Super. 2000), *aff'd*, 767 A.2d 548 (Pa. 2001) (holding that "vaccines, which were not the cause of any lasting physical or emotional effects" did not constitute a "physical impact" allowing recovery for subsequent emotional distress based on fear of HIV).

Absent one of these narrow exceptions, Pennsylvania law does not permit recovery for emotional distress from learning information. Because Plaintiffs did not suffer a contemporaneous physical impact accompanying any emotional distress and did not feel fear because they were within a "zone of danger," their claims for emotional distress fail as a matter of law.

## II.   Plaintiffs Cannot Demonstrate that Pennsylvania Imposes a Duty on ECFMG.

Plaintiffs' duty arguments are another moving target: they never squarely identify the precise legal duty that they ask this Court to impose on ECFMG. *See Resp*. at 16 ("duty of care"); Resp. at 16 ("owes a duty to a Plaintiff"); Resp. at 18 ("failure to exercise due care"); Resp. at 25 ("This factor clearly favors imposition of a duty to [sic] ECFMG."). To the extent they describe it, they do so inconsistently. *See* Resp. at 18 ("duty to provide appropriate credentialing of medical providers"); Resp. at 28 ("a duty to investigate and ultimately revoke the certification"); Resp. at 29 ("a duty to require ECFMG to revoke certifications found to have been obtained through fraud"). Without plainly and unambiguously articulating the duty they seek to impose on ECFMG, Plaintiffs necessarily failed to show that Pennsylvania recognizes a duty that would allow their claims for emotional distress to proceed. In any event, neither Section 324-A of the Restatement

nor the *Althaus* factors would support a legally cognizable duty on the part of ECFMG to Plaintiffs.

### A.    Plaintiffs misread Restatement (Second) of Torts Section 324A.

Section 324A of the Restatement (Second) of Torts imposes a duty to exercise reasonable care on a party "who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person."  Restatement (Second) of Torts § 324A.  The duty under Section 324A does not extend beyond the specific services rendered: "The foundation of the good samaritan rule [Sections 323 and 324A] is that the defendant specifically has undertaken to perform the task that he or she is charged with having performed negligently." *Patentas v. United States*, 687 F.2d 707, 716 (3d Cir. 1982).  "In other words, the scope of a good samaritan's duty is measured by the scope of his or her undertaking." *Id*.

In *Evans v. Liberty Mutual Insurance Co.*, 398 F.2d 665, 666-67 (3d Cir. 1968), applying Section 324A under Pennsylvania law, a plaintiff sought to hold a defendant liable for a negligent inspection.  *Id*.  The defendant inspected some machines but not the particular machine at issue. *Id*.  The decision held that "absent a showing either that the defendant had undertaken to inspect the specific instrument causing the injury or to inspect the entire plant of which that instrument was a part, the employee could not recover." *Patentas*, 687 F.2d at 716 (describing *Evans*).

Plaintiffs err by seeking to impose responsibilities on ECFMG under Section 324A beyond the specific tasks that ECFMG undertook to perform.  For purposes of summary judgment, Plaintiffs' description of the narrow and limited services ECFMG provided to third parties can be accepted as correct: "ECFMG undertook to provide primary source verification, along with testing of basic competence, for the benefit of residency programs, hospitals, and medical boards, who relied upon ECFMG's services in granting IMGs licensure and privileges."  Resp. at 17.  Thus, the only "undertakings" by ECFMG that could give rise to a duty under Section 324A are (1) primary source verification and (2) testing of basic competence.  Plaintiffs do not argue—much less submit

evidence—that ECFMG failed to act with reasonable care in performing these tasks.

Instead, Plaintiffs erroneously seek to expand ECFMG's duty under Section 324A beyond these specific tasks and into a general duty of "appropriate credentialing." Resp. at 18. But Section 324A duty concerns only the specific tasks ECFMG allegedly did "for the benefit of third parties"—it cannot be used, as Plaintiffs attempt, to impose a duty to do **more**, requiring background checks, immigration status review, employment vetting, and other actions as a part of "credentialing" generally.[1]  Thus, Section 324A offers no support for Plaintiffs' duty theory.

