**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| MONIQUE RUSSELL, JASMINE RIGGINS, ELSA M. POWELL, and DESIRE EVANS, | Civil Action No. 18-5629 |
| Plaintiffs, | Honorable Joshua D. Wolson |
| v. | |
| EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES, | |
| Defendant. | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' STATEMENT OF ADDITIONAL
MATERIAL FACTS AND REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S
STATEMENT OF MATERIAL FACTS**

Defendant Educational Commission for Foreign Medical Graduates ("ECFMG") hereby responds to Plaintiffs' Statement of Additional Material Facts and below replies to Plaintiffs' Response to Defendant's Statement of Material Facts (ECF 93-1).

**ECFMG'S RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL MATERIAL FACTS**

The length of this submission should not give the misimpression of any genuine disputes of material facts. Many of the "facts" Plaintiffs submitted as "Additional" are duplicative of one another, are duplicative of facts ECFMG submitted, or are not material (or some combination thereof). ECFMG provides the below chart to help with clarity, because many of Plaintiffs' submitted "facts" are riddled with imprecision (*e.g.*, ambiguous use of pronouns) and/or errors (*e.g.*, erroneous citations to the record). And for the Court's convenience, all of the Parties' "facts" submitted regarding summary judgment are listed below. Nothing in Plaintiffs' Statement of Additional Material Facts (or Plaintiffs' Response to ECFMG's Statement of Material Facts) creates a genuine issue of material fact or changes that summary judgment should be granted.

| | *Plaintiffs' Statement of Additional Material Facts* | *ECFMG's Response* |
|---|---|---|
| 1 | William C. Kelly worked for ECFMG for almost 38 years. He retired in May 2015. Ex. 3, Kelly depo. at 7, 9. He became manager of the credentials department and the vice-president for operations that included credentials. Ex. 3, Kelly depo at 187-188. | Admitted. As a point of clarity, Kelly became manager of the credentials department and the vice-president for operations during the time he worked for ECFMG, not after he retired. |
| 2 | The ECFMG Certificate is required to obtain a medical license. Ex. 3, Kelly depo. at 19. | Denied.  ECFMG Certification is for international medical graduates ("IMGs"), not graduates of U.S. or Canadian medical schools. ECFMG Ex. 2 at 245:2–13. Medical licensing authorities can elect their own criteria for licensure, which may include ECFMG Certification for IMGs. Further, Plaintiffs' citation does not support the proposition asserted. |
| 3 | The first step needed to obtain a certificate from ECFMG is an application. Ex. 3, Kelly depo. at 13. | Admitted. |
| 4 | An identification number is assigned to the application. If the applicant becomes certified, the certificate number would be the same as the identification number. Id. at 15. | Admitted. |
| 5 | An IMG needs an ECFMG certificate to obtain a medical license. Ex. 3, Kelly depo. at 19. | Admitted this is generally true for IMGs seeking medical licensure in the United States, but it misses certain nuances. For example, it is up to the medical licensing authorities within the United States to decide whether an ECFMG Certificate is required for medical licensure (always or for a specific applicant) or to offer alternative pathways for IMGs to obtain licensure. *See* Kelly Dep. at 19–20, attached as ECFMG Reply Exhibit 1. By way of further example, an IMG could also attend a U.S. medical school despite having previously graduated from a foreign medical school. Additionally, Plaintiffs' citation does not support the proposition asserted. |

| | Plaintiffs' Statement of Additional Material Facts | ECFMG's Response |
|---|---|---|
| 6 | ECFMG works on behalf of domestic regulatory authorities to protect the public through programs and services including primary source verification of physician credentials. Ex. 3, Kelly depo. at 22. | Admitted that Kelly testified to what is in Plaintiffs' Paragraph 6. As further clarification, ECFMG does not work "on behalf" of "domestic regulatory authorities;" instead, ECFMG provides a service that medical licensing authorities may choose to utilize for the primary source verification of an IMG's medical school diploma and confirmation of passage of certain examinations. |
| 7 | ECFMG received an Application from Igberase on April 6,1992. Ex 4. | Admitted. |
| 8 | He included a date of birth of April 17, 1962, and a social security number ending in 5054. Ex. 3, Kelly depo at 29. Ex. 4. | Admitted. |
| 9 | Igberase submitted a diploma from the University of Ibadan June 19, 1987. ECFMG Ex. 10; Ex. 3, Kelly depo. at 31. | Admitted. |
| 10 | In order to have the diploma verified, ECFMG would send it to the medical school to verify it. Ex. 3, Kelly depo. at 35. | Admitted. |
| 11 | ECFMG received an Application from Igberase Oluwafemi Charles on March 30, 1994. Ex. 5. It did not include a social security number but included a birthdate of April 17, 1961. Id.; Ex. 3, Kelly depo. at 35-36. | Admitted. |
| 12 | A new I.D. number was assigned because they concluded he ("Charles") had never applied before. Ex. 3, Kelly depo at 57-58. | Admitted only that ECFMG issued Charles a new identification number. ECFMG does not admit that it "concluded" that Charles "had never applied before." Plaintiffs' citation does not support the proposition asserted. |
| 13 | On June 22, 1995, Kelly wrote to Igberase to advise him that ECFMG was conducting an investigation about his multiple applications. ECFMG Ex. 13. | Admitted that Kelly wrote to Igberase to advise him that ECFMG was investigating whether he had applied before. ECFMG Ex. 13. |
| 14 | ECFMG received a 5-page handwritten response from Charles in which he admitted that he and Igberase were one and the same person. He admitted to lying. ECFMG Ex. 14; Ex. 3, Kelly depo. at 42-43. | Admitted. |

| | *Plaintiffs' Statement of Additional Material Facts* | *ECFMG's Response* |
|---|---|---|
| 15 | The credentials committee met on 11/27/1995 and decided to invalidate the "Charles" certificate and to revoke the Igberase certificate. Ex. 6; Ex. 3, Kelly depo. at 45-46. | Admitted. |
| 16 | On December 7, 1995, Kelly wrote a letter to the USMLE advising of events re "Charles" and Igberase. Ex. 21. | Admitted. |
| 17 | Where there was a discrepancy between the name on the diploma and the name on the Application, the applicant would have been required to submit some sort of documentation to connect the names. But this policy was not in effect at the time. Ex. 3, Kelly depo. at 51. | Admitted that Kelly testified about a later ECFMG policy concerning name discrepancies that was not in place in 1995 and thus is irrelevant to applications received in 1995 or earlier. Plaintiffs Ex. 3 at 51–52. |
| 18 | "Charles" took an appeal from the decision to invalidate his certificate. The review committee held a hearing and affirmed but limited Igberase's length of revocation to 5 years (i.e., 7/16/2001). Ex. 7; Ex. 3, Kelly depo at 53-55. | Admitted. |
| 19 | ECFMG received an Application from Femi Charles Igberase on October 23, 2000. Ex. 22. It included a birthdate of April 17, 1962, the same date on the first Igberase application. Ex. 3, Kelly depo. at 56-57. | Admitted. |
| 20 | In less than a month, ECFMG concluded he was the same Igberase who had been told his certification was revoked. Ex. 3, Kelly depo at 57-58. | Admitted. |
| 21 | On November 16, 2000 Kelly wrote to Igberase for an explanation and advising him the matter would go the credentials committee. Ex. 23. | Admitted. |
| 22 | On May 3, 2001 Kelly wrote to "Charles" notifying him that the credentials committee extended the revocation of his certificate for an unspecified period. Ex. 8. | Admitted. |
| 23 | ECFMG received a letter from Igberase on July 2, 2001. Ex. 9. Igberase explained that his childhood friend had made a mistake on the application. Igberase referred to his cousin "Akoda." | Admitted. |
| 24 | On May 22, 2002 Kelly wrote to Igberase advising him his certificate was permanently revoked. It's one year later because they waited for review by USMLE. Ex. 10; Ex. 3, Kelly depo. at 64. | Admitted. |

| | Plaintiffs' Statement of Additional Material Facts | ECFMG's Response |
|---|---|---|
| 25 | On March 19, 2002 ECFMG received an Application by "Charles" Ugberaese Oluwafemi" [*sic*] with a birth date of March 1, 1963 and no social security information Ex. 24. | Admitted except as to the birthdate. The birthdate provided on the application is March 1, 1967. Plaintiffs Ex. 24. |
| 26 | Charles Ugberaese Oluwafemi submitted a diploma from the University of Ibadan dated June 18, 1996. Ex. 11. Kelly doesn't know if it was ever verified by the University of Ibadan. Ex. 3, Kelly depo. at 67-68. | Admitted. |
| 27 | On November 12, 2002 Kelly wrote to Igberase Oluwafemi Charles advising him that the Credentials Committee found him to have engaged in irregular behavior. Ex. 25. | Admitted. |
| 28 | He believes the names are just re-arranged. Ex. 3, Kelly depo. at 73. | Assuming, "he" refers to Kelly, ECFMG admits Kelly testified that "the sequences of names is different" on the application submitted by Igberase Oluwafemi Charles and the accompanying diploma. Plaintiffs Ex. 3 at 73; ECFMG Reply Ex. 1 at 72–73. |
| 29 | He is not aware that the diploma submitted by Charles and verified by the University is the same diploma submitted by Igberase. Ex. 3, Kelly depo. at 73. | Assuming "he" refers to Kelly, ECFMG admits that Kelly testified that he was unaware whether the diploma submitted by Igberase Oluwafemi Charles was identical to the diploma submitted by Charles Oluwafemi Igberase.  Plaintiffs Ex. 3 at 73. |
| 30 | ECFMG thought "Charles" and Igberase were two different persons. Ex. 3, Kelly depo. at 75, 77. | Admitted. |
| 31 | ECFMG realized within a short period of time that the person using the name Oluwafem [*sic*] was really the person certified as Igberase. Ex. 3, Kelly depo. at 79. | Admitted that Kelly agreed at his deposition with the content of Plaintiffs' Paragraph 31. |
| 32 | ECFMG received an Application from John Nosa Akoda on January 3, 2003. ECFMG Ex. 19. | Denied.  ECFMG first received an application from John Nosa Akoda in 1996. ECFMG Ex. 19; ECFMG Reply Ex. 1 at 87–88. Plaintiffs' citation is to the 1996 application. ECFMG Ex. 19. |
| 33 | There was no social security number included. Ex. 3, Kelly depo. at 88. A photograph is required with the application. Id. at 89. | Admitted. |

| | Plaintiffs' Statement of Additional Material Facts | ECFMG's Response |
|---|---|---|
| 34 | ECFMG received a second Application from Akoda on August 30, 1996. Ex. 26. He said he had previously applied. Kelly doesn't know why there is a second application. Ex. 3, Kelly depo. at 93. | Admitted. |
| 35 | Akoda submitted a diploma from the University of Benin for Johnbull Enosakhare Akoda dated February 6, 1988. Ex. 27. The name is different than on the application. | Admitted. |
| 36 | He does not know if the diploma was verified by the University of Benin. Ex. 3, Kelly depo. at 95. | Assuming "he" refers to Kelly, it is admitted Kelly testified he did not know whether ECFMG verified Akoda's diploma. Plaintiffs Ex. 3 at 95. ECFMG verified Akoda's University of Benin diploma. ECFMG Ex. 23. |
| 37 | In a letter dated August 22, 2000, Kelly says that Akoda provided a social security number ending in 9065. Ex. 28. | Admitted. |
| 38 | ECFMG received a completed Permanent Revalidation Form on September 22, 1998. ECFMG Ex. 27. It shows that he had started a residency program at JSMC. Ex. 3, Kelly depo. at 107. | Admitted, assuming "he" refers to Akoda. |
| 39 | ECFMG serves as the dean station for ERAS for IMGs. Ex. 3, Kelly depo. at 108. | ECFMG admits that Kelly testified to this proposition, assuming that "ERAS" refers to the "electronic residency application service" of the Association of American Medical Colleges. Plaintiffs Ex. 3 at 108. |
| 40 | On August 11, 2000, ECFMG received a letter from James McCorkel (Jersey Shore Medical Center) saying Akoda, a resident, may have served at two other residency programs and has used Igberase's social security number. ECFMG Ex. 28; Ex. 3, Kelly depo. at 111. | Admitted. |
| 41 | The social security number Igberase gave JSMC is the same one he gave to ECFMG. Ex. 3, Kelly depo. at 112. | Admitted. |
| 42 | Stephen S. Seeling replied to McCorkel's letter on August 22, 2000. Ex. 28. Kelly ghost wrote it for Seeling. Ex. 3, Kelly depo. at 112. | Admitted. |
| 43 | There is no diploma with the legal name "Charles." Ex. 3, Kelly depo. at 113-114. | Admitted only that, with regard to Akoda and his aliases, ECFMG did not receive a diploma where "Charles" was the last name. ECFMG denies the |

| | Plaintiffs' Statement of Additional Material Facts | ECFMG's Response |
|---|---|---|
| | | remainder of Plaintiffs' Paragraph 43 as ECFMG receives many thousands of diplomas unrelated to this matter. |
| 44 | Kelly wrote to Akoda on August 22, 2000 telling him they have recent information that he may have previously applied and that the matter will be referred to the Credentials Committee. He asked Akoda to provide an explanation. Ex. 29. | Admitted. |
| 45 | Kelly received a call from McCorkel on August 20, 2000, telling him Akoda took a leave of absence and he was waiting to hear from Harlem Hospital. Ex. 30. | Admitted. |
| 46 | Igberase under the Akoda identity wrote a letter in response to the Kelly's letter dated August 29, 2000. ECFMG Ex. 32. He denied taking exams under other names. He stated that "Charles" is his cousin. He admitted using Charles' social security number. | Admitted. |
| 47 | On September 13, 2000, McCorkel called Kelly saying Akoda has been suspended. McCorkel's discussions with Harlem Hospital were "not definitive." Ex. 12. | Admitted. |
| 48 | Kelly made handwritten notes of his conversation with McCorkel. Ex. 31. | Admitted. |
| 49 | On September 27, 2000 Akoda came to Kelly's office. ECFMG Ex. 30. He again admitted using his cousin's social security number. He gave Kelly his passport and his international driving permit. Ex. 13. | Admitted. |
| 50 | Kelly doesn't remember if he made any attempt to verify the authenticity of the passport or license. Ex. 3, Kelly depo. at 125, 129. | Admitted. |
| 51 | The date of birth on Akoda's passport (Ex. 13) and on the Request for Permanent Revalidation Form (ECFMG Ex. 27) are different. Ex 3, Kelly depo. at 126-127. | Admitted. |
| 52 | He does not remember searching ECFMG's data base to try to determine whether Akoda and Igberase were one and the same person. Ex. 3, Kelly depo. at 129. | Admitted, assuming "he" refers to Kelly. |
| 53 | He doesn't know if he compared photographs but he had the ability to do so. Ex. 3, Kelly depo. at 129-130. | Assuming "he" refers to Kelly, admitted that Kelly testified that he could have compared photographs |