### B.      This Court cannot create a new duty under Pennsylvania law.

Because Section 324A does not apply, any duty Plaintiffs seek to impose on ECFMG could arise only under Pennsylvania common law, based on the *Althaus* factors.  Plaintiffs do not deny that no case has ever held that ECFMG owes a duty to patients of international medical graduates ("IMGs").  Plaintiffs thus ask this Court to create a new duty under state law.

The Third Circuit forbids this Court from creating novel theories of recovery: "Unlike our role in interpreting federal law, we may not 'act as a judicial pioneer' in a diversity case." *Sheridan v. NGK Metals Corp*., 609 F.3d 239, 254 (3d Cir. 2010) (quotation omitted).  If there is any uncertainty about state law, this Court must "opt for the interpretation that restricts liability, rather than expands it, until the [Pennsylvania Supreme Court] decides differently." *Travelers Indem. Co. v. Dammann & Co*., 594 F.3d 238, 253 (3d Cir. 2010) (citation omitted).

And Pennsylvania does not "enter into the creation of new common law duties lightly." *Feleccia v. Lackawanna Coll*., 215 A. 3d 3, 13 (Pa. 2019).  Pennsylvania courts will create new

---

[1] To the extent that Plaintiffs rely on ECFMG's investigation of credentialed IMGs as an "undertaking," they have no evidence that ECMFG's investigation (a) increased a risk of harm (it did not); (b) was in performance of a duty owed by third parties to Patients; or (c) was relied on by third parties or Plaintiffs. Restatement (Second) of Torts § 324A. To the contrary, the evidence shows that third parties relied on ECFMG only for (1) primary source verification; and (2) testing of basic competence.  *See* ECFMG SUMF at ¶¶ 3, 7; Pls. Resp. SUMG at ¶¶ 3, 7.

duties only when "the justifications for and consequences of judicial policymaking are reasonably clear with the balance of factors favorably predominating." *Seebold v. Prison Health Servs, Inc.*, 618 Pa. 632, 653-54 (2012).  Here, the *Althaus* factors weigh against creation of a duty.

### 1.    Relationship between the parties.

Plaintiffs do not deny that they had no relationship with ECFMG.  Mot. at 18.  In *Walters v. UPMC Presbyterian Shadyside*, 187 A.3d 214 (Pa. 2018), on which Plaintiffs rely heavily (at 23-29), the defendants "were in respective master-servant relationships with [the doctor] when the putative duty to report arose."  187 A.3d at 234.  No such relationship exists here—Dr. Akoda was not an employee or agent of ECFMG—and this factor weighs strongly against duty.

### 2.    Social Utility of the Actor's Conduct.

Plaintiffs err (at 25) by focusing on the social utility of Dr. Akoda's conduct, rather than ECFMG's conduct.  *Walters* recognized the value of "limiting . . . health care providers' liability exposure and managing health care costs," *Walters*, 187 A.3d at 235, both of which would be threatened by accepting Plaintiffs' boundless theory that ECFMG owes a duty to every patient of every IMG in the country.  And Pennsylvania recognizes a significant interest in providing due process rights to accused individuals where a decision by private organization could "depriv[e] a member or prospective member of substantial economic or professional advantage." *Tulp v. Educ. Comm'n for Foreign Med. Graduates*, 824 F. App'x 134, 137 (3d Cir. 2020) (quotation omitted).  Imposing the duty sought by Plaintiffs would create incentives to avoid liability by revoking certifications when any suspicion arises, undermining the interest that Pennsylvania recognizes in protecting individuals (like IMGs) from wrongly suffering economic or professional injuries.

### 3.    Nature of the Risk and Foreseeability of the Harm.

Dr. Akoda was accepted into and completed a residency program, was licensed to practice medicine by multiple states, and received board certification.  Plaintiffs present no evidence that

he was incompetent as a physician, and Plaintiffs are not asserting any claims based on negligent treatment. Plaintiffs have identified no evidence of any risk that they would have been treated by an incompetent physician. Nor do Plaintiffs present any evidence that Dr. Akoda's deception—not merely of ECFMG but also residency programs, employers, hospitals, licensing boards, specialty boards, and private practitioners (and other professionals he interacted with on a daily basis)—was foreseeable or that it was foreseeable that none of these entities would take action to bar him from treating Plaintiffs. The absence of any risk and the tenuous nature and unforeseeability of the alleged harm weigh against imposing a duty on ECFMG.