| | *Plaintiffs' Statement of Additional Material Facts* | *ECFMG's Response* |
|---|---|---|
| | | of Akoda and Igberase but that he did not know if he had. Plaintiffs Ex. 3 at 129–30. |
| 54 | He was present at Igberase's appeal hearing in 1996. Ex. 3, Kelly depo. at 131, 133. | Plaintiffs' citations refer to an appeal hearing on July 11, 2016.  Plaintiffs Ex. 3 at 131, 133. Assuming "he" refers to Kelly, admitted only that Kelly testified he attended an appeal hearing in 2016. |
| 55 | Kelly made notes of a call with McCorkel on October 5, 2000. Ex. 32. It comments on two different green cards presented by Akoda. It states that Harlem Hospital thinks he may be the same and that Akoda used two social security numbers. | Admitted. |
| 56 | Kelly emailed Igberase December 21, 2000 and Akoda replied December 2, 2000. Ex. 33. Kelly was surprised. | Plaintiffs' citation shows Akoda replied on December 21, 2000, not December 2, 2000. |
| 57 | On the same day he sent the email to Igberase, Kelly spoke with McCorkel. ECFMG Ex. 31. McCorkel told Kelly that Akoda was dismissed from JSMC residency for using a false social security number and green cards inconsistent with a later one. | Admitted that ECFMG Ex. 31 states both that Kelly spoke with McCorkel on December 21, 2000 and that McCorkel told Kelly what is asserted in Plaintiffs' Paragraph 57. |
| 58 | He does not recall ever asking McCorkle [*sic*] who the informant was. Ex. 3, Kelly depo. at 147. | Admitted, assuming "he" refers to Kelly. |
| 59 | McCorkel says he believed Igberase and Akoda were one and the same person. "I also believe it" Kelly said. "We need to brainstorm on this one." ECFMG Ex. 33. | Admitted that ECFMG Ex. 33 is a memo written by Kelly which states what is asserted in Plaintiffs' Paragraph 59. |
| 60 | It seemed strange that Akoda would reply to the email to Igberase. Ex. 3, Kelly depo. at 149-150. | Assuming Plaintiffs' Paragraph 60 is about Kelly, admitted that Kelly testified that he found it strange that Akoda replied to an email Kelly had sent to Igberase. |
| 61 | He doesn't recall if they brainstormed this matter further. Ex. 3, Kelly depo. at 150. | Admitted, assuming "he" refers to Kelly and "they" refers to Kelly's colleagues specified at the citation to Kelly's deposition transcript. Plaintiffs Ex. 3 at 150. |
| 62 | He knew there was some connection, a relationship between Igberase and Akoda. Ex. 3, Kelly depo. 153. | Assuming "he" refers to Kelly, admitted that Kelly testified that he knew there was a connection |

| | *Plaintiffs' Statement of Additional Material Facts* | *ECFMG's Response* |
|---|---|---|
| | | between Igberase and Akoda. Plaintiffs Ex. 3 at 153. |
| 63 | He doesn't recall if he ever learned that Igberase was licensed as a nurse in NY. Ex. 3, Kelly depo. at 158. | Admitted, assuming "he" refers to Kelly. |
| 64 | ECFMG used the ERAS to submit for Akoda the three letters of reference... He wrote to the three doctors who provided letters of recommendation. Ex. 14. | As to the first sentence, ECFMG admits Plaintiffs Ex. 14 is a form from Akoda requesting ECFMG submit his letters of reference through ERAS.<br><br>Assuming "he" refers to Kelly, the second sentence is admitted. |
| 64 | None of the three doctors responded to Kelly's letters. ECFMG Ex. 35; Ex. 3, Kelly depo. at 167-168. | Admitted. The correct citation is Plaintiffs Ex. 3 at 196. |
| 65 | As part of the ERAS program, ECFMG acts as the dean's office. Ex. 3, Kelly depo. at 162. | Assuming that "ERAS" refers to the "electronic residency application service" of the Association of American Medical Colleges, ECFMG admits that Kelly testified that ECFMG acted as a dean's office for IMGs for the ERAS program. Plaintiffs Ex. 3 at 108, 162. |
| 66 | One of the goals of ECFMG is to ensure IMGs are competent physicians. Ex. 3, Kelly depo. at 184-185. | Admitted that Kelly testified to this proposition, but otherwise denied. As further clarification, ECFMG plays various roles in the medical community, including by issuing ECFMG Certificates (ECFMG Ex. 2 at 40:1–22), which only indicates that an IMG had a medical school diploma primary source verified and passed certain exams (ECFMG Ex. 2 at 241:12–22). ECFMG does not hold itself out as "ensur[ing] IMGs are competent physicians." Moreover, ECFMG's "goals" are irrelevant and immaterial to the Motion for Summary Judgment. |
| 67 | A goal of ECFMG is to protect the American public. Ex. 3, Kelly depo. at 185. | Admitted that Kelly testified to this proposition, but otherwise denied. As further clarification, ECFMG plays various roles in the medical community, |

| | *Plaintiffs' Statement of Additional Material Facts* | *ECFMG's Response* |
|---|---|---|
| | | including by issuing ECFMG Certificates (ECFMG Ex. 2 at 40:1–22), which only indicated that an IMG had a medical school diploma primary source verified and passed certain exams (ECFMG Ex. 2 at 241:12–22). ECFMG does not hold itself out as undertaking the duty of "protect[ing] the American Public." Moreover, ECFMG's "goals" are irrelevant and immaterial to the Motion for Summary Judgment. |
| 68 | ECFMG acts as the Dean's office for IMGs by facilitating the components of an application for a residency program and submits them on behalf of the graduate through the ERAS. Ex. 3, Kelly depo. at 194. | Denied as stated. Plaintiffs' Paragraph 68 appears to be aimed at the same material covered in Plaintiffs' Paragraphs 39 and 65, but using ambiguous and unclear phrasing that does not precisely describe ECFMG's role regarding the ERAS program (*e.g.*, "facilitating the components"). |
| 69 | It was not a routine procedure to verify letters of recommendation. Kelly did it because Akoda was "otherwise being investigated." He had some concerns about Akoda's credibility. Ex. 3, Kelly depo. at 195. | Admitted. |
| 70 | None of the three doctors responded to his letters. Ex. 3, Kelly depo. at 196. | Admitted, assuming "the three doctors" refer to the doctors who wrote letters of recommendation for Akoda and "his letters" refer to the letters Kelly wrote to those doctors. |
| 71 | Kelly did not attempt to find out if any of the three doctors were real. Ex. 3, Kelly depo. at 202. | Denied, assuming "the three doctors" are the doctors who wrote letters of recommendation for Akoda. Kelly wrote to the doctors to determine if the letters were authentic. Plaintiffs Ex. 3 at 195. Further, Plaintiffs' citation only mentions one of the doctors who wrote a letter of recommendation for Akoda. |
| 72 | Kelly was concerned that Akoda and Igberase were the same person. Ex. 3, Kelly depo. at 203. | Admitted that Kelly testified that upon receipt of Akoda's letters of recommendation that Kelly had |

| *Plaintiffs' Statement of Additional Material Facts* | *ECFMG's Response* |
|---|---|
| | some concerns that Akoda and Igberase were maybe the same person. Plaintiffs Ex. 3 at 203. |
| 73 Kelly didn't think there was enough evidence to go to the credentials committee. Ex. 3, Kelly depo. at 211. | Admitted that Kelly testified that in December of 2000 he did not believe there was enough evidence to refer Akoda to the Medical Education Credentials Committee ("MECC"). ECFMG Reply Ex. 1 at 211–12. |
| 74 Kara Corrado is the ECFMG Vice President for Operations. Ex. 2, Corrado depo. at 6. | Admitted that at the time of her deposition, Kara Corrado's position at ECFMG was Vice President of Operations. By way of clarification, Kara Corrado's name is now "Kara Oleyn." Kara Oleyn's position at ECFMG is now Vice President for Programs & Services. |
| 75 ECFMG has a certification program that is required for entrance into a ACGME accredited residency program. Id. at 41. It is ECFMG's expectation that state medical boards, residency programs, and hospitals rely on ECFMG as they make decisions about physician applications. Id. at 247-248. | Admitted that Kara Oleyn testified that ECFMG primary source verifies IMGs' diplomas and certifies their passage of specific exams to certain entities such as medical boards, residency programs, and hospitals. ECFMG Ex. 2 at 244:1–8; Plaintiffs Ex. 2 at 247–48. ECFMG also admits that the Accreditation Council for Graduate Medical Education ("ACGME") requires IMGs participating in ACGME-accredited residency programs to be ECFMG Certified. Further, Kara Oleyn only testified that medical boards, residency programs, and hospitals rely on ECFMG to determine whether an applicant has ECFMG certification. Plaintiffs Ex. 2 at 247–48. |
| 76 Part of ECFMG's mission is to promote public health and to protect the public. Id. at 47. ECFMG serves the public in a number of ways, for example, making sure we have qualified physicians. Id. at 40. | Admitted that Kara Oleyn testified that ECFMG helps to ensure physicians educated outside of the U.S. and Canada have met certain minimum requirements. Corrado Deposition, attached as ECFMG Reply Ex. 2, at 40. As further clarification, |

| Plaintiffs' Statement of Additional Material Facts | ECFMG's Response |
|---|---|
| | ECFMG plays various roles in the medical community, including by issuing ECFMG Certificates (ECFMG Ex. 2 at 40:1–22), which only indicated that an IMG had a medical school diploma primary source verified and passed certain exams (ECFMG Ex. 2 at 241:12–22). ECFMG does not hold itself out as "protect[ing] the public." Moreover, ECFMG's "mission" is irrelevant and immaterial to the Motion for Summary Judgment. |
| 77 There is a written "Draft" procedures written in 2015 which the staff had been using since at least 2008. Id. at 60. | Admitted that Kara Oleyn testified that ECFMG memorialized certain procedures in writing in 2015 and had been following those procedures since at least 2008, if not earlier. Plaintiffs Ex. 2 at 60. |
| 78 As a general matter if a charge letter is sent to an applicant the matter should be referred to the credentials committee for review. Id. at 80. | Admitted that generally if a "charge letter" alleging irregular behavior is sent to an individual, the matter is often—but not always—referred to the MECC. ECFMG Reply Ex. 2 at 82:18–23. However, ECFMG's "charge letters" ask for an explanation from the subject individual, and when provided, such explanations may cause the matter to not necessarily be referred to the MECC, as occurred with Akoda, for example. ECFMG Reply Ex. 2 at 82:4–13. |
| 79 The credentialing requirements for certification at that time included source verification of the diploma only. Id. at 88. | Denied. ECFMG is unsure what Plaintiffs mean by "credentialing requirements." Between 1992 and 2000, the only part of an IMG's application that was primary source verified by ECFMG was the diploma. Plaintiffs Ex. 2 at 88–89. |
| 80 It is a requirement to submit photo identification currently but it was not in the past. Id. at 89. | Admitted that it is presently a requirement to submit a photo, assuming "requirement" refers to ECFMG's requirements for applicants seeking ECFMG |

| | Plaintiffs' Statement of Additional Material Facts | ECFMG's Response |
|---|---|---|
| | | Certification, and that submitting a photo was not always a requirement for ECFMG Certification. |
| 81 | It was not part of ECFMG's process to verify that the applicant's name or date of birth was the same on the request for permanent revalidation and the name that was on file for the applicant. Id. at 130. | Admitted that it was not part of the process in 1998. |
| 82 | ECFMG didn't do anything to determine whether the passport and international driving license Igberase provided under the Akoda identity were genuine or authentic. Id. at 161. | Admitted only that ECFMG took no further steps regarding Akoda's passport and international driving license after seeing them. Plaintiffs Ex. 2 at 161. |
| 83 | The passport and applications for Akoda listed different places of birth. Id. at 162. | Admitted. |
| 84 | ECFMG could have consulted with the Nigerian consulate to determine if the passport was authentic but it's not part of their process. Id. at 200. | Admitted that Kara Oleyn testified in response to a hypothetical question that she "suppose[d]" ECFMG "could have [communicated with the Nigerian consulate], but that wasn't part of our process at the time." Plaintiffs Ex. 2 at 200. ECFMG otherwise denies Plaintiffs' Paragraph 44 because it is unfounded speculation. For example, there is no evidence as to whether the Nigerian consulate would have responded to an inquiry from ECFMG, a non-governmental private U.S.-based entity, and validated (or invalidated) a Nigerian-appearing passport provided to ECFMG by a Nigerian citizen. |
| 85 | Corrado doesn't believe ECFMG ever reached out to Akoda's alleged cousin. Id. at 204. | Denied. ECFMG had various contacts with the individual ECFMG had understood at the time to be Akoda's cousin (going by the name "Igberase"). |
| 86 | Corrado agrees with Kelly that part of ECFMG's role is to protect the American public. Id. at 222. She agrees that patients have the right to not be treated by physicians who have obtained ECFMG certification based on false pretenses. Id. at 53. | Admitted that Kara Oleyn testified that she agreed that part of ECFMG's role was to protect the American public and that patients have a right not to be treated by physicians who have obtained ECFMG certification based on false pretenses. As further clarification, ECFMG plays various roles in the medical community, including by issuing ECFMG |