#### 4.    Consequences of imposing a duty upon the actor.

Plaintiffs' settlement demands belie their assertion that a duty will not impose "great cost" on ECFMG. Resp. at 28. And it is false. A quarter of U.S. doctors are ECFMG Certified. Mot. at 22. Imposing any duty on ECFMG to any patient treated by any IMG would be extraordinary.

Far from supporting Plaintiffs, *Walters v. UPMC Presbyterian Shadyside* confirms that Pennsylvania would not recognize a duty. In *Walters*, the Pennsylvania Supreme Court considered imposing a duty on two different entities: a hospital (UPMC Presbyterian) and a staffing agency (Maxim). 187 A.3d at 219. Although the decision held that the hospital owed a duty, the staffing agency did not. *Id.* at 242–43. The duty Plaintiffs seek to impose on ECFMG resembles the duty rejected against the staffing company far more closely than the duty imposed on the hospital. The hospital had preexisting reporting duties under federal law, which "illuminate[d] a way to meaningfully circumscribe its duty." 187 A.3d at 239. But for the staffing agency, the duty could not be squarely defined, and thus "the quantum, breadth, and durability of liability [it] would face for the violation of such a duty somewhat outweighs the foreseeable risk of harm." *Id*.

The ill-defined, indeterminate nature of the duty that Plaintiffs seek to impose on ECFMG also makes it like the one that the Pennsylvania Supreme Court refused to impose on the staffing

agency in *Walters*.  Indeed, if a duty were to be imposed here, then any investigation by ECFMG of any IMG could always be subject to second-guessing by plaintiffs' lawyers (and their paid experts).  This is precisely what *Walters* rejected as "too amorphous" with "potential consequences . . . too difficult to anticipate."  187 A.3d at 242.  The generalized, ill-defined duty to investigate that Plaintiffs seek to impose on ECFMG is foreclosed by *Walters*.

         **5.     The overall public interest in the proposed solution**.

         In discussing the public interest, Plaintiffs again recast their proposed duty, suggesting that they seek only "a duty to require ECFMG to revoke certifications found to have been obtained through fraud."  Resp. at 29.  If this Court accepts this framing of the duty, it should grant ECFMG summary judgment on breach.  Plaintiffs concede that ECFMG did not "find" that the certificate was obtained through fraud—their theory of liability is based on ECMFG's failure to uncover Dr. Akoda's fraud earlier.  *See* Resp. at 6 ("Kelly did not think there was enough information[.]").

         In truth, Plaintiffs seek to impose a duty on ECFMG to "further investigate" potential fraud committed by IMGs, Resp. at 21, with the threat of potential civil liability to innumerable patients treated by the IMG in the event that an investigation (in hindsight) is found to be inadequate.

         Plaintiffs cannot seriously argue—and they do not—that imposing this duty is in the public interest.  Imposing such liability on ECFMG would require a far more heightened screening process, restricting the ability of IMGs to practice medicine and harming the public's interest in "efficient, affordable care."  *Walters*, 187 A.3d at 239.  And given the role of state governments in physician licensing, to the extent any State believes that greater scrutiny of IMG's backgrounds is warranted, the State is free to mandate or perform such an investigation itself.  But such a decision should come from the political branches of a State, not from this Court.

         None of the *Althaus* factors supports the creation of a new common-law duty on ECFMG, and *Walters* squarely forecloses such a duty.  At a minimum, the factors do not so strongly favor

creation of duty as to eliminate all uncertainty under state law.  Sitting in diversity, this Court cannot be a "judicial pioneer" and must refuse Plaintiffs' invitation to create a novel duty.

## III.    Plaintiffs Have Failed to Identify Legally Sufficient Evidence of Proximate Causation.

Plaintiffs do not deny that ECFMG's actions and any emotional injury that Plaintiffs suffered are separated by physical distance, by years of time, and by the actions of numerous intervening third parties.  The chain of events that separates their treatment from ECFMG's actions includes "residency, state licensure and obtain[ing] privileges."  Resp. at 32.  And the chain between their treatment and their eventual alleged emotional suffering is even further attenuated.