| *Plaintiffs' Statement of Additional Material Facts* | *ECFMG's Response* |
|---|---|
| | Certificates (ECFMG Ex. 2 at 40:1–22), which only indicated that an IMG had a medical school diploma primary source verified and passed certain exams (ECFMG Ex. 2 at 241:12–22). ECFMG does not hold itself out as "protect[ing] the American public" and is not responsible for practicing physicians treating patients. |
| 87 Akoda needed a valid ECFMG certificate to get into a training program. Id. at 230. | Admitted that when Akoda applied to ECFMG, as an IMG without a U.S. medical degree, he would have needed ECFMG Certification to be accepted to an ACGME-accredited training program. |
| 88 If ECFMG believed the letters of recommendation were fraudulent, they would have reported it to Howard University. Id. at 233-234. | Admitted assuming the letters of recommendation referenced were those of Akoda. |
| 89 As Vice President of Operations, Stephen S. Seeling oversaw the certificate process. Ex. 19, Seeling depo. at 13. | Admitted when Seeling was in that role from 1998 to 2013. Seeling Deposition, attached as ECFMG Reply Ex. 3 at 6:16–7:9. |
| 90 William Kelly reported to S. Seeling. Id. | Admitted that Kelly reported to Seeling when Seeling was Vice President of Operations at ECFMG. |
| 91 As a general rule, an IMG must have an ECFMG certification to enter into a residency program. Id. at 23. | Denied as stated. ECFMG refers to its responses to Plaintiffs' Paragraphs 5 and 87. |
| 92 One of the potential consequences, a potential sanction, for irregular behavior is revocation or invalidation of the individual's certification. Id. at 55. | Admitted. |
| 93 Seeling agrees that it probably would warrant referral to the credentials committee if he believed that Akoda and Igberase were one and the same person. Id. at 79. | Admitted. |
| 94 The decision that the Akoda matter should not go to the credentials committee was made without anyone speaking to Igberase about whether he and Akoda were the same person. Id. | Admitted that Seeling did not personally meet with Akoda before ECFMG decided whether or not to refer the matter to the MECC. Seeling Deposition, attached as ECFMG Reply Ex. 3, at 79–80. ECFMG communicated with the individual using the name |

| | *Plaintiffs' Statement of Additional Material Facts* | *ECFMG's Response* |
|---|---|---|
| | | Akoda about this specific point through its letter dated August 22, 2000 and Akoda's response thereto dated August 29, 2000. |
| 95 | Monique Russell is a 46 year old mother of one child, Luka, born May 25, 2016. Ex. 15, Russell depo. at 12. | Admitted. |
| 96 | Igberase delivered Ms. Russell's baby by emergency C-section. Ex. 15, Russell depo. at 41. | Admitted. |
| 97 | Ms. Russell learned of Igberase's guilty plea from a Department of Justice press release. Ex. 15, Russell depo. at 31-32. | Admitted. |
| 98 | Ms. Russell red [*sic*] the federal sentencing transcript. Ex. 15, Russell depo. at 82. | Admitted. |
| 99 | She suffers from emotional distress as a result of learning about Akoda. Ex. 15, Russell depo. at 75-76. | Assuming "she" refers to Ms. Russell, ECFMG admits that Ms. Russell makes this assertion, but ECFMG denies that any of Ms. Russell's claimed emotional distress is as a result of learning about Akoda. ECFMG Ex. 74 at 7. |
| 99 | Ms. Russell feels Igberase violated her. Ex. 15, Russell depo. at 76. | ECFMG admits that Ms. Russell makes this assertion, but ECFMG denies Ms. Russell has suffered any compensable emotional distress due to learning information about Akoda. Dr. Fenichel determined "Ms. Russell does not have any psychiatric disorder causally related to the allegations in the Complaint." ECFMG Ex. 74 at 7. |
| 100 | She has difficulty going to the gynecologist, distrusts the medical community and distrusts institutions that credential doctors. Ex. 15, Russell depo. at 75. | Assuming "she" refers to Ms. Russell, ECFMG admits that Ms. Russell makes this assertion, but ECFMG denies Ms. Russell has suffered any emotional distress due to learning about Akoda's identity. Dr. Fenichel determined "Ms. Russell does not have any psychiatric disorder causally related to the allegations in the Complaint." ECFMG Ex. 74 at 7. |

| *Plaintiffs' Statement of Additional Material Facts* | *ECFMG's Response* |
|---|---|
| 101 | She also suffers from intimacy issues and feels like a victim of sexual assault because Igberase examined her vagina under false pretenses. Ex. 15, Russell depo. at 90, 130. | Assuming "she" refers to Ms. Russell, ECFMG admits that Ms. Russell makes this assertion, but ECFMG denies Ms. Russell has suffered any emotional distress due to Akoda's identity. Dr. Fenichel determined "Ms. Russell does not have any psychiatric disorder causally related to the allegations in the Complaint." ECFMG Ex. 74 at 7. |
| 102 | Ms. Riggins is a 27 year old mother of three children, ages 10, 6 and 2. Ex. 16, Riggins depo. at 20. | Admitted. |
| 103 | She lives in northeast Washington, DC. Riggins depo. at 21. She has a high school GED. Ex. 16, Riggins depo. at 21. | Admitted. |
| 104 | Ms. Riggins was a patient of Akoda between August 2012 and March 2013. Ex. 16, Riggins depo. at 121. Akoda delivered her second child by C-section. Ex. 16, Riggins depo. at 30. Messiah, her son, was born on March 18, 2013. Ex. 16, Riggins depo. at 38. | Admitted. |
| 105 | After the C-section, Ms. Riggins suffered severe abdominal pain and could not undergo a tubal ligation because of scarring. Ex. 16, Riggins depo. at 34. | Admitted that Ms. Riggins has testified about severe abdominal pain and an inability to undergo a tubal ligation because of scarring, but it is denied that there is evidence that the scarring was because of Akoda. Dr. Jay Goldberg, an OB/GYN, examined Ms. Riggins's medical records and noted that Ms. Riggins experienced "[n]o intra-operative complications" and "no post-operative complications" and that "[a]n elective repeat cesarean section with no complications resulted in delivery of a healthy baby." Goldberg Expert Rep., attached as ECFMG Reply Ex. 5, at 8. |
| 106 | As a result of what she learned about who she believed to be Akoda, she has suffered emotional distress. Ex. 16, Riggins depo. at 56. After learning the truth about Igberase from a Facebook group, "Embracing Mommies," Ms. Riggins felt angry, sad, embarrassed, and ashamed about receiving treatment from Igberase. Ex. 16, Riggins depo. at 57. | Assuming "she" refers to Ms. Riggins, ECFMG admits that Ms. Riggins makes this assertion, but ECFMG denies Ms. Riggins has suffered any emotional distress due to Akoda's identity. Dr. Fenichel determined Ms. Riggins "does not have any |

| Plaintiffs' Statement of Additional Material Facts | ECFMG's Response |
|---|---|
| Ms. Riggins was deeply affected by what Igberase did and felt outraged because his dishonesty enabled him to perform C-sections, examine women's genitals, touch and violate them. Ex. 16, Riggins depo. at 138. See also Def's SUMF (ECF No. 85), Ex. 58, Dr. Tellefson Report. *[sic]* | psychiatric disorder, and in particular, she does not have any psychiatric disorder causally related to her allegations in the Complaint." ECFMG Ex. 67 at 4. |
| 107 Ms. Powell is a 32 year old mother of five children. Ex. 17, Powell depo. at 7, 11. | Admitted. |
| 108 Ms. Powell initially encountered Igberase, whom she knew as Charles Akoda, upon presentation to the medical office of Abdul Chaudry, M.D., in 2014. Ex. 17, Powell depo. at 40, 94. Ms. Powell had been referred to Dr. Chaudry for obstetric care but was assigned to Igberase due to Dr. Chaudry's unavailability. Ex. 17, Powell depo. at 39-40. During her pregnancy, Igberse *[sic]* acted in a flirtatious manner that made her feel uncomfortable, but she nevertheless trusted that he was a competent and appropriately credentialed physician providing appropriate medical care. Ex. 34, Declaration of Elsa Powell. | The first sentence in Plaintiffs' Paragraph 108 is admitted.<br><br>The second sentence in Plaintiffs' Paragraph 108 is admitted.<br><br>For the third sentence in Plaintiffs' Paragraph 108, ECFMG admits that Ms. Powell makes these assertions. |
| 109 Igberase also delivered her child at Prince George's Hospital Center and saw Ms. Powell post-delivery as well. Ex. 17, Powell depo. at 42, 88. The delivery was complicated by significant bleeding requiring surgery. Ex. 34, Declaration of Elsa Powell. | Admitted. |
| 110 Ms. Powell trusted that Igberase was a duly licensed and credentialed physician and suffered emotional harm upon learning that the man she trusted to touch the most intimate parts of her body and deliver her baby, had lied about his identity and background. Ex. 17, Powell depo. at 79; Ex. 34, Declaration of Elsa Powell. Ms. Powell was shocked and disturbed and felt violated by someone she did not know. Ex. 17, Powell depo. at 79. See also Def's SUMF (ECF No. 85) Ex. 58, Dr. Tellefson Report. | ECFMG admits that Ms. Powell makes these assertions, but ECFMG denies Ms. Powell has suffered any emotional distress due to Akoda's identity. Dr. Fenichel determined that "there is no indication for psychiatric or psychological treatment for Ms. Powell in relation to the issues in the Complaint." ECFMG Ex. 63 at 6 |
| 110 As a result of learning about Igberase's conduct, Ms. Powell experienced recurrent nausea, stomach discomfort, fear, confusion, sleeplessness, crying, anger, nervous sweating and panic attacks. Ex. 34, Declaration of Elsa Powell | Denied. ECFMG denies that Ms. Powell has ever testified to experiencing nausea, stomach discomfort, confusion, crying, nervous sweating or panic attacks as a result of Akoda's conduct. *See* |

| *Plaintiffs' Statement of Additional Material Facts* | *ECFMG's Response* |
|---|---|
| | *generally* ECFMG Ex. 59. Ms. Powell specifically denied experiencing anxiety attacks to Dr. Fenichel. ECFMG Ex. 34. Further, Ms. Powell did not report these symptoms to either Dr. Fenichel or Dr. Tellefsen. ECFMG Ex. 34; ECFMG Ex. 58.<br><br>Moreover, Plaintiffs Ex. 34 is improper and in conflict with Ms. Powell's previous admissions in interrogatories, at deposition and in independent medical examinations. *See* ECFMG's Reply in Support of Motion for Summary Judgment at 13 n.2. |
| 110  Ms. Powell would not have consented to treatment had she known Igberase's identity and conduct. Ex. 34, Declaration of Elsa Powell. | ECFMG admits that Ms. Powell testified to this in her deposition. |
| 111  Desiree Evans is a 40 year old mother of one child. Ex. 18, Evans depo. at 8, 13. | Admitted. |
| 112  Ms. Evans first encountered Igberase, whom she knew as Charles Akoda, at Prince George's Hospital Center for the delivery of her child by C-section in March of 2016. Ex. 18, Evans depo. at 83; Ex. 35, Declaration of Desire Evans. During Ms. Evans's labor, Igberase manipulated her clitoris, telling her he needed to do so to stimulate her to push the baby. Ex. 18, Evans depo. at 132. Ex. 35, Declaration of Desire Evans. As this was her first experience having a baby, she trusted that his explanation for his conduct was medically valid. Ex. 35, Declaration of Desire Evans. | The first sentence in Plaintiffs' Paragraph 112 is admitted.<br><br>For the remainder of Plaintiffs' Paragraph 112, ECFMG admits that Ms. Evans makes these assertions. |
| 113  Ms. Evans has suffered emotional distress upon learning that physician whom she trusted for medical care misrepresented his identity. Ex. 18, Evans depo. at 165,172; Ex. 35, Declaration of Desire Evans. Ms. Evans is afraid to seek medical care for her and her child and has lost trust in the medical system. Ex. 18, Evans depo at 165, 172; Ex. 35, Declaration of Desire Evans. See also Def.'s SUMF (ECF No. 85) Ex. 58, Dr. Tellefson Report. As a result of learning about Igberase's conduct, her intimate relationship with her spouse has been damaged. | ECFMG denies that Ms. Evans has testified to experiencing nausea as a result of Akoda's conduct. *See generally* ECFMG Ex. 56. ECFMG admits that Ms. Evans has testified to experiencing certain other symptoms, but Dr. Fenichel found Ms. Evans' symptoms to be unrelated to her experiences with Akoda. ECFMG Ex. 57. |

| Plaintiffs' Statement of Additional Material Facts | ECFMG's Response |
|---|---|
| Ex. 35, Declaration of Desire Evans. As a result of learning about Igberase's conduct, Ms. Evans experienced feelings of nausea, disgust, depression, sadness, sleepless nights reflecting on Igberase's conduct, stress and anxiety, crying, impacts on her intimate relationship with her spouse, and nervousness. Many of these symptoms continue today. Ex. 35, Declaration of Desire Evans. Ms. Evans would not have consented to treatment had she known Igberase's identity and conduct. Ex. 35, Declaration of Desire Evans. | Moreover, Plaintiffs Ex. 35 is improper and in conflict with Ms. Evans' previous admissions in interrogatories, at deposition and in independent medical examinations. *See* ECFMG's Reply in Support of Motion for Summary Judgment at 13 n.2. |
| 114 | Plaintiffs have identified David Markenson, M.D., John C. Hyde Ph.D., FACHE, and Jerry Williamson, M.D., F.A.A.P., M.J, CHC., LHRM as experts to testify with respect to standard of care and elements of causation. These experts have issued reports containing opinions and have given deposition testimony. See Exs. 20, 36 and 37, respectively, Reports of Dr. Markenson, Dr. Hyde and Dr. Williamson. See also Ex. 1, Depo of. Dr. Markenson. | ECFMG admits that Plaintiffs have proffered these experts, who are the subject of Defendant's Motion to Exclude the Opinions and Anticipated Testimony of Plaintiffs' Experts Dr. David Markenson, Dr. John Charles Hyde, and Dr. Jerry Williamson. ECF 83. These experts lack the qualifications to offer opinions on ECFMG, reach improper legal conclusions, and lack reliable methodologies to support their opinions. Their opinions should be excluded pursuant to *Daubert* and Federal Rules of Evidence 403, 702, and 703. |

**REPLY TO PLAINTIFFS'**
**RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS**

As a preliminary matter, Plaintiffs' evidentiary objections proffered in response to certain record citations in ECFMG's Statement of Material Facts fail and are premature in any event.