Much of Plaintiff's proximate causation argument truly concerns but-for causation, but even if Plaintiffs can show but-for causation, these claims—which are extraordinarily remote from the defendant's actions—are precisely what proximate causation prevents.  "At some point along the causal chain, the passage of time and the span of distance mandate a cut-off point for liability." *Mazzagatti v. Everingham by Everingham*, 516 A.2d 672, 676 (Pa. 1986).  If time and distance ever cut off liability, then they surely do so here, where the alleged acts and harms separated by many years (perhaps decades), many miles, and many third parties (including at least two state actors).  No Pennsylvania case has expanded proximate causation to this extreme.

## IV.    Plaintiffs Have Failed to Identify Legally Sufficient Evidence of But-For Causation.

In its motion, ECFMG raised two discrete arguments regarding but-for causation.  The first, that any Plaintiff's emotional distress arises from a mistaken understanding of the facts rather than the true state of affairs, goes unanswered by Plaintiffs.  As ECFMG explained—and Plaintiffs do not deny—their deposition testimony shows that their purported emotional distress is based on a gross misunderstanding of the facts, including false beliefs about whether the individual who treated them was licensed to practice medicine, whether ECFMG is a government agency or private entity, whether ECFMG conducts background checks, and whether ECFMG licenses

individuals to practice medicine.  Mot. at 33.  Pennsylvania law does not allow a plaintiff to recover for emotional distress based on a plaintiff's "mistaken belief."  *Shumosky v. Lutheran Welfare Servs. of Ne. PA, Inc.*, 784 A.2d 196, 202 (Pa. Super. Ct. 2001) (denying recovery for "symptoms [that] were caused by a mistaken belief that the plaintiffs were exposed to the virus.").  There is, on the record, no evidence that any Plaintiff suffered emotional distress that resulted from a correct understanding of the facts.  For this reason alone, summary judgment is necessary.

In responding to the second argument—the absence of evidence that further investigation by ECFMG would have prevented Dr. Akoda from treating Plaintiffs—Plaintiffs' response is a *non sequitur* and without any evidentiary support.  Here are the only two relevant sentences:

> It is further undisputed that when ECFMG last investigated Igeberase [sic], they concluded that he had engaged in fraud, and revoked his ECFMG certification. ECFMG Ex. 24.  Thus, it cannot seriously be disputed that had ECFMG conducted a reasonable investigation, the ECFMG certification in the name of "Akoda" would have been revoked.

Resp. at 34.  Exhibit 24 simply shows Dr. Akoda's certification.  Exhibit 52 shows that it was revoked on November 30, 2016, based on "an October 2016 plea agreement with the United States." Mot., Ex. 52 at 4.  It does not follow, as Plaintiffs assert, that the result of the 2016 inquiry, which came after a guilty plea, necessarily means that any "reasonable investigation" at some early point in time (including before the guilty plea) would have led to the same conclusion.

Plaintiffs make no other attempt to satisfy their burden of but-for causation.  None.  They identify no evidence about what would have occurred if ECFMG had made referrals to the MECC and no evidence about what would have occurred if ECFMG had conducted an additional investigation or made additional disclosures.  Mot. at 33–34.  Plaintiffs' logical fallacy is no substitute for **evidence**.  Plaintiffs "fai[l] to make a showing sufficient to establish the existence of an element essential to [their] case." *Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)*.

**V.      Plaintiffs' Consent Bars Their Claims**.

Plaintiffs do not deny that they consented to the treatment they received.  Nor do Plaintiffs deny that if their consent was effective, it bars their claims.  The only issue is whether any misrepresentations by Dr. Akoda vitiated that consent.

They did not.  Plaintiffs' response is wordplay, arguing only that no medical license was issued under the name "Igberase."  Resp. at 35–36.  This is gamesmanship.  Plaintiffs concede that "Akoda and Igberase are the same person."  Resp. at 4.  The individual who provided medical treatment to Plaintiffs (1) had a medical license, (2) was Board certified; and (3) practiced medicine at a hospital.  Igberase was not charged with battery or unlicensed practice of medicine.  This is not a case where an individual who had not completed a residency or was not licensed to practice medicine impersonated a doctor—it is a case where Plaintiffs allege that a doctor should not have been licensed.  The individual who treated Plaintiffs undeniably held a medical license, albeit in another name.  No court has permitted a plaintiff to look beyond a medical license and assert a claim that a doctor should not have been licensed.  *See* Mot. at 35-36 (citing cases).