**First**, Plaintiffs object to certain of ECFMG's exhibits as hearsay and unauthenticated. "Hearsay statements can be considered on a motion for summary judgment if they are capable of being admitted at trial." *Coulter v. Chase Bank USA, N.A.*, No. CV 18-1538, 2020 WL 5820700, at *8 (E.D. Pa. Sept. 30, 2020) (citing *FOP v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016)). ECFMG "need only explain the admissible form that is anticipated." *FOP*, 842 F.3d at 238. Additionally, at the summary judgment stage, evidence need not yet be authenticated. *Egan v. Live Nation Worldwide, Inc.*, 764 Fed. App'x 204, 208 (3d Cir. 2019). Moreover, "the burden of proof for authentication is slight." *Lexington Ins. Co. v. Western Pennsylvania Hosp.*, 423 F.3d 318, 328 (3d Cir. 2005). Federal Rule of Evidence 901(a) "requires a proponent of evidence to produce evidence sufficient to support a finding that the item is what the proponent claims it is." *Berger v. Zeghibe*, 465 F. App'x 174, 183 (3d Cir. 2012).

Plaintiffs raise hearsay objections for ECFMG's Exhibits 26, 34, 41, 50, and 51. Exhibits 26 and 34 (duplicates of the same document) are admissible as both a recorded recollection pursuant to Fed. R. Evid. 803(5) and a business record pursuant to Fed. R. Evid. 803(6). Exhibits 41, 50, and 51 are not being offered for their truth and are thus not hearsay. Fed. R. Evid. 801(c). Rather, they are being offered to show ECFMG's motivation for its conduct at the time and are therefore admissible for that purpose. *See Fahnestock v. Carlisle Reg'l Med. Ctr.*, 659 Fed. App'x 75, 78 (3d Cir. 2016); *compare with* Fed. R. Evid. 801(c)(2).

Plaintiffs also raise authentication objections for ECFMG's Exhibits 26, 34, 41, 50, and 51. As explained above, authentication is not even required for summary judgment. *See Egan*, 764 Fed. App'x 204 at 208. But even if it were, ECFMG has met the low bar:

- Exhibit 26/34 could be authenticated several ways, but on its own provides sufficient information about the author of the letter and its recipient that it could be authenticated at trial, which meets ECFMG's burden. *See Berger*, 465 F. App'x at 183. Further, several pieces of evidence that Plaintiffs do not dispute support the authenticity of the letter in Exhibit 26/34, given its contents and date. *See, e.g.*, ECFMG Ex. 25, 27, 28.

- Exhibits 41, 50, and 51 contain emails, and "courts have authenticated emails by relying on the email addresses in the headers, explanations in the body of the emails, conduct after receiving the emails, and other circumstantial evidence." *United States v. CVS Caremark Corp.*, No. 09-4672, 2015 WL 5582553, at *32 n.24 (E.D. Pa. Sept. 22, 2015), *aff'd on other grounds sub nom. United States ex rel. Spay v. CVS Caremark Corp.*, 875 F.3d 746 (3d Cir. 2017). Given the email addresses in the headers, the contents of the emails, and the undisputed facts of this case, these emails can be properly authenticated for summary judgment.

**Second**, Plaintiffs object to ECFMG's use of Plaintiffs' verified responses to ECFMG's interrogatories (ECFMG Exs. 44, 45, 46, 47). Those objections fail. Fed. R. Civ. P. 56(c)(1)(A) explicitly allows interrogatory answers to support factual positions at summary judgment. *See also Giuliani v. Springfield Twp.*, 238 F. Supp. 3d 670, 689 (E.D. Pa. 2017), *aff'd*, 726 F. App'x 118 (3d Cir. 2018).

**Third**, Plaintiffs object to ECFMG's use of Plaintiffs' own statements from a lawsuit Plaintiffs filed against a different defendant, Dimensions Healthcare System (ECFMG Exs. 42, 43, 62, 64, 69, 70, 76). However, all of those documents are admissible as evidence under Fed. R. Evid. 801(d)(2) as statements of a party opponent. *See Koresko v. United States*, 123 F. Supp. 3d 654, 669–70 (E.D. Pa. 2015) (explaining that pleadings, including amended, withdrawn, or superseded pleadings, and evidentiary admissions, including interrogatories, from related litigation may be admissible as evidence).

With respect to the particular position articulated by Plaintiffs in response to each fact in ECFMG's Statement of Material Facts, and for completeness' sake, ECFMG replies as follows:

| | ECFMG's Statement of Undisputed Material Facts | Plaintiffs' Response | ECFMG's Reply |
|---|---|---|---|
| 1 | Defendant Educational Commission for Foreign Medical Graduates ("ECFMG") is a private non-profit organization based in Philadelphia, Pennsylvania. About ECFMG page, https://ecfmg.org/about/index.html, attached Exhibit 1. | Admitted. | n/a |
| 2 | ECFMG promotes quality health care for the public by, among other things, certifying physicians who received their basic medical degree outside of the United States and Canada (known as international medical graduates or "IMGs") as having met specific minimum requirements to be candidates for graduate medical education programs in the United States. Dep. of Kara Corrado, attached as Exhibit 2, at 40:1-22; About ECFMG, History, https://ecfmg.org/about/history.html, attached as Exhibit 3. | Admitted. | n/a |
| 3 | At the relevant time, to qualify for ECFMG Certification, an IMG had to: (i) pass an English exam and two substantive exams, either Step 1 and Step 2 of the United States Medical Licensing Examination ("USMLE") or Basic Medical Science and Clinical Science of the Foreign Medical Graduate Examination in the Medical Sciences ("FMGEMS"); and (ii) have their medical school diploma successfully primary-source verified with the issuing medical school as authentic. ECFMG Certification Page, attached as Exhibit 4; Ex. 2 at 88:21-89:2; Sep. 17, 1993 Letter from Marjorie P. Wilson, attached as Exhibit 5. | Admitted. | n/a |
| 4 | Once an applicant's record was verified and complete and the applicant passed the required substantive exams, ECFMG issued the applicant a certificate. Ex. 2 at 241:12-22. | Denied. The phrase "once an applicant's record was verified and incomplete" [*sic*] is inaccurate. The only thing ECFMG verifies is | ECFMG agrees that it only primary source verified medical diplomas as part of its ECFMG Certification process at the pertinent time. However, ECFMG also required applicants to |

| | ECFMG's Statement of<br>Undisputed Material Facts | Plaintiffs' Response | ECFMG's Reply |
|---|---|---|---|
| | | an applicant's diploma. Ex. 3, Kelly depo. at 18, 34, 35; Ex. 2, Corrado depo. at 88. | pass substantive exams prior to issuing an ECFMG Certificate. ECFMG Ex. 2 at 241:12-22. |
| 5 | ECFMG Certification status information is made available only to certain third parties in the medical field, like residency programs, hospitals, licensing boards, and employers. Ex. 2 at 244:1–8. | Admitted. However, the transcript reference is incorrect. | Plaintiffs are mistaken. ECFMG Ex. 2 at 244:1–8 states:<br><br>"Q. To whom would ECFMG release a ECFMG certification status report? A. To residency programs, licensing boards, and other organizations that are employing the physician as a physician. Q. Like hospitals and -- A. Hospitals, right, CVOs that are working on behalf of the hospitals." |
| 6 | ECFMG Certification status information is not available to members of the general public (including patients of doctors who have received ECFMG Certification). Ex. 2 at 243:9-25. | Admitted. | n/a |
| 7 | At the relevant time, ECFMG Certification status reports for residency programs contained the following information: | Admitted. | n/a |
| 7.a. | IMG's name | Admitted. | n/a |
| 7.b. | USMLE number | Admitted. | n/a |
| 7.c. | medical school name and country | Admitted. | n/a |
| 7.d. | graduation year | Admitted. | n/a |
| 7.e. | ECFMG Certification status | Admitted. | n/a |

| | *ECFMG's Statement of*<br>*Undisputed Material Facts* | *Plaintiffs' Response* | *ECFMG's Reply* |
|---|---|---|---|
| 7.f. | validity of ECFMG Certification | Admitted. | n/a |
| 7.g. | date of issuance of ECFMG Certification. Ex. 2 at 248:16-249:2. | Admitted. | n/a |
| 8 | ECFMG Certification status reports for residency programs do **not** verify: | Admitted. | n/a |
| 8.a. | an IMG's identity | Admitted. | n/a |
| 8.b. | Social Security number | Admitted. | n/a |
| 8.c. | immigration status | Admitted. | n/a |
| 8.d. | passport information | Admitted. | n/a |
| 8.e. | criminal background | Admitted. | n/a |
| 8.f. | readiness to treat patients | Admitted. | n/a |
| 8.g. | ethics | Admitted. | n/a |
| 8.h. | honesty | Admitted. | n/a |
| 8.i. | morality | Admitted. | n/a |
| 8.j. | Character. Ex. 2 at 198:16-22, 200:13-15, 240:18-241:6, 242:6-243:3, 244:22-245:13. | Admitted. | n/a |
| 9 | ECFMG Certification does not authorize an IMG to treat patients as a doctor. Ex. 2 at 244:22-245:1. | Admitted. | n/a |
| 10 | Recipients of ECFMG Certification status reports, such as residency programs and hospitals, typically consider things like the following when evaluating IMGs: | Admitted. | n/a |
| 10.a. | in-person interviews | Admitted. | n/a |
| 10.b. | information provided directly by the IMG | Admitted. | n/a |
| 10.c. | letters of recommendation | Admitted. | n/a |
| 10.d. | skills assessments or additional examinations | Admitted. | n/a |
| 10.e. | reports from prior educational or training programs | Admitted. | n/a |
| 10.f. | medical school transcripts | Admitted. | n/a |
| 10.g. | information obtained as part of a background check | Admitted. | n/a |
| 10.h. | information obtained as part of a background check. Rebuttal Rep. of L. Beck, attached as Exhibit 6, at 4; Rebuttal Rep. of M. Smith, attached as Exhibit 7, at 2. | Admitted. | n/a |

| | ECFMG's Statement of<br>Undisputed Material Facts | Plaintiffs' Response | ECFMG's Reply |
|---|---|---|---|
| 11 | The institution receiving the ECFMG Certification status report independently assesses the criteria enumerated in ¶ 8. Ex. 6 at 4–7. | Admitted. | n/a |
| 12 | State licensing boards have their own requirements beyond ECFMG Certification for issuing a license to practice medicine. Ex. 6 at 3–4. | Admitted. | n/a |
| 13 | In Maryland, those requirements include graduation from an approved medical school, being of good moral character, completion of at least 2 years of a residency program accredited by the Accreditation Council for Graduate Medical Education or the American Osteopathic Association, as well as further requirements. Akoda App. to Md. Bd. of Physicians, attached as Exhibit 8. See also Ex. 6 at 4; Ex. 7 at 3-4. | Admitted. | n/a |
| 14 | Residency programs typically track and evaluate residents on an ongoing basis based on a variety of factors other than ECFMG Certification status. Ex. 7 at 3. These evaluations often include annual progression reports, annual examinations, and ongoing supervision by the faculty of the residency program. Ex. 7 at 3. | Admitted. | n/a |
| 15 | Hospitals typically continue to evaluate their physicians on an ongoing basis through their Medical Director's office on attributes such as clinical performance, demeanor, and interactions with patients and staff. Ex. 6 at 6–7. | Admitted. | n/a |
| 16 | IMGs are subject to normal employee processes—like payroll, taxes, healthcare programs and other requirements of employment—and residency programs and hospitals gather information from IMGs independently for these processes. Ex. 7 at 5. | Admitted. | n/a |
| 17 | The American Board of Obstetrics and Gynecology has its own certification process independent of ECFMG Certification. Ex. 6 at 7. | Admitted. | n/a |
| 18 | Medical specialty board certification typically requires passing a written and oral examination, undergoing a personal interview, review of academic credentials, review of prior case logs, letters of recommendation from residency and fellowship directors, and | Admitted. | n/a |

| | ECFMG's Statement of Undisputed Material Facts | Plaintiffs' Response | ECFMG's Reply |
|---|---|---|---|
| | consideration of any disciplinary action, criminal, or immoral behavior that comes to their attention. Ex. 6 at 7. | | |
| 19 | Following medical specialty board certification, a candidate must comply with annual requirements for ongoing educational modules to maintain certification. Ex. 6 at 7. | Admitted. | n/a |
| 20 | ECFMG defines conduct that does or tries to subvert ECFMG's processes and programs as "irregular behavior" and has a process for evaluating suspected irregular behavior. ECFMG Irregular Behavior Policy, attached as Exhibit 9; Ex. 2 at 55:23-56:7. | Objection. There is no evidence that this "process" was published in the period 1992 through 2006. | Plaintiffs' objection is irrelevant and does not create a genuine issue of material fact. Even if ECFMG's process and procedures were not "published" at the time, ECFMG followed an internal process then nonetheless. Plaintiffs Ex. 2 at 60 ("Yes, those procedures that were documented in 2015 were the procedures that staff had been using at least since I started working directly on cases of irregular behavior, which is 2008 onward, and my understanding would be prior to that as well.") |
| 21 | When ECFMG suspects that an individual may have engaged in irregular behavior, ECFMG staff investigates by, inter alia, communicating with the source of the suspicion and with the accused. Ex. 2 at 76:12-77:5. | Admitted. | n/a |

| | ECFMG's Statement of Undisputed Material Facts | Plaintiffs' Response | ECFMG's Reply |
|---|---|---|---|
| 22 | If ECFMG staff determines that there is sufficient evidence that an individual has engaged in irregular behavior, the matter is referred to ECFMG's Medical Education Credentials Committee ("MECC"), a sub-committee of ECFMG's Board of Trustees, for a formal determination on the merits. Ex. 2 at 76:24-77:5. | Admitted. | n/a |
| 23 | Mere suspicions of irregular behavior are not made public or reported to third parties to avoid damage to the suspect individual's career and reputation based on unsubstantiated allegations. Ex. 2 at 181:9-23. | Admitted. | n/a |
| 24 | If an IMG is found to have engaged in irregular behavior by ECFMG's MECC, ECFMG annotates the individual's record and can, inter alia, limit the individual's participation in ECFMG programs or withhold or revoke existing ECFMG Certificates. Ex. 9. | Admitted. | n/a |
| 25 | ECFMG is not a government enforcement or investigative agency. Ex. 2 at 76:12-77:5. | Admitted. | n/a |
| 26 | In 1992, an individual applied to ECFMG using the name Oluwafemi Charles Igberase. Verification Papers – University of Ibadan, attached as Exhibit 10. | Denied. ECFMG Exhibit 10 is Akoda's alleged diploma, not an application. | Plaintiffs' objection does not create a genuine issue of material fact. Exhibit 10 contains ECFMG's verification of a University of Ibadan diploma for Charles Olufemi Igebraese. Other sources Plaintiffs have not objected to also indicate that Akoda first applied to ECFMG in 1992. *See, e.g.*, ECFMG Ex. 25. |
| 27 | The individual who had applied to ECFMG under the name Oluwafemi Charles Igberase presented ECFMG with a medical school diploma from the University of Ibadan in Nigeria. Ex. 10. | Admitted. | n/a |