Plaintiffs' theory—that consent turns on a doctor's name—leads to absurd consequences.  Consider a married physician whose credentialing documents were in her maiden name but who uses her married name professionally.  If Plaintiffs are correct, this physician commits battery on every patient she treats because her credentialing documents are in a different name.  Nonsense.

The undeniable fact that the individual who treated Plaintiffs completed a residency program, was licensed by multiple states to practice medicine, was board certified, and had hospital privileges is fatal to their claims.  Any misrepresentations about this individual's identity did not vitiate consent.  *See* Mot. at 35–36 (citing cases).

**VI.     Plaintiffs Fail to Identify Evidence of Compensable Emotional Distress**.

Plaintiffs cite no evidence showing the physical manifestations required to support a claim

of emotional distress.  Paragraphs 99 to 101 of Plaintiffs' Statement of Additional Material Facts (about Russell) and 106 (about Riggins) do not identify any physical manifestations of their alleged emotional distress.  The declarations (Resp., Exs. 34, 35) supporting Paragraphs 110 (about Powell) and 113 (about Evans) conflict with evidence produced in discovery and should be struck.[2]

Dr. Tellefsen did not identify physical manifestations for Riggins (id. at 3) or Powell (*id.* at 3-4).  For Evans, Dr. Tellefsen identified physical manifestations linked to her medical treatment or other causes (postpartum hormones), not from learning Dr. Akoda's identity.  *Id*. at 4-5.

Plaintiffs' purported physical manifestations include things like "shock" and feelings of violation or breach of trust.  *See* Pls.' SAMF at ¶¶ 99, 100, 110 & 113.  And they include statements about intimate relationships.  *Id*. at ¶¶ 101, 113.  Plaintiffs cite no support for the theory that "distress and horror," "shock," feelings of violation or breach of trust or damage to intimate relationships constitute physical manifestations sufficient to support a claim for emotional distress.

To the contrary, *Armstrong v. Paoli Memorial Hospital* explained that "[t]emporary fright, nervous shock, nausea, grief, rage, and humiliation if transitory are not compensable harm." 633 A.2d 605, 609 (Pa. Super. Ct. 1993).  Only "long, continued nausea or headaches, repeated hysterical attacks or mental aberration"—for which Plaintiffs have no evidence—"are compensable injuries." *Id. Love v. Cramer*, 606 A.2d 1175, 1176 (Pa. Super. Ct. 1992), also does

---

[2] The "sham declaration" rule forbids using affidavits that conflict with previous discovery to create an issue of fact at the summary judgment stage. *SodexoMAGIC, LLC v. Drexel Univ*., 19-1028, 2022 WL 176427, at *11 (3d Cir. Jan. 20, 2022).  In these declarations, for the first time, Powell states that she experienced a variety of new symptoms—recurrent "nausea," "stomach discomfort," "confusion," "crying," "nervous sweating," and "panic attacks" "[a]s a result of this realization" about Dr. Akoda (ECF 93-37 at ¶ 6)—none of which was disclosed in discovery. Evans now declares that she experienced "nausea" as a result of learning this information about Dr. Akoda (ECF 93-38 at ¶ 5), conflicting with prior evidence that her nausea was caused by medication.  These symptoms were not disclosed in discovery at all (for Ms. Powell) or as being the result of learning about Dr. Akoda (for Ms. Evans), even though directly called for in discovery: in response to Interrogatory No. 2 (ECF 86-8; 86-9), at deposition (ECF 86-25 at 2–3 & ECF 86-17 at 165), and in their independent medical examinations (ECF 86-22; 86-27).

not help Plaintiffs.  Love was permitted to pursue a claim for negligent infliction of emotional distress only because she became "severely depressed, suffered nightmares, stress and intense anxiety, and was forced to undergo prolonged psychological treatment." *Id*.; *see also id*. at 1179 (injuries "of a continuing nature" that "have required her to obtain psychological treatment"). None of Plaintiffs' alleged symptoms remotely approach those in *Love*.  And none of the Plaintiffs have sought psychological treatment from having learned of Dr. Akoda's identity.[3]

Having disclaimed any recovery based on their "experiences" generally and opting for a narrow emotional-distress-from-learning-information claim, Dr. Tellefsen's diagnosis is irrelevant.  Plaintiffs have no evidence that they have suffered compensable emotional distress from learning about Dr. Akoda's identity.