28

| | ECFMG's Statement of Undisputed Material Facts | Plaintiffs' Response | ECFMG's Reply |
|---|---|---|---|
| 28 | University of Ibadan sent ECFMG verification of diplomas and credentials for Charles Oluwafemi Igberase. Ex. 10. | Plaintiffs cannot admit or deny this statement because they have no personal knowledge of the "verification," nor did Ibaden [*sic*] purport to verify any credentials other than the diploma. | Plaintiffs' response does not dispute ECFMG's Paragraph 28, and does not create a genuine issue of material fact. |
| 29 | In July of 1992, the individual who had applied to ECFMG under the name Oluwafemi Charles Igberase passed the ECFMG English test and failed both the basic medical science component and the clinical science component of the FMGEMS. Sep. 15, 1992 Igberase Score Report, attached as Exhibit 11. | Admitted. | n/a |
| 30 | In January of 1993, the individual who had applied to ECFMG under the name Oluwafemi Charles Igberase passed the ECFMG English test and the clinical science component of the FMGEMS but failed the basic medical science component of the FMGEMS. Mar. 27, 1993 Igberase Score Report, attached as Exhibit 12. | Admitted. | n/a |
| 31 | In July of 1993, the individual who had applied to ECFMG under the name Oluwafemi Charles Igberase passed the basic science component of the FMGEMS. Ex. 5. | Admitted. | n/a |
| 32 | In September of 1993, ECFMG notified the individual who had applied under the name Oluwafemi Charles Igberase that he had satisfied all testing criteria for ECFMG Certification. Ex. 5. | Admitted. | n/a |
| 33 | ECFMG issued an ECFMG Certificate (No. 482-700-2) to the individual who had applied to ECFMG under the name Oluwafemi Charles Igberase. June 22, 1995 Letter from W. Kelly, attached as Exhibit 13. | Admitted. | n/a |

| | ECFMG's Statement of Undisputed Material Facts | Plaintiffs' Response | ECFMG's Reply |
|---|---|---|---|
| 34 | The individual who had applied to ECFMG under the name Oluwafemi Charles Igberase did not gain admission to a residency program. July 20, 1995 Letter from Igberase Oluwafemi Charles, attached as Exhibit 14, at 1–2. | Admitted. | n/a |
| 35 | In 1994, the individual who had applied to ECFMG under the name Oluwafemi Charles Igberase applied again for ECFMG Certification, this time using the name Igberase Oluwafemi Charles. Plea Agreement Terms, attached as Exhibit 15, at 9. | Admitted. | n/a |
| 36 | In the application under the name "Igberase Oluwafemi Charles," the individual answered "no" to the question of whether he had previously applied to ECFMG. Ex. 15 at 9; May 3, 2001 Letter from W. Kelly, attached as Exhibit 16. | Admitted. | n/a |
| 37 | ECFMG issued an ECFMG Certificate (No. 0-519-573-0) to the individual who applied to ECFMG using the name Igberase Oluwafemi Charles. Dec. 7, 1995 Letter from W. Kelly, attached as Exhibit 17. | Admitted. | n/a |
| 38 | Misrepresenting ECFMG application history to ECFMG can constitute irregular behavior. Ex. 17 at 14. | Admitted. | n/a |
| 39 | ECFMG notified the individual who applied to ECFMG using the name Igberase Oluwafemi Charles that it was conducting an investigation of whether he had previously applied to ECFMG when he indicated on his application that he had not previously applied. Ex. 17 at 14. | Admitted. | n/a |
| 40 | The individual who had applied to ECFMG under the name Igberase Oluwafemi Charles admitted that he had previously applied to ECFMG, despite representing otherwise on his application. Ex. 17 at 15–16. | Admitted. | n/a |
| 41 | ECFMG staff determined that there was sufficient evidence that the individual who had applied to ECFMG under the name Igberase Oluwafemi Charles had engaged in irregular behavior by | Plaintiffs cannot admit or deny paragraph 41. | Plaintiffs' response does not dispute ECFMG's Paragraph 41, and does not create a genuine issue of |

| | ECFMG's Statement of Undisputed Material Facts | Plaintiffs' Response | ECFMG's Reply |
|---|---|---|---|
| | misrepresenting his application history with ECFMG to refer the matter to the MECC. Ex 17 at 13. | ECFMG Exhibit 17 does not state this. | material fact. ECFMG Ex. 17 summarizes on its face the individual's irregular behavior and informs him that his case was referred to the MECC. ECFMG Ex. 17 at 13–14. It is a writing that speaks for itself. |
| 42 | The MECC found that the individual who had applied to ECFMG under the name Igberase Oluwafemi Charles had engaged in irregular behavior and (1) invalidated the ECFMG Certificate issued to Oluwafemi Igberase Charles; and (2) revoked the ECFMG Certificate issued to Oluwafemi Charles Igberase. Ex. 17. | Admitted. | n/a |
| 43 | ECFMG later barred the individual who had applied to ECFMG under the names Oluwafemi Charles Igberase and Igberase Oluwafemi Charles from applying to ECFMG after he submitted additional fraudulent applications using other variations of the names Oluwafemi, Charles, and Igberase, each of which ECFMG identified and refused to process when received. Ex. 16; May 22, 2002 Letter from W. Kelly, attached as Exhibit 18. | Admitted. | n/a |
| 44 | In 1996, an individual using the name John Nosa Akoda applied for ECFMG Certification with applicant number 0-553-258-5. Akoda ECFMG Application, attached as Exhibit 19. | Admitted. | n/a |
| 45 | The individual who had applied to ECFMG under the name John Nosa Akoda applied to take the March 1996 USMLE Step 2 exam and the June 1996 USMLE Step 1 exam. Aug. 22, 2000 Letter from W. Kelly, attached as Exhibit 20. | Admitted. | n/a |
| 46 | The individual who had applied to ECFMG under the name John Nosa Akoda presented ECFMG with a medical school diploma from the University of Benin. University of Benin Degree, attached as Exhibit 21. | Admitted. | n/a |

| | ECFMG's Statement of<br>Undisputed Material Facts | Plaintiffs' Response | ECFMG's Reply |
|---|---|---|---|
| 47 | The University of Benin sent ECFMG verification of diploma and credentials for Johnbull Enosakhare Akoda. Ex. 21. | Plaintiffs cannot admit or deny this statement because they have no personal knowledge of the "verification," nor did Ibaden [*sic*] purport to verify any credentials other than the diploma. | Plaintiffs' response does not dispute ECFMG's Paragraph 47 and does not create a genuine issue of material fact because ECFMG's Paragraph 47 relates to verification from the University of ***Benin***, not the University of ***Ibadan***. |
| 48 | The individual who applied to ECFMG under the name John Nosa Akoda misrepresented his ECFMG application history to ECFMG and made no reference to any previous applications to ECFMG. Ex. 19; Ex. 15 at 10. | Admitted. | n/a |
| 49 | The individual who had applied to ECFMG under the name John Nosa Akoda passed the English exam in August 1996. Aug. 12, 1997 Letter from N. Gary, attached as Exhibit 22. | Admitted. | n/a |
| 50 | The individual who had applied to ECFMG under the name John Nosa Akoda passed the USMLE Step 2 Exam in August 1996. Ex. 22. | Admitted. | n/a |
| 51 | The individual who had applied to ECFMG under the name John Nosa Akoda passed the USMLE Step 1 Exam in June 1997. Ex. 22. | Admitted. | n/a |
| 52 | ECFMG certified the individual who had applied to ECFMG under the name John Nosa Akoda in 1997 based on his passing of Steps 1 and 2 of the USMLE and the primary source verification of a diploma by the University of Benin. Verification Papers – University of Benin, attached as Exhibit 23; John Nosa Akoda ECFMG Certificate, attached as Exhibit 24. | Admitted. | n/a |
| 53 | After obtaining this ECFMG Certification, the individual who had applied to ECFMG under the name John Nosa Akoda successfully | Admitted. | n/a |

| | ECFMG's Statement of Undisputed Material Facts | Plaintiffs' Response | ECFMG's Reply |
|---|---|---|---|
| | passed Step 3 of the USMLE. Md. State Bd. of Physicians Decision, attached as Exhibit 25, at 5. | | |
| 54 | Oluwafemi Charles Igberase, Igberase Oluwafemi Charles and John Nosa Akoda were all the same person (hereinafter referred to as "Akoda"). Ex. 15 at 9–11. | Admitted. | n/a |
| 55 | Akoda applied to a residency program in internal medicine at Jersey Shore Medical Center ("JSMC"). Ex. 15 at 10.; Nov. 7, 2000 Letter from A.M. Sesso, attached as Exhibit 26. | Objection. This letter has not been authenticated and is hearsay and is inadmissible. | There is no genuine dispute about this fact. Plaintiffs admit that Akoda was a resident at JSMC, which would require that he applied for the residency. *See* Plaintiffs' Paragraph 38 ("It shows that [Akoda] had started a residency program at JSMC.") And Plaintiffs' own exhibits support the fact that Akoda applied to a residency program at JSMC. *See* Plaintiffs Ex. 3 at 153. Further, see ECFMG's response regarding the admissibility of Exhibit 26 in the preliminary statement preceding this chart. Moreover, several other pieces of evidence that Plaintiffs do not dispute support the authenticity of Exhibit 26, given its contents and date. *See* ECFMG Ex. 25, 27, 28. |

| | ECFMG's Statement of Undisputed Material Facts | Plaintiffs' Response | ECFMG's Reply |
|---|---|---|---|
| 56 | JSMC accepted Akoda as a resident in its internal medicine program in 1998. Akoda Request for Permanent Revalidation of Standard ECFMG Cert., attached as Exhibit 27. | Admitted. | n/a |
| 57 | In 1999, JSMC received an allegation that Akoda had participated in two other U.S. residency programs under the name Oluwafemi Charles Igberase. Aug. 11, 2000 Letter from J. McCorkel, attached as Exhibit 28. | Admitted. | n/a |
| 58 | When JSMC tried to verify the Social Security number that Akoda provided directly to JSMC in his residency paperwork, JSMC concluded that it belonged to Charles Igberase. Ex. 28. | Admitted. | n/a |
| 59 | JSMC notified ECFMG of its investigation into Akoda, but JSMC did not inform ECFMG of the source of the allegation against Akoda. Ex. 28. | Plaintiffs admit that JSMC notified ECFMG of its investigation but there is no evidence in the record that ECFMG ever requested of JSMC the identity of the source of the allegation against Akoda. | Plaintiffs' response to ECFMG's Paragraph 59 does not create a genuine issue of material fact because the response is irrelevant to the undisputed fact that the JSMC did not inform ECFMG of the source of the allegation. |
| 60 | In an August 11, 2000 letter from James McCorkel at JSMC, Mr. McCorkel asked if ECFMG had received requests for Akoda's ECFMG certification status from Harlem Hospital Center or JFK Memorial Hospital. Ex. 28. | Admitted. | n/a |
| 61 | ECFMG had no records indicating that Harlem Hospital Center or JFK Memorial Hospital had requested ECFMG verification for any of Akoda's aliases or USMLE / ECFMG identification numbers. Aug. 22, 2000 Letter from S. Seeling, attached as Exhibit 29. | Admitted. | n/a |

| | ECFMG's Statement of Undisputed Material Facts | Plaintiffs' Response | ECFMG's Reply |
|---|---|---|---|
| 62 | ECFMG conducted its own investigation to determine if Akoda and Igberase were the same person. Ex. Ex. 20; Sep. 27, 2000 Memo, attached as Exhibit 30; Dec. 21, 2000 Memo, attached as Exhibit 31. | Admitted. | n/a |
| 63 | ECFMG required Akoda to submit an explanation for why it appeared he had previously applied to ECFMG but had answered "no" to the question whether he had previously submitted an application to ECFMG. Ex. 20. | Admitted. | n/a |
| 64 | In response to the inquiry from ECFMG, Akoda explained that "Igberase Charles" was his cousin and admitted using a social security number allegedly belonging to his cousin. Aug. 29, 2000 Letter from Akoda, attached as Exhibit 32; Ex. 30. | Admitted. | n/a |
| 65 | Akoda provided ECFMG with what appeared to be his Nigerian passport and an international driving permit as documentation of his identity. Ex. 32; Ex. 30. | Plaintiffs admit that Igberase provided ECFMG with a passport and an international driving permit but ECFMG made no effort to verify the authenticity of these documents. Ex. 2, Corrado depo. at 161. | Plaintiffs admit the material facts of ECFMG's Paragraph 65. The remainder of Plaintiffs' response does not create a genuine issue of material fact and is irrelevant to whether Akoda provided the passport and driving permit as documentation of his identity. |
| 66 | ECFMG staff determined that there was insufficient evidence of irregular behavior to bring Akoda before the ECFMG MECC on an allegation that he was Igberase. Dec. 22, 2000 Memo, attached as Exhibit 33; Ex. 2 at 150:24-151:6. | Admitted. Further, ECFMG made no effort to refer "Akoda" to the ECFMG MECC for his misuse of a social security number or for | Plaintiffs admit the material facts of ECFMG's Paragraph 66.<br><br>Plaintiffs' supplemental statement is not supported by their citation, *see* Plaintiffs Ex. 3 at 201, and |