## VII.   Evans' and Powell's Claims Are Barred by the Statute of Limitations.

In response to ECFMG's arguments regarding the statute of limitations, Plaintiffs ignore the controlling Pennsylvania Supreme Court authority, which makes clear that that limitations period commences with "actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury, the fact of actual negligence, or precise cause."  *Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 247 (Pa. 2021).  The Pennsylvania Supreme Court has expressly rejected Plaintiffs' "legal injury" accrual theory.  *See Nicolaou v. Martin*, 195 A.3d 880, 893 n.14 (Pa. 2018) (a plaintiff need not have "knowledge of the cause of action associated with the harm").

Plaintiffs cannot deny that Evans and Powell had knowledge, at the time of their treatment, of "at least some form of significant harm" with a "factual caused linked to" Dr. Akoda's conduct. It is irrelevant that they did not know of the full extent of their injuries or their precise cause.

---

[3] Plaintiffs vaguely imply Dr. Tellefsen diagnosed Powell and Evans with the need for future treatment.  Resp. at 38.  But critically, Dr. Tellefsen did not diagnose Powell and Evans with a need for treatment as a result of any emotional distress from learning Dr. Akoda's identity.

The Supreme Court of Wisconsin, in a factually analogous case, rejected an attempt to evade limitations by recharacterizing a claim from wrongful medical treatment to emotional distress based on learning that treatment was wrongful. *See Doe 56 v. Mayo Clinic Health Sys.-- Eau Claire Clinic, Inc*., 880 N.W.2d 681, 688 (Wis. 2016) ("[T]he physical injurious change occurs at the time of the touching. These boys suffered an injury when Dr. Van de Loo physically touched their genitals in an allegedly inappropriate way."). It was irrelevant that the Doe plaintiffs, like Evans, may not have recognized the conduct as wrongful: "The fact the Does may not have known at the time that the touching was allegedly inappropriate or that the manipulation of their genitals constituted the physical injurious change does not change this fact." *Id*. at 689. The alternative "would result in a limitless extension of the medical malpractice statute of limitations and change the causation connection in medical malpractice cases from the negligent act to a fortuitous event—here the media reporting about the criminal charges." *Id*. And a plaintiff cannot evade this rule by reframing their claim as seeking emotional distress for learning information: "Adopting the Does' argument in this case would eviscerate the three-year statute of limitations . . . simply by alleging his emotional distress began even decades after the allegedly unnecessary and improper treatment occurred." *Id*. at 372 n.14. The reasoning of the Supreme Court of Wisconsin is sound. Because Powell and Evans allege improper actions by Dr. Akoda during their medical treatment, their claims accrued at that time and are barred by limitations.

## CONCLUSION

ECFMG respectfully renews its request that its motion for summary judgment be granted.

Dated: January 28, 2022

William R. Peterson (*pro hac vice*)            /s/ Brian W. Shaffer
MORGAN, LEWIS & BOCKIUS LLP              Brian W. Shaffer, Bar No. 78851
1000 Louisiana Street                              Elisa P. McEnroe, Bar No. 206143
Suite 4000                                          Matthew D. Klayman, Bar No. 319105
Houston, TX  77002                               MORGAN, LEWIS & BOCKIUS, LLP
Telephone:     +1.713.890.5000                 1701 Market Street
Facsimile:      +1.713.890.5001                  Philadelphia, PA 19103-2921
william.peterson@morganlewis.com          Telephone: +1.215.963.5000
                                                    Facsimile: +1.215.963.5001
                                                    brian.shaffer@morganlewis.com
                                                    elisa.mcenroe@morganlewis.com
                                                    matthew.klayman@morganlewis.com

*Attorneys for Educational Commission for Foreign Medical Graduates*

## CERTIFICATE OF SERVICE

I do hereby certify that on this date, I caused true and correct copies of the foregoing document to be served via electronic filing upon all counsel of record via the ECF system and/or e-mail.


Dated: January 28, 2022

*/s/ Brian W. Shaffer*
Brian W. Shaffer, Bar No. 78851