| | ECFMG's Statement of<br>Undisputed Material Facts | Plaintiffs' Response | ECFMG's Reply |
|---|---|---|---|
| | | providing false information on his application. Ex. 3, Kelly depo. at 201. | does not create a genuine issue of material fact. |
| 67 | In 2000, JSMC discharged Akoda because of perceived discrepancies involving his Social Security number and green card, which was not part of his ECFMG application. Ex. 31. | Admitted. | n/a |
| 68 | In a November 7, 2000 letter, JSMC wrote to the Maryland Board of Physicians about the discrepancies in Akoda's Social Security number and green card. Nov. 7. 2000 Letter from A.M. Sesso, attached as Exhibit 34. | Objection. There is no evidence in the record authenticating this letter. Furthermore, it is hearsay and is inadmissible. | ECFMG incorporates by reference its reply regarding ECFMG's Paragraph 55, noting that Exhibits 24 and 36 are the same document. |
| 69 | ECFMG continued to investigate Akoda but took no adverse action against him at that time because ECFMG staff concluded there was insufficient evidence of irregular behavior. Ex. 2 at 150:24-151:6; Nov. 22, 2006 Letter from W. Kelly, attached as Exhibit 35. | Admitted. | n/a |
| 70 | ECFMG staff was nonetheless suspicious of Akoda's identity. Ex. 33. | W. Kelly believed Akoda and Igberase were one and the same. ECFMG Ex. 33. | Plaintiffs' response is a non-sequitur and does not create a genuine issue of material fact regarding ECFMG's Paragraph 70. Exhibit 33 is a document that speaks for itself. |
| 71 | Akoda applied to Howard University Hospital's residency program. March 16, 2007 Letter to John-Charles Akoda from Howard University Hospital, attached as Exhibit 36. | Admitted. | n/a |
| 72 | Howard sent Akoda a letter of acceptance dated March 16, 2007. Ex. 36. | Admitted. | n/a |

| | ECFMG's Statement of Undisputed Material Facts | Plaintiffs' Response | ECFMG's Reply |
|---|---|---|---|
| 73 | Akoda admitted to providing Howard a false permanent resident card in the name "N. Akoda, John Charles." Ex. 15 at 10. | Admitted. | n/a |
| 74 | Akoda began Howard's residency program on July 1, 2007 and completed it on June 30, 2011. Howard University Hospital Certificate, attached as Exhibit 37. | Admitted. | n/a |
| 75 | The Virginia Department of Health Professions licensed Akoda to practice medicine in the Commonwealth of Virginia in 2011. Virginia License Suspension, attached as Exhibit 38. | Admitted. | n/a |
| 76 | The Maryland State Board of Physicians licensed Akoda to practice medicine in the state of Maryland in September of 2011. Ex. 25 at 5. | Admitted. | n/a |
| 77 | On his application for medical licensure in Maryland, Akoda omitted his residency at JSMC. Akoda Md. Bd. of Physicians App., attached as Exhibit 39, at 5. | Admitted. | n/a |
| 78 | Akoda's application for medical licensure in Maryland required that if his name was "not written the same way on all documents," he had to "submit documentation to explain how and why [his] name differs and submit one of the following documents to support the name change: Passport, INS card, birth certificate, court document, marriage license, court decree." Ex. 39 at 4. | The application is a document which speaks for itself. | Plaintiffs' response does not dispute ECFMG's Paragraph 78 and does not create a genuine issue of material fact with respect thereto. |
| 79 | The ECFMG Certification status report for Dr. Akoda received by the Maryland Board of Physicians in 2011 stated that its purpose is to "indicate whether this individual is certified by ECFMG" and that ECFMG "verified medical school credentials directly with the medical schools[.]" ECFMG Certification Status Rep., attached as Exhibit 40. | [No answer.] | Plaintiffs failed to respond to ECFMG's Paragraph 79 and therefore waived any objection or denial. There is no genuine issue of material fact with respect to this paragraph. |
| 80 | Akoda's name appeared differently on his medical licensure application ("John Charles Nosa Akoda" and "Charles John Nosa Akoda"), ECFMG Certificate ("John Nosa Akoda"), his medical school diploma ("Johnbull Enosakhare Akoda"), and his residency | [No answer.] | Plaintiffs failed to respond to ECFMG's Paragraph 79 and therefore waived any objection or denial. There is no genuine issue of material |

| | ECFMG's Statement of<br>Undisputed Material Facts | Plaintiffs' Response | ECFMG's Reply |
|---|---|---|---|
| | program certificate of completion ("John-Charles Nosa Akoda"). Ex. 25 at 3 n.4; Ex. 24; Ex. 23; Ex. 37. | | fact with respect to this paragraph. |
| 81 | Akoda admitted to providing a false permanent resident card and a false Maryland driver's license in connection with: | Admitted. | n/a |
| 81.a. | His application for medical licensure in Maryland. Ex. 15 at 10. | Admitted. | n/a |
| 81.b. | His application for privileges at Prince George's Hospital Center. Ex. 15 at 9. | Admitted. | n/a |
| 82 | The Maryland Board of Physicians was aware of the allegations that Akoda had used other names and may have misrepresented his identity in 2014. Email Correspondence Between ECFMG and Md. Bd. of Physicians, attached as Exhibit 41. | Objection. There is no evidence authenticating this letter. Furthermore, it is hearsay and is inadmissible. | See ECFMG's response regarding the admissibility of Exhibit 41 in the preliminary statement preceding this chart. |
| 83 | Akoda's Maryland medical license was not revoked until July 10, 2017. Ex. 25 at 8. | Admitted. | n/a |
| 84 | The grounds for revocation of Akoda's medical license were that he plead guilty in 2016 to Social Security fraud, which constituted a crime of moral turpitude requiring revocation. Ex. 25 at 5–6. | Admitted. | n/a |
| 85 | Akoda renewed his Maryland medical license through September 30, 2016, when it expired. Ex. 25 at 3. | Admitted. | n/a |
| 86 | The Virginia Department of Health Professions revoked Akoda's Virginia medical license on April 25, 2017 because of his criminal conviction. Ex. 38. | Admitted. | n/a |
| 87 | Prince George's Hospital Center awarded Akoda medical privileges to treat patients in 2012. Ex. 15 at 9. | Admitted. | n/a |
| 88 | In a previous lawsuit, Plaintiff Evans claimed that Dimensions Healthcare, which operated Prince George's Hospital, could have "avoided all injuries, damages, . . . and disability" suffered by Ms. Evans: | Objection. The quoted language is from a Complaint which was dismissed without prejudice. It | The information in ECFMG's Paragraph 88 and ECFMG Ex. 42 is relevant and admissible. It is from a sworn statement of a Plaintiff and pertains |

| | ECFMG's Statement of Undisputed Material Facts | Plaintiffs' Response | ECFMG's Reply |
|---|---|---|---|
| | [Dimensions] and its duly authorized agents, apparent agents, servant and/or employees failed to perform an appropriate and proper investigation and background check of Akoda before granting him privileges to act as a practitioner and specialist in obstetrics and gynecology. Had they done so, as was required, Akoda's fraudulent conduct would have been discovered, and he would have been precluded from seeing patients at [Dimensions'] institutions or entities, thereby avoiding all of the injuries, damages (economic and non-economics) and disability suffered by this Plaintiff.<br><br>Evans Dimensions Rog. Answers, attached as Exhibit 42, at 2-3. | is irrelevant and inadmissible. | directly to the subject of this lawsuit. *See* Fed. R. Evid. 401. Also see ECFMG's response regarding the admissibility of Exhibit 42 in the preliminary statement preceding this chart. |
| 89 | In a previous lawsuit, Plaintiffs offered an expert in health care administration, credentialing, and privileging who believed Dimensions Healthcare was responsible for Plaintiffs' injuries, damages and permanent disability:<br><br>[Dimensions] breached the applicable standards of administrative care by negligently failing to use required and reasonable care to investigate, credential, grant privileges, monitor and supervise their medical personnel including, but not limited to, Akoda and to discover, stop and report any professional misconduct of which they should have known. As a direct and proximate result of the Defendants' continuing negligence, the Claimants, and others similarly situated, suffered physical pain, emotional anguish, and damages as well as permanent disability. Had [Dimensions] complied with the applicable standards of administrative care the Claimants, and others similarly situated, would not have suffered their injuries, damages and permanent disability.<br><br>Bojko Rep., attached as Exhibit 43, at 3. | Objection. The quoted language is from a prior case which was dismissed without prejudice. It is irrelevant and inadmissible. | The information in ECFMG's Paragraph 89 and ECFMG Ex. 43 is relevant and admissible. It is an expert report offered by Plaintiffs in another lawsuit and pertains directly to the subject of this lawsuit. *See* Fed. R. Evid. 401. Also see ECFMG's response regarding the admissibility of Exhibit 43 in the preliminary statement preceding this chart. In addition, ECFMG has designated this testimony pursuant to Federal Rule of Civil Procedure 26(a)(2)(C) in its October 14, 2019 |

| | *ECFMG's Statement of Undisputed Material Facts* | *Plaintiffs' Response* | *ECFMG's Reply* |
|---|---|---|---|
| | | | Disclosure of Rebuttal Expert Testimony. |
| 90 | Akoda also worked with medical practices run by Dr. Abdul Chaudry and Dr. Javaka Moore. Evans Supp. Answers to Rogs., attached as Exhibit 44 at Rog. 1; Powell Supp. Answers to Rogs., attached as Exhibit 45 at Rog. 1; Riggins Supp. Answers to Rogs., attached as Exhibit 46, at Rog. 1; & Russell Supp. Answers to Rogs., attached as Exhibit 47, at Rog. 1. | Objection. This information is irrelevant and inadmissible. | This information is plainly relevant, as some of the Plaintiffs came to be treated by Akoda through the practices run by Dr. Chaudry and Dr. Moore. *See* Fed. R. Evid. 401. Furthermore, ECFMG Exhibits 44-47 are Plaintiffs' sworn supplemental answers to ECFMG's interrogatories from this case. Also see ECFMG's response regarding the admissibility of Exhibits 44-47 in the preliminary statement preceding this chart. |
| 91 | In 2012, Akoda submitted a Medicare Enrollment Application to the Centers for Medicare and Medicaid Services ("CMS"). Ex. 15 at 10. | Admitted. | n/a |
| 92 | CMS denied the application based, in part, on CMS's determination that Akoda did not provide an accurate Social Security number. Ex. 15 at 10. | Admitted. | n/a |
| 93 | American Board of Obstetrics and Gynecology ("ABOG") certified Akoda on January 31, 2014. ABOG Board Letter to Akoda, attached as Exhibit 48. | Admitted. | n/a |
| 94 | ABOG waited until January 2018 to revoke his diplomate status. Aug. 30, 2017 ABOG Letter, attached as Exhibit 49. | Admitted. | n/a |

| | ECFMG's Statement of Undisputed Material Facts | Plaintiffs' Response | ECFMG's Reply |
|---|---|---|---|
| 95 | In 2014, ECFMG received a subpoena from a U.S. Attorney's office regarding Akoda. 2014 Email Correspondence between ECFMG and Md. Bd. of Physicians, attached as Exhibit 41. | Objection. The exhibits referenced are not authenticated and are hearsay and inadmissible. | This information is relevant and admissible. See ECFMG's response regarding the admissibility of Exhibit 41 in the preliminary statement preceding this chart. There is additional record evidence on this point as well. *See, e.g.*, Oct. 1, 2014 Subpoena, attached as ECFMG Reply Ex. 4. |
| 96 | ECFMG cooperated with the investigation and followed instructions from federal authorities not to take adverse action against Akoda while the investigation was ongoing. Ex. 41. | Objection. The exhibits referenced are not authenticated and are hearsay and inadmissible. | This information is relevant and admissible. See ECFMG's response regarding the admissibility of Exhibit 41 in the preliminary statement preceding this chart. There is additional record evidence on this point as well. *See, e.g.*, Oct. 1, 2014 Subpoena, attached as ECFMG Reply Ex. 4. |
| 97 | In 2014, ECFMG worked together with the Maryland Board of Physicians to assist their investigation. Ex. 41. | Objection. The exhibits referenced are not authenticated and are hearsay and inadmissible. | This information is relevant and admissible. See ECFMG's response regarding the admissibility of Exhibit 41 in the preliminary statement preceding this chart. |

| | *ECFMG's Statement of*<br>*Undisputed Material Facts* | *Plaintiffs' Response* | *ECFMG's Reply* |
|---|---|---|---|
| 98 | In March 2016, Prince George's County Police Department contacted ECFMG about Akoda. Mar. 2016 ECFMG Email Chain, attached as Exhibit 50. | Objection. The exhibits referenced are not authenticated and are hearsay and inadmissible. | This information is relevant and admissible. See ECFMG's response regarding the admissibility of Exhibit 50 in the preliminary statement preceding this chart. |
| 99 | ECFMG cooperated with the Prince George's County Police Department's investigation and followed additional instructions from law enforcement not to impede the investigation and not to take adverse action against Akoda while the investigation was ongoing. Nov. 2016 Email Chain, attached as Exhibit 51. | Objection. The exhibits referenced are not authenticated and are hearsay and inadmissible. | This information is relevant and admissible. See ECFMG's response regarding the admissibility of Exhibit 51 in the preliminary statement preceding this chart. |
| 100 | On November 15, 2016, Akoda pled guilty to misuse of a Social Security number and stipulated that he and Oluwafemi Charles Igberase were the same person. Ex. 15. | Admitted. | n/a |
| 101 | After Akoda pled guilty, ECFMG consolidated the Igberase and Akoda files and revoked the ECFMG Certificate issued to John Nosa Akoda. March 1, 2017 ECFMG Notice, attached as Exhibit 52. | Admitted. | n/a |
| 102 | Plaintiff Desire Evans is a resident of Waldorf, Maryland. Evans Dep., attached as Exhibit 53, at 14:22-24. | Admitted. | n/a |
| 103 | Ms. Evans gave birth to her son on March 17, 2016 at Prince George's Hospital in Maryland. Ex. 53 at 35:22-25, 42:20-23. | Admitted. | n/a |
| 104 | Ms. Evans did not know which doctor would be there for her induction. Ex. 53 at 42:4-13; 83:4-20. | Admitted. | n/a |
| 105 | Ms. Evans consented to undergoing treatment by Akoda. March 16, 2016 Evans Consent Forms, attached as Exhibit 54. | Denied. The consent was invalid due to Akoda's fraudulent conduct. | Plaintiffs' response does not create a genuine issue of material fact with respect to ECFMG's Paragraph 105. |

| | ECFMG's Statement of Undisputed Material Facts | Plaintiffs' Response | ECFMG's Reply |
|---|---|---|---|
| | | | Plaintiffs do not dispute that at the time of treatment by Akoda, Ms. Evans gave her consent. Plaintiffs are attempting to argue the legal significance of that fact, but it does not change the truth of the fact stated therein. |
| 106 | Ms. Evans did not conduct any research into the credentials of her primary OB/GYN doctor, Dr. Moore or the physicians at Dr. Moore's practice. Ex. 53 at 44:20-45:9, 45:23-46:4. | Admitted. | n/a |
| 107 | Ms. Evans did not ask Akoda about his credentials or professional experience. Ex. 53 at 86:12-19, 87:2-5. | Admitted. | n/a |
| 108 | Akoda treated Ms. Evans while she was in labor and then performed a C-section on her. Ex. 53. at 87:6-23, 93:18-19. | Admitted. | n/a |
| 109 | Ms. Evans' son was delivered healthy. Ex. 53 at 95:16-17. | Admitted. | n/a |
| 110 | Ms. Evans testified that Akoda used language with her that she found "inappropriate," including calling her "baby" and "mama." Ex. 53 at 158:158:4-11. | Admitted. | n/a |
| 111 | Ms. Evans claims that Akoda performed "intrusive pelvic examinations" on her. Evans Rogs., attached as Exhibit 55, at 7. | Admitted. | n/a |
| 112 | Ms. Evans alleges that Akoda "was, like, fondling my clitoris" during her labor and that during her labor, she felt that he mistreated her. Ex. 53 at 131:20-132:3, 137:22-138:3; Ex. 55 at 7. | Admitted. | n/a |
| 113 | Ms. Evans testified that her husband questioned Akoda about how he touched Ms. Evans. Ex. 53 at 133:10-14. | Admitted. | n/a |
| 114 | Ms. Evans testified that she discussed Akoda's conduct with her husband and her mother shortly after the birth. Ex. 53 at 138:6-17. | Admitted. | n/a |
| 115 | Ms. Evans claims that her husband and mother were both in the room with her while Akoda treated her. Ex. 53 at 132:7-12. | Admitted. | n/a |

| | ECFMG's Statement of<br>Undisputed Material Facts | Plaintiffs' Response | ECFMG's Reply |
|---|---|---|---|
| 116 | [See ECFMG's Statement of Undisputed Material Facts filed under seal, ECF 85, at ¶ 116.] | Redacted. | ECFMG served Plaintiffs an unredacted version of its Statement of Undisputed Material Facts. Plaintiffs have failed to file or provide ECFMG with an unsealed or unredacted copy of their Response. Plaintiffs have therefore failed to provide an answer to ECFMG's Paragraph 116 and has waived any objection or denial; Plaintiffs' response thus does not create a genuine issue of material fact with respect to this paragraph. |
| 117 | Ms. Evans learned of Akoda's identity after hearing a radio advertisement from a law firm in 2018. Ex. 53 at 73:12-74:13. | Admitted. | n/a |
| 118 | Ms. Evans never sought treatment from a psychiatrist or psychologist prior to the birth of her son. Ex. 53 at 66:4-13. | Admitted. | n/a |
| 119 | Ms. Evans has seen a doctor for her social anxiety since the birth of her son, and a physician's assistant recorded that Ms. Evans was experiencing "depression/anxiety" and "potential postpartum." Ex. 53 at 64:14-65:25, 105:24–106:5. | Admitted. | n/a |
| 120 | Ms. Evans denied feeling anxious and depressed for most of her life, just "normal anxious." Ex. 53 at 112:19-113:5. | Admitted. | n/a |
| 121 | Ms. Evans claims that she is afraid to see a doctor, does not know who to trust, and her trust in the medical profession has diminished. Ex. 53 at 165:8-21. | Admitted. | n/a |

| | ECFMG's Statement of Undisputed Material Facts | Plaintiffs' Response | ECFMG's Reply |
|---|---|---|---|
| 122 | None of Ms. Evans' medical records reference Akoda. Evans Dep. Ex. 3, attached as Exhibit 56. | Admitted. | n/a |
| 123 | Ms. Evans had no knowledge of ECFMG when she was treated by Akoda. Ex. 53 at 82:20-22. | Admitted. | n/a |
| 124 | Ms. Evans first learned of ECFMG from her lawyers. Ex. 53 at 70:24-71:17. | Admitted. | n/a |
| 125 | Ms. Evans believes that ECFMG's purpose is "to verify identification documentation," not foreign medical diplomas, and that ECFMG is responsible for verifying IMGs' Social Security numbers, birth certificates, green cards, state medical licenses, board certifications, and any other "piece of identifying information about a foreign medical graduate." Ex. 53 at 80:14-82:4. | Admitted. | n/a |
| 126 | After conducting Internet research, Ms. Evans believed ECFMG "was some kind of credentialing company or something" and was not "100 perfect sure of the nature of the company." Ex. 53 at 72:18-19. | Admitted. | n/a |
| 127 | Dr. Gladys Fenichel examined Ms. Evans on September 9, 2019. Fenichel Rep. on Evans, attached as Exhibit 57, at 1. | Admitted. | n/a |
| 128 | Dr. Fenichel did not find Ms. Evans' psychiatric conditions of major depression and panic disorder to be related to the allegations she made in the complaint against ECFMG. Ex. 57 at 8. | Admitted. | n/a |
| 129 | Dr. Christine Tellefsen examined Ms. Evans on September 16, 2019. Tellefsen Rep., attached as Exhibit 58, at 4. | Admitted. | n/a |
| 130 | Dr. Tellefsen concluded that Ms. Evans' conditions "is complicated by a number of other factors in her life." Ex. 58 at 4. | Admitted. | n/a |
| 131 | Dr. Tellefsen also concluded that Ms. Evans likely has a "pseudotumor cerebri," causing her headaches and poor concentration. Ex. 58 at 4. | Admitted. | n/a |
| 132 | Dr. Tellefsen found that Ms. Evans likely has Mood Disorder and Adjustment Disorder with Mixed Disturbance of Behavior. Ex. 58 at 5. | Admitted. | n/a |

| | ECFMG's Statement of<br>Undisputed Material Facts | Plaintiffs' Response | ECFMG's Reply |
|---|---|---|---|
| 133 | Plaintiff Elsa Powell is a resident of Upper Marlboro, Maryland. Powell Dep., attached as Exhibit 59, at 20:1-3. | Admitted. | n/a |
| 134 | Ms. Powell gave birth to her son on September 17, 2014. Ex. 59 at 22:4. | Admitted. | n/a |
| 135 | Ms. Powell was originally supposed to be seen by Dr. Chaudry at his practice, but he was unavailable and she saw Akoda instead. Ex. 59 at 40:7-12. | Admitted. | n/a |
| 136 | Ms. Powell consented to being treated by Akoda at Dr. Chaudry's practice and at Prince George's Hospital in Maryland during her pregnancy. Sep. 17, 2014 Powell Consent Forms, attached as 60; Ex. 59 at 40:7-12. | Denied. The consent was invalid due to Akoda's fraudulent conduct. | Plaintiffs' response does not create a genuine issue of material fact with respect to ECFMG's Paragraph 136. Plaintiffs do not dispute that at the time of treatment by Akoda, Ms. Powell gave her consent. Plaintiffs are attempting to argue the legal significance of that fact, but it does not change the truth of the fact stated therein. |
| 137 | Ms. Powell regularly saw Akoda starting in April of 2014, during her labor on September 17, 2014 and for post-natal care through January of 2015. Ex. 59 at 38:20-39:1-2, 39:21-40:16; Ex. 45 at 2, 8. | Admitted. | n/a |
| 138 | Ms. Powell testified that Akoda was "flirtatious" towards Ms. Powell. Ex. 59 at 51:16-19. | Admitted. | n/a |
| 139 | Ms. Powell testified that she requested that a nurse be present during her appointments with Dr. Akoda. Ex. 59 at 51:16-19. | Admitted. | n/a |
| 140 | Ms. Powell testified that Akoda made lewd comments about her breasts. Ex. 59 at 51:21-25. | Admitted. | n/a |
| 141 | Ms. Powell claims Akoda performed "intrusive pelvic exams" on her. Powell Rog., attached as Exhibit 61, at 7. | Admitted. | n/a |

| | *ECFMG's Statement of Undisputed Material Facts* | *Plaintiffs' Response* | *ECFMG's Reply* |
|---|---|---|---|
| 142 | Akoda aided Ms. Powell in the delivery of her son. Ex. 59 at 44:11-14. | Admitted. | n/a |
| 143 | Ms. Powell's son had no complications during delivery. Ex. 59 at 48:18-20. | Admitted. | n/a |
| 144 | After the birth of her son, Ms. Powell experienced heavy bleeding while at the hospital, and Akoda took her into surgery. Ex. 59 at 45:12-46:7. | Admitted. | n/a |
| 145 | Ms. Powell believes that before taking her into surgery, Akoda told her "I'm sorry, I should have detected it sooner, I'm so sorry, we're getting the O.R. ready for you." Ex. 59 at 45:12-46:2. | Admitted. | n/a |
| 146 | Ms. Powell recovered well from the emergency surgery that Akoda performed on her after she delivered her son. Ex. 59 at 47:20-24. | Admitted. | n/a |
| 147 | Ms. Powell claimed she suffered from emotional anguish, fear, and anxiety from learning that Akoda was not properly credentialed. Ex. 45 at 3. | Admitted. | n/a |
| 148 | Ms. Powell claims she does not "have a peace of mind" since finding out Akoda was not who he said he was. Ex. 59 at 98:20-24. | Admitted. | n/a |
| 149 | Ms. Powell has never sought treatment from a psychologist, psychiatrist, or counselor and did not seek any treatment after hearing about the charges brought against Akoda. Ex. 59 at 32:10-17, 99:10-12. | Admitted. | n/a |
| 150 | Ms. Powell has seen doctors since finding out about Akoda's identity. Ex. 59 at 25:22-24. | Admitted. | n/a |
| 151 | Ms. Powell has not sought treatment from any health care provider for alleged injuries related to this lawsuit. Ex. 45 at 7. | Admitted. | n/a |
| 152 | Ms. Powell contends that PGHC was negligent and should have discovered Dr. Akoda's alias sooner. Powell Dimensions Rog., attached as Exhibit 62, at 3. | Objection. This statement is irrelevant and inadmissible. | ECFMG's Paragraph 152 and ECFMG Ex. 62 are relevant and admissible as they pertain directly to the subject of this lawsuit and whom Plaintiffs blame for |

| | ECFMG's Statement of Undisputed Material Facts | Plaintiffs' Response | ECFMG's Reply |
|---|---|---|---|
| | | | their alleged injuries. *See* Fed. R. Evid. 401. See ECFMG's response regarding the admissibility of Exhibit 62 in the preliminary statement preceding this chart. |
| 153 | Ms. Powell first learned about the social security fraud charged against Akoda in 2017. Powell Dep. at 63:12-17. | Admitted. | n/a |
| 154 | Ms. Powell had no knowledge of ECFMG prior to this lawsuit. Ex. 45 at 4. | Admitted. | n/a |
| 155 | Ms. Powell learned about ECFMG from her attorney. Ex. 59 at 90:9-16. | Admitted. | n/a |
| 156 | Ms. Powell believes ECFMG licenses foreign medical doctors to practice medicine in the United States. Ex. 59 at 91:6-11. | Admitted. | n/a |
| 157 | Ms. Powell testified that she believed it was wrong for ECFMG to provide Akoda with a license to practice medicine. Ex. 59 at 93:18-23. | Admitted. | n/a |
| 158 | Ms. Powell doubts Akoda had medical training. Ex. 59 at 80:5-7. | Admitted. | n/a |
| 159 | Dr. Fenichel examined Ms. Powell on September 9, 2019. Fenichel Rep. on Powell, attached as Exhibit 63, at 1. | Admitted. | n/a |
| 160 | Dr. Fenichel did not find Ms. Powell to present with any symptoms compatible with a psychiatric disorder causally related to her allegations in the complaint against ECFMG. Ex. 63 at 6. | Admitted. | n/a |
| 161 | Dr. Tellefsen examined Ms. Powell on September 13, 2019. Ex. 58 at 3. | Admitted. | n/a |
| 162 | Dr. Tellefsen diagnosed Ms. Powell with Adjustment Disorder with Anxiety. Ex. 58 at 4. | Admitted. | n/a |
| 163 | Plaintiff Jasmine Riggins is a resident of Washington, D.C. Riggins Dep., attached as Exhibit 64, at 20:1-3. | Admitted. | n/a |

| | ECFMG's Statement of Undisputed Material Facts | Plaintiffs' Response | ECFMG's Reply |
|---|---|---|---|
| 164 | Ms. Riggins gave birth to her son at Prince George's Hospital in Maryland on March 18, 2013. Riggins Rog. Answers, attached as Exhibit 65, at 2. | Admitted. | n/a |
| 165 | Ms. Riggins chose to be treated by Dr. Abdul Chaudry's practice, with whom Akoda worked at Prince George's Hospital. Ex. 46 at 2-3. | Admitted. | n/a |
| 166 | Ms. Riggins consented to treatment by Akoda. Riggins Consent Forms, attached as Exhibit 66. | Denied. The consent was invalid due to Akoda's fraudulent conduct. | Plaintiffs' response does not create a genuine issue of material fact with respect to ECFMG's Paragraph 166. Plaintiffs do not dispute that at the time of treatment by Akoda, Ms. Riggins gave her consent. Plaintiffs are attempting to argue the legal significance of that fact, but it does not change the truth of the fact stated therein. |
| 167 | Akoda performed a C-section on Ms. Riggins on March 18, 2013. Ex. 46 at 3. | Admitted. | n/a |
| 168 | Ms. Riggins learned of Akoda's identity in July of 2017. Ex. 64 at 84:16-85:5. | Admitted. | n/a |
| 169 | Ms. Riggins claims to have experienced emotional distress only once she found about Akoda being a "fake doctor." Ex. 64 at 55:19-24. | Admitted. | n/a |
| 170 | Ms. Riggins testified that she feels angry, sad, embarrassed, and ashamed because of Akoda's conduct. Ex. 64 at 57:8-13. | Admitted. | n/a |
| 171 | Ms. Riggins has not sought medical attention for any of her alleged injuries. Ex. 64. At 86:14-87:11. | Admitted. | n/a |
| 172 | Ms. Riggins has never been diagnosed with depression, post-traumatic stress disorder, a sleeping disorder or any psychiatric | Admitted. | n/a |

| | ECFMG's Statement of<br>Undisputed Material Facts | Plaintiffs' Response | ECFMG's Reply |
|---|---|---|---|
| | disorder. Fenichel Rep. on Riggins, attached as Exhibit 67 at 3; Riggins Dimensions RFA, attached as Exhibit 68 at 4. | | |
| 173 | Since being treated by Akoda, Ms. Riggins does not typically feel anxious, worried, scared, or panicky. Ex. 64 at 60:7-9; Ex. 68 at 8. | Admitted. | n/a |
| 174 | Ms. Riggins does not claim Akoda physically injured her. Ex. 64 at 56:4-6. | Admitted. | n/a |
| 175 | Ms. Riggins has not suffered physical distress from learning about Akoda's guilty plea. Ex. 64 at 64:1-7. | Admitted. | n/a |
| 176 | Ms. Riggins does not have a depressed mood or suicidal thoughts. Ex. 64 at 59:14-22. | Admitted. | n/a |
| 177 | Ms. Riggins believed Dimensions' negligence "was the sole and proximate cause of [her] injuries". Ex. 64 at 123:7-15; Dimensions First Amended Compl., attached as Exhibit 69, ¶ 81. | Objection. This statement is irrelevant and inadmissible. | ECFMG's Paragraph 77 and ECFMG Ex. 69 are relevant and admissible as they pertain directly to the subject of this lawsuit and whom Plaintiffs blame for their alleged injuries. *See* Fed. R. Evid. 401. See ECFMG's response regarding the admissibility of Exhibit 69 in the preliminary statement preceding this chart. |
| 178 | Ms. Riggins doubts whether PGHC performed a satisfactory background check on Akoda. Riggins Dimensions Dep., attached as Exhibit 70, at 78:2-8. | Objection. This statement is irrelevant and inadmissible. | ECFMG's Paragraph 178 and ECFMG Ex. 70 are relevant and admissible as they pertain directly to the subject of this lawsuit and whom Plaintiffs blame for their alleged injuries. *See* Fed. R. Evid. 401. See |

| | ECFMG's Statement of Undisputed Material Facts | Plaintiffs' Response | ECFMG's Reply |
|---|---|---|---|
| | | | ECFMG's response regarding the admissibility of Exhibit 70 in the preliminary statement preceding this chart. |
| 179 | Ms. Riggins has seen doctors since finding out about Akoda's identity. Ex. 64 at 103:9-104:18. | Admitted. | n/a |
| 180 | Dr. Fenichel examined Ms. Riggins on September 20, 2019. Fenichel Rep. on Riggins, attached as Exhibit 71, at 1. | Admitted. | n/a |
| 181 | Dr. Fenichel did not find Ms. Riggins to have any psychiatric disorder causally related to the allegations in the complaint. Ex. 71 at 4. | Admitted. | n/a |
| 182 | Ms. Riggins believes the Maryland Board of Physicians, the American Board of Obstetricians and Gynecologists, and Dr. Chaudry are also responsible for the injuries she has alleged. Ex. 64 at 56:7-57:2. | Objection. This statement is irrelevant and inadmissible. | ECFMG's Paragraph 182 and ECFMG Ex. 64 are relevant and admissible as they pertain directly to the subject of this lawsuit and whom Plaintiffs blame for their alleged injuries. *See* Fed. R. Evid. 401. See ECFMG's response regarding the admissibility of Exhibit 64 in the preliminary statement preceding this chart. |
| 183 | Ms. Riggins had never heard of ECFMG until her lawyers informed her of the existence of the organization. Ex. 64 at 130:18-131:1. | Admitted. | n/a |
| 184 | Ms. Riggins believed ECFMG administers exams and licenses foreign doctors to practice medicine in the United States. Ex. 64 at 26:17-24, 27:20-24. | Admitted. | n/a |

| | ECFMG's Statement of Undisputed Material Facts | Plaintiffs' Response | ECFMG's Reply |
|---|---|---|---|
| 185 | Ms. Riggins believes ECFMG should "[b]e more careful about who they certify." Ex. 64 at 138:17-23. | Admitted. | n/a |
| 186 | Ms. Riggins testified that it might make a difference to her to know that ECFMG had cooperated with the U.S. Attorney's Office in its case against Akoda. Ex. 64 at 141;18-22. | Admitted. | n/a |
| 187 | Plaintiff Monique Russell is a resident of Annapolis, Maryland. Russell Dep., attached as Exhibit 72, at 10:24-25. | Admitted. | n/a |
| 188 | Ms. Russell gave birth to her son on May 25, 2016 at Prince George's Hospital. Ex. 72 at 12:23-25, 32:24-25. | Admitted. | n/a |
| 189 | Ms. Russell's primary OB/GYN during her pregnancy was Dr. Waldrop from Dr. Moore's practice. Ex. 72 at 32:11-25, 34:19-24. | Admitted. | n/a |
| 190 | Ms. Russell knew before her delivery that Dr. Waldrop might be unavailable at the time and that her baby might be delivered by Akoda. Ex. 72 at 37:23-38:18. | Admitted. | n/a |
| 191 | Ms. Russell consented to being seen by Akoda if Dr. Waldrop were unavailable. Russell Consent Forms, attached as Exhibit 73; Ex. 72 at 38:12-19. | Denied. The consent was invalid due to Akoda's fraudulent conduct. | Plaintiffs' response does not create a genuine issue of material fact with respect to ECFMG's Paragraph 191. Plaintiffs do not dispute that at the time of treatment by Akoda, Ms. Russell gave her consent. Plaintiffs are attempting to argue the legal significance of that fact, but it does not change the truth of the fact stated therein. |
| 192 | Akoda first treated Ms. Russell when she was in labor. Ex. 72 at 37:5-9. | Admitted. | n/a |
| 193 | Akoda helped deliver Ms. Russell's son in 2016 via an unplanned C-section. Ex. 72 at 12:23-25, 37:5-9, 41:4-14. | Admitted. | n/a |

| | ECFMG's Statement of Undisputed Material Facts | Plaintiffs' Response | ECFMG's Reply |
|---|---|---|---|
| 194 | Ms. Russell consented to the C-section that Akoda performed. Ex. 72 at 45:1-3. | Denied. The consent was invalid due to Akoda's fraudulent conduct. | Plaintiffs' response does not create a genuine issue of material fact with respect to ECFMG's Paragraph 194. Plaintiffs do not dispute that at the time of treatment by Akoda, Ms. Russell gave her consent. Plaintiffs are attempting to argue the legal significance of that fact, but it does not change the truth of the fact stated therein. |
| 195 | Ms. Russell described her recovery from the C-section performed by Akoda as "minor." Fenichel Rep. on Russell, attached as Exhibit 74, at 7. | Admitted. | n/a |
| 196 | Ms. Russell believed that the course of treatment from Akoda "really was best/necessary." Russell Facebook comments, attached as Exhibit 75, at 4. | Admitted. | n/a |
| 197 | Ms. Russell alleges that Akoda's conduct has exacerbated her innate trust issues. Ex. 47 at 2-3. | Admitted. | n/a |
| 198 | Ms. Russell claimed she experienced anxiety upon learning of Akoda's identity. Russell Dimensions RFA, attached as Exhibit 76, at 8. | Admitted. | n/a |
| 199 | Ms. Russell experienced no atypical symptoms after her C-section, and her son has had no health problems. Ex. 72 at 53:15-21. | Admitted. | n/a |
| 200 | Ms. Russell has not sought treatment from a psychiatrist or psychologist at any point in her adult life, including before and after Akoda delivered her baby. Ex. 72 at 69:21-70:5. | Admitted. | n/a |
| 201 | In 2018, Ms. Russell gave no indication of depression, anxiety, suicidal thoughts, or other mental health issues to her doctor. Ex. 72 at 98:22-99:8. | Admitted. | n/a |

| | *ECFMG's Statement of Undisputed Material Facts* | *Plaintiffs' Response* | *ECFMG's Reply* |
|---|---|---|---|
| 202 | Ms. Russell does not claim to suffer from post-traumatic stress disorder. Ex. 72 at 121:23-25; Ex. 76 at 4-6. | Admitted. | n/a |
| 203 | Ms. Russell has never been formally diagnosed with depression, anxiety, a permanent disability, or a sleeping disorder. Ex. 72 at 122:1-123:18; Ex. 76 at 6-7, 11. | Admitted. | n/a |
| 204 | In a previous lawsuit, Ms. Russell admitted to not having depression as a result of learning about Akoda's identity. Ex. 76 at 6-7. | Objection. This statement is irrelevant and inadmissible. | ECFMG's Paragraph 204 and ECFMG Ex. 76 are relevant and admissible as they pertain directly to the subject of this lawsuit and the injuries alleged by Ms. Russell. *See* Fed. R. Evid. 401. See ECFMG's response regarding the admissibility of Exhibit 76 in the preliminary statement preceding this chart. |
| 205 | In a previous lawsuit, Ms. Russell admitted to not having a physical injury or suffering from physical pain as a result of learning about Akoda's identity. Ex. 76 at 9. | Objection. This statement is irrelevant and inadmissible. | ECFMG's Paragraph 205 and ECFMG Ex. 76 are relevant and admissible as they pertain directly to the subject of this lawsuit and the injuries alleged by Ms. Russell. *See* Fed. R. Evid. 401. See ECFMG's response regarding the admissibility of Exhibit 76 in the preliminary statement preceding this chart. |
| 206 | Ms. Russell does not claim to suffer sleeplessness. Ex. 76 at 10. | Admitted. | n/a |

| | ECFMG's Statement of Undisputed Material Facts | Plaintiffs' Response | ECFMG's Reply |
|---|---|---|---|
| 207 | Ms. Russell does not allege that Akoda sexually assaulted her. Ex. 72 at 129:16-130:11. | Admitted. | n/a |
| 208 | Ms. Russell claims that her emotional distress and distrust of doctors were "amplified when Plaintiff discovered that Defendant Dimensions never performed an appropriate background check on Akoda." Ex. 47 at 3. See also Ex. 69 ¶ 71. | Admitted. | n/a |
| 209 | Ms. Russell has seen a doctor since finding out about Akoda. Ex. 72 at 60:4-10. | Admitted. | n/a |
| 210 | Ms. Russell found out about Akoda's guilty plea in June of 2017. Ex. 72 at 31:1-7. | Admitted. | n/a |
| 211 | Dr. Moore informed Ms. Russell that Dr. Moore's practice did not conduct a background check on Akoda. Ex. 72 at 57:11-21. | Admitted. | n/a |
| 212 | Dr. Fenichel examined Ms. Russell on September 17, 2019. Ex. 74 at 1. | Admitted. | n/a |
| 213 | Dr. Fenichel did not find Ms. Russell to have any psychiatric disorder causally related to the allegations in the complaint. Ex. 74 at 7. | Admitted. | n/a |
| 214 | Ms. Russell believes ECFMG is a governmental entity. Ex. 72 at 77:13-23. | Admitted. | n/a |
| 215 | Ms. Russell believes ECFMG does background checks on applicants such as Akoda. Ex. 72 at 77:13-23. | Admitted. | n/a |
| 216 | Ms. Russell believes Akoda is a "fake doctor," who "was not properly trained as a doctor or credentialed as a doctor." Ex. 72 at 45:7-14. | Admitted. | n/a |
| 217 | Ms. Russell has alleged back pain as a result of Dr. Akoda's treatment but also indicated she does not know if the pain is attributable to Dr. Akoda. Ex. 72 at 123:19-124:19. | Admitted. | n/a |

A concluding point on the facts as alleged and presented by the parties: Plaintiffs take issue with ECFMG's use of the term "Dr. Akoda" to discuss the IMG at issue in this litigation. *See, e.g.*, ECF 93-2 at 28 n.2, 35, 40. ECFMG uses "Dr. Akoda" for consistency and ease of use because the contemporaneous documents and deposition testimony refer to that individual using that name. ECFMG does not dispute that "John Nosa Akoda" or "Dr. Akoda" were aliases of the individual the U.S. Department of Justice referred to as "Oluwafemi Charles Igberase, a/k/a 'Charles John Nosa Akoda,'" who pleaded guilty to Social Security Fraud in violation of 42 U.S.C. § 408(a)(&)(B), *see* ECFMG Ex. 15, and that, as Plaintiffs admit, "Akoda and Igberase are the same person." ECF 93-2 at 4.

Dated: January 28, 2022

William R. Peterson (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5006
Telephone:    +1.713.890.5000
Facsimile:    +1.713.890.5001
william.peterson@morganlewis.com

*/s/ Brian W. Shaffer*
Brian W. Shaffer, PA Bar No. 78851
Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA  19103-2921
Telephone:    +1.215.963.5000
Facsimile:    +1.215.963.5001
brian.shaffer@morganlewis.com
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for Educational Commission for Foreign Medical Graduates*

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that on this date, I caused true and correct copies of the foregoing document to be served via electronic filing upon all counsel of record via the ECF system and/or e-mail.

DATED: January 28, 2022        */s/ Brian W. Shaffer*
                                        Brian W. Shaffer